1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
          apersinger@bursor.com
          ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN RETTA, KIRSTEN SCHOFIELD, and JESSICA MANIRE on Behalf of Themselves and all Others Similarly Situated, | Case No.  2:15-cv-01801 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MILLENNIUM PRODUCTS, INC. | |
| Defendant. | |

CLASS ACTION COMPLAINT

Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Millennium Products, Inc. ("Millennium" or "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1.      Millennium Products, Inc.'s marketing campaign takes advantage of high consumer demand for antioxidants by touting the antioxidant content in its Kombucha beverages in precisely the manner the Food and Drug Administration ("FDA") sought to prohibit by establishing the antioxidant labeling requirements set forth in 21 C.F.R. § 101.54(g).  Millennium has plastered misleading antioxidant messaging on every side of its GT's Kombucha and Synergy (collectively, "GT's Kombucha Beverages"[1]) beverage labels.  The simple truth is, however, that GT's Kombucha Beverages do not have even a single nutrient that the FDA recognizes and approves of for labeling statements using the term "antioxidant."  Because the antioxidant statements on GT's Kombucha Beverages' labels are unauthorized and misleading nutrient content claims proscribed by the FDA, GT's Kombucha Beverages are misbranded and improperly labeled in violation of the Food Drug and Cosmetics Act, and corresponding state laws as described herein.  Accordingly, Millennium has sold misbranded products using misleading advertising to millions of consumers, who relied on Millennium's advertising and were injured as a result.

2.      Plaintiffs Retta, Manire, and Schofield purchased numerous bottles of GT's Kombucha Beverages based on Millennium's misleading advertising on the labels of the products.

---

[1] "GT's Kombucha Beverages" refers to every flavor of Millennium's GT's Classic Kombucha, Classic Synergy, GT's Enlightened Kombucha, and Enlightened Synergy lines, as described herein.

3.      Plaintiffs seek relief in this action individually, and on behalf of all purchasers of GT's Kombucha Beverages, for Millennium's violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq*., Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq*., and New York's Deceptive and Unfair Trade Practices Act, New York General Business Law § 349 ("NYGBL").

## **PARTIES**

4.      Plaintiff Jonathan Retta is a citizen of Virginia, residing in Annandale. Within the past three years, Mr. Retta purchased GT's Kombucha Beverages, including GT's Enlightened Kombucha: Multi-Green and Enlightened Synergy: Mystic Mango from multiple retail stores, including Whole Foods, in Washington, D.C. and New York.  Mr. Retta purchased GT's Kombucha Beverages relying on statements on the bottles' labels, including the following statements that characterize the level of antioxidants in the beverages:

- "antioxidants,"
- "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out."
- The "ANTIOXIDANTS & ORGANIC ACIDS" section of the Nutrition Facts label, which lists "EGCG 100mg" as the amount and type of "antioxidants" in the bottles.

Mr. Retta would not have purchased GT's Kombucha Beverages, or would have paid significantly less for the products, had he known that these statements were unauthorized, and that Millennium misbranded the products and mischaracterized the level, amount, and nature of the antioxidants in the bottles.  Mr. Retta suffered injury

in fact and lost money as a result of Millennium's deceptive, misleading, unfair and fraudulent practices described herein.

5.     Plaintiff Kirsten Schofield is a citizen of Kentucky, residing in Louisville.  Within the past three years, Ms. Schofield purchased GT's Kombucha Beverages, including GT's Enlightened and Classic Kombucha: Original and Gingerade, and Enlightened Synergy: Raspberry Chia, from multiple retail stores, including Kroger, Whole Foods, and Earth Fare, in Kentucky, South Carolina, and Virginia.  Ms. Schofield purchased GT's Kombucha Beverages relying on statements on the bottles' labels, including the following statements that characterize the level of antioxidants in the Beverages:

- "antioxidants,"
- "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out."
- The "ANTIOXIDANTS & ORGANIC ACIDS" section of the Nutrition Facts label, which lists "EGCG 100mg" as the amount and type of "antioxidants" in the bottles.
- "Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body.  Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha."

Ms. Schofield would not have purchased GT's Kombucha Beverages, or would have paid significantly less for the products, had she known that these statements were unauthorized, and that Millennium misbranded the products and mischaracterized the

level, amount, and nature of the antioxidants in the bottles.  Ms. Schofield suffered injury in fact and lost money as a result of Millennium's deceptive, misleading, unfair and fraudulent practices described herein.

6.     Plaintiff Jessica Manire is a citizen of Colorado, residing in Denver. Within the past three years, Ms. Manire purchased GT's Kombucha Beverages, including GT's Enlightened Kombucha: Botanic No. 3 and Botanic No. 9, and Enlightened Synergy: Trilogy, Gingerberry, Mystic Mango, and Guava Goddess, from multiple retail stores, including Whole Foods and Vitamin Cottage, in Colorado, California, Texas, and New York.  Ms. Manire purchased GT's Kombucha Beverages relying on statements on the bottles' labels, including the following statements that characterize the level of antioxidants in the Beverages:

- "antioxidants,"
- "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out."
- The "ANTIOXIDANTS & ORGANIC ACIDS" section of the Nutrition Facts label, which lists "EGCG 100mg" as the amount and type of "antioxidants" in the bottles.

Ms. Manire would not have purchased GT's Kombucha Beverages, or would have paid significantly less for the products, had she known that these statements were unauthorized, and that Millennium misbranded the products and mischaracterized the level, amount, and nature of the antioxidants in the bottles.  Ms. Manire suffered injury in fact and lost money as a result of Millennium's deceptive, misleading, unfair and fraudulent practices described herein.

7.     Defendant Millennium Products, Inc. is a California corporation located at 4646 Hampton St., Vernon, California 90058.  Millennium manufactures,

advertises, sells, distributes, and markets GT's Kombucha Beverages as alleged

herein nationwide, including in California and New York

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §

1332(d)(2)(A) because this case is a class action where the aggregate claims of all

members of the proposed class are in excess of $5,000,000, exclusive of interests and

costs, and Plaintiffs, as well as most members of the proposed class, are citizens of

states different from the states of Defendant.  Millennium has sold hundreds of

thousands, if not millions, of bottles of GT's Kombucha Beverages.

9.     This Court has general jurisdiction over Defendant because Defendant

is headquartered in California.  Further, Defendant conducts substantial business

within California such that Defendant has significant, continuous, and pervasive

contacts with the State of California.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the

challenged mislabeling, misbranding, and marketing practices have been

disseminated and committed in this District and because Defendant is headquartered

in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

## Millennium's Unlawful and Misleading Characterization of Antioxidants

11.    Millennium lures customers to buy GT's Kombucha Beverages with

promises that the beverages are packed with "powerful" antioxidants.  But

Millennium's advertising flies in the face of identical state and federal laws that bar

manufacturers from spouting "antioxidant" claims without including antioxidant

*nutrients*, like Vitamins A, C, D, or E, in their beverages to back up their advertising.

Tea antioxidants, like EGCG, are not antioxidant nutrients.  Since GT's Kombucha

Beverages do not include any antioxidant nutrients identified by the FDA as a source

of real nutrition, Millennium's labeling and advertising deceives consumers into

1   believing that all antioxidants are created equal and that GT's Kombucha Beverages

2   are a source of nutritional antioxidants.

3       12.   Specifically, by law, Millennium must disclose on the labels of GT's

4   Kombucha Beverages precisely which *nutrients* have antioxidant properties.

5   Further, each of these nutrients must have established Reference Daily Intake

6   ("RDI") standards set by the FDA to prevent manufacturers from claiming that tea is

7   a nutritional source of antioxidants.

8       13.   GT's Kombucha Beverages claim to contain a "unique blend" of

9   "powerful antioxidants," but do not contain even a single antioxidant nutrient with an

10   established RDI.  Indeed, GT's Kombucha Beverages are a type of tea, and the FDA

11   considers tea a food of no nutritional significance.  As such, Defendant's labels are

12   misbranded and misleading.

13       14.   Millennium's GT's Kombucha Beverages – comprised of the "G.T.'s

14   Kombucha" and "Synergy" brands - are nearly identical products, with identical

15   advertising, using different names.  The name "Kombucha" itself comes from the

16   common name for what is essentially a fermented tea drink.  Kombucha is made of

17   tea that ferments for up to a month while a "blob" of bacteria known as "scoby" (for

18   symbiotic colony of bacteria and yeast) floats on top.  The scoby purportedly "eats

19   the sugar, tannic acids, and caffeine in the tea, and creates a cocktail of live

20   microorganisms."[2]  Millenium's "G.T.'s Kombucha" brand is advertised as 100

21   percent kombucha, while the bottles of the "Synergy" brand are labeled as "95%

22   G.T.'s Kombucha," with the other 5 percent consisting of various juices added for

23   taste.

24       15.   In 2010, major retailers throughout the country were forced to

25   immediately stop selling GT's Kombucha Beverages because it was discovered that

26

27   [2] Tom Foster, *Meet the King of Kombucha*, Inc. (Mar. 6, 2015),

28   http://www.inc.com/magazine/201503/tom-foster/the-king-of-kombucha.html

the beverages contained alcohol levels as high as 2.5 percent by volume, roughly five times the legal limit for nonalcoholic beverages.  In response, Millennium released an "Enlightened" line of the products, aptly named "Enlightened Synergy" and "GT's Enlightened Kombucha."  The Enlightened line was purportedly slightly altered to ensure that the products did not exceed the .5 percent alcohol by volume threshold, but the antioxidant advertising on the products' labels stayed almost identical.

16.     Millennium continues to distribute, market, and sell the original versions of both Synergy and GT's Kombucha, with alcohol levels around 2.5 percent by volume.  These original versions are marketed as GT's Classic Kombucha and Classic Synergy.  Millennium's "Classic" line now bears a "Government Warning" on its labels concerning the consumption of alcoholic beverages. Accordingly, purchasers of the Classic beverages must be over 21 years of age to purchase the products.

17.     Every flavor in Millennium's "Classic" beverage line[3] bears the following nutrient content claims characterizing antioxidants on the bottles' labels:

- "antioxidants"
- A section of the "Nutrition Facts" panel contains an "ANTIOXIDANTS & ORGANIC ACIDS" segment, which lists "EGCG 100mg" as the amount and type of "antioxidants" in the bottles.

18.     Millennium's "Enlightened" line[4] of beverages is almost identical to the Classic line in both content and advertising.  The only differences between the

---

[3] The following flavors comprise Millennium's "GT's Classic Kombucha" line: Original, Citrus, Gingerade, Multi-Green, and Third Eye Chai.  The following flavors comprise Millennium's "Classic Synergy" line: Trilogy, Cosmic Cranberry, Gingerberry, Divine Grape, Superfruits, Strawberry Serenity, Maqui Berry Mint, and Raspberry Rush.  Each of the various flavors bears identical representations on the bottles' labels characterizing antioxidants as described herein.

[4] The following flavors comprise Millennium's "GT's Enlightened Kombucha" line: Original, Citrus, Gingerade, Multi-Green, Botanic No. 3, Botanic No. 7, and Botanic

Enlightened and Classic lines is that the Enlightened line does not cross the .5 percent alcohol by volume threshold and five flavors in the Enlightened line contain "chia seeds." The alcoholic content and the presence of chia seeds do not affect the antioxidant content in the beverages. As such, all of the beverages in the Classic and Enlightened lines are similarly mislabeled.

19.   The following image is an example of a Classic Synergy bottle (left), standing next to an identical flavor of the Enlightened Synergy line:



No. 9. The following flavors comprise Millennium's "Enlightened Synergy" line: Trilogy, Mystic Mango, Cosmic Cranberry, Guava Goddess, Gingerberry, Passionberry Bliss, Strawberry Serenity, Black Chia, Cherry Chia, Grape Chia, Green Chia, and Raspberry Chia. Each of the flavors bears statements characterizing antioxidants as alleged herein.

20.     Every flavor in GT's Enlightened Kombucha and Enlightened Synergy lines that do not contain chia seeds[5] bears the following nutrient content claims characterizing antioxidants on the bottles' labels:

- "antioxidants"
- "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from the inside out."
- A section of the "Nutrition Facts" panel contains an "ANTIOXIDANTS & ORGANIC ACIDS" segment, which lists "EGCG 100mg" as the amount and type of "antioxidants" in the bottles.[6]

21.     Every flavor in the Enlightened Synergy line that contains chia seeds bears the following nutrient content claims characterizing antioxidants on the bottles' labels:

- "antioxidants"
- "RAW CHIA = RAW ENERGY.  Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body. Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha."
- A section of the "Nutrition Facts" panel contains an "ANTIOXIDANTS & ORGANIC ACIDS" segment, which lists "EGCG 100mg" as the amount and type of "antioxidants" in the bottles.[7]

---

[5] The following flavors of Enlightened Synergy contain chia seeds: Black Chia, Cherry Chia, Grape Chia, Green Chia, and Raspberry Chia.

[6] *See* Exhibit A for an example of an Enlightened Synergy label.  *See* Exhibit B for an example of a GT's Enlightened Kombucha label.

22.     Millennium's common advertising campaign has, for years, touted statements characterizing antioxidants in GT's Kombucha Beverages as one of the primary reasons to buy the products.  In turn, consumers relied and continue to rely on Millennium's characterization of antioxidants in GT's Kombucha Beverages when purchasing the products.

## GT's Kombucha Beverages Are Misbranded Under Identical State And Federal Laws

23.     Identical federal and California laws regulate the content of labels on packaged food.  The requirements of the federal Food, Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").  Under California law "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) [21 U.S.C. Sec. 343(r)] of the federal act and the regulations adopted pursuant thereto."  California Health & Safety Code § 110670.

24.     Similarly, New York law also adopts by reference the regulatory requirements under the FDCA.  New York's Agriculture and Marketing Law provides in language that mirrors the FDCA, that food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular." N.Y. Agm. Law § 201(1). Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations of the State of New York (1 N.Y.C.R.R. § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the Code of Federal Regulations (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (3) Part 101 of title 21 of the

---

[7] *See* Exhibit C for an example of an Enlightened Synergy with Chia label.

Code of Federal Regulations, containing the Federal definitions and standards for Food Labeling (including Appendices) …

25.    Nutrient content claims using the term "antioxidant" must comply with the requirements listed in 21 C.F.R. 101.54(g).  Under 21 C.F.R. § 101.54(g), a nutrient content claim that characterizes the level of antioxidant nutrients present in a food may only be used if: "(1) An RDI (Reference Daily Intake) has been established for each of the nutrients;  (2) The nutrients that are the subject of the claim have recognized antioxidant activity … ; (3) The level of each nutrient that is the subject of the claim is sufficient to qualify for the [type of claim made]; and (4) The names of the nutrients that are the subject of the claim are included as part of the claim (e.g., 'high in antioxidant vitamins C and E').  Alternatively, when used as part of a nutrient content claim, the term 'antioxidant' or 'antioxidants' (as in 'high in antioxidants') may be linked by a symbol (e.g. an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label followed by the name or names of the nutrients with recognized antioxidant activity."  The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 C.F.R. 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act.

26.    The regulations regarding antioxidant nutrient content claims have been made clear by prior FDA actions targeting similar or identical claims.  For example, on August 23, 2010, the FDA sent Unilever, Inc. a warning letter that specifically identified unauthorized antioxidant nutrient content claims that Unilever made on Lipton Green Tea's label and on its website.  In the letter, the FDA explained that the statement "LIPTON Tea is made from tea leaves rich in naturally protective antioxidants," did not comply with 21 C.F.R. 101.54(g) because it did not "include the nutrients that are the subject of the claim or use a symbol to link the term 'antioxidant' to those nutrients."  Accordingly, the FDA determined that the claim misbranded Lipton Green Tea under section 403(r)(2)(A)(i) of the Act.   Likewise,

the FDA concluded that the statement "packed with protective FLAVONOID ANTIOXIDANTS" did not comply with 21 C.F.R. 101.54(g) because no RDI has been established for flavonoids.  Because the statements were unauthorized nutrient content claims, the FDA concluded that Lipton Green Tea was misbranded. [8]

27.    The FDA has explained that violations of 21 C.F.R. 101.54(g) occur even where a nutrient with an established RDI is present in a food bearing a label using the term "antioxidant" if the nutrient with the established RDI does not account for 100% of the claimed antioxidant value.  On August 30, 2010, the FDA sent a letter to the Dr. Pepper Snapple Group, manufacturers of Canada Dry Sparkling Green Tea Ginger Ale, warning that its labels were misbranded pursuant to 21 C.F.R. 101.54(g).  The FDA explained:

> The nutrient content claim for your Sparkling Green Tea Ginger Ale product of "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM GREEN TEA & VITAMIN C** .... **Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" identifies Vitamin C as a nutrient associated with the antioxidant claim. Vitamin C is a nutrient that is a recognized source of antioxidants. Your Nutrition Facts panel declares Vitamin C at 100% of the Daily Reference Value (DRV), which accounts for 60 mg of the claimed 200 mg of antioxidants. According to the nutrient content claim on your product label, the remainder 140 mg of antioxidants must be derived from green tea or green tea flavonoids, which are not nutrients with recognized antioxidant activity under 21 CFR § 101.54(g)(2). Therefore, the claim "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM GREEN TEA & VITAMIN C** .... **Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" does not meet the requirements of 21 CFR 101.54(g) and misbrands your product under section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)). [9]

28.    Of particular relevance here, the labels of GT's Kombucha Beverages claim that the "Antioxidants" found in the beverages are 100 milligrams of "EGCG." EGCG stands for Epigallocatechin gallate, and is a type of catechin commonly found in tea.  On February 22, 2010, the FDA sent a letter to Redco Foods, Inc. warning

---

[8] *See* 8/23/2010 FDA Warning Letter to Unilever, Inc. attached hereto as Exhibit D.

[9] *See* 8/30/2010 FDA Warning Letter to Dr Pepper Snapple Group, attached hereto as Exhibit E.

Redco that its green tea products violated the FDCA.  The FDA determined that Redco's green tea label bore the following unauthorized nutrient content claim:

> One of the antioxidants known as EGCG (Epigallocatechin gallate) is abundantly found in tea leaves.

The FDA determined that the claim did not comply with 21 C.F.R. 101.54(g)(1) because no RDI has been established for EGCG.[10]  In another example, on April 20, 2011, the FDA sent a letter to Diaspora Tea & Herb Co., LLC, the manufacturer of Rishi brand teas, warning the company that its White Tea products were misbranded. The FDA determined that the following label claim was an unauthorized nutrient content claim pursuant to 21 C.F.R. 101.54(g)(1) because "White Tea" does not have an established RDI:

> White Tea…contain[s] high concentrations of …antioxidant polyphenols (tea catechins)…[11]

(Omissions and alterations in original).  Thus it is irrelevant whether or not GT's Kombucha Beverages in fact contain 100 milligrams of EGCG or any other tea catechins.  The marketing of EGCG as the antioxidants in GT's Kombucha Beverages is itself misleading and misbrands the products because neither tea nor EGCG are recognized antioxidants or nutrients under the FDCA.

29.     The FDA further clarified the requirements of 21 C.F.R. 101.54(g) in compliance guides concerning the use of the term "antioxidant" on food labels.  In a June 2008 "Guidance for Industry" document, the FDA made the requirements of 21 C.F.R. 101.54(g) perfectly clear:

> Does the label claim have to include the name of the nutrient that is an antioxidant, or can the claim simply say "antioxidants?"

---

[10] *See* 2/22/2010 FDA Warning Letter to Redco Foods, Inc. attached hereto as Exhibit F.

[11] *See* 4/20/2011 FDA Warning Letter to Diaspora Tea & Herb Co., LLC attached hereto as Exhibit G.

CLASS ACTION COMPLAINT

13

The names of the nutrients that are the antioxidants must appear in the claim. For example, "high in antioxidant vitamins C and E."

30.    Here, Millenium's marketing campaign for GT's Kombucha Beverages is centered on the characterization of antioxidants in the products and the use of nutrient content claims using the term "antioxidant."  However, the labels of GT's Kombucha Beverages do not state which recognized antioxidant nutrients, if any, are the subject of their antioxidant claims.  There is no symbol that refers to another symbol somewhere else on the label followed by the name or names of the nutrients with recognized antioxidant activity.  For these reasons, GT's Kombucha Beverages are misbranded in violation of parallel state and federal laws.

31.    GT's Kombucha Beverages do not contain a single antioxidant nutrient with an established RDI.  If GT's Kombucha Beverages in fact contain any antioxidant nutrients with an established RDI, such information is solely within Defendant's possession and consumers cannot reasonably obtain such information.  Further, if Defendant's antioxidant claims in fact refer to any antioxidant nutrients with an established RDI, the identity of such nutrients is solely within Defendant's possession and consumers cannot reasonably obtain such information.  This information is material to Plaintiffs and the Class, and the withholding of such information is misleading and misbrands the products.

**Consumers Are Misled By Millennium's Unlawful Antioxidant Marketing**

32.    Millennium's antioxidant advertising is a calculated ruse to capitalize on consumers demand for products with antioxidants.[12]  However, identical federal, California, and New York law bans such advertising because it is misleading.

---

[12] According to a consumer survey by Bossa Nova, half of adults rank antioxidants as the top nutrient they are most concerned about adding to their diets – ahead of calcium, fiber and iron.  *See* New Survey Finds Antioxidants #1 Nutrient Concern Amongst Consumers, PR Newswire. http://www.prnewswire.com/news-releases/new-survey-finds-antioxidants-1-nutrient-concern-amongst-consumers-106440093.html.

33.     The FDA specifically proposed paragraph (g) to 21 C.F.R. 101.54 to "ensure that consumers are not confused or misled" by nutrient content claims using the term "antioxidants."   The FDA's proposal to add a regulation to standardize nutrient content claims using the term "antioxidants" followed an informal FDA survey that found that claims like "high in antioxidants" often referred "to a variety of nutrients and other dietary ingredients that are present in widely varying amounts."  The FDA concluded that such inconsistent use of antioxidant nutrient content claims "leads to consumer confusion."

34.     The FDA noted that part of the confusion stems from the fact that:

> The term 'antioxidants' is unique in comparison to the names of other nutrients associated with nutrient content claims.  Unlike previously approved nutrient content claims that characterize the level of a particular nutrient (e.g., 'low sodium'), a term such as 'high in antioxidants' ties a claim (i.e., 'high') to a class of nutrients that share a specific characteristic (i.e., they are antioxidants) whose very name indicates a metabolic function.

35.     Accordingly, because the use of the term "antioxidant" implies health benefits, the FDA specifically sought to curtail the use of antioxidant statements related to food products that do not contain antioxidant nutrients recommended for the daily diet.  In the FDA's view, consumers are misled and confused when products like GT's Kombucha Beverages are advertised as "packed" with antioxidants,  "high in" antioxidants, a source of "many" antioxidants, or containing a "blend" of "powerful antioxidants" when those  products do not contain an essential nutrient with recognized antioxidant activity that also has an established RDI.

36.     For example, the statement that GT's Kombucha Beverages provide a "unique blend" of "powerful antioxidants" misleadingly suggests that the beverages provide superior antioxidant content than foods and beverages with antioxidant nutrients like vitamin C that have antioxidant properties as well as nutritional value. Likewise, the statement that GT's Kombucha Beverages have "more antioxidants

than blueberries" misleadingly suggests that the beverages provide superior antioxidant content to blueberries, even though blueberries contain Vitamins A and C and the mineral Magnesium, which have established RDIs and are recognized as a *nutritional* source of antioxidants.  Contrary to Millenniums' labeling statements that tout the antioxidant content of its tea beverages, the FDA has determined that antioxidant vitamins, rather than teas like GT's Kombucha Beverages, are the superior method for incorporating antioxidants in the daily diet.  In other words, the characterization of the word "antioxidant" on GT's Kombucha Beverages' labels deceives consumers into believing that GT's Kombucha Beverages provide more antioxidants and are superior to foods that contain the requisite amount of real nutrients that the FDA has determined provide antioxidants and are essential to daily human nutrition.

37.    Medical professionals agree with the FDA.  For example, Jeffrey B. Blumberg, PhD, a professor and the director of the Antioxidants Research Laboratory at Tufts University explained that the one "problem" with the "Antioxidant Message" that products are "high or rich in antioxidants" is that it deceives consumers by "making people think it's no longer the vitamins, minerals, or fiber but only the phytochemicals that promote health … But the reason plant foods are good for you is because of everything they contain.  There's synergy for all of these ingredients – synergies between ingredients in one food and between multiple foods."[13]

38.    The Harvard School of Public Health has also opined that it is critical to differentiate between different types of antioxidants, as the FDA has done through its requirement that manufacturers list nutrients with established RDI's any time they

---

[13] *That's why the Dietary Guidelines for Americans recommends we consume a diversity of fruits, vegetables, and whole grains.*'"  Palmer, Sharon, *Dietary Antioxidants – Do Foods and Supplements With High Antioxidant Values Guarantee Better Health?*  Vol. 15 No. 4 P. 42 (Apr. 2013) (emphasis added)  *available at* http://www.todaysdietitian.com/newarchives/040113p42.shtml.

CLASS ACTION COMPLAINT

16

make nutrient content claims using the term "antioxidant."  The Harvard School of Public Health Nutrition Source, an online publication of the School of Public Health, instructs that "using the term 'antioxidant' to refer to substances is misleading.  It is really a chemical property, namely, the ability to act as an electron donor.  Some substances that act as antioxidants in one situation may be prooxidants—electron grabbers—in a different chemical milieu.  Another big misconception is that antioxidants are interchangeable.  They aren't.  Each one has unique chemical behaviors and biological properties. They almost certainly evolved as parts of elaborate networks, with each different substance (or family of substances) playing slightly different roles.  This means that no single substance can do the work of the whole crowd."[14]

39.    The FDA's and Dr. Blumberg's conclusions about consumer confusion are well founded, as a "recent study conducted by researchers at the University of Houston found that simply placing a healthy euphemism [like antioxidant] on a food package made people believe it was healthier than others that made no obvious health claims." [15]  Here GT's Kombucha Beverages mislead consumers into believing that the products are superior because they contain a "unique blend" of "powerful antioxidants," even though the products do not contain a single nutrient with recognized antioxidant activity and with an established RDI.  GT's Kombucha Beverages advertising goes so far as to claim that its beverages contain "more antioxidants than blueberries," even though blueberries contain antioxidant nutrients with established RDI's while GT's Kombucha Beverages do not.

---

[14] *Antioxidants: Beyond the Hype*, Harvard School of Public Health Source, available at http://www.hsph.harvard.edu/nutritionsource/antioxidants/

[15] *See Healthy Labels Magic Words Regardless of Food Inside* (June 19, 2014) *available at* http://guardianlv.com/2014/06/healthy-labels-magic-words-regardless-of-the-food-inside/

CLASS ACTION COMPLAINT

40.     Millennium has made, and continues to make, unlawful and misleading claims on the food labels of GT's Kombucha Beverages that are prohibited by identical federal, California, and New York law and which render these products misbranded.  Under federal, California, and New York law, GT's Kombucha Beverages cannot legally be manufactured, distributed, held, or sold.

## CLASS REPRESENTATION ALLEGATIONS

41.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased GT's Kombucha Beverages.

42.     Plaintiff Manire also seeks to represent a subclass defined as all members of the Class who purchased GT's Kombucha Beverages in California (the "California Subclass").

43.     Plaintiffs Manire and Retta also seek to represent a subclass defined as all members of the Class who purchased GT's Kombucha Beverages in New York (the "New York Subclass").

44.     Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

45.     Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

46.     Also excluded from the Class are persons or entities that purchased GT's Kombucha Beverages for purposes of resale.

47.     Plaintiffs are members of the Class they seek to represent.

48.     Defendant sells hundreds of thousands, if not millions, of bottles of GT's Kombucha Beverages.  GT's Kombucha Beverages are available in major supermarkets nationwide, including in California and New York.  Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, third party retailers, and vendors.

49.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether GT's Kombucha Beverages are misbranded, and whether the labeling, marketing and promotion of GT's Kombucha Beverages is false and misleading.

50.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to and relied on Defendant's false, misleading and misbranded labels, purchased GT's Kombucha Beverages, and suffered losses as a result of those purchases.

51.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

52.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all

parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>

<u>**Violation Of California's Consumers Legal Remedies Act,**</u>

<u>**California Civil Code §§ 1750, et seq.**</u>

53.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

54.    Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of members of the proposed Class against Defendant. Plaintiff Manire also brings this claim individually and on behalf of members of the proposed California Subclass.

55.    Plaintiffs and Class members are consumers who purchased GT's Kombucha Beverages for personal, family or household purposes. Plaintiffs and the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiffs and the Class members are not experts with the independent knowledge of the character, effectiveness, nature, level, or amount of antioxidants found in GT's Kombucha Beverages or kombucha beverages generally.

56.    GT's Kombucha Beverages that Plaintiffs and Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

57.    Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

58.    Defendant's antioxidant nutrient content claims including, (a) "antioxidants," (b) "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out," (c) The "ANTIOXIDANTS & ORGANIC ACIDS" section of the Nutrition Facts label, which lists "EGCG 100mg" as the type and amount of the "antioxidants" in the bottles, and (d) "Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body. Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha" characterize the level of antioxidants in GT's Kombucha Beverages because (1) there are no nutrients with recognized antioxidant properties with RDIs in GT's Kombucha Beverages and (2) the antioxidant nutrient content claims do not include the nutrients that are the subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because Defendant's nutrient content claims do not comply with 21 C.F.R. § 101.54(g), Defendant sold misbranded products in California and nationwide during the Class Period.

59.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA,

because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular characteristics, benefits and quantities of the goods.

60.     Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular standard, quality or grade of the goods.

61.     Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

62.     Plaintiffs and Class members are not experts about the character, effectiveness, nature, level, or amount of antioxidants found in GT's Kombucha Beverages or kombucha beverages in general.  Plaintiffs and the Class acted reasonably when they purchased GT's Kombucha Beverages based on their belief that Defendant's representations were true and lawful.

63.     Plaintiffs and the Class suffered injuries caused by Defendant because (a) they would not have purchased GT's Kombucha Beverages on the same terms absent Defendant's representations; (b) they paid a price premium for GT's Kombucha Beverages due to Defendant's misrepresentations and unauthorized nutrient content claims; and (c) GT's Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

64.     On or about February 4, 2015, prior to filing this action, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  Plaintiffs Retta, Schofield, and Manire, collectively, on behalf of themselves and the proposed Class, served a letter via certified mail, return receipt requested, advising Millennium that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' letter is attached hereto as Exhibit H.

65.     Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT II

### Violation Of California's Unfair Competition Law, California Business & Professions Code §§ 17200, et seq.

66.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

67.     Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of the members of the proposed Class against Defendant.

68.     Plaintiff Manire also brings this claim individually and on behalf of members of the proposed California Subclass against Defendant.

69.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

70.     Defendant's antioxidant nutrient content claims including, (a) "antioxidants," (b) "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to

nourish your body from inside out," (c) The "ANTIOXIDANTS & ORGANIC ACIDS" section of the Nutrition Facts label, which lists "EGCG 100mg" as the type and amount of the "antioxidants" in the bottles, and (d) "Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body. Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha" characterize the level of antioxidants in GT's Kombucha Beverages because (1) there are no nutrients with recognized antioxidant properties with RDIs in GT's Kombucha Beverages and (2) the antioxidant nutrient content claims do not include the nutrients that are the subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because Defendant's nutrient content claims do not comply with 21 C.F.R. § 101.54(g), Defendant sold misbranded products in California and nationwide during the Class Period.

71.     Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the FDCA [21 U.S.C. 343(r)(1)(a)], California Health & Safety Code § 110670, the CLRA, the FAL and other applicable law as described herein.

72.     Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's advertising is of no benefit to consumers, and has been declared misleading to consumers by the FDA, medical professionals, and research institutions.  Creating consumer confusion regarding the properties and benefits of antioxidants is of no benefit to consumers. Defendant's failure to comply with FDCA and parallel California labeling requirements and deceptive advertising concerning the nature and effectiveness of

CLASS ACTION COMPLAINT

24

antioxidants in GT's Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

73.   Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiffs and the Class to believe that the nutrient content claims made about GT's Kombucha Beverages were lawful, authorized claims that met the minimum nutritional requirements for such claims, as described herein.

74.   Plaintiffs and Class members are not experts about the character, effectiveness, nature, level, or amount of antioxidants found in GT's Kombucha Beverages or kombucha beverages in general.  Plaintiffs and the Class acted reasonably when they purchased GT's Kombucha Beverages based on their belief that Defendant's representations were true and lawful.

75.   Plaintiffs and the Class lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased GT's Kombucha Beverages on the same terms absent Defendant's representations; (b) they paid a price premium for GT's Kombucha Beverages due to Defendant's misrepresentations and unauthorized nutrient content claims; and (c) GT's Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT III

### Violation Of California's False Advertising Law,
### California Business & Professions Code §§ 17500, et seq.

76.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

77.   Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of the members of the proposed Class against Defendant.

78.     Plaintiff Manire also brings this claim individually and on behalf of the members of the proposed California Subclass.

79.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

80.     Defendant engaged in a scheme of offering misbranded bottles of GT's Kombucha Beverages for sale to Plaintiffs and the Class members by way of product packaging, labeling, and other promotional materials.  These materials misrepresented and/or omitted the true content and nature of the misbranded bottles of GT's Kombucha Beverages.  Defendant's advertisements and inducements were made in and originated from California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the product packaging, labeling, and promotional materials were intended as inducements to purchase GT's Kombucha Beverages, and are statements disseminated by Defendant to Plaintiffs and Class members.  Defendant knew that these statements were unauthorized, inaccurate, and misleading.

81.     Defendant's antioxidant nutrient content claims including, (a) "antioxidants," (b) "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out," (c) The "ANTIOXIDANTS & ORGANIC ACIDS" section of the Nutrition Facts label, which lists "EGCG 100mg" as the type

and amount of the "antioxidants" in the bottles, and (d) "Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body. Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha" characterize the level of antioxidants in GT's Kombucha Beverages because (1) there are no nutrients with recognized antioxidant properties with RDIs in GT's Kombucha Beverages and (2) the antioxidant nutrient content claims do not include the nutrients that are the subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because Defendant's nutrient content claims do not comply with 21 C.F.R. § 101.54(g), Defendant sold misbranded products in California and nationwide during the Class Period.

82.     Defendant violated § 17500, *et seq*. by misleading Plaintiffs and the Class to believe that the nutrient content claims made about GT's Kombucha Beverages were lawful, authorized claims that met the minimum nutritional requirements for such claims, as described herein.

83.     Defendant knew or should have known, through the exercise of reasonable care that GT's Kombucha Beverages was and continues to be misbranded, and that their representations about the antioxidant nutrient content of GT's Kombucha Beverages were unauthorized, inaccurate, and misleading.

84.     Plaintiffs and the Class lost money or property as a result of Defendant's FAL violation because (a) they would not have purchased GT's Kombucha Beverages on the same terms absent Defendant's representations; (b) they paid a price premium for GT's Kombucha Beverages due to Defendant's misrepresentations and unauthorized nutrient content claims; and (c) GT's Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

**COUNT IV**

**Violation of New York's Deceptive and Unfair Trade Practices Act,**

**New York General Business Law § 349, et seq.**

85.     Plaintiffs Retta and Manire hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

86.     Plaintiffs Retta and Manire bring this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

87.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

88.     Defendant's antioxidant nutrient content claims including, (a) "antioxidants," (b) "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out," (c) The "ANTIOXIDANTS & ORGANIC ACIDS" section of the Nutrition Facts label, which lists "EGCG 100mg" as the type and amount of "antioxidants" in the bottles, and (d) "Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body.  Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha" characterize the level of antioxidants in GT's Kombucha Beverages because (1) there are no nutrients with recognized antioxidant properties with RDIs in GT's

Kombucha Beverages and (2) the antioxidant nutrient content claims do not include the nutrients that are the subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because Defendant's nutrient content claims do not comply with 21 C.F.R. § 101.54(g), which has been incorporated by reference under New York state regulations, 1 N.Y.C.R.R. § 259.1, Defendant sold misbranded products in New York during the Class Period.  Further, Defendant's labeling and advertising practices are of no benefit to consumers, and have been declared misleading to consumers by the FDA, medical professionals, and research institutions.  Defendant's failure to comply with FDCA and parallel New York labeling requirements and deceptive advertising concerning the nature and effectiveness of antioxidants in GT's Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).  Accordingly, Defendant's practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets Law § 201 in that GT's Kombucha Beverages are misbranded.

89.    The foregoing deceptive acts and practices were directed at consumers.

90.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of GT's Kombucha Beverages to induce consumers to purchase same.

91.    Plaintiffs Retta and Manire and the New York Subclass members suffered a loss as a result of Defendant's deceptive and unfair trade acts.  Specifically, as a result of Defendant's deceptive and unfair trade acts and practices, Plaintiffs Retta and Manire and the New York Subclass members suffered monetary losses associated with the purchase of GT's Kombucha Beverages because (a) they would not have purchased GT's Kombucha Beverages on the same terms absent Defendant's representations; (b) they paid a price premium for GT's Kombucha

Beverages due to Defendant's misrepresentations and unauthorized nutrient content claims; and (c) GT's Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Retta, Schofield, and Manire as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b) For an order certifying the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Manire as representative of the California Subclass and Plaintiffs' attorneys as Class Counsel to represent the California Subclass members;

c) For an order certifying the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Retta and Manire as representatives of the New York Subclass and Plaintiffs' attorneys as Class Counsel to represent the New York Subclass members;

d) For an order declaring that Defendant's conduct violates the statutes referenced herein;

e) For an order finding in favor of Plaintiffs, the Class, the California Subclass, and the New York Subclass on all counts asserted herein;

f) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

g) For prejudgment interest on all amounts awarded;

h) For an order of restitution and all other forms of equitable monetary relief;

i) For injunctive relief as pleaded or as the Court may deem proper; and

j) For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  March 11, 2015                    Respectfully submitted,

                                      **BURSOR & FISHER, P.A.**

                                      By:_____*/s/ Yeremey Krivoshey*_____
                                                   Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
        apersinger@bursor.com
        ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT                                                                31

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Jonathan Retta, declare as follows:

1.      I am a plaintiff in this action.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place because Millennium Products, Inc. is a California company, is headquartered in this District, and sells hundreds of thousands of its products, including GT's Kombucha Beverages, in this District.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March  9 , 2015 in   ANNANDALE, VA                                 .

_____

JONATHAN RETTA

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Kirsten Schofield, declare as follows:

1.     I am a plaintiff in this action.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.     The complaint filed in this action is filed in the proper place because Millennium Products, Inc. is a California company, is headquartered in this District, and sells hundreds of thousands of its products, including GT's Kombucha Beverages, in this District.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March __/__, 2015 in

_Louisville, Kentucky, USA_ .

KIRSTEN SCHOFIELD

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Jessica Manire, declare as follows:

1.    I am a plaintiff in this action.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.    The complaint filed in this action is filed in the proper place because Millennium Products, Inc. is a California company, is headquartered in this District, and sells hundreds of thousands of its products, including GT's Kombucha Beverages, in this District.  Further, I purchased GT's Kombucha Beverages in this District.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March 4, 2015 in

Denver, CO                              .

_____
JESSICA MANIRE

**EXHIBIT A**

# SYNERGY
*organic & raw*

Our **ENLIGHTENED**™ line of GT's Kombucha is a new interpretation of an ancient elixir. It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us. With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from the inside out.



**Ingredients:** G.T.'s organic raw kombucha*, blueberry juice*, fresh pressed ginger juice*, and 100% pure love!!!

*Organically produced

Gluten-free • Vegan • Non-GMO

This product contains a trace amount of alcohol.

**KEEP REFRIGERATED**
**DO NOT SHAKE**

5¢ REF. ME & HI. PLEASE RECYCLE
**CA CASH REFUND**




7  22430 60016  1

## Nutrition Facts
Serving Size 8 fl. oz.
Servings Per Container 2

**Amount Per Serving**

Calories 35 — Calories from Fat 0

| | % Daily Value* |
|---|---|
| **Total Fat** 0g | 0% |
| **Cholesterol** 0mg | 0% |
| **Sodium** 10mg | 1% |
| **Total Carbohydrate** 8g | 2% |
| Sugars 4g | |
| **Protein** 0g | |

**ADDITIONAL NUTRIENTS (per bottle):**
Folate       25%    •    Vitamin B1   20%
Vitamin B2  20%    •    Vitamin B3   20%
Vitamin B6  20%    •    Vitamin B12  20%

**PROBIOTIC ORGANISM CONTENT:**
Bacillus coagulans GBI-30 6086: 1 billion
S. Boulardii: 1 billion

**ANTIOXIDANTS & ORGANIC ACIDS**
EGCG 100mg - Glucuronic Acid 10 mg
L(+) Lactic Acid 25mg - Acetic Acid 30 mg

♥ **THIS IS A RAW FOOD** ♥ Strands of the culture may appear. These are natural, normal & only occur in raw kombucha.

*organic acids + amino + electrolytes*
*enzymes • probiotics • antioxidants*



**ENLIGHTENED**

reawaken
rebirth
repurpose
redefine



**GINGERBERRY**®

16 fl oz     95% G.T.'s Kombucha     480 mL

*G.T. Dave began bottling Kombucha in 1995 from his mother's kitchen. He had no business plan, just a desire to share this gift with anybody who could benefit from it. Although G.T.'s Kombucha has grown from its humble beginnings, he remains committed to expanding the company gradually and organically, never sacrificing quality for the sake of profits.*



**WORDS OF ENLIGHTENMENT**

There's comfort to be found in realizing our complete human connectedness.

Matt Phelps
Bonner College Eagle
Napa Valley, CA

Want to see YOUR quote on OUR labels?
We invite you to Enlighten us @
facebook.com/GTSynergykombucha

*Kombucha is a food product and is not intended to diagnose, treat, cure or prevent any disease. If you are pregnant or breast feeding, please consult with your healthcare professional before consuming our products.*

**MILLENNIUM PRODUCTS, INC**
P.O. Box 2352, Beverly Hills, CA 90213 • (877)735-8423
synergy@GTSkombucha.com • www.GTSkombucha.com
Certified Organic by Organic Certifiers, Inc.

**EXHIBIT B**



## Nutrition Facts

Serving Size 8 fl. oz.
Servings Per Container 2

**Amount Per Serving**

Calories 35            Calories from Fat 0

|  | % Daily Value* |
|---|---|
| Total Fat 0g | 0% |
| Cholesterol 0mg | 0% |
| Sodium 10mg | 1% |
| Total Carbohydrate 7g | 2% |
| Sugars 2g | |
| Protein 1g | |

**ADDITIONAL NUTRIENTS** (per bottle):

| | |
|---|---|
| Folate        25% | • Vitamin B1   20% |
| Vitamin B2  20% | • Vitamin B3   20% |
| Vitamin B6  20% | • Vitamin B12 20% |

**PROBIOTIC ORGANISM CONTENT:**
*Bacillus coagulans* GBI-30 6086: 1 billion
S. Boulardii: 1 billion

**ANTIOXIDANTS & ORGANIC ACIDS**
EGCG 100mg · Glucuronic Acid 10 mg
L(+) Lactic Acid 25mg · Acetic Acid 30 mg

**Ingredients:** 100% G.T.'s organic raw kombucha* klamath mountain blue-green algae*, spirulina*, chlorella* and 100% pure love!!!
*Organically produced.
Gluten-free • Vegan • Non-GMO
This product contains a trace amount of alcohol.

KEEP REFRIGERATED – DO **NOT** SHAKE

CA CASH REFUND   5¢ REF. ME & HI.  PLEASE RECYCLE.

7  22430  14016  2

*G.T. Dave* began bottling Kombucha in 1995 from his mother's kitchen. He had no business plan, just a desire to share this gift with anybody who could benefit from it. Although G.T.'s Kombucha has grown from its humble beginnings, he remains committed to expanding the company gradually and organically, never sacrificing quality for the sake of profits.

### GT'S ENLIGHTENED™

## Organic Raw
# KOMBUCHA™

*Living Food for the Living Body.®*

reawaken   rethink   rekindle   redefine   relive

### enzymes+probiotics+antioxidants

rebirth   repurpose   reinvent   reclaim   restart

## MULTI-GREEN™

16 fl oz

480 mL

♥THIS IS A RAW FOOD♥
Strands of the culture may appear. These are natural, normal & only occur in raw kombucha.

### WORDS OF ENLIGHTENMENT

" Oh what a tangled web we weave... but the web we weave wouldn't be so tangled if the web we weaved was our own."

- Paul Dubay
  Animal Control Officer
  Windham, ME

Got words of your own?
Enlighten us@
facebook.com/GTSsynergykombucha

• Kombucha is a food product and is not intended to diagnose, treat, cure or prevent any disease. If you are pregnant or breast feeding, please consult with your healthcare professional before consuming our products.

MILLENNIUM PRODUCTS, INC
P.O. Box 2352, Beverly Hills, CA 90213
Contact us: Toll Free (877) 735-8423
drinks4life@GTSkombucha.com
www.GTSkombucha.com

Certified Organic by Organic Certifiers, Inc.

**Our ENLIGHTENED™ line of GT's Kombucha** is a new interpretation of an ancient elixir. It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us. With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from the inside out.

**Suggested Use:** For best results, drink at least one bottle a day. Product can be consumed before, during, or after meals. To ensure maximum freshness, drink within 3 days after opening.

**EXHIBIT C**

**RAW CHIA = RAW ENERGY.** Often called "runner's food", chia is a nutrient-rich superfood that provides sustained energy for your body. Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value. With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha.

Ingredients: G.T.'s organic raw kombucha*, raw chia seeds*, raspberry juice* and 100% pure love!!!

*Organically produced.
Gluten-free • Vegan • Non-GMO
This product contains a trace amount of alcohol.
**KEEP REFRIGERATED**
**HIGHLY PERISHABLE**
**SHAKE GENTLY**
5¢ REF. ME & HI. PLEASE RECYCLE
CA CASH REFUND


7 22430 22016 1



## Nutrition Facts

Serving Size 8 fl. oz.
Servings Per Container 2

**Amount Per Serving**

| | |
|---|---|
| Calories 70 | Calories from Fat 30 |

| | % Daily Value* |
|---|---|
| **Total Fat** 3g | 5% |
| Trans Fat 0g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 10mg | 1% |
| **Total Carbohydrate** 7g | 2% |
| Sugars 2g | |
| Dietary Fiber 4g | 16% |
| **Protein** 2g | 4% |

**ADDITIONAL NUTRIENTS** (per bottle):
Omega-3 (Alpha-Linolenic Acid) 4200 mg
Omega-6 (Linoleic Acid) 1400 mg
**PROBIOTIC ORGANISM CONTENT:**
Bacillus coagulans GBI-30 6086: 1 billion
S. Boulardii: 1 billion
**ANTIOXIDANTS & ORGANIC ACIDS**
EGCG 100mg • Glucuronic Acid 10 mg
L(+) Lactic Acid 25mg • Acetic Acid 30 mg

USDA ORGANIC

K Pareve

♥ **THIS IS A RAW FOOD** ♥  Chia seeds may vary in color, size, texture and flavor due to seasonal and crop variances.



# SYNERGY
## organic & raw

### ENLIGHTENED

reawaken
rebirth
repurpose
redefine

GT'S

organic acids + aminos + electrolytes

enzymes + probiotics + antioxidants

## RASPBERRY CHIA™

16 fl oz    95% G.T.'s Kombucha    480 mL

*G.T. Dave* began bottling Kombucha in 1995 from his mother's kitchen. He had no business plan, just a desire to share this gift with anybody who could benefit from it. Although G.T.'s Kombucha has grown from its humble beginnings, he remains committed to expanding the company gradually and organically, never sacrificing quality for the sake of profits.

### WORDS OF ENLIGHTENMENT

"Whatsoever you hope to accomplish, keep saying to yourself, 'It's worth the effort.'"

–Missy Astor
Thankfully retired
Red Wing, MN

Want to see YOUR quote on OUR Labels?
We invite you to Enlighten us@
facebook.com/GTsSynergyKombucha

*Kombucha is a food product and is not intended to diagnose, treat, cure or prevent any disease. If you are pregnant or breast feeding, please consult your healthcare professional before consuming our products.

MILLENNIUM PRODUCTS, INC
P.O. Box 2352, Beverly Hills, CA 90213 • (877)735-8423
synergy@GTSkombucha.com • www.GTSkombucha.com
Certified Organic by Organic Certifiers, Inc.

**EXHIBIT D**



# U.S. Food and Drug Administration
## Protecting and Promoting *Your* Health

## Inspections, Compliance, Enforcement, and Criminal Investigations

### Unilever United States, Inc. 8/23/10

**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
College Park, MD 20740

August 23, 2010

**WARNING LETTER**

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Michael B. Polk
President of Unilever Americas
Unilever, Inc.
700 Sylvan Avenue
Englewood, NJ 07632-3113

Re: CFSAN-OC-10-24

Dear Mr. Polk:

The Food and Drug Administration (FDA) has reviewed the label for your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product and reviewed your labeling for this product on your websites, www.lipton.com[1] and www.liptont.com[2] in August 2010. Based on our review, we have concluded that this product is in violation of the Federal Food, Drug, and Cosmetic Act (the Act). You can find the Act and regulations on FDA's website at www.fda.gov[3].

A link to .your website, www.lipton.com[4]. appears on your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product label. This website directs U.S. visitors to another website, www.liptont.com[5]. We have determined that your websites, www.lipton.com[6] and www.liptont.com[7]. are labeling within the meaning of section 201(m) of the Act for your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product.

**Unapproved New Drug**

Your website, www.liptont.com[8]. also promotes your Lipton Green Tea 100% Natural Naturally Decaffeinated product for conditions that cause it to be a drug under section 201(g)(1)(B) of the Act [21 U.S.C. § 321(g)(1)(B)].

For example, your webpage entitled "Tea and Health," subtitled "Heart Health Research" and further subtitled "Cholesterol Research" bears the following claim: "[F]our recent studies in people at risk for coronary disease have shown a significant cholesterol lowering effect from tea or tea flavonoids ... One of these studies, on post-menopausal women, found that total cholesterol was lowered by 8% after drinking 8 cups of green tea daily for 12 weeks ...."

The therapeutic claims on your website establish that the product is a drug because it is intended for use in the cure, mitigation, treatment, or prevention of disease. Your Lipton Green Tea 100% Natural Naturally Decaffeinated product is not generally recognized as safe and effective for the above referenced uses and,

therefore, the product is a "new drug" under section 201(p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior approval from FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

Your Lipton Green Tea 100% Natural Naturally Decaffeinated product is offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layperson can use this drug safely for its intended purposes. Thus, your Lipton Green Tea 100% Natural Naturally Decaffeinated product is misbranded under section 502(f)(1) of the Act in that the labeling for this drug fails to bear adequate directions for use [21 U.S.C. § 352(f)(1)] .

**Unauthorized Nutrient Content Claims**

Under section 403(r)(1)(A) of the Act [21 U.S.C. 343(r)(1)(A)], a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation, FDA) authorizing the use of such a claim. The use of a term, not defined by regulation, in food labeling to characterize the level of a nutrient misbrands a product under section 403(r)(1)(A) of the Act.

Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, an RDI must have been established for each of the nutrients that are the subject of the claim (21 CFR 101.54(g)(1)), and these nutrients must have recognized antioxidant activity (21 CFR 101.54(g)(2). The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e) (21 CFR 101.54(g)(3)). For example, to bear the claim "high in antioxidant vitamin C," the product must contain 20 percent or more of the RDI for vitamin C under 21 CFR 101.54(b). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity (21 CFR 101.54(g)(4)). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act.

Your webpage entitled "Tea and Health" and subtitled "Tea Antioxidants" includes the statement, "LIPTON Tea is made from tea leaves rich in naturally protective antioxidants." The term "rich in" is defined in 21 CFR 101.54(b) and may be used to characterize the level of antioxidant nutrients (21 CFR 101.54(g)(3)). However, this claim does not comply with 21 CFR 101.54(g)(4) because it does not include the nutrients that are the subject of the claim or use a symbol to link the term "antioxidant" to those nutrients. Thus, this claim misbrands your product under section 403(r)(2)(A)(i) of the Act.

This webpage also states that "tea is a naturally rich source of antioxidants." The term "rich source" characterizes the level of antioxidant nutrients in the product and, therefore, this claim is a nutrient content claim (see section 403(r)(1) of the Act and 21 CFR 101.13(b)). Even if we determined that the term "rich source" could be considered a synonym for a term defined by regulation (e.g., "high" or "good source"), nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). The claim "tea is a naturally rich source of antioxidants" does not include the nutrients that are the subject of the claim or use a symbol to link the term "antioxidant" to those nutrients, as required by 21 CFR 101.54(g)(4). Thus, this claim misbrands your product under section 403(r)(2)(A)(i) of the Act.

The product label back panel includes the statement "packed with protective FLAVONOID ANTIOXIDANTS." The term "packed with" characterizes the level of flavonoid antioxidants in the product; therefore, this claim is a nutrient content claim (see section 403(r)(1) of the Act and 21 CFR 101.13(b)). Even if we determined that the term "packed with" could be considered a synonym for a term defined by regulation, nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). The claim "packed with FLAVONOID ANTIOXIDANTS" does not comply with 21 CFR 101.54(g)1) because no RDI has been established for flavonoids. Thus, this unauthorized nutrient content claim causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

The above violations are not meant to be an all-inclusive list of deficiencies in your products or their labeling. It is your responsibility to ensure that all of your products are in compliance with the laws and regulations enforced by FDA. You should take prompt action to correct the violations. Failure to promptly correct these violations may result in regulatory actions without further notice, such as seizure and/or

injunction.

We note that your label contains a chart entitled "Flavonoid Content of selected beverages and foods." The chart appears to compare the amounts of antioxidants in your product with the amount of antioxidants in orange juice, broccoli, cranberry juice and coffee. However, the information provided may be misinterpreted by the consumer because although the chart is labeled, in part, "Flavonoid Content," the y-axis is labeled "AOX"; therefore, the consumer might believe that the chart is stating the total amount of antioxidants rather than specifically measuring the amount of flavonoids in the product.

You should take prompt action to correct these violations. Please respond to this letter within 15 days from receipt with the actions you plan to take in response to this letter, including an explanation of each step being taken to correct the current violations and prevent similar violations. Include any documentation necessary to show that correction has been achieved. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

You should direct your written reply to Latasha A. Robinson, Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5100 Paint Branch Parkway, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835.

Sincerely,

/s/

Jennifer A. Thomas
Acting Director
Office of Compliance
Center for Food Safety
and Applied Nutrition

cc: FDA New Jersey District

## Close Out Letter

- Unilever United States, Inc. - Close Out Letter 5/10/11[9]

Page Last Updated: 08/09/2011
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

     

For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of **Health & Human Services**

## Links on this page:

1. http://www.lipton.com/

2. http://www.liptont.com/

3. http://www.fda.gov

4. http://www.lipton.com/

5. http://www.liptont.com/

6. http://www.lipton.com/

7. http://www.liptont.com/

8. http://www.liptont.com/

9. /ICECI/EnforcementActions/WarningLetters/2010/ucm267398.htm

**EXHIBIT E**

Case 2:15-cv-01801-PSG-AJW   Document 1   Filed 03/11/15   Page 48 of 61   Page ID #:48



U.S. Department of Health & Human Services

a A A

## FDA U.S. Food and Drug Administration
Protecting and Promoting *Your* Health

A to Z Index | Follow FDA | En Español

SEARCH

Home | Food | Drugs | Medical Devices | Radiation-Emitting Products | Vaccines, Blood & Biologics | Animal & Veterinary | Cosmetics | Tobacco Products

# Inspections, Compliance, Enforcement, and Criminal Investigations

 

Home   Inspections, Compliance, Enforcement, and Criminal Investigations   Compliance Actions and Activities   Warning Letters

### Compliance Actions and Activities
- Warning Letters
- 2014
- 2013
- 2012
- 2011
- 2010
- 2009
- 2008
- 2007
- 2006
- 2005
- 2004
- 2003
- 2002
- 2001
- 2000
- 1999
- 1998
- 1997
- 1996
- Tobacco Retailer Warning Letters

## Dr Pepper Snapple Group 8/30/10

 **Department of Health and Human Services**

Public Health Service
Food and Drug Administration
College Park, MD 20740

**AUG 30 2010**

**WARNING LETTER**

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Mr. Larry D. Young
President and CEO
Dr Pepper Snapple Group
5301 Legacy Drive
Plano, Texas 75024

Re: CFSAN-OC-10-26

Dear Mr. Young:

The Food and Drug Administration (FDA) has reviewed the label for your Canada Dry Sparkling Green Tea Ginger Ale. We examined the product label and your website at www.canadadry.com in July of 2010. Based on our review, we have concluded that your green tea ginger ale product is in violation of the Federal Food, Drug, and Cosmetic Act (the Act). You can find the Act and regulations on FDA's website at www.fda.gov.

Your Sparkling Green Tea Ginger Ale is misbranded within the meaning of section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)] because the product label bears a nutrient content claim that is not authorized by regulation. Under section 403(r)(2)(A)(i) of the Act, a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation, FDA) authorizing the use of such a claim. The use of a term, not defined by regulation, in food labeling to characterize the level of a nutrient misbrands a product under section 403(r)(1)(A) of the Act.

Your Sparkling Green Tea Ginger Ale bears the claim, "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM GREEN TEA & VITAMIN C***" with the double asterisk referring to the statement, "** "Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" on the principal display panel of the product label. In the context of this label the term "enhanced" is an unauthorized synonym for a "more" nutrient content claim. FDA has defined the nutrient content claim "more" and its authorized synonyms in 21 CFR 101.54(e). "More" nutrient content claims may be used on the label or in the labeling of foods to describe the level of nutrients, provided that (1) the food contains at least 10 percent more of the Reference Daily Intake or Daily Reference Value for the nutrient per reference amount customarily consumed than an appropriate reference food, (2) where the claim is based on nutrients that are added to the food, that the fortification is in accordance with the policy on fortification of foods in 21 CFR 104.20, and (3) the claim bears the required information for relative claims as described in 21 CFR 101.130(2) and 101.54(e)(1)(iii).

Your Sparkling Green Tea Ginger Ale is a carbonated beverage. The policy on fortification in 21 CFR 104.20(a) states that the FDA does not consider it appropriate to fortify snack foods such as carbonated beverages. Additionally, the label of your product does not state the identity of a reference food and the percentage (or fraction) of the amount of the nutrient(s) in the reference food by which the nutrient(s) in the labeled food differs, as is required for "more" nutrient content claims under 101.130(2). Therefore, even if the term "enhanced" was an authorized synonym for "more," your product would not meet the requirements for a "more" claim under 21 CFR 101.54(e)(1).

Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, a Reference Daily Intake (RDI) must have been established for each of the nutrients that are the subject of the claim (21 CFR 101.54(g)(1)), and these nutrients must have recognized antioxidant activity (21 CFR 101.54(g)(2)). The level of each nutrient that is the subject of the claim must also be sufficient to qualify the claim under 21 CFR 101.54(b), (c), or (e) (21 CFR 101.54(g)(3)). For example, to bear the claim "high in antioxidant Vitamin C," the product must contain 20 percent or more of the RDI for Vitamin C under 21 CFR 101.54(b). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that

appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity (21 CFR 101.54(g)(4)). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act [21 U.S.C. § 343(r)(2)(A)(i)].

The nutrient content claim for your Sparkling Green Tea Ginger Ale product of "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM GREEN TEA & VITAMIN C** .... **Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" identifies Vitamin C as a nutrient associated with the antioxidant claim. Vitamin C is a nutrient that is a recognized source of antioxidants. Your Nutrition Facts panel declares Vitamin C at 100% of the Daily Reference Value (DRV), which accounts for 60 mg of the claimed 200 mg of antioxidants. According to the nutrient content claim on your product label, the remainder 140 mg of antioxidants must be derived from green tea or green tea flavonoids, which are not nutrients with recognized antioxidant activity under 21 CFR § 101.54(g)(2). Therefore, the claim "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM GREEN TEA & VITAMIN C** .... **Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" does not meet the requirements of 21 CFR 101.54(g) and misbrands your product under section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)].

The above violations are not meant to be an all-inclusive list of deficiencies in your products or their labeling. It is your responsibility to ensure that all of your products are in compliance with the laws and regulations enforced by FDA. You should take prompt action to correct these violations. Failure to promptly correct these violations may result in regulatory actions without further notice, such as seizure and/or injunction.

Please respond to this letter within 15 days from receipt with the actions you plan to take in response to this letter, including an explanation of each step being taken to correct the current violations and prevent similar violations. Include any documentation necessary to show that correction has been achieved. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

You should direct your written reply to Judith G. Dausch, Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5100 Paint Branch Parkway, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835.

Sincerely,

/s/

Jennifer Thomas
Acting Director
Office of Compliance
Center for Food Safety
and Applied Nutrition


cc: FDA Dallas District


Page Last Updated: 09/14/2010
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.



**FDA**

| Accessibility | Contact FDA | Careers | FDA Basics | FOIA | No Fear Act | Site Map | Transparency | Website Policies |

**U.S. Food and Drug Administration**
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

For Government   |   For Press

U.S. Department of Health & Human Services

- Combination Products
- Advisory Committees
- Science & Research
- Regulatory Information
- Safety
- Emergency Preparedness
- International Programs
- News & Events
- Training and Continuing Education
- Inspections/Compliance
- State & Local Officials
- Consumers
- Industry
- Health Professionals
- FDA Archive

**EXHIBIT F**

[Home](#) [Inspections, Compliance, Enforcement, and Criminal Investigations](#) [Compliance Actions and Activities](#) [Warning Letters](#)

**Inspections, Compliance, Enforcement, and Criminal Investigations**

## Redco Foods, Inc. 2/22/10



**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
College Park, MD 20740

**FEB 22 2010**

**WARNING LETTER**

**VIA OVERNIGHT MAIL**

Mr. Douglas N. Farrell, General Manager
Redco Foods, Inc.
One Hansen Island
Little Falls, NY 13365

Re: CFSAN-OC-10-10

Dear Mr. Farrell:

The Food and Drug Administration (FDA) has reviewed the label for your "Salada Naturally Decaffeinated Green Tea" product and your website www.greentea.com. Based on our review, we have concluded that your green tea products are in violation of the Federal Food, Drug, and Cosmetic Act (the Act). You can find the Act and regulations on FDA's website at www.fda.gov.

**Unapproved New Drug**

Your website, www.greentea.com. promotes your green tea products for conditions that cause them to be drugs under section 201(g)(1)(B) of the Act [21 U.S.C. § 321(g)(1)(B)]. Examples of disease claims that cause your products to be drugs include:

**On a web page entitled "About Green Tea":**

**"A Steaming Cup of Medicine" Article:**

- "And today, scientific [sic] are ... finding that green tea can ... inhibit the cancer process at virtually every stage, regulate cholesterol levels ... and ward off viruses, fungi and food-borne bacteria."

- "[I]t also helps inhibit dental plaque formation, lower the risk of type 2 diabetes ...."

**"The Origins of Tea" Article:**

- "By this time, tea was prized as a medicine that could cure digestive disorders ...

- "The tea leaves were also applied externally as a paste to ease the pains of rheumatism."

**"Is Green Tea a Brain Food?" Article:**

• "[R]ecent studies of the effects of green tea's catechins on animal brains are intriguing:

o "* Less buildup of plaque[.] Finally, mice specially bred to develop Alzheimer's disease developed up to 54% less beta-amyloid buildup in their brains when they were given daily injections of the green tea catechin EGCg.... Beta-amyloid plaques are believed to be a major cause of the brain cell death and dissue [tissue] loss seen in Alzheimer's disease."

The therapeutic claims on your website establish that your green tea products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease. Your green tea products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products are "new drugs" under section 201 (p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior approval from FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

Your green tea products are offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layperson can use these drugs safely for their intended purposes. Thus, your green tea products are misbranded under section 502(f)(1) of the Act in that the labeling for these drugs fails to bear adequate directions for use [21 U.S.C. § 352(f)(1)].

**Unauthorized Health Claims**

Your green tea products are further misbranded under section 403(r)(1)(B) of the Act [21 U.S.C. § 343(r) (1)(B)] because its labeling bears unauthorized health claims. Your website, www.greentea.com. was reviewed and was found to contain a number of unauthorized health claims, including:

**"Green Tea and the FDA: Who's Right?" Article:**

• "[O]ver the past 25 years, countless studies showing the positive effect of green tea on several important risk factors for cardiovascular disease have been published in scientific journals."

• "[M]ost studies have shown that green tea reduces certain CVD risk factors with a daily intake of 4-5 cups ...."

The above claims are unauthorized health claims because there is no health claim authorized by regulation or the Act that provides for health claims that characterize the relationship between green tea and cardiovascular disease.

**Unauthorized Nutrient Content Claims**

Under section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)], a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation FDA) authorizing the use of such a claim. The use of a term, not defined by regulation, in food labeling to characterize the level of a nutrient misbrands a product under section 403(r)(1)(A) of the Act.

Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, an RDI must have been established for each of the nutrients that are the subject of the claim (21 CFR 101.54(g)(1)), and these nutrients must have recognized antioxidant activity (21 CFR 101.54(g)(2)). The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e) (21 CFR 101.54(g)(3)). For example, to bear the claim "high in antioxidant vitamin C," the product must contain 20 percent or more of the RDI for vitamin C under 21 CFR 101.54(b)). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity (21 CFR 101.54(g)(4)). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act [21 U.S.C. § 343(r)(2)(A)(i)].

The principal display panel of the product label includes the statement "Fortified with Purple Antioxidants [/ Fortified with Grapeskins, Rooibos (Red Tea), Anthocyanins ..." In the context of the label, the term "antioxidants" refers, in part, to grapeskins, rooibos (red tea), and anthocyanins. The term "fortified" is defined by regulation and may be used to describe the level of certain substances for which an RDI or Daily Reference Value (DRV) has been established [21 CFR 101.54(e)]. However, there are no RDIs or DRVs for grapeskins, rooibos (red tea) or anthocyanins. Therefore, the claim "Fortified with Grapeskins, Rooibos (Red Tea), Anthocyanins" is unauthorized and misbrands your product under section 403(r)(1)(A) of the Act.

In addition, nutrient content claims using the term "antioxidant" may only be made for nutrients for which a Reference Daily Intake (RDI) has been established [21 CFR 101.54(g)(1)]. As noted above, there are no RDIs for grapeskins, rooibos (red tea) or anthocyanins. Therefore, the claim "Fortified with Purple Antioxidants ... Grapeskins. Rooibos (Red Tea), Anthocyanins" is an unauthorized nutrient content claim that causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

The label for this product also bears the unauthorized nutrient content claim "One of the antioxidants known as EGCG (Epigallocatechin gallate) is abundantly found in green tea leaves." This claim is a nutrient content claim because "abundantly found" characterizes the level of EGCG in your product [see section 403(r)(1) of the Act (21 U.S.C. § 343(r)(1)) and 21 CFR 101.13(b)]. Even if we determined that the term "abundantly found" could be considered a synonym for a term defined by regulation (e.g., "high" or "good source"), nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). This claim does not comply with 21 CFR 101.54(g)(1) because no RDI has been established for EGCG. Thus, this unauthorized nutrient content claim causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

The above violations are not meant to be an all-inclusive list of deficiencies in your products or their labeling. It is your responsibility to ensure that all of your products are in compliance with the laws and regulations enforced by FDA. You should take prompt action to correct the violations. Failure to promptly correct these violations may result in regulatory actions without further notice, such as seizure and/or injunction.

You should take prompt action to correct these violations. Please respond to this letter within 15 days from receipt with the actions you plan to take in response to this letter, including an explanation of each step being taken to correct the current violations and prevent similar violations. Include any documentation necessary to show that correction has been achieved. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

You should direct your written reply to Kathleen M. Lewis, Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5100 Paint Branch Parkway, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835.

Sincerely,

/S/

Roberta F. Wagner
Director
Office of Compliance
Center for Food Safety
and Applied Nutrition


cc: FDA New York District

Page Last Updated: 03/03/2010
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies


U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

     

For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of **Health & Human Services**

**Links on this page:**

**EXHIBIT G**



U.S. Department of **Health & Human Services**                    a A **A**

# FDA U.S. Food and Drug Administration
Protecting and Promoting *Your* Health

A to Z Index   |   Follow FDA   |   En Español

SEARCH

| Home | Food | Drugs | Medical Devices | Radiation-Emitting Products | Vaccines, Blood & Biologics | Animal & Veterinary | Cosmetics | Tobacco Products |

## Inspections, Compliance, Enforcement, and Criminal Investigations

 

Home   ◎   Inspections, Compliance, Enforcement, and Criminal Investigations   ◎   Compliance Actions and Activities   ◎   Warning Letters

**Compliance Actions and Activities**

Warning Letters
2014
2013
2012
2011
2010
2009
2008
2007
2006
2005
2004
2003
2002
2001
2000
1999
1998
1997
1996
Tobacco Retailer Warning Letters

### Diaspora Tea & Herb dba Rishi Tea 4/20/11



**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
Minneapolis District Office
Central Region
250 Marquette Avenue, Suite 600
Minneapolis, MN  55401
Telephone: (612) 334-4100
FAX: (612) 334-4142

April 20, 2011

**WARNING LETTER**

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Refer to MIN 11 – 21

Joshua Kaiser
President and Co-owner
Diaspora Tea & Herb Co., LLC
427 East Stewart Street
Milwaukee, Wisconsin  53207

Dear Mr. Kaiser:

This is to advise you that the Food and Drug Administration (FDA) reviewed your website at the Internet address http://www.rishi-tea.com/store/index.php in January 2011.  FDA has determined that your Oolong Tea, Ginger, Organic Botanical, Green Oolong Tea, 100% Premium Tealeaf Powder, and Pu-erh Tea products are promoted for conditions that cause the products to be drugs under section 201(g)(1)(B) of the Federal Food, Drug and Cosmetic Act (the Act), 21 U.S.C. § 321(g)(1)(B).  The therapeutic claims on your website establish that these products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease.  Additionally, FDA has determined that your Yerba Maté Shade Grown, Organic Yerba Maté, White Tea, Pu-erh Tea, Green Oolong Tea, 100% Premium Tealeaf Powder, Matcha, 100% Premium Tea Powder, Blueberry Rooibos, Organic Fair Trade Rooibos Blend, Green Rooibos (Green Bush), Organic Fair Trade Botanical, and Super Green, Organic Japanese Green Tea products are also misbranded within the meaning of section 403(r)(1)(A) of the Act, 21 U.S.C. § 343(r)(1)(A).  The marketing of these products with these claims violates the Act.  You can find copies of the Act through links on FDA's home page at http://www.fda.gov.

**I. Unapproved New Drugs**

Examples of disease claims on your website http://www.rishi-tea.com/store/ index.php include:

**Ginger, Organic Botanical**

• "[G]inger is used in food and drinks as a preventive medicine against colds [and] flus."

**Green Oolong Tea, 100% Premium Tealeaf Powder**

• "The powerful antioxidants found in tea are believed to help prevent cancer [and] lower cholesterol…."

**Pu-erh Tea**

• "Recent research suggests that consuming 5-8 cups of Pu-erh Tea each day can reduce cholesterol and plaque of the arteries."

**Oolong Tea**

• "Regular consumption of Oolong Tea is linked to the reduction of plaque in the arteries, reduction of cholesterol and lowering of blood sugar." 
• "Oolong Tea is…prized for its cholesterol reducing…."

Your Oolong Tea, Ginger, Organic Botanical, Green Oolong Tea, 100% Premium Tealeaf Powder and Pu-erh

Tea products are not generally recognized as safe and effective for the above referenced uses and, therefore, are also "new drugs" under section 201(p) of the Act, 21 U.S.C. § 321(p).  New drugs may not be legally marketed in the U.S. without prior approval from FDA, as described in section 505(a) of the Act, 21 U.S.C. § 355(a). FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

**II. Unauthorized Nutrient Content Claims**

Under section 403(r)(1)(A) of the Act, a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation, FDA) authorizing the use of such a claim.  Characterizing the level of a nutrient in food labeling of a product without complying with specific requirements pertaining to nutrient content claims for that nutrient misbrands the product under section 403(r)(1)(A) of the Act.

Nutrient content claims that use the defined terms "rich in" or "high" may be used in the labeling of a food only if the food contains 20 percent or more of the daily value (DV) of that nutrient per reference amount customarily consumed (RACC), Title 21, Code of Federal Regulations (21 CFR), 101.54(b)(1). Such claims may not be made about a nutrient for which there is no established DV.  However,  your website bears "high" and "rich in" nutrient content claims about nutrients for which there are no established DV.

The following are examples of unauthorized "high" and "rich in" nutrient content claims on your website:

**Pu-erh Tea**

- "[R]ich in Tea Polyphenols and Theaflavins…rich in Thearubigin and Theabrownin…."

**Super Green, Organic Japanese Green Tea**

- "Super Green is…high in amino acids…."

**White Tea**

- "White Tea…contain[s] high concentrations of…L-Theanine Amino Acid."

Additionally, your website bears nutrient content claims using the term "antioxidant."  Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, a Recommended Daily Intake (RDI) must have been established for each of the nutrients that are the subject of the claim, 21 CFR 101.54(g)(1), and these nutrients must have recognized antioxidant activity, 21 CFR 101.54(g)(2). The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e), 21 CFR 101.54(g)(3). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim, or alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity, 21 CFR 101.54(g)(4). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act.

The following are examples of nutrient content claims on your website that use the term "antioxidant" but do not include the names of the nutrients that are the subject of the claim as required under 21 CFR 101.54(g)(4):

**Yerba Maté Shade Grown, Organic Yerba Maté**

- "Yerba Maté is…rich in… antioxidants."

**Blueberry Rooibos, Organic Fair Trade Rooibos Blend**

- "Antioxidant-rich…."

**Green Rooibos (Green Bush), Organic Fair Trade Botanical**

- "Caffeine-free Green Rooibos…contain[s] high concentrations of antioxidants…."

Additionally, the following are examples of nutrient content claims on your website that use the term "antioxidant," but where the nutrients that are the subject of the claim do not have an established RDI as required under 21 CFR 101.54(g)(1):

**White Tea**

- "White Tea… contain[s] high concentrations of… antioxidant polyphenols (tea catechins)…."

**Matcha, 100% Premium Tea Powder**

- "Antioxidant rich…222mg polyphenols per serving!"

**Genmai Green Tea, 100% Premium Tealeaf Powder**

- "Antioxidant rich…65mg polyphenols per serving!"

**Green Oolong Tea, 100% Premium Tealeaf Powder**

- "Antioxidant rich…109mg polyphenols per serving!"
- "[R]ichest sources of flavonoid antioxidants…."

The above violations are not meant to be an all-inclusive list of deficiencies in your products and their labeling. It is your responsibility to ensure that products marketed by your firm comply with the Act and its implementing regulations. We urge you to review your website, product labels, and other labeling and promotional materials for your products to ensure that the claims you make for your products do not cause them to violate the Act. The Act authorizes the seizure of illegal products and injunctions against manufacturers and distributors of those products, 21 U.S.C. §§ 332 and 334. You should take prompt action to correct these violations and prevent their future recurrence.  Failure to do so may result in enforcement action without further notice.

Please respond in writing within 15 working days from your receipt of this letter. Your response should outline the specific actions you are taking to correct these violations and to prevent similar violations. Please include in your response documentation such as revised labels or other useful information that would assist us in evaluating your corrections. If you cannot complete all corrections before you respond, we expect that you will explain the reason for the delay and state when you will correct any remaining violations.

Your reply should be sent to the attention of Compliance Officer Tyra S. Wisecup at the address on the

letterhead.

Sincerely,

/s/

Gerald J. Berg
Director
Minneapolis District

## Close Out Letter

- Diaspora Tea & Herb Co., LLC - Close Out Letter 2/3/12

Page Last Updated: 02/10/2012
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

**FDA**

Accessibility    Contact FDA    Careers    FDA Basics    FOIA    No Fear Act    Site Map    Transparency    Website Policies

**U.S. Food and Drug Administration**
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

For Government    |    For Press

U.S. Department of **Health & Human Services**

Combination Products
Advisory Committees
Science & Research
Regulatory Information
Safety
Emergency Preparedness
International Programs
News & Events
Training and Continuing Education
Inspections/Compliance
State & Local Officials
Consumers
Industry
Health Professionals
FDA Archive

**EXHIBIT H**

# BURSOR & FISHER

P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

ANNICK M. PERSINGER
YEREMEY KRIVOSHEY
Tel: 925.300.4455
Fax: 925.407.2700
apersinger@bursor.com
ykrivoshey@bursor.com

January 29, 2015

*Via Certified Mail - Return Receipt Requested*

Millennium Products, Inc.
4646 Hampton St.
Vernon, California 90058

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my clients, Jonathan Retta, Kirsten Schofield, and Jessie Manire and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).  This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

You have participated in the manufacture, marketing, and sale of GT's Kombucha and Synergy.  GT's Kombucha and Synergy's labels include unauthorized nutrient content claims in violation of 21 C.F.R. 101.54(g), as well as federal and state law.  As a result, GT's Kombucha and Synergy products are misbranded.

Mr. Retta and Ms. Manire purchased GT's Kombucha and Synergy based on the antioxidant representations on the labels.  Ms. Schofield purchased GT's Kombucha based on the antioxidant representations on the labels.  They would not have purchased GT's Kombucha or Synergy absent the antioxidant claims on the labels.

Mr. Retta, Ms. Schofield, and Ms. Manire are acting on behalf of a class defined as all persons nationwide who purchased GT's Kombucha and/or Synergy (hereafter, the "Class").

To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel GT's Kombucha and Synergy; (2) issue an immediate recall on any GT's Kombucha and Synergy products bearing misbranded labels; and (3) make full restitution to all purchasers of GT's Kombucha and Synergy of all purchase money obtained from sales thereof.

**BURSOR&FISHER** P.A.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, and manufacturing process for GT's Kombucha and Synergy;

2. All communications with the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing and sales of GT's Kombucha and Synergy;

3. All documents concerning the advertisement, marketing, or sale of GT's Kombucha and Synergy; and

4. All communications with customers concerning complaints or comments concerning GT's Kombucha and Synergy.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Yeremey O. Krivoshey