SCOTT M. VOELZ (S.B. #181415)
svoelz@omm.com
DANIEL J. FARIA (S.B. #285158)
dfaria@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

Attorneys for Defendant
Millennium Products, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN RETTA, KIRSTEN SCHOFIELD, and JESSICA MANIRE, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MILLENNIUM PRODUCTS, Inc., <br><br> Defendant. | Case No. 2:15-CV-01801-PSG-AJW <br><br> **DEFENDANT MILLENNIUM PRODUCTS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge:  Hon. Philip S. Gutierrez <br> Hearing Date:  June 29, 2015 <br> Hearing Time:  1:30 PM <br><br> Complaint Filed:  March 11, 2015 <br> Trial Date:  Not Set |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 29, 2015 at 1:30 PM, or as soon thereafter as this Motion may be heard in Courtroom 880 of the above-entitled court, located at the Edward R. Roybal Federal Building, 255 E. Temple Street, Los Angeles, California 90012, defendant Millennium Products, Inc. will, and hereby does, move the Court for an order dismissing plaintiffs' Class Action Complaint or, in the alternative, striking portions of plaintiffs' Class Action Complaint.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 9, 2015.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 9(b), and 12(f) on the following grounds:

1. Plaintiff Schofield has not purchased Millennium products in California or New York and lacks standing to assert any of her claims.

2. Plaintiff Retta has not purchased Millennium products in California and lacks standing to assert his California law claims.

3. Plaintiffs have failed to plead their claims, which sound in fraud, with the particularity required by Federal Rule of Civil Procedure 9(b).

4. Plaintiffs fail to plausibly allege a violation of 21 C.F.R. § 101.54(g) or a sufficient likelihood that a reasonable consumer could be deceived by Millennium product labels.

5. The Complaint seeks to impose an interpretation of 21 C.F.R. § 101.54(g) not identical to that of the FDA, such that all of plaintiffs' claims are expressly preempted.

6. Plaintiffs' Fourth Cause of Action, brought under the New York General Business Law, is impliedly preempted as it is improperly predicated on an alleged violation of FDA regulations.

7. Plaintiffs lack Article III standing to assert claims for injunctive relief.

8.      Plaintiffs' nationwide class allegations should be struck on the ground that plaintiffs cannot maintain a nationwide class action that seeks to apply California law to nonresident class members who purchased the accused Millennium products in other states.

Defendant's Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities and Appendix of State Law Variations filed in support thereof, the entire file in this matter, and such other matters, both oral and documentary, incorporated in the Complaint by reference or as may properly come before the Court.

Dated:  April 28, 2015

O'MELVENY & MYERS LLP


By:      /s/ Scott M. Voelz
                    Scott M. Voelz
Attorneys for Defendant
Millennium Products, Inc.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     LEGAL STANDARD ................................................................................. 2

III.    ARGUMENT .............................................................................................. 3

    A.    Plaintiff Schofield Lacks Standing to Assert All of Her
        Claims and Plaintiff Retta Lacks Standing to Assert California
        Law Claims ........................................................................................ 3

    B.    Plaintiffs Fail to Meet the Pleading Requirements of Rule 9(b) ......... 6

    C.    Plaintiffs' Claims are Facially Implausible Under Rule 12. ................ 9

        1.    Plaintiffs Misinterpret 21 C.F.R. § 101.54(g). ........................ 9

        2.    Alleged FDCA Violations are Insufficient to Establish
            that a Reasonable Consumer Could Be Deceived ................... 13

    D.    Plaintiffs' Proposed Interpretation of 21 C.F.R. § 101.54(g) is
        Preempted by the Federal Food, Drug, & Cosmetic Act .................. 15

    E.    Plaintiffs Fail to State a Claim Under Section 349 of the GBL .......... 16

    F.    Plaintiffs Lack Article III Standing to Seek Injunctive Relief. .......... 17

    G.    The Court Should Strike Plaintiffs' Nationwide Class
        Allegations ....................................................................................... 19

        1.    Plaintiffs' Nationwide Class Allegations Can and Should
            be Struck at the Motion to Dismiss Stage ............................... 19

        2.    California's Choice of Law Analysis Mandates Striking
            Plantiffs' Nationwide Class Allegations .................................. 21

IV.     CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ang v. Whitewave Foods Co.*,
 2013 U.S. Dist. LEXIS 173185 (N.D. Cal. Dec. 10, 2013) ......................... 13, 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................ 3

*Bates v. UPS*,
 511 F.3d 974 (9th Cir. 2007) ............................................................................... 18

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................ 3

*Bird v. First Alert, Inc.*,
 2014 U.S. Dist. LEXIS 176390 (N.D. Cal. Dec. 19, 2014) ............................... 18

*Brazil v. Dole Food Co.*,
 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23, 2013)............................... 15

*Broder v. Cablevision Systems Corp.*,
 418 F.3d 187 (2nd Cir. 2005) .............................................................................. 16

*Craig v. Twinings North Am., Inc.*,
 2015 WL 505867 (W.D. Ark. Feb. 5, 2015) .................................................. 11, 16

*D'Lil v. Best W. Encina Lodge & Suites*,
 538 F.3d 1031 (9th Cir. 2008) ............................................................................. 18

*Dabish v. Infinitelabs, LLC*,
 2014 U.S. Dist. LEXIS 131124 (S.D. Cal. Sept. 17, 2014) ............................... 18

*Davidson v. Kimberly-Clark Corp.*,
 2014 U.S. Dist. LEXIS 176394 (N.D. Cal. Dec. 19, 2014) .......................... 18, 19

*Discover Bank v. Superior Court*,
 134 Cal. App. 4th 886 (2005)............................................................................... 24

*Fraker v. KFC Corp.*,
 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ..................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ................................................................... 14

*Frenzel v. Aliphcom*,
  2014 U.S. Dist. LEXIS 177880 (N.D. Cal. Dec. 29, 2014) ..................... 7, 20, 24

*Hill v. Roll Int'l Corp.*,
  195 Cal. App. 4th 1295 (2011) .............................................................. 14

*Hodgers-Durgin v. De la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ............................................................... 19

*In re 5-Hour Energy Mktg. & Sales Pract's Litig.*,
  2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ............................................. 7

*In re Bridgestone Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ............................................................... 21

*In re Frito-Lay North Am., Inc.*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ........................................ 4, 5

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008) ............................................................ 24

*In re HP Inkjet Printer Litig.*,
  2008 WL 2949265 (N.D. Cal. July 25, 2008) ........................................... 21

*In re Stacs Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ................................................................... 6

*Johns v. Bayer Corp.*,
  2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ............................. 7

*Jones v. ConAgra Foods, Inc.*,
  2014 WL 2702726 (N.D. Cal. June 13, 2014) ......................................... 11

*Kane v. Chobani, Inc.*,
  2014 WL 657300 (N.D. Cal. Feb. 20, 2014) ........................................ 7, 13

*Kardovich v. Pfizer, Inc.*,
  2015 U.S. Dist. LEXIS 42906 (E.D.N.Y. Mar. 31, 2015) ........................ 6, 14

# TABLE OF AUTHORITIES

**Page(s)**

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ...............................................................3

*Khasin v. Hershey Co.*,
No. 12-cv-01862, Dkt. No. 185 (N.D. Cal. Mar. 31, 2015) ................... 10-11, 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .....................................................................22

*Lanovaz v. Twinings North Am., Inc.*,
2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25, 2013) ...................................12

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ...............................................................3

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......................................................*passim*

*McCann v. Foster Wheeler LLC*,
 48 Cal. 4th 68 (2010) ......................................................................23

*McKinniss v. Kellogg USA*,
2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 21, 2007) ................................14

*Morgan v. Harmonix Music Systems, Inc.*,
2009 WL 2031765 (N.D. Cal. July 7, 2009) ................................................4

*PDK Labs, Inc. v. Friedlander*,
103 F.3d 1105 (2nd Cir. 1997) .........................................................16-17

*Ries v. Ariz. Bevs. U.S. LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) ..........................................................18

*Robinson v. Lynmar Racquet Club, Inc.*,
851 P.2d 274 (Colo. App. 1993) ...........................................................22

*Route v. Mead Johnson Nutrition Co.*,
2013 U.S. Dist. LEXIS 35069 (C.D. Cal. Feb. 21, 2013) ...............................3, 20

*Salazar v. Honest Tea, Inc.*,
2015 WL 75223 (E.D. Cal. Jan. 6, 2015) ...................................................12

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

# TABLE OF AUTHORITIES

**Page(s)**

*Samet v. Proctor & Gamble Co.,*
  2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) ................... 8-9, 13, 14

*Savage v. Glendale Union High Sch.,*
  343 F.3d 1036 (9th Cir. 2003) ................................................................. 3

*Sugawara v. Pepsico, Inc.,*
  2009 U.S. Dist. LEXIS 43127 (E.D. Cal. May 21, 2009) ................................ 14

*Tidenberg v. Bidz.com, Inc.,*
  2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ........................................... 4

*Trazo v. Nestlé USA, Inc.,*
  2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ........................... 10, 11

*Verzani v. Costco Wholesale Corp.,*
  2010 WL 3911499 (S.D.N.Y. 2010) ................................................. 17

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ................................................... 6, 7

*Wash. Mut. Bank, FA v. Superior Court,*
  24 Cal. 4th 906 (2001) ........................................................ 23

*Werbel ex rel. v. Pepsico, Inc.,*
  2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) ..................................... 14

*Zinser v. Accufix Research Inst., Inc.,*
  253 F.3d 1180 (9th Cir. 2001) ..................................................... 23

**STATUTES AND REGULATIONS**

21 C.F.R. § 101.54(g) ................................................................. *passim*

21 U.S.C. § 337(a) ..................................................................... 16

21 U.S.C. § 343-1(a)(1)-(3) ........................................................... 15

Ala. Code § 8-19-10(f) ................................................................. 22

Ala. Code § 8-19-3(2) .................................................................. 21

Cal. Bus. & Prof. Code § 17200 *et seq.* ...................................... *passim*

# TABLE OF AUTHORITIES

**Page(s)**

Cal. Bus. & Prof. Code § 17500 *et seq.*................................................................ *passim*

Cal. Civ. Code § 1750 *et seq*.......................................................................... *passim*

Fla. Stat. Ann. § 501.204(1) ...................................................................21

Ga. Code Ann. § 10-1-372................................................................21

Ga. Code Ann. § 10-1-392(a)(10) .........................................................21

Ga. Code Ann. § 10-1-399(a) ..............................................................22

Kan. Stat. Ann. § 50-626(a).................................................................21

La. Rev. Stat. § 51:1409(A)................................................................22

Miss. Code Ann. § 75-24-15(4)..............................................................22

Miss. Code Ann. § 75-24-5(1)..............................................................21

Mont. Code Ann. § 30-14-133(1) ...........................................................22

N.J. Stat. § 56:8-19 .......................................................................22

N.Y. Gen. Bus. Law. § 349 *et seq.* ....................................................... *passim*

Ohio Rev. Code Ann. § 1345.09(b).........................................................22

S.C. Code Ann. § 39-5-140(a) .............................................................22

S.C. Code Ann. § 39-5-20(a) ..............................................................21

S.D. Codified Laws § 37-24-6.............................................................21

Va. Code § 59.1-204(A-B) ................................................................22

**OTHER AUTHORITIES**

H.R. Rep. No. 101-538 (1990), *reprinted in*
    1990 U.S.C.C.A.N. 3336 ...............................................................13

*Nutrient Content Claims: Definition for "High Potency" and*
    *Definition of "Antioxidant" for Use in Nutrient Content Claims for*

# TABLE OF AUTHORITIES

**Page(s)**

*Dietary Supplements and Conventional Foods*,
   62 Fed. Reg. 49868 (Sept. 23, 1997) .................................................. 11-12, 15-16

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................ *passim*

Fed. R. Civ. P. 12(b)(1) ............................................................................3

Fed. R. Civ. P. 12(b)(6) ............................................................................3

Fed. R. Civ. P. 12(f) ............................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Millennium Products, Inc. ("Millennium") is the maker of the popular "GT's" line of fermented tea beverages—offering consumers such favorites as GT's Kombucha and GT's Synergy.  Through its kombucha products, Millennium aims to introduce consumers to ancient tea recipes with a modern twist.

Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire are residents of Virginia, Kentucky, and Colorado who allege that they purchased an unspecified range of Millennium products, largely out of state.  However, on March 11, 2015, plaintiffs filed this putative class action purporting to assert claims under the consumer protection laws of states in which they do not even reside or have an apparent connection to—California and New York.  The crux of plaintiffs' claims is that Millennium violated an FDA regulation by stating that ingredients in its products are antioxidants where plaintiffs disagree that these statements are permissible.  The Complaint alleges violations of (1) the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"); and (4) Section 349 of the New York General Business Law ("GBL").

Plaintiffs' claims cannot proceed because they assert claims and seek relief that, on the face of the Complaint, are factually and legally deficient.  First, Mr. Retta's CLRA, UCL, and FAL claims should be dismissed for lack of standing because Mr. Retta is not a resident of California, did not purchase any Millennium products in California, and does not have standing under California's consumer protection laws.  Similarly, ***all*** of Ms. Schofield's claims should be dismissed for lack of standing because Ms. Schofield is not a resident of either California or New York and did not purchase Millennium products in either state.  All plaintiffs also lack standing to seek injunctive relief where, as here, they cannot allege a sufficient

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

1  likelihood that they will purchase Millennium products again. Additionally, while

2  plaintiffs purport to bring this putative class action on behalf of a nationwide class

3  of consumers under California law, the Ninth Circuit's decision in *Mazza v.*

4  *American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), forecloses those claims.

5      Plaintiffs' pleading fails on the merits as well. Plaintiffs do not plead their

6  claims with the particularity required by Rule 9(b). Specifically, plaintiffs fail to

7  allege with particularity which Millennium products they purchased, where they

8  purchased these products, and when they purchased these products. Millennium

9  sells kombucha products within several different product lines, and of several

10  different flavors, the labels of which vary significantly over time. Thus, the

11  Complaint fails to allege requisite facts indicating which Millennium products and

12  labels are before this Court. Beyond alleging a regulatory violation, it also fails to

13  allege how plaintiffs themselves were deceived by Millennium labels; but mere

14  allegations that a product violates FDA regulations are insufficient under Rule 9(b).

15      Moreover, the Complaint is premised on an allegation that Millennium

16  products violate an FDA regulation—21 C.F.R. § 101.54(g). However, the only

17  labeling claims asserted in this action by a plaintiff with standing are claims that

18  certain ingredients in Millennium products *are* antioxidants which, because they do

19  not characterize the *level* of antioxidants in Millennium products, are not prohibited

20  by Section 101.54(g). As a result, all of plaintiffs' claims are preempted and

21  insufficient to establish that a reasonable consumer could be deceived.

22      Finally, although plaintiffs fail to state a claim under Section 349 of the

23  GBL, their GBL claim is subject to dismissal on the additional ground that New

24  York law precludes plaintiffs from asserting GBL claims expressly predicated on

25  alleged violations of the Federal Food, Drug, & Cosmetic Act ("FDCA").

26  **II.   LEGAL STANDARD**

27      Defendants may challenge a claim through a motion to dismiss when a court

28  lacks subject matter jurisdiction or when a plaintiff fails to state a claim upon which

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

relief can be granted.  Fed. R. Civ. P. 12(b)(1), 12(b)(6).  A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) should be granted if the complaint fails to allege facts sufficient to establish subject matter jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003).  A plaintiff's lack of Article III standing requires dismissal for lack of subject matter jurisdiction.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

Under Rule 12(b)(6), a court should dismiss a complaint that does not set forth sufficient facts to establish the elements of a claim and is not "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court need not accept conclusory allegations, unreasonable inferences, or legal conclusions set out in the form of factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  Fraud-based claims must go further and be pled with particularity under Rule 9(b).  Plaintiff must describe the allegedly fraudulent statement, and state in detail who made the statement, where and when it was made, that it was false when made, and how it was false.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Under Rule 12(f), the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 12(f) allows nationwide class allegations to be struck if they are unsustainable on the face of the complaint.  *Route v. Mead Johnson Nutrition Co.*, 2013 U.S. Dist. LEXIS 35069, at *22-27 (C.D. Cal. Feb. 21, 2013).

## III.   ARGUMENT

### A.   Plaintiff Schofield Lacks Standing to Assert All of Her Claims and Plaintiff Retta Lacks Standing to Assert California Law Claims.

Although this action was filed on behalf of three plaintiffs, only one plaintiff—Jessica Manire—actually purchased a Millennium product in California.  (Compl. ¶¶ 4-6.)  Mr. Retta alleges only that he purchased Millennium products in D.C. and New York, and Ms. Schofield alleges only that she purchased Millennium products in Kentucky, South Carolina, and Virginia.  (Compl. ¶¶ 4-5.)

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

All CLRA, UCL, and FAL claims asserted by these two plaintiffs—Mr. Retta and Ms. Schofield—should be dismissed for lack of standing given that California consumer protection claims cannot be asserted on behalf of individuals who did not purchase an allegedly misbranded product in California and have no significant contacts with the state of California.  *See*, *e.g.*, *Tidenberg v. Bidz.com*, *Inc.*, 2009 WL 605249, at *4-5 (C.D. Cal. Mar. 4, 2009) (Gutierrez, J.) (plaintiff lacked standing to assert UCL and FAL claims regarding ring purchased in Texas); *Morgan v. Harmonix Music Systems, Inc.*, 2009 WL 2031765, at *2 (N.D. Cal. July 7, 2009) (dismissing CLRA claim as to product purchased outside of California). Further, **all** claims asserted by Ms. Schofield should be dismissed for lack of standing, as Ms. Schofield fails to allege that she purchased Millennium products in California **or** New York.  *See*, *e.g.*, *In re Frito-Lay North Am., Inc.*, 2013 WL 4647512, at *17-19, 30 (E.D.N.Y. Aug. 29, 2013) (dismissing GBL claims asserted on behalf of plaintiffs who did not reside in New York).

This Court's reasoning in *Tidenberg* is instructive.  In *Tidenberg*, a putative class representative asserted UCL and FAL claims arising out of her purchase of a ring that was allegedly overpriced due to shill bidding on defendant's auction website.  2009 WL 605249, at *2, 4.  This Court dismissed the plaintiff's UCL and FAL claims given that she apparently purchased the ring in Texas and failed to allege facts indicating why she had any "significant contact" with California.  *Id.* at *4-5.  Importantly, the fact that the defendant was a corporation subject to general jurisdiction in California was insufficient to establish plaintiff's standing.  *Id.* ("[T]he Supreme Court has specifically admonished that the existence of personal jurisdiction over a defendant does not alone permit application of the forum law to the claims of nonresident plaintiffs.") (citations omitted); *accord Morgan*, 2009 WL 2031765, at *2 (allegation that defendant was headquartered in California insufficient to support CLRA standing as to product purchased out of state).  The exact same facts are present here.  Plaintiffs Retta and Schofield did not purchase

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

1   Millennium products in California or allege any specific facts linking Millennium's

2   contacts with California to the claims they assert.  Thus, they have not pled facts

3   supporting statutory standing under the CLRA, UCL, or FAL, and cannot assert

4   claims under any of these California statutes.

5        Ms. Schofield's standing problems are even more broad—she has failed to

6   plead any cognizable claims given that she does not allege purchasing Millennium

7   products in either California *or* New York.  (Compl. ¶ 5.)  By its express terms,

8   Section 349 of the GBL applies only to transactions occurring in the state of New

9   York.  N.Y. Gen. Bus. Law. § 349 (governing deceptive acts or practices in the

10  furnishing of any service "in this state"); *In re Frito-Lay*, 2013 WL 4647512, at

11  *17-19 (plaintiff could not assert GBL claim concerning allegedly misbranded food

12  products purchased outside of New York).  The requirement that a plaintiff

13  asserting GBL claims allege a purchase of a purportedly misbranded product within

14  New York is substantive and not procedural, such that a court should dismiss with

15  prejudice GBL claims as to out-of-state purchases at the motion to dismiss stage

16  and not the class certification stage.  *Id.* at *18 ("[T]he state rule defines the very

17  conduct prohibited by the GBL—solely conduct that occurs in New York.  Simply

18  put, there is nothing procedural about this rule.").  Because she has failed to allege

19  that she purchased a Millennium product in New York, Ms. Schofield's GBL claim

20  also must be dismissed, leaving her with no cognizable claims.

21       Accordingly, all claims asserted by Ms. Schofield should be dismissed, and

22  all allegations concerning products purchased only by Ms. Schofield struck—

23  including those as to GT's Enlightened and Classic Kombucha: Original and

24  Gingerade and GT's Enlightened Synergy: Raspberry Chia (Compl. ¶ 5).  Likewise,

25  all of Mr. Retta's claims brought under the CLRA, UCL, and FAL must be

26  dismissed and the claims brought as to products purchased only by Mr. Retta—

27  including GT's Enlightened Kombucha: Multi Green—struck.  (Compl. ¶ 4.)

28

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

### B.    Plaintiffs Fail to Meet the Pleading Requirements of Rule 9(b).

Here, all of plaintiffs' claims sound in fraud and must meet the particularity requirements of Federal Rule of Civil Procedure 9(b).  Specifically, plaintiffs must "set forth an explanation as to why the statement or omission complained of was false or misleading," and facts showing "the statement or omission [was] false or misleading when made."  *In re Stacs Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (Rule 9(b) applies to entire complaint when all of a plaintiff's claims are grounded in fraud); *Kardovich v. Pfizer, Inc.*, 2015 U.S. Dist. LEXIS 42906, at *7-8, 13 (E.D.N.Y. Mar. 31, 2015) (applying Rule 9(b) to GBL § 349 claims).  The Complaint fails to meet Rule 9(b)'s heightened pleading standard for two reasons.

*First,* plaintiffs do not plead with particularity which Millennium products they purchased, where they purchased these products, or when they purchased these products.  (Compl. ¶¶ 4-6.)  Instead, plaintiffs use the generic term "GT's Kombucha Beverages" throughout the Complaint and define this term to mean "every flavor" of all Millennium product lines.  (Compl. ¶ 1 n.1.)  They then allege they have purchased "GT's Kombucha Beverages" in various states, ***including*** certain named flavors.  (*Id.*)  But plaintiffs do not specify whether the named flavors listed are an exhaustive list of purchased products, in what specific state each product was purchased, or the date when any products were purchased.  (*Id.*)  As a result, Millennium cannot ascertain from the Complaint whether plaintiffs' claimed purchases include all "GT's Kombucha Beverages" in every product line, or simply a subset of them, and which products were purchased where and when.

These omissions are critical, as they bear directly on which labels and labeling claims are implicated in this dispute and the defenses that Millennium will need to assert.  Millennium produces multiple kombucha beverages across several product lines, and multiple flavors within each product line.  The labels for each of these products, including their references to antioxidants, if any, during the

proposed class period vary by line, flavor, and time.  This lack of clarity runs afoul of Rule 9(b) and hinders Millennium's ability to defend against plaintiffs' claims.  For instance, as stated above, plaintiffs lack standing to assert California law claims as to products purchased outside of California and New York law claims as to products purchased outside of New York.  (*See supra* Section III.A.)  Plaintiffs' pleading cannot obfuscate the locations in which they purchased specific Millennium products to avoid these issues.  (Compl. ¶¶ 4-6.); *see also Frenzel v. Aliphcom*, 2014 U.S. Dist. LEXIS 177880, at *15-16 (N.D. Cal. Dec. 29, 2014) (class representative's false advertising claims dismissed at pleading stage where plaintiff obfuscated the state in which he purchased an implicated product).[1]

*Second*, the Complaint should be dismissed because it fails to allege a coherent theory of relief—*i.e.*, fails to plead with particularity *how* plaintiffs were deceived.  *See*, *e.g.*, *Kane v. Chobani, Inc.*, 2014 WL 657300, at *7-11 (N.D. Cal. Feb. 20, 2014) (dismissing false advertising claims where plaintiffs failed sufficiently to allege how they were deceived by use of the term "evaporated cane juice"); *Vess*, 317 F.3d at 1107 (a plaintiff asserting consumer protection claims must state in detail how a defendant's conduct was deceptive).  Although plaintiffs allege generally that Millennium products violate FDA regulations, their various explanations for precisely how the regulations were violated are in conflict:

---

[1] Plaintiffs' failure to allege the specific products they purchased implicates other defenses as well.  Plaintiffs lack standing to assert claims as to any products they did not buy.  *See, e.g., Johns v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 10926, at *11-13 (S.D. Cal. Feb. 9, 2010).  This Court has ruled that standing arguments as to non-purchased products are better addressed at class certification, and Millennium therefore does not raise this argument here.  *In re 5-Hour Energy Mktg. & Sales Pract's Litig.*, 2014 WL 5311272, at *7 (C.D. Cal. Sept. 4, 2014) (Gutierrez, J).

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

- Compl. ¶¶ 4-6: Alleging that Millennium mischaracterized the "level, amount, and nature" of antioxidants in certain products.

- Compl. ¶ 11: Alleging that Millennium's products do not include antioxidants "identified by the FDA as a source of real nutrition."

- Compl. ¶ 13, 31: Alleging that Millennium's products do not have "antioxidants with an established RDI."

- Compl. ¶ 26: Alleging that a food product with an antioxidant claim is misbranded if it does not specify the antioxidant in the products and does not use a symbol or link the term "antioxidant" to specific nutrients.

- Compl. ¶ 27: Alleging that a food product with an antioxidant claim is misbranded if a "nutrient with an established RDI" does not constitute 100% of its antioxidant content.

- Compl. ¶ 28: Alleging that the antioxidants in Kombucha products are not "recognized antioxidants or nutrients under the FDCA."

- Compl. ¶ 30: Alleging that Millennium products do not state "which recognized antioxidants nutrients" they have.

- Compl. ¶ 36: Alleging that Millennium products do not have a "nutritional source of antioxidants."

- Compl. ¶ 39: Alleging that Millennium products do not have "a single nutrient with recognized antioxidant activity and with an established RDI."

These conflicting allegations reveal that plaintiffs cannot even decide whether or not Millennium's products actually have antioxidants. At some points they allege that Millennium products have *no* antioxidants (Compl. ¶¶ 28, 39), and at others simply suggest the products have no "antioxidants with an established RDI," or no "nutritional" antioxidants. (*E.g.* Compl. ¶¶ 13, 31, 36.)

These allegations also reveal that plaintiffs' claimed damages derive from alleged violations of an FDA regulation, as opposed to any harm that they independently suffered in the absence of the regulation. However, bare allegations that a product label violates FDA regulations do not meet Rule 9(b)'s heightened pleading requirements, let alone Rule 8(a)'s pleading requirements, because a violation of FDA regulations does not itself establish that a label is misleading. *See, e.g.*, *Samet v. Proctor & Gamble Co.*, 2013 U.S. Dist. LEXIS 86432, at *29-36 (N.D. Cal. June 18, 2013) (dismissing claims under Rule 9(b) for failure to allege

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

1  how statements were misleading apart from purported FDCA violations).

2  *Samet* is analogous to the present case.  In *Samet*, plaintiffs alleged that

3  several terms used on Procter & Gamble food products—including "0g trans fat"

4  and "evaporated cane juice"—violated FDA regulations and therefore misled

5  consumers.  2014 U.S. Dist. LEXIS 34550, at *3.  The court rejected this argument

6  and dismissed plaintiffs' claims under Rule 9(b), noting that plaintiffs were

7  required to allege more than their legal conclusion that the labels at issue violated

8  FDA regulations or were "misbranded" under the FDCA.  *Id.* at *29-36.  Here too,

9  plaintiffs simply recite their view of FDA regulations and do not allege facts

10  explaining how they themselves were deceived by Millennium's product labels.

11  Because plaintiffs have failed to plead their fraud-based claims with the

12  particularity required by Rule 9(b), all of their claims should be dismissed.

13  **C.   Plaintiffs' Claims are Facially Implausible Under Rule 12.**

14  All of plaintiffs' claims also fail and should be dismissed because they are

15  implausible as a matter of law.  Contrary to plaintiffs' assertion,  Millennium's

16  antioxidant claims do not violate 21 C.F.R. § 101.54(g), and they provide no other

17  argument for how a reasonable consumer could have been deceived aside from

18  purported regulatory violations on as yet unspecified labels.

19  **1.   Plaintiffs Misinterpret 21 C.F.R. § 101.54(g).**

20  All of plaintiffs' claims are predicated on an assertion that Millennium's

21  product labels violate  21 C.F.R § 101.54(g).  (Compl. ¶ 1.)  Plaintiffs' reliance on

22  this regulation is fatal, as plaintiffs' allegations do not provide a reasonable basis to

23  assume that Millennium violated it.

24  Section 101.54(g) provides that, when certain preconditions are met, a claim

25  that ***characterizes the level*** of antioxidant nutrients in a food may be used on the

26  labeling of the food.  21 C.F.R. § 101.54(g).  Plaintiffs allege that Millennium's

27  products violate this regulation in that they do not have an antioxidant with a

28  recommended daily intake ("RDI") established by the FDA or bear a symbol such

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

as an asterisk next to the phrase "antioxidant" linked to a description of the antioxidant elsewhere on the label.  (*E.g.*, Compl. ¶¶ 12, 30.)  What plaintiffs ignore is that Millennium need not meet these preconditions here given the nature of Millennium's labeling.

Plaintiff Schofield alleges that she purchased certain Millennium products purporting to have "more antioxidants than blueberries."  (Compl. ¶ 5.)  But Ms. Schofield has not purchased any Millennium products in California or New York, and lacks standing to assert any of her claims.  (*See supra* Section III.A.)  As a result, the only labeling claims alleged to be at issue in the Complaint by a plaintiff with standing to sue are the following (Compl. ¶¶ 4-6):[2]

- "antioxidants"

- "a unique blend of proprietary probiotics and powerful antioxidants"

- "ANTIOXIDANTS & ORGANIC ACIDS"

These "claims" merely state that an ingredient in Millennium products *is* an antioxidant; they do not characterize the *level* of antioxidants in Millennium's products.  Therefore, Section 101.54(g) does not apply to them.  Labels that simply state that a specified ingredient is an antioxidant do not make claims characterizing the *level* of antioxidants in a product that Section 101.54(g) intends to regulate. *See*, *e.g.*, *Trazo v. Nestlé USA, Inc.*, 2013 U.S. Dist. LEXIS 113534, at *31 (N.D. Cal. Aug. 9, 2013) (claim that products were a "natural source of antioxidants" did not characterize the level of antioxidants in the products); *accord* Order Granting Def.'s Mot. for Summary Judgment, *Khasin v. Hershey Co.*, No. 12-cv-01862, Dkt. No. 185, at *9 (N.D. Cal. Mar. 31, 2015) (statement that products were a "natural

---

[2] Even if Ms. Schofield had standing, her claims still would have been subject to dismissal for failure to allege facts indicating why a reasonable consumer would be deceived aside from purported regulatory violations.  *See infra* Section III.C.2.

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

source of flavanol antioxidants" did not "characterize the level or amount of antioxidants present in its product.");[3] *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *18 n.34 (N.D. Cal. June 13, 2014) (Section 101.54(g) "pertains to the level of antioxidants in a product, not simply their presence."); *Craig v. Twinings North Am., Inc.*, 2015 WL 505867, at *8 (W.D. Ark. Feb. 5, 2015) ("natural source of antioxidants" claim did not characterize level of antioxidants in tea).

In *Trazo*, plaintiffs alleged that Nestlé violated Section 101.54(g) by stating that certain dark chocolate products were a "natural source of antioxidants."  2013 U.S. Dist. LEXIS 113534, at *31.  The court dismissed these claims, brought under the CLRA, UCL, and FAL, because a simple statement that the products were a source of antioxidants did not characterize the level of antioxidants in the products and could not plausibly violate Section 101.54(g).  *Id.* at *5, 31.

These holdings fit squarely with the FDA's expressed intent as to the purpose and scope of Section 101.54(g).  When the regulation was promulgated, it was clear that the purpose of Section 101.54(g) was limited to particular categories of antioxidant claims, and was not to restrict "all label and labeling statements about antioxidants to statements only about a limited number of nutrients."  *Nutrient Content Claims: Definition for "High Potency" and Definition of "Antioxidant" for Use in Nutrient Content Claims for Dietary Supplements and Conventional Foods*, 62 Fed. Reg. 49868, 49873 (Sept. 23, 1997).  Rather, the agency chose to  define "the circumstances in which claims that ***characterize the level*** of nutrients that have antioxidant activity, such as ***'high in antioxidants'*** can be made."  *Id.* (emphasis added).  Thus, plaintiffs' unsupported statement that the FDA does not consider antioxidants without an established RDI as "nutritional" antioxidants or does not permit antioxidants without an established RDI to be described as antioxidants (*e.g.* Compl. ¶ 11), ignores the statements of the FDA itself.  *See also* 62 Fed. Reg.

---

[3] The *Khasin* Order referenced herein is attached as Exhibit A to this Motion.

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

49868, 49873 (emphasis added):

> "Many of the plant compounds referred to in the comments as antioxidants (e.g., lycopene, lutein, polyphenols) do not have RDI's, and thus it is not possible to characterize the level of these substances because there is no standard against which to do so. Consequently, they cannot be the subject of nutrient content claims at this time. ***However, FDA did not intend in this rulemaking to decide whether these substances have, or do not have, antioxidant activity.*** The agency is not limiting truthful and nonmisleading statements about the properties or the effects of antioxidants. ***Manufacturers may, for example, craft a statement, subject to section 403(a) of the act, that describes how a nutrient or dietary ingredient that does not have an RDI participates in antioxidant processes***."

Millennium acknowledges that a few courts have found that antioxidant claims not explicitly characterizing the level of antioxidants in a product could plausibly violate Section 101.54(g). *See*, *e.g.*, *Lanovaz v. Twinings North Am., Inc.*, 2013 U.S. Dist. LEXIS 25612, at *13-14 (N.D. Cal. Feb. 25, 2013) (addressing "natural source of antioxidants" claims); *Salazar v. Honest Tea, Inc.*, 2015 WL 75223, at *1 (E.D. Cal. Jan. 6, 2015) (addressing claims that tea products were "packed with" antioxidants, had a "key green tea antioxidant," or had "one of many tea antioxidants"). These cases are factually distinguishable—they do not involve mere claims that an ingredient is an "antioxidant." They also are not in accord with the regulatory guidance and statements of the FDA itself.

Similarly, the warning letters cited in the Complaint do not actually stand for plaintiffs' proposed approach that any antioxidant lacking an established RDI is not a "nutritional" antioxidant and cannot be declared as an antioxidant. (Compl. ¶¶ 26-28.) For instance, in its warning letter to Unilever, the FDA simply reiterated that antioxidant claims ***characterizing the level*** of antioxidants in a product—such as "high in antioxidant vitamin C" claims or the ***"rich in"*** antioxidants and ***"packed with"*** antioxidants claims made by Unilever—must comply with Section 101.54(g). (Compl. Ex. D.) This is a non-controversial statement that has nothing to do whether the labeling claims at issue in this action are false and misleading to a reasonable consumer. The same is true of the FDA's warning letter to the Dr.

-12-

Pepper Snapple Group.  (Compl. Ex. E.)  In that letter, the FDA addressed claims that tea beverages that were "enhanced with" green tea flavonoids.  (*Id.*)  This was equivalent, in the FDA's view, to stating that the beverages had at least 10% "more" antioxidants than customarily consumed foods and making a ***relative*** antioxidant claim as to an antioxidant not recognized as an antioxidant for which relative content claims are permitted under Section 101.54(g).  (*Id.*)  Similarly, in its warning letter to Redco Foods, the FDA addressed claims that tea products were ***"fortified with"*** antioxidants and that antioxidants were ***"abundantly found"*** in the products, which the agency saw as claims characterizing the level of antioxidants in tea.  (Compl. Ex. F.)  The agency did not comment on whether mere statements that an ingredient is an "antioxidant" violate Section 101.54(g).  And they do not.

Accordingly, plaintiffs' only potentially cognizable labeling claims—which simply refer to the presence of antioxidants and not their level or amount (Compl. ¶¶ 4:16-23; 6:12-19)—must be dismissed for failure to state a claim, as no violation of Section 101.54(g) can plausibly be shown.

### 2. Alleged FDCA Violations are Insufficient to Establish that a Reasonable Consumer Could Be Deceived.

Even if plaintiffs had plausibly alleged that Millennium product labels violate Section 101.54(g), their claims would still be properly dismissed for failure to state a claim.  Plaintiffs assert claims for violation of the CLRA, UCL, and FAL, and for Section 349 of the GBL.  The standard for whether a plaintiff has properly pled false advertising claims under these statutes is not whether the plaintiff has plausibly alleged that a food labeling regulation was violated.  Rather, it is whether the plaintiff has pled facts sufficient to establish that a reasonable consumer could be deceived by the advertising claims at issue.  *Samet*, 2013 U.S. Dist. LEXIS 86432, at *29-36; *Kane*, 2014 WL 657300, at *7-11; *Ang v. Whitewave Foods Co.*, 2013 U.S. Dist. LEXIS 173185, at *10-15 (N.D. Cal. Dec. 10, 2013) (dismissing claims regarding use of the terms "soymilk" and "almond milk" even where use of

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

1    the terms allegedly violated FDA regulations).

2         Whether labels or advertisements are deceptive under California's consumer

3    protection statutes is governed by a "reasonable consumer" standard.  *Hill v. Roll*

4    *Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011); *see also Freeman v. Time, Inc.*,

5    68 F.3d 285, 289 (9th Cir. 1995).  A court may grant a motion to dismiss false

6    advertising claims when it concludes as a matter of law that a reasonable consumer

7    could not be deceived by the product's packaging.  *See, e.g.*, *Werbel ex rel. v.*

8    *Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289, at *8-13 (N.D. Cal. July 2, 2010);

9    *Sugawara v. Pepsico, Inc.*, 2009 U.S. Dist. LEXIS 43127, at *5-10 (E.D. Cal.

10   May 21, 2009); *McKinniss v. Kellogg USA*, 2007 U.S. Dist. LEXIS 96106, at *8-13

11   (C.D. Cal. Sept. 21, 2007).  The "reasonable consumer" is not the "least

12   sophisticated" or "unwary" consumer.  *Hill*, 195 Cal. App. 4th at 1304.  And a

13   plaintiff's allegations that he himself was personally deceived are insufficient to

14   show that a reasonable consumer is likely to be deceived.  *Id*.  Claims brought

15   under Section 349 of the GBL are likewise analyzed under a "reasonable

16   consumer" framework.  *Kardovich*, 2015 U.S. Dist. LEXIS 42906, at *14-15.

17        At the outset,  plaintiffs' Complaint states that all of plaintiffs' claims are

18   premised on the assumption that plaintiffs were deceived ***because*** Millennium

19   purportedly violated Section 101.54(g).  (Compl. ¶ 1.)  However, mere allegations

20   that a food label violates some FDA regulation, standing alone, are insufficient to

21   establish that a reasonable consumer could be deceived.  *Samet*, 2013 U.S. Dist.

22   LEXIS 86432, at *29-36; *Ang*, 2013 U.S. Dist. LEXIS 173185, at *10-15; *see also*

23   *Khasin*, Dkt. No. 185, at *9 (plaintiff's citations to warning letters purportedly

24   suggesting that defendant's labeling claims violated Section 101.54(g) "not relevant

25   to showing that consumers are likely to be misled by Hershey's statements.").  And

26   here, especially where plaintiffs appear to concede that Millennium's products have

27   antioxidants and argue only that the products do not have "FDA recognized"

28   antioxidants  (*e.g.*, Compl. ¶ 11), plaintiffs cannot merely assert that Millennium

1  has violated Section 101.54(g) and that the antioxidants in Millennium's products
2  are not nutritional according to the FDA.  (Compl. ¶ 13).

3       Accordingly, all of plaintiffs' claims must be dismissed because no
4  reasonable consumer could be deceived by claims that an ingredient in a beverage
5  that is an antioxidant (on the facts alleged in the Complaint) is an "antioxidant."

6  **D.   Plaintiffs' Proposed Interpretation of 21 C.F.R. § 101.54(g)  is**
7  **Preempted by the Federal Food, Drug, & Cosmetic Act.**

8       Plaintiffs' only potentially cognizable claims misinterpret the scope of
9  Section 101.54(g) and purport to forbid mere statements that an ingredient is an
10 "antioxidant."  This is not the case.  Thus, all of plaintiffs' claims are also expressly
11 preempted.  *See*, *e.g.*, *Brazil v. Dole Food Co.*, 2013 U.S. Dist. LEXIS 136921, at
12 *35-39 (N.D. Cal. Sept. 23, 2013) (food labeling clams to preempted if they seek to
13 impose requirements different or not identical to those of the FDCA).

14      The FDCA establishes a "comprehensive regulatory scheme of branding and
15 labeling of food products."  *Fraker v. KFC Corp.,* 2007 WL 1296571, at *4 (S.D.
16 Cal. Apr. 30, 2007).  In order to establish "uniform national standards for the
17 nutritional claims and the required nutrient information display on food labels,"
18 Congress amended the FDCA by enacting the Federal Nutrition Labeling and
19 Education Act of 1990 (the "NLEA").  H.R. Rep. No. 101-538, at 13 (1990),
20 *reprinted in* 1990 U.S.C.C.A.N. 3336, 3342.  The NLEA expressly prohibits "any
21 requirement for the labeling of food…that is ***not identical to***" the requirements set
22 forth in the NLEA.  21 U.S.C. § 343-1(a)(1)-(3) (emphasis added).

23      Plaintiffs suggest an interpretation of 21 C.F.R. § 101.54(g) that seeks to
24 prohibit food labels from representing that *any* ingredient without an established
25 RDI is an antioxidant.  (*E.g.*, Compl. ¶ 13, 31).  However, in enacting
26 Section 101.54(g), the FDA stated that it did not intend to restrict "all label and
27 labeling statements about antioxidants to statements only about a limited number of
28 nutrients."  *Nutrient Content Claims*, 62 Fed. Reg. 49868, 49873.  Rather, it

-15-

1   intended to limit the scope of claims it permitted concerning the relative **levels** of

2   antioxidants in food products because the agency had not established an RDI for all

3   antioxidants, such that it could not meaningfully evaluate the truthfulness of claims

4   concerning the relative **levels** of antioxidants in a food product—such as a claim

5   that the product is "high in antioxidants." *Id.* Thus, contrary to plaintiffs'

6   suggestion, there is no indication that the FDA views antioxidants without an

7   established RDI as lacking in nutritional value or incapable of being described as an

8   antioxidant. (Compl. ¶ 36.) And, as to claims stating only that the certain

9   ingredients in Millennium's products are "antioxidants," plaintiffs seek to impose

10  food labeling requirements not identical to federal requirements by alleging a

11  violation of Section 101.54(g). *Craig*, 2015 WL 505867, at *8.

12      Thus, the only labeling claims implicated by plaintiffs with standing—that

13  ingredients in Millennium products *are* "antioxidants"—are expressly preempted.

14      **E.      Plaintiffs Fail to State a Claim Under Section 349 of the GBL .**

15      In addition to asserting California consumer protection claims, plaintiffs

16  assert a Fourth Cause of Action under Section 349 of the GBL. (Compl. ¶¶ 85-91.)

17  As set forth above, plaintiffs' GBL claim should be dismissed for failure to state a

18  claim. However, it also fails for an independent reason—New York state law

19  precludes Section 349 claims which rely on predicate violations of federal food

20  labeling regulations lacking private rights of action, such as the GBL claim here.

21  (Compl. ¶ 88) (purporting to assert GBL claim predicated on FDCA violation).

22      The FDCA does not provide a private right of action. To protect the

23  comprehensive system of labeling regulations established by the FDCA, Congress

24  included in the Act an explicit bar on private enforcement, *see* 21 U.S.C. § 337(a).

25  Further, in *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 199-200 (2nd Cir.

26  2005), the Second Circuit held that Section 349 of the GBL does not provide "a

27  private right of action for violation of a federal law otherwise lacking one." *See*

28  *also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2nd Cir. 1997)

-16-

1   (plaintiff's "dogged insistence" that defendant's products violated FDA regulations

2   unpersuasive given that no private right of action exists under FDCA).

3   Accordingly, a plaintiff cannot assert GBL claims predicated on FDCA violations.

4   *Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499, at *3 (S.D.N.Y. 2010)

5   ("The FDCA lacks a private right of action and therefore [plaintiff] cannot rely on it

6   for purposes of asserting a state-law consumer claim under G.B.L. § 349.").

7        In *Verzani*, the plaintiff alleged that Costco violated GBL § 349 by failing to

8   disclose the weight of shrimp contained within a shrimp tray in violation of FDA

9   regulations.  2010 WL 3911499, at *1-2.  The court dismissed the plaintiff's GBL

10  claim on the ground that was it was implausible and because "the FDCA lacks a

11  private right of action and therefore Verzani cannot rely on it for purposes of

12  asserting a state-law consumer claim under G.B.L. § 349." *Id.* at *3.  The

13  plaintiff's improper attempt to enforce FDA regulations was evidenced by his

14  "persistent allegations" that Costco had violated FDA regulations. *Id.*  So too here,

15  a facial review of plaintiffs' Complaint reveals plaintiffs' attempt to enforce FDA

16  regulations and not state consumer protection laws.  Not only do plaintiffs attach

17  FDA warning letters to other companies to the Complaint, the very first paragraph

18  of the Complaint nakedly asserts that Millennium purportedly misrepresents the

19  antioxidant content of its products "in precisely the manner the [FDA] sought to

20  prohibit by establishing the antioxidant labeling requirements set forth in 21 C.F.R.

21  § 101.54(g)."  (Compl. ¶ 1.)  This effort to privately enforce FDA regulations

22  should not be countenanced and plaintiffs' Fourth Cause of Action should be

23  dismissed as impliedly preempted.

24       **F.**     **Plaintiffs Lack Article III Standing to Seek Injunctive Relief.**

25       Even if the Court were to permit any of part of plaintiffs' claims to survive, it

26  should dismiss plaintiffs' claims for injunctive relief.  (Compl. ¶¶ 65, p. 31:3.)  The

27  Complaint seeks injunctive relief but fails to allege that plaintiffs intend to purchase

28  Millennium products again in the future.  To the contrary, plaintiffs allegations

1    indicate that they never would have bought these products had they known that they

2    were purportedly misbranded under FDA regulations.  (*Id.* ¶¶ 4-6.)  These

3    allegations foreclose plaintiffs' claims for injunctive relief because, absent a

4    showing that they are still interested in purchasing Millennium products, plaintiffs

5    cannot establish Article III standing to assert false advertising claims.  *See, e.g.*,

6    *Dabish v. Infinitelabs, LLC*, 2014 U.S. Dist. LEXIS 131124, at *11-14 (S.D. Cal.

7    Sept. 17, 2014) (dismissing CLRA, UCL, and FAL claims where plaintiff failed to

8    show intention of purchasing accused dietary supplements again).

9         A plaintiff bears the burden of demonstrating that Article III standing

10   requirements are met.  *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031,

11   1036 (9th Cir. 2008).  Additionally, to demonstrate standing for prospective

12   injunctive relief, a plaintiff must demonstrate that "he has suffered or is threatened

13   with a concrete and particularized legal harm" coupled with a "sufficient likelihood

14   that he will again be wronged in a similar way."  *Bates v. UPS*, 511 F.3d 974, 985

15   (9th Cir. 2007) (internal quotations omitted).  Where a plaintiff has no intention of

16   purchasing an allegedly misbranded product again in the future, the weight of

17   authority holds that the plaintiff has no standing to seek prospective injunctive

18   relief.  *Davidson v. Kimberly-Clark Corp.*, 2014 U.S. Dist. LEXIS 176394, at *10-

19   12 (N.D. Cal. Dec. 19, 2014); *Dabish*, 2014 U.S. Dist. LEXIS 131124, at *11-14;

20   *see also Bird v. First Alert, Inc.*, 2014 U.S. Dist. LEXIS 176390, at *12 (N.D. Cal.

21   Dec. 19, 2014) ("A plaintiff who has no intention of purchasing a product in the

22   future has no standing to seek prospective injunctive relief.").

23        Some courts have found that plaintiffs may establish Article III standing to

24   assert claims for injunctive relief where it is possible that they may purchase a

25   product again if it is correctly advertised.  *See, e.g.*, *Ries v. Ariz. Bevs. U.S. LLC*,

26   287 F.R.D. 523, 533-34 (N.D. Cal. 2012).  However, that is not the case here.

27   Plaintiffs object to a characteristic of the products themselves—their alleged lack of

28   FDA approved antioxidants—and not just their labeling or advertising, leading to

-18-                              MOTION TO DISMISS OR STRIKE
                                 2:15-CV-01801-PSG-AJW

the inevitable conclusion that their future purchase decisions would be unaffected by any corrective action regardless of plaintiffs' allegations, in the alternative, that they would have paid a lower price for Millennium products they purchased in the past.  (*See, e.g.*, Compl. ¶¶ 32-40; *id.* ¶¶ 4-6.)  They thus lack standing to assert claims for injunctive relief.  *See, e.g.*, *Davidson*, 2014 U.S. Dist. LEXIS 176394, at *10-12 (no injunctive relief where product could never perform as desired).

In *Davidson*, the plaintiff alleged she was misled into purchasing cleaning wipes that were advertised as "flushable" that were not in fact flushable.  2014 U.S. Dist. LEXIS 176394, at *2-3.  Because the plaintiff wished to avoid purchasing products that could not be flushed, the court dismissed her claims for injunctive relief on the grounds that there was no corrective action (labeling changes or corrective advertising) that could make her purchase the product again.  *Id.* at *10-13.  This is precisely the case here.  And because plaintiffs cannot assert claims for injunctive relief in his individual capacity, they also lack standing to assert such claims on a class-wide basis.  *Hodgers-Durgin v. De la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.").

**G.     The Court Should Strike Plaintiffs' Nationwide Class Allegations.**

**1.     Plaintiffs' Nationwide Class Allegations Can and Should be Struck at the Motion to Dismiss Stage.**

Plaintiffs' Complaint is deficient in that it impermissibly seeks to apply California consumer protection laws to the claims of a putative nationwide class. (Compl. ¶¶ 41, 54, 67, 77.)[4]  In *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), the Ninth Circuit determined that "each class member's consumer protection claim should be governed by the consumer protection laws of the

---

[4] Plaintiffs attempt to assert only their California law claims on behalf of a putative nationwide class.  (Compl. ¶¶ 41, 54, 67, 77, 86.)

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

1  jurisdiction in which the transaction took place," which precluded certification of a
2  nationwide class.  *Id.* at 594, 596.  In the wake of *Mazza*, district courts have
3  granted Rule 12 motions to dismiss or strike nationwide class actions in cases
4  where putative class representatives have attempted to apply California consumer
5  protection laws to purported false advertising injuries occurring in other states.  *See,*
6  *e.g., Frenzel*, 2014 U.S. Dist. LEXIS 177880, at *12-13 (dismissing CLRA, UCL,
7  and FAL class allegations as to purported nationwide class); *Route*, 2013 U.S. Dist.
8  LEXIS 35069, at *22-27 (striking nationwide class allegations under *Mazza* where
9  it was sufficiently obvious that such allegations could not be maintained).
10  Accordingly, the Court should dismiss plaintiffs' nationwide class allegations now.
11        In *Frenzel*, a plaintiff purchased an allegedly defective fitness-tracking
12  wristband and attempted to assert CLRA, UCL, FAL, and breach of express and
13  implied warranty claims on behalf of a nationwide class of purchasers of the
14  wristband.  2014 U.S. Dist. LEXIS 177880, at *1-6.  The court dismissed the
15  plaintiff's nationwide class allegations, finding that they were foreclosed under
16  *Mazza*.  *Id*. at *20; *see also id.* at *12 ("[A]lthough Mazza was decided at class
17  certification, 'the principle articulated in Mazza applies generally and is instructive
18  even when addressing a motion to dismiss.'") (citations omitted).  In doing so, it
19  noted that, in factually analogous cases, *Mazza* is "not only relevant but
20  controlling," even at the pleading phase.  *Id*. at *12.  *Frenzel* is especially
21  instructive given that the plaintiff's attempt to obfuscate the state in which he
22  purchased the product at issue also necessitated dismissal of his individual
23  allegations.  2014 U.S. Dist. LEXIS 177880, at *14-15.  Here too, plaintiffs do not
24  allege where they purchased Millennium's products.  (*See supra* Section III.B.)
25        The result in *Frenzel* is also warranted here.  Plaintiffs seek to certify a
26  nationwide class seeking redress under the CLRA, UCL, and FAL.  (Compl. ¶¶ 41,
27  54, 67, 77.)  But plaintiffs cannot apply these laws to a nationwide class, and the
28  Court should strike plaintiffs' class allegations to the extent that plaintiffs purport to

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

apply California law to nonresident class members who purchased the accused Millennium products in other states.

### 2. California's Choice of Law Analysis Mandates Striking Plaintiffs' Nationwide Class Allegations.

#### a. State Consumer Protection Laws Vary In Several Material, Outcome-Determinative Respects.

State consumer protection laws "vary considerably."[5]  *In re Bridgestone Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002).  These variations affect outcome-determinative aspects of consumer claims, such as the availability of class actions, the types of statements that are actionable, the required degree of culpability or scienter, reliance requirements and standards, privity requirements, and the remedies available.  *See, e.g.*, *In re HP Inkjet Printer Litig.*, 2008 WL 2949265, at *7 (N.D. Cal. July 25, 2008) (certification denied because of "the many differences among states with respect to, for example, statutes of limitations, scienter requirements, and calculation of damages").

For example, while some states' consumer protection laws make only "deceptive" conduct actionable, others more broadly proscribe "unfair" or "unconscionable" behavior.[6]  States also vary as to what qualifies as an actionable "consumer" transaction.  Many states limit their definition of "consumer" to a person buying goods or services for personal, family, or household use.[7]  And, in at

---

[5] The conflicts between California consumer protection laws and the laws of other states are laid out in further detail in the Appendix filed together with this Motion.

[6] *Compare* Ga. Code Ann. § 10-1-372, Kan. Stat. Ann. § 50-626(a), and S.D. Codified Laws § 37-24-6 *with* Fla. Stat. Ann. § 501.204(1) (listing "unconscionable acts or practices"), Miss. Code Ann. § 75-24-5(1) ("Unfair methods of competition . . . are hereby prohibited"), and S.C. Code Ann. § 39-5-20(a) (same).

[7] Ala. Code § 8-19-3(2); Ga. Code Ann. § 10-1-392(a)(10).

least seven jurisdictions, private claims under the consumer protection statute must be asserted on an individual basis, which specifically forecloses the use of class actions by private litigants.[8]  Thus, while residents of California may attempt to assert CLRA, UCL, and FAL claims on a class-wide basis, plaintiffs in other states would have no authority to assert consumer protection claims on a class-wide basis and could not be members of the proposed class.

State laws also vary in significant, outcome-determinative ways in terms of the remedies and damages available to putative class members.  If consumer protection claims are filed in Ohio or Colorado, a plaintiff may seek treble damages on an individual basis but may only recover actual damages in a putative class action.[9]  If such claims are filed in New Jersey, a plaintiff may recover treble damages on a class-wide basis.  N.J. Stat. § 56:8-19.  In California, a plaintiff asserting UCL claims may not recover damages at all and would only be entitled to injunctive relief and restitution.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

### b.    Each State Has an Interest in Applying Its Own Consumer Protection Laws.

In the Complaint, plaintiffs purport to assert claims on behalf of each

---

[8] Ala. Code § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class"); Ga. Code Ann. § 10-1-399(a); La. Rev. Stat. § 51:1409(A); Miss. Code Ann. § 75-24-15(4); Mont. Code Ann. § 30-14-133(1); S.C. Code Ann. § 39-5-140(a); Va. Code § 59.1-204(A-B).

[9] Ohio Rev. Code Ann. § 1345.09(b) (limiting class action to actual damages, but individual plaintiffs may collect treble damages); *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 278 (Colo. App. 1993) (holding that, under Colo. Rev. Stat. Ann. § 61-1-113, individual plaintiffs (but not class representatives) may seek treble damages and attorneys' fees).

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

purchaser of implicated Millennium products during "the relevant limitations period." (Compl. ¶ 41.)  However, in *Mazza*, the Ninth Circuit recognized that each state in which a putative class member bought a falsely advertised product has an interest in having its own consumer protection laws applied.  *Mazza*, 666 F.3d at 591-92; *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) (every state "has an interest in having its law applied to its resident claimants").  This includes "an interest in setting the appropriate level of liability for companies conducting business within its territory." *Mazza*, 666 F.3d at 592; *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 90 (2010).  Allowing each state to apply its own laws assures individuals and companies operating within its territory that "applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and business[es] in the event they are faced with litigation in the future." *Id.* at 98.  Thus, each state in which consumers purchased the accused Millennium products has a "strong interest" in applying its own laws.

### c.   Here, California's Interest in Applying its Own Laws is Subordinate to the Interests of Foreign States.

The final step in California's choice-of-law analysis requires a determination of which state's interest would be more impaired if its policy were subordinated. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001).  Under California choice-of-law rules, "the place of the wrong" has "the predominant interest," and California considers the "place of the wrong" to be the state where the "last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593. In the consumer fraud context, "the last events necessary for liability as to . . . foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles—[take] place in the various foreign states." *Id.* at 594.  These foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state. *Id.*  Conversely, California's interest in applying its laws to

1   residents of foreign states is "attenuated." *Id.*; *Discover Bank v. Superior Court*,

2   134 Cal. App. 4th 886, 895 (2005) ("California has no greater interest in protecting

3   other states' consumers than other states have in protecting California's.").

4       State consumer laws strike different balances between the need to protect

5   resident consumers and the desire to encourage business and maintain economic

6   growth.  The Ninth Circuit in *Mazza* thus recognized that "each foreign state has an

7   interest in applying its law to transactions within its borders," and that if state law

8   were applied to the entire class, "foreign states would be impaired in their ability to

9   calibrate liability to foster commerce." 666 F.3d at 593.  For example, at least

10  seven jurisdictions mandate that private consumer protection claims be asserted on

11  an individual rather than a class-wide basis. *See supra* note 8.  Other states have

12  decided to limit the damages available in consumer lawsuits—those states' interests

13  would be impaired if they could not enforce limits for consumers and transactions

14  within their borders. *See In re Grand Theft Auto Video Game Consumer Litig.*, 251

15  F.R.D. 139, 150 (S.D.N.Y. 2008) ("[T]he interests of the state of purchase would be

16  most impaired if its consumer-fraud laws were not applied.").

17      Here, as in *Mazza*, "each class member's consumer protection claim should

18  be governed by the consumer protection laws of the jurisdiction in which the

19  transaction took place." *Mazza*, 666 F.3d at 594.  And, because the laws of

20  multiple jurisdictions apply to any nationwide class, "variances in state law

21  overwhelm common issues and preclude [a finding of] predominance for a single

22  nationwide class." *Id.* at 596; *Frenzel*, 2014 U.S. Dist. LEXIS 177880, at *8-20.

23      The Court should therefore strike plaintiffs' nationwide class allegations,

24  which improperly seek to apply California law to nonresident class members who

25  did not purchase Millennium products in California.  (*See* Compl. ¶¶ 41-52 (class

26  allegations); 53-84 (California causes of action); p. 30 (prayer for relief).)

27  **IV.   CONCLUSION**

28      For the reasons stated above, Millennium respectfully seeks an order

MOTION TO DISMISS OR STRIKE
2:15-CV-01801-PSG-AJW

dismissing all of plaintiffs' claims for the following reasons:

(1) plaintiffs fail to plead their claims with particularity under Rule 9(b);

(2) plaintiffs fail to plausibly allege a violation of 21 C.F.R. § 101.54(g) or a sufficient likelihood that a reasonable consumer could be deceived; and

(3) all of plaintiffs' claims seek to impose an interpretation of 21 C.F.R. § 101.54(g) not identical to that of the FDA and are expressly preempted;

In the alternative, to the extent that any of plaintiffs' claims are not dismissed in their entirety, Millennium respectfully seeks an order:

(1) dismissing all claims asserted by Ms. Schofield for lack of standing;

(2) striking all allegations concerning products purchased only by Ms. Schofield for lack of standing—including those as to GT's Enlightened and Classic Kombucha: Original and Gingerade and GT's Enlightened Synergy: Raspberry Chia (Compl. ¶ 5);

(3) dismissing all of Mr. Retta's claims brought under the CLRA, UCL, and FAL for lack of standing;

(4) striking all CLRA, UCL, and FAL claims brought as to products purchased only by Mr. Retta for lack of standing—including those as to GT's Enlightened Kombucha: Multi Green (Compl. ¶ 4.);

(5) dismissing plaintiffs' GBL claim as impliedly preempted;

(6) dismissing plaintiffs' claims for injunctive relief; and

(7) striking plaintiffs' nationwide class allegations.


Dated:  April 28, 2015

O'MELVENY & MYERS LLP


By:      /s/ Scott M. Voelz
                Scott M. Voelz
Attorneys for Defendant
Millennium Products, Inc.

-25-

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEON KHASIN, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE HERSHEY COMPANY,<br>　　　　　　Defendant. | Case No. 5:12-cv-01862-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 139 |

Presently before the Court are two motions filed in the above-captioned case: a Motion for Summary Judgment by Defendant The Hershey Company ("Hershey" or "Defendant") and Motion for Partial Summary Judgment by Plaintiff Leon Khasin ("Khasin" or "Plaintiff"). Dkt. No. 139. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff filed this putative class action against Defendant alleging that several of Defendant's products have been improperly labeled so as to amount to misbranding and deception in violation of several California and federal laws.

Per Civ. L. R. 7-1(b), the motions were taken under submission without oral argument. Having fully reviewed the parties' papers, the Court GRANTS Defendant's Motion for Summary

1

1    Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.

2    **I.      BACKGROUND**

3           Plaintiff is a California consumer who, since 2008, purchased more than $25.00 of

4    Defendant's products, including Special Dark Chocolate, Milk Chocolate, Special Dark Kisses,

5    Special Dark Cocoa, Natural Unsweetened Cocoa, and Sugar Free Coolmint IceBreaker Mints.

6    Dkt. No. 27 ¶ 19, 196.  Plaintiff argues that the following representations on the packaging of

7    these and other of Defendant's food products were unlawful and/or misleading: (1) antioxidant

8    nutrient content claims, (2) nutrient content claims without required disclosures, (3) healthy diet

9    claims, (4) sugar free claims, (5) unlawful serving sizes, (6) listing polyglycerol polyricinoleic

10   acid as "PGPR", and (7) failing to disclose vanillin.  Dkt. No. 27 ¶ 60, 197-99.

11          Khasin filed his original Complaint in this case on April 13, 2012 alleging that Hershey's

12   mints, milk chocolate, dark chocolate and cocoa products were improperly labeled in violation of

13   U.S. Food and Drug Administration regulations and California law.  See Dkt. No. 1.  Plaintiff's

14   First Amended Complaint ("FAC") was filed on July 23, 2012.  See Dkt. No. 27.  Plaintiff's FAC

15   alleges that he read the labels on Defendant's products, relied on these claims when making

16   purchasing decisions, and was misled by these claims.  Id. at ¶ 60, 197-99.  This Court granted

17   Defendant's Motion to Dismiss the FAC in part on November 9, 2012.  See Dkt. No. 45.  The

18   Court dismissed Plaintiff's claims predicated on the Magnuson-Moss Warranty Act and the Song-

19   Beverly Act.  Id.  The Court found that Plaintiff satisfied the UCL's injury-in-fact requirement

20   because he alleged that he relied on Defendants' allegedly misleading conduct in purchasing

21   certain products.  Id.  After the Court's order, the following causes of action remained: violation of

22   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., (counts 1-

23   3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.,

24   (counts 4-5); violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et

25   seq., (count 6); and unjust enrichment / quasi-contract (count 7).

26          On June 14, 2013, Defendant filed a motion for partial summary judgment.  See Dkt. No.

27   68.  On May 5, 2014, the Court granted partial summary judgment in favor of Hershey as to all of

28   Case No.: 5:12-cv-01862-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2

United States District Court
Northern District of California

1   Khasin's claims, with the exception of Khasin's UCL claim concerning the statement "natural

2   source of flavanol antioxidants" on certain labels of Hershey's dark chocolate and cocoa products.

3   See Dkt. No. 131.

4   **II.      LEGAL STANDARD**

5          Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

6   inferences in the light most favorable to the nonmoving party, there are no genuine disputes of

7   material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

8   Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).  At the summary judgment stage, the Court

9   "does not assess credibility or weigh the evidence, but simply determines whether there is a

10  genuine factual issue for trial."  House v. Bell, 547 U.S. 518, 559-60 (2006).  A fact is "material"

11  if it "might affect the outcome of the suit under the governing law," and a dispute as to a material

12  fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of

13  the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

14         The moving party bears the initial burden of identifying those portions of the pleadings,

15  discovery, and affidavits that demonstrate the absence of a genuine issue of a material fact.

16  Celotex, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at

17  trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

18  moving party.  Id. at 322-23.  But, on an issue for which the opposing party will have the burden

19  of proof at trial, the party moving for summary judgment need only point out that "the nonmoving

20  party has failed to make a sufficient showing on an essential element of her case with respect to

21  which she the burden of proof.  Id. at 323.  Once the moving party meets its initial burden, the

22  nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts

23  showing that there is genuine issue for trial."  Anderson, 477 U.S. at 250.

24         If evidence produced by the moving party conflicts with evidence produced by the

25  nonmoving party, a court must assume the truth of the evidence set forth by the nonmoving party

26  with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  "Bald

27  assertions that genuine issues of material fact exist," however, "are insufficient."  See Galen v.

28

*Left margin (vertical):* United States District Court   Northern District of California

3

Case No.: 5:12-cv-01862-EJD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Cnty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007); see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## III.  DISCUSSION

Hershey advances several arguments on which the Court may grant summary judgment. First, Hershey argues that, to prevail on his UCL claim, Khasin must prove he was deceived by Hershey's "natural source of flavanol antioxidants" statements. See Dkt. No. 155 at 1. Second, Hershey contends that there is no evidence of class-wide deception because Khasin has not shown that reasonable consumers would likely have been misled by Hershey's statements. See id. Third, Hershey claims that there is no evidence that Khasin suffered injury as a result of being deceived by Hershey's statements. See id.

For the reasons stated below, the Court concludes there is insufficient evidence that the "natural source of flavanol antioxidants" statement on the challenged Hershey products was likely to mislead reasonable consumers and that the label statements were therefore unlawful on that basis. Because Hershey has shown an absence of a genuine dispute of material fact on these points, the Court GRANTS Hershey's Motion for Summary Judgment. Thus, the Court need not address the Khasin's Motion for Partial Summary Judgment because it is largely a "mirror image" of Hershey's Motion for Summary Judgment. As such, the Court DENIES Khasin's Motion for Partial Summary Judgment as moot.

### A.  Statutory Framework

The federal Food, Drug, and Cosmetic Act ("FDCA"), codified at 21 U.S.C. § 301 et. seq., gives the Food and Drug Administration ("FDA") "the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.'" Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009) (quoting 21 C.F.R. § 393(b)(2)(A)). For purposes of federal law, food is "misbranded" if its labeling is "false or

Case No.: 5:12-cv-01862-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

misleading in any particular. . . . ." 21 U.S.C. § 343(a)(1). California, through the Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code § 109875 et seq., has expressly adopted the federal labeling requirements as its own. Under the Sherman Law, "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food regulations of [California]." See § 110100. California has also enacted a number of laws and regulations that adopt and incorporate specific federal food laws and regulations. See, e.g., § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."); see also § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in." 21 U.S.C. § 343(q)); see also § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in." 21 U.S.C. § 343(r)).

The parties agree that the FDA has yet to promulgate a regulation defining the word "natural" as it pertains to packaged food. See Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food ("FDA Policy Statement"), 58 Fed. Reg. 2303, 2407 (Jan. 6, 1993) (explaining that "FDA is not undertaking rulemaking to establish a definition for 'natural' at this time."). Instead, the FDA opted to "maintain its current policy . . . not to restrict the use of the term 'natural' except for added color, synthetic substances, and flavors as provided in [21 C.F.R.] § 101.22." Id. "Additionally," the FDA continued, "the agency will maintain its policy regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." Id. (citation omitted).

Against that statutory backdrop, Khasin's lawsuit has two prongs. Khasin argues that Hershey has violated the UCL, FAL, and CLRA because the labels on the challenged Hershey products are (1) unlawful and (2) misleading. FAC ¶ 5, Dkt. No. 27. First, he argues "that the particular products purchased by Khasin are a 'natural source of flavanol antioxidants' " is unlawful. FAC ¶ 17, Dkt. No.27. Secondly, he argues that "[t]he natural antioxidants found in

United States District Court
Northern District of California

teas and certain fruits like berries and grapes can also be found in Hershey ®'s Kisses® Special Dark®" is misleading. FAC ¶ 17, Dkt. No. 27. The challenged Hershey products, Khasin alleges, make unlawful nutrient content claims as to the antioxidant labeling. The Court will address each argument in turn.

### A. Whether Hershey's Labels Are Deceptive

Khasin's UCL claim is governed by the "reasonable consumer standard," which requires evidence that "members of the public are likely to be deceived" by the business practice or advertising at issue. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted). To survive summary judgment, Khasin "must produce evidence showing 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.' " Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1026 (9th Cir. 2008) (quoting Brockey v. Moore, 107 Cal. App. 4th 86, 99 (2003)). Put differently, Khasin must show "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 507 (2003). Here, Khasin offers consumer survey about how consumers could interpret Hershey's flavonal antioxidant statements, and cites Federal Register entries indicating that the purpose behind FDA's labeling rules is to minimize consumer confusion. Khasin SJ Mot. at 13-15. Although surveys and expert testimony regarding consumer expectations are not required, "a few isolated examples of actual deception are insufficient" in the Ninth Circuit. Clemens, 534 F.3d at 1026 (internal quotation marks omitted). Moreover, under California law, Khasin cannot "obtain relief by arguing how consumers could react; [he] must show how consumers actually do react." Zeltiq Aesthetics, Inc. v. BTL Indus., Inc., 13-cv-05473-JCS, 2014 U.S. Dist. LEXIS 40402, at *33 (N.D. Cal. Mar. 25, 2014); see also Hylton v. Anytime Towing, No. 12-57267, 2014 U.S. App. LEXIS 4975, at *4 (9th Cir. Mar. 17, 2014) (recognizing that on summary judgment a party cannot rely on "allegations unsupported by factual data."). Without such proof, Khasin does not satisfy the UCL's "reasonable consumer" test.

Khasin testified that he was misled by Hershey's "natural source of flavanol antioxidants"

6

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

label.  See Depo. of Leon Khasin ("Khasin Depo.") Ex. K, ¶ 79, Dkt. No. 144.  According to Khasin, he believed at the time of purchase that flavanol antioxidants made them a "better choice" than other candy products.  Id. at 174.  Khasin provides additional evidence from the European Food Safety Authority (EFSA), the U.S. Department of Agriculture, the Tea Quarterly, and an internal Hershey email exchange to show that flavanol antioxidants are not known to provide health benefits.  See Pls. Resp. Mot. Summ. J. ("Response") at 2-4, Dkt. No. 149.  Khasin asks for the Court to infer that Hershey's statements could mislead other consumers as he was because consumers are likely to assume that the statement, "natural source of flavanol antioxidants," facially violates FDA regulations.  Id. at 4-6.  Khasin also claims that he is not required to prove reliance on Hershey's label claims to succeed on his UCL claim to show deception, but even if he were, this requirement is satisfied through his testimony that the Hershey's "natural source of flavanol antioxidant" statements were a factor in his purchasing decision.  Id. at 9-12.

Hershey maintains that its product labeling is not false and does not mislead consumers because its products retain flavanol antioxidants that are naturally found in the cocoa bean.  Def. Reply 5, Dkt. No. 155.  In particular, Hershey points to expert testimony to reiterate that Hershey's evidence is both true and unrebutted.  Id.  Further, Hershey alleges that Khasin understood that Hershey's products are candy, not health foods as derived from his prior testimony.  Id.  Hershey argues that Khasin provides no "extrinsic evidence" required by the Ninth Circuit to show that reasonable consumers are likely to be misled in the same way.  Id. at 6.  Lastly, Hershey urges that Khasin is required to prove reliance on Hershey's statements under both state and federal law.  Id. at 5-6 (citing Khasin v. Hershey Co., 2014 WL 1779805, at *4 (In the "mislabeling of food products" . . . "the actual reliance requirement applies to Plaintiff's claims under all prongs of the UCL."); see also Figy v. Amys Kitchen, 2013 WL 6169503, at *3 (N.D. Cal. 2013); Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310, 327 n.10 (2011); Wilson v. Frito–Lay N. Am., 961 F. Supp.2d 1134 (N.D. Cal. 2013).

Here, Khasin's evidence is insufficient to create a genuine dispute of material fact.  First, the Court will address the issue of whether Khasin was misled in the purchase of the Hershey

7

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    products.  Second, whether Khasin is likely to be misled by Hershey's statements.  Finally,

2    whether Khasin was injured as a result of his reliance when he purchased Hershey products

3    labeled with the statement, "natural source of flavanol antioxidant."

4         First, Khasin argues that he was "mislead" by the label "natural source of flavanol

5    antioxidants" and the "implicit representation[s]" that the FDA has established a Recommended

6    Daily Intake ("RDI") or Recommended Daily Value ("RDV") for flavanol antioxidants.  See

7    Williams, 552 F.3d at 939; Dkt. No. 149 at 7-8.  However, his solitary testimony, without more, is

8    not enough to survive summary judgment.  "[A] few isolated examples of actual deception are

9    insufficient" to survive summary judgment.  Clemens, 534 F.3d at 1026 (internal quotation marks

10   omitted); see also Ries v. Arizona Beverages USA, No. 10-CV-00139, 2013 WL 1287416, at *7

11   (N.D. Cal. Mar. 28, 2013) (granting summary judgment where defendants' owner testified that

12   some consumers of AriZona Iced Tea "were confused by the term a hundred percent natural"

13   because such testimony, without more, "does not demonstrate that it is probable that a significant

14   portion of the consuming public could be confused by the 'all natural' labeling of defendants'

15   products.").  Thus, absent additional evidence in addition to his own testimony, Khasin does not

16   meet his burden on the question of deception.

17        Moreover, even if the Court were to accept Khasin's testimony as the only evidence of

18   deception, the facts in the record speak to the contrary.  Khasin testified in his deposition that

19   Hershey's products are candy, not health foods.  Leon Khasin Transcript ("Khasin Tr.") Ex. 2 at

20   79, Dkt. No. 139.  Further, Khasin admitted under oath that he has no understanding of an RDV or

21   RDI (Id. at 74), and he is not concerned about the fats and sodium in Hershey's products.  Id. at

22   167, 168, 196.  As such, Khasin does not meet his burden on the question of deception.

23        Second, Khasin must provide other extrinsic evidence in addition to his allegations to

24   prove whether a reasonable consumer is likely to be misled.  See Rice v. Fox Broad. Co., 330 F.3d

25   1170, 1181-2, n. 8 (9th Cir. 2003); see also Khasin v. Hershey Co., 2014 WL 1779805, at *10-11

26   (N.D. Cal. May 5, 2014); see also Ries v. Arizona Beverages USA, 2013 WL 1287416, at *7

27   (N.D. Cal. Mar. 28, 2013).  Here, Khasin produces no extrinsic evidence to suggest that a

28   
Case No.: 5:12-cv-01862-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

8

*United States District Court*
*Northern District of California*

reasonable consumer would have expected or assumed that any particular level of flavanol antioxidants would be found in the alleged Hershey products. Khasin provides only his own personal logic to arrive at the conclusion that the statement, "natural source of flavanol antioxidants" is misleading, without any other extrinsic evidence. There is insufficient evidence present such that the Court could find that a reasonable consumer would be misled by Hershey's statements. Further, even if the Court were to accept Khasin's personal logic to arrive at the conclusion that the phrase, "natural source of flavanol antioxidants" misleads consumers because it appears to violate FDA regulations, "not every regulatory violation amounts to an act of consumer fraud." See Mason v. Coca-Cola Co., 774 F. Supp. 2d 699, 705 n.4 (D.N.J. 2011).

The additional "evidence" offered by Khasin is not relevant to the issue of determining whether the phrase, "natural source of flavanol antioxidants" constitutes a mislabeling under UCL. For example, Khasin cites the FDCA's disclosure requirements as his evidence that the phrase "natural source of flavanol antioxidants" is a nutrient content claim that could have misled consumers because Hershey should have disclosed its products contain "disqualifying amounts of saturated fat." Plaintiff's Opposition ("Pls. Opp.") at 5-6, Dkt. No. 149. According to the regulation that plaintiff relies upon, ". . . a nutrient content claim that characterizes the level of antioxidant nutrients present in a food may be used on the level or in the leveling of that food: (1) An RDI has been established for each of the nutrients." 21 C.F.R. § 101.54(g)(1). However, such measures are not appropriate in this case because Hershey did not characterize the level or amount of antioxidants present in its product. Here, Khasin's showing of FDA letters regarding the characterizing level or amounts of nutrients is not relevant to showing that consumers are likely to be misled by Hershey's statements. While the Court views the FDA letters as controlling, despite being informal, of its regulatory definitions, the letters themselves are irrelevant to deciding whether Khasin was likely to be misled by Hershey's statements. See Victor v. R.C. Bigelow, Inc., 2014 WL 1028881, at *15 (N.D. Cal. Mar. 14, 2014) (citing Kane v. Chobani, Inc., 2013 WL 3703981, at * 17 (N.D. Cal. July 12, 2013) ("As set forth by the Supreme Court in Auer v. Robbins, an agencys' interpretation of its own regulation, even if set forth in an informal

United States District Court
Northern District of California

9

Case No.: 5:12-cv-01862-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    document, is controlling unless plainly erroneous or inconsistent with the regulation." (citing

2    Auer v. Robbins, 519 U.S. 452, 461 (1997))) (quotation marks and brackets omitted). Therefore,

3    Khasin is unable to meet his burden as to whether a reasonable consumer would be misled by

4    Hershey's statements.

5        Third, Khasin does not meet the burden of showing he suffered injury as a result of

6    purchasing and relying on Hershey's statements. For Khasin to prevail on his UCL claim, he is

7    required to prove that he "lost money or property," as a result of Hershey's deceptive labeling to

8    "demonstrate some form of economic injury." Kwikset, 51 Cal. 4th at 322-23. Khasin proffers no

9    evidence to show economic injury, but rather claims that his purchases are "legally worthless"

10   because they are inaccurate representations of what he thought he was purchasing. See Pls. Opp.

11   6, Dkt. No. 149. He further claims that he paid a "price premium" because Hershey products with

12   the statement, "natural source of flavanol antioxidants," are objectively worth less than what he

13   paid, but the expert evidence he proffers to support this argument does not propose a model to

14   determine how to calculate this presumed "price premium." See Dkt. No. 139 at 13. Hershey

15   shows in its evidence, which is comprised of empirical data, including historical sales data and a

16   consumer survey, that there is no price change attributable to the labeling phrase, "natural source

17   of flavanol antioxidants." Id. at 14-15. Therefore, Khasin has not met his burden of showing that

18   he suffered economic injury through loss of money or property, as a result of Hershey's alleged

19   deceptive labeling.

20       Further, Khasin does not show economic injury because he undermines his claim by

21   stating that "at least 90% of my purchases" were "consumed by someone other than me." See

22   Dkt. No. 144, Ex. P at ¶¶ 7-8, 11-12, 15-16. Therefore, Khasin has not met his burden showing he

23   was injured as a result of Hershey's alleged deceptive labeling. Consequentially, because Khasin

24   is unable to prove that he was misled and relied on that deception, he cannot prove that he was

25   injured as a result.

26       In sum, Khasin does not provide sufficient evidence to support his allegations that

27   Hershey's statements are deceptive.

28
     Case No.: 5:12-cv-01862-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## B. Whether Hershey's Labels Are Unlawful

Khasin alleges that Hershey products that bear the phrase "natural source of flavanol antioxidants" on its labels is "unlawful" for the purposes of the UCL.  FAC ¶ 17.  Hershey asserts that its "Special Dark chocolate and cocoa products retain flavanol antioxidants naturally present in the cocoa bean" and that there is no evidence proffered by either party rebutting this statement.  See Dkt. No. 155 at 4-5; see also Decl. of Mark Payne ("Payne Decl.") Dkt. No. 139, Ex. 13.  "By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  Alvarez v. Chevron Corp., 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alteration and internal quotations omitted).  "Virtually any law federal, state or local can serve as a predicate for an action under the UCL."  Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 718 (2001).  "If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails."  Stokes v. CitiMortgage, Inc., 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014) (internal quotation marks omitted); see also Bruton v. Gerber Products Co., 2014 WL 7206633, at *7 (N.D. Cal. Dec. 18, 2014) (internal quotation marks omitted).

In his Opposition, Khasin explains that his UCL unlawful claim is based on a violation of the Sherman Law, which "expressly prohibits false and misleading food labeling and advertising."  See Dkt. 149 at 5-6 (citing Cal. Health & Safety Code §§ 10660, 110398, 110400).  Khasin reiterates that Hershey's products are in violation of state law and the UCL, so he is not required to prove reliance on the Hershey product misrepresentation.  Id. at 18.  However, Hershey asserts that Khasin is required to prove reliance under the UCL.  See Dkt. No. 155 at 5.

The California Supreme Court requires plaintiffs to prove all elements of a UCL claim, not just the "prong" under which plaintiff brings suit.  Kwikset Corp., 51 Cal 4th at 327 n.9.  The Court has found that Khasin was required to prove deception, reliance on that deception, and injury.  Khasin v. Hershey Co., 2014 WL 1779805, at *10-11.  Further, Khasin confirms that his UCL unlawful claim requires a finding that Hershey's "a natural source of flavanol antioxidants" label violated the Sherman law by misleading reasonable consumers.  See Dkt. No. 149 at 9-10.

11

Case No.: 5:12-cv-01862-EJD

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1   Put differently, Khasin's UCL claim is only viable so long as he proves that Hershey violates the

2   Sherman Law through its statement, "a natural source of flavanol antioxidants." Thus, because

3   Khasin did not meet his burden, the UCL unlawful claim fails. With no predicate violation on

4   which to rely, Khasin's UCL unlawful claim cannot stand. See Stokes, 2014 WL 4359191, at *11.

5        Thus, the Court DENIES Khasin's motion for partial summary judgment based on the

6   unlawful prong of the UCL. See Bruton v. Gerber Products Co., 2014 WL 7206633, at *6 (N.D.

7   Cal. Dec. 18, 2014) (citing Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007) ("A district

8   court does not have a duty to search for evidence that would create a factual dispute."))

9   **IV.    CONCLUSION**

10       For the foregoing reasons, the Court hereby GRANTS Hershey's Motion for Summary

11  Judgment. The Court also DENIES as moot Khasin's Motion for Partial Summary Judgment.

12  Judgment shall be entered in favor of Hershey and the Clerk shall close this case file.

13

14  **IT IS SO ORDERED.**

15  Dated: March 31, 2015

16

17  EDWARD J. DAVILA
    United States District Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

12

Case No.: 5:12-cv-01862-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT