SCOTT M. VOELZ (S.B. #181415)
svoelz@omm.com
DANIEL J. FARIA (S.B. #285158)
dfaria@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Attorneys for Defendant
Millennium Products, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN RETTA, KIRSTEN SCHOFIELD, and JESSICA MANIRE, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MILLENNIUM PRODUCTS, Inc.,<br><br>Defendant. | Case No. 2:15-CV-01801-PSG-AJW<br><br>**DEFENDANT MILLENNIUM PRODUCTS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Philip S. Gutierrez<br>Hearing Date:   August 31, 2015<br>Hearing Time: 1:30 PM<br><br>FAC Filed:  May 19, 2015<br>Trial Date:   Not Set |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on August 31, 2015 at 1:30 PM, or as soon thereafter as this Motion may be heard in Courtroom 880 of the above-entitled court, located at the Edward R. Roybal Federal Building, 255 E. Temple Street, Los Angeles, California 90012, defendant Millennium Products, Inc. will, and hereby does, move the Court for an order dismissing plaintiffs' Amended Class Action Complaint ("FAC") or, in the alternative, striking portions of the FAC.

   This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 11, 2015.

   This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 9(b), and 12(f) on the following grounds:

1.   Plaintiffs have failed to plead their claims, which sound in fraud, with the particularity required by Federal Rule of Civil Procedure 9(b).

2.   Plaintiffs fail to plausibly allege a violation of 21 C.F.R. § 101.54(g) or a sufficient likelihood that a reasonable consumer could be deceived by Millennium product labels.

3.   All of plaintiffs' claims concerning Millennium's alleged use of the phrase "powerful antioxidants" (the "Generic Claims") should be dismissed on the grounds that the phrase "powerful antioxidants" is non-actionable puffery.

4.   Plaintiffs' Generic Claims seek to impose an interpretation of 21 C.F.R. § 101.54(g) in addition to or different from that of the Federal Food, Drug, and Cosmetic Act, such that all of plaintiffs' Generic Claims are expressly preempted.

5.   Plaintiffs' Fourth Cause of Action, brought under the New York General Business Law ("GBL"), is impliedly preempted as it is improperly predicated on an alleged violation of FDA regulations.

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

1      6.    Plaintiffs lack standing to assert GBL claims as to any Millennium

2      products purchased outside of New York.

3      7.    Plaintiffs lack Article III standing to assert claims for injunctive relief.

4      8.    Plaintiffs' nationwide class allegations should be struck on the ground

5      that plaintiffs cannot maintain a nationwide class action that seeks to

6      apply California law to nonresident class members who purchased the

7      accused Millennium products in other states.

8      Defendant's Motion is based on this Notice of Motion and Motion, the

9 Memorandum of Points and Authorities and Appendix of State Law Variations

10 filed in support thereof, the entire file in this matter, and such other matters, both

11 oral and documentary, incorporated in the FAC by reference or as may properly

12 come before the Court.

13

14      Dated:  June 19, 2015

15                  O'MELVENY & MYERS LLP

16                  By:      /s/ Scott M. Voelz

17                         Scott M. Voelz
                       Attorneys for Defendant

18                 Millennium Products, Inc.

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    LEGAL STANDARD ..................................................................... 3

III.   ARGUMENT .................................................................................. 4

    A.     Plaintiffs Fail to Meet the Pleading Requirements of Rule 9(b) ......... 4

    B.     Plaintiffs' Claims Are Facially Implausible Under Rule 12 ................ 7

        1.     The Generic Claims Do Not Violate 21 C.F.R. § 101.54(g) Because They Do Not Characterize the Level of Antioxidants in Millennium's Product ................................... 7

        2.     The Phrase "Powerful Antioxidants" Is Also Non-Actionable Puffery ................................................................... 11

        3.     Alleged FDCA Violations Are Insufficient to Establish That a Reasonable Consumer Could Be Deceived ................... 11

    C.     Plaintiffs' Generic Claims Misinterpret 21 C.F.R. § 101.54(g) and Are Preempted by the Federal Food, Drug, and Cosmetic Act ....................................................................... 13

    D.     Plaintiffs Fail to State a Claim Under Section 349 of the GBL .......... 14

    E.     Plaintiffs Lack Standing to Assert GBL Claims as to Products Purchased Outside of New York ............................................... 16

    F.     Plaintiffs Lack Article III Standing to Seek Injunctive Relief .......... 16

    G.     The Court Should Strike Plaintiffs' Nationwide Class Allegations ............................................................................ 19

        1.     Plaintiffs' Nationwide Class Allegations Can and Should Be Struck at the Motion to Dismiss Stage ............................... 19

        2.     California's Choice of Law Analysis Mandates Striking Plaintiffs' Nationwide Class Allegations ............................... 21

IV.    CONCLUSION ............................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

<u>**CASES**</u>

*Ang v. Whitewave Foods Co.*,
  2013 U.S. Dist. LEXIS 173185 (N.D. Cal. Dec. 10, 2013) ................................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 4

*Bates v. UPS*,
  511 F.3d 974 (9th Cir. 2007) ........................................................................... 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 3

*Bird v. First Alert, Inc.*,
  2014 U.S. Dist. LEXIS 176390 (N.D. Cal. Dec. 19, 2014) ............................... 17

*Brazil v. Dole Food Co.*,
  2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23, 2013) .............................. 13

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ............................................................................ 15

*Bronson v. Johnson & Johnson, Inc.*,
  2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ................................................... 11

*Craig v. Twinings N. Am., Inc.*,
  2015 WL 505867 (W.D. Ark. Feb. 5, 2015) ................................................. 8, 14

*D'Lil v. Best W. Encina Lodge & Suites*,
  538 F.3d 1031 (9th Cir. 2008) ......................................................................... 17

*Dabish v. Infinitelabs, LLC*,
  2014 U.S. Dist. LEXIS 131124 (S.D. Cal. Sept. 17, 2014) ............................... 17

*Davidson v. Kimberly-Clark Corp.*,
  2014 U.S. Dist. LEXIS 176394 (N.D. Cal. Dec. 19, 2014) ......................... 17, 18

*Discover Bank v. Superior Court*,
  134 Cal. App. 4th 886 (2005) ...................................................................... 23-24

*Fraker v. KFC Corp.*,
  2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ................................................... 13

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ............................................................................. 12

*Frenzel v. Aliphcom*,
  2014 U.S. Dist. LEXIS 177880 (N.D. Cal. Dec. 29, 2014) ...............5, 19, 20, 24

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
 343 F.3d 1000 (9th Cir. 2003) ................................................................ 11

*Hairston v. S. Beach Beverage Co.*,
 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) .......................... 1

*Hill v. Roll Int'l Corp.*,
 195 Cal. App. 4th 1295 (2011) ............................................................... 12

*Hodgers-Durgin v. De La Vina*,
 199 F.3d 1037 (9th Cir. 1999) ............................................................... 19

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ........................................... 2

*In re Bridgestone Firestone, Inc.*,
 288 F.3d 1012 (7th Cir. 2002) ............................................................... 21

*In re Frito Lay N. Am., Inc. All Natural Litig.*,
 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ........................................ 16

*In re Grand Theft Auto Video Game Consumer Litig.*,
 251 F.R.D. 139 (S.D.N.Y. 2008) ........................................................... 24

*In re HP Inkjet Printer Litig.*,
 2008 WL 2949265 (N.D. Cal. July 25, 2008) ........................................ 21

*In re Stacs Elecs. Sec. Litig.*,
 89 F.3d 1399 (9th Cir. 1996) ................................................................... 4

*Jones v. ConAgra Foods, Inc.*,
 2014 WL 2702726 (N.D. Cal. June 13, 2014) .......................................... 8

*Kane v. Chobani, Inc.*,
 2014 WL 657300 (N.D. Cal. Feb. 20, 2014) ....................................... 5, 12

*Kardovich v. Pfizer, Inc.*,
 2015 U.S. Dist. LEXIS 42906 (E.D.N.Y. Mar. 31, 2015) ................... 4, 12

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ................................................................. 4

*Khasin v. Hershey Co.*,
 No. 12-cv-01862, Dkt. No. 185 (N.D. Cal. Mar. 31, 2015) ................. 8, 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134 (2003) ........................................................................ 22

*Lanovaz v. Twinings*,
 2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25, 2013) ..................... 9-10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ...................................................... 3

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................... passim

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) ................................................................ 23

*McKinniss v. Kellogg USA*,
   2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 21, 2007) .............. 12

*Morgan v. Wallaby Yogurt Co.*,
   2014 WL 1017879 (N.D. Cal. Mar. 13, 2014) .............................. 17

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ........................................ 11

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997) .................................................... 15

*Rahman v. Mott's LLP*,
   2014 WL 325241 (N.D. Cal. Jan. 29, 2014) ................................ 17

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ............................................... 18

*Robinson v. Lynmar Racquet Club, Inc.*,
   851 P.2d 274 (Colo. App. 1993) ................................................ 22

*Route v. Mead Johnson Nutrition Co.*,
   2013 U.S. Dist. LEXIS 35069 (C.D. Cal. Feb. 21, 2013) ......... 4, 19-20

*Salazar v. Honest Tea, Inc.*,
   2015 WL 75223 (E.D. Cal. Jan. 6, 2015) .................................... 10

*Samet v. Procter & Gamble Co.*,
   2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) ....... 6-7, 12, 13

*Savage v. Glendale Union High Sch.*,
   343 F.3d 1036 (9th Cir. 2003) ..................................................... 3

*Sugawara v. Pepsico, Inc.*,
   2009 U.S. Dist. LEXIS 43127 (E.D. Cal. May 21, 2009) ................ 12

*Trazo v. Nestlé USA, Inc.*,
   2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ............... 8-9

*Verzani v. Costco Wholesale Corp.*,
   2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) .............................. 15

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) .................................................................4, 5

*Viggiano v. Hansen Nat. Corp.,*
   944 F. Supp. 2d 877 (C.D. Cal. 2013) .................................................11

*Wash. Mut. Bank, FA v. Superior Court,*
   24 Cal. 4th 906 (2001)...........................................................................23

*Werbel ex rel. v. Pepsico, Inc.,*
   2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) .....................12

*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) ...............................................................23

## STATUTES

21 U.S.C. § 337(a) ......................................................................................15

21 U.S.C. § 343-1(a)(1)-(3) ........................................................................14

Ala. Code § 8-19-10(f) ...............................................................................22

Ala. Code § 8-19-3(2).................................................................................21

Cal. Bus. & Prof. Code § 17200 *et seq.*.......................................................1

Cal. Bus. & Prof. Code § 17500 *et seq.*.......................................................1

Cal. Civ. Code § 1750 *et seq.* ......................................................................1

Colo. Rev. Stat. Ann. § 61-1-113 ...............................................................22

Fla. Stat. Ann. § 501.204(1) .......................................................................21

Ga. Code Ann. § 10-1-372...........................................................................21

Ga. Code Ann. § 10-1-392(a)(10) ...............................................................21

Ga. Code Ann. § 10-1-399(a) ......................................................................22

Kan. Stat. Ann. § 50-626(a) ........................................................................21

La. Rev. Stat. § 51:1409(A) ........................................................................22

Miss. Code Ann. § 75-24-15(4) ...................................................................22

Miss. Code Ann. § 75-24-5(1) .....................................................................21

Mont. Code Ann. § 30-14-133(1) ................................................................22

N.J. Stat. § 56:8-19 ......................................................................................22

- vii -

**TABLE OF AUTHORITIES**
(continued)

Page(s)

N.Y. Gen. Bus. Law § 349 ....................................................................1, 14, 15, 16

Ohio Rev. Code Ann. § 1345.09(b)........................................................................22

S.C. Code Ann. § 39-5-140(a) ..............................................................................22

S.C. Code Ann. § 39-5-20(a) ................................................................................21

S.D. Codified Laws § 37-24-6 ..............................................................................21

Va. Code § 59.1-204(A-B) ....................................................................................22

**OTHER AUTHORITIES**

62 Fed. Reg. 49868 (Sept. 23, 1997)................................................................9, 14

H.R. Rep. No. 101-538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336............13, 14

**RULES**

Fed. R. Civ. P. 12(b)(1) ..........................................................................................3

Fed. R. Civ. P. 12(b)(6) ..........................................................................................3

Fed. R. Civ. P. 12(f)................................................................................................4

Fed. R. Civ. P. 8(a) ................................................................................................6

Fed. R. Civ. P. 9(b)........................................................................................passim

**REGULATIONS**

21 C.F.R. § 101.54(g) ............................................................................3, 7, 14, 24

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendant Millennium Products, Inc. ("Millennium") is the maker of the popular "GT's" line of fermented tea beverages—offering consumers such favorites as GT's Kombucha and GT's Synergy.  Through its kombucha products, Millennium aims to introduce consumers to ancient tea recipes with a modern twist.

Plaintiffs are residents of Virginia, Kentucky, and Colorado who allege that they purchased certain Millennium beverages, largely not in the State of California. On March 11, 2015, plaintiffs filed this putative class action purporting to assert claims under the consumer protection laws of California and New York.  Plaintiffs alleged violations of (1) the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. ("CLRA"); (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"); (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*. ("FAL"); and (4) Section 349 of the New York General Business Law ("GBL").

In response to Millennium's motion to dismiss, plaintiffs filed an Amended Class Action Complaint ("FAC") on May 19, 2015 alleging the same causes of action.  Although the FAC narrowed the labeling claims at issue in this action, clarified that plaintiffs have not actually purchased the majority of products purportedly implicated in this action,[1] and superficially addressed standing defects

---

[1] Plaintiffs' failure to allege a purchase of the majority of products at issue in this action will foreclose the bulk of their claims.  Plaintiffs lack standing to assert claims as to any products they did not buy.  *See, e.g.*, *Hairston v. S. Beach Beverage Co.*, 2012 U.S. Dist. LEXIS 74279, at *16 n.5 (C.D. Cal. May 18, 2012). However, this Court has ruled that standing arguments as to non-purchased products are better addressed at class certification, and Millennium therefore does

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

1   as to out-of-state plaintiffs, it otherwise did not resolve the pleading defects
2   outlined in Millennium's motion to dismiss.  But these pleading defects continue to
3   necessitate dismissal of plaintiffs' claims.

4           Plaintiffs' claims cannot proceed because they assert claims and seek relief
5   that, on the face of the FAC, are factually and legally deficient.  Although plaintiffs
6   purport to state a claim under Section 349 of the GBL, New York law precludes
7   plaintiffs from asserting GBL claims expressly predicated on alleged violations of
8   the Federal Food, Drug, and Cosmetic Act ("FDCA").  All GBL claims asserted as
9   to products purchased outside New York should also be dismissed because the
10  GBL, by its express terms, does not provide a remedy for plaintiffs who allegedly
11  purchased a misbranded product out of state.  Additionally, all plaintiffs lack
12  standing to seek injunctive relief where, as here, they cannot allege a sufficient
13  likelihood that they will purchase Millennium products again.  Finally, while
14  plaintiffs purport to bring this putative class action on behalf of a nationwide class
15  of consumers under California law, the Ninth Circuit's decision in *Mazza v.*
16  *American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), forecloses those claims.

17          Plaintiffs' pleading fails on the merits as well.  Plaintiffs do not plead their
18  claims with the particularity required by Rule 9(b).  Specifically, plaintiffs fail to
19  allege with particularity where and when they allegedly purchased Millennium
20  products.  Millennium sells kombucha products within several different product
21  lines, and of several different flavors, the labels of which vary significantly over
22  time.  And the FAC fails to allege requisite facts indicating which Millennium
23  products and labels are before this Court.  Beyond alleging a regulatory violation,
24  the FAC also fails to allege how plaintiffs were deceived by Millennium labels; but
25  mere allegations that a product violates FDA regulations are insufficient under Rule
26  _____
27  not raise this argument here.  *In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
28  2014 WL 5311272, at *7 (C.D. Cal. Sept. 4, 2014) (Gutierrez, J.).

- 2 -

1    9(b) and insufficient to establish that a reasonable consumer could be deceived.

2            Finally, a significant portion of plaintiffs' claims are preempted by federal

3    law and fail to plausibly allege a violation of FDA regulations.  Presently before

4    this Court are claims as to two general labeling statements: (1) that certain

5    Millennium products contain "powerful antioxidants" (the "Generic Claims"); and

6    (2) that certain Millennium products contain "more antioxidants than blueberries"

7    (the "Blueberries Claims").  Plaintiffs' Generic Claims hinge on an errant

8    interpretation of an FDA regulation—21 C.F.R. § 101.54(g).  A statement that a

9    product contains "powerful" antioxidants does not characterize the ***level*** of

10   antioxidants in that product and is not prohibited by Section 101.54(g).  It is also

11   non-actionable puffery, as the term "powerful" is vague, generalized, and

12   unspecific subjective.  As a result, the Generic Claims are preempted and

13   insufficient to establish that a reasonable consumer could be deceived.

14           For these reasons, Millennium respectfully seeks an order dismissing the

15   FAC in its entirety.

16   **II.     LEGAL STANDARD**

17           Defendants may challenge a claim through a motion to dismiss when a court

18   lacks subject matter jurisdiction or when a plaintiff fails to state a claim upon which

19   relief can be granted.  Fed. R. Civ. P. 12(b)(1), 12(b)(6).  A motion to dismiss for

20   lack of subject matter jurisdiction under Rule 12(b)(1) should be granted if a

21   complaint fails to allege facts sufficient to establish subject matter jurisdiction.  *See*

22   *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003).  A

23   plaintiff's lack of Article III standing requires dismissal for lack of subject matter

24   jurisdiction.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

25           Under Rule 12(b)(6), a court should dismiss a complaint that does not set

26   forth sufficient facts to establish the elements of a claim and is not "plausible on its

27   face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court need not

28   accept conclusory allegations, unreasonable inferences, or legal conclusions set out

in the form of factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Fraud-based claims must go further and be pled with particularity under Rule 9(b). Plaintiff must describe the allegedly fraudulent statement, and state in detail who made the statement, where and when it was made, that it was false when made, and how it was false. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Under Rule 12(f), the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) allows nationwide class allegations to be struck if they are unsustainable on the face of the FAC. *Route v. Mead Johnson Nutrition Co.*, 2013 U.S. Dist. LEXIS 35069, at *22-27 (C.D. Cal. Feb. 21, 2013).

## III. ARGUMENT

### A. Plaintiffs Fail to Meet the Pleading Requirements of Rule 9(b)

All of plaintiffs' claims sound in fraud and must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). Specifically, plaintiffs must "set forth an explanation as to why the statement or omission complained of was false or misleading," and facts showing "the statement or omission [was] false or misleading when made." *In re Stacs Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (Rule 9(b) applies to entire complaint when all of a plaintiff's claims are grounded in fraud); *Kardovich v. Pfizer, Inc.*, 2015 U.S. Dist. LEXIS 42906, at *7-8, 13 (E.D.N.Y. Mar. 31, 2015) (applying Rule 9(b) to GBL § 349 claims). The FAC fails to meet Rule 9(b)'s heightened pleading standard for two reasons.

**First,** plaintiffs do not plead with particularity where or when they purchased Millennium products. (FAC ¶¶ 4-6.) Instead, plaintiffs allege they purchased certain flavors of Enlightened Synergy and Enlightened Kombucha in various states. (*Id.*) Plaintiffs do not specify in what specific state each product was purchased or the date when any products were purchased. (*Id.*) As a result, Millennium cannot ascertain whether plaintiffs allege a purchase of each of the

1  products listed in FAC paragraphs 4-6 in each of the states listed in those

2  paragraphs, or simply a subset of them, and when these products were purchased.

3  　　　These omissions are critical, as they bear directly on which labels and

4  labeling claims are implicated in this dispute and the defenses that Millennium will

5  need to assert.  Millennium produces multiple kombucha beverages across several

6  product lines, and multiple flavors within each product line.  The labels for each of

7  these products, including the nature of their antioxidant references, or indeed

8  whether they have any antioxidant references at all, vary significantly by line,

9  flavor, and time over the proposed class period.  This lack of clarity about the

10  fundamental facts at issue in this case runs afoul of Rule 9(b) and hinders

11  Millennium's ability to defend against plaintiffs' claims.  For instance, as set forth

12  below, plaintiffs lack standing to assert New York law claims as to products

13  purchased outside of New York.  (*See infra* Section III.E.)  Plaintiffs' pleading

14  cannot obfuscate the locations and dates of purchase of specific Millennium

15  products to avoid this issue.  (FAC ¶¶ 4-6); *see also Frenzel v. Aliphcom*, 2014 U.S.

16  Dist. LEXIS 177880, at *15-16 (N.D. Cal. Dec. 29, 2014) (class representative's

17  false advertising claims dismissed at pleading stage where plaintiff obfuscated the

18  state in which he purchased an implicated product).

19  　　　*Second*, the FAC should be dismissed because it fails to allege a coherent

20  theory of relief—*i.e.*, fails to plead with particularity *how* plaintiffs were deceived.

21  *See, e.g.*, *Kane v. Chobani, Inc.*, 2014 WL 657300, at *7-11 (N.D. Cal. Feb. 20,

22  2014) (dismissing false advertising claims where plaintiffs failed sufficiently to

23  allege how they were deceived by use of the term "evaporated cane juice"); *Vess*,

24  317 F.3d at 1107 (a plaintiff asserting consumer protection claims must state in

25  detail how a defendant's conduct was deceptive).  Although plaintiffs allege

26  generally that Millennium products violate FDA regulations, their various

27  explanations for precisely how the regulations were violated are in conflict:

28

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

- FAC ¶¶ 4-6: Alleging that Millennium mischaracterized the level, amount, and nature of antioxidants in certain products.

- FAC ¶ 11: Alleging that Millennium's products do not include antioxidant nutrients "identified by the FDA as a source of real nutrition."

- FAC ¶¶ 13, 30: Alleging that Millennium's products do not have antioxidants with an established RDI.

- FAC ¶ 24: Alleging that a food product with an antioxidant claim is misbranded if a "nutrient with an established RDI" does not constitute 100% of its antioxidant content.

- FAC ¶ 25: Alleging that the antioxidants in Kombucha products are not "recognized nutrients under the FDCA."

- FAC ¶ 29: Alleging that Millennium products do not state "which recognized antioxidants nutrients" they have.

- FAC ¶ 29: Alleging that a food product with an antioxidant claim is misbranded if it does not specify the antioxidant in the products and does not use a symbol or link the term "antioxidant" to specific nutrients.

- FAC ¶ 35: Alleging that Millennium products do not have a "nutritional source of antioxidants."

- FAC ¶ 38: Alleging that Millennium products do not have "a single nutrient with recognized antioxidant activity and with an established RDI."

These conflicting allegations reveal that plaintiffs cannot even decide whether or not Millennium's products actually have antioxidants. At some points, they allege that Millennium products have *no* antioxidants (FAC ¶¶ 25, 38), and at others, simply suggest the products have no "antioxidants with an established RDI," or no "nutritional" antioxidants. (*E.g.*, *id.* ¶¶ 13, 30, 35.)

These allegations also reveal that plaintiffs' claimed damages derive from alleged violations of an FDA regulation, as opposed to any harm that plaintiffs independently suffered in the absence of the regulation. However, bare allegations that a product label violates FDA regulations do not meet Rule 9(b)'s heightened pleading requirements, let alone Rule 8(a)'s pleading requirements, because a violation of FDA regulations does not itself establish that a label is misleading. *See, e.g.*, *Samet v. Procter & Gamble Co.*, 2013 U.S. Dist. LEXIS 86432, at *29-36 (N.D. Cal. June 18, 2013) (dismissing claims under Rule 9(b) for failure to allege

1  how statements were misleading apart from purported FDCA violations).

2      *Samet* is analogous to the present case.  In *Samet*, plaintiffs alleged that

3  several terms used on Procter & Gamble food products—including "0g trans fat"

4  and "evaporated cane juice"—violated FDA regulations and therefore misled

5  consumers.  2013 U.S. Dist. LEXIS 86432, at *3-4.  The court rejected this

6  argument and dismissed plaintiffs' claims under Rule 9(b), noting that plaintiffs

7  were required to allege more than legal conclusions that the labels at issue violated

8  FDA regulations or were "misbranded" under the FDCA.  *Id.* at *29-36.  Here too,

9  plaintiffs simply recite their view of FDA regulations and do not allege facts

10  explaining how they themselves were deceived by Millennium's product labels.

11      Because plaintiffs have failed to plead their fraud-based claims with the

12  particularity required by Rule 9(b), all of their claims should be dismissed.

13      **B.**    **Plaintiffs' Claims Are Facially Implausible Under Rule 12**

14      All of plaintiffs' claims also fail and should be dismissed because they are

15  implausible as a matter of law.  Contrary to plaintiffs' assertion,  Millennium's

16  Generic Claims do not violate 21 C.F.R. § 101.54(g).  Further, plaintiffs provide no

17  argument, aside from their argument that Millennium has purportedly violated FDA

18  regulations, for how a reasonable consumer could have been deceived by ***any*** of the

19  labeling claims at issue in this action.

20      **1.**    **The Generic Claims Do Not Violate 21 C.F.R.**
21      **§ 101.54(g) Because They Do Not Characterize the Level of Antioxidants in Millennium's Product**

22      All of plaintiffs' claims are predicated on an assertion that Millennium's

23  product labels violate 21 C.F.R § 101.54(g).  (FAC ¶ 1.)  However, as to the

24  Generic Claims, at minimum, the FAC does not provide a reasonable basis to

25  assume that Millennium violated this regulation.

26      Section 101.54(g) provides that, when certain preconditions are met, a claim

27  that ***characterizes the level*** of antioxidant nutrients in a food may be used on the

28  labeling of the food.  21 C.F.R. § 101.54(g).  Plaintiffs allege that Millennium's

1  products violate this regulation in that they do not have an antioxidant with a

2  recommended daily intake ("RDI") established by the FDA or bear a symbol such

3  as an asterisk next to the phrase "antioxidant" linked to a description of the

4  antioxidant elsewhere on the label.  (*E.g.*, FAC ¶¶ 29.)  What plaintiffs ignore is

5  that the Generic Claims need not meet these preconditions.

6      These "claims" merely state that an ingredient in Millennium products *is* an

7  antioxidant and that the antioxidant is powerful; they do not characterize the *level*

8  of antioxidants in Millennium's products.  Therefore, Section 101.54(g) does not

9  apply to them.  Labels that simply state that a specified ingredient is an antioxidant

10  do not make claims characterizing the *level* of antioxidants in a product that Section

11  101.54(g) intends to regulate.  *See, e.g.*, *Trazo v. Nestlé USA, Inc.*, 2013 U.S. Dist.

12  LEXIS 113534, at *31 (N.D. Cal. Aug. 9, 2013) (claim that products were a

13  "natural source of antioxidants" did not characterize the level of antioxidants in the

14  products); *accord* Order Granting Def.'s Mot. for Summary Judgment, *Khasin v.*

15  *Hershey Co.*, No. 12-cv-01862, Dkt. No. 185, at *9 (N.D. Cal. Mar. 31, 2015)

16  (statement that products were a "natural source of flavanol antioxidants" did not

17  "characterize the level or amount of antioxidants present in its product.");[2] *Jones v.*

18  *ConAgra Foods, Inc.*, 2014 WL 2702726, at *18 n.34 (N.D. Cal. June 13, 2014)

19  (Section 101.54(g) "pertains to the level of antioxidants in a product, not simply

20  their presence."); *accord Craig v. Twinings N. Am., Inc.*, 2015 WL 505867, at *8

21  (W.D. Ark. Feb. 5, 2015) ("natural source of antioxidants" claim did not

22  characterize level of antioxidants in tea).

23      In *Trazo*, plaintiffs alleged that Nestlé violated Section 101.54(g) by stating

24  that certain dark chocolate products were a "natural source of antioxidants."  2013

25  U.S. Dist. LEXIS 113534, at *31.  The court dismissed these claims, brought under

26  the CLRA, UCL, and FAL, because a simple statement that the products were a

27

28  _____
   [2] The *Khasin* Order referenced herein is attached as Exhibit A to this Motion.

1  source of antioxidants did not characterize the level of antioxidants in the products

2  and could not plausibly violate Section 101.54(g).  *Id.* at *5, *31.

3  These holdings fit squarely with the FDA's expressed intent as to the purpose

4  and scope of Section 101.54(g).  When the regulation was promulgated, it was clear

5  that the purpose of Section 101.54(g) was limited to particular categories of

6  antioxidant claims, and was not to restrict "all label and labeling statements about

7  antioxidants to statements only about a limited number of nutrients."  *Nutrient*

8  *Content Claims:  Definition for "High Potency" and Definition of "Antioxidant"*

9  *for Use in Nutrient Content Claims for Dietary Supplements and Conventional*

10  *Foods*, 62 Fed. Reg. 49868, 49873 (Sept. 23, 1997).  Rather, the agency chose to

11  define "the circumstances in which claims that ***characterize the level*** of nutrients

12  that have antioxidant activity, such as ***'high in antioxidants'*** can be made."  *Id.*

13  (emphasis added).  Thus, plaintiffs' statement that the FDA does not consider

14  antioxidants without an established RDI as "nutritional" antioxidants or does not

15  permit antioxidants without an established RDI to be described as antioxidants

16  (*e.g.*, FAC ¶ 11), ignores the promulgating language of Section 101.54(g) itself.

17  *See also* 62 Fed. Reg. 49868, 49873 (emphasis added):

18  
19  
20  
21  
22  
23  
24  
> Many of the plant compounds referred to in the comments as
> antioxidants (e.g., lycopene, lutein, polyphenols) do not have RDI's,
> and thus it is not possible to characterize the level of these substances
> because there is no standard against which to do so.  Consequently,
> they cannot be the subject of nutrient content claims at this time.
> ***However, FDA did not intend in this rulemaking to decide whether***
> ***these substances have, or do not have, antioxidant activity.***  The
> agency is not limiting truthful and nonmisleading statements about the
> properties or the effects of antioxidants.  ***Manufacturers may, for***
> ***example, craft a statement, subject to section 403(a) of the act, that***
> ***describes how a nutrient or dietary ingredient that does not have an***
> ***RDI participates in antioxidant processes***.

25  Millennium acknowledges that a few courts have found that antioxidant

26  claims not explicitly characterizing the level of antioxidants in a product could

27  plausibly violate Section 101.54(g).  *See, e.g., Lanovaz v. Twinings*, 2013 U.S. Dist.

28  LEXIS 25612, at *13-14 (N.D. Cal. Feb. 25, 2013) (addressing "natural source of

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

1   antioxidants" claims); *Salazar v. Honest Tea, Inc.*, 2015 WL 75223, at *1 (E.D.

2   Cal. Jan. 6, 2015) (addressing claims that tea products were "packed with"

3   antioxidants, had a "key green tea antioxidant," or had "one of many tea

4   antioxidants").  But these cases are not in accord with the express purpose of

5   Section 101.54(g), set forth in the regulation's promulgating language.  And better-

6   reasoned authorities recognize that, on its face, Section 101.54(g) has no

7   application to labeling claims that to do not characterize the level of antioxidants in

8   a food or beverage.  *E.g., Trazo*, 2013 U.S. Dist. LEXIS 113534, at *31.

9           Similarly, the warning letters cited in the FAC do not actually stand for

10   plaintiffs' proposed approach that any antioxidant lacking an established RDI is not

11   a "nutritional" antioxidant and cannot be declared as an antioxidant.  (FAC ¶¶ 23-

12   26.)  In its warning letter to Unilever, the FDA simply reiterated that antioxidant

13   claims *characterizing the level* of antioxidants in a product—such as "high in

14   antioxidant vitamin C" claims or the *"rich in"* antioxidants and *"packed with"*

15   antioxidant claims made by Unilever—must comply with Section 101.54(g).  (FAC

16   Ex. D.)  This is a non-controversial statement that has nothing to do with whether

17   the labeling claims at issue in this action are false and misleading to a reasonable

18   consumer.  The same is true of the FDA's warning letter to the Dr. Pepper Snapple

19   Group.  (FAC Ex. E.)  In that letter, the FDA addressed claims that tea beverages

20   were "enhanced with" green tea flavonoids.  (*Id.*)  This was equivalent, in the

21   FDA's view, to stating that the beverages had at least 10% "more" antioxidants

22   than customarily consumed foods and making a *relative* antioxidant claim as to an

23   antioxidant not recognized as an antioxidant for which relative content claims are

24   permitted under Section 101.54(g).  (*Id.*)  Similarly, in its warning letter to Redco

25   Foods, the FDA addressed claims that tea products were "*fortified with*"

26   antioxidants and that antioxidants were "*abundantly found*" in the products, which

27   the agency saw as characterizing the level of antioxidants in tea.  (FAC Ex. F.)

28           Accordingly, plaintiffs' Generic Claims must be dismissed for failure to state

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

1    a claim, as no violation of Section 101.54(g) can plausibly be shown.

2            **2.     The Phrase "Powerful Antioxidants" Is Also**
                      **Non-Actionable Puffery**
3

4            Generalized, vague, and unspecific assertions constitute "mere puffery" upon

5    which a reasonable consumer could not rely.  *Glen Holly Entm't, Inc. v. Tektronix,*

6    *Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003).  Thus, district courts regularly dismiss

7    false advertising claims based on statements that are "vague" and "highly

8    subjective" as opposed to containing "specific, detailed factual assertions."  *See,*

9    *e.g., Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 895 (C.D. Cal. 2013)

10   (use of the term "premium" on soda packaging was mere puffery); *Bronson v.*

11   *Johnson & Johnson, Inc.*, 2013 WL 1629191, at \*10-11 (N.D. Cal. Apr. 16, 2013)

12   (use of the term "essential" in Splenda Essentials brand name was not actionable).

13           In *Viggiano*, plaintiffs asserted warranty claims stemming from a food

14   manufacturer's use of the phrase "premium soda" on beverage labels.  944 F. Supp.

15   2d at 894.  The court dismissed such claims given that the phrase "premium soda"

16   was not a specific, measurable, and verifiable claim—*i.e.*, it had no "concrete,

17   discernable meaning" in the soda context.  *Id.*; *accord Oestreicher v. Alienware*

18   *Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (dismissing as puffery claims as

19   to terms "higher performance," "longer battery life," "richer multimedia

20   experience," and "faster access to data.").  So too here, the term "powerful" does

21   not connote that the antioxidants in Millennium products have any specific attribute

22   that is capable of verification or has any discernible meaning.  And plaintiffs'

23   Generic Claims should be dismissed on the additional ground that the phrase

24   "powerful antioxidants" constitutes non-actionable puffery.

25           **3.     Alleged FDCA Violations Are Insufficient to Establish That**
                      **a Reasonable Consumer Could Be Deceived**
26

27           Even if plaintiffs had plausibly alleged that any Millennium product labels

28   violate Section 101.54(g), all of plaintiffs' claims should still be properly dismissed

- 11 -

for failure to state a claim.  Plaintiffs assert claims for violation of the CLRA, UCL, and FAL, and for Section 349 of the GBL.  The standard for whether a plaintiff has properly pled false advertising claims under these statutes is not whether the plaintiff has plausibly alleged that a food labeling regulation was violated.  Rather, it is whether a plaintiff has pled facts sufficient to establish that a reasonable consumer could be deceived by the advertising claims at issue.  *Samet*, 2013 U.S. Dist. LEXIS 86432, at *29-36; *Kane*, 2014 WL 657300, at *7-11; *Ang v. Whitewave Foods Co.*, 2013 U.S. Dist. LEXIS 173185, at *10-15 (N.D. Cal. Dec. 10, 2013) (dismissing claims regarding use of the terms "soymilk" and "almond milk" even where use of the terms allegedly violated FDA regulations).

Whether labels or advertisements are deceptive under California's consumer protection statutes is governed by a "reasonable consumer" standard.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).  A court may grant a motion to dismiss false advertising claims when it concludes as a matter of law that a reasonable consumer could not be deceived by the product's packaging.  *See, e.g.*, *Werbel ex rel. v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289, at *8-13 (N.D. Cal. July 2, 2010); *Sugawara v. Pepsico, Inc.*, 2009 U.S. Dist. LEXIS 43127, at *5-10 (E.D. Cal. May 21, 2009) (accord); *McKinniss v. Kellogg USA*, 2007 U.S. Dist. LEXIS 96106, at *8-13 (C.D. Cal. Sept. 21, 2007) (same).  The "reasonable consumer" is not the "least sophisticated" or "unwary" consumer.  *Hill*, 195 Cal. App. 4th at 1304.  And a plaintiff's allegations that he himself was personally deceived are insufficient to show that a reasonable consumer is likely to be deceived.  *Id*.  Claims brought under Section 349 of the GBL are likewise analyzed under a "reasonable consumer" framework.  *Kardovich*, 2015 U.S. Dist. LEXIS 42906, at *14-15.

At the outset, the FAC states that all of plaintiffs' claims are premised on the assumption that plaintiffs were deceived ***because*** Millennium purportedly violated Section 101.54(g).  (FAC ¶ 1.)  However, mere allegations that a food label violates

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

1    some FDA regulation, standing alone, are insufficient to establish that a reasonable

2    consumer could be deceived.  *Samet*, 2013 U.S. Dist. LEXIS 86432, at \*29-36;

3    *Ang*, 2013 U.S. Dist. LEXIS 173185, at \*10-15; *Khasin*, Dkt. No. 185, at \*9

4    (plaintiff's citations to warning letters purportedly suggesting that defendant's

5    labeling claims violated Section 101.54(g) "not relevant to showing that consumers

6    are likely to be misled by Hershey's statements").

7         Here, especially where plaintiffs appear to concede that Millennium's

8    products have antioxidants and argue only that the products do not have

9    "recognized" antioxidants  (*e.g.*, FAC ¶ 35), plaintiffs cannot merely assert that

10   Millennium has violated Section 101.54(g) and that the antioxidants in

11   Millennium's products are not nutritional according to the FDA.  (*Id.* ¶ 13.)

12   **C.    Plaintiffs' Generic Claims Misinterpret 21 C.F.R. § 101.54(g) and
        Are Preempted by the Federal Food, Drug, and Cosmetic Act**

13

14        Plaintiffs' Generic Claims also misinterpret the scope of Section 101.54(g).

15   These claims purport to forbid a mere statement that Millennium products contain

16   "powerful antioxidants."  However, this statement does not characterize the ***level*** of

17   antioxidants in that product.  It merely describes the ***nature*** of those antioxidants.

18   As a result, the Generic Claims assert an interpretation of Section 101.54(g)

19   inconsistent with the plain language of the regulation.  And these Generic Claims

20   are subject to dismissal on the additional ground that they are expressly preempted.

21   *See, e.g.*, *Brazil v. Dole Food Co.*, 2013 U.S. Dist. LEXIS 136921, at \*35-39 (N.D.

22   Cal. Sept. 23, 2013) (food labeling claims preempted if they seek to impose

23   requirements different or not identical to those of the FDCA).

24        The FDCA establishes a "comprehensive regulatory scheme of branding and

25   labeling of food products."  *Fraker v. KFC Corp.*, 2007 WL 1296571, at \*4 (S.D.

26   Cal. Apr. 30, 2007).  In order to establish "uniform national standards for the

27   nutritional claims and the required nutrient information display on food labels,"

28   Congress amended the FDCA by enacting the Federal Nutrition Labeling and

1    Education Act of 1990 (the "NLEA").  H.R. Rep. No. 101-538, at 13 (1990),

2    *reprinted in* 1990 U.S.C.C.A.N. 3336, 3342.  The NLEA expressly prohibits "any

3    requirement for the labeling of food . . . that is ***not identical to***" the requirements

4    set forth in the NLEA.  21 U.S.C. § 343-1(a)(1)-(3) (emphasis added).

5         Throughout the FAC, plaintiffs forward an interpretation of 21 C.F.R.

6    § 101.54(g) that seeks to prohibit food labels from representing that *any* ingredient

7    without an established RDI is an antioxidant.  (*E.g.*, FAC ¶¶ 13, 30.)  However, in

8    enacting Section 101.54(g), the FDA stated that it did not intend to restrict "all label

9    and labeling statements about antioxidants to statements only about a limited

10   number of nutrients."  *Nutrient Content Claims*, 62 Fed. Reg. 49868, 49873.

11   Rather, it intended to limit the scope of claims it permitted concerning the relative

12   ***levels*** of antioxidants in food products because the agency had not established an

13   RDI for all antioxidants, such that it could meaningfully evaluate the truthfulness of

14   claims concerning the relative ***levels*** of antioxidants in a food product—such as a

15   claim that the product is "high in antioxidants."  *Id.*  Thus, contrary to plaintiffs'

16   suggestion, there is no indication that the FDA views antioxidants without an

17   established RDI as lacking in nutritional value or incapable of being described as an

18   antioxidant.  (FAC ¶ 35.)  And, as to the Generic Claims, which do not characterize

19   the level of antioxidants in Millennium products, plaintiffs seek to impose

20   requirements "in addition to or different from" federal law by alleging a violation of

21   Section 101.54(g).  *Craig*, 2015 WL 505867, at *8.

22        **D.     Plaintiffs Fail to State a Claim Under Section 349 of the GBL**

23        In addition to asserting California consumer protection claims, plaintiffs

24   assert a Fourth Cause of Action under Section 349 of the GBL.  (FAC ¶¶ 84-90.)

25   As set forth above, plaintiffs' GBL claim should be dismissed for failure to state a

26   claim.  However, it also fails for an independent reason—New York state law

27   precludes Section 349 claims which rely on predicate violations of federal food

28   labeling regulations lacking private rights of action, such as the GBL claim here.

                                    MOTION TO DISMISS OR STRIKE FAC
                                    2:15-CV-01801-PSG-AJW

1  (FAC ¶ 87 (purporting to assert GBL claim predicated on FDCA violation).)

2       The FDCA does not provide a private right of action.  To protect the

3  comprehensive system of labeling regulations established by the FDCA, Congress

4  included in the Act an explicit bar on private enforcement, *see* 21 U.S.C. § 337(a).

5  Further, in *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 199-200 (2d Cir.

6  2005), the Second Circuit held that Section 349 of the GBL does not provide "a

7  private right of action for violation of a federal law otherwise lacking one."  *See*

8  *also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (plaintiff's

9  "dogged insistence" that defendant's products violated FDA regulations

10  unpersuasive where no private right of action exists under FDCA).  Accordingly, a

11  plaintiff cannot assert GBL claims predicated on FDCA violations.  *Verzani v.*

12  *Costco Wholesale Corp.*, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) ("The

13  FDCA lacks a private right of action and therefore [plaintiff] cannot rely on it for

14  purposes of asserting a state-law consumer claim under G.B.L. § 349.").

15       In *Verzani*, the plaintiff alleged that Costco violated GBL § 349 by failing to

16  disclose the weight of shrimp contained within a shrimp tray in violation of FDA

17  regulations.  2010 WL 3911499, at *1-2.  The court dismissed plaintiff's GBL

18  claim on the ground that it was implausible and because "the FDCA lacks a private

19  right of action and therefore Verzani cannot rely on it for purposes of asserting a

20  state-law consumer claim under G.B.L. § 349."  *Id.* at *3.  The plaintiff's improper

21  attempt to enforce FDA regulations was evidenced by his "persistent allegations"

22  that Costco had violated FDA regulations.  *Id.*  So too here, a facial review of the

23  FAC reveals plaintiffs' attempt to enforce FDA regulations and not state consumer

24  protection laws.  Not only do plaintiffs attach FDA warning letters to other

25  companies to the FAC, the very first paragraph of the FAC nakedly asserts that

26  Millennium purportedly misrepresents the antioxidant content of its products "in

27  precisely the manner the [FDA] sought to prohibit by establishing the antioxidant

28  labeling requirements set forth in 21 C.F.R. § 101.54(g)."  (FAC ¶ 1.)  This effort to

1   privately enforce FDA regulations should not be countenanced, and plaintiffs'

2   Fourth Cause of Action should be dismissed as impliedly preempted.

3   **E.      Plaintiffs Lack Standing to Assert GBL Claims as to Products**
        **Purchased Outside of New York**

4

5   Although this action was filed on behalf of three plaintiffs, one plaintiff—

6   Kirsten Schofield—has not actually purchased a Millennium product in New York.

7   (FAC ¶ 5.)  The remaining two plaintiffs allege that they have purchased

8   Millennium products in New York but, as set forth above, do not plead with

9   particularity which products were actually purchased in New York as opposed to

10  other states.  (*Id*. ¶¶ 4, 6.)

11  All of plaintiffs' GBL claims should be dismissed to the extent they are

12  premised on purchases of Millennium products that did not occur in the state of

13  New York.  (FAC ¶¶ 4-6.)  By its express terms, Section 349 of the GBL applies

14  only to transactions occurring in the state of New York.  N.Y. Gen. Bus. Law § 349

15  (governing deceptive acts or practices in the furnishing of any service "in this

16  state"); *In re Frito Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *17-19

17  (E.D.N.Y. Aug. 29, 2013) (plaintiff could not assert GBL claim concerning

18  allegedly misbranded food products purchased outside of New York).  The

19  requirement that a plaintiff asserting GBL claims allege a purchase of a purportedly

20  misbranded product within New York is substantive and not procedural, such that a

21  court should dismiss with prejudice GBL claims as to out-of-state purchases at the

22  motion to dismiss stage and not the class certification stage.  *Id.* at *18 ("[T]he state

23  rule defines the very conduct prohibited by the GBL—solely conduct that occurs in

24  New York.  Simply put, there is nothing procedural about this rule.").

25  **F.      Plaintiffs Lack Article III Standing to Seek Injunctive Relief**

26  Even if the Court were to permit any part of plaintiffs' claims to survive, it

27  should dismiss plaintiffs' claims for injunctive relief.  (FAC ¶ 64, p. 30:17.)  The

28  FAC seeks injunctive relief but fails to allege that plaintiffs intend to purchase

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

1   Millennium products again in the future.  To the contrary, plaintiffs' allegations

2   indicate they never would have bought these products had they known they were

3   purportedly misbranded under FDA regulations.  (*Id.* ¶¶ 4-6.)  These allegations

4   foreclose plaintiffs' claims for injunctive relief because, absent a showing that they

5   are still interested in purchasing Millennium products, plaintiffs cannot establish

6   Article III standing to assert false advertising claims.  *See, e.g.*, *Dabish v.*

7   *Infinitelabs, LLC*, 2014 U.S. Dist. LEXIS 131124, at *11-14 (S.D. Cal. Sept. 17,

8   2014) (dismissing CLRA, UCL, and FAL claims where plaintiff failed to show

9   intention of purchasing accused dietary supplements again); *Morgan v. Wallaby*

10   *Yogurt Co.*, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) (dismissing claims

11   for injunctive relief where plaintiffs failed plausibly to allege that they would

12   purportedly purchase misbranded yogurt products again); *Rahman v. Mott's LLP*,

13   2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) (dismissing claims for

14   injunctive relief where plaintiff failed to allege an intent to purchase allegedly

15   misbranded food products again in the future).

16        A plaintiff bears the burden of demonstrating that Article III standing

17   requirements are met.  *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031,

18   1036 (9th Cir. 2008).  Additionally, to demonstrate standing for prospective

19   injunctive relief, a plaintiff must demonstrate that "he has suffered or is threatened

20   with a concrete and particularized legal harm" coupled with a "sufficient likelihood

21   that he will again be wronged in a similar way." *Bates v. UPS*, 511 F.3d 974, 985

22   (9th Cir. 2007) (internal quotations omitted).  Where a plaintiff has no intention of

23   purchasing an allegedly misbranded product again, the weight of authority holds

24   that the plaintiff has no standing to seek prospective injunctive relief.  *Davidson v.*

25   *Kimberly-Clark Corp.*, 2014 U.S. Dist. LEXIS 176394, at *10-12 (N.D. Cal.

26   Dec. 19, 2014); *see also Bird v. First Alert, Inc.*, 2014 U.S. Dist. LEXIS 176390, at

27   *12 (N.D. Cal. Dec. 19, 2014); *Rahman*, 2014 WL 325241, at *10.

28        Some courts have found that plaintiffs may establish Article III standing to

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

assert claims for injunctive relief where it is possible that they may purchase a product again if it is correctly advertised. *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533-34 (N.D. Cal. 2012). However, that is not the case here. Plaintiffs object to a characteristic of the products themselves—their alleged lack of FDA-approved antioxidants—and not just their labeling or advertising, leading to the inevitable conclusion that their future purchase decisions of these products would be unaffected by any corrective action. (*See, e.g.*, FAC ¶¶ 31-40; *id.* ¶¶ 4-6.) They thus lack standing to assert claims for injunctive relief. *See, e.g.*, *Davidson*, 2014 U.S. Dist. LEXIS 176394, at \*10-12 (no injunctive relief where product could never perform as desired).

Plaintiffs' allegation that they would purchase a hypothetical, reformulated version of Millennium products (FAC ¶¶ 4-6) is not an allegation that plaintiffs intend to purchase the products at issue in this action again. And it is not sufficient to confer standing to pursue claims for injunctive relief. *Davidson,* 2014 U.S. Dist. LEXIS 176394, at \*10-12, is instructive. In *Davidson*, the plaintiff alleged she was misled into purchasing cleaning wipes that were advertised as "flushable" that were not in fact flushable. *Id*. at \*2-3. Because the plaintiff wished to avoid purchasing products that could not be flushed, the court dismissed her claims for injunctive relief on the grounds that there was no corrective action (labeling changes or corrective advertising) that could make her purchase the product again. *Id*. at \*10-13. In doing so, the court foreclosed an argument that the plaintiff could bring a claim for injunctive relief given that the defendant could theoretically redesign the cleaning wipes to be flushable. *Id*. at \*12-13. It did so because, if the defendant were to redesign its cleaning wipe, the wipe would not be the same product as the product at issue in the plaintiff's complaint. *Id.* In other words, unlike a minor product change—like the removal of an "all natural" claim on a food label—a major reformulation to create a new product with different characteristics would have no bearing on a plaintiff's capacity to seek injunctive relief given that that new

product would not actually be the product implicated by the plaintiff's lawsuit. *Id.*

Here too, if plaintiffs contend that Millennium products do not contain the form of antioxidants they desire, there is no labeling change that can address this issue. Further, plaintiffs' allegation that Millennium could hypothetically redesign its product is not sufficient to confer standing to assert claims for injunctive relief. And because plaintiffs cannot assert claims for injunctive relief in their individual capacity, they also lack standing to assert such claims on a class-wide basis. *Hodgers-Durgin v. De la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.").

### G. The Court Should Strike Plaintiffs' Nationwide Class Allegations

#### 1. Plaintiffs' Nationwide Class Allegations Can and Should Be Struck at the Motion to Dismiss Stage

The FAC is also deficient in that it impermissibly seeks to apply California consumer protection laws to the claims of a putative nationwide class. (FAC ¶¶ 40, 53, 66, 76.)[3] In *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), the Ninth Circuit determined that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place," which precluded certification of a nationwide class. *Id.* at 594, 596. In the wake of *Mazza*, district courts have granted Rule 12 motions to dismiss or strike nationwide class actions in cases where putative class representatives have attempted to apply California consumer protection laws to purported false advertising injuries occurring in other states. *See, e.g.*, *Frenzel*, 2014 U.S. Dist. LEXIS 177880, at *12-13 (dismissing CLRA, UCL, and FAL class allegations as to purported nationwide class); *Route*, 2013 U.S. Dist. LEXIS 35069,

---

[3] Plaintiffs attempt to assert only their California law claims on behalf of a putative nationwide class. (FAC ¶¶ 40, 53, 66, 76, 85.)

1    at *22-27 (striking nationwide class allegations under *Mazza* where it was

2    sufficiently obvious that such allegations could not be maintained).  Accordingly,

3    the Court should dismiss plaintiffs' nationwide class allegations now.

4         In *Frenzel*, a plaintiff purchased an allegedly defective fitness-tracking

5    wristband and attempted to assert CLRA, UCL, FAL, and breach of express and

6    implied warranty claims on behalf of a nationwide class of purchasers of the

7    wristband.  2014 U.S. Dist. LEXIS 177880, at *1-6.  The court dismissed the

8    plaintiff's nationwide class allegations, finding that they were foreclosed under

9    *Mazza*.  *Id*. at *20; *see also id.* at *12 ("[A]lthough Mazza was decided at class

10   certification, 'the principle articulated in Mazza applies generally and is instructive

11   even when addressing a motion to dismiss.'") (citations omitted).  In doing so, it

12   noted that, in factually analogous cases, *Mazza* is "not only relevant but

13   controlling," even at the pleading phase.  *Id*. at *12.  *Frenzel* is especially

14   instructive given that the plaintiff's attempt to obfuscate the state in which he

15   purchased the product at issue also necessitated dismissal of his individual

16   allegations.  *Id*. at *14-15.  Here too, plaintiffs do not specifically allege in which

17   state they purchased each type of Millennium's products.  (*See supra* Section III.A.)

18        The result in *Frenzel* is also warranted here.  Plaintiffs seek to certify a

19   nationwide class seeking redress under the CLRA, UCL, and FAL.  (FAC ¶¶ 40,

20   53, 66, 76, 85.)  But plaintiffs cannot apply these laws to a nationwide class, and

21   the Court should strike plaintiffs' class allegations to the extent that plaintiffs

22   purport to apply California law to nonresident class members who purchased the

23   accused Millennium products in other states.

24

25

26

27   //

28   //

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

## 2. California's Choice of Law Analysis Mandates Striking Plaintiffs' Nationwide Class Allegations

### a. State Consumer Protection Laws Vary in Several Material, Outcome-Determinative Respects

State consumer protection laws "vary considerably."[4]  *In re Bridgestone Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002).  These variations affect outcome-determinative aspects of consumer claims, such as the availability of class actions, the types of statements that are actionable, the required degree of culpability or scienter, reliance requirements and standards, privity requirements, and the remedies available.  *See, e.g.*, *In re HP Inkjet Printer Litig.*, 2008 WL 2949265, at *7 (N.D. Cal. July 25, 2008) (certification denied because of "the many differences among states with respect to, for example, statutes of limitations, scienter requirements, and calculation of damages").

For example, while some states' consumer protection laws make only "deceptive" conduct actionable, others more broadly proscribe "unfair" or "unconscionable" behavior.[5]  States also vary as to what qualifies as an actionable "consumer" transaction.  Many states limit their definition of "consumer" to a person buying goods or services for personal, family, or household use.[6]  And, in at least seven jurisdictions, private claims under the consumer protection statute must be asserted on an individual basis, which specifically forecloses the use of class

---

[4] The conflicts between California consumer protection laws and the laws of other states are laid out in further detail in the Appendix filed together with this Motion.

[5] *Compare* Ga. Code Ann. § 10-1-372, Kan. Stat. Ann. § 50-626(a), and S.D. Codified Laws § 37-24-6 *with* Fla. Stat. Ann. § 501.204(1) (listing "unconscionable acts or practices"), Miss. Code Ann. § 75-24-5(1) ("Unfair methods of competition . . . are hereby prohibited"), and S.C. Code Ann. § 39-5-20(a) (same).

[6] Ala. Code § 8-19-3(2); Ga. Code Ann. § 10-1-392(a)(10).

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

actions by private litigants.[7]  Thus, while residents of California may attempt to assert CLRA, UCL, and FAL claims on a class-wide basis, plaintiffs in other states would have no authority to assert consumer protection claims on a class-wide basis and could not be members of the proposed class.

State laws also vary in significant, outcome-determinative ways in terms of the remedies and damages available to putative class members.  If consumer protection claims are filed in Ohio or Colorado, a plaintiff may seek treble damages on an individual basis but may only recover actual damages in a putative class action.[8]  If such claims are filed in New Jersey, a plaintiff may recover treble damages on a class-wide basis.  N.J. Stat. § 56:8-19.  In California, a plaintiff asserting UCL claims may not recover damages at all and would only be entitled to injunctive relief and restitution.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

### b.  Each State Has an Interest in Applying Its Own Consumer Protection Laws

In the FAC, plaintiffs purport to assert claims on behalf of each purchaser of implicated Millennium products during "the relevant limitations period."  (FAC ¶ 41.)  However, in *Mazza*, the Ninth Circuit recognized that each state in which a

---

[7] Ala. Code § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class."); Ga. Code Ann. § 10-1-399(a); La. Rev. Stat. § 51:1409(A); Miss. Code Ann. § 75-24-15(4); Mont. Code Ann. § 30-14-133(1); S.C. Code Ann. § 39-5-140(a); Va. Code § 59.1-204(A-B).

[8] Ohio Rev. Code Ann. § 1345.09(b) (limiting class action to actual damages, but individual plaintiffs may collect treble damages); *Robinson v. Lynmar Racquet Club, Inc*., 851 P.2d 274, 278 (Colo. App. 1993) (holding that under Colo. Rev. Stat. Ann. § 61-1-113, individual actions (but not class actions) may seek treble damages and attorneys' fees).

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

putative class member bought a falsely advertised product has an interest in having

its own consumer protection laws applied. *Mazza*, 666 F.3d at 591-92; *see also*

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) (every

state "has an interest in having its law applied to its resident claimants"). This

includes "an interest in setting the appropriate level of liability for companies

conducting business within its territory." *Mazza*, 666 F.3d at 592; *McCann v.*

*Foster Wheeler LLC*, 48 Cal. 4th 68, 90 (2010). Allowing each state to apply its

own laws assures individuals and companies operating within its territory that

"applicable limitations on liability set forth in the jurisdiction's law will be

available to those individuals and business[es] in the event they are faced with

litigation in the future." *McCann*, 48 Cal. 4th at 98. Thus, each state in which

consumers purchased the accused Millennium products has a "strong interest" in

applying its own laws.

### c.   Here, California's Interest in Applying Its Own Laws Is Subordinate to the Interests of Foreign States

The final step in California's choice-of-law analysis requires a determination

of which state's interest would be more impaired if its policy were subordinated.

*Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001). Under

California choice-of-law rules, "the place of the wrong" has "the predominant

interest," and California considers the "place of the wrong" to be the state where the

"last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593.

In the consumer fraud context, "the last events necessary for liability as to . . .

foreign class members—communication of the advertisements to the claimants and

their reliance thereon in purchasing vehicles—[take] place in the various foreign

states." *Id.* at 594. These foreign states have a strong interest in the application of

their laws to transactions between their citizens and corporations doing business

within their state. *Id.* Conversely, California's interest in applying its laws to

residents of foreign states is "attenuated." *Id.*; *Discover Bank v. Superior Court*,

- 23 -

134 Cal. App. 4th 886, 895 (2005) ("California has no greater interest in protecting other states' consumers than other states have in protecting California's.").

State consumer laws strike different balances between the need to protect resident consumers and the desire to encourage business and maintain economic growth.  The Ninth Circuit in *Mazza* thus recognized that "each foreign state has an interest in applying its law to transactions within its borders," and that if state law were applied to the entire class, "foreign states would be impaired in their ability to calibrate liability to foster commerce."  666 F.3d at 593.  For example, at least seven jurisdictions mandate that private consumer protection claims be asserted on an individual rather than a class-wide basis.  *See supra* note 7.  Other states have decided to limit the damages available in consumer lawsuits—those states' interests would be impaired if they could not enforce limits for consumers and transactions within their borders.  *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 150 (S.D.N.Y. 2008) ("[T]he interests of the state of purchase would be most impaired if its consumer-fraud laws were not applied.").

Here, as in *Mazza*, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."  *Mazza*, 666 F.3d at 594.  And, because the laws of multiple jurisdictions apply to any nationwide class, "variances in state law overwhelm common issues and preclude [a finding of] predominance for a single nationwide class."  *Id*. at 596; *Frenzel*, 2014 U.S. Dist. LEXIS 177880, at *8-20.

The Court should therefore strike plaintiffs' nationwide class allegations which improperly seek to apply California law to nonresident class members who did not purchase Millennium products in California.  (*See* FAC ¶¶ 41-52 (class allegations); 53-84 (California causes of action); p. 30 (prayer for relief).)

## IV.   CONCLUSION

For the reasons stated above, Millennium respectfully seeks an order dismissing all of plaintiffs' claims for the following reasons:

1    (1) plaintiffs fail to plead their claims with particularity under Rule 9(b);

2    (2) plaintiffs fail to plausibly allege a violation of 21 C.F.R. § 101.54(g) or a

3    sufficient likelihood that a reasonable consumer could be deceived; and

4    In the alternative, to the extent that any of plaintiffs' claims are not dismissed

5    in their entirety, Millennium respectfully seeks an order:

6    (1) dismissing all Generic Claims as non-actionable puffery;

7    (2) dismissing all Generic Claims as expressly preempted;

8    (3) dismissing plaintiffs' GBL claim as impliedly preempted;

9    (4) dismissing all GBL claims as to Millennium products purchased outside

10   the state of New York for lack of standing;

11   (5) dismissing plaintiffs' claims for injunctive relief; and

12   (6) striking plaintiffs' nationwide class allegations.

13

14   Dated:  June 19, 2015

15                                          O'MELVENY & MYERS LLP

16

17                                          By:  _____/s/ Scott M. Voelz_____
                                                      Scott M. Voelz
18                                          Attorneys for Defendant
                                            Millennium Products, Inc.

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS OR STRIKE FAC
2:15-CV-01801-PSG-AJW

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEON KHASIN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE HERSHEY COMPANY,<br>                    Defendant. | Case No.  5:12-cv-01862-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 139 |

Presently before the Court are two motions filed in the above-captioned case: a Motion for Summary Judgment by Defendant The Hershey Company ("Hershey" or "Defendant") and Motion for Partial Summary Judgment by Plaintiff Leon Khasin ("Khasin" or "Plaintiff").  Dkt. No. 139.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).  Plaintiff filed this putative class action against Defendant alleging that several of Defendant's products have been improperly labeled so as to amount to misbranding and deception in violation of several California and federal laws.

Per Civ. L. R. 7-1(b), the motions were taken under submission without oral argument. Having fully reviewed the parties' papers, the Court GRANTS Defendant's Motion for Summary

1

1    Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.

2    **I.    BACKGROUND**

3          Plaintiff is a California consumer who, since 2008, purchased more than $25.00 of

4    Defendant's products, including Special Dark Chocolate, Milk Chocolate, Special Dark Kisses,

5    Special Dark Cocoa, Natural Unsweetened Cocoa, and Sugar Free Coolmint IceBreaker Mints.

6    Dkt. No. 27 ¶ 19, 196.  Plaintiff argues that the following representations on the packaging of

7    these and other of Defendant's food products were unlawful and/or misleading: (1) antioxidant

8    nutrient content claims, (2) nutrient content claims without required disclosures, (3) healthy diet

9    claims, (4) sugar free claims, (5) unlawful serving sizes, (6) listing polyglycerol polyricinoleic

10   acid as "PGPR", and (7) failing to disclose vanillin.  Dkt. No. 27 ¶ 60, 197-99.

11         Khasin filed his original Complaint in this case on April 13, 2012 alleging that Hershey's

12   mints, milk chocolate, dark chocolate and cocoa products were improperly labeled in violation of

13   U.S. Food and Drug Administration regulations and California law.  See Dkt. No. 1.  Plaintiff's

14   First Amended Complaint ("FAC") was filed on July 23, 2012.  See Dkt. No. 27.  Plaintiff's FAC

15   alleges that he read the labels on Defendant's products, relied on these claims when making

16   purchasing decisions, and was misled by these claims.  Id. at ¶ 60, 197-99.  This Court granted

17   Defendant's Motion to Dismiss the FAC in part on November 9, 2012.  See Dkt. No. 45.  The

18   Court dismissed Plaintiff's claims predicated on the Magnuson-Moss Warranty Act and the Song-

19   Beverly Act.  Id.  The Court found that Plaintiff satisfied the UCL's injury-in-fact requirement

20   because he alleged that he relied on Defendants' allegedly misleading conduct in purchasing

21   certain products.  Id.  After the Court's order, the following causes of action remained: violation of

22   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., (counts 1-

23   3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.,

24   (counts 4-5); violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et

25   seq., (count 6); and unjust enrichment / quasi-contract (count 7).

26         On June 14, 2013, Defendant filed a motion for partial summary judgment.  See Dkt. No.

27   68.  On May 5, 2014, the Court granted partial summary judgment in favor of Hershey as to all of

28
     Case No.: 5:12-cv-01862-EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

2

Khasin's claims, with the exception of Khasin's UCL claim concerning the statement "natural source of flavanol antioxidants" on certain labels of Hershey's dark chocolate and cocoa products. See Dkt. No. 131.

## II.  LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputes of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  House v. Bell, 547 U.S. 518, 559-60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of a material fact. Celotex, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Id. at 322-23.  But, on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she the burden of proof.  Id. at 323.  Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is genuine issue for trial."  Anderson, 477 U.S. at 250.

If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, a court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  "Bald assertions that genuine issues of material fact exist," however, "are insufficient."  See Galen v.

3

Case No.: 5:12-cv-01862-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1  Cnty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007); see also United States ex rel. Cafasso v. Gen.

2  Dynamics C4 Sys., Inc., 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a

3  plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory

4  allegations.").  "If the evidence is merely colorable, or is not significantly probative, summary

5  judgment may be granted."  Anderson, 477 U.S. at 249-50.

6  **III.    DISCUSSION**

7  　　　　Hershey advances several arguments on which the Court may grant summary judgment.

8  First, Hershey argues that, to prevail on his UCL claim, Khasin must prove he was deceived by

9  Hershey's "natural source of flavanol antioxidants" statements.  See Dkt. No. 155 at 1. Second,

10  Hershey contends that there is no evidence of class-wide deception because Khasin has not shown

11  that reasonable consumers would likely have been misled by Hershey's statements.  See id.  Third,

12  Hershey claims that there is no evidence that Khasin suffered injury as a result of being deceived

13  by Hershey's statements.  See id.

14  　　　　For the reasons stated below, the Court concludes there is insufficient evidence that the

15  "natural source of flavanol antioxidants" statement on the challenged Hershey products was likely

16  to mislead reasonable consumers and that the label statements were therefore unlawful on that

17  basis.  Because Hershey has shown an absence of a genuine dispute of material fact on these

18  points, the Court GRANTS Hershey's Motion for Summary Judgment.  Thus, the Court need not

19  address the Khasin's Motion for Partial Summary Judgment because it is largely a "mirror image"

20  of Hershey's Motion for Summary Judgment.  As such, the Court DENIES Khasin's Motion for

21  Partial Summary Judgment as moot.

22  　　　　　　**A.  Statutory Framework**

23  　　　　The federal Food, Drug, and Cosmetic Act ("FDCA"), codified at 21 U.S.C. § 301 et. seq.,

24  gives the Food and Drug Administration ("FDA") "the responsibility to protect the public health

25  by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.' "  Lockwood v.

26  Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009) (quoting 21 C.F.R. §

27  393(b)(2)(A)).  For purposes of federal law, food is "misbranded" if its labeling is "false or

28  Case No.: 5:12-cv-01862-EJD

4

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

misleading in any particular. . . . ." 21 U.S.C. § 343(a)(1).  California, through the Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code § 109875 et seq., has expressly adopted the federal labeling requirements as its own.  Under the Sherman Law, "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food regulations of [California]."  See § 110100.  California has also enacted a number of laws and regulations that adopt and incorporate specific federal food laws and regulations.  See, e.g., § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."); see also § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in."  21 U.S.C. § 343(q)); see also § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in."  21 U.S.C. § 343(r)).

The parties agree that the FDA has yet to promulgate a regulation defining the word "natural" as it pertains to packaged food.  See Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food ("FDA Policy Statement"), 58 Fed. Reg. 2303, 2407 (Jan. 6, 1993) (explaining that "FDA is not undertaking rulemaking to establish a definition for 'natural' at this time.").  Instead, the FDA opted to "maintain its current policy . . . not to restrict the use of the term 'natural' except for added color, synthetic substances, and flavors as provided in [21 C.F.R.] § 101.22."  Id.  "Additionally," the FDA continued, "the agency will maintain its policy regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  Id.  (citation omitted).

Against that statutory backdrop, Khasin's lawsuit has two prongs.  Khasin argues that Hershey has violated the UCL, FAL, and CLRA because the labels on the challenged Hershey products are (1) unlawful and (2) misleading.  FAC ¶ 5, Dkt. No. 27.  First, he argues "that the particular products purchased by Khasin are a 'natural source of flavanol antioxidants' " is unlawful.  FAC ¶ 17, Dkt. No.27.  Secondly, he argues that "[t]he natural antioxidants found in

Case No.: 5:12-cv-01862-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

teas and certain fruits like berries and grapes can also be found in Hershey ®'s Kisses® Special Dark®" is misleading.  FAC ¶ 17, Dkt. No. 27.  The challenged Hershey products, Khasin alleges, make unlawful nutrient content claims as to the antioxidant labeling.  The Court will address each argument in turn.

### A. Whether Hershey's Labels Are Deceptive

Khasin's UCL claim is governed by the "reasonable consumer standard," which requires evidence that "members of the public are likely to be deceived" by the business practice or advertising at issue.  Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted).  To survive summary judgment, Khasin "must produce evidence showing 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.' "  Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1026 (9th Cir. 2008) (quoting Brockey v. Moore, 107 Cal. App. 4th 86, 99 (2003)).  Put differently, Khasin must show "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 507 (2003).  Here, Khasin offers consumer survey about how consumers could interpret Hershey's flavonal antioxidant statements, and cites Federal Register entries indicating that the purpose behind FDA's labeling rules is to minimize consumer confusion.  Khasin SJ Mot. at 13-15.  Although surveys and expert testimony regarding consumer expectations are not required, "a few isolated examples of actual deception are insufficient" in the Ninth Circuit.  Clemens, 534 F.3d at 1026 (internal quotation marks omitted).  Moreover, under California law, Khasin cannot "obtain relief by arguing how consumers could react; [he] must show how consumers actually do react."  Zeltiq Aesthetics, Inc. v. BTL Indus., Inc., 13-cv-05473-JCS, 2014 U.S. Dist. LEXIS 40402, at *33 (N.D. Cal. Mar. 25, 2014); see also Hylton v. Anytime Towing, No. 12-57267, 2014 U.S. App. LEXIS 4975, at *4 (9th Cir. Mar. 17, 2014) (recognizing that on summary judgment a party cannot rely on "allegations unsupported by factual data.").  Without such proof, Khasin does not satisfy the UCL's "reasonable consumer" test.

Khasin testified that he was misled by Hershey's "natural source of flavanol antioxidants"

6

United States District Court
Northern District of California

label.  See Depo. of Leon Khasin ("Khasin Depo.") Ex. K, ¶ 79, Dkt. No. 144.  According to Khasin, he believed at the time of purchase that flavanol antioxidants made them a "better choice" than other candy products.  Id. at 174.  Khasin provides additional evidence from the European Food Safety Authority (EFSA), the U.S. Department of Agriculture, the Tea Quarterly, and an internal Hershey email exchange to show that flavanol antioxidants are not known to provide health benefits.  See Pls. Resp. Mot. Summ. J. ("Response") at 2-4, Dkt. No. 149.  Khasin asks for the Court to infer that Hershey's statements could mislead other consumers as he was because consumers are likely to assume that the statement, "natural source of flavanol antioxidants," facially violates FDA regulations.  Id. at 4-6.  Khasin also claims that he is not required to prove reliance on Hershey's label claims to succeed on his UCL claim to show deception, but even if he were, this requirement is satisfied through his testimony that the Hershey's "natural source of flavanol antioxidant" statements were a factor in his purchasing decision.  Id. at 9-12.

Hershey maintains that its product labeling is not false and does not mislead consumers because its products retain flavanol antioxidants that are naturally found in the cocoa bean.  Def. Reply 5, Dkt. No. 155.  In particular, Hershey points to expert testimony to reiterate that Hershey's evidence is both true and unrebutted.  Id.  Further, Hershey alleges that Khasin understood that Hershey's products are candy, not health foods as derived from his prior testimony.  Id.  Hershey argues that Khasin provides no "extrinsic evidence" required by the Ninth Circuit to show that reasonable consumers are likely to be misled in the same way.  Id. at 6.  Lastly, Hershey urges that Khasin is required to prove reliance on Hershey's statements under both state and federal law.  Id. at 5-6 (citing Khasin v. Hershey Co., 2014 WL 1779805, at *4 (In the "mislabeling of food products" . . . "the actual reliance requirement applies to Plaintiff's claims under all prongs of the UCL."); see also Figy v. Amys Kitchen, 2013 WL 6169503, at *3 (N.D. Cal. 2013); Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310, 327 n.10 (2011); Wilson v. Frito–Lay N. Am., 961 F. Supp.2d 1134 (N.D. Cal. 2013).

Here, Khasin's evidence is insufficient to create a genuine dispute of material fact.  First, the Court will address the issue of whether Khasin was misled in the purchase of the Hershey

Case No.: 5:12-cv-01862-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

products. Second, whether Khasin is likely to be misled by Hershey's statements. Finally, whether Khasin was injured as a result of his reliance when he purchased Hershey products labeled with the statement, "natural source of flavanol antioxidant."

First, Khasin argues that he was "mislead" by the label "natural source of flavanol antioxidants" and the "implicit representation[s]" that the FDA has established a Recommended Daily Intake ("RDI") or Recommended Daily Value ("RDV") for flavanol antioxidants. See Williams, 552 F.3d at 939; Dkt. No. 149 at 7-8. However, his solitary testimony, without more, is not enough to survive summary judgment. "[A] few isolated examples of actual deception are insufficient" to survive summary judgment." Clemens, 534 F.3d at 1026 (internal quotation marks omitted); see also Ries v. Arizona Beverages USA, No. 10-CV-00139, 2013 WL 1287416, at *7 (N.D. Cal. Mar. 28, 2013) (granting summary judgment where defendants' owner testified that some consumers of AriZona Iced Tea "were confused by the term a hundred percent natural" because such testimony, without more, "does not demonstrate that it is probable that a significant portion of the consuming public could be confused by the 'all natural' labeling of defendants' products."). Thus, absent additional evidence in addition to his own testimony, Khasin does not meet his burden on the question of deception.

Moreover, even if the Court were to accept Khasin's testimony as the only evidence of deception, the facts in the record speak to the contrary. Khasin testified in his deposition that Hershey's products are candy, not health foods. Leon Khasin Transcript ("Khasin Tr.") Ex. 2 at 79, Dkt. No. 139. Further, Khasin admitted under oath that he has no understanding of an RDV or RDI (Id. at 74), and he is not concerned about the fats and sodium in Hershey's products. Id. at 167, 168, 196. As such, Khasin does not meet his burden on the question of deception.

Second, Khasin must provide other extrinsic evidence in addition to his allegations to prove whether a reasonable consumer is likely to be misled. See Rice v. Fox Broad. Co., 330 F.3d 1170, 1181-2, n. 8 (9th Cir. 2003); see also Khasin v. Hershey Co., 2014 WL 1779805, at *10-11 (N.D. Cal. May 5, 2014); see also Ries v. Arizona Beverages USA, 2013 WL 1287416, at *7 (N.D. Cal. Mar. 28, 2013). Here, Khasin produces no extrinsic evidence to suggest that a

8

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

reasonable consumer would have expected or assumed that any particular level of flavanol antioxidants would be found in the alleged Hershey products. Khasin provides only his own personal logic to arrive at the conclusion that the statement, "natural source of flavanol antioxidants" is misleading, without any other extrinsic evidence. There is insufficient evidence present such that the Court could find that a reasonable consumer would be misled by Hershey's statements. Further, even if the Court were to accept Khasin's personal logic to arrive at the conclusion that the phrase, "natural source of flavanol antioxidants" misleads consumers because it appears to violate FDA regulations, "not every regulatory violation amounts to an act of consumer fraud." See Mason v. Coca-Cola Co., 774 F. Supp. 2d 699, 705 n.4 (D.N.J. 2011).

The additional "evidence" offered by Khasin is not relevant to the issue of determining whether the phrase, "natural source of flavanol antioxidants" constitutes a mislabeling under UCL. For example, Khasin cites the FDCA's disclosure requirements as his evidence that the phrase "natural source of flavanol antioxidants" is a nutrient content claim that could have misled consumers because Hershey should have disclosed its products contain "disqualifying amounts of saturated fat." Plaintiff's Opposition ("Pls. Opp.") at 5-6, Dkt. No. 149. According to the regulation that plaintiff relies upon, ". . . a nutrient content claim that characterizes the level of antioxidant nutrients present in a food may be used on the level or in the leveling of that food: (1) An RDI has been established for each of the nutrients." 21 C.F.R. § 101.54(g)(1). However, such measures are not appropriate in this case because Hershey did not characterize the level or amount of antioxidants present in its product. Here, Khasin's showing of FDA letters regarding the characterizing level or amounts of nutrients is not relevant to showing that consumers are likely to be misled by Hershey's statements. While the Court views the FDA letters as controlling, despite being informal, of its regulatory definitions, the letters themselves are irrelevant to deciding whether Khasin was likely to be misled by Hershey's statements. See Victor v. R.C. Bigelow, Inc., 2014 WL 1028881, at *15 (N.D. Cal. Mar. 14, 2014) (citing Kane v. Chobani, Inc., 2013 WL 3703981, at * 17 (N.D. Cal. July 12, 2013) ("As set forth by the Supreme Court in Auer v. Robbins, an agencys' interpretation of its own regulation, even if set forth in an informal

United States District Court
Northern District of California

document, is controlling unless plainly erroneous or inconsistent with the regulation." (citing Auer v. Robbins, 519 U.S. 452, 461 (1997))) (quotation marks and brackets omitted). Therefore, Khasin is unable to meet his burden as to whether a reasonable consumer would be misled by Hershey's statements.

Third, Khasin does not meet the burden of showing he suffered injury as a result of purchasing and relying on Hershey's statements. For Khasin to prevail on his UCL claim, he is required to prove that he "lost money or property," as a result of Hershey's deceptive labeling to "demonstrate some form of economic injury." Kwikset, 51 Cal. 4th at 322-23. Khasin proffers no evidence to show economic injury, but rather claims that his purchases are "legally worthless" because they are inaccurate representations of what he thought he was purchasing. See Pls. Opp. 6, Dkt. No. 149. He further claims that he paid a "price premium" because Hershey products with the statement, "natural source of flavanol antioxidants," are objectively worth less than what he paid, but the expert evidence he proffers to support this argument does not propose a model to determine how to calculate this presumed "price premium." See Dkt. No. 139 at 13. Hershey shows in its evidence, which is comprised of empirical data, including historical sales data and a consumer survey, that there is no price change attributable to the labeling phrase, "natural source of flavanol antioxidants." Id. at 14-15. Therefore, Khasin has not met his burden of showing that he suffered economic injury through loss of money or property, as a result of Hershey's alleged deceptive labeling.

Further, Khasin does not show economic injury because he undermines his claim by stating that "at least 90% of my purchases" were "consumed by someone other than me." See Dkt. No. 144, Ex. P at ¶¶ 7-8, 11-12, 15-16. Therefore, Khasin has not met his burden showing he was injured as a result of Hershey's alleged deceptive labeling. Consequentially, because Khasin is unable to prove that he was misled and relied on that deception, he cannot prove that he was injured as a result.

In sum, Khasin does not provide sufficient evidence to support his allegations that Hershey's statements are deceptive.

10

United States District Court
Northern District of California

## B. Whether Hershey's Labels Are Unlawful

Khasin alleges that Hershey products that bear the phrase "natural source of flavanol antioxidants" on its labels is "unlawful" for the purposes of the UCL. FAC ¶ 17. Hershey asserts that its "Special Dark chocolate and cocoa products retain flavanol antioxidants naturally present in the cocoa bean" and that there is no evidence proffered by either party rebutting this statement. See Dkt. No. 155 at 4-5; see also Decl. of Mark Payne ("Payne Decl.") Dkt. No. 139, Ex. 13. "By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Alvarez v. Chevron Corp., 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alteration and internal quotations omitted). "Virtually any law federal, state or local can serve as a predicate for an action under the UCL." Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 718 (2001). "If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails." Stokes v. CitiMortgage, Inc., 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014) (internal quotation marks omitted); see also Bruton v. Gerber Products Co., 2014 WL 7206633, at *7 (N.D. Cal. Dec. 18, 2014) (internal quotation marks omitted).

In his Opposition, Khasin explains that his UCL unlawful claim is based on a violation of the Sherman Law, which "expressly prohibits false and misleading food labeling and advertising." See Dkt. 149 at 5-6 (citing Cal. Health & Safety Code §§ 10660, 110398, 110400). Khasin reiterates that Hershey's products are in violation of state law and the UCL, so he is not required to prove reliance on the Hershey product misrepresentation. Id. at 18. However, Hershey asserts that Khasin is required to prove reliance under the UCL. See Dkt. No. 155 at 5.

The California Supreme Court requires plaintiffs to prove all elements of a UCL claim, not just the "prong" under which plaintiff brings suit. Kwikset Corp., 51 Cal 4th at 327 n.9. The Court has found that Khasin was required to prove deception, reliance on that deception, and injury. Khasin v. Hershey Co., 2014 WL 1779805, at *10-11. Further, Khasin confirms that his UCL unlawful claim requires a finding that Hershey's "a natural source of flavanol antioxidants" label violated the Sherman law by misleading reasonable consumers. See Dkt. No. 149 at 9-10.

11

Case No.: 5:12-cv-01862-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Put differently, Khasin's UCL claim is only viable so long as he proves that Hershey violates the

2    Sherman Law through its statement, "a natural source of flavanol antioxidants." Thus, because

3    Khasin did not meet his burden, the UCL unlawful claim fails. With no predicate violation on

4    which to rely, Khasin's UCL unlawful claim cannot stand. See Stokes, 2014 WL 4359191, at *11.

5        Thus, the Court DENIES Khasin's motion for partial summary judgment based on the

6    unlawful prong of the UCL. See Bruton v. Gerber Products Co., 2014 WL 7206633, at *6 (N.D.

7    Cal. Dec. 18, 2014) (citing Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007) ("A district

8    court does not have a duty to search for evidence that would create a factual dispute."))

9    **IV.    CONCLUSION**

10        For the foregoing reasons, the Court hereby GRANTS Hershey's Motion for Summary

11   Judgment. The Court also DENIES as moot Khasin's Motion for Partial Summary Judgment.

12   Judgment shall be entered in favor of Hershey and the Clerk shall close this case file.

13

14   **IT IS SO ORDERED.**

15   Dated: March 31, 2015

16   

17        EDWARD J. DAVILA
         United States District Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Case No.: 5:12-cv-01862-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT