1
2
3
4
5
6
7
8

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
            apersinger@bursor.com
            ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

9
10
11
12

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21

| | |
|---|---|
| JONATHAN RETTA, KIRSTEN SCHOFIELD, and JESSICA MANIRE on Behalf of Themselves and all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MILLENNIUM PRODUCTS, INC. <br><br> Defendant. | Case No.  2:15-cv-01801-PSG-AJW <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE** <br><br> Judge:  Hon. Philip S. Gutierrez <br> Hearing Date:  August 31, 2015 <br><br> FAC Filed:  May 19, 2015 <br> Trial Date:  Not Set |

22
23
24
25
26
27
28

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ........................................................................................ 1

II.     GT'S KOMBUCHA BEVERAGES ARE MISBRANDED IN
        VIOLATION OF CALIFORNIA AND NEW YORK LAW .......................... 2

        A.      The FDA Enacted 21 C.F.R. § 101.54(g) To Ensure That
                "Antioxidant" Claims Are Not Deceptive ...................................... 3

        B.      The "Generic Claims" Characterize The Level Of
                Antioxidants In GT's Kombucha Beverages ................................. 6

        C.      Reasonable Consumers Are Likely To Be Deceived By
                Millennium's Antioxidant Marketing ............................................ 12

III.    PLAINTIFFS' ALLEGATIONS SATISFY RULE 9(B) .............................. 15

IV.     PLAINTIFFS STATE A CLAIM UNDER SECTION 349 OF
        THE GBL ................................................................................................. 21

V.      PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE
        RELIEF ................................................................................................... 22

VI.     MILLENNIUM'S MOTION TO STRIKE IS PREMATURE ...................... 24

VII.    CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005) ...................................................................22

*Burge v. Freelife Intern., Inc.*,
    2009 WL 3872343 (D. Ariz. Nov. 18, 2009) ..........................................17

*Clancy v. The Bromley Tea Co.*,
    2013 WL 4081632 (N.D. Cal. Aug. 9, 2013)......................................passim

*Committee on Children's Television, Inc., v. General Foods Corp.*,
    35 Cal. 3d 197 (1983) ..............................................................................12

*Craig v. Twinings N. Am., Inc.*,
    2015 WL 505867 (W.D. Ark. Feb. 5, 2015) ............................................11

*Forcellati v. Hyland's, Inc.*,
    876 F. Supp. 2d 1155 (C.D. Cal. 2012).....................................................25

*Gustavson v. Mars, Inc.*,
    2014 WL 2604774 (N.D. Cal. June 10, 2014) ...................................10, 11

*Gustavson v. Wrigley Sales Co.*,
    961 F.Supp.2d 1100 (N.D. Cal. 2013) .........................................7, 13, 20

*In re 5-hour ENERGY Mktg. & Sales Practices Litig.*,
    2014 WL 5311272 (C.D. Cal. Sept. 4, 2014).....................................passim

*In re Sony Grand Wega KDF-E A 10/A20 Series
Rear Projection HDTV Television Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) .....................................................25

*Jones v. ConAgra Foods, Inc.*,
    2014 WL 2702726 (N.D. Cal. June 13, 2014) ..........................................11

*Jones v. ConAgra Foods, Inc.*,
    912 F. Supp. 2d 889 (N.D. Cal. 2012) ........................................11, 13, 21

*Kane v. Chobani, Inc.*,
    2013 WL 3703981 (N.D. Cal. July 12, 2013) .............................................7

*Khasin v. Hershey Co.*,

2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) ..........................................................13

*Khasin v. R.C. Bigelow, Inc.*,
2013 WL 2403579 (N.D. Cal. May 1, 2013) ...............................................10, 11, 13

*Koenig v. Boulder Brands, Inc.*,
995 F. Supp. 2d 274 (S.D.N.Y. 2014)....................................................................16

*Kosta v. Del Monte Corp.*,
2013 WL 2147413 (N.D. Cal. May 15, 2013) .........................................................13

*Lanovaz v. Twinings N. Amer., Inc.*,
2013 WL 675929 (N.D. Cal. Feb. 25, 2013) .................................................passim

*Lilly v. Jamba Juice Co.*,
2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .........................................................23

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012)...................................................................................25

*PDK Labs, Inc. v. Friedlander*,
103 F.3d 1105 (2d Cir. 1997)..................................................................................22

*Pelman ex rel. Pelman v. McDonald's Corp.*,
396 F.3d 508 (2d Cir. 2005)....................................................................................16

*People ex. rel. Dept. of Motor Vehicles v. Cars 4 Causes*,
139 Cal. App. 4th 1006 (2006) ...............................................................................12

*Ries v. Arizona Beverages USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) ...........................................................................23

*Salazar v. Honest Tea, Inc.*,
2015 WL 75223 (E.D. Cal. Jan. 6, 2015)........................................................passim

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ................................................................................10

*Thomas v. Costco Wholesale Corp.*,
2014 WL 1323192 (N.D. Cal. Mar. 31, 2014).........................................................13

*Trazo v. Nestle USA, Inc.*,
2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ..........................................................11

*Vassigh v. Bai Brands LLC*,
2015 WL 4238886 (N.D. Cal. July 13, 2015) ...............................................8, 9, 11

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO: 2:15-CV-01801-PSG-AJW

iii

*Verzani v. Costco Wholesale Corp.*,
   2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) ........................................................22

*Victor v. R.C. Bigelow, Inc.*,
   2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ...................................................8, 11

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...............................................................................13

**STATUTES**

21 U.S.C. § 343 ...............................................................................................................2

21 U.S.C. § 343(a)(1) ......................................................................................................2

21 U.S.C. § 393(b)(2)(A) ................................................................................................2

Cal. Health & Safety Code § 110100 .............................................................................2

Cal. Health & Safety Code § 110670 .............................................................................2

N.Y. Agric. & Mkts. Law § 201(1) ................................................................................2

N.Y. G.B.L. § 349 .............................................................................................16, 21, 22

**RULES**

Fed. R. Civ. P. 9(b) .......................................................................................................1,7

**REGULATIONS**

1 N.Y.C.R.R. § 259.1 ......................................................................................................2

21 C.F.R. § 101 ...............................................................................................................3

21 C.F.R. § 101.1 ............................................................................................................2

21 C.F.R. § 101.54(g) ...................................................................................................1, 3

62 Fed. Reg. 49868 (Sept. 23, 1997) ......................................................................passim

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO: 2:15-CV-01801-PSG-AJW

iv

## I.    INTRODUCTION

Defendant Millennium Products, Inc.'s ("Defendant") "marketing campaign takes advantage of high consumer demand for antioxidants by touting the antioxidant content in its [GT's Kombucha Beverages] in precisely the manner the Food and Drug Administration ("FDA") sought to prohibit by establishing the antioxidant labeling requirements set forth in 21 C.F.R. § 101.54(g)" ("Section 101.54(g)"). Amended Class Action Complaint ("FAC") ¶ 1.  Defendant's motion to dismiss, stunningly, does not even contest that some of Defendant's products are mislabeled. Specifically, Defendant does not challenge Plaintiffs' allegations that GT's Kombucha Beverages bearing what Defendant terms "Blueberries Claims" violate Section 101.54(g).  *See* Def's Br. at 3, 7-11.  Instead, Defendant chooses to ignore the detailed allegations concerning consumer deception in the FAC and argues that Plaintiffs have not plausibly alleged deception.  *See id.* at 11-13; FAC ¶¶ 31-39. Plaintiffs' allegations of deception are simple: Defendant markets its products as containing superior amounts of nutrients with antioxidant properties even though (1) the products do not contain a single nutrient with antioxidant properties and (2) it is misleading to compare the amount of such "antioxidants" to real nutrients that the FDA recommends in specific amounts for the daily diet.  *See* FAC ¶¶ 20-39. Further, Defendant argues that products bearing what it terms "Generic Claims" – the "powerful antioxidants" statement – do not violate Section 101.54(g), even though the FDA and every court to have considered the issue disagree.  *See, e.g.*, Request for Judicial Notice ("RJN") Ex. 1.  Defendant also puts forward disingenuous arguments concerning Fed. R. Civ. P. Rule 9(b) ("Rule 9(b)") based on its assertion that Plaintiffs did not specify the time and place of their purchases. Def's Br. at 4-7.  But Plaintiffs specify when they purchased the products and the states of purchase, and even name the retailers at which the purchases were made.

FAC ¶¶ 4-6.  Accordingly, the Court should deny Defendant's motion to dismiss in its entirety.

## II.  GT'S KOMBUCHA BEVERAGES ARE MISBRANDED IN VIOLATION OF CALIFORNIA AND NEW YORK LAW

To achieve the objectives of the Food Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 393(b)(2)(A), the FDA has promulgated regulations governing the labeling of food products.  *See, e.g.*, 21 C.F.R. § 101.1, *et. seq*.  The subsections of the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343 *et. seq*., establish the conditions under which food is "deemed to be misbranded."  For example, under 21 U.S.C. § 343(a)(1), food is misbranded if "its labeling is false or misleading in any particular."  California and New York have each expressly adopted the federal food labeling requirements as their own, meaning that a violation of a federal food labeling requirement necessarily signifies a violation of a parallel California and New York law.  *See* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act … shall be the food labeling regulations of this state."); Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) [21 U.S.C. Sec. 343(r)] of the federal act and the regulations adopted pursuant thereto."); N.Y. Agric. & Mkts. Law § 201(1) (food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular"); 1 N.Y.C.R.R. § 259.1 ("the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (3) Part 101 of title 21 of the *Code of Federal Regulations,* containing the Federal definitions and standards for *Food Labeling* (including Appendices)"); FAC ¶¶ 20-21 (same).  Because the food labeling "requirement[s] imposed by state law effectively parallel[] or mirror[] the relevant sections of the [FDCA]," Plaintiffs may assert claims for violations of California and

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO: 2:15-CV-01801-PSG-AJW

2

New York consumer protection laws based on violations of the respective states' food safety regulations and the FDCA. *Clancy v. The Bromley Tea Co*., 2013 WL 4081632, at *8 (N.D. Cal. Aug. 9, 2013) (internal quotations omitted).

### A.   The FDA Enacted 21 C.F.R. § 101.54(g) To Ensure That "Antioxidant" Claims Are Not Deceptive

Nutrient content claims using the term "antioxidant" must comply with the requirements listed by the FDA in Section 101.54(g). Under Section 101.54(g), a nutrient content claim that characterizes the level of antioxidant nutrients present in a food may only be used if:

> (1) An RDI (Reference Daily Intake) has been established for each of the nutrients; (2) The nutrients that are the subject of the claim have recognized antioxidant activity…; (3) The level of each nutrient that is the subject of the claim is sufficient to qualify for the [type of claim made] (e.g. to bear the claim "high in antioxidant vitamin C," the product must contain 20 percent or more of the RDI for vitamin C)…; and (4) The names of the nutrients that are the subject of the claim are included as part of the claim (e.g., 'high in antioxidant vitamins C and E'). Alternatively, when used as part of a nutrient content claim, the term 'antioxidant' or 'antioxidants' (as in 'high in antioxidants') may be linked by a symbol (e.g. an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label followed by the name or names of the nutrients with recognized antioxidant activity.

*See also Lanovaz v. Twinings N. Amer., Inc*., 2013 WL 675929, at *5 (N.D. Cal. Feb. 25, 2013); *Clancy*, 2013 WL 4081632, at *9. The use of a nutrient content claim that characterizes the level of an "antioxidant" but does not comply with Section 101.54(g) misbrands a product under 403(r)(2)(A)(i) of the Act. *See* FAC ¶¶ 22-28.

The FDA specifically proposed paragraph Section 101.54(g) to "ensure that consumers are not confused or misled" by nutrient content claims using the term "antioxidants." *Food Labeling; Nutrient Content Claims: Definition of "Antioxidant" for Use in Nutrient Content Claims*, 21 C.F.R. Part 101, Federal Register Vol. 60 No. 249, pp. 67184-67194, at 67189 (Dec. 28, 1995) (hereafter, the "Proposed Rule");[1] FAC ¶ 32. The FDA's proposal to add a regulation to

---

[1] *Available at* http://www.gpo.gov/fdsys/pkg/FR-1995-12-28/pdf/95-31194.pdf

standardize nutrient content claims using the term "antioxidant" followed an informal FDA survey that found that claims like "high in antioxidants" often referred "to a variety of nutrients and other dietary ingredients that are present in widely varying amounts." *Id.* Thus, the FDA concluded that inconsistent use of antioxidant nutrient content claims "leads to consumer confusion." *Id.* The FDA further noted that standardizing nutrient content claims using the term "antioxidant" was particularly important to avoid consumer confusion stemming from the unique nature of antioxidant nutrients. Proposed Rule, at 67189; FAC ¶ 33. The FDA explained:

> The term 'antioxidants' is unique in comparison to the names of other nutrients associated with nutrient content claims. Unlike previously approved nutrient content claims that characterize the level of a particular nutrient (e.g., 'low sodium'), a term such as 'high in antioxidants' ties a claim (i.e., 'high') to a class of nutrients that share a specific characteristic (i.e., they are antioxidants) **whose very name indicates a metabolic function**.

*Id* (emphasis added). Accordingly, because the use of the term "antioxidant" implies health benefits, the FDA specifically sought to curtail the use of antioxidant statements related to food products that *do not* contain nutrients recommended for the daily diet. Proposed Rule, at 67189; FAC ¶ 34.

After evaluating comments concerning the Proposed Rule, the FDA reaffirmed the materiality of antioxidant statements to consumers – and the potential of such statements to mislead – in its final rulemaking. *See Food Labeling; Nutrient Content Claims: Definition for 'High Potency' and Definition of 'Antioxidant' for Use in Nutrient Content Claims for Dietary Supplements and Conventional Foods*, Final Rule, 62 Fed. Reg. 49868 (Sept. 23, 1997) (hereafter, "Final Rule").[2] The FDA explained:

> It is important that the antioxidant nutrients be identified as part of a nutrient content claim for antioxidants because **the names are facts that are material in light of the antioxidant representation**. The comments reveal that a variety of nutrients and dietary ingredients could be considered antioxidants. Since these final rules allow the manufacturer to determine what nutrients in a product meet the definition in Sec. 101.54(g) for antioxidants and are to be the

---

[2] *Available at* http://www.gpo.gov/fdsys/pkg/FR-1997-09-23/html/97-24732.htm.

subject of the nutrient content claim, **the claim would be confusing to consumers without a clear identification of which nutrients in the product are being described.  Consumers cannot be expected to know which nutrients are antioxidants…**

The agency concludes that **without the disclosure of the nutrients proximate to the claim, a claim on the label or in labeling of food that describes the level of antioxidants would be misleading** under section 201(n) of the act.

Final Rule, 62 Fed. Reg. 49868, 49874 (Sept. 23, 1997) (emphasis added).

Defendant's misleading citations to the Final Rule, however, seem to imply that that the FDA placed no restrictions on the types of substances that can be the subject of antioxidant nutrient content claims so long as such substances have "antioxidant activity." Def's Br. at 9.  The FDA's actual language, when read in context, implies the exact opposite.  In context, the Final Rule states:

> **The agency is not persuaded that the term "antioxidants," when used in defined nutrient content claims, should be broadened to include all substances involved in antioxidant processes.**  The purpose of this rulemaking is not to delineate all known antioxidants.  The comments that stated that there are other dietary ingredients that act as antioxidants reflect a misinterpretation of FDA's intent.  FDA is not restricting all label and labeling statements about antioxidants to statements about only a limited number of nutrients.  Rather, the agency is defining the circumstances in which claims that characterize the level of nutrients that have antioxidant activity, such as "high in antioxidants" can be made in compliance with the requirements of the act.  As stated above, manufacturers cannot make label statements that characterize the level of a nutrient unless FDA has defined such statements by regulation (see section 403(r)(1)(A) of the act), and FDA cannot define such statements unless it has a reference point, that is an RDI or DRV, against which to measure the nutrient levels.  **Many of the plant compounds referred to in the comments as antioxidants (e.g., lycopene, lutein, polyphenols) do not have RDI's, and thus it is not possible to characterize the level of these substances because there is no standard against which to do so.**

Final Rule, at 49873 (emphasis added).

This case is not about whether or not GT's Kombucha Beverages in fact contain antioxidants, but rather about whether the statements Defendant makes on the bottles' labels are misleading.  As set out above, the FDA has determined that statements that characterize the level of purported "antioxidants" that do not have

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE CASE NO: 2:15-CV-01801-PSG-AJW

5

established RDIs are misleading.  The FDA further explained that limiting nutrient content claims that characterize antioxidants to nutrients with RDIs is critical because certain nutrients only act as "antioxidants" at specified levels and act as "pro-oxidants" at other levels.  Final Rule, 62 Fed. Reg. at 49874 (specifying that certain "nutrients are precursors of coenzymes that are involved in oxidative reactions but do not have direct antioxidant activities, and that they may have effects that are both antioxidant and pro-oxidative in character").  Without having a standard measurement (such as an RDI) for a particular nutrient, it would be impossible for anyone to know whether the amount of a purported "antioxidant" nutrient in a food made such nutrient "antioxidant" in character at all.  *Id.*  ("The agency advises that antioxidant claims on products that contain levels of a nutrient sufficient to cause the nutrient to act as a pro-oxidant are false and misleading").  As explained more fully below, the FDA's rulemaking and enforcement actions, case law, and the FAC affirm that GT's Kombucha Beverages deceive the public.

## B.  The "Generic Claims" Characterize The Level Of Antioxidants In GT's Kombucha Beverages

Defendant argues that Section 101.54(g) does not apply to its "Generic Claims" because such claims purportedly do not characterize the "level" of antioxidants in the beverages but simply note their presence.  Def's Br. at 3, 7-11, 13-14.  The "Generic Claims" appear on "[e]very flavor in GT's Enlightened Kombucha and Enlightened Synergy lines that do not contain chia seeds."  FAC ¶ 16.  Specifically, the "Generic Claims" appear on every flavor of GT'S Kombucha Products other than "Black Chia, Cherry Chia, Green Chia, and Raspberry Chia."  *Id.* at n. 3.  Defendant does not, however, contest Plaintiffs' allegations that the "Blueberries Claims" violate Section 101.54(g).  Def's Br. at 3, 7.  The "Blueberries Claims" appear on "[e]very flavor in the Enlightened Synergy line that contains chia seeds."  FAC ¶ 17.  Specifically, the "Blueberries Claims" appear on Enlightened Synergy: Black Chia, Cherry Chia, Green Chia, and Raspberry Chia.  *Id.* ¶ 16 n. 3.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO: 2:15-CV-01801-PSG-AJW

6

1    Accordingly, the Court must deny Defendant's motion as to Enlightened Synergy:

2    Black Chia, Cherry Chia, Green Chia, and Raspberry Chia if it finds that Fed. R. Civ.

3    P. 9(b) is satisfied and that the FAC alleges that a reasonable consumer is likely to be

4    misled by such claims.

5           Each flavor of GT'S Kombucha Beverages bearing a "Generic Claim" "bears

6    the following nutrient content claims characterizing the level of antioxidants on the

7    bottles' labels":

8           It has a lighter and smoother personality than our original formula with the
            same **high nutritional value** that you expect from us.  With a unique blend of
9           proprietary probiotics and **powerful antioxidants**, each bottle is designed to
            nourish your body from the inside out.
10

11   FAC ¶ 16 (emphasis added).  Defendant argues that these statements do not

12   characterize the "level" of antioxidants and are mere puffery.  Def's Br. at 7-11.

13   Defendant further argues that because such statements do not characterize the "level"

14   of antioxidants, they are preempted by the FDCA.  Each of these arguments misses

15   the mark and ignores precedent directly on point and the allegations of the FAC.

16   These statements are not mere "puffery" and do not merely note the "presence" of

17   antioxidants, but rather characterize the level of antioxidant nutrients in violation of

18   federal and state law.

19          Statements that "characterize" the "level" of antioxidants are not limited to the

20   illustrative terms set forth in FDA regulations.  In FDA warning letters, the FDA has

21   found that words other than those listed in laws and regulations characterize the level

22   antioxidants and may be similarly regulated as a result.  *See Clancy v. The Bromley*

23   *Tea Co.*, 2013 WL 4081632, at *9 (N.D. Cal. Aug. 9, 2013); *Lanovaz*, 2013 WL

24   675929, at *5; *Gustavson v. Wrigley Sales Co.*, 961 F.Supp.2d 1100, 1121-22 (N.D.

25   Cal. 2013) (hereafter, "*Wrigley Sales*"); *see also Kane v. Chobani, Inc.*, 2013 WL

26   3703981, at *16 (N.D. Cal. July 12, 2013), *vacating as moot* 2013 WL 5529723

27   (N.D. Cal. Jul. 25, 2013).  Consequently, courts regularly rely on FDA warning

28   letters to find that labeling statements using words analogous to those listed in FDA

regulations characterize the level of antioxidants and give rise to claims for violation of state consumer protection laws.  *Salazar v. Honest Tea, Inc.*, 2015 WL 75223, at *5 (E.D. Cal. Jan. 6, 2015) ("courts routinely rely on FDA warning letters to determine whether a statement qualifies as a nutrient content claim"); *Vassigh v. Bai Brands LLC*, 2015 WL 4238886, at *7 (N.D. Cal. July 13, 2015); *see Wrigley Sales*, 961 F.Supp.2d at 1121-22; *Clancy*, 2013 WL 4081632, at *9; *Lanovaz*, 2013 WL 675929, at *4-5; *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *15 (N.D. Cal. Mar. 14, 2014).  As explained in *Vassigh*, "[a] defendant cannot escape liability simply because it uses a synonym – such as 'great source' or 'excellent source' – instead of the defined term 'good source.'"  *Vassigh*, 2015 WL 4238886, at *7.  "The touchstone inquiry is whether the statement either expressly or implicitly characterizes the level of a nutrient in the product."  *Id*.  "[S]tatements characterizing their products as 'high', '**powerful**,' 'rich,' 'abundantly found,' 'fortified,' and 'packed with' antioxidants constitute nutrient content claims" that "characterize the level of antioxidants found within the promoted product."  *Id*.  (emphasis added).

In *Lanovaz*, *Salazar*, *Clancy*, and *Victor*, the courts came to the same conclusion.  *Lanovaz*, 2013 WL 675929, at *5; *Salazar*, 2015 WL 75223, at *4-5; *Clancy*, 2013 WL 4081632, at *9-10; *Victor*, 2014 WL 1028881, at *15.  Of particular relevance here, the defendant in *Lanovaz* argued that the statement "natural source of antioxidants" "does not characterize the *level* of antioxidant but only claims its tea is a 'natural source.'"  *Lanovaz*, 2013 WL 675929, at *4 (emphasis in original).  Judge Whyte relied on a FDA warning letter to reject the defendant's argument and held that describing a tea product as a "source of" antioxidants misbranded the product and that plaintiff's state law claims were "viable."  *Id*., at *4-5.  Likewise, in *Salazar*, the defendant argued that statements such as "packed with," "one of many" and "key" "do not characterize the *level* of" antioxidants, but "simply inform consumers that [antioxidants are] present in Honey

Green Tea." *Salazar*, 2015 WL 75223, at *4-5 (emphasis added).[3]  Judge Mueller similarly relied on FDA warning letters to find that the terms all characterized the level of antioxidants in Honey Green Tea.  *Id*.  In *Clancy*, defendant also argued that the "terms 'contain' and 'source of,' which are used on their products' labels, are not defined by federal regulation as characterizing the *level* of a nutrient."  *Clancy*, 2013 WL 4081632, at *9 (emphasis added).  Judge Tigar cited an FDA letter and explained that by using these terms, "the company had characterized the *level* of nutrients of a type required to be in nutrition labeling."  *Id*. (quotation and citation omitted) (emphasis added).  In *Victor*, Judge Orrick similarly relied on a FDA warning letter, and the reasoning in *Clancy* and *Lanovaz*, to hold that the term "delivers healthful antioxidants" is a nutrient content claim that violates parallel state and federal law.  *Victor*, 2014 WL 1028881, at *15.  Accordingly, Judge Tigar, Judge Whyte, Judge Mueller, and Judge Orrick each concluded that a defendant's antioxidant statements made about a tea product were unauthorized nutrient content claims that gave rise to violations of state law.  *Id.* at *15; *Lanovaz*, 2013 WL 675929, at *5; *Clancy*, 2013 WL 4081632, at *10; *Salazar*, 2015 WL 75223, at *7.

Here, Defendant's "Generic Claims" state that the beverages have a "high nutritional value" and, in the very next sentence, clarify that the high nutritional value is due, in part, to "powerful antioxidants."  FAC ¶ 16.  Two courts within this circuit have found that the term "powerful antioxidants" characterizes the level of antioxidants in a product.  *See Vassigh*, 2015 WL 4238886, at *7 ("statements characterizing their products as [containing] … 'powerful' … antioxidants constitute nutrient content claims … that characterize the level of antioxidants found within the

---

[3] Defendant's suggestion that the courts in *Lanovaz* and *Salazar* "found that antioxidant claims not explicitly characterizing the level of antioxidants in a product could violate Section 101.54(g)" is clearly erroneous.  Def's Br. at 9-10.  In each decision, the courts conducted a thorough analysis and specifically found that the statements in question explicitly characterized the level of antioxidants in the respective tea beverages.  *Lanovaz*, 2013 WL 675929, at *4-5; *Salazar*, 2015 WL 75223, at *4-5.

promoted product"); *Khasin v. R.C. Bigelow, Inc*., 2013 WL 2403579, at *1 (N.D. Cal. May 1, 2013) (finding that the phrase "packed powerful antioxidants" is an unauthorized nutrient content claim where the tea product did not meet the requirements of Section 101.54(g)). *See also Gustavson v. Mars, Inc*., 2014 WL 2604774, at *7 (N.D. Cal. June 10, 2014) ("a manufacturer's decision to highlight the fact that its product is a source…of a given nutrient arguably does suggest that the nutrient is present in meaningful quantities") (quotation omitted) (hereafter, "*Mars*").  Further, while Defendant's motion mentions three warning letters cited in the FAC, Defendant conveniently omits the most relevant one. *See* Def's Br. at 10. The FAC states:

> In a January 31, 2012 letter to CAW Industries, Inc., the FDA stated that the statement "very powerful antioxidant" characterizes the level of antioxidants in a product and violates the requirements of 21 C.F.R. 101.54(g) where the product does not disclose a nutrient with an established RDI.

FAC ¶ 27; RJN Ex. 1.  In sum, the FDA and every court to have considered the specific issue here – whether the term "powerful antioxidant" must meet the requirements of Section 101.54(g) – have all concluded that it does.  Thus, GT's Kombucha Beverages bearing "Generic Claims" violate California, New York, and federal laws: (1) because GT's Kombucha Beverages do not contain a single nutrient with an established RDI; the "Generic Claims" do not include the nutrients that are the subject of the claims; and (3) the claims do not use a symbol to link the term "antioxidant" to a nutrient.  *See* Section 101.54(g); FAC ¶¶ 29-30.[4]

---

[4] Relatedly, because the "Generic Claims" characterize the level of antioxidants in GT's Kombucha Beverages, the statements are not puffery.  *See Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1145 (9th Cir. 1997) (holding that "specific and measurable advertisement claim[s]" are not puffery).  According to the FDA, such claims imply that the products meet certain nutritional benchmarks and that the products contain nutrients with an established RDI.  *See* Final Rule, 62 Fed. Reg. at 49874.  These implications are provably false.  Further, because the "Generic Claims" characterize the level of antioxidants in the products in violation of Section 101.54(g) and parallel California and New York laws, Plaintiffs' claims are not preempted.  *Clancy*, 2013 WL 4081632, at *7-*10.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Every single case cited by Defendant for its proposition that the "Generic Claims" do not characterize the levels of antioxidants in GT's Kombucha Beverages is easily distinguishable and unpersuasive.  *See* Def's Br. at 8.  For example, Defendant cites *Trazo v. Nestle USA, Inc*., 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013), a case where the court found that the term "natural source of antioxidants" does not characterize the level of antioxidants.  *Trazo*, however, is an outlier opinion discredited by every court to have considered its holding on this issue, as the court in *Trazo* refused to consider FDA warning letters that evaluated the precise statements at issue in the case.  *Id*. at *6, *9.  *See Vassigh*, 2015 WL 4238886, at *6-*7 (discussing the analysis of *Trazo* but agreeing to follow the "latter opinions" of *Lanovaz*, *Clancy*, and *Salazar*); *Victor*, 2014 WL 1028881, at *15 (rejecting the holding in *Trazo* that the antioxidant claims were preempted and siding with the reasoning set forth in *Clancy* and *Lanovaz* in holding that the antioxidant claims in question violated the Sherman Law); *Mars*, 2014 WL 2604774, at *7 ("While *Trazo* does present a situation factually analogous to the present case, this Court is not persuaded by its reasoning."); *Lanovaz*, 2014 WL 46822, at *7-*8 (citing *Trazo* as contrary authority with the signal "*but see*").  Defendant's citation to a summary judgment decision in *Khasin v. Hershey Co*., No. 12-cv-01862, Dkt. No. 185, at *9 (N.D. Cal. Mar. 31, 2015) is puzzling as the statements in questions survived on a motion to dismiss.  *See Khasin*, 2012 WL 5471153, at *6-*8; Def's Br. at 8.  Similarly, Defendant's citation to *Jones v. ConAgra Foods, Inc*., 2014 WL 2702726, at *18 n. 34 (N.D. Cal. June 13, 2014) is puzzling as the claims at issue there also survived on a motion to dismiss.  *See Jones v. ConAgra Foods, Inc*., 912 F. Supp. 2d 889, 896-903 (N.D. Cal. 2012); Def's Br. at 8.  Finally, Defendant's citation to *Craig v. Twinings N. Am., Inc*., 2015 WL 505867, at *7 (W.D. Ark. Feb. 5, 2015) is equally unpersuasive because the holding in *Craig* directly contradicts decisions within this circuit.  In *Lanovaz*, Judge Whyte decided a dispute concerning the exact same

statements and labels, the same defendant, and the same warning letter at issue in *Craig*, but held that the plaintiff sufficiently alleged all claims based on the "natural source of antioxidants" label.  *See Lanovaz*, 2013 WL 675929, at *5, *8. Accordingly, the Court should side with the clear weight of authority and the FDA's interpretation of the statements at issue and find that the "Generic Claims" characterize the levels of antioxidants in GT's Kombucha Beverages.

### C.   Reasonable Consumers Are Likely To Be Deceived By Millennium's Antioxidant Marketing

Defendant further argues that even if Plaintiffs are correct that the labels of GT's Kombucha Beverages are misbranded under Section 101.54(g) and parallel California and New York law, their claims should nevertheless be dismissed because Plaintiffs purportedly have not alleged that a reasonable consumer could be deceived.  *See Def's Br. at 11-13.  Defendant asserts that Plaintiffs' allegation of deception is solely that "plaintiffs were deceived **because** Millennium purportedly violated Section 101.54(g)."  *Id*. at 12 (emphasis in original).  Defendant further asserts that no reasonable consumer could have been misled because "plaintiffs concede that Millennium's products have antioxidants."  *Id*. at 13.  Defendant fails to cite even one case concerning antioxidant labeling on a motion to dismiss in support of its positions.  Each of these arguments shows that Defendant has chosen to entirely ignore pertinent case law and Plaintiffs' detailed explanations of how Defendant's labeling statements are misleading.  FAC ¶¶ 31-39.

Plaintiffs do not need to plead that the statements on the labels of GT's Kombucha Beverages are false to state a cause of action under California and New York consumer protection statutes – they need only plead that the statements are misleading.  *Committee on Children's Television, Inc*., *v. General Foods Corp.,* 35 Cal. 3d 197, 224 (1983).  Advertising may be misleading, but not false, if it has a "likelihood or tendency to deceive or confuse the public."  *People ex. rel. Dept. of Motor Vehicles v. Cars 4 Causes*, 139 Cal. App. 4th 1006, 1016 (2006).

Accordingly, courts routinely deny motions to dismiss where defendants argue that consumers could not have plausibly been misled by the characterization of antioxidants in tea beverages for the reason that the beverages technically do contain antioxidants. *Thomas v. Costco Wholesale Corp.*, 2014 WL 1323192, at *8-9 (N.D. Cal. Mar. 31, 2014) (denying motion to dismiss antioxidant claims even though "Plaintiff [did] not allege that the claims are false, or that the products do not contain antioxidants" and holding that the statement "naturally rich in antioxidants" "may deceive a reasonable consumer, and [is] inappropriate to resolve at the motion to dismiss stage"); *Salazar*, 2015 WL 75223, at *2-3 (denying motion to dismiss antioxidant claims even though the plaintiff did "not dispute that [defendant's antioxidant] statements are true"); *Lanovaz*, 2013 WL 675929, at *4-5 (same).

Whether Defendant's antioxidant labeling statements are deceptive is "a question of fact that is not appropriate for resolution on the pleadings." *Wrigley Sales Co.*, 961 F.Supp.2d at 1130 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008)); *Jones*, 912 F. Supp. 2d at 901 ("It would be improper to dismiss the antioxidant claims at this point in the proceedings because, contrary to Defendant's assertions, this is not a situation where the Court can conclude as a matter of law that a reasonable customer would not be deceived by the antioxidant claims"); *Lanovaz*, 2013 WL 675929, at *6 ("To the extent the injury alleged is reliance on a misleading…label, whether plaintiff was actually misled is a factual question that is inappropriate basis for dismissal at this stage."); *Salazar*, 2015 WL 75223, at *3 (same); *Khasin v. Hershey Co.*, 2012 WL 5471153, at *7 (same); *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *12 (N.D. Cal. May 15, 2013) (same). An analysis of the misleading nature of Defendant's labels shows that the question of whether the product's labels are deceptive is a question of fact.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE CASE NO: 2:15-CV-01801-PSG-AJW

13

Defendant's "Generic Claims" state that the beverages have a "high nutritional value" and, in the very next sentence, clarify that the high nutritional value is due, in part, to "powerful antioxidants." FAC ¶ 16. In turn, the "Blueberries Claims" state:

> Often called 'runner's food', chia is a **nutrient rich superfood** that provides sustained energy for your body. Packed with more than 8 times the omega-3s found in salmon, this small seed has **big nutritional value**. With **more antioxidants than blueberries** and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha.

*Id*. ¶ 17 (emphasis added). Consumers are misled and confused when (1) GT's Kombucha Beverages bearing "Generic Claims" are advertised as (1) having "high nutritional value" derived from "powerful antioxidants" and (2) GT's Kombucha Beverages bearing "Blueberries Claims" claim that chia seeds are a "nutrient rich superfood," "ha[ve] big nutritional value," and contain "more antioxidants than blueberries." Simply put, neither chia seeds nor any other purported antioxidants in GT's Kombucha Beverages are nutrients. These "antioxidants" do not have a "high nutritional value," are not "nutrient rich superfood[s]," and do not "ha[ve] big nutritional value." *See id*. ¶¶ 31-38. In fact, unlike vitamins that the FDA recognizes as nutrients, the FDA has determined that tea is a "food[] of no nutritional significance."[5] FAC ¶ 13.

Defendant's antioxidant representations create precisely the sort of confusion the FDA sought to avoid by limiting nutrient content claims characterizing the levels of antioxidants exclusively as to nutrients with established RDIs. *See* Final Rule, at 49873. Defendant explicitly compares the level of antioxidants in GT's Kombucha Beverages to the levels of antioxidants found in blueberries. FAC ¶¶ 17, 35. But because blueberries contain Vitamins A and C and the mineral Magnesium, which have established RDIs, and GT's Kombucha Beverages do not contain any antioxidant nutrients with established RDIs, it is nonsensical to compare the relative

---

[5] FDA Food Labeling Guide, at p. 64 *available at*
*http://www.fda.gov/downloads/Food/GuidanceRegulation/UCM265446.pdf*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO: 2:15-CV-01801-PSG-AJW

14

amounts, much less to state that one amount is bigger than the other.  *Id*. ¶ 35.
Defendant is comparing apples and oranges (or, chia seeds and blueberries).  The
substance Defendant claims is superior (chia seeds) is not a nutrient recommended
for the daily diet in any amount while the substance Defendant claims is inferior
(blueberries) contains antioxidants that can be measured against a real scale (RDI)
and that are nutrients recommended for the daily diet (Vitamins C, E, and
Magnesium).  *Id*.  The same considerations cause consumer deception as to the
"Generic Claims," because characterizing the levels of antioxidants that do not have
established RDIs similarly implies that they are superior to real nutrients that the
FDA recommends for the daily diet in set amounts.  *Id*.  *See also* FAC ¶ 36 (citing
Dr. Blumberg for his explanation of how antioxidant messaging on food labels
distort the health benefits of nutrient rich food); FAC ¶ 38 (a "recent study conducted
by researchers at the University of Houston found that simply placing a healthy
euphemism [like antioxidant] on a food package made people believe it was healthier
than others that made no obvious health claims.").  Further, as the FDA and the
Harvard School of Public Health recognized, Defendant's use of the term
"antioxidant" to refer to chia seeds, which do not have established RDIs, is
misleading because it is impossible to determine how much of the ingredient is
present in GT's Kombucha Beverages and, thus, whether the chia seeds act as
antioxidants at all.  *See* Final Rule, at 49874; FAC ¶ 37.

The FAC contains a plausible and thorough analysis of how the challenged
statements on the labels of GT's Kombucha Beverages are deceptive.  *See* FAC ¶¶
31-39.  Because analysis of Plaintiffs' allegations of deception raises factual issues,
the Court should deny Defendant's motion on this point.

### III.  PLAINTIFFS' ALLEGATIONS SATISFY RULE 9(B)

Defendant's argument that the FAC fails to meet the requirements of Rule 9(b)
is an attempt to sow confusion where there is none.  "A pleading satisfies Rule 9(b)

1    when it is specific enough to give defendants notice of the particular misconduct …

2    so that they can defend against the charge and not just deny that they have done

3    anything wrong." *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL

4    5311272, at *5 (C.D. Cal. Sept. 4, 2014) (quotations omitted).  "As a result, the

5    plaintiff must plead the who, what, when, and how of the alleged fraud." *Id.*

6    (quotations omitted).  This Court has stated that the "Rule 9(b) analysis differs with

7    respect to Plaintiffs' claims based on the statements on [a product's] label," as

8    opposed to off-label statements such as in television and radio advertising. *Id.*, at

9    *17.  For challenged statements found on a product's label, "[m]any courts in

10   California have applied a relatively straightforward test for the application of Rule

11   9(b) to label-based fraud claims." *Id.*  "The 'who' are the defendants; the 'what' are

12   their allegedly misleading claims; the 'when' is the proposed class period, during

13   which those claims were made; the 'where' is the offending label; and the 'how' is

14   the plaintiff's explanation why the defendant's claims are misleading." *Id.*

15         While Rule 9(b) applies to Plaintiffs' claims brought under California

16   consumer statutes, "[c]laims brought under GBL § 349 are not subject to the

17   heightened pleading requirements set forth in Rule 9(b)" in cases where plaintiffs

18   allege deception based on an allegedly misleading food label.  *Koenig v. Boulder*

19   *Brands, Inc.*, 995 F. Supp. 2d 274, 287 (S.D.N.Y. 2014).  Thus, although the FAC

20   satisfies the requirements of Rule 9(b), the Court need only find that the FAC meets

21   the general notice pleading requirements of Rule 8(a) to deny Defendant's motion as

22   to Plaintiffs' GBL § 349.  *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d

23   508, 511 (2d Cir. 2005) (holding that a "private right of action under § 349 does not

24   require proof of actual reliance" and that "because § 349 extends well beyond

25   common-law fraud to cover a broad range of deceptive practices … an action under

26   § 349 is not subject to the pleading-with-particularity requirements of [Rule 9(b)],

27   but need only meet the bare-bones notice-pleading requirements of [Rule 8(a)]").

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO: 2:15-CV-01801-PSG-AJW

16

Here, Defendant challenges the "where," "when," and "how" factors.  Def's Br. at 4-7.  As to the "where" and "when" factors, Defendant argues that "Plaintiffs do not specify in which specific state each product was purchased or the date when any products were purchased."  *Id*. at 4.  As an initial matter, the "where" factor "is the offending label" – the labels of GT's Kombucha Beverages – and not, as Defendant argues, the particular location of purchase.  *See In re 5-hour ENERGY*, 2014 WL 5311272, at *17.  In any case, each Plaintiffs' allegations are extremely clear as to the place and time of purchase.

> Within the past three years, Mr. Retta purchased GT's Enlightened Kombucha: Multi-Green and Enlightened Synergy: Mystic Mango from Whole Foods, in Washington, D.C. and New York.

> Within the past three years, Ms. Schofield purchased GT's Enlightened Kombucha: Original Gingerade, and Enlightened Synergy: Raspberry Chia, from Kroger, Whole Foods, and Earth Fare, in Kentucky, South Carolina, and Virginia.

> Within the past three years, Ms. Manire purchased GT's Enlightened Kombucha: Botanic No. 3 and Botanic No. 9, and Enlightened Synergy: Trilogy, Gingerberry, Mystic Mango, and Guava Goddess, from Whole Foods and Vitamin Cottage, in Colorado, California, Texas, and New York.

FAC ¶¶ 4-6.  These details are more than sufficient to meet the "where" and "when" requirements of Rule 9(b).  *Burge v. Freelife Intern., Inc.*, 2009 WL 3872343, at *3 (D. Ariz. Nov. 18, 2009) ("Although Plaintiffs have not alleged the exact place or location where the misrepresentations took place, the Court does not believe that place is in anyway integral to Plaintiffs' claims.  The most significant allegations with respect to Rule 9(b) are the specific content of the alleged misrepresentations so that Freelife may adequately defend Plaintiffs' allegations.").  Defendant's citation to *Frenzel v. AliphCom* is entirely unpersuasive, as the plaintiff in that case did not identify *any* state in which the product was purchased and, further, the court discussed this failure only in the choice of law analysis and not the Rule 9(b) analysis, as plaintiff was attempting to apply California law but did not state that he

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO: 2:15-CV-01801-PSG-AJW

17

1   had actually purchased the product in California, or *any* other state.  2014 WL

2   7387150, at *2 n. 1, *5 (N.D. Cal. Dec. 29, 2014).  Here, only Plaintiffs Retta and

3   Manire are asserting causes of action under New York law, and each of them allege

4   that they purchased Defendant's products in New York.  FAC ¶¶ 4, 6, 84-85.  All of

5   the Plaintiffs are asserting claims under California law, even though only Plaintiff

6   Manire purchased Defendant's products in California, and Defendant does not

7   challenge their standing to do so.[6]  *Id*. ¶¶ 6, 40-41, 53, 66, 76.

8        Defendant also attempts to dispute factual issues pled in the FAC by claiming

9   that Plaintiffs' "omissions are critical" because purportedly the "labels for each of

10  these products, including the nature of their antioxidant references, or indeed

11  whether they have any antioxidant references at all, vary significantly by line, flavor,

12  and time over the proposed class period."  Def's Br. at 5.  Defendant's argument is

13  an attempt to sneak the argument that "Plaintiffs lack standing to assert claims as to

14  any products they did not buy" through the back door, even though Millennium

15  purportedly "does not raise this argument here."  Def's Br. at 1-2 n. 1.  Defendant

16  fails to submit any sort of declaration or factual evidence in support of these

17  contentions, nor can it, as Plaintiffs' allegations must be taken as true at this stage of

18  the proceedings.  *See In re 5-hour ENERGY*, 2014 WL 5311272, at *5 ("When

19  deciding a Rule 12(b)(6) motion, the court must accept the facts pleaded in the

20  complaint as true").  Plaintiffs allege that "Millennium has plastered misleading

21  antioxidant messaging on every side of its GT's Enlightened Kombucha and

22  Enlightened Synergy (collectively, 'GT's Kombucha Beverages') beverage labels."

23  FAC ¶ 1.  "'GT's Kombucha Beverages' refers to every flavor of Millennium's GT's

24  Enlightened Kombucha and Enlightened Synergy lines."  *Id*. ¶ 1 n. 1.  "Every flavor

25

26  ─────────────────────
    [6] Defendant challenged Plaintiffs' standing to pursue claims under California law in
27  its first motion to dismiss, but has abandoned this argument because Plaintiffs have
    "addressed standing defects as to out-of-state plaintiffs."  4/28/2015 Motion to
28  Dismiss Plaintiffs' Class Action Complaint (Dkt. 13); Def's Br. at 1-2.

in GT's Enlightened Kombucha and Enlightened Synergy lines that do not contain chia seeds bear" what Defendant describes as the "Generic Claims." *Id*. ¶ 16. "Every flavor in the Enlightened Synergy line that contains chia seeds bears" what Defendant terms the "Blueberries Claims." *Id*. ¶ 17. The FAC clarifies that the "following flavors of Enlightened Synergy contain chia seeds: Black Chia, Cherry Chia, Grape Chia, and Raspberry Chia." *Id*. ¶ 16 n. 3. "None of the flavors of GT's Enlightened Kombucha contain chia seeds." *Id*. The FAC painstakingly describes that "[e]very flavor" of GT's Kombucha Beverages contains either the "Generic Claims" or the "Blueberries Claims," and then sets out specifically which of the various flavors bear which claim. The FAC's allegations as to the "where" and "when" factors are satisfied.

Defendant's argument that the FAC fails to allege "how" Plaintiffs were misled is based, in part, on blatant misrepresentations of the allegations in the FAC. *See* Def's Br. at 5-7. Defendant essentially claims that Plaintiffs' theory of relief is purportedly so conflicting as to be implausible. *See id*. For example, Defendant claims "[a]t some points, [Plaintiffs] allege that Millennium products have *no* antioxidants (FAC ¶¶ 25, 38), and at others, simply suggest the products have no 'antioxidants with an established RDI,' or no 'nutritional' antioxidants." *Id*. at 6 (emphasis in original). Nowhere in paragraphs 25 or 38 of the FAC, or anywhere else, do Plaintiffs claim that GT's Kombucha Beverages do not contain antioxidants. FAC ¶¶ 25, 38. Paragraph 25 states that "[t]he marketing of EGCG as the antioxidants in GT's Kombucha Beverages is misleading and misbrands the products because neither tea nor EGCG are recognized nutrients under the FDCA." *Id*. ¶ 25. How does this statement in any way imply that there are no antioxidants in GT's Kombucha Beverages? Plaintiffs do not state that the marketing of EGCG and tea as the antioxidants in the beverages is false, but rather clearly state that it is misleading because neither EGCG nor tea are "recognized nutrients under the FDCA." *Id*.

Similarly, paragraph 38 does not state that GT's Kombucha Beverages contain "no" antioxidants, but rather clearly states that GT's Kombucha Beverages "do not contain a single **nutrient** with recognized antioxidant activity *and* with an established RDI." *Id.* ¶ 38 (emphasis added as to "nutrient"). Further, each of the paragraphs that Defendant identifies as "conflicting" do not in any way conflict. Def's Br. at 6. For example, in the Plaintiff paragraphs, Plaintiffs allege that "Millennium misbranded the products and mischaracterized the level, amount, and nature of the antioxidants in the bottles." FAC ¶¶ 4-6. This allegation does not conflict with the FAC's allegations such as that the products do not include nutrients "identified by the FDA as a source of real nutrition," that the purported antioxidants are not a "nutritional source of antioxidants," or that the beverages do not have "a single nutrient with recognized antioxidant activity and with an established RDI." Def's Br. at 6. Each of these allegations concerns the nature and level of the purported antioxidants in the beverages.

Finally, Defendant claims that Plaintiffs have not properly alleged the "how" prong "because a violation of FDA regulations does not itself establish that a label is misleading." *Id.* As addressed above, the FAC explains at length how the challenged statements deceive consumers and that the deception is not based on a "violation of FDA regulations." *See gen.* Section II(C). Because Plaintiffs have "alleged what a reasonable consumer may find to be false and misleading about the Defendant['s] [antioxidant] claims, the Court [should] find[] that these claims satisfy Rule 9(b)'s heightened pleading requirement." *Wrigley Sales*, 961 F. Supp. 2d at 1131 n. 7 (citation omitted). Further, Defendant fails to cite a single case concerning antioxidants in support of its argument that Plaintiffs have not satisfied the "how" prong. *See* Def's Br. at 4-7. Courts considering this issue have consistently ruled in plaintiffs' favor. *Compare* FAC ¶¶ 4-6 ("[Plaintiffs] would not have purchased [GT's Kombucha Beverages], or would have paid significantly less for the products,

had [they] know that these statements were unauthorized, and that Millennium misbranded the products and mischaracterized the level, amount, and nature of the antioxidants in the bottles."), *with Hershey Co.*, 2012 WL 5471153, at *8 (holding that plaintiff satisfied the "how" prong by alleging that but for Hershey's misrepresentations he would not have purchased the products, and thus he was deceived), *and Clancy*, 2013 WL 4081632, at *10 ("The FAC alleges that Defendant's product labels and website [using the term antioxidant] were in violation of [Section 101.54(g) and] the Sherman Law, and that Plaintiff reasonably relied on those statements to purchase products he would not have purchased absent these allegedly deceptive statements, satisfying the requirement of 'how' the statements were misleading."), *and Salazar*, 2015 WL 75223, at *3-4 (holding that plaintiff sufficiently alleged deception by stating that she "would not have purchased Honey Green Tea had she known that the label did not contain only truthful information, or that the antioxidant nutrient content claims on the labels were unauthorized and inaccurate"), *and Jones*, 912 F. Supp. 2d at 901 (holding that plaintiffs had sufficiently alleged deception by stating that they "relied on [] unlawful antioxidant claims when making their purchase decisions and were misled because they erroneously believed the implicit misrepresentation that the tomato and cocoa products that they were purchasing met the minimum nutritional threshold to make such antioxidant claims").  Accordingly, Plaintiffs have satisfied Rule 9(b) as to their California causes of action, and Rule 8(a) as to their GBL § 349 claim.

## IV.  PLAINTIFFS STATE A CLAIM UNDER SECTION 349 OF THE GBL

Defendant argues that Plaintiffs' Fourth Cause of Action under Section 349 of the New York General Business Law ("GBL") fails because GBL claims cannot be predicated on federal food labeling regulations lacking private rights of action.[7]

---

[7] Defendant also argues that only Plaintiffs Retta and Manire have standing to pursue the GBL § 349 claim.  Def's Br. at 16.  Only Plaintiffs Retta and Manire bring this claim.  FAC ¶ 85.  This issue is not in controversy.

Def's Br. at 14-16.  This argument is essentially a restatement of Defendant's argument that consumer deception cannot be shown by a technical labeling violation where the unauthorized statements are not otherwise misleading.  Case law is clear that N.Y. G.B.L. § 349 claims can be predicated on purported FDCA violation where the advertising is also deceptive to consumers.  To illustrate, the court's analysis in *Koenig* dispels any credibility to Defendant's argument:

> New York law forbids the misbranding of food "in language identical to that found in the FDCA.  New York's Agriculture and marketing law incorporates the FDCA's labeling provisions and, likewise, provides that food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular." **New York law also provides remedies, including private rights of action, for misbranding food under consumer protection laws, such as GBL § 349, which broadly prohibits use of "deceptive acts or practices" in business dealings in New York.**

995 F. Supp. at 280-81 (citations omitted) (bracketing in original) (emphasis added).  The cases cited by Defendant in support of its position are inapposite, as in each case the plaintiffs brought GBL § 349 claims for conduct that was not otherwise deceptive.  *See* Def's Br. at 15-16 (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (plaintiff was attempting to assert a GBL § 349 claim "with respect to a federal law that on its face does not address deceptive or misleading behavior at all"); *Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) (finding the plaintiff's claim of deception implausible).  Defendant's citation to *PDK Labs, Inc. v. Friedlander* is likewise unpersuasive, as the court there found that the plaintiff lacked standing *under Section 43(a) of the Lanham Act* because the plaintiff was not a *competitor* of the defendant.  103 F.3d 1105, 1111-1113 (2d Cir. 1997).  The court said absolutely nothing about GBL § 349 claims.

## V.  PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF

Defendant also argues that this Court should dismiss Plaintiffs' claims for injunctive relief because the FAC purportedly "fails to allege that plaintiffs intend to

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE CASE NO: 2:15-CV-01801-PSG-AJW

22

purchase Millennium products again in the future." Def's Br. at 16-17.  Defendant

further asserts that "[t]o the contrary, plaintiffs' allegations indicate they never

would have bought these products had they known they were purportedly

misbranded under FDA regulations." *Id*. (citing FAC ¶¶ 4-6).  But just because

Defendant chooses to ignore the explicit allegations that Plaintiffs intend to purchase

the products in the future does not mean the allegations are absent.  Plaintiffs state:

> [S]hould [Plaintiff] encounter any GT's Kombucha Beverages in the future, [Plaintiff] could not rely on the truthfulness of the labels' statements characterizing the nature and level of antioxidants in the beverages, absent corrective advertising or the addition of antioxidant nutrients with established RDIs to the beverages.  Should Millennium change the formulation of GT's Kombucha Beverages in the future and engage in corrective advertising, [Plaintiff] intends to purchase GT's Kombucha Beverages again.

FAC ¶¶ 4-6.  As this Court has recognized, courts find standing to pursue injunctive

relief where "plaintiffs have indicated that they are interested in purchasing the

products-in-suit in the future" since "plaintiffs who are aware of defendants'

representations can still be harmed if those misrepresentations continue, because the

plaintiffs cannot rely on defendants' representations."  *In re 5-hour ENERGY*, 2014

WL 5311272, at *11 (citing *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523,

533-34 (N.D. Cal. 2012).  *See also Lilly v. Jamba Juice Co*., 2015 WL 1248027, at

*4 (N.D. Cal. Mar. 18, 2015) ("It is correct that now that she is aware of the

misrepresentation, she knows that the product she bought was not as advertised.  But

the manufacturer may change or reconstitute its product in the future to conform to

the representations on the label … In that event, the product would actually become

the product that our hypothetical consumer values most highly, and it would be

labeled as such.  But unless the manufacturer or seller has been enjoined from

making the same misrepresentation, our hypothetical consumer won't know whether

the label is accurate.").  This is precisely the case here, as Plaintiffs claim that they

"could not rely on the truthfulness of the labels' statements characterizing the nature

and level of antioxidants in the beverages, absent corrective advertising," and further

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE CASE NO: 2:15-CV-01801-PSG-AJW

23

claim that they intend to purchase the beverages again should Defendant "engage in corrective advertising."  FAC ¶¶ 4-6.

It is true, as Defendant argues, that Plaintiffs object to the lack of antioxidant nutrients in GT's Kombucha Beverages.  *See* Def's Br. at 18.  The presence of antioxidant nutrients, however, is but one of several factors that goes into a consumer's purchasing decision, one for which Plaintiffs allege they paid a price premium.  FAC ¶¶ 62.  Plaintiffs allege that they would *still* be willing to purchase the *current* formulation of GT's Kombucha Beverages, absent the price premium, so long as Defendant engages in corrective advertising.  *See id*. ¶¶ 4-6.  Alternatively, Plaintiffs allege that they would be willing to purchase a reformulated product that complies with the current label, but would not "know whether the label is accurate" absent an injunction.  *Lilly*, 2015 WL 1248027, at *4.  Plaintiffs' allegations are sufficient to confer standing to pursue injunctive relief.

## VI.  MILLENNIUM'S MOTION TO STRIKE IS PREMATURE

Defendant's motion to strike Plaintiffs' nationwide allegations is not only premature, but also blatantly violates the Local Rules concerning page limitations and this Court's Standing Order.  Local Rule 11-6 states that "[n]o memorandum of points and authorities…shall exceed 25 pages in length…unless permitted by order of the judge."  Local Rule 11-7 states that "[a]ppendices shall not include any matters which properly belong in the body of the memorandum of points and authorities."  Here, Defendant's memorandum of points and authorities is 25 pages long, not even counting the Exhibit attached to the motion.  Defendant, however, has also submitted a 15 page "Appendix of State Law Variations" in support of its motion to strike.  Dkt. 17-1.  The appendix includes separate multi-sentence arguments and case citations in support of its argument that the Court should strike Plaintiffs' nationwide allegations.  *See id*.  This Court has previously struck as

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO: 2:15-CV-01801-PSG-AJW

24

improper a nearly identical attempt to circumvent the page limits in *In re 5-hour ENERGY*:

> [W]hen it came time to file their motion to dismiss, Defendants attempted to circumvent the agreed-upon and ordered page limit by attaching 22 pages of appendices to their brief.  Defendants spent four pages in their brief discussing their challenges to four causes of action dependent on the laws of more than a dozen states.  They did so by citing a handful of cases applicable to a few states and then referring the Court to their appendixes for further information.  Defendants' actions put Plaintiffs, who complied with the page limit, at a clear disadvantage.  Defendants' approach also essentially asked the Court to assemble Defendants' arguments for them.  The Court will not do so.

*In re 5-hour ENERGY*, 6/20/2014 Order, MDL 13-2438 PSG (PLAx) (C.D. Cal.); RJN Ex. 2.  The Court then struck all sections of the brief referring to the appendix.  *Id*.  The Court should do the same here.

In any case, there is no need for further briefing on this issue as this Court has clearly recognized that on a motion to dismiss, "a choice of law analysis would be premature."  *In re 5-hour ENERGY*, 2014 WL 5311272, at *18 (citing *Forcellati v. Hyland's, Inc*., 876 F. Supp. 2d 1155, 1159-60 (C.D. Cal. 2012) (denying motion to strike class claims at the pleading stage) and *In re Sony Grand Wega KDF-E A 10/A20 Series Rear Projection HDTV Television Litig*., 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage.")).  Defendant's contention that *Mazza v. Am. Honda Motor Co*., 666 F.3d 581 (9th Cir. 2012) somehow makes this analysis "ripe" at the motion to dismiss stage is incorrect.  *See gen. Forcellati*, 876 F. Supp. 2d at 1159 (analyzing why *Mazza* does not require a choice of law analysis at the motion to dismiss stage).  Accordingly, the Court should strike or disregard Defendant's motion to strike because it violates the Local Rules.  Alternatively, the Court should deny Defendant's motion because it is meritless.

## VII.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss and motion to strike in their entirety.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO: 2:15-CV-01801-PSG-AJW

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  July 24, 2015

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*/s/ L. Timothy Fisher*_____
                    L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
            apersinger@bursor.com
            ykrivoshey@bursor.com

*Attorneys for Plaintiffs*