1    SCOTT M. VOELZ (S.B. #181415)
     svoelz@omm.com
2    DANIEL J. FARIA (S.B. #285158)
     dfaria@omm.com
3    O'MELVENY & MYERS LLP
     400 South Hope Street
4    Los Angeles, California  90071-2899
     Telephone:  (213) 430-6000
5    Facsimile:    (213) 430-6407
6
7    Attorneys for Defendant
     Millennium Products, Inc.
8

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN RETTA, KIRSTEN SCHOFIELD, and JESSICA MANIRE, on Behalf of Themselves and All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>MILLENNIUM PRODUCTS, Inc.,<br><br>          Defendant. | Case No. 2:15-CV-01801-PSG-AJW<br><br>**REPLY IN SUPPORT OF DEFENDANT MILLENNIUM PRODUCTS, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE**<br><br>Judge:  Hon. Philip S. Gutierrez<br>Hearing Date:   August 31, 2015<br>Hearing Time:  1:30 PM<br><br>FAC Filed:  May 19, 2015<br>Trial Date:   Not Set |

Plaintiffs' opposition only serves to confirm that the FAC fails to state any cognizable claims and should be dismissed in its entirety.

**First,** the FAC fails to comply with Rule 9(b)'s heightened pleading requirements by (1) failing to specify when and where plaintiffs purchased each accused Millennium product or product line, and (2) failing to allege a coherent theory as to how plaintiffs were purportedly deceived.

**Second,** plaintiffs' claims that the phrase "powerful antioxidants" (the "Generic Claims") violates 21 C.F.R. § 101.54(g) and does not constitute puffery ignore the plain language of Section 101.54(g)'s promulgating language and do not specify what specific and measurable qualities the term "powerful" connotes.

**Third,** plaintiffs do not suggest how a reasonable consumer could be deceived by Millennium labels, aside from Millennium's alleged violation of FDA regulations.

**Fourth,** plaintiffs' GBL section 349 claim ignores case law holding that GBL claims predicated on violations of FDA regulations are impliedly preempted. Plaintiffs also ignore the fact that any GBL claims asserted as to products purchased outside of New York are barred for lack of statutory standing.

**Fifth**, plaintiffs' argument for injunctive relief ignores their allegations that the accused products do not perform as desired, such that no labeling change can actually remedy plaintiffs' grievances under Article III.

**Finally**, plaintiffs do not contest that there are material differences in state laws governing the claims of the putative class, that each jurisdiction has the greater interest in applying its laws in its state, and that under *Mazza*, plaintiffs cannot maintain their purported nationwide class.  Plaintiffs claim that it is "premature" to decide this issue now, yet they fail to address recent precedents dismissing nationwide class allegations at the pleading stage.

REPLY ISO MOTION TO DISMISS OR
STRIKE FAC; 2:15-CV-01801-PSG-AJW

1  I.      **ARGUMENT**

2          A.      **The FAC Fails to Meet Rule 9(b)'s Heightened Pleading Standard.**

3          The FAC fails to comply with Rule 9(b)'s heightened pleading requirements

4  for two reasons.  (Mot. at 4-7.)  In response, Plaintiffs cite the same allegations

5  from the FAC that are deficient under Rule 9(b).  (Opp. at 15-21.)

6          First, the FAC fails to plead with particularity ***where and when*** the accused

7  products were purchased.  (FAC ¶¶ 4-6.)  Plaintiffs' allegation that they have

8  purchased certain products "within the past three years" does not put Millennium

9  on notice of the specific time period when the products were purchased.  (*Id.*)  In

10 addition, despite plaintiffs' suggestion to the contrary, alleging that a ***list of***

11 ***products*** was purchased in a ***list of states*** does not provide any indication as to

12 which specific product(s) were purchased in what state(s) which, given the label

13 variations over time and by product, is plainly insufficient under Rule 9(b).  (*Id.*)

14         Plaintiffs' failure to plead the "when and where" of their claims is fatal, as it

15 prevents Millennium from determining which specific product labels are at issue in

16 this dispute in order to defend against plaintiffs' claims accordingly.  A recent

17 decision in the Northern District of California is instructive on the need for

18 specificity on this issue.  *See Kosta v. Del Monte Foods, Inc.*, No. 12-CV-1722

19 YGR, Order Denying Plaintiffs' Third Class Certification Motion, Dkt No. 174

20 (N.D. Cal. July 30, 2015) ("Order").[1]  In *Kosta*, putative class representatives

21 alleged that Del Monte misbranded its products for several reasons, including by

22 allegedly misrepresenting their antioxidant content.  *Kosta*, Order, at *1-2.  The

23 plaintiffs' motion for class certification was denied on ascertainability grounds

24 given that the nature of the claims varied over time throughout the class period and,

25 as to some products, the claims had been discontinued.  *Id.* at *13-17.

26         Plaintiffs object that Millennium did not provide evidentiary support for the

27 _____

28 [1] The *Kosta* Order is attached as Exhibit A to this reply.

REPLY ISO MOTION TO DISMISS OR
STRIKE FAC; 2:15-CV-01801-PSG-AJW

1    assertion that Millennium's labels vary over time here.  (Opp. at 18.)  This is

2    because the present motion is a motion to dismiss and such a showing would not be

3    appropriate here.  But even the FAC itself reveals that the antioxidant claims made

4    on Millennium products vary significantly between products.  (FAC at ¶¶ 4-6.)

5    These variations also exist to a great extent within product lines and over time,

6    including whether any antioxidant claims are made at all.

7          As *Kosta* illustrates, given the importance of label variations, the precise time

8    period and location in which the accused products were purchased will be central to

9    this dispute and to plaintiffs' ability to proceed with their claims, such that

10   compliance with Rule 9(b) requires that plaintiffs plead these purchase details

11   now—details which, if they exist, are solely in plaintiffs' possession.  Plaintiffs

12   cannot obfuscate crucial details concerning their purchase decisions by providing a

13   laundry list of years and states in which each product *may* have been purchased.

14   *See also Frenzel v. Aliphcom*, 2014 U.S. Dist. LEXIS 177880, at *15-16 (N.D. Cal.

15   Dec. 29, 2014).   Nor can they prejudice Millennium's ability to raise standing

16   objections to plaintiffs' GBL claims, *infra* Section II.D, by failing to specify which

17   Millennium products were actually purchased in New York.

18         Plaintiffs have also failed to comply with Rule 9(b) by failing to allege a

19   coherent explanation as to why they were deceived.  Plaintiffs at various points

20   allege that Millennium's products either contain no antioxidants, no nutritious

21   antioxidants, no "FDA-recognized" antioxidants, no "antioxidants with an

22   established RDI," or no antioxidants that are "nutrients."  (Mot. at 5-6.)  This

23   failure to allege a concise and internally consistent account as to what plaintiffs

24   actually believe is or is not in Millennium products likewise fails under Rule 9(b).

25   *E.g.*, *Kane v. Chobani, Inc.*, 2014 WL 657300, at *7-11 (N.D. Cal. Feb. 20, 2014).

26         Finally, while the FAC alleged that the FDA would find Millennium's claims

27   false and misleading, plaintiffs' individual allegations do not explain how

28   Millennium deceived them apart from the alleged regulatory violation, and, as a

result are insufficient under Rule 9(b). (FAC ¶¶ 4-6); *see, e.g., Samet v. Procter & Gamble Co.*, 2013 U.S. Dist. LEXIS 86432, at *29-36 (N.D. Cal. June 18, 2013).

Accordingly, the Court should dismiss the FAC in its entirety. *See, e.g., Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (Rule 9(b) applies to entire complaint when all of plaintiff's claims are grounded in fraud).[2]

### B.   <u>All Claims Should Be Dismissed For Failure to State a Claim.</u>

Millennium's Motion sets forth four reasons why plaintiffs' claims should be dismissed for failure to state a claim. (Mot. at 7-14.)[3] For two of these arguments—specifically, Millennium's puffery and preemption arguments—plaintiffs provide no response. As to the remaining two arguments—that Millennium's labels comply with FDA regulations and are not misleading—plaintiffs recite allegations from the FAC concerning FDA regulations and arguments why Millennium products purportedly violate those regulations, but provide no reason why they themselves were deceived by the products. (Opp. at 2-15.) This necessitates dismissal of the FAC in its entirety.

### 1.   Plaintiffs Fail to Allege a Plausible Theory of How the Generic Claims Violate 21 C.F.R. § 101.54(g).

Plaintiffs' arguments as to why the Generic Claims violate 21 C.F.R.

_____

[2] Plaintiffs suggest that their GBL claim need not comply with Rule 9(b). (Opp. at 16.) But, as set forth *infra* Section II.C, this claim is impliedly preempted.

[3] Plaintiffs suggest that, because not all of these arguments were targeted at Millennium's alleged use of the phrase "more antioxidants than blueberries" (the "Blueberries Claims"), Millennium "does not contest" that the Blueberries Claims violate FDA regulations. (Opp. at 6.) Not so. The Blueberries Claims should be dismissed for failure to state a claim, and the fact that the particularized arguments made as to the Generic Claims did not explicitly reference the Blueberries Claims is in no way a concession that any of plaintiffs' claim have merit.

1   § 101.54(g) are merely conclusory.  Specifically, plaintiffs argue that (1) a product

2   label violates 21 C.F.R. § 101.54(g) if it "characterizes the level" of antioxidants in

3   a product without meeting certain prerequisites of the regulation; and (2) simply

4   argue that the phrase "powerful antioxidants" characterizes the level of antioxidants

5   in tea.  (Opp. at 7.)  Plaintiffs also discuss FDA warning letters and decisions

6   purportedly standing for the proposition that the term "powerful" characterizes the

7   level of antioxidants in a product (Opp. at 7-9), attempting to discount cases

8   holding otherwise.  (Opp. at 11-12).  At no point, however, do plaintiffs describe

9   how the term "powerful" makes any specific representation about the actually

10  *quantity* of antioxidants in a food product.  This is because they cannot.

11      The promulgating language cited in plaintiffs' Opposition illustrates why

12  Section 101.54(g) was not intended to regulate mere statements that a product

13  *contains* antioxidants.  (Opp. at 5) (citing 62 Fed. Reg. 49868, 49873) (Sept. 23,

14  1997) (the "Final Rule").  There, the FDA explicitly stated that the agency was "*not

15  restricting* all label and labeling statements about antioxidants to statements about

16  only a limited number of nutrients," citing the phrase "high in antioxidants" as the

17  type of phrase the regulation was meant to govern.  *Id*. (emphasis added).  The

18  FDA's justification was that the agency itself had not established the recommended

19  daily intakes for certain antioxidants, such that the agency did not have data to

20  determine whether or not claims characterizing the content of those antioxidants

21  were scientifically accurate.  *Id*.  This is non-controversial.  Absent data concerning

22  what level of an antioxidant was a "good" or "high" level, the agency declined to

23  permit claims characterizing the level of that antioxidant.  It also stated that it was

24  not opining on whether antioxidants without RDIs have antioxidant activity.  *Id*.

25      Accordingly, the cases cited by Millennium finding that labeling claims did

26  not violate 21 C.F.R. § 101.54(g) when they did not characterize the quantity of

27  antioxidants in the products at issue are consistent with the promulgating language

28  of the regulation, should guide the Court's analysis here, and necessitate dismissal

1   of the Generic Claims. *See, e.g.*, *Trazo v. Nestlé USA, Inc.*, 2013 U.S. Dist. LEXIS

2   113534, at \*31 (N.D. Cal. Aug. 9, 2013); Order Granting Def.'s Mot. for Summary

3   Judgment, *Khasin v. Hershey Co.*, No. 12-cv-01862, Dkt. No. 185, at \*9 (N.D. Cal.

4   Mar. 31, 2015); *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at \*18 n.34

5   (N.D. Cal. June 13, 2014); *Craig v. Twinings N. Am., Inc.*, 2015 WL 505867, at \*8

6   (W.D. Ark. Feb. 5, 2015).

7            **2.**     **The Generic Claims are Expressly Preempted.**

8        Plaintiffs have not addressed Millennium's preemption argument except to

9   say that the Generic Claims characterize the level of antioxidants in Millennium's

10   products and are accordingly not preempted.  (Opp. at 10 n.4.)  However, as

11   discussed above, the promulgating language of Section 101.54(g) states that the

12   regulation was not intended to govern all uses of the term "antioxidant" on a

13   product label.  Final Rule, 62 Fed. Reg. 49868, 49873.  Instead, it was enacted to

14   govern labeling claims that actually characterize the specific quantity or level of

15   antioxidants in a food product, such as "high in" and "good source."  Thus, the

16   Generic Claims seek to impose labeling standards in addition to or different from

17   those of the FDCA and are expressly preempted.  *See, e.g.*, *Brazil v. Dole Food*

18   *Co.*, 2013 U.S. Dist. LEXIS 136921, at \*35-39 (N.D. Cal. Sept. 23, 2013).

19            **3.**     **The Term "Powerful" is Non-Actionable Puffery.**

20        Plaintiffs provide no response to Millennium's argument that the Generic

21   Claims are puffery, except to recite the legal standard and say that they are not

22   puffery.  (Opp. at 7, 10 n. 4.)  Thus, they have failed to explain what specific and

23   measurable quality the term "powerful" connotes or how plaintiffs propose that the

24   term "powerful" be measured.  This is because the adjective "powerful" is a vague

25   and generalized statement that does not represent that a product possesses any

26   specific or independently verifiable quality.  *See, e.g.*, *Glen Holly Entm't, Inc. v.*

27   *Tektronix*, Inc., 343 F.3d 1000, 1015 (9th Cir. 2003) (generalized, vague, and

28   unspecific assertions are non-actionable puffery); *Viggiano v. Hansen Nat. Corp.*,

REPLY ISO MOTION TO DISMISS OR
STRIKE FAC; 2:15-CV-01801-PSG-AJW

944 F. Supp. 2d 877, 895 (C.D. Cal. 2013) (dismissing claims regarding alleged use of the term "premium" as non-actionable puffery).  Plaintiffs reliance on 62 Fed. Reg. at 49874 (Opp. at 10 n.4) is unavailing.  That citation discusses the specific regulatory thresholds that a product must meet to bear claims such as "high in antioxidant vitamin C" or "good source."  It does not address how to measure and verify subjective terms such as "powerful."  *Id.*  If anything, it further illustrates that the purpose of Section 101.54 was to regulate a narrow subset of claims that actually characterize the levels of antioxidants in a product—such as "good source" or "high in"—and not mere statements that a product contains antioxidants.

### 4.    The FAC is Devoid of Any Explanation as to Why a Reasonable Consumer Would Be Deceived.

Plaintiffs' sole explanation for why the labeling claims at issue in this case are false and misleading continues to be that the claims are false and misleading ***because*** the FDA purportedly sees them as such.  (*E.g.* Opp. at 14) ("Defendant's antioxidant representations create precisely the sort of confusion the FDA sought to avoid . . . .").  However, to establish that a reasonable consumer could plausibly be deceived, plaintiffs must do more than baldly recite FDA standards, and explain how ***they themselves*** were deceived by Millennium's product labels.  *See, e.g.*, *Ang v. Whitewave Foods Co.*, 2013 U.S. Dist. LEXIS 173185, at \*10-15 (N.D. Cal. Dec. 10, 2013) (dismissing food misbranding claims even where label statements at issue contained terms that allegedly violated FDA regulations); *see also Samet*, 2013 U.S. Dist. LEXIS 86432, at \*29-36 (dismissing claims under Rule 9(b) for failure to allege how statements were misleading apart from purported FDCA violations).

### C.    Plaintiffs' GBL Claim Cannot Be Predicated on Alleged Violations of FDA Regulations or New York Laws Incorporating Them.

Plaintiffs do not dispute that the FDCA contains an explicit bar on private enforcement.  *See* 21 U.S.C. § 337(a).  This bar on private enforcement precludes plaintiffs from asserting their GBL claim as Section 349 of the GBL does not

1   provide "a private right of action for violation of a federal law otherwise lacking

2   one." *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005).

3       Plaintiffs attempt to distinguish *Broader* and *Verzani* on the grounds that

4   these cases involved GBL claims for conduct "that was not otherwise deceptive."

5   (Opp. at 22.)  However, this is a distinction without a difference.  These decisions

6   stated unambiguously that claims brought under Section 349 of the GBL either (1)

7   cannot be predicated on violations of federal laws lacking a private right of action,

8   or (2) more specifically, cannot be predicated on alleged violations of FDA

9   regulations.  *Broader*, 418 F.3d at 199-200; *Verzani v. Costco Wholesale Corp*,

10  2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010); *see also PDK Labs, Inc. v.*

11  *Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (dismissing Lanham Act claims

12  predicated on alleged FDCA violations).

13      Plaintiffs' citation to *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274

14  (S.D.N.Y. 2014) is unavailing.  (Opp. at 22.)  In the brief paragraph cited by

15  plaintiffs, the court merely summarized New York's regulatory scheme, noting that

16  New York regulations prohibit the misbranding of food, and that ***additionally***,

17  Section 349 of the GBL provides a vehicle for plaintiffs allegedly aggrieved by

18  false and misleading labels to bring a consumer protection claim.  995 F. Supp. 2d

19  at 280-281.  The court then found that the claims at issue were not preempted, but

20  in doing so inappropriately failed to consider the Second Circuit's contrary finding

21  in *Broader*, which is controlling here.  *Id.* at 282-287.

22  **D.    All of Plaintiffs' GBL Claims Should Be Dismissed to the Extent**

23  **They Are Predicated on Product Purchases Outside of New York.**

24      Plaintiffs either do not address or misapprehend Millennium's second

25  argument concerning plaintiffs' GBL claim.  (Opp. at 21 n.7.)  As set forth above,

26  the FAC does not specify which products were purchased in New York.  *See supra*

27  Section A.  Instead, plaintiffs allege that a group of products were purchased in a

28  group of states and leave it to Millennium to guess which products were purchased

where.  (FAC ¶¶ 4-6.)  Because of plaintiffs lack of specificity with regard to their purchases, Millennium cannot determine whether plaintiffs seek to assert GBL claims as to products they did not actually purchase in New York.  (*Id.*)  Plaintiffs lack standing to do so, as Section 349 of the GBL applies only to transactions in the state of New York.  N.Y. Gen. Bus. Law § 349; *In re Frito Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *17-19 (E.D.N.Y. Aug. 29, 2013).

Footnote 7 of plaintiffs' Opposition does not cure this standing defect.  There, plaintiffs state that only plaintiffs Retta and Manire "bring this claim," such that the standing issue is "not in controversy."  (Opp. at 21 n.7.)  However, the fact that only the named plaintiffs who allegedly purchased *some* products in New York have asserted a GBL claim is irrelevant to the issue of whether these plaintiffs have ever actually purchased *all* of the products they allege to have purchased in New York.  Plaintiffs Retta and Manire allege that they have purchased Millennium products in *several states*, including New York.  (FAC ¶¶ 4-6.)  To the extent either of these plaintiffs are purporting to assert GBL claims as to a product they did not purchase in New York, such claims should be dismissed for lack of standing.

**E.   Plaintiffs Allegations Are Insufficient to Confer Article III Standing to Assert Claims for Injunctive Relief.**

Plaintiffs cannot seek injunctive relief because they lack Article III standing to seek such relief when they do not allege an intent to purchase an allegedly mislabeled product again.  (Mot. at 16-19.)  In response, plaintiffs regurgitate allegations from the FAC and mischaracterize applicable law.  (Opp. at 22-24.)

As set forth in the Motion, the FAC makes clear that plaintiffs wish to purchase products containing antioxidants that they allege Millennium products do not contain.  (*E.g.*, FAC ¶¶ 31-40; *id.* ¶¶ 4-6.)  This forecloses plaintiffs' claims for injunctive relief as, regardless of how the products are labeled in the future, plaintiffs' objection to the alleged lack of antioxidants in their current formulation would remain.  *Davidson v. Kimberly-Clark Corp.*, 2014 U.S. Dist. LEXIS 176394,

at *10-12 (N.D. Cal. Dec. 19, 2014).  Plaintiffs' contention that they would consider purchasing hypothetical, differently formulated products (FAC ¶¶ 4-6) is conjectural and not an allegation that they would purchase *these* products again.

Plaintiffs' reliance on *In re 5-Hour Energy Mktg. and Sales Practs. Litig.*, 2014 WL 5311272, at *11 (C.D. Cal. Sept. 4, 2014) is a distraction.  (Opp. at 23.) Plaintiffs suggest that, in that case, this Court "recognized" that "plaintiffs who are aware of defendants representations can still be harmed if those misrepresentations continue, because the plaintiffs cannot rely on defendants' representations."  (*Id.*) There, however, the Court was merely summarizing different theories of thought on Article III standing.  *In re 5-Hour Energy*, 2014 WL 5311272, at *11.  The Court then went on to dismiss the injunctive relief claims at issue.  *Id.*  In doing so, the Court found that the decisions holding that Article III lacks public policy exceptions and that "plaintiffs who know the truth about allegedly deceptive claims lack standing to bring suit for injunctive relief" are more persuasive.  *Id.*  The same result is warranted here, where plaintiffs have failed to allege that they intend to purchase *the accused* Millennium products again.

**F.   Plaintiffs Have Not Identified Any Discoverable Facts That Would Change the Court's Choice-of-Law Analysis under Mazza.**

In its opening brief (Mot. at 19-24), Millennium demonstrated that (1) state consumer protection and breach of warranty laws differ in material, outcome determinative ways; (2) each state in which consumers purchased Millennium's products has a strong interest in applying its laws; and (3) under *Mazza*, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place," such that "variances in state law overwhelm common issues and preclude predominance for a single nationwide class."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012).  Plaintiffs, in opposition, do not attempt to contest this showing. Instead, plaintiffs' sole argument in response is that it is "premature" to

REPLY ISO MOTION TO DISMISS OR STRIKE FAC; 2:15-CV-01801-PSG-AJW

1   decide the issue.  (Opp. at 24-25.)[4]  However, plaintiffs do not identify a single fact

2   that could be developed that will alter the outcome of the Court's analysis.

3   Millennium acknowledges that this Court has previously declined to engage in a

4   choice-of-law analysis under *Mazza* at the pleading stage.  *In re 5-Hour Energy,*

5   2014 WL 5311272, at *18.  However, Millennium submits that recent decisions

6   indicate that nationwide class allegations can be dismissed or struck at the pleading

7   stage, and that the principle articulated in *Mazza* is instructive even when

8   addressing a Rule 12 motion.  *See, e.g.*, *Frenzel*, 2014 U.S. Dist. LEXIS 177880, at

9   *12; *Davison v. Kia Motors, Inc.*, No. SACV 15-00239-CJC(RNBx), Order

10  Granting Defendant Motion to Dismiss ("Order"), Dkt No. 27, at *4-8 (C.D. Cal.

11  June 29, 2015) (dismissing nationwide class allegations upon Rule 12 motion).[5]

12       For instance, just over a month ago, a court in the Central District granted a

13  motion to dismiss the nationwide class allegations of a putative class representative

14  attempting to assert UCL and CLRA claims on behalf of a nationwide class of

15  purchasers of allegedly defective Kia vehicles.  *Davison*, Order at *4-8.  In doing

16  so, the court noted that, although decided at the class certification stage, the

17  principle articulated in *Mazza* "applies generally and is instructive even when

18  addressing a motion to dismiss."  *Id.* at *4 (citing cases).

---

20  [4] Plaintiffs also object to Millennium's use of an appendix to set forth additional

21  examples of the material variations between state consumer protection laws.

22  (Opp. at 24-25.)  However, Millennium's motion to strike did not rely on the

23  appendix, which was provided for the Court's convenience, and set forth numerous

24  examples of state law variations in the body of text of the Motion.  (Mot. at 21-24.)

25  And, to the extent the Court is disinclined to consider Millennium's Appendix of

26  State Law Variations, Millennium respectfully requests that the Court consider the

27  numerous authorities cited in the Motion.  (*Id.*)

28  [5] The *Davison* Order is attached as Exhibit B to this Reply.

1        Millennium respectfully requests that the Court consider this recent

2    precedent and strike plaintiffs' nationwide class allegations, particularly where, as

3    here, plaintiffs have not specified in which state they purchased each accused

4    Millennium product.  *See supra* Section A.  Whether the Court engages in a choice-

5    of-law analysis now or at a later stage, plaintiffs cannot preclude Millennium from

6    making a showing that choice-of-law principles prohibit the certification of a

7    nationwide class by obfuscating the state in which they purchased each accused

8    product.  *Frenzel*, 2014 U.S. Dist. LEXIS 177880, at *15.

9    **II.**　　**CONCLUSION**

10       For the reasons stated above, Millennium respectfully seeks an order granting

11   its motion to dismiss or strike in full.

12

13       Dated:  August 7, 2015

               O'MELVENY & MYERS LLP

14

15

               By:     /s/ Scott M. Voelz
16
                           Scott M. Voelz
17
               Attorneys for Defendant
               Millennium Products, Inc.

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1

2

3

4

5

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

6

7  MICHAEL KOSTA AND STEVE BATES,
   individuals on their own behalf and on behalf

8  of all others similarly situated,

9          Plaintiffs,

10     vs.

11  DEL MONTE FOODS, INC.,

12

13         Defendant.

**Case No.: 12-CV-1722 YGR**

**ORDER DENYING PLAINTIFFS' THIRD MOTION FOR CLASS CERTIFICATION (DKT. NO. 174)**

14          Plaintiffs bring this putative class action alleging that the labels on certain Defendant Del

15  Monte Foods, Inc. ("Del Monte") food products, as well as Del Monte's advertising, do not

16  comply with the federal Food, Drug, and Cosmetics Act ("FDCA"), as adopted by the California

17  Sherman Law, Cal. Health & Safety Code section 109875, *et seq.* ("Sherman Law"). Based upon

18  those violations, Plaintiffs assert claims under several state and federal consumer protection

19  statutes: the California Unfair Competition Law, Bus. & Prof. Code section 17200 *et seq.*

20  ("UCL"); the California False Advertising Law, Cal. Bus. & Prof. Code section 17500 ("FAL");

21  the Consumers Legal Remedies Act, Cal. Civ. Code section 1750 *et seq.* ("CLRA"), as well as a

22  state law claim for restitution.[1]

23          Plaintiffs allege that Del Monte has intentionally misbranded its products in violation of

24  federal and California law. In the class certification motion, Plaintiffs claim that Del Monte's

25

26          [1] In its Order dated May 15, 2013, the Court granted in part and denied in part DelMonte's
27  motion to dismiss and strike portions of the First Amended Complaint ("FAC"). (Dkt. No. 92.)
    The Court thereafter consolidated the instant case with the related case, *Langille v. Del Monte*
28  *Corporation*, Case No. 13-cv-1839 YGR, and directed the filing of a Consolidated Complaint on
    June 11, 2013. (Dkt. No. 96.)

United States District Court
Northern District of California

canned tomato products, and their SunFresh and FruitNaturals fruit products, include unlawful and misleading claims in three general categories.  As to the tomato products, Plaintiffs seek certification for the products labels bearing : (1) antioxidant claims, which include a statement and symbol ("blue flag") indicating that the products  "contain antioxidants," despite failing to meet the minimal FDA nutritional requirements for that statement; and (2) a statement that the product is a "natural source" of lycopene, a nutrient for which there is no FDA established daily value; and (3) "no artificial flavors or preservatives" claims, where such products contain ingredients such as calcium chloride, citric acid, high fructose corn syrup, and carmine.  (Complaint at ¶¶ 116, 124, 125.)  For the fruit products, Plaintiffs seek certification of their claim that the products' refrigeration indicators—including packaging similar to fresh produce, placement in refrigerated cases, and label statements stating that products "must be refrigerated" and are "fresh"—were misleading.  Plaintiffs further claim that the product labels and packaging at issue are alike, regardless of where the product was bought and regardless of the particular flavor of the product.

Based on these allegations, and the evidence presented in connection with their motion, Plaintiffs move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, as follows:

> All persons in the United States who, from April 5, 2008, until the date of notice, purchased a Defendant's brand canned tomato product or a Defendant's FruitNaturals or SunFresh fruit product.[2]

Specifically, Plaintiffs move to certify a class under Rule 23(b)(2) and under Rule 23(b)(3).

# I.   BACKGROUND

## A.    Procedural Background

Plaintiffs filed their original complaint April 5, 2012.  When Del Monte moved to dismiss the original complaint, Plaintiffs filed a First Amended Complaint on July 6, 2012.  (Dkt. No. 23.)  The Court granted in part and denied in part Del Monte's motion to dismiss the FAC on May 15,

---

[2] The following persons are expressly excluded from the proposed class definition: (i) Defendant and its subsidiaries and affiliates; (ii) all persons who make a timely election to be excluded from the Class; (iii) governmental entities; and (iv) the Court to which this case is assigned and its staff.

United States District Court
Northern District of California

1  2013. (Dkt. No. 92.) Nearly one year later, on May 6, 2014, Plaintiffs filed their first motion for

2  class certification. (Dkt. No. 122.) Before the briefing on that motion was completed, Plaintiffs

3  filed a Motion for Leave to File Excess Pages for their Class Certification Reply Brief (Dkt. No.

4  124), in which they represented that significant discovery related to the class certification motion

5  had not been completed yet. In light of that representation, the motion for class certification was

6  deemed withdrawn and the Court set a new briefing schedule. The parties thereafter filed their

7  briefing on the second motion for class certification (Dkt. No. 128), as well as Defendant Del

8  Monte Foods Inc.'s motions to strike the declarations of Plaintiffs' experts, Oral Capps and Julie

9  Caswell, submitted in support of the second certification motion (Dkt. Nos. 132 and 133.)

10  The Court heard oral argument on the second class certification motion and the related

11  motions to strike on August 19, 2014, at which time Plaintiffs represented that they had agreed to

12  withdraw certain claims on behalf of the class. Subsequent to the hearing, the parties submitted,

13  and the Court approved, a stipulation narrowing the scope of the claims against Defendant. (Dkt.

14  No. 156.) The stipulation withdrawing the claims asserted by the putative class significantly

15  changed the scope of the class Plaintiffs sought to certify and rendered much of the evidence and

16  arguments in the second round of class certification briefing unhelpful, if not irrelevant, and leaving

17  significant gaps in the evidentiary record as to the remaining issues for class certification. Given

18  those changes, by its order issued September 4, 2014, the Court denied the second motion for class

19  certification without prejudice to refiling with evidence tailored the narrowed set of claims. (Dkt.

20  No. 159.) The motion presently before the Court is Plaintiffs' third attempt at class certification.

21  **B.    Evidentiary Issues In Connection With This Motion**

22  *1.    Plaintiffs' Motion to Strike Declaration of Liam Farrell*

23  In connection with this third motion for class certification, Plaintiffs moved to strike the

24  declaration of Liam Farrell filed in opposition to the motion. (Dkt. No. 182-13.) Plaintiffs argue

25  that Farrell's declaration is a sham declaration that contradicts his deposition testimony, and that

26  Del Monte should be estopped from relying on it. More specifically, Plaintiffs argue Farrell

27  testified, in his May 16, 2014 deposition, that the challenged label statements were on the products

28  at issue from 2008 to 2013, but then suddenly had an "epiphany" in the December 2014 declaration

3

United States District Court
Northern District of California

1   he submitted, declaring that there were variations as to whether those label statements appeared on

2   all products within that time frame.

3        The Court has reviewed the record and finds the factual chronology more complicated than

4   Plaintiffs indicate.  In May 2014, Farrell testified that, "to the best of [his] knowledge," the product

5   labels included the same statements for the entire time period.  (Dkt. No. 195-5, Farrell Depo. at

6   71-72, 73, 80-81.)  In his July 2014 declaration, submitted in opposition to Plaintiffs' second

7   motion for class certification, he stated that labels vary across product lines, within product lines,

8   and over time, and that certain tomato products did not have the antioxidant flag at all, such as

9   tomato sauce and the larger-sized cans of diced tomatoes.  (Dkt. No. 131-7, ¶¶ 4-6, 9.)  Both the

10  deposition and declaration were made at a point in the litigation when several hundreds of different

11  product labels were at issue.  In August 2014, at the hearing on the second class certification

12  motion, Plaintiffs abruptly disavowed many of their claims, significantly changing the matters at

13  issue.  At the hearing, the Court directed the parties to submit a stipulation clarifying what issues

14  remained for decision.  (Transcript of August 19, 2014 hearing at 61.)  The parties submitted a

15  stipulation in which Plaintiffs dismissed claims concerning certain products (Dkt. No. 154), but

16  shortly thereafter on September 2, 2014, Del Monte submitted a separate statement which charted

17  out the label variations across size and product type for the remaining tomato and fruit products.

18  (Dkt. No. 158.)

19       By order issued September 9, 2014, the Court denied the second class certification motion

20  and directed Plaintiffs to submit evidence directed to the narrowed scope of its claims in any future

21  class certification motion.  (Dkt. No. 159.)  In October 2014, Plaintiffs deposed another

22  representative of Del Monte about product labeling, Jackie Curtis.  Curtis testified to differences in

23  product labels depending on the product type, noting that third party packaging suppliers and

24  printers would have to confirm whether the different labels were actually used on products that

25  shipped.  (Dkt. No. 198-6, Curtis Depo., at 69, 76-78.)  Thus, Plaintiffs were aware of Del Monte's

26  position and evidence showing label variations, if not by July at least by September 2014.

27  Plaintiffs neither made a discovery motion nor sought to re-depose Farrell or anyone else regarding

28  the discrepancies between his May 2014 testimony and his July 2014 declaration, the statements by

4

1   Curtis, or the statements in Del Monte's September 2, 2014 filed with the Court. Fact discovery
2   closed on November 17, 2014.

3           Based on the foregoing, the Court concludes that Farrell's December 2014 declaration in
4   opposition to Plaintiffs' third motion for class certification was not a late-revealed "epiphany," but
5   was consistent with Del Monte's position and evidence presented well before the close of
6   discovery. The motion to strike the December 2014 Farrell Declaration is, therefore, **DENIED**.[3]

7   **II.     APPLICABLE STANDARDS**

8           A class action lawsuit is "an exception to the usual rule that litigation is conducted by and
9   on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–01
10  (1979). To depart from this general rule, "a class representative must be part of the class and
11  possess the same interest and suffer the same injury as the class members." *East Tex. Motor*
12  *Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (internal quotations and citation omitted).
13  The proponent of class treatment, usually plaintiff, bears the burden of demonstrating that class
14  certification is appropriate. *See In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,* 693
15  F.2d 847, 854 (9th Cir.1982), *abrogated on other grounds in Valentino v. Carter–Wallace, Inc.,* 97
16  F.3d 1227 (9th Cir.1996).

17          Federal Rule of Civil Procedure 23, which governs class certification, has two distinct sets
18  of requirements that plaintiffs must meet before the Court may certify a class. Plaintiffs must meet
19  all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b),
20  depending upon the nature of the class they seek to certify. *See also Shady Grove Orthopedic*
21  *Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 394 (2010) (setting forth requirements of Rule 23).
22  Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify

23  _____

24          [3] The Court notes that Del Monte previously moved to strike the declarations of Dr. Oral
    Capps and Dr. Julie Caswell when they were submitted in connection with Plaintiffs' second
25  motion for class certification. Plaintiffs have incorporated those same declarations in their third
    motion for class certification, but Del Monte did not renew or renotice those motions to strike.
26          Del Monte did file objections to a reply declaration of Dr. Capps and a newly submitted
    declaration of F. Edward Scarborough. (Dkt. No. 197.) The grounds for objection were that
27  Plaintiffs had offered the evidence therein for the first time on reply without sufficient opportunity
    to respond. As neither the Reply Capps declaration nor Scarborough's declaration is material to the
28  Court's decision herein, the objections are overruled as moot.

United States District Court
Northern District of California

a class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.) *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Although some inquiry into the substance of a case may be necessary to determine whether these requirements are satisfied, the court must not freely advance a decision on the merits to the class certification stage. The Supreme Court recently affirmed this position stating:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent —that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

In addition to the four requirements set forth in Rule 23(a), most courts have implied an additional threshold requirement: that the members of the class are readily ascertainable. *See Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("the party seeking certification must demonstrate that an identifiable and ascertainable class exists"); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672 (N.D. Cal. 2011) ("[w]hile Rule 23(a) is silent as to whether the class must be ascertainable, courts have held that the rule implies this requirement"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010) *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012). "While Rule 23(a) does not expressly require a class to be ascertainable, courts have read the rule to imply th[e] requirement…[that] its members can be ascertained by reference to objective criteria… [and] the description of the class is definite enough so that it is administratively feasible for the court to

6

ascertain whether an individual is a member." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. at 299 (internal citations omitted).

The Ninth Circuit has not yet reached the question of whether there is an ascertainability requirement in Rule 23. *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 (9th Cir. 2014) ("we need not and do not reach the question of whether the district court abused its discretion in denying certification based on the threshold ascertainability test"). However, it has reiterated that "class certification of UCL claims is available only to those class members who were actually exposed to the business practices at issue." *Id.* at 1068; *see also Pierce v. County of Orange,* 526 F.3d 1190, 1200 (9th Cir.2008) (district court did not abuse its discretion in decertifying a damages class because "Rule 23(b)(3) would not offer a superior method for fair and efficient adjudication in light of expected difficulties identifying class members"); *Martin v. Pac. Parking Sys. Inc.*, 583 F. App'x 803, 804 (9th Cir. 2014) *cert. denied,* 135 S. Ct. 962 (2015) (court did not abuse discretion in denying class certification for lack of ascertainability where plaintiff offered no plan for reliably identifying members of the class).

Several other Circuit Courts of Appeals have held that ascertainability is an implicit prerequisite to certifying a class which requires class members to be identifiable by objective, verifiable criteria "without extensive and individualized fact-finding or minitrials." *Carrera v. Bayer Corp.*, 727 F.3d 300, 303-04 (3d Cir. 2013) (quotation marks omitted); *see also Marcus v. BMW of North America, LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'"); *In re Deepwater Horizon*, 739 F.3d 790, 821 (5th Cir.) *cert. denied sub nom. BP Exploration & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S. Ct. 754 (2014) (in order to maintain a class action, the class must be adequately defined and clearly ascertainable); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 45 (2d Cir. 2006) *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) (class members must be ascertainable). The Court's reading of these authorities leads it to conclude that, as a condition of certifying a class, Plaintiffs must establish

7

ascertainability by demonstrating that class members can be identified readily by clear, objective criteria.[4]

Once the threshold requirements for certification are met, a plaintiff must establish that the class is appropriate for certification under one of the provisions in Rule 23(b). Here, Plaintiffs seek certification under Rules 23(b)(2) and 23(b)(3). Rule 23(b)(2) requires that a plaintiff to show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires a plaintiff to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III. DISCUSSION

### A. Nature of the Alleged Class Claims

The Court turns first to a general overview of the nature of the class claims and what Plaintiffs will need to prove to establish Del Monte's liability, as this informs the analysis of each of the Rule 23 elements. Plaintiffs allege claims under the UCL, FAL, CLRA, and common law restitution on the grounds that Del Monte has created misleading labeling and advertising for its products which fail to comply with objective FDA and Sherman Law standards. It is this

---

[4] While the Ninth Circuit has not opined on the point, there is a divergence of authority regarding whether and to what degree ascertainability is required for certification of a Rule 23(b)(2) injunctive relief class. *See* NEWBERG ON CLASS ACTIONS § 3:7 (5th ed.) (setting approaches of various circuits finding ascertainability applies, does not apply, or is relaxed for injunctive relief classes); *see also Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007) ("As a general matter, less precision is required of class definitions under Rule 23(b)(2) than under Rule 23(b)(3), where mandatory notice is required by due process."). This Court is in agreement with others that, even where certification is sought only for purposes of injunctive relief, a "class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment" in order to avoid "satellite litigation…over who was in the class in the first place." *Xavier*, 787 F. Supp. 2d at 1089; *cf. In re Yahoo Mail Litig.*, No. 13-CV-04980-LHK, 2015 WL 3523908, at *16 (N.D. Cal. May 26, 2015) *appeal filed* June 10, 2015, Ninth Circuit Ct. of Appeal Case No. 15-80101 ("the ascertainability requirement does not apply to Rule 23(b)(2) actions, [but t]his does not obviate the basic requirement that Plaintiffs provide a clear class definition under Rule 23(c)(1)(B).")

United States District Court Northern District of California

United States District Court
Northern District of California

misleading labeling and advertising that they allege caused them to purchase products or pay premiums they would not have otherwise paid.

The standard for these state law claims is the "reasonable consumer" test, which requires a plaintiff to show that a "reasonable consumer" is likely to be deceived by the business practice or advertising at issue. *See Williams v. Gerber Products,* 552 F.3d 934, 938 (9th Cir.2008); *see also Kasky v. Nike Inc.,* 27 Cal. 4th 939, 951 (2002) (deceptiveness under the UCL established if advertising is "actually misleading or…has a capacity, likelihood or tendency to deceive or confuse the public"). Questions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs. *See Benson v. Kwikset Corporation*, 152 Cal.App.4th 1254, 1274 (2007) (in UCL, CLRA, and FAL claims, courts apply the reasonable consumer standard and "must view the labeling from the perspective of those consumers for whom the [challenged] designation is important"). A "representation is 'material'…if a reasonable consumer would attach importance to it or if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (*quoting Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 333 (2011) and Restatement 2d Torts, section 538 (2)(b)).

Proof that statements were material to the plaintiff purchaser class, and that class members relied on those statements in making purchasing decisions, does not always require individualized evidence for each class member. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010), *as modified on denial of reh'g* (Feb. 8, 2010) (plaintiffs satisfied materiality requirement on a classwide basis where court "assume[d] that a reasonable person would not knowingly commit a criminal act" and therefore the legality of possessing the product was material); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (*quoting Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 976-66 (1997) ("'a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material… [a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in

determining his choice of action in the transaction in question'"). However, in all but the most unusual case,[5] plaintiffs must offer some means of proving materiality and reliance by a reasonable consumer on a classwide basis in order to certify a class. *Id.*; *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 133 (2009) (where plaintiff failed to offer "common evidence as to what consumers perceived or what they would find material" in false advertising claim, class could not be certified); *Faulk v. Sears Roebuck & Co.*, No. 11-CV-02159 YGR, 2013 WL 1703378, at *9 (N.D. Cal. Apr. 19, 2013) (*quoting Zinser,* 253 F.3d at 1189) (at class certification, a plaintiff must at least "point to common proof that would establish the materiality element of his own claim" rather than "rely merely on assurances of counsel that any problems with predominance or superiority can be overcome.").

## B.    Rule 23(a) Threshold Requirements

### 1.    *Numerosity and Adequacy*

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1). To determine adequacy of representation under Rule 23(a)(4), the Court must consider: "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

Del Monte concedes that numerosity of the class is established.[6] Likewise, no argument is raised by Del Monte to contest the adequacy of the class representatives or class counsel.

---

[5] The Court considers the *In re Steroid* decision to be that unusual case where a court could presume the alleged misrepresentation at issue—that sale of the over-the-counter steroid products was not illegal—was material to a showing of injury to purchasers based solely on that fact, without further evidence. *In re Steroid*, 181 Cal. App. 4th at 157; *see also Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 927 (2010) ("unlike in *Steroid Hormone,* the fact that the consumers did not learn of this information was not a basis to conclude Target was required to disgorge profits from the sales to every consumer, regardless whether the consumer was ever exposed to the alleged misrepresentation"); *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1131 (N.D. Cal. 2014) (rejecting plaintiffs' citation of *In re Steroid* as not requiring proof of reliance for class certification of mislabeling claims).

[6] DelMonte admits that the number of consumers who purchased the challenged products exceeds 10,000. (Exhibit 2 to Plaintiffs' Motion [Defendant's Responses to Requests for Admission Number 4].)

**2.      Typicality**

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  That is, the named plaintiffs must "suffer the same injury as the class members."  *Wal-Mart*, 131 S.Ct. at 2550-51.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (*quoting Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (internal quotation marks omitted).

Del Monte contends that Plaintiffs cannot establish typicality because they cannot show they have suffered the same injury as the class members, given that their deposition testimony repudiated key allegations of their complaint.  While Plaintiffs' FAC alleges that they read and relied on the challenged label statements, and "would likely not have purchased…had they known the products were misbranded," Del Monte argues that the deposition testimony of Kosta and Bates contradicts those allegations.  The Court reviews the cited testimony as to each of the three categories of claims.

**a.      Antioxidants**

Kosta could not recall specifically but believed he did see the statement on the label regarding antioxidants. (Kosta Depo. at 50, 64.)[7]  Kosta testified that he does "scan through the labels.  I don't read everything…I can't recall exactly, that moment when I was in the store, if I did" read the particular label statement.  (Kosta Depo. at 14.)  He testified that the phrase on the label "probably caused [him] to read more, to scan more."  (*Id.*)  He testified that in "the process of

---

[7]  Excerpts of the deposition of Michael Kosta can be found at Dkt. Nos. 174-5, 182-9, and 195-2.  Excerpts of the deposition of Steven Bates can be found at Dkt. Nos. 174-4, 182-10, and 195-3.  The "Kosta Depo." and "Bates Depo." citations herein are to the internal page numbers of those deposition transcripts.

United States District Court
Northern District of California

how I shop…I would imagine" that the label statements caused him to purchase the product. (Kosta Depo. at 50.)

Bates testified that he did look at the "blue box" with the antioxidant statement on the front of the label, but that he did not read, or could not recall reading, the antioxidant statement on the back of the label before he purchased the product. (Bates Depo. at 12, 28-29, 40.) He testified that he might or might not have purchased the product if it did not reference antioxidants on the label, depending on what other products said. (Bates Depo. at 40-41.)

### b. Artificial Flavors or Preservatives

Kosta testified that he generally looks to see if there are artificial flavors or preservatives present in products, and he scans the label for that information. (Kosta Depo. at 20-21.) He testified that he might not have purchased the product if he had known it contained artificial flavors or preservatives, depending on how other available products compared to DelMonte's. (Kosta Depo. at 40.) He testified that he was not sure if he read the statement "no artificial flavors or preservatives" on the diced tomato product before he purchased, but that he does "look to see if it has artificial flavors or preservatives on almost everything." (Kosta Depo. at 79.) Bates did not identify artificial flavor or preservative statements as a misleading element in his deposition. (Bates Depo. at 12.)

### c. Refrigeration

Kosta testified that he did not see the "must be refrigerated" statement on one FruitNaturals product before he purchased it, but was influenced to purchase it by the fact that it was in the refrigerator section. (Kosta Depo. at 146.) He testified that he did read the "must be refrigerated" statement on two other FruitNaturals products. (Kosta Depo. at 170-71.) Plaintiffs do not contend that Kosta purchased SunFresh products.

Bates testified that he did not notice a "must be refrigerated" label on a FruitNaturals product he purchased, but believed that it did require refrigeration because he "pulled it from a refrigerated section." (Bates Depo. at 124.) He testified that the combination of the word "naturals" on the front of the FruitNaturals product, along with the fact that it was located in the refrigerated section with produce, in a clear container, in "100% juice" indicated to him that it was

12

"fresh" and required refrigeration.  (Bates Depo. at 106-08.)  The SunFresh products that he
purchased were in the canned section.  (Bates Depo. at 208.)

        d.        Conclusions on Typicality

       The Court finds Plaintiffs have sufficiently established that the claims of Kosta and Bates
are typical of the class they seek to represent as to their antioxidant claims with respect to the
tomato products.  The evidence indicates a similar injury to the proposed class due to purchase of
the same or similar products.  Plaintiffs have also offered evidence sufficient to show that Kosta's
claims regarding the "no artificial flavors or preservatives" statement on Del Monte tomato
products is typical of the class he seeks to represent.  However, the evidence does not support a
finding that Bates has a "no artificial flavors or preservatives" claim with respect to the tomato
products, and thus his claims are not typical of the proposed class in this respect.

       With respect to the FruitNaturals products, Plaintiffs have also offered sufficient evidence to
conclude that Kosta and Bates have claims typical of other class members.  The evidence indicates
they suffered an alleged injury similar to the proposed class based upon their purchase of the same
or similar products.

       However, Plaintiffs have failed to offer evidence that Kosta and Bates have
refrigeration/fresh claims as respects the SunFresh product line.  Kosta offers no evidence to
support a SunFresh claim and Bates only testified to seeing SunFresh products in a non-refrigerated
shelf area.  Thus, neither Kosta nor Bates has a claim typical of the proposed class with respect to
the SunFresh products.  *See Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1019-20 (9th Cir.2011)
(upholding district court's holding that proposed class representative who did not see challenged
statement, and other who was not deceived by challenged statement, were not typical).

### 3.    *Ascertainability*

       To establish ascertainability for purposes of class certification, Plaintiffs must demonstrate
that: (*i*) members of the proposed class are readily identifiable by objective criteria, and (*ii*) it is
administratively feasible to determine whether a particular person is a member of the class.  *Xavier*,
787 F. Supp. 2d at 1089.  Plaintiffs contend that all Del Monte products bear the same unlawful
statements and that the class is readily ascertainable because it is all persons who purchased one of

13

the products.  The proffered class definition, "all persons who purchased a Defendant's brand canned tomato product or a Defendant's FruitNaturals or SunFresh fruit product," sets forth objective criteria for class membership.

Del Monte raises concerns that the class would not be ascertainable, despite the use of facially objective criteria.  Purchasers are unlikely to have retained receipts or other evidence of purchase and Del Monte has no records of such purchases.  Moreover, Del Monte contends that self-identification of class members would be fraught with errors because only certain products within the accused product lines actually had the allegedly misleading labeling and packaging.  Specifically, Del Monte points to the following discrepancies in the labeling and packaging of the products at issue:

- Only 27 of the 61 representative labels for tomato products at issue have an antioxidant "blue flag" on the front of the label.  (Farrell Dec. ¶ 8.)[8]  No tomato sauce products ever included the blue flag.  Only certain flavors and sizes of diced and stewed tomatoes ever included the flag.  Appearance of the flag on the flavors where it was used varied over the time of the class period, appearing in some years but not others.  The back-panel antioxidant statement appeared on all diced and stewed varieties, but not all sauce varieties.  Use of the flag as well as the back-panel statement was discontinued in 2013.

- Only 32 of the 61 tomato product labels included the accused artificial flavor high fructose corn syrup, the presence of which varies across product lines and flavors, as well as within the same flavor over time.  (Farrell Dec. ¶ 9.)  As for preservatives, none of the tomato sauce products contained accused preservative calcium chloride.

- Fifteen of the 25 representative FruitNaturals products, and 14 of the 23 SunFresh products are packaged in Mexico, are not shelf-stable, and actually do require refrigeration, making the refrigeration statements truthful.  Other fruit products changed their labels during the class period from "Must Be Refrigerated" to "Refrigerate for Quality."[9]

---

[8]  Tomato products come in different flavors and sizes.  For example, Defendant sells "Diced Tomatoes with Garlic and Onion" and "Diced Tomatoes with Mushroom and Garlic."  The labeling, including the allegedly misleading aspects of the labeling, varies by size and flavor.  (Farrell Dec. ¶¶ 7-10, Tables 1 and 2.)

[9]  Plaintiffs contend that this change to the label is "still *likely* unlawful," and is still a common issue.  (Reply at 4:24-25, emphasis supplied.)  This is not part of the allegations of the

United States District Court
Northern District of California

Thus, Del Monte argues that the process of determining who is a member of the class would require a potential member to pass a "memory test" to identify specifically which product, flavor, and label variation they purchased, and, for the fruit products, whether they purchased the products in a refrigerated or non-refrigerated section. Del Monte relies on decisions denying class certification on ascertainability grounds in *Bruton v. Gerber Products Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995 (N.D. Cal. June 23, 2014), *appeal filed* January 30, 2015, Ninth Circuit Ct. of Appeal Case No. 15-15174, and *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014), *appeal filed* July 15, 2014, Ninth Circuit Ct. of Appeal Case No. 14-16327. Because those cases are quite similar to the instant action, the Court examines them in some depth.

In *Bruton*, the plaintiffs sought to certify a class defined as persons who purchased Gerber baby food products labeled with certain alleged unlawful and deceptive nutrient content claims as well as allegedly misleading statements of "No Added Sugar" and/or "No Added Refined Sugar." *Bruton*, 2014 WL 2860995, at *2. In denying certification of both a Rule 23(b)(2) injunctive relief and 23(b)(3) damages class, the court in *Bruton* found that the class was not sufficiently ascertainable because consumers would be required to recall more than just whether they purchased a product from a particular line of Gerber baby food products. *Bruton*, 2014 WL 2860995 at *8. In addition, they would have to recall whether: (*i*) they purchased a qualifying flavor; (*ii*) the product was in a certain type of packaging; and (*iii*) the packaging included the challenged statements. *Id.* Thus the court concluded that "the number of products at issue in this case, the varieties included and not included in the class definition, the changes in product labeling throughout the class period, the varied and uncertain length of time it takes for products with new labels to appear on store shelves, and the fact that the same products were sold with and without the challenged label statements simultaneously make Plaintiff's proposed class identification method administratively unfeasible." *Id.* at *9. The court contrasted the variability in the proposed *Bruton* class with other

---

FAC. The Court declines to read new bases for liability into the class at this stage of the litigation, after discovery has closed and Plaintiffs are on their third attempt to certify a class.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    cases in which classes of purchasers had been certified based upon the fact that the products in the

2    class definition all contained the same statements for the entire class period.  *Id.*

3         In *Jones*, the district court likewise found that the class was not sufficiently ascertainable for

4    class certification under either Rule 23(b)(2) or 23(b)(3).  *Jones v. ConAgra Foods, Inc.*, No. C 12-

5    01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014).  Plaintiffs in *Jones* sought to certify

6    classes of purchasers of Hunt's tomato products, PAM cooking spray products, and Swiss Miss hot

7    cocoa products, alleging that their packaging contained deceptive and misleading information,

8    including statements that the tomato products were "100% Natural" and "Free of artificial

9    ingredients & preservatives" despite containing citric acid and calcium chloride.  *Id.* at 1.  The

10   evidence presented at class certification included product labels that changed over the course of the

11   class period, and some product varieties lacking the challenged statements in the first instance.  *Id.*

12   at 2-3.  The district court rejected certification, opining that "it is hard to imagine that [class

13   members] would be able to remember which particular Hunt's products they purchased from 2008

14   to the present, and whether those products bore the challenged label statements…[since] there were

15   'literally dozens of varieties with different can sizes, ingredients, and labeling over time' and 'some

16   Hunt's cans included the challenged language, while others included no such language at all.'"

17   *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *10 (N.D. Cal. June

18   13, 2014).

19        Like *Bruton* and *Jones*, the product labels and packaging at issue here do not fall into neatly

20   separate categories such that one can say with any confidence that the purchaser of an item in that

21   category was subject to the alleged violations.  The products vary in the truthfulness of the

22   packaging and labeling of certain FruitNaturals products.  The extent of that variability is

23   compounded over the course of the class period.  While the lack of proof of purchase may be a

24   factor, it is not dispositive.  Here, the Court weighs more heavily the variations in the products

25   included in the proposed class which make it much more difficult for a purchaser to recall which

26   particular product, with which packaging and labeling, they purchased.

27        Plaintiffs' class definition here covers purchasers of *any* product within the Del Monte

28   canned tomato, SunFresh fruit, and FruitNaturals fruit product lines, eliding issues of whether every

16

1    product in those lines, throughout the entire class period, contained the alleged false labeling and

2    packaging.  The Court cannot ignore the evidence of such variability here and its impact on

3    ascertainability.  Likewise, the Court declines Plaintiffs' suggestion (Reply at 5:13-15) to simply

4    narrow the class definition to account for the labeling discrepancies, since that would not solve the

5    problem of class members having to engage in a complicated memory test to establish class

6    membership.

7         Thus, Plaintiffs' failure to establish ascertainability weighs against class certification.[10]

8    ### 4.    *Common Questions of Law And Fact*

9         Rule 23(a)(2) requires the party seeking certification to show that "there are questions of

10   law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy this requirement, the

11   common question "must be of such a nature that it is capable of class-wide resolution – which

12   means that the determination of its truth or falsity will resolve an issue that is central to the validity

13   of each of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).

14   "[F]or purposes of Rule 23(a)(2), even a single common question will do."  *Id.* at 2556.

15        Plaintiffs contend that there are common questions as to: (1) whether the challenged label

16   statements are unlawful, unfair, deceptive, or misleading, and (2) the materiality of the challenged

17   label statements to the reasonable consumer.  They argue that a "common core" of fact binds the

18   entire class because all class members purchased one of Del Monte's tomato or fruit products

19   bearing the same unlawful statements or deceptive packaging.

20        The Court finds that Plaintiffs have failed to demonstrate common questions of law and fact

21   to support class certification.  With respect to the question of whether the challenged labels and

22

23        [10]  The Court notes that in food labeling cases in this district where certification of a Rule
24   23(b)(2) class was granted, district courts have required the class of purchasers to be sufficiently
     ascertainable.  *See Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 1652338,
25   at *2-3 (N.D. Cal. Apr. 24, 2014) *reconsideration denied,* No. C-12-02646-RMW, 2014 WL
     7204757 (N.D. Cal. Dec. 17, 2014) (class of purchasers of Defendants' white, green, and black teas
26   was sufficiently ascertainable for injunctive relief); *Brazil v. Dole Packaged Foods, LLC*, No. 12-
     CV-01831-LHK, 2014 WL 5794873, at *15 (N.D. Cal. Nov. 6, 2014) (decertifying damages class
27   due to issues of common proof, but leaving 23(b)(2) class intact because it remained ascertainable);
     *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 542 (N.D. Cal. 2012) (granting class
28   certification for injunctive relief class after determining class was sufficiently ascertainable).

United States District Court
Northern District of California

packaging are unlawful, unfair, deceptive, or misleading, the variations are so great that at least half the challenged products would not evidence the violations alleged, either because they did not appear on the products or because the refrigeration requirements were truthful. For the same reasons discussed above, purchase of one of the products alone would not equate to membership in a class of persons to whom Del Monte is liable. Thus, as the class is presently defined, there is "no cohesion among the members because they were exposed to quite disparate information." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) (variations in tool rental agreements "over time and among the different Home Depot locations" raised individual issues).

Leaving aside the variations on the labeling and packaging in the product lines included in the class definition, Plaintiffs have also failed to offer evidence that the materiality of the alleged unlawful, deceptive, or misleading statements could be shown on a classwide basis. While materiality and reliance for purposes of UCL, FAL and CRLA claims can be subject to common proof on a classwide basis under some circumstances, Plaintiffs here have offered no valid means by which such classwide proof would be made.

Plaintiffs rely on the declaration of Dr. Julie Caswell, evidence they offered in connection with their prior motion for class certification filed June 2, 2014. (Dkt. No. 128-2, Caswell Dec.) The bulk of Dr. Caswell's declaration consists of broad statements about why labels generally matter to consumers of food products. (*See* Caswell Dec. ¶¶ 6-24.) Paragraph 25 of the declaration generally summarizes the allegations of Plaintiffs' FAC as they stood prior to their narrowing of the issues for class certification. It states:

> 25. I have been asked to review the Consolidated Complaint in *Kosta v. Del Monte Corporation* to focus on the following labeling issues which are the subject of the Plaintiff's Motion for Class Certification:
> A. Del Monte's use of the labeling statement "Natural Source of Antioxidants" with a check mark by the word "Lycopene" on its tomato products;
> B. Del Monte's use of the labeling statement "No artificial ingredients, additives, and preservatives" on its fruit and vegetable products;
> C. Del Monte's use of the labeling statement "Natural" on its fruit and vegetable products;
> D. Del Monte's use of the labeling statement "Fresh" on its fruit and vegetable products; and

United States District Court
Northern District of California

E. Del Monte's use of the labeling statement "No Sugar Added" on its fruit products.

(*Id.* at ¶ 25.)  Following this, the only opinion Dr. Caswell offers in her declaration that is at all specific to the facts of this case is:

> In my experience with labeling statements and consumer choice, it is my opinion that the statements listed in Paragraph 25 would be material to a reasonable consumer.  The claims are material because reasonable consumers would rely on them to identify products that have particular nutrition, value/function, and process attributes and in comparison shopping between food products.

(*Id.* at ¶ 27.)  Dr. Caswell does not state that she reviewed any particular labels at issue, that she surveyed any consumers who purchased products with these labels, or even that the particular attributes challenged by Plaintiffs (*i.e.*, the blue antioxidant flag, the "must be refrigerated" statement, or the nature of the packaging and refrigerator placement) would have been material to consumers.  Indeed, the declaration offered by Dr. Caswell here appears to be identical to the declaration she has offered in support of other food labeling cases brought by Plaintiffs.  *Cf. Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *15-16 (N.D. Cal. June 13, 2014) (rejecting nearly identical declaration by Dr. Caswell because it "does not demonstrate that [the challenged labeling statement] is necessarily 'material to reasonable consumers'"); *see also Major v. Ocean Spray Cranberries*, CAND Case No. 12-cv-3067, Dkt. No. 23-7 (Declaration of Julie Caswell) (nearly identical declaration); *Bruton v. Gerber Products Co.,* CAND Case No. 12-cv-2412, Dkt. No. 82-5 (Declaration of Julie Caswell) (nearly identical declaration).  A fill-in-the-blanks declaration from an expert, without any real consideration of the specific product attributes at issue here, is not sufficient to establish that the materiality of the label statements here is a common question.

Thus, Plaintiffs offer no method of classwide proof to show that a "reasonable consumer" would find the challenged statements deceptive and material to their purchasing decision.  Plaintiffs' argument that Del Monte would not have changed the labels if the changes were not material to consumers begs the question.  Without evidence to prove materiality on a classwide basis, no common question exists.

Finally, the Court is not persuaded by Plaintiffs' argument that their claim under the UCL's unlawful prong, based on violation of California's Sherman Law, Cal. Health & Safety Code section 110760, is subject to classwide proof without the need to show material or reliance. As the California Supreme Court held in *Kwikset*, with respect to similar statutory violations, the question of consumer deception still requires a showing of reliance. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327, 246 P.3d 877, 888 (2011) (requiring proof of reliance where "statutory provisions simply codify prohibitions against certain specific types of misrepresentations…[t]he theory of the case is that Kwikset engaged in misrepresentations and deceived consumers"); *see also Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 WL 6169503, at *3 (N.D. Cal. Nov. 25, 2013) (following *Kwikset* on this point).

In sum, Plaintiffs have failed to demonstrate, on the record before the Court, that there are common issues of fact or law for the class at issue that would be capable of determination "in one stroke." Lack of commonality also weighs against class certification.

## IV. CONCLUSION

Based upon the foregoing, Plaintiffs' Motion for Class Certification is **DENIED**. As stated herein, the Court concludes that Plaintiffs have not met their burden to put forth sufficient evidence to satisfy each of the threshold requirements for class certification in Rule 23(a). Of the requirements (numerosity, common questions of law or fact, typicality, and adequacy of representation, plus some measure of ascertainability), only the factors relative to numerosity and adequacy, and some amount of typicality, are fully met here. Plaintiffs have failed to satisfy the other elements.

Because the Court finds that the threshold requirements of Rule 23(a) are not met, the Court does not proceed to considering whether a class could be certified under Rule 23(b)(2) or 23(b)(3).

This terminates Docket No. 174.

**IT IS SO ORDERED**.

Date: July 30, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

# Exhibit B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| COLLEEN DAVISON, individually and on behalf of all others similarly situated, | Case No.: SACV 15-00239-CJC(RNBx) |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| KIA MOTORS AMERICA, INC., | |
| Defendant. | |

## I. INTRODUCTION & BACKGROUND

Plaintiff Colleen Davison ("Plaintiff"), on behalf of herself and all others similarly situated, brings this consumer protection class action against Defendant Kia Motors America, Inc. ("Kia"). According to the First Amended Complaint ("FAC"), Kia, a California company, sells automobiles through Kia-authorized dealers in the United

Exhibit B - Page 33

States.  (Dkt. No. 15 [FAC] ¶ 7.)  Plaintiff is a Washington resident who bought a 2003 Kia Optima ("Optima") from a Kia dealership in 2003.  (*Id.* ¶¶ 3, 7.)  Around June 2013, Plaintiff began experiencing difficulty with the door-locking system for the front doors of her Optima.  (*Id.* ¶ 21.)  The FAC alleges that when Plaintiff would try to use her remote key device to open the doors, the doors would lock, requiring manual unlocking.  (*Id.* ¶ 21.)  Plaintiff further alleges that due to the defect, she was unable to unlock certain doors from inside her vehicle and, on several occasions, Plaintiff had to exit using the rear passenger doors.  (*Id.*)  Over time, Plaintiff alleges that unlocking the doors on her Optima became increasingly more difficult and by September 2013, Plaintiff was unable to unlock her front doors by any method.  (*Id.*)  Plaintiff contends that the Optima's door locking system poses "an unreasonable safety risk during normal driving operation, preventing vehicle egress if the car is involved in an accident or other event that requires quick exit from the motor vehicle."  (*Id.* ¶ 1.)

Plaintiff asserts that Kia knew about and should have disclosed the potential door-locking defects when Plaintiff purchased her Optima in 2003.  Plaintiff further asserts that Kia should have recalled and repaired the locks, offered a replacement, or reimbursed its customers who paid for repairs.  (*Id.* ¶ 27.)  Based on these allegations, Plaintiff brings this action on behalf of herself and all owners of Kia Optima automobiles, model years 2001–2006, within the United States.  (*Id.* ¶ 42.)  Plaintiff asserts two causes of action, alleging that Kia violated the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*  (*See* FAC.)  Before the Court is Kia's motion to dismiss or, in the alternative, to strike portions of the FAC.[1]  (Dkt. No. 19 ["Def.'s Mot."].)  For the following reasons, Kia's motion to dismiss is GRANTED.[2]

---

[1]  Kia's alternative motion seeks to strike all of Plaintiff's nationwide class claims under the UCL and CLRA, in addition to Plaintiff's request for restitution and injunctive relief.  (Def.'s Mot. at 19–24.)

Exhibit B - Page 34

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  In considering whether to dismiss a case for failure to state a claim, the issue before the court is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the district court should grant the plaintiff leave to amend if the claim can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), the district court need not grant leave to amend if amendment would be futile, *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (finding that amendment would be futile where plaintiff was granted leave to amend once and the amended complaint contained the same defects as the prior complaint).

//

//

---

Kia's alternative motion with regard to the nationwide class claims, though stylized as a motion to strike, seeks to essentially dismiss these claims.  The Court therefore treats this portion of Kia's motion to strike as a motion to dismiss.

[2]  Consequently, Kia's alternative motion to strike Plaintiff's request for restitution and injunctive relief is DENIED AS MOOT.

# III. ANALYSIS

## A.     Nationwide Class Claims

Kia argues that both of Plaintiff's nationwide class claims under the UCL and CLRA should be dismissed pursuant to *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  When a federal court is sitting in diversity, it "must look to the forum state's choice of law rules to determine the controlling substantive law."  *Mazza*, 666 F.3d at 594.  California law may only be used on a class-wide basis if "the interests of other states are not found to outweigh California's interest in having its law applied." *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001).  To determine whether those interests outweigh California's interest, a court must apply a three-step government interest test in which (1) "the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different"; (2) "if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists"; and (3) "if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied."  *Mazza*, 666 F.3d at 590 (internal citation omitted).

While *Mazza* was decided at the class certification stage, "the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss."[3]

---

[3]  Contrary to Plaintiff's contentions, many courts have decided against deferring the choice of law decision until discovery or class certification where, as here, the material differences are sufficiently obvious from the pleadings.

*Frezza v. Google Inc.*, No. 12-cv-00237-RMW, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013); *see also Frenzel v. AliphCom,* --- F. Supp. 3d --- , No. 14-cv-03587-WHO, 2014 WL 7387150, at *5 (N.D. Cal. Dec. 29, 2014). Applying California's choice-of-law principles to the facts of this case, the Court finds that Plaintiff's UCL and CLRA claims cannot be brought on behalf of a nationwide class.

### 1. Conflict of Laws

Kia argues that California's consumer protection statutes, such as the UCL and CLRA, materially differ from the consumer protection laws in other states. A conflict of law problem arises only if the differences in state law are material. *Mazza*, 666 F.3d at 590–91. Courts in this circuit, in assessing the propriety of nationwide class actions, have held that California's consumer protection statutes are materially different from those in other states. *See, e.g.*, *Mazza,* 666 F.3d at 591; *Frenzel*, 2014 WL 7387150, at *4; *Frezza*, 2013 WL 1736788, at *6; *Gianino v. Alacer Corp.,* 846 F. Supp. 2d 1096 (C.D. Cal. 2012); *Waller v. Hewlett-Packard Co.*, No. 11cv0454–LAB, 2012 WL 1987397, at *1 (S.D. Cal. June 4, 2012); *In re Hitachi Television Optical Block Cases*, No. 08cv1746, 2011 WL 9403, at *6 (S.D. Cal. Jan. 3, 2011) ("[T]here are material conflicts between California's consumer protection laws and the consumer protection laws of the other forty-nine states."). For example, the California laws at issue here have no scienter requirement, while many other states' consumer protection statutes require scienter. *Mazza*, 666 F.3d at 591; *Gianino*, 846 F. Supp. 2d at 1100–01. Some states, like California, include a reliance requirement in their consumer protection laws, while others do not. *Mazza*, 666 F.3d at 591; *Gianino*, 846 F. Supp. 2d at 1100–01. Furthermore, the statutes of limitations for consumer protection laws vary among the states from one to ten years. *Gianino*, 846 F. Supp. 2d at 1100–01. In addition, there are material variations in the remedies available under states' consumer protection laws. *Id.* (identifying differences with regard to the available remedies in various states). In view

of such differences, the Ninth Circuit has explained that, under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza*, 666 F.3d at 594. These differences in consumer protection law among states are not trivial because they involve essential requirements to establish a claim, types of relief and remedies available to a plaintiff, and other dispositive issues. Because the conflicts in the laws of the states are material, the Court moves to the test's second step.

## 2. Interest of Foreign Jurisdictions

The second step of the *Mazza* analysis also favors dismissal of Plaintiff's nationwide consumer protection claims. "[E]very state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 591–92 (internal citation omitted). In fact, California law recognizes that "a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders." *Id.* It is the principle of federalism that permits each state to carefully balance its duty to protect its consumers from injuries caused by out-of-state-business with its duty to shield those businesses from what the state may consider excessive regulation or litigation. *Id.* ("Each state has an interest in setting the appropriate level of liability for companies conducting business within its territory."). This case clearly implicates each state's interest, as the consumer protection and fraud law of every state is important. Plaintiff's nationwide class presumably consists of members from 50 states. These states obviously have an interest in having their own laws applied to the consumer transactions that took place within their borders.

//
//
//

### 3. Which State Interest Is Most Impaired

The final step of California's governmental interest test is designed to accommodate conflicting state policies. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97 (2010). This step is not intended to weigh the conflicting state interests to determine which conflicting state law manifests the "better" or "worthier" social policy. *Mazza*, 666 F.3d at 593. But the Court must recognize the importance of federalism and every state's right to protect its consumers and promote those businesses within its borders. *Id.* California has a significant interest here in applying its laws to the consumers' transactions that took place within its borders. In addition, California has an interest in regulating Kia as Kia's corporate office is located in California. However, by virtue of bringing a nationwide class action, Plaintiff's claim encompasses class members who reside and have purchased their vehicles outside of California. California's interest in applying its law with respect to those members is much more attenuated. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) ("While protecting local investors is plainly a legitimate state objective, the State has no legitimate interest in protecting nonresident shareholders."); *McCann*, 48 Cal. 4th at 94 n.12 (finding that California considers the geographic location of the omission or where the misrepresentations were communicated to the consumer as the place of the wrong).

Here, Plaintiff, as the class representative, does not allege that she purchased her Optima or was wronged in California. *See Mazza*, 666 F.3d at 593–94 ("[T]he last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles—took place in the various foreign states, not California."). Plaintiff's home state of Washington and other states have a compelling interest in protecting their consumers from in-state injuries caused by a California corporation doing business within their borders and in delineating the scope of recovery for the consumers under their own laws. Therefore, the

Exhibit B - Page 39

Court concludes that every state would be impaired in its ability to protect the consumers within its borders if California law were applied to all claims of the nationwide class. Under the government interest test, each putative class member's claims here must be governed by and decided under the law of the state in which the injury took place.  The Court therefore DISMISSES WITH PREJUDICE Plaintiff's UCL and CLRA nationwide class claims.

## B.    Individual Claims

Plaintiff's individual claims under the UCL and CLRA are DISMISSED WITH LEAVE TO AMEND.  Plaintiff's fraud-based claims under these statutes are deficient because the claims do not allege facts demonstrating that (1) Plaintiff reviewed any of Kia's advertisements or promotional materials that might have contained a disclosure of the alleged door-locking defect, *see Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919–20 (C.D. Cal. 2010) (dismissing the plaintiff's UCL and CLRA claims because his complaint was devoid of any allegations that he would have plausibly been aware of the car's defect prior to purchase had the defendant publicized the information), and (2) Kia had prior knowledge of the alleged defect, *see Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008) ("Random anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants.").

Plaintiff's remaining claims under the UCL also fail.  Her claim under the "unlawful" prong fails as it is premised on her deficient claim for fraud under the CLRA. Plaintiff's claim under the "unfair" prong of the UCL also fails, as Plaintiff does not sufficiently allege how her injury of repairing her door locks was substantial years after her warranty had lapsed.  *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006) (finding that the cost of repairing a defective automobile part after

the warranty expires cannot be a substantial injury because the consumer has no reasonable expectation that the product will function precisely as warranted); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017,1026–27 (9th Cir. 2008) (citing *Daugherty*, 144 Cal. App. 4th at 839).

**IV. CONCLUSION**

      Accordingly, Kia's motion to dismiss is GRANTED.  Plaintiff's nationwide class claims under the UCL and CLRA are DISMISSED WITH PREJUDICE.  Plaintiff's individual claims under the UCL and CLRA are DISMISSED WITH LEAVE TO AMEND.   Plaintiff shall have twenty-one (21) days to file an amended complaint consistent with this Order.

DATED:     June 29, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

Exhibit B - Page 41