1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
   apersinger@bursor.com
   ykrivoshey@bursor.com

2

3

4

5

6

7

8

*Attorneys for Plaintiffs*

9

10

**UNITED STATES DISTRICT COURT**

11

**CENTRAL DISTRICT OF CALIFORNIA**

12

13

14

15

16

17

18

19

20

JONATHAN RETTA, KIRSTEN
SCHOFIELD, and JESSICA MANIRE
on Behalf of Themselves and all Others
Similarly Situated,

     Plaintiffs,

  v.

MILLENNIUM PRODUCTS, INC., and
WHOLE FOODS MARKET, INC.,

     Defendants.

Case No.  2:15-cv-01801-PSG-AJW

**FIFTH AMENDED CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

21

22

23

24

25

26

27

28

1        Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire ("Plaintiffs")

2   bring this action on behalf of themselves and all others similarly situated against

3   Defendant Millennium Products, Inc. ("Millennium") and Defendant Whole Foods

4   Market, Inc. (collectively, "Defendants").  Plaintiffs make the following allegations

5   pursuant to the investigation of their counsel and based upon information and belief,

6   except as to the allegations specifically pertaining to themselves, which are based on

7   personal knowledge.

8                    **INTRODUCTION**

9       1.     Millennium Products, Inc. has passed off millions of bottles of its wildly

10   successful Enlightened Kombucha beverages as non-alcoholic, when, in fact, the

11   beverages contain two to seven times the legal limit for non-alcoholic beverages.

12   Having been caught selling alcoholic kombucha beverages to unsuspecting

13   customers in 2006 and 2010, Millennium decided to market and distribute an

14   alcoholic version of its kombucha products (the "Classic" kombucha line) and a

15   "non-alcoholic" version (the "Enlightened" line), knowing that the non-alcoholic line

16   has a much greater market appeal and could be sold in far more retail locations.  But

17   the purported distinction between the "Classic" and "Enlightened" lines is a sham

18   designed to confuse the public and government regulators, as both lines of products

19   contain alcohol levels far surpassing the legal limit for non-alcoholic beverages.

20       2.     Millennium's marketing campaign also takes advantage of high

21   consumer demand for antioxidants by touting the antioxidant content in its

22   kombucha beverages in precisely the manner the Food and Drug Administration

23   ("FDA") sought to prohibit by establishing the antioxidant labeling requirements set

24   forth in 21 C.F.R. § 101.54(g).  Millennium has plastered misleading antioxidant

25   messaging on every side of its GT's Enlightened Kombucha and Enlightened

26

27

28   FIFTH AMENDED CLASS ACTION COMPLAINT                                    1
CASE NO. 2:15-CV-01801-PSG-AJW

Synergy (collectively, "the Enlightened line" or "Enlightened Kombucha"[1]) beverage labels. The simple truth is, however, that Enlightened Kombucha does not have even a single nutrient that the FDA recognizes and approves of for labeling statements using the term "antioxidant." Because the antioxidant statements on Enlightened Kombucha's labels are unauthorized and misleading nutrient content claims proscribed by the FDA, Enlightened Kombucha is misbranded and improperly labeled in violation of the Food, Drug, and Cosmetic Act, and corresponding state laws as described herein. Accordingly, Millennium has sold misbranded products using misleading advertising to millions of consumers, who relied on Millennium's advertising and were injured as a result.

3.      Further, Millennium greatly understates the sugar content of GT's Kombucha Beverages on the products' labels, making consumers believe the beverages are healthier than they really are. While the labels of GT's Kombucha Beverages represent that the products contain only 2 to 3 grams of sugar, a rigorous study undertaken by a distinguished independent laboratory, Covance Laboratories Inc., found that GT's Kombucha Beverages in fact contain almost 8 grams of sugar.[2] Indeed, the undeclared high sugar content of GT's Kombucha Beverages contributes to the continued fermentation of the beverages after bottling. As discussed herein, such continued fermentation causes the Enlightened Kombucha line to cross the .5 percent alcohol by volume threshold set for non-alcoholic beverages.

4.      Plaintiffs Retta, Manire, and Schofield purchased numerous bottles of GT's Kombucha Beverages based on Defendants' misleading advertising and labeling of the products.

---

[1] "Enlightened Kombucha" refers to every flavor of Millennium's GT's Enlightened Kombucha and Enlightened Synergy lines, as described herein. "Classic Kombucha" refers to every flavor of Millennium's GT's Classic Kombucha and Classic Synergy lines, as described herein. Collectively, "Classic Kombucha" and "Enlightened Kombucha" are referred to herein as "GT's Kombucha Beverages."
[2] Sugar amounts are represented herein as grams "per serving." GT's Kombucha Beverages contain two servings per bottle.

5.     Plaintiffs seek relief in this action individually, and on behalf of all purchasers of GT's Kombucha Beverages, for Defendants' violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq*., Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq*., and New York's Deceptive and Unfair Trade Practices Act, New York General Business Law § 349 ("NYGBL"), for breach of express and implied warranties, negligent misrepresentation, fraud, and unjust enrichment.

## PARTIES

6.     Plaintiff Jonathan Retta is a citizen of Virginia, residing in Annandale. Within the past three years, Mr. Retta purchased GT's Enlightened Kombucha: Multi-Green and Enlightened Synergy: Mystic Mango from Whole Foods, in Washington, D.C. and New York.  Mr. Retta purchased GT's Enlightened Kombucha: Multi-Green and Enlightened Synergy: Mystic Mango  relying on statements on the bottles' labels, including the following statements that characterize the level of antioxidants in the beverages:

- "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out."

Mr. Retta would not have purchased GT's Enlightened Kombucha: Multi-Green and Enlightened Synergy: Mystic Mango , or would have paid significantly less for the products, had he known that these statements were unauthorized, and that Millennium misbranded the products and mischaracterized the level, amount, and nature of the antioxidants and sugar in the bottles.  Further, Mr. Retta purchased the products with the belief that the products were non-alcoholic.  The labels of the products Mr. Retta purchased did not bear a government warning concerning the

consumption of alcoholic beverages, or any other warning concerning the alcoholic content of the products, and Mr. Retta did not have to show any identification of his age in order to purchase the products.  Mr. Retta would not have purchased the products had he known that they contained significant levels of alcohol or were considered alcoholic beverages.  Mr. Retta suffered injury in fact and lost money as a result of Millennium's deceptive, misleading, unfair and fraudulent practices described herein.  Further, should Mr. Retta encounter any Enlightened Kombucha in the future, he could not rely on the truthfulness of the labels' statements characterizing the nature and level of antioxidants and sugar in the beverages, absent corrective advertising or the addition of antioxidant nutrients with established RDIs to the beverages and the removal of excess sugar.  In addition, should Mr. Retta encounter any Enlightened Kombucha products in the future, he could not rely on the labels' statement that the products only contain a "trace amount of alcohol." However, Mr. Retta would still be willing to purchase the current formulations of Enlightened Kombucha, absent the price premium, so long as Millennium engages in corrective advertising.

7.     Plaintiff Kirsten Schofield is a citizen of Kentucky, residing in Louisville.  Within the past three years, Ms. Schofield purchased GT's Enlightened and Classic Kombucha: Original and Gingerade, and Enlightened Synergy: Raspberry Chia, from Kroger, Whole Foods, and Earth Fare, in Kentucky, South Carolina, and Virginia.  Ms. Schofield purchased GT's Enlightened Kombucha: Original and Gingerade, and Enlightened Synergy: Raspberry Chia beverages relying on statements on the bottles' labels, including the following statements that characterize the level of antioxidants in the beverages:

- "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique

1    blend of proprietary probiotics and powerful antioxidants, each bottle is

2    designed to nourish your body from inside out."

3    • "Often called 'runner's food', chia is a nutrient-rich superfood that

4    provides sustained energy for your body.  Packed with more than 8

5    times the omega-3s found in salmon, this small seed has big nutritional

6    value.  With more antioxidants than blueberries and more fiber than

7    oatmeal, see for yourself how chia brings new life to our GT's

8    Kombucha."

9    Ms. Schofield would not have purchased GT's Kombucha Beverages, or would have

10   paid significantly less for the products, had she known that these statements were

11   unauthorized, and that Millennium misbranded the products and mischaracterized the

12   level, amount, and nature of the antioxidants and sugar in the bottles.  Further, Ms.

13   Schofield purchased the Enlightened Kombucha products with the belief that the

14   products were non-alcoholic.  The labels of the Enlightened Kombucha products Ms.

15   Schofield purchased did not bear a government warning concerning the consumption

16   of alcoholic beverages, or any other warning concerning the alcoholic content of the

17   products, and Ms. Schofield did not have to show any identification of her age in

18   order to purchase the Enlightened Kombucha products.  Ms. Schofield would not

19   have purchased the Enlightened Kombucha products had she known that they

20   contained significant levels of alcohol or were considered alcoholic beverages.  Ms.

21   Schofield suffered injury in fact and lost money as a result of Millennium's

22   deceptive, misleading, unfair and fraudulent practices described herein.  Further,

23   should Ms. Schofield encounter any GT's Kombucha Beverages in the future, she

24   could not rely on the truthfulness of the labels' statements characterizing the nature

25   and level of antioxidants and sugar in the beverages, absent corrective advertising or

26   the addition of antioxidant nutrients with established RDIs to the beverages and the

27   removal of excess sugar.  In addition, should Ms. Schofield encounter any

28

1    Enlightened Kombucha products in the future, she could not rely on the labels'
2    statement that the products only contain a "trace amount of alcohol."  However, Ms.
3    Schofield would still be willing to purchase the current formulations of GT's
4    Kombucha Beverages, absent the price premium, so long as Millennium engages in
5    corrective advertising.

6         8.    Plaintiff Jessica Manire is a citizen of Colorado, residing in Denver.
7    Within the past three years, Ms. Manire purchased GT's Enlightened Kombucha:
8    Botanic No. 3 and Botanic No. 9, and Enlightened Synergy: Trilogy, Gingerberry,
9    Mystic Mango, and Guava Goddess, from Whole Foods in California, Texas, and
10   New York, and from Vitamin Cottage in Colorado.  Ms. Manire purchased GT's
11   Enlightened Kombucha: Botanic No. 3 and Botanic No. 9, and Enlightened Synergy:
12   Trilogy, Gingerberry, Mystic Mango, and Guava Goddess relying on statements on
13   the bottles' labels, including the following statements that characterize the level of
14   antioxidants in the Beverages:

15        •    "It has a lighter and smoother personality than our original formula
16             with the same high nutritional value that you expect from us.  With a
17             unique blend of proprietary probiotics and powerful antioxidants, each
18             bottle is designed to nourish your body from inside out."

19   Ms. Manire would not have purchased GT's Enlightened Kombucha: Botanic No. 3
20   and Botanic No. 9, and Enlightened Synergy: Trilogy, Gingerberry, Mystic Mango,
21   and Guava Goddess, or would have paid significantly less for the products, had she
22   known that these statements were unauthorized, and that Millennium misbranded the
23   products and mischaracterized the level, amount, and nature of the antioxidants and
24   sugar in the bottles.  Further, Ms. Manire purchased the products with the belief that
25   the products were non-alcoholic.  The labels of the products Ms. Manire purchased
26   did not bear a government warning concerning the consumption of alcoholic
27   beverages, or any other warning concerning the alcoholic content of the products,
28

and Ms. Manire did not have to show any identification of her age in order to purchase the products. Ms. Manire would not have purchased the products had she known that they contained significant levels of alcohol or were considered alcoholic beverages. Ms. Manire suffered injury in fact and lost money as a result of Millennium's deceptive, misleading, unfair and fraudulent practices described herein. Further, should Ms. Manire encounter any Enlightened Kombucha in the future, she could not rely on the truthfulness of the labels' statements characterizing the nature and level of antioxidants and sugar in the beverages, absent corrective advertising or the addition of antioxidant nutrients with established RDIs to the beverages and the removal of excess sugar. In addition, should Ms. Manire encounter any Enlightened Kombucha products in the future, she could not rely on the labels' statement that the products only contain a "trace amount of alcohol." However, Ms. Manire would still be willing to purchase the current formulations of Enlightened Kombucha, absent the price premium, so long as Millennium engages in corrective advertising.

9. Defendant Millennium Products, Inc. is a California corporation located at 4646 Hampton St., Vernon, California 90058. Millennium manufactures, advertises, sells, distributes, and markets GT's Kombucha Beverages as alleged herein nationwide, including in California and New York. Millennium's misleading marketing, advertising and product information concerning the character and level of antioxidants and sugar in GT's Kombucha Beverages was conceived, reviewed, approved, and otherwise controlled from Millennium's California headquarters. Millennium's misleading marketing concerning the antioxidant and sugar content of GT's Kombucha Beverages was coordinated at, emanated from, and was developed at its California headquarters. Further, Millennium's misleading marketing, advertising and labeling concerning the alcohol content of Enlightened Kombucha was conceived, reviewed, approved, and otherwise controlled from Millennium's

California headquarters.  Millennium's misleading marketing and labeling concerning the alcohol content of Enlightened Kombucha was coordinated at, emanated from, and was developed at its California headquarters.  All critical decisions regarding the misleading antioxidant, sugar, and alcohol marketing of GT's Kombucha Beverages were made in California.  Further, Millennium's website instructs that customer correspondence be directed to a California address.

10.    Defendant Whole Foods Market, Inc. is a Texas corporation and is headquartered in Austin, Texas.  Defendant Whole Foods Market, Inc. sells, distributes, and advertises GT's Kombucha Beverages as alleged herein nationwide, including in California and New York.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from the states of Defendants.  Defendants have sold hundreds of thousands, if not millions, of bottles of GT's Kombucha Beverages.

12.    This Court has general jurisdiction over Millennium because it is headquartered in California.  Further, the Court has general jurisdiction over all Defendants because Defendants conduct substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged mislabeling, misbranding, and marketing practices have been disseminated and committed in this District and because Millennium is headquartered in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

**Defendants' "Non-Alcoholic" Kombucha Beverages Are Greater Than .5% Alcohol By Volume**

14.     Millennium's GT's Kombucha Beverages – comprised of the "G.T.'s Kombucha" and "Synergy" brands - are nearly identical products, with identical advertising, using different names.  The name "kombucha" itself comes from the common name for what is essentially a fermented tea drink.  Kombucha is made of tea that ferments for up to a month while a "blob" of bacteria known as "scoby" (for symbiotic colony of bacteria and yeast) floats on top.  The scoby purportedly "eats the sugar, tannic acids, and caffeine in the tea, and creates a cocktail of live microorganisms."  Basic chemistry explains that the scoby converts the sugar into carbon dioxide and alcohol.  Millennium's "G.T.'s Kombucha" brand is advertised as 100 percent kombucha, while the bottles of the "Synergy" brand are labeled as "95% G.T.'s Kombucha," with the other 5 percent consisting of various juices added for taste.

15.     In 2010, major retailers throughout the country, including Defendant Whole Foods Market, Inc., were forced to immediately stop selling GT's kombucha beverages because it was discovered that the beverages contained alcohol levels as high as 2.5 percent by volume, roughly five times the legal limit for non-alcoholic beverages.  In response, Millennium released an "Enlightened" line of the products, named "Enlightened Synergy" and "GT's Enlightened Kombucha," and a "Classic" line of kombucha products.  The Enlightened line was purportedly slightly altered to ensure that the products did not exceed the 0.5 percent alcohol by volume threshold, while the Classic retained the original alcoholic formula.  The labels of the "Classic" line state:

> NOTE TO OUR BELOVED FANS: GT's Kombucha is raw and alive, hand-crafted by nature and made with the best intentions.  We refuse to do anything that could compromise our product's integrity or effectiveness.  That's why

we have chosen to modify our labeling instead of changing the way we make our products.



16.    A display on Millennium's website summarized that the "Classic" line retained the "Original" alcoholic formula:

Once An Original…Now A Classic.

We're proud to bring back the formula that started it all.  Must be 21 years or older to purchase.



17.    Millennium's transition from a single line of kombucha beverages to two separate lines of kombucha beverages, the "Classic" and "Enlightened" lines, however, is a sham.  In fact, both the Classic and Enlightened versions of the

products contain alcohol above the 0.5 percent by volume threshold set by Federal and State laws regulating the sale, marketing, labeling, and distribution of alcoholic beverages.

18.     The front of the labels of the Classic line, including Classic Kombucha and Classic Synergy,[3] now bear a prominent display stating, in capitalized letters, "CONTAINS ALCOHOL MUST BE 21 OR OLRDER TO PURCHASE."  The beverages' caps or lids are wrapped in a removable wrapping stating "over 21."  The Classic line of beverages also include the following federally mandated government warning on their labels:

> GOVERNMENT WARNING: (1) ACCORDING TO THE SURGEON
> GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES
> DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS.
> (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR
> ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY
> CAUSE HEALTH PROBLEMS.

Just below the government warning, the Classic labels state: "Kombucha is a cultured tea that is low in alcohol however federal law requires a warning statement on any product that may contain more than 0.5% of alcohol per volume."



---

[3] *See* Exhibit A for an example of a Classic Kombucha label.  *See* Exhibit B for an example of a Classic Synergy label.

19.     Just below the Nutrition Facts section, the Classic labels state: "**This product is considered a beer** and contains a natural effervescence.  Please open carefully." (emphasis added).

20.     The labels of the Enlightened line, however, do not contain any of the aforementioned displays, warnings, or markings concerning the alcohol content of the beverages.  Unlike the Classic line, Defendants sell the Enlightened line to persons of any age, including those under the age of 21.  The only mention of alcohol on the labels of the Enlightened line is a note below the Nutrition Facts section stating that "This product contains a trace amount of alcohol."  The following is an image of a bottle of "Classic" Synergy: Strawberry Serenity and "Enlightened" Synergy: Strawberry Serenity:



As can be seen in the image, the "Classic" beverage bears the aforementioned wrapping stating "over 21" on the lid and a prominent "CONTAINS ALCOHOL" statement on the front of the label, while the "Enlightened" label is silent as to any potential alcohol in the beverage.

21.    On every label of every flavor of Enlightened Kombucha, the first ingredient is listed as either "100% G.T.'s organic raw kombucha" (on the Enlightened Kombucha bottles) or "G.T.'s organic raw kombucha" (on the Enlightened Synergy lines).  Just below the Nutrition Facts section of the labels, each label of every flavor of Enlightened Kombucha states, in bold capital letters surrounded by two "heart" (♥) graphics, "♥ THIS IS A RAW FOOD ♥."  Just after this statement, the flavors of Enlightened Kombucha that do not contain chia seeds state "Strands of the culture may appear.  These are natural, normal & occur in raw kombucha."

22.    While pasteurized versions of kombucha products are non-alcoholic, as the pasteurization kills the yeast in the kombucha, raw (unpasteurized) versions of kombucha become alcoholic over time as the living yeast in the beverage converts sugars into alcohol.  Such natural conversion of sugar to alcohol in unpasteurized kombucha beverages can result in alcohol levels as high as 4 percent alcohol by volume, roughly the same alcohol content as regular beer.

23.    Because both the "Classic" and "Enlightened" versions of Millennium's kombucha beverages are unpasteurized, each set of beverages predictably undergoes a natural fermentation process where the yeast in the beverages converts the sugar in the products into alcohol.  While Millennium claims that it has found a way to brew its Enlightened line of products such that the products never cross the 0.5 percent alcohol threshold post-bottling, several rigorous independent tests show that each of the beverages in the Enlightened line contains greater than 0.5 percent alcohol by

volume, are often as alcoholic as their "alcoholic" "Classic" counterpart, and, in some cases, are as alcoholic as traditional beer.

24.     One of the major reasons that both the Enlightened and Classic lines become alcoholic is because the beverages' labels vastly underreport the amount of sugar in the products.  As discussed above, the yeast in these raw kombucha beverages converts the high sugar content into alcohol.  GT's Kombucha Beverages are advertised as containing only 2 to 3 grams of sugar on their labels.  But rigorous testing by an independent lab, Covance Laboratories Inc., found that the beverages contain almost 8 grams of sugar.[4]  Aside from causing the Enlightened Kombucha beverages to become alcoholic, the misrepresented sugar content of all GT's Kombucha Beverages causes them to be far less healthy than advertised.[5]  The misrepresented amount of sugar in GT's Kombucha Beverages is misleading to consumers and misled the Plaintiffs, and causes the products to be misbranded.

**Millennium's History Of Fraudulently Manufacturing Kombucha Beverages With Alcohol Levels Above The 0.5 Percent Alcohol By Volume Threshold**

25.     Millennium's fraudulent marketing and labeling of its kombucha beverages as non-alcoholic, when in fact they contain substantial amounts of alcohol, stretches back at least several years before the 2010 recall, and likely to the formation of the company in 1995.

26.     For example, on September 1, 2006, Millennium reached a settlement with the Bureau of Alcohol, Tobacco and Firearms (currently operating as the Alcohol and Tobacco Tax and Trade Bureau or "TTB") for selling kombucha beverages "that contained over 0.5% alcohol without having a basic permit, a violation of 27 U.S.C. 203(b)(1)&(2) and 27 CFR 24.106" and for selling such

---

[4] The Covance Laboratories Inc. study can be found at http://naturproscientific.com/method-validation-for-ethanol-in-kombucha/.
[5] *See, e.g.*, KRISTIN KIRKPATRICK, M.S., R.D., L.D, 10 THINGS YOU DON'T KNOW ABOUT SUGAR (The Huffington Post, 2013) (summarizing that high sugar diets can be the source of obesity, heart failure, and cancer), available at http://www.huffingtonpost.com/kristin-kirkpatrick-ms-rd-ld/dangers-of-sugar_b_3658061.html.

beverages "without the proper labels [or] labels approvals," and for distributing the products "without the government warning statement, a violation of 27 U.S.C. 215(a) and 27 CFR 16.21."[6]

27. In 2010, an inspector from the Maine Department of Agriculture noticed that some bottles of kombucha were leaking and bubbling in one of Defendant Whole Foods Market, Inc.'s Portland stores, sparking Federal Drug Administration ("FDA") and TTB investigations concerning the alcohol content of various kombucha products, including GT's Kombucha. After it was discovered that many kombucha products had alcohol levels as high as 2.5 percent by volume, Defendant Whole Foods Market, Inc. pulled kombucha products, including GT's Kombucha products, off the shelves.

28. Several other manufacturers of kombucha beverages, such as Honest Tea, owned and operated by the Coca-Cola Company, were unable to reformulate their kombucha beverages to ensure that the products never crossed the 0.5 alcohol by volume threshold at retail or consumption. "Despite reformulating its kombucha drinks in August 2010, Honest Tea found that the level of alcohol in Honest Kombucha – when left at room temperature – increased beyond 0.5 percent. Citing the difficulty in maintaining legal alcohol levels, Honest Tea discontinued the line in December 2010."[7]

29. Millennium's C.E.O., GT Dave, however, "was unwilling to radically change [its] process." While "[s]ome brewers use pasteurization to help control the alcohol content in their products, or ferment for shorter periods and add forced carbonation," GT Dave claimed that Millennium "changed the potential for alcohol by controlling the chemistry of the fermentation" for its Enlightened line of

---

[6] A copy of the charge and settlement agreement is attached to this Complaint as Exhibit C.
[7] Ray Latif, *Kombucha Class Action Suits Settled with GT's, Honest Tea*, BevNet.com, Nov. 8, 2011. Available at http://www.bevnet.com/news/2011/kombucha-class-action-suits-settled-with-gts-honest-tea (last accessed Sept. 17, 2015).

kombucha beverages.[8]  As described above, the Enlightened line is a "raw" and "unpasteurized" kombucha, necessarily meaning that the beverages continue to ferment and increase in alcohol over time, especially if left unrefrigerated for even short periods of time.  Whatever changes Millennium made to its Enlightened line, if any, are ineffective at curbing the accumulation of alcohol in the products past 0.5 percent alcohol by volume through the normal and expected use of the products.

**Testing from TTB Accredited Laboratories Shows that the Enlightened Line of GT's Kombucha Beverages has Greater than 0.5 Percent Alcohol by Volume**

30.    Two independent, TTB certified laboratories, Brewing & Distilling Analytical Services, LLC and ETS Laboratories, conducted tests on multiple batches of GT's Enlightened Kombucha and Enlightened Synergy beverages.  Each test showed that every bottle of the products tested contained a level of alcohol by volume greater than 0.5 percent.

31.    Brewing & Distilling Analytical Services LLC ("BDAS") conducted tests to determine the level of alcohol by volume in the following products: GT's Enlightened Lavender No. 3, GT's Enlightened Gingerade, GT's Enlightened Multi-Green, GT's Enlightened Citrus, GT's Enlightened Bilberry No. 9, Enlightened Synergy Cosmic Cranberry, Enlightened Synergy Passionberry Bliss, Enlightened Synergy Guava Goddess, Enlightened Synergy Trilogy, and Enlightened Synergy Gingerberry.

32.    Each of these products was subjected to four tests conducted on four separate batches of products.  None of the products had passed their stated expiration date at the time of testing.

33.    BDAS conducted the following four tests on each of the aforementioned products: (1) test for alcohol by volume one week after purchase where the product was refrigerated prior to testing; (2) test for alcohol by volume one week before the

---

[8] Tom Foster, *Meet the King of Kombucha*, Inc., March 2015.  Available at http://www.inc.com/magazine/201503/tom-foster/the-king-of-kombucha.html (last accessed Sept. 17, 2015).

listed expiration date where the product was refrigerated prior to testing; (3) test for alcohol by volume one week after purchase where the product was kept at room temperature prior to testing; (4) test for alcohol by volume one week prior to the listed expiration date where the product was kept at room temperature prior to testing.

34.    The smallest percentage of alcohol by volume detected among all the products tested by BDAS amongst all four of the testing methods was 0.96 percent alcohol by volume.  Not a single product tested was below the federally mandated 0.5 percent alcohol by volume limit.  In fact, a majority of the products tested well above 2 percent alcohol by volume at some point prior to the listed expiration date. Further, many of the products tested at close to three percent alcohol by volume at some point prior to the listed expiration date, with one product, Enlightened Synergy Trilogy, testing at 3.81 percent alcohol by volume one week prior to the expiration date.

35.    ETS Laboratories conducted similar testing that led to similar results. ETS Laboratories conducted tests concerning the alcohol content of the following products: GT's Enlightened Kombucha Multi Green, GT's Enlightened Kombucha Lavender No. 3, GT's Enlightened Kombucha Original, GT's Enlightened Kombucha Gingerade, GT's Enlightened Kombucha Citrus, Enlightened Synergy Cosmic Cranberry, Enlightened Synergy Guava Goddess, Enlightened Synergy Strawberry Serenity, Enlightened Synergy Mystic Mango, Enlightened Synergy Raspberry Chia, Enlightened Synergy Grape Chia, Enlightened Synergy Black Chia, Enlightened Synergy Trilogy, Enlightened Synergy Passionberry Bliss, and Enlightened Synergy Gingerberry.

36.    As with the BDAS testing results, the ETS Laboratories results showed that not a single product tested was below the federally mandated 0.5 percent alcohol by volume limit.

## Every Enlightened Kombucha Bottle Violates A Host of Federal and State Laws Regulating The Labeling Of Alcoholic Beverages

37.     On the TTB's website, the TTB states that "TTB's initial testing of kombucha in the marketplace reveals that many of these products contain at least 0.5 percent alcohol by volume.  These products are alcohol beverages and are consequently subject to regulation."[9]  The TTB states that its "primary concern is to ensure that consumers are not misled about the nature of alcohol beverage products that might be marketed as non-alcoholic beverages.  It is important that consumers are adequately informed about the nature of these products."

38.     In the Frequently Asked Questions portions of its website, the TTB explains in a series of questions and answers the various labeling requirements kombucha beverages must meet if they have more than 0.5 percent alcohol by volume.[10]  One of the "questions" is "Are kombucha containers required to bear a health warning statement?"  The TTB "answers" that "[t]he container of any alcohol beverage product sold or distributed in the United States with an alcohol content of 0.5 percent or more must bear the health warning statement required by the Alcoholic Beverage Labeling Act of 1998 (ABLA)," citing 27 C.F.R. § 16.  In turn, 27 C.F.R. § 16.10 defines "Alcoholic beverage" as "any beverage in liquid form which contains not less than one-half of one percent (.5%) of alcohol by volume and is intended for human consumption."  27 C.F.R. § 16.20 goes on to state that "no person shall bottle for sale or distribution in the United States any alcoholic beverage unless the container of such beverage bears the health warning statement required by § 16.21."

39.     27 C.F.R. § 16.21 states that "[t]here shall be stated on the brand label or separate front label, or on a back or side label, separate and apart from all other information, the following statement: GOVERNMENT WARNING: (1) According

---

[9] http://www.ttb.gov/faqs/kombucha-faqs.shtml (last accessed on Sept. 17, 2015).
[10] *See id.*

to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems."

40.     The TTB's Frequently Asked Questions also pose the following question: "What if my kombucha product contains less than 0.5 percent alcohol by volume at the time of bottling, but the alcohol content increases to 0.5 percent or more due to continued fermentation in the bottle."  The TTB answers that "[u]nder the law, TTB considers these products alcohol beverages and, as such, the applicable tax rate applies as does the requirement to show the health warning statement."  The TTB goes on to state that "the regulations provide that brewers must use a method of production to ensure that the alcohol content will not increase while in the original container after removal from the brewery."

41.     The TTB also poses the following question: "What if my kombucha is intended to be kept refrigerated, but it is stored by the retailer in an unrefrigerated area, and the alcohol content increases to 0.5 percent alcohol by volume."  The TTB answers that "[r]efrigeration of the product is not an adequate method of ensuring that the alcohol content will not increase while in the original container after removal, because you cannot control whether the product will be refrigerated after removal…[Y]ou must use a method of manufacture (such as pasteurization) that will ensure that the alcohol content of the beverage will not increase while in the original container after removal."

42.     Further, the TTB has stated that certain "beers," including kombucha products, "which are not made from both malted barley and hops but are instead made from substitutes for malted barley (such as sorghum, rice, or wheat) or are made without hops" "must comply with FDA labeling requirements."[11]  The FDA

---

[11] *Id.*; U.S. Food and Drug Administration, *Guidance for Industry: Labeling of Certain Beers Subject to the Labeling Jurisdiction of the Food and Drug*

clarifies that such alcoholic beverages are subject to the nutrition labeling requirements set out at 21 C.F.R. 101.9, and the general requirements of 21 C.F.R. 101.3 and 21 C.F.R. 101.4.[12]  As Enlightened Kombucha is "not made from both malted barley and hops" and is "made without hops," Enlightened Kombucha is also subject to the general nutrition labeling requirements set out by the FDA. Accordingly, the labels of Enlightened Kombucha are subject to the "false and misleading" standard of 21 U.S.C. § 343(a)(1), 21 C.F.R. § 101.54(g) (discussed below), and the corresponding state law counterparts that track the federal standards. *See, e.g.*, Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act … shall be the food labeling regulations of this state."); 1 N.Y.C.R.R. § 259.1 (same).  Because both the Classic and Enlightened lines contain alcohol above 0.5 percent by volume, and only the Classic line bears the appropriate government warnings, the Enlightened line is misbranded under the FDA's labeling requirements, California's Sherman Food Drug & Cosmetic Law and New York's Agriculture and Marketing Law, discussed in greater detail below.

43.    Defendants' sale and marketing of the Enlightened line as non-alcoholic, when in fact it contains substantial amounts of alcohol, also violates a host of State consumer health and safety regulations.  For example, California Health & Safety Code Section 25249.2 provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10."

*Administration*, December 2014.  Available at http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm166239.htm#ref4 (last accessed Sept. 17, 2015).
[12] U.S. Food and Drug Administration, *Guidance for Industry: Labeling of Certain Beers Subject to the Labeling Jurisdiction of the Food and Drug Administration*, December 2014.  Available at http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm166239.htm#ref4 (last accessed Sept. 17, 2015).

The method of warning should be a warning that appears on the product's label.  See 27 Cal. Code of Reg. § 25603(c).  Pursuant to Proposition 65, the Safe Drinking Water and Toxic Enforcement Act ("Proposition 65"), California recognizes "Ethyl alcohol in alcoholic beverages" as a chemical known to cause reproductive toxicity. 27 Cal. Code of Reg. § 27001(c).  "Alcoholic beverage" includes "every liquid or solid containing alcohol, spirits, wine, or beer, and which contains one-half of one percent or more of alcohol by volume and which is fit for beverage purposes either alone or when diluted, mixed, or combined with other substances." *Consumer Cause, Inc. v. Arkopharma, Inc*. (2003) 106 Cal. App. 4th 824, 829 (citing Cal. Bus. & Prof. Code § 23004).  Because Enlightened Kombucha in fact contains "one-half of one percent or more of alcohol by volume," but the labels do not bear the appropriate warning, the products violate Proposition 65.  A warning statement identical to the one prescribed by 27 C.F.R. § 16.21 would suffice to comply with the law and to notify consumers.

44.     While Plaintiffs do not know whether Enlightened Kombucha is below 0.5 alcohol by volume at the moment it leaves Millennium's distribution center, what is clear is that the beverages are significantly above the 0.5 threshold at the time of sale and consumption, and are almost as alcoholic as traditional beer a week before their stated expiration dates.  Under federal law, Defendants cannot turn a blind eye to what happens to Enlightened Kombucha products after they leave Millennium's facilities, and, considering similar instances of high alcohol levels in Millennium's kombucha products in 2006 and 2010, Plaintiffs allege on information and belief that Millennium knowingly and willfully distributes Enlightened Kombucha in violation of Federal and State laws that require such beverages to contain the government warning, as set out above.

45.     Millennium's unwillingness to treat the 0.5 alcohol by volume threshold seriously can be seen through Millennium C.E.O.'s statements in 2010 concerning

being forced to release the Enlightened line due to the recall.  Millennium's C.E.O. stated in an interview:

> The whole .5% alcohol threshold is so arbitrary.  It's acting like .4% is not going to do anything but .6% is gonna get you wasted.  It's not.  A lot of these laws and regulations were created in the 1920's.  You can get more alcohol in your system from mouthwash, cough syrup, vanilla extract, cooking wine, an herbal tincture or a dozen other products…It's a little distorted.[13]

In another interview given around the same time, Millennium's C.E.O. stated:

> Most of these laws [regarding alcohol content of store-sold beverages] were written around the prohibition period, and the .5 percent threshold is very arbitrary – **there is really no difference with a product that is slightly below or above**…Our long-term goal is to change legislation, a mission that will take some time.  **We are being asked to control something that is out of our control**…That's why it was a confusing time.[14]

(emphasis added).  But whatever long-term goals Millennium may have about changing legislation are irrelevant to the fact that the 0.5 alcohol by volume threshold is the law of the land.  There is a very big difference between a beverage under and over this limit, as underscored throughout federal and state law in this field going back to the 1930's, the fall of prohibition, and before.  One is lawful and the other is not.  Further, as discussed above, the Enlightened line is not "slightly" above the legal limit.  In fact, most of the beverages in the Enlightened line are at least double the legal limit, with some reaching over seven times the legal limit one week prior to their listed expiration dates.  If the natural fermentation of the Enlightened line, such that the beverages become more alcoholic than permitted by

---

[13] Kombuchakamp.com, *GT Dave – Exclusive Interview*, 2010.  Available at https://www.kombuchakamp.com/update-gts-original-enlightened-kombucha-on-the-way-will-stay-raw-and-true-to-ourselves (last accessed on Sept. 18, 2015).
[14] Kelly Green, *What Happened to GT Dave's Kombucha?*, Phoenix New Times, Oct. 21, 2010.  Available at http://www.phoenixnewtimes.com/restaurants/what-happened-to-gt-daves-kombucha-6533129 (last accessed on Sept. 18, 2010).

law, is "something that is out of [Millennium's] control," Defendants cannot and should not sell the products.

46.     Millennium's marketing of the Enlightened line as the non-alcoholic version of its Classic line is highly misleading to a reasonable consumer.  Because the Enlightened products do not include any warnings concerning the significant presence of alcohol, consumers, including Plaintiffs, are led to believe that the products are safe to consume when driving a car or operating machinery and pose no safety concerns.  To make matters worse, the labels of the Enlightened line state:

> **Suggested Use: For best results, drink at least one bottle a day.  Product can be consumed before, during, or after meals.**

A "Suggested Use" of an alcoholic beverage of "at least one bottle a day" at any time of the day, including on an empty stomach, and potentially with other medication, creates a very serious health hazard.  Like any other forms of alcohol, Enlightened kombucha may in fact cause health problems, is not safe to consume while driving or operating machinery, and may increase the chance of birth defects if consumed during pregnancy.  For these reasons, Enlightened Kombucha must bear the government warning mandated by 27 C.F.R. § 16.21 and is misbranded under State and Federal law.

## Millennium's Unlawful And Misleading Characterization Of Antioxidants

47.     Millennium lures customers to buy Enlightened Kombucha with promises that the beverages are packed with "powerful" antioxidants.  But Millennium's advertising flies in the face of identical state and federal laws that bar manufacturers from spouting "antioxidant" claims without including antioxidant *nutrients*, like Vitamins A, C, D, or E, in their beverages to back up their advertising. Tea antioxidants, like EGCG, are not antioxidant nutrients.  Since Enlightened Kombucha does not include any antioxidant nutrients identified by the FDA as a source of real nutrition, Millennium's labeling and advertising deceives consumers

into believing that all antioxidants are created equal and that Enlightened Kombucha is a source of nutritional antioxidants.

48.     Specifically, by law, Millennium must disclose on the labels of Enlightened Kombucha precisely which *nutrients* have antioxidant properties. Further, each of these nutrients must have established Reference Daily Intake ("RDI") standards set by the FDA to prevent manufacturers from claiming that tea is a nutritional source of antioxidants.

49.     Enlightened Kombucha claims to contain a "unique blend" of "powerful antioxidants," but does not contain even a single antioxidant nutrient with an established RDI.  Indeed, Enlightened Kombucha is a type of tea, and the FDA considers tea a food of no nutritional significance.  As such, Millennium's labels are misbranded and misleading.

50.     Every flavor in the Enlightened line that does not contain chia seeds[15] bears the following nutrient content claims characterizing the level of antioxidants on the bottles' labels:

- "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from the inside out." [16]

51.     Every flavor in the Enlightened Synergy line that contains chia seeds bears the following nutrient content claims characterizing the level of antioxidants on the bottles' labels:

---

[15] The following flavors of Enlightened Synergy contain chia seeds: Black Chia, Cherry Chia, Grape Chia, Green Chia, and Raspberry Chia.  None of the flavors of GT's Enlightened Kombucha contain chia seeds.

[16] *See* Exhibit D for an example of an Enlightened Synergy label.  *See* Exhibit E for an example of a GT's Enlightened Kombucha label.

- "RAW CHIA = RAW ENERGY.  Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body.  Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha." [17]

52.     The "Nutrition Facts" panel of every flavor of Enlightened Kombucha contains an "ANTIOXIDANTS & ORGANIC ACIDS" segment, which lists "EGCG 100mg" as the amount and type of "antioxidants" in the bottles.

53.     Millennium's common advertising campaign has, for years, touted statements characterizing antioxidants in Enlightened Kombucha as one of the primary reasons to buy the products.  In turn, consumers relied and continue to rely on Millennium's characterization of antioxidants in Enlightened Kombucha when purchasing the products.

**Enlightened Kombucha Is Misbranded Under Identical State And Federal Laws**

54.     Identical federal and California laws regulate the content of labels on packaged food.  The requirements of the federal Food, Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").  Under California law "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) [21 U.S.C. Sec. 343(r)] of the federal act and the regulations adopted pursuant thereto."  California Health & Safety Code § 110670.

55.     Similarly, New York law also adopts by reference the regulatory requirements under the FDCA.  New York's Agriculture and Marketing Law provides in language that mirrors the FDCA, that food shall be deemed misbranded

---

[17] *See* Exhibit F for an example of an Enlightened Synergy with Chia label.

"[i]f its labeling is false or misleading in any particular." N.Y. Agm. Law § 201(1). Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations of the State of New York (1 N.Y.C.R.R. § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the Code of Federal Regulations (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (3) Part 101 of title 21 of the Code of Federal Regulations, containing the Federal definitions and standards for Food Labeling (including Appendices) …

56. Nutrient content claims using the term "antioxidant" must comply with the requirements listed in 21 C.F.R. 101.54(g).  Under 21 C.F.R. § 101.54(g), a nutrient content claim that characterizes the level of antioxidant nutrients present in a food may only be used if: "(1) An RDI (Reference Daily Intake) has been established for each of the nutrients;  (2) The nutrients that are the subject of the claim have recognized antioxidant activity … ; (3) The level of each nutrient that is the subject of the claim is sufficient to qualify for the [type of claim made]; and (4) The names of the nutrients that are the subject of the claim are included as part of the claim (e.g., 'high in antioxidant vitamins C and E').  Alternatively, when used as part of a nutrient content claim, the term 'antioxidant' or 'antioxidants' (as in 'high in antioxidants') may be linked by a symbol (e.g. an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label followed by the name or names of the nutrients with recognized antioxidant activity."  The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 C.F.R. 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act.

57. The regulations regarding antioxidant nutrient content claims have been made clear by prior FDA actions targeting similar or identical claims.  For example,

on August 23, 2010, the FDA sent Unilever, Inc. a warning letter that specifically identified unauthorized antioxidant nutrient content claims that Unilever made on Lipton Green Tea's label and on its website.  In the letter, the FDA explained that the statement "LIPTON Tea is made from tea leaves rich in naturally protective antioxidants," did not comply with 21 C.F.R. 101.54(g) because it did not "include the nutrients that are the subject of the claim or use a symbol to link the term 'antioxidant' to those nutrients."  Accordingly, the FDA determined that the claim misbranded Lipton Green Tea under section 403(r)(2)(A)(i) of the Act.   Likewise, the FDA concluded that the statement "packed with protective FLAVONOID ANTIOXIDANTS" did not comply with 21 C.F.R. 101.54(g) because no RDI has been established for flavonoids.  Because the statements were unauthorized nutrient content claims, the FDA concluded that Lipton Green Tea was misbranded. [18]

58.     The FDA has explained that violations of 21 C.F.R. 101.54(g) occur even where a nutrient with an established RDI is present in a food bearing a label using the term "antioxidant" if the nutrient with the established RDI does not account for 100% of the claimed antioxidant value.  On August 30, 2010, the FDA sent a letter to the Dr. Pepper Snapple Group, manufacturers of Canada Dry Sparkling Green Tea Ginger Ale, warning that its labels were misbranded pursuant to 21 C.F.R. 101.54(g).  The FDA explained:

> The nutrient content claim for your Sparkling Green Tea Ginger Ale product of "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM GREEN TEA & VITAMIN C** .... **Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" identifies Vitamin C as a nutrient associated with the antioxidant claim. Vitamin C is a nutrient that is a recognized source of antioxidants. Your Nutrition Facts panel declares Vitamin C at 100% of the Daily Reference Value (DRV), which accounts for 60 mg of the claimed 200 mg of antioxidants. According to the nutrient content claim on your product label, the remainder 140 mg of antioxidants must be derived from green tea or green tea flavonoids, which are not nutrients with recognized antioxidant activity under 21 CFR § 101.54(g)(2). Therefore, the claim "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM

---

[18] *See* 8/23/2010 FDA Warning Letter to Unilever, Inc. attached hereto as Exhibit G.

GREEN TEA & VITAMIN C** .... **Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" does not meet the requirements of 21 CFR 101.54(g) and misbrands your product under section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)). [19]

59.   Of particular relevance here, the labels of Enlightened Kombucha claim that the "Antioxidants" found in the beverages are 100 milligrams of "EGCG." EGCG stands for Epigallocatechin gallate, and is a type of catechin commonly found in tea.  On February 22, 2010, the FDA sent a letter to Redco Foods, Inc. warning Redco that its green tea products violated the FDCA.  The FDA determined that Redco's green tea label bore the following unauthorized nutrient content claim:

One of the antioxidants known as EGCG (Epigallocatechin gallate) is abundantly found in tea leaves.

The FDA determined that the claim did not comply with 21 C.F.R. 101.54(g)(1) because no RDI has been established for EGCG.[20]  In another example, on April 20, 2011, the FDA sent a letter to Diaspora Tea & Herb Co., LLC, the manufacturer of Rishi brand teas, warning the company that its White Tea products were misbranded. The FDA determined that the following label claim was an unauthorized nutrient content claim pursuant to 21 C.F.R. 101.54(g)(1) because "White Tea" does not have an established RDI:

White Tea…contain[s] high concentrations of …antioxidant polyphenols (tea catechins)…[21]

(Omissions and alterations in original).  The marketing of EGCG as the antioxidants in Enlightened Kombucha is misleading and misbrands the products because neither tea nor EGCG are recognized nutrients under the FDCA.

---

[19] *See* 8/30/2010 FDA Warning Letter to Dr Pepper Snapple Group, attached hereto as Exhibit H.

[20] *See* 2/22/2010 FDA Warning Letter to Redco Foods, Inc. attached hereto as Exhibit I.

[21] *See* 4/20/2011 FDA Warning Letter to Diaspora Tea & Herb Co., LLC attached hereto as Exhibit J.

60.     Further, the labels of Enlightened Kombucha that contain chia seeds tout that "chia is a nutrient-rich superfood," that chia "has big nutritional value" and that the chia in the beverages contains "more antioxidants than blueberries."  In a July 26, 2013 letter to Waterwheel Premium Foods Pty Limited, the FDA stated that the statement "Chia seeds are known to be an important source of … antioxidants" on a food product label violates 21 C.F.R. 101.54(g) because it does not name the nutrients that are the subject of the antioxidant claim.  Despite Millennium's statements that chia is a "nutrient-rich superfood" and has "big nutritional value," chia itself is not a nutrient, and, accordingly, chia is not a nutrient with an established RDI.  In another example, in a May 24, 2013 letter to Crop Pharms, the FDA determined that the statement "Black Currants have twice the antioxidants of Blueberries" on a food product violates 21 C.F.R. 101.54(g) because it "characterizes the level of" antioxidants but does not disclose any nutrients with an established RDI.  The statement that chia contains "more antioxidants than blueberries" characterizes the level of antioxidant in Enlightened Kombucha, misbrands the products, and misleads consumers.

61.     In addition, beverages in the Enlightened line that do not contain chia seeds claim that they have a "high nutritional value" and have a "unique blend of … powerful antioxidants."  In a January 31, 2012 letter to CAW Industries, Inc., the FDA stated that the statement "very powerful antioxidant" characterizes the level of antioxidants in a product and violates the requirements of 21 C.F.R. 101.54(g) where the product does not disclose a nutrient with an established RDI.  Here, Enlightened Kombucha similarly claims to contain "powerful antioxidants" and have a "high nutritional value," even though the products do not contain any antioxidant nutrients with established RDIs.

62.     The FDA further clarified the requirements of 21 C.F.R. 101.54(g) in compliance guides concerning the use of the term "antioxidant" on food labels.  In a

June 2008 "Guidance for Industry" document, the FDA made the requirements of 21 C.F.R. 101.54(g) perfectly clear:

> Does the label claim have to include the name of the nutrient that is an antioxidant, or can the claim simply say "antioxidants?"
>
> The names of the nutrients that are the antioxidants must appear in the claim. For example, "high in antioxidant vitamins C and E."

63. Millennium's marketing campaign for Enlightened Kombucha is centered on the characterization of the level of antioxidants in the products and the use of nutrient content claims using the term "antioxidant." However, the labels of Enlightened Kombucha do not state which recognized antioxidant nutrients, if any, are the subject of their antioxidant claims. There is no symbol that refers to another symbol somewhere else on the label followed by the name or names of the nutrients with recognized antioxidant activity. For these reasons, Enlightened Kombucha is misbranded in violation of parallel state and federal laws.

64. Enlightened Kombucha does not contain a single antioxidant nutrient with an established RDI. If Enlightened Kombucha in fact contains any antioxidant nutrients with an established RDI, such information is solely within Millennium's possession and consumers cannot reasonably obtain such information. Further, if Millennium's antioxidant claims in fact refer to any antioxidant nutrients with an established RDI, the identity of such nutrients is solely within Millennium's possession and consumers cannot reasonably obtain such information. This information is material to Plaintiffs and the Class, and the withholding of such information is misleading and misbrands the products.

**Consumers Are Misled By Millennium's Unlawful Antioxidant Marketing**

65.     Millennium's antioxidant advertising is a calculated ruse to capitalize on consumers demand for products with antioxidants.[22]  However, identical federal, California, and New York law bans such advertising because it is misleading.

66.     The FDA specifically proposed paragraph (g) to 21 C.F.R. 101.54 to "ensure that consumers are not confused or misled" by nutrient content claims using the term "antioxidants."   The FDA's proposal to add a regulation to standardize nutrient content claims using the term "antioxidants" followed an informal FDA survey that found that claims like "high in antioxidants" often referred "to a variety of nutrients and other dietary ingredients that are present in widely varying amounts."  The FDA concluded that such inconsistent use of antioxidant nutrient content claims "leads to consumer confusion."

67.     The FDA noted that part of the confusion stems from the fact that:

> The term 'antioxidants' is unique in comparison to the names of other nutrients associated with nutrient content claims.  Unlike previously approved nutrient content claims that characterize the level of a particular nutrient (e.g., 'low sodium'), a term such as 'high in antioxidants' ties a claim (i.e., 'high') to a class of nutrients that share a specific characteristic (i.e., they are antioxidants) whose very name indicates a metabolic function.

68.     Accordingly, because the use of the term "antioxidant" implies health benefits, the FDA specifically sought to curtail the use of antioxidant statements related to food products that do not contain antioxidant nutrients recommended for the daily diet.  In the FDA's view, consumers are misled and confused when products like Enlightened Kombucha are advertised as "packed" with antioxidants, "high in" antioxidants, a source of "many" antioxidants, or containing a "blend" of

---

[22] According to a consumer survey by Bossa Nova, half of adults rank antioxidants as the top nutrient they are most concerned about adding to their diets – ahead of calcium, fiber and iron.  *See* New Survey Finds Antioxidants #1 Nutrient Concern Amongst Consumers, PR Newswire. http://www.prnewswire.com/news-releases/new-survey-finds-antioxidants-1-nutrient-concern-amongst-consumers-106440093.html.

"powerful antioxidants" when those products do not contain an essential nutrient with recognized antioxidant activity that also has an established RDI.

69.     For example, the statement that Enlightened Kombucha provides a "unique blend" of "powerful antioxidants" misleadingly suggests that the beverages provide superior antioxidant content than foods and beverages with antioxidant nutrients like vitamin C that have antioxidant properties as well as nutritional value. Likewise, the statement that Enlightened Kombucha has "more antioxidants than blueberries" misleadingly suggests that the beverages provide superior antioxidant content to blueberries, even though blueberries contain Vitamins A and C and the mineral Magnesium, which have established RDIs and are recognized as a *nutritional* source of antioxidants.  Contrary to Millenniums' labeling statements that tout the antioxidant content of its tea beverages, the FDA has determined that antioxidant vitamins, rather than teas like Enlightened Kombucha, are the superior method for incorporating antioxidants in the daily diet.  In other words, the characterization of the word "antioxidant" on Enlightened Kombucha's labels deceives consumers into believing that Enlightened Kombucha provides more antioxidants and are superior to foods that contain the requisite amount of real nutrients that the FDA has determined provide antioxidants and are essential to daily human nutrition.

70.     Medical professionals agree with the FDA.  For example, Jeffrey B. Blumberg, PhD, a professor and the director of the Antioxidants Research Laboratory at Tufts University explained that the one "problem" with the "Antioxidant Message" that products are "high or rich in antioxidants" is that it deceives consumers by "making people think it's no longer the vitamins, minerals, or fiber but only the phytochemicals that promote health ... But the reason plant foods are good for you is because of everything they contain.  There's synergy for all of

these ingredients – synergies between ingredients in one food and between multiple foods."[23]

71.    The Harvard School of Public Health has also opined that it is critical to differentiate between different types of antioxidants, as the FDA has done through its requirement that manufacturers list nutrients with established RDI's any time they make nutrient content claims using the term "antioxidant."  The Harvard School of Public Health Nutrition Source, an online publication of the School of Public Health, instructs that "using the term 'antioxidant' to refer to substances is misleading.  It is really a chemical property, namely, the ability to act as an electron donor.  Some substances that act as antioxidants in one situation may be prooxidants—electron grabbers—in a different chemical milieu.  Another big misconception is that antioxidants are interchangeable.  They aren't.  Each one has unique chemical behaviors and biological properties. They almost certainly evolved as parts of elaborate networks, with each different substance (or family of substances) playing slightly different roles.  This means that no single substance can do the work of the whole crowd."[24]

72.    The FDA's and Dr. Blumberg's conclusions about consumer confusion are well founded, as a "recent study conducted by researchers at the University of Houston found that simply placing a healthy euphemism [like antioxidant] on a food package made people believe it was healthier than others that made no obvious health claims." [25]  Here Enlightened Kombucha misleads consumers into believing

---

[23] *That's why the Dietary Guidelines for Americans recommends we consume a diversity of fruits, vegetables, and whole grains.*'"  Palmer, Sharon, *Dietary Antioxidants – Do Foods and Supplements With High Antioxidant Values Guarantee Better Health?*  Vol. 15 No. 4 P. 42 (Apr. 2013) (emphasis added) *available at http://www.todaysdietitian.com/newarchives/040113p42.shtml.*

[24] *Antioxidants: Beyond the Hype*, Harvard School of Public Health Source, available at http://www.hsph.harvard.edu/nutritionsource/antioxidants/

[25] *See Healthy Labels Magic Words Regardless of Food Inside* (June 19, 2014) *available at* http://guardianlv.com/2014/06/healthy-labels-magic-words-regardless-of-the-food-inside/

that the products are superior because they contain a "unique blend" of "powerful antioxidants," even though the products do not contain a single nutrient with recognized antioxidant activity *and* with an established RDI.  The few nutrients in Enlightened Kombucha that do have established RDI's, such as Vitamin B, are not antioxidants.  Enlightened Kombucha advertising goes so far as to claim that it contains "more antioxidants than blueberries," even though blueberries contain antioxidant nutrients with established RDI's while Enlightened Kombucha does not.

73.     Millennium has made, and continues to make, unlawful and misleading claims on the food labels of Enlightened Kombucha that are prohibited by identical federal, California, and New York law and which render these products misbranded. Under federal, California, and New York law, Enlightened Kombucha cannot legally be manufactured, distributed, held, or sold.

## **CLASS REPRESENTATION ALLEGATIONS**

74.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, between March 11, 2011 and the date that class notice is disseminated, purchased GT's Kombucha Beverages.

75.     Plaintiff Manire also seeks to represent a subclass defined as all members of the Class who purchased GT's Kombucha Beverages in California (the "California Subclass").

76.     Plaintiffs Manire and Retta also seek to represent a subclass defined as all members of the Class who purchased GT's Kombucha Beverages in New York (the "New York Subclass").

77.     Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

78.     Excluded from the Class are the Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

79.     Also excluded from the Class are persons or entities that purchased GT's Kombucha Beverages for purposes of resale.

80.     Plaintiffs are members of the Class they seek to represent.

81.     Defendants sell hundreds of thousands, if not millions, of bottles of GT's Kombucha Beverages.  GT's Kombucha Beverages are available in major supermarkets nationwide, including in California and New York.  Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants, third party retailers, and vendors.

82.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether GT's Kombucha Beverages are misbranded, and whether the labeling, marketing and promotion of GT's Kombucha Beverages is false and misleading.

83.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to and relied on Defendants' false, misleading and misbranded labels, purchased GT's Kombucha Beverages, and suffered losses as a result of those purchases.

84.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class

actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

85.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### COUNT I
### Violation Of California's Consumers Legal Remedies Act,
### California Civil Code §§ 1750, et seq.

86.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

87.     Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of members of the proposed Class against Millennium.  Plaintiff Manire also brings this claim individually and on behalf of members of the proposed California Subclass against both Defendants.

88.     Plaintiffs and Class members are consumers who purchased GT's Kombucha Beverages for personal, family or household purposes.  Plaintiffs and the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §

1761(d).  Plaintiffs and the Class members are not experts with the independent knowledge of the character, effectiveness, nature, level, or amount of antioxidants and sugar found in GT's Kombucha Beverages or kombucha beverages generally. Plaintiffs and the Class members are not experts with the independent knowledge of the fermentation process or alcohol level of Enlightened Kombucha or kombucha beverages generally.

89.     The GT's Kombucha Beverages that Plaintiffs and Class members purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

90.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

91.     Millennium's antioxidant nutrient content claims including, (a) "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out," and (b) "Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body.  Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha" characterize the level of antioxidants in Enlightened Kombucha because (1) there are no nutrients with recognized antioxidant properties with RDIs in Enlightened Kombucha and (2) the antioxidant nutrient content claims do not include the nutrients that are the subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because Millennium's nutrient content claims do not comply with 21 C.F.R. § 101.54(g),

Defendants sold misbranded products in California and nationwide during the Class Period.

92.     Further, Defendants' representation that Enlightened Kombucha only has a "trace amount of alcohol" and the absence of the government warning concerning alcoholic beverages on the labels of Enlightened Kombucha make such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because such beverages are purchased by minors and because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale.

93.     Further, Defendants' representation that GT's Kombucha Beverages contain only 2 to 3 grams of sugar, when in fact the beverages contain nearly 8 grams of sugar, make such advertising false and misleading to a reasonable consumer, including Plaintiffs.  The excess amount of sugar in the beverages also makes GT's Kombucha Beverages less healthy than advertised.

94.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  By engaging in the conduct set forth herein,

Defendants violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresent the particular characteristics, benefits and quantities of the goods.

95.    Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresent the particular standard, quality or grade of the goods.

96.    Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants advertise goods with the intent not to sell the goods as advertised.

97.    Plaintiffs and Class members are not experts about the character, effectiveness, nature, level, or amount of antioxidants and sugar found in GT's Kombucha Beverages or kombucha beverages in general.  Plaintiffs and the Class members are not experts with the independent knowledge of the fermentation process or alcohol level of Enlightened Kombucha or kombucha beverages generally.  Plaintiffs and the Class acted reasonably when they purchased GT's Kombucha Beverages based on their belief that Defendants' representations were true and lawful.

98.    Plaintiffs and the Class suffered injuries caused by Defendants because (a) they would not have purchased Enlightened Kombucha absent Defendants'

representations and omission of a warning concerning the product's alcohol content; (b) they would not have purchased GT's Kombucha Beverages on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for GT's Kombucha Beverages due to Defendants' misrepresentations and unauthorized nutrient content claims; and (d) GT's Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

99.   On or about February 4, 2015, prior to filing this action, a CLRA notice letter was served on Millennium which complies in all respects with California Civil Code § 1782(a).  Plaintiffs Retta, Schofield, and Manire, collectively, on behalf of themselves and the proposed Class, served a letter via certified mail, return receipt requested, advising Millennium that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' letter is attached hereto as Exhibit K.

100.   On or about November 17, 2015, a CLRA notice letter was served Defendant Whole Foods Market, Inc., which complies in all respects with California Civil Code § 1782(a).  Plaintiffs Retta, Schofield, and Manire, collectively, on behalf of themselves and the proposed Class, served a letter via certified mail, return receipt requested, advising Defendant Whole Foods Market, Inc. that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies therefrom.  A true and correct copy of Plaintiffs' letter is attached hereto as Exhibit L.

101.   Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT II

### Violation Of California's Unfair Competition Law,

### California Business & Professions Code §§ 17200, et seq.

102.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

103.   Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of the members of the proposed Class against Millennium.

104.   Plaintiff Manire also brings this claim individually and on behalf of members of the proposed California Subclass against both Defendants.

105.   Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

106.   Millennium's antioxidant nutrient content claims including, (a) "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out," and (b) "Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body.  Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha" characterize the level of antioxidants in Enlightened Kombucha because (1) there are no nutrients with recognized antioxidant properties with RDIs in Enlightened Kombucha and (2) the antioxidant nutrient content claims do not include the nutrients that are the subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because Millennium's nutrient content claims do not comply with 21 C.F.R. § 101.54(g),

Millennium sold misbranded products in California and nationwide during the Class Period.

107.   Further, Defendants' representation that Enlightened Kombucha only has a "trace amount of alcohol" and the absence of the government warning concerning alcoholic beverages on the labels of Enlightened Kombucha make such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because such beverages are purchased by minors and because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale.

108.   Further, Defendants' representation that GT's Kombucha Beverages contain only 2 to 3 grams of sugar, when in fact the beverages contain nearly 8 grams of sugar, make such advertising false and misleading to a reasonable consumer, including Plaintiffs.  The excess amount of sugar in the beverages also makes GT's Kombucha Beverages less healthy than advertised.

109.   Defendants' business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the FDCA [21 U.S.C. 343(r)(1)(a)], California Health & Safety Code § 110670, 27 C.F.R. § 16, California Health & Safety Code Section 25249.2, the CLRA, the FAL and other applicable law as described herein.

110.   Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendants' advertising is of no benefit to consumers, and has been declared misleading to consumers by the FDA, medical professionals, and research institutions.  Creating consumer confusion regarding the properties, benefits, and amounts of antioxidants and sugar is of no benefit to consumers.  Millennium's failure to comply with FDCA and parallel California labeling requirements and deceptive advertising concerning the nature and effectiveness of antioxidants in Enlightened Kombucha offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).  Further, Defendants' advertising of Enlightened Kombucha as the non-alcoholic version of Millennium's "Classic" line and the fact that the labels of Enlightened Kombucha do not bear warnings concerning the presence of significant amounts of alcohol causes the products to pose a threat to public health, safety, and morality.  Consumers are unwittingly purchasing and consuming Enlightened Kombucha products prior to driving a car or operating machinery and while pregnant or under 21 years of age.  Further, many consumers may have religious or moral objections to the consumption of alcoholic beverages and would not buy Enlightened Kombucha under any circumstances, even if the presence of alcohol was disclosed.  Such practices are of no benefit to consumers.

111.   Defendants violated the "fraudulent" prong of the UCL by misleading Plaintiffs and the Class to believe that the nutrient content claims made about Enlightened Kombucha were lawful, authorized claims that met the minimum nutritional requirements for such claims, as described herein.  Defendants further violated the fraudulent prong of the UCL by misleading Plaintiffs and the Class to

believe that Enlightened Kombucha is a non-alcoholic beverage when, in fact, it contains a substantial amount of alcohol.  Defendant also violated the fraudulent prong by advertising that GT's Kombucha Beverages contain only 2 to 3 grams of sugar when, in fact, the beverages contain almost 8 grams of sugar.

112.   Plaintiffs and Class members are not experts about the character, effectiveness, nature, level, or amount of antioxidants and sugar found in GT's Kombucha Beverages or kombucha beverages in general.  Plaintiffs and the Class members are not experts with the independent knowledge of the fermentation process or alcohol level of Enlightened Kombucha or kombucha beverages generally.  Plaintiffs and the Class acted reasonably when they purchased GT's Kombucha Beverages based on their belief that Defendants' representations were true and lawful.

113.   Plaintiffs and the Class lost money or property as a result of Defendants' UCL violations because (a) they would not have purchased Enlightened Kombucha absent Defendants' representations and omission of a warning concerning the product's alcohol content; (b) they would not have purchased GT's Kombucha Beverages on the same terms absent Defendants' representations; (c) they paid a price premium for GT's Kombucha Beverages due to Defendants' misrepresentations and unauthorized nutrient content claims; and (d) GT's Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT III
### Violation Of California's False Advertising Law,
### California Business & Professions Code §§ 17500, et seq.

114.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

115.   Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of the members of the proposed Class against Millennium.

116.   Plaintiff Manire also brings this claim individually and on behalf of the members of the proposed California Subclass against both Defendants.

117.   California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

118.   Defendants engaged in a scheme of offering misbranded bottles of GT's Kombucha Beverages for sale to Plaintiffs and the Class members by way of product packaging, labeling, and other promotional materials.  These materials misrepresented and/or omitted the true content and nature of the misbranded bottles of GT's Kombucha Beverages.  Millennium's advertisements and inducements were made in and originated from California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that the product packaging, labeling, and promotional materials were intended as inducements to purchase GT's Kombucha Beverages, and are statements disseminated by Defendants to Plaintiffs and Class members.  Defendants knew that these statements were unauthorized, inaccurate, and misleading.

119.   Millennium's antioxidant nutrient content claims including, (a) "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body

from inside out," and (b) "Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body.  Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha" characterize the level of antioxidants in Enlightened Kombucha because (1) there are no nutrients with recognized antioxidant properties with RDIs in Enlightened Kombucha and (2) the antioxidant nutrient content claims do not include the nutrients that are the subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because Millennium's nutrient content claims do not comply with 21 C.F.R. § 101.54(g), Defendants sold misbranded products in California and nationwide during the Class Period.

120.    Further, Defendants' representation that Enlightened Kombucha only has a "trace amount of alcohol" and the absence of the government warning concerning alcoholic beverages on the labels of Enlightened Kombucha make such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Enlightened Kombucha is a serious health hazard to consumers because such beverages are purchased by minors and because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale.

121.   Further, Defendants' representation that GT's Kombucha Beverages contain only 2 to 3 grams of sugar, when in fact the beverages contain nearly 8 grams of sugar, make such advertising false and misleading to a reasonable consumer, including Plaintiffs.  The excess amount of sugar in the beverages also makes GT's Kombucha Beverages less healthy than advertised.

122.   Defendants violated § 17500, *et seq*. by misleading Plaintiffs and the Class to believe that the nutrient content claims made about GT's Kombucha Beverages were lawful, authorized claims that met the minimum nutritional requirements for such claims, as described herein.  Defendants also violated § 17500, *et seq*. by misleading Plaintiffs and the Class to believe that Enlightened Kombucha is a non-alcoholic beverage when, in fact, it contains a substantial amount of alcohol.

123.   Millennium knew or should have known, through the exercise of reasonable care that GT's Kombucha Beverages were and continue to be misbranded, and that their representations about the antioxidant and sugar content of the beverages were unauthorized, inaccurate, and misleading.  Defendants also knew or should have known, through the exercise of reasonable care that Enlightened Kombucha is an alcoholic beverage and that Defendants' representations to the contrary are not true.

124.   Plaintiffs and the Class lost money or property as a result of Defendants' FAL violation because (a) they would not have purchased Enlightened Kombucha absent Defendants' representations and omission of a warning concerning the product's alcohol content; (b) they would not have purchased GT's Kombucha Beverages on the same terms absent Defendants' representations; (c) they paid a price premium for GT's Kombucha Beverages due to Defendants' misrepresentations and unauthorized nutrient content claims; and (d) GT's Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT IV

### Violation of New York's Deceptive and Unfair Trade Practices Act,

### New York General Business Law § 349, et seq.

125.   Plaintiffs Retta and Manire hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

126.   Plaintiffs Retta and Manire bring this claim individually and on behalf of the members of the proposed New York Subclass against both Defendants.

127.   Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

128.   Millennium's antioxidant nutrient content claims including, (a) "It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us.  With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from inside out," and (b) "Often called 'runner's food', chia is a nutrient-rich superfood that provides sustained energy for your body.  Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value.  With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha" characterize the level of antioxidants in Enlightened Kombucha because (1) there are no nutrients with recognized antioxidant properties with RDIs in Enlightened Kombucha and (2) the antioxidant nutrient content claims do not include the nutrients that are the subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because

Millennium's nutrient content claims do not comply with 21 C.F.R. § 101.54(g), which has been incorporated by reference under New York state regulations, 1 N.Y.C.R.R. § 259.1, Defendants sold misbranded products in New York during the Class Period.  Further, Millennium's labeling and advertising practices are of no benefit to consumers, and have been declared misleading to consumers by the FDA, medical professionals, and research institutions.  Millennium's failure to comply with FDCA and parallel New York labeling requirements and deceptive advertising concerning the nature and effectiveness of antioxidants in Enlightened Kombucha offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).  Accordingly, Millennium's practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets Law § 201 in that Enlightened Kombucha is misbranded.

129.   Further, Defendants' representation that Enlightened Kombucha only has a "trace amount of alcohol" and the absence of the government warning concerning alcoholic beverages on the labels of Enlightened Kombucha make such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because such beverages are purchased by minors and because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic,

Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale. Further, Defendants' labeling and advertising practices are of no benefit to consumers, and to the contrary, subject consumers to serious health and safety issues due to the fact that Enlightened Kombucha contains alcohol.  Defendants' failure to comply with FDCA and parallel New York labeling requirements and deceptive advertising concerning the alcohol content of Enlightened Kombucha offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).  Accordingly, Defendants' practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets Law § 201 in that Enlightened Kombucha is misbranded.

130.   Further, Defendants' representation that GT's Kombucha Beverages contain only 2 to 3 grams of sugar, when in fact the beverages contain nearly 8 grams of sugar, make such advertising false and misleading to a reasonable consumer, including Plaintiffs.  The excess amount of sugar in the beverages also makes GT's Kombucha Beverages less healthy than advertised.  Defendants' failure to comply with FDCA and parallel New York labeling requirements and deceptive advertising concerning the sugar content of GT's Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).  Accordingly, Defendants' practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets Law § 201 in that GT's Kombucha Beverages are misbranded.

131.   The foregoing deceptive acts and practices were directed at consumers.

132.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of GT's Kombucha Beverages to induce consumers to purchase same.

133.   Plaintiffs Retta and Manire and the New York Subclass members suffered a loss as a result of Defendants' deceptive and unfair trade acts. Specifically, as a result of Defendants' deceptive and unfair trade acts and practices, Plaintiffs Retta and Manire and the New York Subclass members suffered monetary losses associated with the purchase of GT's Kombucha Beverages because (a) they would not have purchased Enlightened Kombucha absent Defendants' representations and omission of a warning concerning the product's alcohol content; (b) they would not have purchased GT's Kombucha Beverages on the same terms absent Defendants' representations; (c) they paid a price premium for GT's Kombucha Beverages due to Defendants' misrepresentations and unauthorized nutrient content claims; and (c) GT's Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT V

## Breach of Express Warranty

134.   Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of the members of the proposed Class against Defendants.

135.   Plaintiff Manire also brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

136.   Plaintiffs Manire and Retta also bring this claim individually and on behalf of the members of the proposed New York subclass against Defendants.

137.   In connection with the sale of GT's Kombucha Beverages, Defendants issues an express warranty that GT's Kombucha Beverages contain between 2 to 3 grams of sugar per serving.

138.   Defendants' affirmation of fact and promise on GT's Kombucha Beverages' labels that the products contained between 2 to 3 grams of sugar per serving became part of the basis of the bargain between Defendants and Plaintiffs and Class members, thereby creating express warranties that the products would

conform to Defendants' affirmation of fact, representations, promise, and description.

139.   Defendants breached their express warranty because GT's Kombucha Beverages in fact contain substantially more sugar than promised on the labels.  In short, GT's Kombucha Beverages do not live up to Defendants' express warranty.

140.   Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased GT's Kombucha Beverages if they had known the true facts; (b) they paid for GT's Kombucha Beverages due to the mislabeling of the products; (c) they would not have purchased GT's Kombucha Beverages on the same terms if they had known the true facts; (d) they paid a price premium for GT's Kombucha Beverages due to Defendants' false warranties and affirmations of fact; and (e) GT's Kombucha Beverages did not have the characteristics or qualities as promised.

## COUNT VI

## Breach of Implied Warranty of Merchantability

141.   Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of the members of the proposed Class against Defendants.

142.   Plaintiff Manire also brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

143.   Plaintiffs Manire and Retta also bring this claim individually and on behalf of the members of the proposed New York subclass against Defendants.

144.   The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. To be "merchantable," goods must, *inter alia*, "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," "are adequately contained, packaged, and labeled as the agreement may

require," and "conform to the promise or affirmations of fact made on the container or label if any."

145.   Defendants, through their acts and omissions set forth herein, in their sale, marketing, and promotion of GT's Kombucha Beverages, impliedly warranted that (a) Enlightened Kombucha was a non-alcoholic beverage that could be lawfully purchased and safely consumed by anyone; (b) that Enlightened Kombucha contained antioxidant nutrients with established RDIs; (c) and that GT's Kombucha Beverages were low-sugar beverages.

146.   Defendants were merchants with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was in the sale to Plaintiffs and other consumers an implied warranty that those goods were merchantable.

147.   However, Defendants breached that warranty implied in the contract for the sale of GT's Kombucha Beverages in that the products do not contain the "quality and quantity" of kombucha beverages as impliedly warranted, and because GT's Kombucha Beverages do not conform to the promises made on their labels, as described herein.

148.   As a result of Defendants' conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

149.   Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased GT's Kombucha Beverages if they had known the true facts; (b) they paid for GT's Kombucha Beverages due to Defendants' implied warranties; (c) they would not have purchased GT's Kombucha Beverages on the same terms if they had known the true facts; (d) they paid a price premium for GT's Kombucha Beverages due to

Defendants' implied warranties; and (e) GT's Kombucha Beverages did not have the characteristics or qualities as impliedly warranted.

## COUNT VII

### Negligent Misrepresentation

150.   Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of the members of the proposed Class against Defendants.

151.   Plaintiff Manire also brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

152.   Plaintiffs Manire and Retta also bring this claim individually and on behalf of the members of the proposed New York subclass against Defendants.

153.   As discussed above, Defendants misrepresented that Enlightened Kombucha was a non-alcoholic beverage, that Enlightened Kombucha contained antioxidant nutrients, and that GT's Kombucha Beverages only had 2 to 3 grams of sugar per serving, when, in fact, Enlightened Kombucha is an alcoholic beverage, Enlightened Kombucha contains no antioxidant nutrients, and GT's Kombucha Beverages contain almost 8 grams of sugar.

154.   At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

155.   At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about GT's Kombucha Beverages.

156.   The negligent misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase GT's Kombucha Beverages.

157.   Plaintiffs and Class members would not have purchased GT's Kombucha Beverages, or would not have purchased the products on the same terms, if the true facts had been known.

158.   The negligent actions of Defendants caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT VIII**

**Fraud**

159.   Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of the members of the proposed Class against Defendants.

160.   Plaintiff Manire also brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

161.   Plaintiffs Manire and Retta also bring this claim individually and on behalf of the members of the proposed New York subclass against Defendants.

162.   As discussed above, Defendants provided Plaintiffs and Class members with false or misleading material information and failed to disclose material facts about GT's Kombucha Beverages, including but not limited to the fact that Enlightened Kombucha was falsely marketed as a non-alcoholic beverage, that Enlightened Kombucha does not contain any antioxidant nutrients, and that GT's Kombucha Beverages misrepresent the amount of sugar in the products.  These misrepresentations and omissions were made with knowledge of their falsehood.

163.   The misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended and actually induced Plaintiffs and Class members to purchase GT's Kombucha Beverages.

164.   The fraudulent actions of Defendants caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

### COUNT IX

### Unjust Enrichment

165.   Plaintiffs Retta, Schofield, and Manire bring this claim individually and on behalf of the members of the proposed Class against Defendants.

166.   Plaintiff Manire also brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

167.   Plaintiffs Manire and Retta also bring this claim individually and on behalf of the members of the proposed New York subclass against Defendants.

168.   Plaintiffs and members of the Class conferred benefits on Defendants by purchasing GT's Kombucha Beverages.

169.   Defendants have knowledge of such benefits.

170.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of GT's Kombucha Beverages.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represented that Enlightened Kombucha was a non-alcoholic beverage and that it contained antioxidant nutrients, and further misrepresented the amount of sugar in GT's Kombucha Beverages.  These misrepresentations caused injuries to Plaintiffs and members of the Class because they would not have purchased GT's Kombucha Beverages had the true facts been known.

171.   Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Class for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Retta, Schofield, and Manire as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b) For an order certifying the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Manire as representative of the California Subclass and Plaintiffs' attorneys as Class Counsel to represent the California Subclass members;

c) For an order certifying the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Retta and Manire as representatives of the New York Subclass and Plaintiffs' attorneys as Class Counsel to represent the New York Subclass members;

d) For an order declaring that Defendants' conduct violates the statutes referenced herein;

e) For an order finding in favor of Plaintiffs, the Class, the California Subclass, and the New York Subclass on all counts asserted herein;

f) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

g) For prejudgment interest on all amounts awarded;

h) For an order of restitution and all other forms of equitable monetary relief;

i) For injunctive relief as pleaded or as the Court may deem proper; and

j)   For an order awarding Plaintiffs and the Class their reasonable

attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  June 22, 2016                         Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/Yeremey Krivoshey*
                    Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          apersinger@bursor.com
          ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Kirsten Schofield, declare as follows:

1.     I am a plaintiff in this action.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.     The complaint filed in this action is filed in the proper place because Millennium Products, Inc. is a California company, is headquartered in this District, and sells hundreds of thousands of its products, including GT's Kombucha Beverages, in this District.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March ___, 2015 in

_____

KIRSTEN SCHOFIELD

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Jessica Manire, declare as follows:

1.     I am a plaintiff in this action.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.     The complaint filed in this action is filed in the proper place because Millennium Products, Inc. is a California company, is headquartered in this District, and sells hundreds of thousands of its products, including GT's Kombucha Beverages, in this District.  Further, I purchased GT's Kombucha Beverages in this District.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March 4, 2015 in Denver, CO.

_____
JESSICA MANIRE

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Jonathan Retta, declare as follows:

1.      I am a plaintiff in this action.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place because Millennium Products, Inc. is a California company, is headquartered in this District, and sells hundreds of thousands of its products, including GT's Kombucha Beverages, in this District.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March  9 , 2015 in

    ANNANDALE, VA                                    .

                                                        JONATHAN RETTA

**EXHIBIT A**



**EXHIBIT B**



**Mission In A Bottle:** *In 1995 I started making organic raw kombucha based on the belief that it could touch people's lives. For me, Kombucha represented everything that food should be: raw, unadulterated, and crafted by nature. Today that belief is stronger than ever. That's why I am honored and humbled to be able to share this gift with you.*

*GT Dave, Founder*

Kombucha is a cultured tea that is low in alcohol however federal law requires a warning statement on any product that may contain more than 0.5% of alcohol per volume.

GOVERNMENT WARNING: (I) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.

MILLENNIUM PRODUCTS, INC.
Contact us: Toll-Free (877) 735-8423
synergy@GTSkombucha.com   www.GTSkombucha.com
Certified Organic by Oregon Certifiers, Inc.

# SYNERGY

### organic & raw

enzymes + probiotics + polyphenols

CONTAINS ALCOHOL MUST BE 21 OR OLDER TO PURCHASE

CLASSIC™

reawaken
rebirth
repurpose
redefine

GT's

organic acids + aminos + electrolytes

TRILOGY™

16.2 fl oz    95% G.T.'s Kombucha    480 mL

NOTE TO OUR BELOVED FANS: GT's Kombucha is raw and alive, hand-crafted by nature and made with the best intentions. We refuse to do anything that would compromise our product's integrity or effectiveness. That's why we have chosen to modify our labeling instead of changing the way we make our products.

Ingredients: G.T.'s organic raw kombucha*, raspberry juice*, lemon juice*, fresh pressed ginger juice* and 100% pure love!!!

*Organically produced

Gluten-free • Vegan • Non-GMO

This product is considered a beer and contains a natural effervescence. Please open carefully.

KEEP REFRIGERATED
DO NOT SHAKE

CT. DE. HI. IA. MA. ME. NY. OR. VT 5¢ MI 10¢ OK+

CA CRV

## Nutrition Facts

Serving Size 8 fl. oz.
Servings Per Container About 2

Amount Per Serving

| | |
|---|---|
| Calories 30 | Calories from Fat 0 |

| | % Daily Value* |
|---|---|
| Total Fat 0g | 0% |
| Cholesterol 0mg | 0% |
| Sodium 10mg | 1% |
| Total Carbohydrate 7g | 2% |
|   Sugars 2g | |
| Protein 0g | |

ADDITIONAL NUTRIENTS (per bottle):
Folate 25% • Vitamin B1 20%
Vitamin B2 20% • Vitamin B3 20%
Vitamin B6 20% • Vitamin B12 20%

PER BOTTLE: Probiotics Lactobacillus Bacterium (1 billion organisms), S. boulardii (1 billion organisms), Polyphenols (10mg), Glucuronic Acid (10mg), L(+) Lactic Acid (25mg), Acetic Acid (300mg)

▼ THIS IS A RAW FOOD ▼ Strands of the culture may appear. These are natural, normal & only occur in raw kombucha.

8 50057 00311 6

**EXHIBIT C**

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## ABSTRACT AND STATEMENT
NOT IN SUIT

For briefing offers in compromise of liabilities and/or violations incurred under Chapters 32,51,52,53,68 and/or 78 of the Internal Revenue Code, and/or liabilities and/or violations incurred under the Federal Alcohol Administration Act.

| 1. OFFER SUBMITTED BY (Name and address) | OFFER IN COMPROMISE | |
|---|---|---|
| Millennium Products, Inc.<br>1248 W. 134th Street, #4<br>Gardena, California 90247 | 2. ORIGINATING OFFICE<br><br>California Field Office | 3. AMOUNT OF OFFER<br><br>$2,500.00 |
| | 4. PERMIT, LICENSE, OR REGISTRY NO. (If applicable)<br><br>N/A | 5. SYSTEM CONTROL NUMBER(S) |
| | 6. DOLLAR AMOUNT OF LIABILITY BEING COMPROMISED (if applicable)<br><br>$30,773.66 | |
| 7. TAXPAYER IDENTIFICATION NUMBER | | |

8. CHARGE
**VIOLATIONS:**

During the period April, 2004 through February, 2005, the proponent allegedly (1) produced 15,156 w.g. of herbal beverages that contained over 0.5% alcohol without having a basic permit, a violation of 27 U.S.C. 203(b)(1)&(2) and 27 CFR 24.106; (2) introduced product into interstate commerce without the proper labels, label approvals, marks, brands, packages and size and fill of containers, a violation of 27 U.S.C. 205(e) and 27 CFR 4.30-4.39; (3) distributed product without the government warning statement, a violation of 27 U.S.C. 215(a) and 27 CFR 16.21; and (4) removed product without paying excise tax, a violation of 26 U.S.C. 5041(a)&(b) and 27 CFR 24.270.

**BUSINESS IN WHICH ENGAGED:**
The proponent is in the business of producing herbal beverages.

**DATE OR PERIOD and LOCATION OF VIOLATIONS:**
The violations occurred during the period April, 2004 through February, 2005 at the proponent's premises located in Gardena, CA.

**AMOUNT AND TERMS OF OFFER:**
The proponent has submitted an offer of $2,500.00 in compromise of the above civil and criminal violations incurred under the Federal Alcohol Administration Act and Internal Revenue Code.

**RECOMMENDATIONS:**
The Director, Trade Investigations Division recommends acceptance of the offer.

(Continued on page(s)        )

9. I have considered the proposition to compromise the liability as charged herein, and, for the reasons embodied in the above abstract and statement, am of the opinion that it will be for the best interest of the United States to [X] ACCEPT [ ] REJECT the terms proposed.

10. SIGNATURE AND TITLE

**Assistant Administrator, Field Operations**

11. DATE

9-1-06

ATF F 5640.3 (10-94) PREVIOUS EDITIONS ARE OBSOLETE

**EXHIBIT D**



Our ENLIGHTENED™ line of GT's Kombucha is a new interpretation of an ancient elixir. It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us. With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from the inside out.

Ingredients: G.T.'s organic raw kombucha*, blueberry juice*, fresh pressed ginger juice*, and 100% pure love!!!

*Organically produced

Gluten-free • Vegan • Non-GMO

This product contains a trace amount of alcohol.

KEEP REFRIGERATED
DO NOT SHAKE

5¢ REF. ME & HI. PLEASE RECYCLE
CA CASH REFUND

7  22430 60016  1

**Nutrition Facts**
Serving Size 8 fl. oz.
Servings Per Container 2

Amount Per Serving

Calories 35 | Calories from Fat 0

% Daily Value*

Total Fat 0g 0%
Cholesterol 0mg 0%
Sodium 10mg 1%
Total Carbohydrate 8g 2%
Sugars 4g
Protein 0g

ADDITIONAL NUTRIENTS (per bottle):
Folate 25% • Vitamin B1 20%
Vitamin B2 20% • Vitamin B3 20%
Vitamin B6 20% • Vitamin B12 20%

PROBIOTIC ORGANISM CONTENT:
Bacillus coagulans GBI-30 6086: 1 billion
S. Boulardii: 1 billion

ANTIOXIDANTS & ORGANIC ACIDS
EGCG 100mg - Glucuronic Acid 10 mg
L(+) Lactic Acid 25mg - Acetic Acid 30 mg

SYNERGY organic & raw
ENLIGHTENED™
reawaken
rebirth
repurpose
redefine
GT'S

♥ THIS IS A RAW FOOD ♥ Strands of the culture may appear.
These are natural, normal & only occur in raw kombucha.

GINGERBERRY®
16 fl oz | 95% G.T.'s Kombucha | 480 mL

G.T. Dave began bottling Kombucha in 1995 from his mother's kitchen. He had no business plan, just a desire to share this gift with anybody who could benefit from it. Although G.T.'s Kombucha has grown from its humble beginnings, he remains committed to expanding the company gradually and organically, never sacrificing quality for the sake of profits.

WORDS OF ENLIGHTENMENT
There's comfort to be found in realizing our complete human connectedness.
Matt Phelps
Career College Eagle
Napa Valley, CA

MILLENNIUM PRODUCTS, INC
P.O. Box 2352, Beverly Hills, CA 90213 • (877)735-8423
synergy@GTSkombucha.com • www.GTSkombucha.com
Certified Organic by Organic Certifiers, Inc.

**EXHIBIT E**



**EXHIBIT F**

**RAW CHIA = RAW ENERGY.** Often called "runner's food", chia is a nutrient-rich superfood that provides sustained energy for your body. Packed with more than 8 times the omega-3s found in salmon, this small seed has big nutritional value. With more antioxidants than blueberries and more fiber than oatmeal, see for yourself how chia brings new life to our GT's Kombucha.

Ingredients: G.T.'s organic raw kombucha*, raw chia seeds*, raspberry juice* and 100% pure love!!!

*Organically produced.

Gluten-free • Vegan • Non-GMO

This product contains a trace amount of alcohol.

**KEEP REFRIGERATED
HIGHLY PERISHABLE
SHAKE GENTLY**

5¢ REF. ME & HI. PLEASE RECYCLE

CA CASH REFUND

 

7 22430 22016 1

## Nutrition Facts
Serving Size 8 fl. oz.
Servings Per Container 2

**Amount Per Serving**

| | |
|---|---|
| Calories 70 | Calories from Fat 30 |

| | % Daily Value* |
|---|---|
| **Total Fat** 3g | 5% |
| Trans Fat 0g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 10mg | 1% |
| **Total Carbohydrate** 7g | 2% |
| Sugars 2g | |
| Dietary Fiber 4g | 16% |
| **Protein** 2g | 4% |

**ADDITIONAL NUTRIENTS** (per bottle)
Omega-3 (Alpha-Linolenic Acid) 4200 mg
Omega-6 (Linoleic Acid) 1400 mg
**PROBIOTIC ORGANISM CONTENT:**
Bacillus coagulans GBI-30 6086: 1 billion
S. Boulardii: 1 billion
**ANTIOXIDANTS & ORGANIC ACIDS**
EGCG 100mg · Glucuronic Acid 10 mg
L(+) Lactic Acid 25mg · Acetic Acid 30 mg

♥ **THIS IS A RAW FOOD** ♥ Chia seeds may vary in color, size, texture and flavor due to seasonal and crop variances.



### SYNERGY
organic & raw

ENLIGHTENED™

reawaken
rebirth
repurpose
redefine

GT'S

RASPBERRY CHIA™

16 fl oz    95% G.T.'s Kombucha    480 mL

*organic acids + aminos + electrolytes*

*enzymes + probiotics + antioxidants*

*G.T. Dave* began bottling Kombucha in 1995 from his mother's kitchen. He had no business plan, just a desire to share this gift with anybody who could benefit from it. Although G.T.'s Kombucha has grown from its humble beginnings, he remains committed to expanding the company gradually and organically, never sacrificing quality for the sake of profits.

**WORDS OF ENLIGHTENMENT**

"Whatsoever you hope to accomplish, keep saying to yourself, 'It's worth the effort.'"

-Missy Astor
Thankfully retired
Red Wing, MN

Want to see YOUR quote on OUR Labels?
We invite you to Enlighten us @
facebook.com/GTsSynergyKombucha

*Kombucha is a food product and is not intended to diagnose, treat, cure or prevent any disease. If you are pregnant or nursing, please consult with your healthcare professional before consuming our products.

MILLENNIUM PRODUCTS, INC
P.O. Box 2352, Beverly Hills, CA 90213 · (877)735-8423
synergy@GTSkombucha.com · www.GTSkombucha.com
Certified Organic by Organic Certifiers, Inc.

**EXHIBIT G**



**U.S. Food and Drug Administration**
Protecting and Promoting *Your* Health

Inspections, Compliance, Enforcement, and Criminal Investigations

Unilever United States, Inc. 8/23/10

Department of Health and Human Services

Public Health Service
Food and Drug Administration
College Park, MD 20740

August 23, 2010

WARNING LETTER

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Michael B. Polk
President of Unilever Americas
Unilever, Inc.
700 Sylvan Avenue
Englewood, NJ 07632-3113

Re: CFSAN-OC-10-24

Dear Mr. Polk:

The Food and Drug Administration (FDA) has reviewed the label for your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product and reviewed your labeling for this product on your websites, www.lipton.com[1] and www.liptont.com[2] in August 2010. Based on our review, we have concluded that this product is in violation of the Federal Food, Drug, and Cosmetic Act (the Act). You can find the Act and regulations on FDA's website at www.fda.gov[3].

A link to .your website, www.lipton.com[4]. appears on your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product label. This website directs U.S. visitors to another website, www.liptont.com[5]. We have determined that your websites, www.lipton.com[6] and www.liptont.com[7]. are labeling within the meaning of section 201(m) of the Act for your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product.

Unapproved New Drug

Your website, www.liptont.com[8]. also promotes your Lipton Green Tea 100% Natural Naturally Decaffeinated product for conditions that cause it to be a drug under section 201(g)(1)(B) of the Act [21 U.S.C. § 321(g)(1)(B)].

For example, your webpage entitled "Tea and Health," subtitled "Heart Health Research" and further subtitled "Cholesterol Research" bears the following claim: "[F]our recent studies in people at risk for coronary disease have shown a significant cholesterol lowering effect from tea or tea flavonoids ... One of these studies, on post-menopausal women, found that total cholesterol was lowered by 8% after drinking 8 cups of green tea daily for 12 weeks ...."

The therapeutic claims on your website establish that the product is a drug because it is intended for use i the cure, mitigation, treatment, or prevention of disease. Your Lipton Green Tea 100% Natural Naturally Decaffeinated product is not generally recognized as safe and effective for the above referenced uses and,

therefore, the product is a "new drug" under section 201(p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior approval from FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

Your Lipton Green Tea 100% Natural Naturally Decaffeinated product is offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layperson can use this drug safely for its intended purposes. Thus, your Lipton Green Tea 100% Natural Naturally Decaffeinated product is misbranded under section 502(f)(1) of the Act in that the labeling for this drug fails to bear adequate directions for use [21 U.S.C. § 352(f)(1)] .

Unauthorized Nutrient Content Claims

Under section 403(r)(1)(A) of the Act [21 U.S.C. 343(r)(1)(A)], a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation, FDA) authorizing the use of such a claim. The use of a term, not defined by regulation, in food labeling to characterize the level of a nutrient misbrands a product under section 403(r)(1)(A) of the Act.

Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, an RDI must have been established for each of the nutrients that are the subject of the claim (21 CFR 101.54(g)(1)), and these nutrients must have recognized antioxidant activity (21 CFR 101.54(g)(2). The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e) (21 CFR 101.54(g)(3)). For example, to bear the claim "high in antioxidant vitamin C," the product must contain 20 percent or more of the RDI for vitamin C under 21 CFR 101.54(b). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity (21 CFR 101.54(g)(4)). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act.

Your webpage entitled "Tea and Health" and subtitled "Tea Antioxidants" includes the statement, "LIPTON Tea is made from tea leaves rich in naturally protective antioxidants." The term "rich in" is defined in 21 CFR 101.54(b) and may be used to characterize the level of antioxidant nutrients (21 CFR 101.54(g)(3)). However, this claim does not comply with 21 CFR 101.54(g)(4) because it does not include the nutrients that are the subject of the claim or use a symbol to link the term "antioxidant" to those nutrients. Thus, this claim misbrands your product under section 403(r)(2)(A)(i) of the Act.

This webpage also states that "tea is a naturally rich source of antioxidants." The term "rich source" characterizes the level of antioxidant nutrients in the product and, therefore, this claim is a nutrient content claim (see section 403(r)(1) of the Act and 21 CFR 101.13(b)). Even if we determined that the term "rich source" could be considered a synonym for a term defined by regulation (e.g., "high" or "good source"), nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). The claim "tea is a naturally rich source of antioxidants" does not include the nutrients that are the subject of the claim or use a symbol to link the term "antioxidant" to those nutrients, as required by 21 CFR 101.54(g)(4). Thus, this claim misbrands your product under section 403(r)(2)(A)(i) of the Act.

The product label back panel includes the statement "packed with protective FLAVONOID ANTIOXIDANTS." The term "packed with" characterizes the level of flavonoid antioxidants in the product; therefore, this claim is a nutrient content claim (see section 403(r)(1) of the Act and 21 CFR 101.13(b)). Even if we determined that the term "packed with" could be considered a synonym for a term defined by regulation, nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). The claim "packed with FLAVONOID ANTIOXIDANTS" does not comply with 21 CFR 101.54(g)1 because no RDI has been established for flavonoids. Thus, this unauthorized nutrient content claim causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

The above violations are not meant to be an all-inclusive list of deficiencies in your products or their labeling. It is your responsibility to ensure that all of your products are in compliance with the laws and regulations enforced by FDA. You should take prompt action to correct the violations. Failure to promptly correct these violations may result in regulatory actions without further notice, such as seizure and/or

injunction.

We note that your label contains a chart entitled "Flavonoid Content of selected beverages and foods." The chart appears to compare the amounts of antioxidants in your product with the amount of antioxidants in orange juice, broccoli, cranberry juice and coffee. However, the information provided may be misinterpreted by the consumer because although the chart is labeled, in part, "Flavonoid Content," the y-axis is labeled "AOX"; therefore, the consumer might believe that the chart is stating the total amount of antioxidants rather than specifically measuring the amount of flavonoids in the product.

You should take prompt action to correct these violations. Please respond to this letter within 15 days from receipt with the actions you plan to take in response to this letter, including an explanation of each step being taken to correct the current violations and prevent similar violations. Include any documentation necessary to show that correction has been achieved. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

You should direct your written reply to Latasha A. Robinson, Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5100 Paint Branch Parkway, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835.

Sincerely,

/s/


Jennifer A. Thomas
Acting Director
Office of Compliance
Center for Food Safety
and Applied Nutrition


cc: FDA New Jersey District

## Close Out Letter

- Unilever United States, Inc. - Close Out Letter 5/10/11[9]


Page Last Updated: 08/09/2011
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies


U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

     

For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of Health & Human Services


Links on this page:

1. http://www.lipton.com/

2. http://www.liptont.com/

3. http://www.fda.gov

4. http://www.lipton.com/

5. http://www.liptont.com/

6. http://www.lipton.com/

7. http://www.liptont.com/

8. http://www.liptont.com/

9. /ICECI/EnforcementActions/WarningLetters/2010/ucm267398.htm

**EXHIBIT H**



U.S. Department of **Health & Human Services**                                                         a A **A** **A**

# FDA U.S. Food and Drug Administration
Protecting and Promoting *Your* Health

A to Z Index | Follow FDA | En Español

**SEARCH**

| Home | Food | Drugs | Medical Devices | Radiation-Emitting Products | Vaccines, Blood & Biologics | Animal & Veterinary | Cosmetics | Tobacco Products |

## Inspections, Compliance, Enforcement, and Criminal Investigations



📄 Home  📄 Inspections, Compliance, Enforcement, and Criminal Investigations  📄 Compliance Actions and Activities  📄 Warning Letters

**Compliance Actions and Activities**

Warning Letters

2014

2013

2012

2011

2010

2009

2008

2007

2006

2005

2004

2003

2002

2001

2000

1999

1998

1997

1996

Tobacco Retailer Warning Letters

### Dr Pepper Snapple Group 8/30/10



**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
College Park, MD 20740

**AUG 30 2010**

**WARNING LETTER**

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Mr. Larry D. Young
President and CEO
Dr Pepper Snapple Group
5301 Legacy Drive
Plano, Texas 75024

Re: CFSAN-OC-10-26

Dear Mr. Young:

The Food and Drug Administration (FDA) has reviewed the label for your Canada Dry Sparkling Green Tea Ginger Ale. We examined the product label and your website at www.canadadry.com in July of 2010. Based on our review, we have concluded that your green tea ginger ale product is in violation of the Federal Food, Drug, and Cosmetic Act (the Act). You can find the Act and regulations on FDA's website at www.fda.gov.

Your Sparkling Green Tea Ginger Ale is misbranded within the meaning of section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)] because the product label bears a nutrient content claim that is not authorized by regulation. Under section 403(r)(2)(A)(i) of the Act, a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation, FDA) authorizing the use of such a claim. The use of a term, not defined by regulation, in food labeling to characterize the level of a nutrient misbrands a product under section 403(r)(1)(A) of the Act.

Your Sparkling Green Tea Ginger Ale bears the claim, "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM GREEN TEA & VITAMIN C***" with the double asterisk referring to the statement, "** *Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" on the principal display panel of the product label. In the context of this label the term "enhanced" is an unauthorized synonym for a "more" nutrient content claim. FDA has defined the nutrient content claim "more" and its authorized synonyms in 21 CFR 101.54(e). "More" nutrient content claims may be used on the label or in the labeling of foods to describe the level of nutrients, provided that (1) the food contains at least 10 percent more of the Reference Daily Intake or Daily Reference Value for the nutrient per reference amount customarily consumed than an appropriate reference food, (2) where the claim is based on nutrients that are added to the food, that the fortification is in accordance with the policy on fortification of foods in 21 CFR 104.20, and (3) the claim bears the required information for relative claims as described in 21 CFR 101.130)(2) and 101.54(e)(1)(iii).

Your Sparkling Green Tea Ginger Ale is a carbonated beverage. The policy on fortification in 21 CFR 104.20(a) states that the FDA does not consider it appropriate to fortify snack foods such as carbonated beverages. Additionally, the label of your product does not state the identity of a reference food and the percentage (or fraction) of the amount of the nutrient(s) in the reference food by which the nutrient(s) in the labeled food differs, as is required for "more" nutrient content claims under 101.130)(2). Therefore, even if the term "enhanced" was an authorized synonym for "more," your product would not meet the requirements for a "more" claim under 21 CFR 101.54(e)(1).

Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, a Reference Daily Intake (RDI) must have been established for each of the nutrients that are the subject of the claim (21 CFR 101.54(g)(1)), and these nutrients must have recognized antioxidant activiy (21 CFR 101.54(g)(2)). The level of each nutrient that is the subject of the claim must also be sufficient to qualify the claim under 21 CFR 101.54(b), (c), or (e) (21 CFR 101.54(g)(3)). For example, to bear the claim "high in antioxidant Vitamin C," the product must contain 20 percent or more of the RDI for Vitamin C under 21 CFR 101.54(b). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that

appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity (21 CFR 101.54(g)(4)). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act [21 U.S.C. § 343(r)(2)(A)(i)].

The nutrient content claim for your Sparkling Green Tea Ginger Ale product of "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM GREEN TEA & VITAMIN C** .... **Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" identifies Vitamin C as a nutrient associated with the antioxidant claim. Vitamin C is a nutrient that is a recognized source of antioxidants. Your Nutrition Facts panel declares Vitamin C at 100% of the Daily Reference Value (DRV), which accounts for 60 mg of the claimed 200 mg of antioxidants. According to the nutrient content claim on your product label, the remainder 140 mg of antioxidants must be derived from green tea or green tea flavonoids, which are not nutrients with recognized antioxidant activity under 21 CFR § 101.54(g)(2). Therefore, the claim "ENHANCED WITH 200 mg OF ANTIOXIDANTS FROM GREEN TEA & VITAMIN C** .... **Each 8 oz serving contains 200 mg of antioxidants from Green Tea Flavonoids and Vitamin C" does not meet the requirements of 21 CFR 101.54(g) and misbrands your product under section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)).

The above violations are not meant to be an all-inclusive list of deficiencies in your products or their labeling. It is your responsibility to ensure that all of your products are in compliance with the laws and regulations enforced by FDA. You should take prompt action to correct these violations. Failure to promptly correct these violations may result in regulatory actions without further notice, such as seizure and/or injunction.

Please respond to this letter within 15 days from receipt with the actions you plan to take in response to this letter, including an explanation of each step being taken to correct the current violations and prevent similar violations. Include any documentation necessary to show that correction has been achieved. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

You should direct your written reply to Judith G. Dausch, Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5100 Paint Branch Parkway, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835.

Sincerely,

/s/

Jennifer Thomas
Acting Director
Office of Compliance
Center for Food Safety
and Applied Nutrition

cc: FDA Dallas District

Page Last Updated: 09/14/2010
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.



FDA

Accessibility     Contact FDA     Careers     FDA Basics     FOIA     No Fear Act     Site Map     Transparency     Website Policies

**U.S. Food and Drug Administration**
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

For Government      For Press

Combination Products
Advisory Committees
Science & Research
Regulatory Information
Safety
Emergency Preparedness
International Programs
News & Events
Training and Continuing Education
Inspections/Compliance
State & Local Officials
Consumers
Industry
Health Professionals
FDA Archive

U.S. Department of Health & Human Services

**EXHIBIT I**



**U.S. Food and Drug Administration**
Protecting and Promoting *Your* Health

Home Inspections, Compliance, Enforcement, and Criminal Investigations Compliance Actions and Activities Warning Letters

## Inspections, Compliance, Enforcement, and Criminal Investigations

Redco Foods, Inc. 2/22/10

Department of Health and Human Services

Public Health Service
Food and Drug Administration
College Park, MD 20740

FEB 22 2010

WARNING LETTER

VIA OVERNIGHT MAIL

Mr. Douglas N. Farrell, General Manager
Redco Foods, Inc.
One Hansen Island
Little Falls, NY 13365

Re: CFSAN-OC-10-10

Dear Mr. Farrell:

The Food and Drug Administration (FDA) has reviewed the label for your "Salada Naturally Decaffeinated Green Tea" product and your website www.greentea.com. Based on our review, we have concluded that your green tea products are in violation of the Federal Food, Drug, and Cosmetic Act (the Act). You can find the Act and regulations on FDA's website at www.fda.gov.

Unapproved New Drug

Your website, www.greentea.com. promotes your green tea products for conditions that cause them to be drugs under section 201(g)(1)(B) of the Act [21 U.S.C. § 321(g)(1)(B)]. Examples of disease claims that cause your products to be drugs include:

On a web page entitled "About Green Tea":

"A Steaming Cup of Medicine" Article:

• "And today, scientific [sic] are ... finding that green tea can ... inhibit the cancer process at virtually every stage, regulate cholesterol levels ... and ward off viruses, fungi and food-borne bacteria."

• "[I]t also helps inhibit dental plaque formation, lower the risk of type 2 diabetes ...."

"The Origins of Tea" Article:

- "By this time, tea was prized as a medicine that could cure digestive disorders ...

- "The tea leaves were also applied externally as a paste to ease the pains of rheumatism."

"Is Green Tea a Brain Food?" Article:

• "[R]ecent studies of the effects of green tea's catechins on animal brains are intriguing:

o "* Less buildup of plaque[.] Finally, mice specially bred to develop Alzheimer's disease developed up to 54% less beta-amyloid buildup in their brains when they were given daily injections of the green tea catechin EGCg.... Beta-amyloid plaques are believed to be a major cause of the brain cell death and dissue [tissue] loss seen in Alzheimer's disease."

The therapeutic claims on your website establish that your green tea products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease. Your green tea products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products are "new drugs" under section 201 (p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior approval from FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

Your green tea products are offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layperson can use these drugs safely for their intended purposes. Thus, your green tea products are misbranded under section 502(f)(1) of the Act in that the labeling for these drugs fails to bear adequate directions for use [21 U.S.C. § 352(f)(1)].

Unauthorized Health Claims

Your green tea products are further misbranded under section 403(r)(1 )(B) of the Act [21 U.S.C. § 343(r)(1)(B)] because its labeling bears unauthorized health claims. Your website, www.greentea.com. was reviewed and was found to contain a number of unauthorized health claims, including:

"Green Tea and the FDA: Who's Right?" Article:

• "[O]ver the past 25 years, countless studies showing the positive effect of green tea on several important risk factors for cardiovascular disease have been published in scientific journals."

• "[M]ost studies have shown that green tea reduces certain CVD risk factors with a daily intake of 4-5 cups ...."

The above claims are unauthorized health claims because there is no health claim authorized by regulation or the Act that provides for health claims that characterize the relationship between green tea and cardiovascular disease.

Unauthorized Nutrient Content Claims

Under section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)], a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation FDA) authorizing the use of such a claim. The use of a term, not defined by regulation, in food labeling to characterize the level of a nutrient misbrands a product under section 403(r)(1)(A) of the Act.

Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, an RDI must have been established for each of the nutrients that are the subject of the claim (21 CFR 101.54(g)(1)), and these nutrients must have recognized antioxidant activity (21 CFR 101.54(g)(2)). The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e) (21 CFR 101.54(g)(3)). For example, to bear the claim "high in antioxidant vitamin C," the product must contain 20 percent or more of the RDI for vitamin C under 21 CFR 101.54(b)). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity (21 CFR 101.54(g)(4)). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act [21 U.S.C. § 343(r)(2)(A)(i)].

The principal display panel of the product label includes the statement "Fortified with Purple Antioxidants [/ Fortified with Grapeskins, Rooibos (Red Tea), Anthocyanins ..." In the context of the label, the term "antioxidants" refers, in part, to grapeskins, rooibos (red tea), and anthocyanins. The term "fortified" is defined by regulation and may be used to describe the level of certain substances for which an RDI or Daily Reference Value (DRV) has been established [21 CFR 101.54(e)]. However, there are no RDIs or DRVs for grapeskins, rooibos (red tea) or anthocyanins. Therefore, the claim "Fortified with Grapeskins, Rooibos (Red Tea), Anthocyanins" is unauthorized and misbrands your product under section 403(r)(1)(A) of the Act.

In addition, nutrient content claims using the term "antioxidant" may only be made for nutrients for which a Reference Daily Intake (RDI) has been established [21 CFR 101.54(g)(1)]. As noted above, there are no RDIs for grapeskins, rooibos (red tea) or anthocyanins. Therefore, the claim "Fortified with Purple Antioxidants ... Grapeskins. Rooibos (Red Tea), Anthocyanins" is an unauthorized nutrient content claim that causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

The label for this product also bears the unauthorized nutrient content claim "One of the antioxidants known as EGCG (Epigallocatechin gallate) is abundantly found in green tea leaves." This claim is a nutrient content claim because "abundantly found" characterizes the level of EGCG in your product [see section 403(r)(1) of the Act (21 U.S.C. § 343(r)(1)) and 21 CFR 101.13(b)]. Even if we determined that the term "abundantly found" could be considered a synonym for a term defined by regulation (e.g., "high" or "good source"), nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). This claim does not comply with 21 CFR 101.54(g)(1) because no RDI has been established for EGCG. Thus, this unauthorized nutrient content claim causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

The above violations are not meant to be an all-inclusive list of deficiencies in your products or their labeling. It is your responsibility to ensure that all of your products are in compliance with the laws and regulations enforced by FDA. You should take prompt action to correct the violations. Failure to promptly correct these violations may result in regulatory actions without further notice, such as seizure and/or injunction.

You should take prompt action to correct these violations. Please respond to this letter within 15 days from receipt with the actions you plan to take in response to this letter, including an explanation of each step being taken to correct the current violations and prevent similar violations. Include any documentation necessary to show that correction has been achieved. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

You should direct your written reply to Kathleen M. Lewis, Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5100 Paint Branch Parkway, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835.

Sincerely,

/S/

Roberta F. Wagner
Director
Office of Compliance
Center for Food Safety
and Applied Nutrition


cc: FDA New York District

Page Last Updated: 03/03/2010
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

> Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies


U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

      

> For Government For Press

> Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of Health & Human Services

Links on this page:

**EXHIBIT J**

U.S. Department of **Health & Human Services**                                           a A **A**

# FDA U.S. Food and Drug Administration
Protecting and Promoting *Your* Health

A to Z Index  |  Follow FDA  |  En Español

SEARCH

| Home | Food | Drugs | Medical Devices | Radiation-Emitting Products | Vaccines, Blood & Biologics | Animal & Veterinary | Cosmetics | Tobacco Products |

## Inspections, Compliance, Enforcement, and Criminal Investigations

Home    Inspections, Compliance, Enforcement, and Criminal Investigations    Compliance Actions and Activities    Warning Letters

**Compliance Actions and Activities**

- Warning Letters
- 2014
- 2013
- 2012
- 2011
- 2010
- 2009
- 2008
- 2007
- 2006
- 2005
- 2004
- 2003
- 2002
- 2001
- 2000
- 1999
- 1998
- 1997
- 1996
- Tobacco Retailer Warning Letters

### Diaspora Tea & Herb dba Rishi Tea 4/20/11



**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
Minneapolis District Office
Central Region
250 Marquette Avenue, Suite 600
Minneapolis, MN  55401
Telephone: (612) 334-4100
FAX: (612) 334-4142

April 20, 2011

**WARNING LETTER**

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Refer to MIN 11 – 21

Joshua Kaiser
President and Co-owner
Diaspora Tea & Herb Co., LLC
427 East Stewart Street
Milwaukee, Wisconsin  53207

Dear Mr. Kaiser:

This is to advise you that the Food and Drug Administration (FDA) reviewed your website at the Internet address http://www.rishi-tea.com/store/index.php in January 2011.  FDA has determined that your Oolong Tea, Ginger, Organic Botanical, Green Oolong Tea, 100% Premium Tealeaf Powder, and Pu-erh Tea products are promoted for conditions that cause the products to be drugs under section 201(g)(1)(B) of the Federal Food, Drug and Cosmetic Act (the Act), 21 U.S.C. § 321(g)(1)(B).  The therapeutic claims on your website establish that these products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease.  Additionally, FDA has determined that your Yerba Maté Shade Grown, Organic Yerba Maté, White Tea, Pu-erh Tea, Green Oolong Tea, 100% Premium Tealeaf Powder, Matcha, 100% Premium Tea Powder, Blueberry Rooibos, Organic Fair Trade Rooibos Blend, Green Rooibos (Green Bush), Organic Fair Trade Botanical, and Super Green, Organic Japanese Green Tea products are also misbranded within the meaning of section 403(r)(1)(A) of the Act, 21 U.S.C. § 343(r)(1)(A).  The marketing of these products with these claims violates the Act.  You can find copies of the Act through links on FDA's home page at http://www.fda.gov.

**I. Unapproved New Drugs**

Examples of disease claims on your website http://www.rishi-tea.com/store/index.php include:

**Ginger, Organic Botanical**

- "[G]inger is used in food and drinks as a preventive medicine against colds [and] flus."

**Green Oolong Tea, 100% Premium Tealeaf Powder**

- "The powerful antioxidants found in tea are believed to help prevent cancer [and] lower cholesterol…."

**Pu-erh Tea**

- "Recent research suggests that consuming 5-8 cups of Pu-erh Tea each day can reduce cholesterol and plaque of the arteries."

**Oolong Tea**

- "Regular consumption of Oolong Tea is linked to the reduction of plaque in the arteries, reduction of cholesterol and lowering of blood sugar."
- "Oolong Tea is…prized for its cholesterol reducing…."

Your Oolong Tea, Ginger, Organic Botanical, Green Oolong Tea, 100% Premium Tealeaf Powder and Pu-erh

Tea products are not generally recognized as safe and effective for the above referenced uses and, therefore, are also "new drugs" under section 201(p) of the Act, 21 U.S.C. § 321(p).  New drugs may not be legally marketed in the U.S. without prior approval from FDA, as described in section 505(a) of the Act, 21 U.S.C. § 355(a). FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

**II. Unauthorized Nutrient Content Claims**

Under section 403(r)(1)(A) of the Act, a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation, FDA) authorizing the use of such a claim.  Characterizing the level of a nutrient in food labeling of a product without complying with specific requirements pertaining to nutrient content claims for that nutrient misbrands the product under section 403(r)(1)(A) of the Act.

Nutrient content claims that use the defined terms "rich in" or "high" may be used in the labeling of a food only if the food contains 20 percent or more of the daily value (DV) of that nutrient per reference amount customarily consumed (RACC), Title 21, Code of Federal Regulations (21 CFR), 101.54(b)(1). Such claims may not be made about a nutrient for which there is no established DV.  However,  your website bears "high" and "rich in" nutrient content claims about nutrients for which there are no established DV.

The following are examples of unauthorized "high" and "rich in" nutrient content claims on your website:

**Pu-erh Tea**

- "[R]ich in Tea Polyphenols and Theaflavins…rich in Thearubigin and Theabrownin…."

**Super Green, Organic Japanese Green Tea**

- "Super Green is…high in amino acids…."

**White Tea**

- "White Tea…contain[s] high concentrations of…L-Theanine Amino Acid."

Additionally, your website bears nutrient content claims using the term "antioxidant."  Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, a Recommended Daily Intake (RDI) must have been established for each of the nutrients that are the subject of the claim, 21 CFR 101.54(g)(1), and these nutrients must have recognized antioxidant activity, 21 CFR 101.54(g)(2). The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e), 21 CFR 101.54(g)(3). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity, 21 CFR 101.54(g)(4). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act.

The following are examples of nutrient content claims on your website that use the term "antioxidant" but do not include the names of the nutrients that are the subject of the claim as required under 21 CFR 101.54(g)(4):

**Yerba Maté Shade Grown, Organic Yerba Maté**

- "Yerba Maté is…rich in… antioxidants."

**Blueberry Rooibos, Organic Fair Trade Rooibos Blend**

- "Antioxidant-rich…."

**Green Rooibos (Green Bush), Organic Fair Trade Botanical**

- "Caffeine-free Green Rooibos…contain[s] high concentrations of antioxidants…."

Additionally, the following are examples of nutrient content claims on your website that use the term "antioxidant," but where the nutrients that are the subject of the claim do not have an established RDI as required under 21 CFR 101.54(g)(1):

**White Tea**

- "White Tea… contain[s] high concentrations of… antioxidant polyphenols (tea catechins)…."

**Matcha, 100% Premium Tea Powder**

- "Antioxidant rich…222mg polyphenols per serving!"

**Genmai Green Tea, 100% Premium Tealeaf Powder**

- "Antioxidant rich…65mg polyphenols per serving!"

**Green Oolong Tea, 100% Premium Tealeaf Powder**

- "Antioxidant rich…109mg polyphenols per serving!"
- "[R]ichest sources of flavonoid antioxidants…."

The above violations are not meant to be an all-inclusive list of deficiencies in your products and their labeling. It is your responsibility to ensure that products marketed by your firm comply with the Act and its implementing regulations. We urge you to review your website, product labels, and other labeling and promotional materials for your products to ensure that the claims you make for your products do not cause them to violate the Act. The Act authorizes the seizure of illegal products and injunctions against manufacturers and distributors of those products, 21 U.S.C. §§ 332 and 334. You should take prompt action to correct these violations and prevent their future recurrence.  Failure to do so may result in enforcement action without further notice.

Please respond in writing within 15 working days from your receipt of this letter. Your response should outline the specific actions you are taking to correct these violations and to prevent similar violations. Your response should include in your response documentation such as revised labels or other useful information that would assist us in evaluating your corrections. If you cannot complete all corrections before you respond, we expect that you will explain the reason for the delay and state when you will correct any remaining violations.

Your reply should be sent to the attention of Compliance Officer Tyra S. Wisecup at the address on the

letterhead.

Sincerely,

/s/

Gerald J. Berg
Director
Minneapolis District

---

## Close Out Letter

● Diaspora Tea & Herb Co., LLC - Close Out Letter 2/3/12

---

Page Last Updated: 02/10/2012

Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.



**FDA**    Accessibility    Contact FDA    Careers    FDA Basics    FOIA    No Fear Act    Site Map    Transparency    Website Policies

### U.S. Food and Drug Administration

10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)

Email FDA

For Government        For Press

Combination Products

Advisory Committees

Science & Research

Regulatory Information

Safety

Emergency Preparedness

International Programs

News & Events

Training and Continuing Education

Inspections/Compliance

State & Local Officials

Consumers

Industry

Health Professionals

FDA Archive

U.S. Department of **Health & Human Services**

**EXHIBIT K**

# BURSOR & FISHER
### P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

ANNICK M. PERSINGER
YEREMEY KRIVOSHEY
Tel: 925.300.4455
Fax: 925.407.2700
apersinger@bursor.com
ykrivoshey@bursor.com

January 29, 2015

*__Via Certified Mail - Return Receipt Requested__*

Millennium Products, Inc.
4646 Hampton St.
Vernon, California 90058

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

        This letter serves as a notice and demand for corrective action on behalf of my clients, Jonathan Retta, Kirsten Schofield, and Jessie Manire and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).  This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

        You have participated in the manufacture, marketing, and sale of GT's Kombucha and Synergy.  GT's Kombucha and Synergy's labels include unauthorized nutrient content claims in violation of 21 C.F.R. 101.54(g), as well as federal and state law.  As a result, GT's Kombucha and Synergy products are misbranded.

        Mr. Retta and Ms. Manire purchased GT's Kombucha and Synergy based on the antioxidant representations on the labels.  Ms. Schofield purchased GT's Kombucha based on the antioxidant representations on the labels.  They would not have purchased GT's Kombucha or Synergy absent the antioxidant claims on the labels.

        Mr. Retta, Ms. Schofield, and Ms. Manire are acting on behalf of a class defined as all persons nationwide who purchased GT's Kombucha and/or Synergy (hereafter, the "Class").

        To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel GT's Kombucha and Synergy; (2) issue an immediate recall on any GT's Kombucha and Synergy products bearing misbranded labels; and (3) make full restitution to all purchasers of GT's Kombucha and Synergy of all purchase money obtained from sales thereof.

BURSOR&FISHER
P.A.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, and manufacturing process for GT's Kombucha and Synergy;

2. All communications with the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing and sales of GT's Kombucha and Synergy;

3. All documents concerning the advertisement, marketing, or sale of GT's Kombucha and Synergy; and

4. All communications with customers concerning complaints or comments concerning GT's Kombucha and Synergy.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Yeremey O. Krivoshey

**EXHIBIT L**

# BURSOR & FISHER
P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

YEREMEY KRIVOSHEY
Tel: 925.300.4455
Fax: 925.407.2700
ykrivoshey@bursor.com

November 11, 2015

*Via Certified Mail - Return Receipt Requested*

Whole Foods Market, Inc.
C T Corporation System
1999 Bryan St., STE 900
Dallas, TX 75201

Target Corporation
1000 Nicollet Mall
Minneapolis, MN 55403

The Kroger Co.
CSC-Lawyers Incorporating Service
50 W. Broad St, Suite 1800
Columbus, OH 43215

Wal-Mart Stores, Inc.
The Corporation Company
124 West Capitol Avenue, Suite 1900
Little Rock, AR 722201

Safeway Inc.
The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

Costco Wholesale Corporation
John Sullivan
999 Lake Dr.
Issaquah, WA 98027

Re:     Demand Letter Pursuant to California Civil Code § 1782,
        Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my clients, Jonathan Retta, Kirsten Schofield, and Jessie Manire and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9). This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

You have participated in the marketing and sale of GT's Enlightened Kombucha and Enlightened Synergy. Every flavor of GT's Enlightened Kombucha and Enlightened Synergy is marketed as a non-alcoholic beverage when, in fact, the beverages contain two to seven times more alcohol than the legal limit for non-alcoholic beverages.

BURSOR&FISHER
P.A.

Two independent, TTB certified laboratories, Brewing & Distilling Analytical Services, LLC and ETS Laboratories, conducted tests on multiple batches of GT's Enlightened Kombucha and Enlightened Synergy beverages.  Each test showed that every bottle of the products tested contained a level of alcohol by volume significantly greater than 0.5 percent.  Testing showed that the beverages may contain alcohol levels as high as 3.81 percent by volume.

Despite the significant presence of alcohol, the beverages do not contain the government warning required by 27 C.F.R. § 16.20.  Further, the beverages are sold to minors and customers are not in any way notified about the significant presence of alcohol.  In fact, the beverages' labels misleadingly state that they contain only a "trace" amount of alcohol even though the beverages contain two to seven times the legal limit for non-alcoholic beverages.

Mr. Retta, Ms. Manire, and Ms. Schofield purchased GT's Enlightened Kombucha and Enlightened Synergy with the belief that the products were non-alcoholic.  The labels of the products my clients purchased did not bear a government warning concerning the consumption of alcoholic beverages, or any other warning concerning the alcoholic content of the beverages.  My clients would not have purchased the products had they known that they contained significant levels of alcohol or were considered alcoholic beverages.

GT's Enlightened Kombucha and Enlightened Synergy's labels also include unauthorized nutrient content claims in violation of 21 C.F.R. 101.54(g), as well as federal and state law.  As a result, GT's Enlightened Kombucha and Enlightened Synergy products are misbranded.  Mr. Retta, Ms. Manire, and Ms. Schofield purchased GT's Enlightened Kombucha and Enlightened Synergy based on the antioxidant representations on the labels.  They would not have purchased GT's Kombucha or Synergy absent the antioxidant claims on the labels.

Mr. Retta, Ms. Schofield, and Ms. Manire are acting on behalf of a class defined as all persons nationwide who purchased GT's Enlightened Kombucha and/or Enlightened Synergy (hereafter, the "Class").

To cure the defects described above, we demand that you (1) issue an immediate recall on any GT's Enlightened Kombucha and Enlightened Synergy products; and (2) make full restitution to all purchasers of GT's Enlightened Kombucha and Enlightened Synergy of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, alcohol content, testing, and manufacturing process for GT's Enlightened Kombucha and Enlightened Synergy;

2. All communications with the U.S. Food and Drug Administration and the Alcohol and Tobacco Tax and Trade Bureau concerning the product development, manufacturing, marketing and sales of GT's Enlightened Kombucha and Enlightened Synergy;

BURSOR&FISHER
P.A.

3.   All communications with Millennium Products, Inc.;

4.   All documents concerning the advertisement, marketing, or sale of GT's Enlightened Kombucha and Enlightened Synergy;

5.   All communications with customers concerning complaints or comments concerning GT's Enlightened Kombucha or Enlightened Synergy;

6.   All personal identifying information, including email addresses, home addresses, and telephone numbers, of any persons that have purchased GT's Enlightened Kombucha or Enlightened Synergy in the United States.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  For your convenience and further notice, I have attached as **Exhibit A** the Third Amended Class Action Complaint from the *Retta v. Millennium Prods., Inc*., Case No. 2:15-cv-01801-PSG-AJW case pending in the United States District Court for the Central District of California, which asserts similar claims on behalf of my clients and a similar class of consumers against Millennium Products, Inc., the manufacturer and distributor of GT's Enlightened Kombucha and Enlightened Synergy.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Yeremey O. Krivoshey