**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
apersinger@bursor.com
ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN RETTA, KIRSTEN SCHOFIELD, and JESSICA MANIRE on Behalf of Themselves and all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MILLENNIUM PRODUCTS, INC., and WHOLE FOODS MARKET, INC., <br><br> Defendants. | Case No.  2:15-cv-01801-PSG-AJW <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE** <br><br> Date:   October 17, 2016 <br> Time:   1:30 p.m. <br> Courtroom 880 <br><br> Judge: Hon. Philip S. Gutierrez |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ................................................................... 1

II. PROCEDURAL BACKGROUND .............................................. 4

III. THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS .................................................. 6

IV. TERMS OF THE PROPOSED SETTLEMENT ............................ 8

    A. Monetary Relief for Class Members ................................. 9

    B. Injunctive Relief ......................................................... 10

    C. Payment of Incentive Awards and Attorneys' Fees, Costs and Expenses ............................................................. 10

    D. Payment of Notice and Administrative Fees ...................... 11

V. THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE ......................................................... 11

    A. Strength of Plaintiffs' Case .......................................... 11

    B. Risk of Continuing Litigation ....................................... 12

    C. Risk of Maintaining Class Action Status .......................... 13

    D. The Extent of Discovery and Status of Proceedings............. 14

    E. Experience and Views of Counsel ................................... 14

VI. THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS, AND ENTER THE PRELIMINARY APPROVAL ORDER ................ 15

    A. The Settlement Should Be Preliminarily Approved Because It Satisfies Accepted Criteria .......................................... 15

    B. The Proposed Settlement Class Should Be Certified............. 16

        1. The Class Satisfies Rule 23(a) ................................. 17

            a. Numerosity ............................................... 17

            b. Commonality ............................................. 17

            c. Typicality.................................................. 19

            d. Adequacy ................................................. 19

        2. The Class Satisfies Rule 23(b)(3) ............................. 20

            a. Common Questions of Law and Fact Predominate............................................... 20

            b. A Class Action Is the Superior Mechanism for Adjudicating This Dispute................................ 21

        3. The Class Also Satisfies Rule 23(b)(2) ....................... 22

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

i

VII.    THE PROPOSED NOTICE PROGRAM CONSTITUTES
        ADEQUATE NOTICE AND SHOULD BE APPROVED ........................... 23

VIII.   CONCLUSION ................................................................................. 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Alaniz v. California Processors, Inc.*,
  73 F.R.D. 269 (N.D. Cal. 1976) ...................................................................... 6, 16

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................... 17, 21, 22

*Apple Computer Sec. Litig.*,
  1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ...................................... 13

*Arnold v. United Artists Theatre Circuit, Inc.*,
  158 F.R.D. 439 (N.D. Cal. 1994) ...................................................................... 18

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ..................................................................... 8

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ....................................................................... 11, 15

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .......................................................................... 15

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
  2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ........................................................ 12

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ....................................................................... 22, 23

*Fulford v. Logitech, Inc.*,
  2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ........................................ 14

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................ 12

*Gen. Tel. Co. of the Southwest Falcon*,
  457 U.S. 147 (1982) ..................................................................................... 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... passim

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .......................................................................... 14

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................................ 13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 14

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

iii

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .................................................................. 7

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................................... 6, 7

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................... 6

*Lilly v. Jamba Juice Co.*,
  2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ................................... 22

*Livingston v. Toyota Motor Sales USA*,
  1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995) ............................... 16

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................. 7, 8, 9, 11

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ................................................................................ 8

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................... 12, 15

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ........................................................ 17

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................... 19

*Veritas Software Corp. Sec. Litig.*,
  2007 U.S. App. LEXIS 17623 (9th Cir. 2007) .................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ......................................................................... 18

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................. 20

**STATUTES**

NY GBL § 349 ................................................................................... 4, 21

**RULES**

Federal Rules of Civil Procedure 23 .............................................. passim

**OTHER AUTHORITIES**

Manual for Complex Litigation, § 21.312 (4th ed. 2004) ....................... 6

Manual for Complex Litigation, § 21.632 (4th ed. 2004) ..................... 15

Newberg on Class Actions § 11.25 (1992)...............................................................6, 16

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

v

# I.   INTRODUCTION

Plaintiffs, by and through Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  This is a consumer class action lawsuit filed on March 11, 2015. The lawsuit claims that Defendant Millennium Products, Inc. ("Millennium") mislabeled its Classic and Enlightened kombucha beverages by:

(1)   using the term "antioxidant" on the labels of the Subject Products despite the fact that the products allegedly do not contain antioxidant nutrients;

(2)   selling GT's Enlightened Kombucha and Enlightened Synergy products as non-alcoholic when those products allegedly contain two to seven times the amount of alcohol permitted for non-alcoholic beverages; and

(3)   understating the sugar content of the Subject Products on the labels of the Subject Products or failing to include added sugar as a listed ingredient despite the fact that the Subject Products allegedly contain sugar as an added ingredient.

The lawsuit also alleges that Defendant Whole Foods Market, Inc. violated the law by reselling the Millennium's mislabeled products.  Defendants have vigorously denied these allegations and asserted numerous defenses.

The Agreement (hereafter, "Settlement") and its exhibits are attached as Exhibit 1 to the Declaration of L. Timothy Fisher, filed herewith.  As more specifically set forth in the Settlement, and as described in more detail below, the parties have reached a settlement that provides a real and substantial monetary benefit to the Class.  Without any admission of liability, Defendants have agreed to provide up to $7.5 million to pay claims for those who purchased one or more flavors of the Subject Products.  Class Members can choose between receiving cash or vouchers redeemable for free Millennium products.  Class Members can receive a

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the settlement agreement.  *See* Fisher Decl. Ex. 1.

$2.50 cash payment for each bottle of every Subject Product they purchased up to $20 without Proof of Purchase.  Alternatively, Class Members can choose a product voucher redeemable for a free Millennium product for each bottle of every Subject Product they purchased up to $30 without Proof of Purchase.  For claims administration purposes, these vouchers will be assigned a value of $3.75, although their value may be higher or lower depending on the point of sale at issue.  Product Vouchers will have no expiration date and will be redeemable for any Subject Product at no cost.  Class Members with Proof of Purchase can receive up to $30 in cash or $50 in product vouchers at the actual retail price they paid.  This is an excellent result for Plaintiffs and the Class, given that it will provide a full refund to many consumers who purchased Defendants' products.  *See infra* Argument § IV.A.

The Settlement also provides significant injunctive relief.  Millennium has agreed to (1) cease ordering and printing labels bearing the term "antioxidant"; (2) include a warning on its labels that "the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs"; and (3) regularly test samples of its products (at the time of bottling and the time of expiration) using a third-party laboratory to ensure compliance with federal and state labeling standards and to ensure the accuracy of the representations regarding the sugar content of its products. Further, should a new, industrywide standard for testing the alcohol content of kombucha be developed, Millennium will adopt that testing methodology.

As in any class action, the Settlement is subject initially to preliminary approval and then to final approval by the Court after notice to the class and a hearing.  Plaintiffs now request this Court to enter an order in the form of the Proposed Preliminary Approval Order, which is attached to the Settlement Agreement as Exhibit D.  That Order will:

(1)    grant preliminary approval of the Settlement;

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

2

(2)     conditionally certify the Class, designate Plaintiffs as Class Representatives, and appoint Bursor & Fisher, P.A. as Class Counsel;

(3)     appoint Angeion Group as the Settlement Administrator and establish procedures for giving notice to members of the Class;

(4)     approve forms of notice to Class Members;

(5)     mandate procedures and deadlines for exclusion requests and objections; and

(6)     set a date, time and place for a final approval hearing.

Class certification for purposes of settlement is appropriate under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).  The proposed Class is so numerous that the joinder of all Class Members is impracticable; there are questions of law or fact common to the proposed Class; the proposed Class Representatives' claims are typical of those of the Class; and the proposed Class Representatives will fairly and adequately protect the interests of the proposed Class.  In addition, common issues of law and fact predominate over any questions affecting only individual members and a class action as proposed here is superior to other available methods for the fair and efficient adjudication of the controversy.  Issues of manageability of a nationwide class are of little consequence as the parties now seek certification only of a Class.  Further, Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the class as a whole.

The Settlement is fair and reasonable and falls within the range of possible approval.  It is the product of extended arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case and all Class Members are treated fairly under the terms of the Settlement.  Plaintiffs, by and through their counsel, have conducted an extensive investigation into the facts and law relating to this matter as set forth below and in the accompanying Fisher

Declaration.  Plaintiffs and their counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed information, documents, and materials that they deem necessary and appropriate to enable them to enter into the Settlement Agreement on a fully informed basis.  It is an outstanding result for parties and Class Members.  The Court should enter the proposed order granting preliminary approval.

## II.   PROCEDURAL BACKGROUND

On March 11, 2015, Plaintiffs filed this case in this Court alleging that Millennium made false or misleading representations regarding the antioxidant content of its kombucha beverages.  Dkt. No. 1.  Millennium moved to dismiss the complaint and to strike Plaintiffs' class action allegations.  Dkt. 13.  In response, Plaintiffs filed a First Amended Complaint.  Dkt. 14.  Millennium again moved to dismiss the complaint and to strike Plaintiffs' class allegations.  Dkt. 17.  The Court denied Millennium's motion to dismiss as to Plaintiffs' claims under the CLRA, UCL, FAL and NY GBL § 349 and denied Millennium's motion to strike, but granted the motion to dismiss Plaintiffs' request for injunctive relief without prejudice.  Dkt. No. 25.  Specifically, the Court initially denied Plaintiffs' request for injunctive relief because Plaintiffs did not "allege that they would purchase GT's Kombucha Beverages again in the future, so long as Millennium changed the purportedly deceptive labeling."  Dkt. 25, at 17.  The Court "allow[ed] Plaintiffs to amend the [Complaint] to remedy this pleading deficiency."  *Id.*  Plaintiffs subsequently amended the Complaint to allege the facts that the Court requested.  Dkt. No. 68 at ¶¶ 6-8 (alleging that Plaintiffs "would still be willing to purchase the current formulations of [the Subject Products], absent the price premium, so long as Millennium engages in corrective advertising").

Plaintiffs subsequently amended their complaint to add allegations that Millennium's Enlightened kombucha beverages, which it sold as non-alcoholic,

contained two to seven times the legal limit for non-alcoholic beverages.  Dkt. No. 30.  Plaintiffs then amended their complaint to add Whole Foods as a defendant. Dkt. No. 53.  Plaintiffs also subsequently amended their complaint to add allegations that the labels of Millennium's kombucha products understate the amount of sugar in the beverages.  Dkt. 68.

Beginning in June of 2015 and continuing over the course of the next year, the Parties commenced discovery during which they exchanged several sets of discovery requests, including interrogatories and requests for production.  The Parties met and conferred telephonically, through email, and via letter exchanges on numerous occasions to resolve multiple contentious discovery disputes.  Millennium produced thousands of pages of documents to Plaintiffs, including Millennium's test results, internal communications, and sales information.  Plaintiffs also produced documents to Millennium, including their test results, consumer surveys, and other materials. Plaintiffs also served subpoenas pursuant to Fed. R. Civ. P. 45 on American Herbal Products Association, Inc. and Kombucha Brewers International.  After a meet and confer process, the American Herbal Products, Inc. and Kombucha Brewers International produced testing results and internal communications concerning Millennium's kombucha products and other information.  Plaintiffs have also commissioned and reviewed extensive testing of Millennium's Enlightened kombucha beverages by multiple laboratories and retained two renowned experts on the testing of the alcohol content of beverages.

Counsel for Plaintiffs and counsel for Defendants have engaged in substantial arm's-length negotiations in an effort to resolve this action over a period of roughly six months, including conducting numerous telephone conferences, an in-person and telephonic mediation before Jill Sperber, Esq. of Judicate West with subsequent follow-up negotiations, during which the terms of an agreement were extensively debated and discussed.

Defendants have vigorously denied and continue to vigorously deny all of the claims and contentions alleged in this Action.  However, Defendants have considered the risks and potential costs of continued litigation of this action, on the one hand, and the benefits of the proposed settlement, on the other hand, and desire to settle the action upon the terms and conditions set forth in the Settlement Agreement.

## III.   THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837 (1978).  If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place.  *See Manual for Complex Litigation*, § 21.312 at 293-96 (4th ed. 2004) (hereinafter "*Manual*").

The purpose of a preliminary approval hearing is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and to proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Id.* (*quoting* NEWBERG ON CLASS ACTIONS § 11.25 (1992)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See In re*

*Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (finding that "[t]he question currently before the court is whether this settlement should be preliminarily approved" for the purposes of notifying the putative class members of the proposed settlement and proceeding with a fairness hearing, which requires the court to consider whether the settlement appears to be fair and "falls within the *range of possible approval*") (emphasis added).

Nevertheless, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval. One such standard is the strong judicial policy of encouraging compromises, particularly in class actions. *See In re Syncor*, 516 F.3d at 1101 (*citing Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)).

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Ultimately, however, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate. *See In re Syncor*, 516 F.3d at 1100.

In evaluating preliminarily the adequacy of a proposed settlement, particular attention should be paid to the process of settlement negotiations. Here, as Class Counsel attest, and both sides and the mediator can confirm, the negotiations were conducted at arm's length, were non-collusive and were well informed, with an assessment of the strengths and weaknesses of the claims on both sides, were conducted between counsel on both sides with decades of class action experience, and utilized at the appropriate time the assistance of a well-respected mediator.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

7

Under such circumstances, the settlement is entitled to a presumption of
reasonableness, and the court is entitled to rely upon the opinions and assessments of
counsel. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

Beyond the public policy favoring settlements, the principal consideration in
evaluating the fairness and adequacy of a proposed settlement is the likelihood of
recovery balanced against the benefits of settlement. "[B]asic to this process in
every instance, of course, is the need to compare the terms of the compromise with
the likely rewards of litigation." *Protective Committee for Independent Stockholders
of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said,
"the court's intrusion upon what is otherwise a private consensual agreement
negotiated between the parties to a lawsuit must be limited to the extent necessary to
reach a reasoned judgment that the agreement is not the product of fraud or
overreaching by, or collusion between, the negotiating parties, and that the
settlement, taken as a whole, is fair, reasonable and adequate to all concerned."
*Officers for Justice*, 688 F.2d at 625.

## IV.     TERMS OF THE PROPOSED SETTLEMENT

The proposed Class consists of "all persons in the United States and United
States Territories who purchased at retail one or more of the Subject Products[2]

---

[2] "Subject Products" means all products sold by Defendants during the Class Period
under Millennium's Enlightened Kombucha, Enlightened Synergy, Classic
Kombucha, and Classic Synergy product lines: Classic Kombucha Original, Classic
Kombucha Citrus, Classic Kombucha Gingerade, Classic Kombucha Multi-Green,
Classic Kombucha Third Eye Chai, Classic Synergy Cosmic Cranberry, Classic
Synergy Maqui Berry Mint, Classic Synergy Divine Grape, Classic Synergy
Gingerberry, Classic Synergy Raspberry Rush, Classic Synergy Strawberry Serenity,
Classic Synergy Superfruits, Classic Synergy Trilogy, Enlightened Kombucha
Botanic No. 3, Enlightened Kombucha Botanic No. 7, Enlightened Kombucha
Botanic No. 9, Enlightened Kombucha Citrus, Enlightened Kombucha Gingerade,
Enlightened Kombucha Multi-Green, Enlightened Kombucha Original, Enlightened
Synergy Black Chia, Enlightened Synergy Cosmic Cranberry, Enlightened Synergy
Cherry Chia, Enlightened Synergy Gingerberry, Enlightened Synergy Grape Chia,

during the Class Period." Settlement Agreement at 7. Excluded from the Class are (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of re-sale; and (d) all persons who have filed a timely Request for Exclusion from the Class. *See id.*

## A.    Monetary Relief for Class Members

Defendants have agreed to pay up to $7.5 million to cover all claims filed by Class Members as well as the costs of settlement administration, incentive awards, and attorneys' fees, costs and expenses. Class Members can receive a cash payment of $2.50 for each Subject Product they purchased during the Class Period up to $20 without proof of purchase. Alternatively, Class Members can receive a product voucher redeemable for a free Millennium product for each Subject Product they purchased during the Class Period up to $30 worth of product vouchers. For claims administration purposes, these vouchers will be assigned a value of $3.75, although their value may be higher or lower depending on the point of sale at issue. Class Members with proof of purchase can receive a cash payment up to $30 or a product voucher up to $50 at the retail price they paid for each purchase of the Subject Products during the Class Period.

Each Class Member must submit or postmark a Claim Form, on or before the Claim Deadline, containing his or her name, mailing address, and e-mail address, and an attestation, under penalty of perjury, that the Class Member purchased one or more Subject Products during the Class Period. *See* Settlement Agreement at 30. The proof of claim shall be signed under penalty of perjury.

---

Enlightened Synergy Green Chia, Enlightened Synergy Guava Goddess, Enlightened Synergy Mystic Mango, Enlightened Synergy Passionberry Bliss, Enlightened Synergy Raspberry Chia, Enlightened Synergy Strawberry Serenity, and Enlightened Synergy Trilogy.

If less than $3 million in total claims are filed by Class Members, Defendants have agreed to give away for free the Subject Products at retail locations selling the Subject Products.  The retail value of the products given away shall be equal to the value of $3 million less the sum of the cash claims and product vouchers claimed. Millennium shall be entitled to set aside 10% of the total value of any product give away to defray the distribution costs associated with the giveaway.

**B.    Injunctive Relief**

The Settlement also provides significant injunctive relief.  Millennium has agreed to cease ordering and printing labels bearing the term "antioxidant." Millennium has also agreed to include a warning on its labels that "the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs."  Millennium will also regularly test samples of its products (at the time of bottling and the time of expiration) using a third-party laboratory to ensure compliance with federal and state labeling standards and to ensure the accuracy of the representations regarding the sugar content of its products.  And, should a new, industrywide standard for testing the alcohol content of kombucha be developed, Millennium will adopt that testing methodology.

**C.    Payment of Incentive Awards and Attorneys' Fees,
Costs and Expenses**

Subject to the Court's approval, Defendants have agreed to pay incentive awards to Plaintiffs and the Related Plaintiffs in the amount of $2,000.  In addition, Class Counsel will make an application to the Court for an award of attorneys' fees, costs and expenses.  Defendants have the right to challenge the amount of Plaintiffs' fees, costs and expenses and there is no formal agreement as to the amount of attorneys' fees, costs and expenses that will be sought by Class Counsel.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

10

### D.     Payment of Notice and Administrative Fees

The parties propose that Angeion Group act as the Settlement Administrator. Angeion will develop a notice and claims administration program, subject to the approval of the Court and the parties, designed to achieve at least 70%[3] reach under a budget not to exceed $275,000.  The costs of notice and claims administration will be paid from the Settlement Fund.

## V.     THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  When making this determination, the Ninth Circuit has instructed district courts to balance several factors:  (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026;[4] *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, the balance of these factors readily establishes that the Settlement should be preliminarily approved.

### A.     Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of

---

[3] Although the Settlement mandates a notice program to achieve at least a 70% reach, Angeion Group has designed a notice program to deliver at least an 80.4% reach in this case.  Weisbrot Decl. ¶ 22.

[4] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, as set forth in the Fisher Declaration, Class Counsel engaged in arms-length negotiations with Defendants' counsel, and were thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.  Although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome was not assured. They also recognize that they will face risks at class certification, summary judgment, and trial.  Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or damages.  In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks.  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.  The Settlement Agreement also abrogates the risks that might prevent them from obtaining relief.

### B.      Risk of Continuing Litigation

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial.  Such considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Even assuming that Plaintiffs were to survive summary judgment, they would face the risk of establishing liability at trial in light of conflicting expert

testimony between their own expert witnesses and Defendants' expert witnesses.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury.  The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

Moreover, even if Plaintiffs prevailed at trial, in light of the possible damage theories that could be presented by both sides, there is a substantial likelihood based on the above analysis Class Members may not be awarded significantly more than is offered to them under this Settlement on an individual basis.  For example, in *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial.  Based on the jury's findings, recoverable damages would have exceeded $100 million.  However, weeks later, Judge Ware overturned the verdict, entering judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant.  By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks of the appellate process.

## C.    Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in certifying a class and maintaining class status through trial.  Even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).  From their prior experience, Class Counsel anticipates that Defendants would likely appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date.  Here, the Settlement Agreement eliminates these risks by ensuring that Class Members a recovery that is "certain and immediate, eliminating the risk that

class members would be left without any recovery … at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

### D.   The Extent of Discovery and Status of Proceedings

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs, through their counsel, have conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation: (i) the review of thousands of pages of documents produced by Defendants; (ii) the review of documents produced by the American Herbal Products Association, Inc. and Kombucha Brewers International in response to Plaintiffs' subpoenas; (iii) the review of product tests initiated and paid for by Plaintiffs and Class Counsel; (iv) the review of other publicly available reports and tests concerning Defendants' products; and (v) the review of publicly available information regarding Defendants, their business practices and prior litigation involving them. The parties also held numerous telephonic and written discussions regarding Plaintiffs' allegations, discovery and settlement as well as two mediations (one in person and one by telephone) with Jill Sperber of Judicate West, with subsequent follow on negotiations after that mediation during which the terms of an agreement were extensively debated and negotiated. The Settlement Agreement is thus the result of fully-informed negotiations.

### E.   Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

litigation." *Rodriguez*, 563 F.3d at 967.  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation.  *See* Fisher Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.).  Based on their experience, Class Counsel concluded that the Settlement Agreement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation.

## VI.   THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS, AND ENTER THE PRELIMINARY APPROVAL ORDER

### A.   The Settlement Should Be Preliminarily Approved Because It Satisfies Accepted Criteria

It is well-established that the law favors the compromise and settlement of class action suits: "[S]trong judicial policy favors settlements …." *Churchill Vill., L.L.C.*, 361 F.3d at 566 (original ellipsis omitted).  This is particularly true where "class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The approval of a proposed settlement of a class action is a matter of discretion for the trial court.  *In re Veritas Software Corp. Sec. Litig.*, 2007 U.S. App. LEXIS 17623, at *25 (9th Cir. 2007) ("[T]he district court has substantial discretion in approving the details of a class action settlement").  Courts, however give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027; *accord*, Fed. R. Civ. P. 23(e)(2) (settlement must be "fair, reasonable, and adequate").

To grant preliminary approval, the Court need only find that the Settlement falls within the range of possible approval.  The *Manual for Complex Litigation*, §

21.632 (4th ed. 2004), characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties.

Here, as shown below, the Settlement should be preliminarily approved because it clearly falls "within the range of possible approval." *Alaniz*, 73 F.R.D. at 273; *see also Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757, at *24 (N.D. Cal. 1995) ("The proposed settlement must fall within the range of possible approval ...."); *see also* Alba Conte and Herbert Newberg, 4 NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002). It is non-collusive, fair, and reasonable.

At the same time, the Settlement eliminates the substantial risk and delay of litigation. By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks of a lengthy trial and appellate process. The Settlement will provide Class Members with monetary benefits that are immediate, certain and substantial, and avoid the obstacles that might have prevented them from obtaining relief.

In light of the relief obtained, the risks of the litigation and the legal standards set forth above, the Court should allow notice of the settlement to be sent to the Class so that Class Members can express their views on it. The Court should conclude that the Settlement's terms are within the range of possible approval.

## B.    The Proposed Settlement Class Should Be Certified

The Class consists of "all persons in the United States and United States Territories who purchased at retail one or more of the Subject Products during the Class Period." Excluded from the Class are (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of re-sale; and (d) all persons who have filed a timely Request for Exclusion from the Class. This Court has not yet certified this case as a

class action.  For settlement purposes, the parties and their counsel request that the Court provisionally certify the Class.

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  In assessing those class certification requirements, a court may properly consider that there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").  For the reasons below, the Class meets the requirements of Rule 23(a) and (b).

### 1.   The Class Satisfies Rule 23(a)

#### a.   *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21."  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).   Here, the proposed Class is comprised of millions of consumers who purchased the Subject Products – a number that obviously satisfies the numerosity requirement.  Accordingly, the proposed Class is so numerous that joinder of their claims is impracticable.

#### b.   *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  *See* Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend on a common contention," "capable of class-wide resolution … meaning that determination of its truth or falsity will resolve an issue

that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Because the commonality requirement may be satisfied by a single common issue, it is easily met.  H. Newberg & Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992).

There are ample issues of both law and fact here that are common to the members of the Class.  Indeed, all of the Class Members' claims arise from a common nucleus of facts and are based on the same legal theories.  The Plaintiffs allege that Defendants mislabeled their Classic and Enlightened kombucha beverages by (1) using the term "antioxidant" on the labels when the products allegedly do not contain antioxidant nutrients, (2) labeling the products as non-alcoholic when in fact they allegedly contain two to seven times the amount of alcohol permitted for non-alcoholic beverages, and (3) allegedly understating the sugar content of the products.  Accordingly, commonality is satisfied by the existence of these common factual issues.  *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common discriminatory practices").

Second, Plaintiffs' claims are brought under legal theories common to the Class as a whole.  Alleging a common legal theory alone is enough to establish commonality.  *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  Here, all of the legal theories asserted by Plaintiffs are common to all Class Members.  Given that there are virtually no issues of law which affect only individual members of the Class, common issues of law clearly predominate over individual ones.  Thus, commonality is satisfied.

c.    _Typicality_

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims … of the class." *See* Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020. In short, to meet the typicality requirement, the representative plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of the Southwest Falcon*, 457 U.S. 147, 161 (1982).

The claims of the named Plaintiffs are typical of those of the Class. Like those of the Class, their claims arise out of the purchase of Millennium's kombucha beverages and the alleged mislabeling of those products. Each named Plaintiff purchased several of Millennium's kombucha products and was exposed to the allegedly false or misleading labels. The named Plaintiffs have precisely the same claims as the Class, and must satisfy the same elements of each of their claims, as must other Class Members. Supported by the same legal theories, the named Plaintiffs and all Class Members share claims based on the same alleged course of conduct. The named Plaintiffs and all Class Members have been injured in the same manner by this conduct. Therefore, Plaintiffs satisfy the typicality requirement.

d.    _Adequacy_

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). A plaintiff will adequately represent the class where: (1) plaintiffs and their counsel do not have conflicts of interests with other class members; and (2) where plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003). Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length. 2 *Newberg on Class Actions, supra*, §11.28, at 11-59.

Class Counsel have vigorously and competently pursued the Class Members' claims.  The arm's-length settlement negotiations that took place and the investigation they undertook demonstrate that Class Counsel adequately represent the Class.  Moreover, the named Plaintiffs and Class Counsel have no conflicts of interests with the Class.  Rather, the named Plaintiffs, like each absent Class Member, have a strong interest in proving Defendants' common course of conduct, and obtaining redress.  In pursing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Class.  Class Counsel have extensive experience and expertise in prosecuting complex class actions.  Class Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation.  *See* Fisher Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.).  Accordingly, Rule 23(a)(4) is satisfied.

## 2.   The Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. P. 23(b)(3).  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022.

### a.   *Common Questions of Law and Fact Predominate*

The proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions

affecting only individual Class Members.  Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue.  *Amchem*, 521 U.S. at 620.

In this case, common questions of law and fact exist and predominate over any individual questions, including in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27), *inter alia*:  (1) whether Defendants' representations regarding the Subject Products were false and misleading or reasonably likely to deceive consumers; (2) whether the Subject Products are misbranded; (3) whether Defendants violated the CLRA, UCL, FAL and NY GBL §349; (4) whether Defendants breached an express or implied warranty; (5) whether Defendants had defrauded Plaintiff and the Class Members; and (6) whether Plaintiffs and the Class have been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.

### b.    *A Class Action Is the Superior Mechanism for Adjudicating This Dispute*

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

### 3.   The Class Also Satisfies Rule 23(b)(2)

The proposed class is also well suited for certification under Rule 23(b)(2). *See gen. Lilly v. Jamba Juice Co.*, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) (granting preliminary approval of a Rule 23(b)(2) class of smoothie kit purchasers). *See also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) (explaining that the district court may certify a Rule 23(b)(2) class and a separate Rule 23(b)(3) class). In the Court's Order Denying in Part and Granting in Part Motion to Dismiss and Denying Motion to Strike, the Court dismissed Plaintiffs' claims for injunctive relief "because Plaintiffs do not allege that they would purchase GT's Kombucha Beverages again in the future, so long as Millennium changed the purportedly deceptive labeling." Dkt. 25, at 17. The Court "allow[ed] Plaintiffs to amend the [Complaint] to remedy this pleading deficiency." *Id*. Plaintiffs have subsequently amended the Complaint to allege just that. *See* Fifth Am. Class Action Compl. at ¶¶ 6-8 (alleging that Plaintiffs "would still be willing to purchase the current formulations of [the Subject Products], absent the price premium, so long as Millennium engages in corrective advertising"). Accordingly, Plaintiffs have standing to seek certification of a Rule 23(b)(2) class. As discussed above, the Settlement provides precisely the injunctive relief sought in the Complaint,

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

22

consisting of, *inter alia*, removal of the word "antioxidant" from the labels of the Subject Products, the addition of an alcohol warning on the labels of Millennium's Enlightened kombucha products, requirements that Millennium regularly pay for testing of the Subject Products to be conducted by an independent laboratory, and changing the labels of the Subject Products with regards to the declared sugar content if testing shows that the declared amounts are inconsistent.  Further, should a new, industrywide standard for testing the alcohol content of kombucha be developed, Millennium will adopt that testing methodology.  Absent the Settlement Agreement, this type of injunctive relief would only be available to Class Members after prevailing at trial on the merits.

## VII.   THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE AND SHOULD BE APPROVED

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal."   Fed R. Civ. P Rule 23(e)(1)

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice.  *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows Class Members to decide whether to opt out of or participate in the class and/or to object to the Settlement and argue against final approval by the Court.  *Id*.  The proposed notice program here, which is described in detail in the Fisher and Weisbrot Declarations, informs the Class of their rights and includes a comprehensive plan for

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

23

delivery of notice by e-mail, U.S. Mail, a settlement website, publication in the California edition of USA Today, and Internet banner ads and constitutes the best notice practicable under the circumstances of this case.

The Notices accurately inform Class Members of the salient terms of the Settlement Agreement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class. The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process.  *See* Exs. E and F to the Settlement Agreement, at Fisher Decl. Ex. 1.

**Email and U.S. Mail Notice:**  A notice substantially in the form attached as Exhibit E to the Settlement Agreement shall be e-mailed or mailed to the last known e-mail address or U.S. mailing address of any Class Member whose contact information is reasonably available to Millennium.  E-Mail Notice will be followed by U.S. Mail Notice to any recipient for whom E-Mail Notice is unsuccessful.

**Settlement Website:**  The parties will post a copy of the Long Form Notice (Ex. 3) on a website to be maintained by the Administrator, which will additionally contain the settlement documents, an online claim form, a list of important dates, and any other information to which the parties may agree.  The website shall also contain a Settlement Email Address and Settlement Telephone Number, where Class Members can submit questions and receive further information and assistance.

**Internet Banner Ad Campaign:**  The Administrator will implement an Internet banner ad campaign that contains an embedded link to the Settlement Website, which will be designed to reach at least 80.4% of the Class Members, without even taking account of other forms of notice contemplated by the notice program.  The Administrator estimates that the internet banner ad campaign will result in more than 6 million impressions.  Weisbrot Decl. ¶¶ 10, 18.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

24

**Publication Notice:**  The parties shall supplement direct notice by publishing the Summary Notice, attached as Exhibit F to the Settlement Agreement, for four consecutive weeks in the California edition of USA Today.  The Summary Notice shall not be less than 1/4 of a page in size.

**Millennium's Social Media Accounts:**  Millennium has also agreed to post a link to the Settlement website on its company website and on its Facebook, Instagram and Twitter pages.

**CAFA Notice:**  The parties shall also cause to be disseminated the notice to public officials required by the Class Action Fairness Act ("CAFA") in accordance with the provisions of that Act.  *See* Settlement Agreement § 6.7.

This proposed method of giving notice is appropriate because it provides a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement Agreement and to make an informed decision regarding the proposed Settlement.  This notice program is designed to reach at least 80.4% of the Class Members.  Settlement Agreement at 23; Weisbrot Decl. at ¶ 22.  Thus, the notices and notice procedures amply satisfy the requirements of due process.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grant preliminary approval to the Settlement Agreement, provisionally certify the Class, approve the proposed notice plan, and enter the Proposed Preliminary Approval Order in the form submitted herewith.

1

Dated:  August 11, 2016

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___*/s/L. Timothy Fisher*___
        L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          apersinger@bursor.com
          ykrivoshey@bursor.com

*Attorneys for Plaintiffs*