SCOTT M. VOELZ (S.B. #181415)
svoelz@omm.com
DANIEL J. FARIA (S.B. #285158)
dfaria@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

Attorneys for Defendants
Millennium Products, Inc.

JAMES M. LEE (S.B. #192301)
james.lee@ltlattorneys.com
DAVID A. CRANE (S.B. #305999)
david.crane@ltlattorneys.com
LTL ATTORNEYS LLP
601 South Figueroa Street, Suite 3900
Los Angeles, California  90017
Telephone:  (213) 612-8900
Facsimile:   (213) 612-3773

Attorneys for Defendants
Whole Foods Market, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN RETTA, *et al*.,<br><br>   Plaintiffs,<br><br>   v.<br><br>MILLENNIUM PRODUCTS, Inc., *et al*.<br><br>   Defendants. | Case No. 15-CV-1801-PSG-AJW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS'** ***EX PARTE*** **APPLICATION REQUESTING ORDER SHORTENING TIME TO HEAR MOTION TO INTERVENE AND LEAVE TO APPEAR AT HEARING ON MOTION FOR PRELIMINARY APPROVAL**<br><br>Judge:  Hon. Philip S. Gutierrez<br><br>SAC Filed:  August 19, 2016<br>Trial Date:  Not Set |

**OPPOSITION TO EX PARTE APPLICATION**

The *ex parte* application filed by Intervenors (the "Application") has nothing to do with protecting absent class members—it is a groundless attempt by one group of attorneys to interfere with the proposed settlement of a competing group. And the Court should deny the Application for three reasons.

***First,*** there is no genuine emergency here. Intervenors have known about the settlement reached in the present action since June 2016 and received a near final copy of the settlement and preliminary approval papers on August 5, 2016, and the as-filed set on August 16, 2016. (Declaration of Daniel J. Faria in Support of Opposition to *Ex Parte* Application ("Faria Decl.") at ¶¶ 2-3.) Accordingly, Ms. Pedro's counsel had sufficient time to file a regular motion and appear to have filed the Application as a result of unsuccessful efforts to negotiate a resolution between themselves and plaintiffs' counsel in the present action. *See*, *e.g.*, Memo of P & A ISO Ex Parte App., Dkt. No. 84-1 at 10 ("When the September 8, 2016 meeting was unsuccessful at forging any resolution of the matter, Intervenors were pushed to find another alternative, which resulted in the researching and filing of these papers."). But an *ex parte* application is not a bargaining chip. Counsel cannot argue, on the one hand, that the Application is so critical to the health and safety of putative class members that it must be addressed now and, on the other, that the motion was only necessary because counsel's "wait and see" strategy failed.

***Second,*** there is no basis for emergency relief. An *ex parte* application is only for extraordinary relief and a misuse of the device is sanctionable. *Mission Power Eng. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995). This is because *ex parte* applications seeking to circumvent regular motion procedures "are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced." *Id.* at 490. Counsel attempts to address this fact by suggesting that the *Pedro* complaint differs

from *Retta* in that it raises safety concerns—specifically about the possibility that the bottles could, because of secondary fermentation, explode. Dkt. No. 84-1 at 4-7. However, despite counsel's attempt to argue otherwise through the use of inflammatory images, the *Pedro* action is not actually a personal injury case and does not properly implicate safety concerns.

Neither named plaintiff in *Pedro* alleges that they even purchased an "exploding" bottle, which forms the basis of their alleged safety claims in the Application. Ms. Pedro alleges that she "has found that her bottle of Kombucha has broken its seal, leaked out of the bottle, spoiled, and by virtue of leaking spilled on, and caused damage to her personal property, including but not limited to purses and handbags, as well as their contents". (*Pedro* Second Amended Class Complaint ("SAC"), No. 2:16-CV-03780-PSG-AJW, Dkt No. 82 at ¶ 5). Ms. Lewis does not make any allegations related to product leakage or bottle safety, but does allege that the product she purchased contained excessive amounts of alcohol and that she suffered health effects after consuming it. (*Id.* at ¶¶ 8-14.)

The exact nature and scope of the *Pedro* plaintiffs' claims has been addressed before in two hearings before Judge Chesney, who oversaw the case prior to its transfer. At an April 15, 2016 hearing on Millennium's motion to stay the *Pedro* case, Judge Chesney described what is patent in the *Pedro* complaint: despite counsel's efforts to characterize their case as one about personal injury and safety, such claims cannot be addressed on a classwide basis and the *Pedro* action is premised on two defects—alcohol claims and product loss claims related to the alleged consequences of secondary fermentation:

> Judge Chesney: So I think that in terms of similarity, that these classes are similar enough. The real question is whether the issues are sufficiently similar. Certainly if the *Retta* case were the larger case and essentially just ate up all of the case that we have, *the Pedro* case, there wouldn't be any problem. The question is really whether the second case presents issues that for one reason or another should

> preclude a stay or transfer. In reading over the cases, I do think there's enough of an overlap here. Although the plaintiff is downplaying now the alcoholic content, it played a very significant role in all of the counts, and essentially is the totality of the claim in the third cause of action. It's all based on alcohol.
>
> I'm sure that the idea of exploding bottles and leaking bottles and damaged purses and this woman who got her eye cut are all very dramatic and certainly attention getting, but that would have to be on an individual cause of action. You're not going to be able to have a class action with all these different problems that people had. And at the last calling of the case, the plaintiffs' counsel disavowed any interest in pursuing a claim based on personal injury or property damage outside of whatever damage there was to the individual product that they bought and, thus, allege they can't use."

(Faria Decl., Ex. 3 at 11-12.)

In response to this, Ms. Pedro's counsel acknowledged that the *Pedro* action is not a personal injury matter, but tried to argue that the requested injunctive relief was broad enough to encompass the alleged safety issues, although the Court correctly noted that this was a strained reading of the Complaint—"It's relatively cryptic, I would say, not very specific." (*Id.* at 14-15.) In any event, it would be inappropriate, given the issues raised concerning the exact nature and scope of the *Pedro* claims, which have not even been tested at the pleading stage as of yet, to litigate the merits of a motion to intervene through such an extraordinary procedure.

Further, presumably in response to the *Retta* preliminary motion, on August 19, 2016, the *Pedro* plaintiffs amended their complaint to allege that Millennium's products are also misbranded because they purportedly failed to warn consumers that the products pose alleged dangers. (*Pedro* SAC at ¶ 3.) But, as set forth above, the named Plaintiffs in *Pedro* do not actually allege any claims sounding in personal injury—their allegations involve product loss. (*Id.* at ¶¶ 6-15.) And as Judge Chesney recognized, the *Pedro* claims regarding product loss are directly related to the alcohol claims in Retta and share the same underpinnings regarding

1  the consequences of secondary fermentation in Millennium's kombucha products.
2  (Faria Decl., Ex. 3 at 30.)

> Judge Chesney: If this case is resolved in some way, you know, all the problems are going to have to be fixed.  People aren't going to buy it because it stops having—if it stopped having alcohol, then it won't be fermenting, then it won't leak.  It's all kind of—you know, each thing is connected to the other.

So the Second Amended Complaint does not change the fact that the issues raised in the *Pedro* action are subsumed by the *Retta* action.

***Third,*** a brief review of the concurrently filed Motion to Intervene (Dkt. No. 85) reveals that it is meritless.  Plaintiffs in the *Pedro* action claim that intervention as of right is appropriate owing to their naked assertion that their interests will not be adequately represented if a settlement is preliminarily approved in the present action.  Memo of P & A ISO Mot. to Intervene, Dkt. No. 85-1 at 8-10.  But it is well established that there is no intervention of right when a proposed intervenor can opt out of a proposed class action settlement.  *See, e.g.*, *Cohorst v. BRE Properties, Inc.*, No. 3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 87342, at *9-10 (S.D. Cal. July 19, 2011) ("[W]here the right to object to the settlement at the Fairness hearing or to opt out of the settlement exists, intervention is simply unnecessary to protect a putative class member's interests.") (internal citations omitted); *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2009 U.S. Dist. LEXIS 103668, at *14-21 (N.D. Cal. Oct. 23, 2009) (denying motion for leave to intervene and to delay preliminary approval hearing where proposed intervenor could raise objections at final approval stage).  If counsel truly have concerns with the proposed settlement of this action, these can be addressed through the final approval, as with any other objections filed.  *Id.* at *21 ("Despite Proposed Intervenors' concern that preliminary approval may create at least a perception of 'momentum,' the Court will make its determination as to whether final approval should be granted based on the facts and law before it at that point in time . . . .").

The Court should not countenance an attempt to circumvent regular procedure here.

For these reasons, Defendants request that the Application be denied.

Dated: September 16, 2016

O'MELVENY & MYERS LLP

By: /s/ Scott M. Voelz
Scott M. Voelz
Attorneys for Defendants
Millennium Products, Inc.

Dated: September 16, 2016

LTL ATTORNEYS LLP

By: /s/ James M. Lee
James M. Lee
Attorneys for Defendants
Whole Foods Market, Inc.

**SIGNATURE ATTESTATION**

The filing attorney attests that he has obtained concurrence regarding the filing of this document from its signatory, and, upon request, can provide a copy of a holographic signature corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

Dated:  September 16, 2016

O'MELVENY & MYERS LLP


By:   */s/* Scott M. Voelz
     Scott M. Voelz
Attorneys for Defendant
Millennium Products, Inc.