UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1801 PSG (AJWx) | Date | September 21, 2016 |
|---|---|---|---|
| Title | Retta, et al. v. Millennium Products, Inc., et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order DENYING Motion for Preliminary Approval of Class Action Settlement

  Before the Court is Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire's motion for preliminary approval of a class action settlement, Dkt. # 77, and Defendant Whole Foods Market, Inc.'s motion to dismiss the Fifth Amended Complaint, Dkt. # 74. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the moving papers, the Court DENIES the motion for preliminary approval and renders MOOT Defendant Whole Foods Market, Inc.'s motion to dismiss.

I. Background

  On March 11, 2015, Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire ("Plaintiffs") filed a Class Action lawsuit against Millennium Products, Inc. ("Millennium") and Defendant Whole Foods Market, Inc. (collectively, "Defendants") for false or misleading representations on Millennium's Classic and Enlightened kombucha beverages ("Subject Product"). Dkt. # 77 ("Mot.") at 4. Following a series of amendments to the pleadings, Plaintiffs filed a Fifth Amended Complaint, which is the operative pleading in this case. Dkt. # 68 ("FAC"). Plaintiffs allege that Millennium mislabeled the Subject Products by (1) using the term "antioxidant" when products allegedly contain none; (2) labeling the products as "non-alcoholic" when they allegedly contain alcohol in excess of the amount permitted for non-alcoholic beverages, and (3) allegedly understating the amount of sugar in the products. *See Mot*. 18; *FAC* ¶ 15(b). The lawsuit also alleges that Defendant Whole Foods Market, Inc. violated the law by reselling Millennium's products. *Mot*. 1.

  Accordingly, the Complaint asserts the following causes of action: (1) violation of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.; (2) violation of California's Unfair Competition Law, California Business & Professions Code §§

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1801 PSG (AJWx) | Date | September 21, 2016 |
|---|---|---|---|
| Title | Retta, et al. v. Millennium Products, Inc., et al. | | |

17200, *et seq.*; (3) violation of California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*; (4) violation of New York's Deceptive and Unfair Trade Practices Act, New York General Business Law § 349, *et seq.*; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) negligent misrepresentation; (8) fraud; and (9) unjust enrichment. *FAC* ¶ 5.

For settlement purposes, Plaintiffs seek to represent a class of all persons in the United States and United States Territories who purchased one or more of Millennium's Subject Products "from March 11, 2011 up to and including the Notice Date" ("Class Period"). Dkt. # 77 Ex.1, *Stipulation of Class Action Settlement* ("Agreement" or "SA") ¶ 7. Defendants deny all allegations in the Complaint, assert numerous defenses and deny all liability. *Mot.* 1. The parties to the action have now reached a Settlement Agreement pursuant to which they seek an order from the Court to (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the Class; (3) appoint Angeion Group as the Settlement Administrator and establish notice procedures; (4) approve the proposed forms of notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (6) set a final approval hearing. *Mot.* 3.

It is now incumbent upon the Court to determine whether the settlement reached is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

II. Legal Standard

The approval of class action settlements is a two-step process under Federal Rule of Civil Procedure 23(e). Preliminary approval requires only that the terms of the proposed settlement fall within the "range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010) ("At the preliminary approval stage, a court determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members.") (internal quotation marks omitted). It amounts to a determination that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *Manual for Complex Litigation* (Fourth) § 13.14 at 173. After notice to the class, preliminary approval is followed by a review of the fairness of the settlement at the Fairness Hearing, and, if appropriate, a finding that it is "fair, reasonable and adequate." *Hanlon,* 150 F.3d at 1027. Because it is provisional, courts grant preliminary approval where the proposed settlement lacks "obvious deficiencies" raising doubts about the fairness of the settlement. *See, e.g., In re Vitamins Antitrust Litig.,* No. MISC 99-197(TFH), MDL 1285, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation* (Third) §30.41).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1801 PSG (AJWx) | Date | September 21, 2016 |
|---|---|---|---|
| Title | Retta, et al. v. Millennium Products, Inc., et al. | | |

A court may approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list of relevant considerations").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The district court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.*

Furthermore, "[e]specially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d. at 952. The Ninth Circuit has held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. *See Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).").

III.  Discussion

    i.  *Terms of the Proposed Settlement*

The proposed Settlement Agreement provides for a total financial commitment on part of Defendants of an amount up to $7.5 million. *SA* ¶ 44. In addition to paying claims to Class Members, this amount will be used to pay for administrative costs, fees to Counsel, and Plaintiffs' incentive awards of $2,000 each. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1801 PSG (AJWx) | Date | September 21, 2016 |
|---|---|---|---|
| Title | Retta, et al. v. Millennium Products, Inc., et al. | | |

Class Member awards will be distributed in the form of either cash payments or product vouchers to all Class Members who submit a timely and valid claim form. *Id.* ¶ 45. Claimants who do not have proof of purchase may receive a $2.50 cash award for each product purchased during the Class Period, for a maximum of eight claims amounting to $20.00 in cash. *Id.* ¶ 45(a). Those with proof of purchase may receive a cash award of up to $30.00 based on the retail value of the product as shown in the proof of purchase. The Agreement defines "proof of purchase" as "receipts, Millennium packaging, or other documentation from a third-party commercial source reasonably establishing the purchase." *Id.* ¶ 26. Alternatively, Class Members may opt to receive a product voucher, redeemable for a free Millennium product at retail stores. *Id.* ¶ 45(b). Those without proof of purchase may receive up to $30.00 in product vouchers. Each voucher is assigned a value of $3.75 though the value may be higher or lower based on the retail price at the point of sale. *Id.* With proof of purchase, Class Members may receive up to $50.00 in product vouchers based on the retail value of the product as shown in the proof of purchase. *Id.* The vouchers have no expiration date, are freely transferable, and may be redeemed at any retailer that sells the Subject Products. *Id.* In the event that the aggregate value of cash awards and vouchers exceeds the Net Cash Amount,[1] then the monetary value of the awards will be reduced on a pro rata basis. *Id.* ¶ 46.

The Agreement also provides for a "product giveaway" if the sum total of cash and voucher claims is less than $3 million. *Id.* ¶ 45(c)-(d). In that case, Subject Products will be handed out to customers at retail locations that regularly sell Millennium's products. *Id.* The total retail value of the giveaway products will be equal to $3 million less the sum of claimed awards, subject to an additional 10% offset for distribution costs. *Id.* Each giveaway location will feature a prominent sign indicating that the distribution is part of a class action settlement, rather than a marketing or sampling program. *Id.*

In addition to monetary relief, the Agreement provides for injunctive relief whereby Millennium agrees to the following:

- Cease ordering and printing labels with the term "antioxidant;"

- Add a warning label that "the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs;"

---

[1] "Net Cash Amount" is defined as "the value derived from subtracting the value of Attorneys' Fees and Expenses to be awarded to Plaintiffs' Counsel, any incentive awards to be awarded to any Plaintiffs or Related Plaintiffs, and any Settlement Administration from $7.5 million." *SA* ¶ 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1801 PSG (AJWx) | Date | September 21, 2016 |
|---|---|---|---|
| Title | Retta, et al. v. Millennium Products, Inc., et al. | | |

- Conduct regular sample testing using third-party laboratories to (1) ensure compliance with federal and state labeling standards and (2) ensure the accuracy of the sugar content representation on the label;

- Promise to adopt any new industry wide methodology for testing the alcohol content of kombucha, should one be developed.

*Mot*. 10, *SA* ¶ 47.

Regarding attorneys' fees and costs, the Motion only provides that Plaintiffs' Counsel will make an application to the Court for an award of fees and expenses, and that no agreement exists between the parties as to any amount. *SA* ¶ 56. Additionally, Counsel will apply for approval of incentive payments to Plaintiffs in the amount of $2,000 each. *Id*. ¶¶ 55-56. Subject to the Court's approval, Angeion Group will serve as the Settlement Administrator with the task of developing a notice and claims administration program designed to achieve at least a 70% reach with a budget not to exceed $275,000. *Id.* ¶ 48.

### ii.  *Fair and Honest Negotiations*

The parties indicate that the Agreement is the result of six months of arms' length negotiations that included formal in-person and telephonic mediation. *SA* 4, ¶ I. In March 2016, the parties attended a full day of mediation before Jill R. Sperber, Esq. of Judicate West. *Id*. After several weeks of follow-up discussions and another half-day of mediation with Ms. Sperber via telephone on May 20, 2016, the parties reached a settlement in principle. *Id*. The parties indicate that, prior to entering into the Agreement, they engaged in thorough discovery into the circumstances and merits of the case. *Id.* ¶ H. For example, the parties met and conferred concerning various discovery requests, and in response, Millennium produced thousands of pages of documents, including test results and sales information. *Id*. Plaintiffs also provided Millennium with their own test results, consumer surveys, and other materials. *Mot*. 5. Plaintiffs served subpoenas on several third parties that produced testing results and internal communications concerning Millennium's products. *Id*. ¶ G.

Some courts generally presume that a Settlement Agreement is fair and reasonable if it is the result of good faith, arms' length negotiations. *See Ross v. Trex Co., Inc.*, No. 09-cv-00670-JSW, 2013 WL 6622919, at *3 (N.D. Cal. 2013); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *4 (C.D. Cal. 2008); *see also Rodriguez v. West Publishing Corp.*, 563 F. 3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]). However, the Court believes that such a presumption is inconsistent with *Hanlon*'s emphasis on a probing inquiry. *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1801 PSG (AJWx) | Date | September 21, 2016 |
|---|---|---|---|
| Title | Retta, et al. v. Millennium Products, Inc., et al. | | |

*Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG CWX, 2014 WL 4090564, at *10 (C.D. Cal. Apr. 29, 2014); *see also Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).").

Therefore, in light of the concerns discussed below, the Court is not prepared to find that the parties' negotiations were non-collusive, fair and reasonable.

### iii. Scrutiny of the Settlement Agreement

After reviewing the Agreement, the Court has several concerns.

#### a. Amount of Settlement

Plaintiffs do not provide the Court with any information about how the maximum fund of $7.5 million or the amount to be awarded to each Class Member was reached. Pursuant to the Agreement, Class Members without proof of purchase can receive up to $20.00 in cash or up to $30.00 worth of vouchers, and Class Members with proof of purchase can receive up to $30.00 in cash or up to $50.00 worth of vouchers. The Motion fails to provide an explanation for how these amounts relate to the harm suffered by the Class Members as a result of Defendants' conduct. Moreover, the Court finds it unlikely that many Class Members will have adequate proof of purchase which necessarily means that the average award will be well below $30.00. Plaintiffs contend that this is nevertheless, "an excellent result for Plaintiffs and the Class, given that it will provide a full refund to many consumers." *Mot*. 2. This suggests that most consumers purchased fewer than eight bottles during the approximate five-year Class Period, yet Plaintiffs provide no explanation for this conclusion. What further concerns the Court is that Millennium presumably has access to sales information concerning the quantity and locality of Subject Products sold during the Class Period, *see SA* 3 ¶ G, yet the Agreement fails to provide even an estimate of the possible Class size. The Court is therefore unable to determine how the Settlement Administrator's projected 70% reach is related to the sum total of $7.5 million.

#### b. Vouchers

Furthermore, the Court is concerned about the proposed product voucher option on several grounds. First, without proof of purchase, the voucher values each product at $3.75 whereas the cash award values each product at $2.50. *SA* ¶ 45(b). The disparity suggests the cash option falls short of providing a full refund and provides an incentive to opt for the voucher. Secondly, the higher cash value assigned to the voucher will potentially inflate the overall class settlement without accounting for the actual value obtained by Class Members who redeem a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1801 PSG (AJWx) | Date | September 21, 2016 |
|---|---|---|---|
| Title | Retta, et al. v. Millennium Products, Inc., et al. | | |

voucher for a product. While the assigned administrative value of each voucher is $3.75, the actual value will depend on the price of the product at the point of sale locations. *Id*. These variable redemption rates therefore make it difficult to appraise the true value of the vouchers and raise concerns regarding the ultimate proposed attorneys' fees award. *See In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1179 (9th Cir. 2013) (noting that settlements involving variables that affect the true value of relief "provide[] class counsel with the opportunity to puff the perceived value of the settlement so as to enhance their own compensation."). Lastly, the voucher is effective only if a Class Member wants to consume Millennium's product again, which is at odds with allegations of injury caused by Millennium's conduct. As with the product giveaway discussed below, the Court is concerned this aims to benefit Millennium more than any Class Member and bears no relation to redressing the harm.

   *c. Product Giveaway*

  The Court is also concerned about the proposed product giveaway. As noted above, should the total cash and voucher claims amount to less than $3 million, the Agreement proposes to distribute products at various retail stores and make obvious that the distribution is done on account of a class action settlement. *SA* ¶ 45(c). The total retail value of the distributed products will equal the $3 million less the value of Class Member claims, subject to a 10% offset for distribution costs. *Id*. This is the extent of the information provided, leaving the Court at a loss as to what the relationship is between the giveaway and the Class Members.

  Notably, the Motion provides no explanation of how the proposed giveaway will be organized or what criteria will be used in selecting distribution locations. Furthermore, the Motion fails to address how such a giveaway is related to Plaintiffs' claims and how it aims to target and benefit the class of potentially millions of members nationwide. As it stands now, the giveaway is a generalized proposal to hand out Millennium's products to consumers who happen upon a distribution location. Despite the efforts to emphasize the class action purpose of the giveaway, the Court notes that such a plan will inevitably benefit Millennium's marketing and sampling agenda, rather than any member of the Class.

IV. Conclusion

  In sum, the Court is not persuaded that the terms of the settlement are "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2). Even though "courts look with great favor upon the voluntary resolution of litigation through settlement," courts must balance this interest against the interests of the class members whose rights are affected by the settlement. *Armstrong*, 616 F.2d at 313 (noting that courts must safeguard "class members [who] may find that substantial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1801 PSG (AJWx) | Date | September 21, 2016 |
|---|---|---|---|
| Title | Retta, et al. v. Millennium Products, Inc., et al. | | |

rights have been bargained away in exchange for relief which inures primarily to the benefit of a few class members or class counsel").

Accordingly, the Court DENIES the motion for preliminary approval of class action settlement.