1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2

Annick M. Persinger (State Bar No. 272996)

3

Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940

4

Walnut Creek, CA 94596
Telephone: (925) 300-4455

5

Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com

6

           apersinger@bursor.com

7

           ykrivoshey@bursor.com

8

*Attorneys for Plaintiffs*

9

10

**UNITED STATES DISTRICT COURT**

11

**CENTRAL DISTRICT OF CALIFORNIA**

12

13

JONATHAN RETTA, KIRSTEN
SCHOFIELD, and JESSICA MANIRE

14

on Behalf of Themselves and all Others

15

Similarly Situated,

16

                    Plaintiffs,

17

        v.

18

MILLENNIUM PRODUCTS, INC., and

19

WHOLE FOODS MARKET, INC.,

20

                    Defendants.

21

22

23

24

Case No.  2:15-cv-01801-PSG-AJW

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE**

Date:   January 30, 2017
Time:   1:30 p.m.
Courtroom 880

Judge: Hon. Philip S. Gutierrez

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION .................................................................................... 1

II.   PROCEDURAL BACKGROUND ........................................................... 4

III.  THE STANDARD FOR PRELIMINARY APPROVAL ........................ 5

IV.  TERMS OF THE PROPOSED SETTLEMENT ..................................... 7

     A.    Monetary Relief for Class Members .............................................. 7

     B.    Injunctive Relief ............................................................................ 8

     C.    Incentive Awards and Attorneys' Fees, Costs and Expenses ................. 9

     D.    Notice and Administrative Fees ..................................................... 9

V.   THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE PRELIMINARILY APPROVED ............................................................................................ 9

     A.    Strength of Plaintiffs' Case ......................................................... 10

     B.    The Amount Offered in Settlement ............................................. 12

     C.    Risk of Continuing Litigation ..................................................... 15

     D.    Risk of Maintaining Class Action Status .................................... 15

     E.    The Extent of Discovery and Status of Proceedings .................... 16

     F.    Experience and Views of Counsel .............................................. 17

VI.  THIS COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND ENTER THE PRELIMINARY APPROVAL ORDER ............................................................................................... 17

     A.    The Proposed Settlement Class Should Be Certified ................... 17

          1.    The Class Satisfies Rule 23(a) ......................................... 18

               a.    Numerosity ............................................................. 18

               b.    Commonality .......................................................... 18

               c.    Typicality ............................................................... 19

               d.    Adequacy ............................................................... 20

          2.    The Class Satisfies Rule 23(b)(3) .................................... 21

               a.    Common Questions of Law and Fact Predominate .......................................................... 21

               b.    A Class Action Is the Superior Mechanism for Adjudicating This Dispute ...................................... 22

          3.    The Class Also Satisfies Rule 23(b)(2) ........................... 22

VII. THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE AND SHOULD BE APPROVED ..................... 24

VIII. CONCLUSION .................................................................................... 25

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ..................................................................17, 21, 22

*Arnold v. United Artists Theatre Circuit, Inc.,*
158 F.R.D. 439 (N.D. Cal. 1994) ...................................................... 19

*Balderas v. Massage Envy Franchising, LLC,*
2014 WL 3610945 (N.D. Cal. July 21, 2014)...................................... 13

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610 (N.D. Cal. 1979) ...................................................... 7

*Churchill Village, L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004)............................................................. 10

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008)...................................... 15

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.,*
2016 WL 5938722 (C.D. Cal. May 16, 2016) ..................................... 14

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011)........................................................23, 24

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................................... 10

*Gen. Tel. Co. of the Southwest v. Falcon,*
457 U.S. 147 (1982) .......................................................................... 19

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)....................................................passim

*Hendricks v. Starkist Co.,*
2016 WL 5462423 n. 3 (N.D. Cal. Sept. 29, 2016) ...................12, 13, 14

*Hightower v. JPMorgan Chase Bank, N.A.,*
2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) ...................................... 14

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000)............................................................. 16

*In re Netflix Privacy Litig.,*
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)..................................... 16

*In re Omnivision Techs., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................. 17

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

ii

*In re POM Wonderful LLC*,
   2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ........................................ 10

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................ 6

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................. 6

*Khasin v. R. C. Bigelow, Inc.*,
   2016 WL 1213767 (N.D. Cal. Mar. 29, 2016) .................................. 15

*Khasin v. R. C. Bigelow, Inc.*,
   2016 WL 4504500 (N.D. Cal. Aug. 29, 2016) .................................. 11

*Lanovaz v. Twinings N. Am., Inc.*,
   2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) .................................. 15

*Lilly v. Jamba Juice Co.*,
   2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .................................. 22

*Nur v. Tatitlek Support Services, Inc.*,
   2016 WL 3039573 (C.D. Cal. Apr. 25, 2016) .................................. 14

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................ 7, 10

*Protective Committee for Independent Stockholders of TMT Trailer
Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968) ........................................................................ 7

*Red v. Kraft Foods, Inc.*,
   2012 WL 8019257 (C.D. Cal. Apr.12, 2012) ................................... 10

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................ 10, 15, 17

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ................................................... 18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ......................................................... 20

*Stovall-Gusman v. W.W. Granger, Inc.*,
   2015 WL 3776765 (N.D. Cal. June 17, 2015) ................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) .................................................................. 18

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ....................................................... 21

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

iii

**STATUTES**

NY GBL § 349.................................................................................................4, 21

**RULES**

Fed. R. Civ. P. 23(a)(1).........................................................................................18

Fed. R. Civ. P. 23(a)(2).........................................................................................18

Fed. R. Civ. P. 23(a)(3).........................................................................................19

Fed. R. Civ. P. 23(a)(4).........................................................................................20

Fed. R. Civ. P. 23(b)(3)(D)....................................................................................22

Fed. R. Civ. P. 23(c)(2)(B)....................................................................................24

Fed. R. Civ. P. 23(e)(1).........................................................................................24

**REGULATIONS**

21 C.F.R. § 101.54(g) ............................................................................................1

**OTHER AUTHORITIES**

H. Newberg & Conte, 1 Newberg on Class Actions § 3.10 (1992) .........................18

Manual for Complex Litigation, § 21.312 (4th ed. 2004) .........................................5

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

iv

## I.     INTRODUCTION

Plaintiffs respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

Plaintiffs' operative complaint, the Fifth Amended Class Action Complaint, alleges three bases for relief, including: (1) that continued fermentation of Millennium's Enlightened kombucha beverages causes an increase in the alcohol concentration in the beverages to broach allowable legal limits and, accordingly, causes any alcohol warnings (or lack thereof) on the beverages' labels to be misleading and insufficient as a matter of law; (2) that the antioxidant representations on the labels of Enlightened kombucha beverages are misleading because the beverages do not contain any antioxidant nutrients as required for such statements by 21 C.F.R. § 101.54(g) and corresponding state laws; and (3) that the labels of Millennium's Enlightened and Classic kombucha beverages are misleading for the additional reason that they understate the amount of sugar in the beverages.

After *three* mediations before Jill R. Sperber, Esq. of Judicate West, investigations spanning roughly two years, motion practice, protracted discovery, and ongoing laboratory testing, the parties have reached a settlement that provides substantial monetary benefit to the class and significant injunctive relief.  Defendants have agreed to provide up to $8,250,000 to pay claims for those who purchased one or more flavors of the Subject Products on a claims-made basis.[1]  Class Members can receive a $3.50 cash payment for each bottle of every Subject Product purchased up to 10 bottles ($35) without Proof of Purchase.  Alternatively, Class Members can choose a product voucher redeemable for a free Millennium product for each bottle of every Subject Product purchased up to 10 bottles without Proof of Purchase.  For claims administration purposes, these vouchers will be assigned a value of $3.50,

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement.  *See* Fisher Decl. Ex. 1.

although their value may be higher or lower depending on the point of sale at issue. [2]
Product Vouchers will have no expiration date and will be redeemable for any
Subject Product at no cost.  Class Members with Proof of Purchase can receive up to
$60 in cash or $60 in product vouchers at the actual retail price they paid.

The Settlement also provides expansive injunctive relief.  Millennium has
agreed to (1) cease ordering and printing labels bearing the term "antioxidant"; (2)
include a warning on its labels that "the products contain naturally occurring alcohol
and should not be consumed by individuals seeking to avoid alcohol due to
pregnancy, allergies, sensitivities or religious beliefs"; (3) regularly test samples of
its products (at the time of bottling and the time of expiration) using a third-party
laboratory to ensure compliance with federal and state labeling standards and to
ensure the accuracy of the representations regarding the sugar content of its products;
and (4) include a warning on its labels that the products may be under pressure and
that the failure to refrigerate the products may result in leaking or gushing.  Further,
should a new, industrywide standard for testing the alcohol content of kombucha be
developed, Millennium will adopt that testing methodology.

In its Order denying Plaintiff's prior motion for preliminary approval, the
Court expressed a few concerns about the prior settlement.  Dkt. 95.  Specifically,
the Court was concerned that (a) Plaintiffs' prior motion did not provide sufficient
explanation of how the amount of relief offered related to the harm suffered by Class
Members; (b) that Plaintiffs did not provide sufficient information for the Court to
evaluate the true value of the voucher option as compared to the cash option; and (c)
that the product giveaway option did not provide a sufficient benefit to the Class.

---

[2] Millennium does not provide MSRP amounts for the Subject Products to its various
distributors, and, accordingly, there is no uniform retail price.  Millennium estimates
that the average retail price of the Subject Products is between $2.99 to $3.99.  *See*
Decl. of GT Dave at ¶ 4-6.  Thus, $3.50 was chosen as the closest approximation of
the average retail price.  This figure comports with Plaintiffs' personal experiences in
purchasing the Subject Products.

On October 7, 2016, the parties participated in a third mediation with Ms. Sperber and reached an agreement that addresses each of the Court's concerns. Notably, the value of the cash and voucher claims under the current Settlement is identical. Class Members can receive either up to $35 in cash or up to $35 in vouchers for the same number (ten) of Subject Products purchased.[3] The value of voucher claims for settlement purposes is set at $3.50, the estimated average retail price of the Subject Products. *See* Dave Decl. at ¶¶ 4-6. Cash claims are likewise valued at $3.50 per bottle purchased, a 40 percent increase from the prior settlement. The Settlement increases the fund available to pay all claims by $750,000. It also increases the budget for notice and claims administration by $125,000, and increases the mandatory reach of the notice program from 70% to 80%. The Settlement eliminates the Product Giveaway provision entirely. Further, Plaintiffs' motion provides the Court with an extensive evaluation of the risks Plaintiffs faced in continuing to litigate their claims, the relationship between the relief provided and Plaintiffs' claims, and the fairness and adequacy of the Settlement overall.

As in any class action, the Settlement is subject initially to preliminary approval and then to final approval by the Court after notice to the class and a hearing. Plaintiffs now request this Court to (1) grant preliminary approval of Settlement; (2) conditionally certify the Class, designate Plaintiffs as Class Representatives, and appoint Bursor & Fisher, P.A. as Class Counsel; (3) appoint Angeion Group as the Settlement Administrator and establish procedures for giving notice to members of the Class; (4) approve forms of notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (6) set a date, time and place for a final approval hearing. *See* Proposed Preliminary Approval Order, Ex. D to Settlement.

---

[3] The prior settlement provided up to $20 in cash for 8 purchases or up to $30 in vouchers for 8 purchases. Thus, Class Members can receive up to $15 more in cash or $5 more in vouchers under the current settlement.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

3

## II.    PROCEDURAL BACKGROUND

On March 11, 2015, Plaintiffs filed this case in this Court alleging that Millennium made false or misleading representations regarding the antioxidant content of its kombucha beverages.  Dkt. No. 1.  Millennium moved to dismiss the complaint and to strike Plaintiffs' class action allegations.  Dkt. 13.  In response, Plaintiffs filed a First Amended Complaint.  Dkt. 14.  Millennium again moved to dismiss the complaint and to strike Plaintiffs' class allegations.  Dkt. 17.  The Court denied Millennium's motion to dismiss as to Plaintiffs' claims under the CLRA, UCL, FAL and NY GBL § 349 and denied Millennium's motion to strike, but granted the motion to dismiss Plaintiffs' request for injunctive relief without prejudice.  Dkt. No. 25.  Plaintiffs subsequently amended the Complaint to allege additional facts in support of their claims for injunctive relief.  Dkt. No. 68 at ¶¶ 6-8.

On October 8, 2015, after commissioning two independent laboratories to test the alcohol content of Millennium's Enlightened Kombucha and Synergy beverages and several months of ongoing investigation, Plaintiffs filed a Third Amended Complaint adding claims regarding the purportedly high alcohol content of the products and Millennium's failure to provide federal alcohol warnings regarding the same.  Dkt. No. 30.  On February 11, 2016, Plaintiffs filed a Fourth Amended Complaint adding Whole Foods as a Defendant.  Dkt. No. 53.  Millennium answered on February 29, 2016 and Whole Foods moved to dismiss on April 7, 2016.

On June 22, 2016, Plaintiffs filed a Fifth Amended Complaint pleading additional claims regarding Millennium's alleged failure to correctly state the sugar content of its products on the labels after the discovery of a recent study concerning the sugar content of Millennium's products and further investigations.  Dkt. 68.  Millennium answered the Fifth Amended Complaint on July 6, 2016 and Whole Foods moved to dismiss on July 11, 2016.

After two mediations before Jill R. Sperber, Esq. of Judicate West, Plaintiffs filed a motion for preliminary approval of class action settlement on August 11,

1  2016.  Dkt. 77.  The Court vacated all then-scheduled pretrial deadlines on August

2  18, 2016 pursuant to the parties' stipulation.  Dkt. 80.  On September 21, 2016, the

3  Court denied the motion for preliminary approval.

4       The parties participated in a third mediation with Ms. Sperber on October 7,

5  2016, where they reached an agreement in principle as to all claims for monetary

6  relief set forth in Section IV(A) of the Settlement, and all injunctive relief

7  concerning the Plaintiffs' antioxidant, alcohol, and sugar labeling claims set forth in

8  Section IV(B)(a), (b), (c), (d), and (e) of the Settlement.  After reaching the new

9  agreement in principle, the parties conferred with opposing counsel in *Pedro et al. v.*

10  *Millennium Products, Inc.*, Case No. 16-cv-03780-PSG-AJW (C.D. Cal 2016).

11  During these negotiations, the parties stated their position that the claims asserted in

12  *Pedro* are subsumed within the *Retta* matter, and *Pedro* plaintiffs stated their

13  position that the *Retta* action, although addressing the bulk of their claims, did not

14  address a remaining claim for injunctive relief with respect to their allegations that

15  the bottles of Millennium's products leak, fizz, or spill due to potential pressure

16  buildup.  As a result of these negotiations, the *Retta* Plaintiffs and Defendants agreed

17  that additional injunctive relief set out in Section IV(B)(f) of the Settlement would be

18  provided by the *Retta* settlement to address the *Pedro* Plaintiffs' remaining claim.

19       Counsel for Plaintiffs and counsel for Defendants have engaged in substantial

20  arm's-length negotiations in an effort to resolve this action over a period of roughly

21  eight months, including participating in *three* mediations.  The parties have

22  considered the risks and potential costs of continued litigation of this action, on the

23  one hand, and the benefits of the proposed settlement, on the other hand, and desire

24  to settle the action upon the terms and conditions set forth in the Settlement.

25  **III.   THE STANDARD FOR PRELIMINARY APPROVAL**

26       Approval of class action settlements involves a two-step process.  First, the

27  Court must make a preliminary determination whether the proposed settlement

28

appears to be fair and is "within the range of possible approval." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  If so, notice can be sent to class members and the Court can schedule a final approval hearing.  *See Manual for Complex Litigation*, § 21.312 at 293-96 (4th ed. 2004) (hereinafter "*Manual*").

The purpose of a preliminary approval hearing is to ascertain whether to send out notice to putative class members and proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id*.  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (finding that "[t]he question currently before the court is whether this settlement should be preliminarily approved" for the purposes of notifying the putative class members of the proposed settlement and proceeding with a fairness hearing, which requires the court to consider whether the settlement appears to be fair and "falls within the range of possible approval").

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  Here, the negotiations were conducted at arm's length, were non-collusive and were well informed, with an assessment of the strengths and weaknesses of the claims on both sides, were conducted between counsel with decades of class action experience, and utilized at the appropriate time the assistance of a well-respected mediator.  Under

such circumstances, the Court is entitled to rely upon the opinions and assessments of counsel that the settlement is fair and reasonable. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement. "[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

## IV.   TERMS OF THE PROPOSED SETTLEMENT

The proposed Class consists of "all persons in the United States and United States Territories who purchased at retail one or more of the Subject Products during the Class Period." Settlement ¶ 7. Excluded from the Class are (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of re-sale; and (d) all persons who have filed a timely Request for Exclusion from the Class. *See id.*

### A.   Monetary Relief for Class Members

Defendants have agreed to pay up to $8,250,000 to cover all claims filed by Class Members as well as the costs of settlement administration, incentive awards,

and attorneys' fees, costs and expenses.  Class Members can receive a cash payment of $3.50 for each Subject Product purchased during the Class Period up to $35 (10 purchases) without proof of purchase.  Alternatively, Class Members can receive a product voucher redeemable for a free Millennium product for each Subject Product purchased during the Class Period up to $35 worth of product vouchers.  For claims administration purposes, these vouchers will be assigned a value of $3.50.  Thus, cash and voucher claims are equally valuable to putative class members (although the value of vouchers may be higher or lower than $3.50 depending on the point of sale at issue).  Class Members with proof of purchase can receive a cash payment up to $60 or a product voucher up to $60 at the retail price they paid for each purchase of the Subject Products during the Class Period.  If the aggregate value of the cash and voucher awards claimed exceeds the Net Cash Amount, then the cash and voucher awards will be reduced on a pro rata basis, such that the aggregate value of the awards does not exceed the Net Cash Amount.  Settlement ¶ 46.[4]

## B.      Injunctive Relief

Pursuant to the Settlement, Millennium will cease ordering and printing labels bearing the term "antioxidant."  Millennium will also include warnings on its labels that "the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs" and that "Contents are under pressure. Failure to refrigerate may increase pressure, causing product to leak or gush."  Millennium will also regularly test samples of its products (at the time of bottling and the time of expiration) using a third-party laboratory to ensure compliance with federal and state alcohol labeling standards and to ensure the accuracy of the representations regarding the sugar content of its products.  Should a new, industrywide standard for testing the alcohol

---

[4] The Net Cash Amount is defined as the value derived by subtracting the value of any attorneys' fees, expenses, incentives awards, and any settlement administration expenses from $8,250,000.  *Id*. at ¶ 18.

content of kombucha be developed, Millennium will adopt that testing methodology.

**C.     Incentive Awards and Attorneys' Fees, Costs and Expenses**

Subject to the Court's approval, Defendants have agreed to pay incentive awards to Plaintiffs and the Related Plaintiffs in the amount of $2,000.  In addition, Class Counsel will make an application to the Court for an award of attorneys' fees, costs and expenses.  Defendants have the right to challenge the amount of Plaintiffs' fees, costs and expenses and there is no formal agreement as to the amount of attorneys' fees, costs and expenses that will be sought by Class Counsel.

**D.     Notice and Administrative Fees**

The parties propose that Angeion Group act as the Settlement Administrator. Angeion will develop a notice and claims administration program designed to achieve at least 80% reach.  Defendants shall pay all Settlement Administration Expenses up to $400,000.  Any reasonable Settlement Administration Expenses above $400,000 shall be deducted on a pro rata basis from the cash rewards and product vouchers claimed by Authorized Claimants, regardless of whether the entire $8,250,000 fund is fully exhausted.  Notice and claims administration costs will be paid from the Settlement Fund.

**V.     THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE PRELIMINARILY APPROVED**

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  When making this determination, the Ninth Circuit has instructed district courts to balance several factors:  (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings;

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

9

and (6) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026;[5] *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, the balance of these factors readily establishes that the Settlement should be preliminarily approved.

### A.  Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).  Here, the settlement negotiations were hard-fought, requiring multiple mediation sessions over several months, with both Parties and their counsel thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.  Plaintiffs believe that the Settlement is an outstanding result considering the issues addressed below.

In false or misleading advertising cases concerning beverages or foods, plaintiffs are typically foreclosed from full-refund theories of damages at class certification.  *See, e.g., In re POM Wonderful LLC*, 2014 WL 1225184, at *2-*3 (C.D. Cal. Mar. 25, 2014) (explaining that a full refund damages model is unavailable where the beverage at issue provided class members with benefits in the form of calories, hydration, vitamins, and minerals); *Red v. Kraft Foods, Inc.,* 2012 WL 8019257, at *11 (C.D. Cal. Apr.12, 2012).  Here, the Subject Products contain multiple vitamins, enzymes and probiotics, and provide hydration and calories.

---

[5] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

Defendants would have strong arguments against a full damages model for relief.

Although Plaintiffs believe that proving price premium damages would be possible here, there is no guarantee that the ultimate price premium proved would justify the risk of further litigation.  As to the alcohol claims, it would be difficult to establish a price premium because Millennium's alcoholic kombucha beverages (the "Classic" line) and the purported non-alcoholic beverages (the "Enlightened" line) *retail for the exact same price at the same retail locations*.  Even if Plaintiffs were to establish a alcohol labeling problem, the alcohol levels of kombucha products necessarily vary over time due to an ongoing fermentation process.  Thus, the amount of alcohol in the accused products varies greatly between purchases, with some class members potentially receiving Enlightened products below and above the 0.5% alcohol by volume threshold.  Further, the alcohol labeling claims would likely devolve into an uncertain "battle of the experts."  Millennium produced 1,394 tests of the alcohol concentration of Enlightened kombucha beverages spanning several years within the Class Period.  Every single test showed that the beverages were *below* the federally mandated 0.5% threshold set for non-alcoholic beverages.

With regards to *Plaintiffs' claims concerning antiox*idants, Plaintiffs would face a strong hurdle at class certification and summary judgment to establish damages considering that some antioxidants (*e.g*., catechins) are actually present in the Subject Products, just not the antioxidant "nutrients" mandated by federal and state law.  *See, e.g., Khasin v. R. C. Bigelow*, 2016 WL 4504500, at *3-*6 (N.D. Cal. Aug. 29, 2016) (granting summary judgment in favor of defendant in antioxidant labeling case where it was undisputed that the tea beverage contained *some* antioxidants).  Nonetheless, Plaintiffs' review of the literature regarding consumer willingness to pay for labeling statements touting a product's antioxidant content shows that class members likely paid a roughly <u>four percent</u> premium based on the antioxidant representations at issue here.  *See* Armenak Markosyan, *et al*., *Consumer*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

11

*Response to Information about a Functional Food Product: Apples Enriched with Antioxidants*, Canadian Journal of Agricultural Economics, 325, 337 (2009) (concluding that customers are willing to pay a 4 percent price premium for a product advertised as being enriched with antioxidants).

Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or damages.  In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly higher than achieved here absent such risks.  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.  The Settlement also abrogates the risks that might prevent them from obtaining *any* relief.

### B.      The Amount Offered in Settlement

As discussed *supra*, it would be difficult for Plaintiffs to establish price premium damages above four percent of the purchase price.  Assuming that Plaintiffs were to prevail at trial and prove damages at four percent of the $3.50 retail price, damages would be set at 14 cents per Subject Product purchased during the Class Period.  The Settlement, however, provides up to $35 in cash or vouchers[6] without proof of purchase.  Class members can thus potentially receive full recovery for the price premium attributable to the purchase of up to 250 Subject Products within the Class Period without providing proof of purchase.  Indeed, even if a class member were to make a claim for a single cash award of $3.50, that class member would recover the price premium attributable to the purchase of 25 products.  The

---

[6] The voucher option is valued at "100 cents on the dollar" here because class members are given a choice between choosing cash or vouchers, and because the vouchers have no expiration date, are freely transferrable, and are redeemable at any retailer that sells the Subject Products. *Hendricks v. Starkist Co.*, 2016 WL 5462423, at *7, *10 n. 3 (N.D. Cal. Sept. 29, 2016) (finding that "vouchers are valued at 100 cents on the dollar" where the vouchers have no expiration date, are freely transferrable, and are redeemable at any retailer that sells the products).

significant relief provided here clearly favors settlement approval. *See, e.g., Hendricks v. Starkist Co.*, 2016 WL 5462423, at *5 (N.D. Cal. Sept. 29, 2016) ("Testing showed that there was an average underfill between 4.5% and 16.7%, resulting in damages between 3.87 cents and 14.3 cents per can. A $1.97 cash payment would provide full recovery for 13 to 50 cans and a voucher of $4.43 would provide full recovery for 30 to 114 cans. Accordingly, this factor weighs in favor of settlement as well.") (citations omitted).

Considering Plaintiffs' damages theories and real risks inherent in continued litigation, the total fund available to pay all claims—$8,250,000—fits squarely within the "range of reasonableness." *See id.* The Settlement aims to settle all claims "from March 11, 2011 up to and including the Notice Date." Settlement ¶ 10. From March of 2011 through the end of October of 2016, Millennium sold approximately 274,715,000 bottles of the Subject Products to its distributors. Although the precise amount of bottles sold at retail locations during this time period is not known, it is presumably smaller than the 274 million unit figure due to unsold inventory at retail locations. However, even assuming that all 274 million bottles were sold at retail, and assuming that Plaintiffs could prevail in showing damages at 14 cents per bottle as discussed above, the total maximum recovery available at trial would be roughly $38 million. Thus, the total fund made available by the Settlement represents more than 21 percent of potentially recovery at trial. This result is certainly "within the range of reasonableness in light of the risks and costs of litigation." *See id.* ("The $12,000,000 settlement amount, while consisting only a single-digit percentage of the maximum potential exposure, is reasonable given the stage of the proceedings and the defenses asserted in this action."); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3 % of the plaintiffs' potential recovery at trial); *Balderas v. Massage Envy Franchising, LLC*, 2014 WL

3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing 5 % of the projected maximum recovery at trial); *Ma v. Covidien Holding, Inc.*, 2914 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (finding a settlement worth 9.1 % of the total value of the action "within the range of reasonableness").  *See also Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, 2016 WL 5938722 at *5 (C.D. Cal. May 16, 2016) (*this* Court granting final approval where recovery was as low as 3.21 % of potential recovery at trial).

Further, "claims-made settlements … are routinely approved by the Ninth Circuit and Courts in California."  *See Nur v. Tatitlek Support Services, Inc.*, 2016 WL 3039573, at *3 (C.D. Cal. Apr. 25, 2016) (characterizing a string-cite of 16 cases as "only a small sample of those cases").  Indeed, this Court granted final approval to a class action settlement with a reversion clause just last year.  *See Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *7 (C.D. Cal. Aug. 4, 2015).  Although the $8,250,000 fund here is to be distributed on a "claims-made" basis, the Settlement sets aside $400,000 for notice and claims administration purposes and mandates a minimum 80 percent reach for the notice program.  *See* Settlement ¶ 48.  The notice program anticipates email and U.S. mail service, the creation of a settlement website, a toll-free number, an expansive internet banner ad campaign, publication notice, and notice through Millennium's popular social media accounts.  *See gen*. Weisbrot Decl.  As in *Hightower*, Plaintiffs would "not have been able to negotiate a maximum amount of even [$8,250,000]" if not for the claims-made structure of the Settlement "and have taken methods to increase participation in the Settlement."  *Hightower*, 2015 WL 9664959, at *7.  While there can be no guarantee the entire $8,250,000 will be depleted, Plaintiffs have structured the Settlement to maximize the chance that every cent of the fund is exhausted.[7]

---

[7] Class Counsel was also counsel for the settlement class in *Hendricks*, where a substantially similar notice program resulted in over 2.5 million claims.  *See Hendricks*, 2016 WL 5462423, at *3.

## C.     Risk of Continuing Litigation

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial.  Such considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Even assuming that Plaintiffs were to survive summary judgment, they would face the risk of establishing liability at trial in light of conflicting expert testimony between their own expert witnesses and Defendants' expert witnesses.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury.  The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.  Moreover, even if Plaintiffs prevailed at trial, in light of the possible damage theories that could be presented by both sides, there is a substantial likelihood based on the above analysis that Class Members may be awarded significantly less than is offered to them under this Settlement on an individual basis.  By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks of the appellate process.

## D.     Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in certifying a class and maintaining class status through trial.  For instance, plaintiffs in other antioxidant labeling cases have never obtained class certification of a damages class.  *See, e.g., Lanovaz v. Twinings N. Am., Inc*., 2014 WL 1652338 at *1, *4-*7 (N.D. Cal. Apr. 24, 2014); *Khasin v. R. C. Bigelow, Inc*., 2016 WL 1213767, at *1-*5 (N.D. Cal. Mar. 29, 2016).  Further, Plaintiffs are not aware of a single case where a damages class was certified due to a product's allegedly high

alcohol content.  Even assuming that the Court were to grant a motion for class

certification, the class could still be decertified at any time.  *See In re Netflix*

*Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that

a district court could decertify a class at any time is one that weighs in favor of

settlement.") (internal citations omitted).  The Settlement eliminates these risks by

ensuring Class Members a recovery that is "certain and immediate, eliminating the

risk that class members would be left without any recovery … at all."  *Fulford v.*

*Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

## E.    The Extent of Discovery and Status of Proceedings

Under this factor, courts evaluate whether class counsel had sufficient

information to make an informed decision about the merits of the case.  *See In re*

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Beginning in June of

2015, Plaintiffs have conducted extensive research, discovery, and investigation,

including, without limitation: (i) the review of Defendants' production, including

more than a thousand of Millennium's alcohol and antioxidant testing results

throughout the Class Period, sales information, distributor information, internal

communications, communications with potential customers, and information

regarding current and former labeling of the Subject Products; (ii) the review of

testing results and other documents produced by the American Herbal Products

Association, Inc. and Kombucha Brewers International in response to Plaintiffs'

subpoenas; (iii) the review of product tests initiated and paid for by Plaintiffs and

Class Counsel; (iv) an in-person inspection of the facilities and equipment of

Brewing & Distilling Analytical Services, LLC, one of the laboratories

commissioned by Plaintiffs to conduct testing of the Subject Products; (v) the review

of other publicly available reports and tests concerning Defendants' products; and

(vi) the review of publicly available information regarding Defendants, their business

practices and prior litigation.  The parties also held numerous telephonic and written

discussions regarding Plaintiffs' allegations, discovery and settlement as well as three mediations with Ms. Sperber, with subsequent follow on negotiations after those mediations during which the terms of an agreement were extensively debated and negotiated.  The Settlement is thus the result of fully-informed negotiations.

### F.     Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967.  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation.  *See* Fisher Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.).  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation.

For all the foregoing reasons, the Settlement is fair, adequate, and reasonable, and should be preliminarily approved.

## VI.    THIS COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND ENTER THE PRELIMINARY APPROVAL ORDER

### A.     The Proposed Settlement Class Should Be Certified

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  In assessing those class certification requirements, a court may properly consider that there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable

management problems . . . for the proposal is that there be no trial.").  For the reasons below, the Class meets the requirements of Rule 23(a) and (b).

### 1. The Class Satisfies Rule 23(a)

#### a. *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  *See* Rule 23(a)(1).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21."  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).   Here, the proposed Class is comprised of millions of consumers who purchased the Subject Products – a number that obviously satisfies the numerosity requirement.  Accordingly, the proposed Class is so numerous that joinder of their claims is impracticable.

#### b. *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  *See* Rule 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend on a common contention," "capable of class-wide resolution … meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Because the commonality requirement may be satisfied by a single common issue, it is easily met.  H. Newberg & Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992).

There are ample issues of both law and fact here that are common to the members of the Class.  All of the Class Members' claims arise from a common nucleus of facts and are based on the same legal theories.  Plaintiffs allege that Defendants mislabeled the Subject Products by (1) using the term "antioxidant" on the labels when the products allegedly do not contain antioxidant nutrients, (2) labeling the products as non-alcoholic when in fact they allegedly contain two to

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

18

1   seven times the amount of alcohol permitted for non-alcoholic beverages, and (3)

2   allegedly understating the sugar content of the products.  Accordingly, commonality

3   is satisfied by the existence of these common factual issues.  *See Arnold v. United*

4   *Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality

5   requirement met by "the alleged existence of common discriminatory practices").

6        Second, Plaintiffs' claims are brought under legal theories common to the

7   Class as a whole.  Alleging a common legal theory alone is enough to establish

8   commonality.  *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not

9   be common to satisfy the rule.  The existence of shared legal issues with divergent

10  factual predicates is sufficient, as is a common core of salient facts coupled with

11  disparate legal remedies within the class.").  Here, all of the legal theories asserted

12  by Plaintiffs are common to all Class Members.  Given that there are virtually no

13  issues of law which affect only individual members of the Class, common issues of

14  law clearly predominate over individual ones.  Thus, commonality is satisfied.

15            *c.*    *Typicality*

16       Rule 23(a)(3) requires that the claims of the representative plaintiffs be

17  "typical of the claims … of the class."  *See* Rule 23(a)(3).  "Under the rule's

18  permissive standards, representative claims are 'typical' if they are reasonably co-

19  extensive with those of absent class members; they need not be substantially

20  identical."  *See Hanlon*, 150 F.3d at 1020.  In short, to meet the typicality

21  requirement, the representative plaintiffs simply must demonstrate that the members

22  of the settlement class have the same or similar grievances.  *Gen. Tel. Co. of the*

23  *Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

24       The claims of the named Plaintiffs are typical of those of the Class.  Like those

25  of the Class, their claims arise out of the purchase of Millennium's kombucha

26  beverages and the alleged mislabeling of those products.  Each named Plaintiff

27  purchased several of Millennium's kombucha products and was exposed to the

28

allegedly false or misleading labels.  The named Plaintiffs have precisely the same claims as the Class, and must satisfy the same elements of each of their claims, as must other Class Members.  Supported by the same legal theories, the named Plaintiffs and all Class Members share claims based on the same alleged course of conduct.  The named Plaintiffs and all Class Members have been injured in the same manner by this conduct.  Therefore, Plaintiffs satisfy the typicality requirement.

### d.   *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class."  *See* Rule 23(a)(4).  A plaintiff will adequately represent the class where: (1) plaintiffs and their counsel do not have conflicts of interests with other class members; and (2) where plaintiffs and their counsel prosecute the action vigorously on behalf of the class.  *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).  Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length.  2 *Newberg on Class Actions, supra*, §11.28, at 11-59.

Class Counsel have vigorously and competently pursued the Class Members' claims.  The arm's-length settlement negotiations that took place and the investigation they undertook demonstrate that Class Counsel adequately represent the Class.  Moreover, the named Plaintiffs and Class Counsel have no conflicts of interests with the Class.  Rather, the named Plaintiffs, like each absent Class Member, have a strong interest in proving Defendants' common course of conduct, and obtaining redress.  In pursing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Class.  Class Counsel have extensive experience and expertise in prosecuting complex class actions.  Class Counsel are active practitioners who are highly experienced in class action, product liability, and

consumer fraud litigation.  *See* Fisher Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.).  Accordingly, Rule 23(a)(4) is satisfied.

## 2. **The Class Satisfies Rule 23(b)(3)**

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See* Rule 23(b)(3).  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022.

### a. *Common Questions of Law and Fact Predominate*

The proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members.  Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue.  *Amchem*, 521 U.S. at 620.

In this case, common questions of law and fact exist and predominate over any individual questions, including in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27), *inter alia*:  (1) whether Defendants' representations regarding the Subject Products were false and misleading or reasonably likely to deceive consumers; (2) whether the Subject Products are

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

21

1  misbranded; (3) whether Defendants violated the CLRA, UCL, FAL and NY GBL

2  §349; (4) whether Defendants breached an express or implied warranty; (5) whether

3  Defendants had defrauded Plaintiff and the Class Members; and (6) whether the

4  Class has been injured by the wrongs complained of, and if so, whether Plaintiffs and

5  the Class are entitled to damages, injunctive and/or other equitable relief, including

6  restitution or disgorgement, and if so, the nature and amount of such relief.

7

8                     **b.**    *A Class Action Is the Superior Mechanism for Adjudicating This Dispute*

9        The class mechanism is superior to other available means for the fair and

10  efficient adjudication of the claims of the Class Members.  Each individual Class

11  Member may lack the resources to undergo the burden and expense of individual

12  prosecution of the complex and extensive litigation necessary to establish

13  Defendants' liability.  Individualized litigation increases the delay and expense to all

14  parties and multiplies the burden on the judicial system presented by the complex

15  legal and factual issues of this case.  Individualized litigation also presents a

16  potential for inconsistent or contradictory judgments.  In contrast, the class action

17  device presents far fewer management difficulties and provides the benefits of single

18  adjudication, economy of scale, and comprehensive supervision by a single court.

19        Moreover, since this action will now settle, the Court need not consider issues

20  of manageability relating to trial.  *See Amchem*, 521 U.S. at 620 ("Confronted with a

21  request for settlement-only class certification, a district court need not inquire

22  whether the case, if tried, would present intractable management problems, see Fed.

23  Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

24  Accordingly, common questions predominate and a class action is the superior

25  method of adjudicating this controversy.

26                **3.**    **The Class Also Satisfies Rule 23(b)(2)**

27        The proposed class is also well suited for certification under Rule 23(b)(2).

28  *See gen. Lilly v. Jamba Juice Co*., 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

22

(granting preliminary approval of a Rule 23(b)(2) class of smoothie kit purchasers).
*See also Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 978 (9th Cir. 2011)
(explaining that the district court may certify a Rule 23(b)(2) class and a separate
Rule 23(b)(3) class).  In the Court's Order Denying in Part and Granting in Part
Motion to Dismiss and Denying Motion to Strike, the Court dismissed Plaintiffs'
claims for injunctive relief "because Plaintiffs do not allege that they would purchase
GT's Kombucha Beverages again in the future, so long as Millennium changed the
purportedly deceptive labeling."  Dkt. 25, at 17.  The Court "allow[ed] Plaintiffs to
amend the [Complaint] to remedy this pleading deficiency."  *Id*.  Plaintiffs have
subsequently amended the Complaint to allege just that.  *See* Fifth Am. Class Action
Compl. at ¶¶ 6-8 (alleging that Plaintiffs "would still be willing to purchase the
current formulations of [the Subject Products], absent the price premium, so long as
Millennium engages in corrective advertising").  Accordingly, Plaintiffs have
standing to seek certification of a Rule 23(b)(2) class.  As discussed above, the
Settlement provides precisely the injunctive relief sought in the Complaint,
consisting of, *inter alia*, removal of the word "antioxidant" from the labels of the
Subject Products, the addition of an alcohol warning on the labels of Millennium's
Enlightened kombucha products, requirements that Millennium regularly pay for
testing of the Subject Products to be conducted by an independent laboratory, and
changing the labels of the Subject Products with regards to the declared sugar
content if testing shows that the declared amounts are inconsistent.  Further, should a
new, industrywide standard for testing the alcohol content of kombucha be
developed, Millennium will adopt that testing methodology.  Absent the Settlement,
this type of injunctive relief would only be available to Class Members after
prevailing at trial on the merits.

## VII.   THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE AND SHOULD BE APPROVED

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Rule 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal."  Rule 23(e)(1).

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice.  *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows Class Members to decide whether to opt out of or participate in the class and/or to object to the Settlement and argue against final approval by the Court.  *Id*.  The proposed notice program here, which is described in detail in the Fisher and Weisbrot Declarations, informs the Class of their rights and includes a comprehensive plan for delivery of notice by e-mail, U.S. Mail, a settlement website, publication in the California edition of USA Today, and Internet banner ads and constitutes the best notice practicable under the circumstances of this case.

The Notices accurately inform Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class.  The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process.  *See* Exs. E and F to the Settlement, at Fisher Decl. Ex. 1:

**Email and U.S. Mail Notice:**  A notice substantially in the form attached as Exhibit E to the Settlement shall be e-mailed or mailed to the last known e-mail address or U.S. mailing address of any Class Member whose contact

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

24

information is reasonably available to Millennium.  E-Mail Notice will be followed by U.S. Mail Notice to any recipient for whom E-Mail Notice is unsuccessful.

**Settlement Website:**  The parties will post a copy of the Long Form Notice (Ex. 3) on a website to be maintained by the Administrator, which will additionally contain the settlement documents, an online claim form, a list of important dates, and any other information to which the parties may agree. The website shall also contain a Settlement Email Address and Settlement Telephone Number, where Class Members can submit questions and receive further information and assistance.

**Internet Banner Ad Campaign:**  The Administrator will implement an Internet banner ad campaign that contains an embedded link to the Settlement Website, which will be designed to reach at least 85% of the Class Members, without even taking account of other forms of notice contemplated by the notice program.  The internet banner ad campaign is estimated to result in more than 12,900,000 impressions.  Weisbrot Decl. ¶¶ 10, 18.

**Publication Notice:**  The parties shall supplement direct notice by publishing the Summary Notice, attached as Exhibit F to the Settlement, for four consecutive weeks in the California edition of USA Today.  The Summary Notice shall not be less than 1/4 of a page in size.

**Millennium's Social Media Accounts:**  Millennium has also agreed to post a link to the Settlement website on its company website and on its Facebook, Instagram and Twitter pages.  *Id*. ¶ 22.

**CAFA Notice:**  The parties shall also cause to be disseminated the notice to public officials required by the Class Action Fairness Act ("CAFA") in accordance with the provisions of that Act.  *Id*. ¶ 8.

This proposed notice program provides a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the Settlement.  This notice program is designed to reach at least 85 percent of the Class Members.  Weisbrot Decl. ¶ 22.  Thus, the notices and notice procedures amply satisfy the requirements of due process.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grant preliminary approval, provisionally certify the Class, approve the proposed notice plan, and enter the Proposed Preliminary Approval Order.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 2:15-CV-01801-PSG-AJW

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  November 18, 2016

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _  /s/L. Timothy Fisher_
        L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          apersinger@bursor.com
          ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-01801-PSG-AJW

26