1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  Annick M. Persinger (State Bar No. 272996)
   Yeremey O. Krivoshey (State Bar No. 295032)
3  1990 North California Blvd., Suite 940
   Walnut Creek, CA 94596
4  Telephone: (925) 300-4455
   Facsimile: (925) 407-2700
5  E-Mail:  ltfisher@bursor.com
                 apersinger@bursor.com
6                 ykrivoshey@bursor.com
7
8  *Attorneys for Plaintiffs*

9

10                 **UNITED STATES DISTRICT COURT**

11                 **CENTRAL DISTRICT OF CALIFORNIA**

12

13  | | |
    |---|---|
    | JONATHAN RETTA, KIRSTEN SCHOFIELD, and JESSICA MANIRE on Behalf of Themselves and all Others Similarly Situated, | Case No.  2:15-cv-01801-PSG-AJW |

14  JONATHAN RETTA, KIRSTEN
    SCHOFIELD, and JESSICA MANIRE       Case No.  2:15-cv-01801-PSG-AJW
15  on Behalf of Themselves and all Others
    Similarly Situated,                **DECLARATION OF L. TIMOTHY**
16                                      **FISHER IN SUPPORT OF**
                        Plaintiffs,     **PLAINTIFFS' MEMORANDUM OF**
17                                      **POINTS AND AUTHORITIES IN**
           v.                           **SUPPORT OF MOTION FOR**
18                                      **PRELIMINARY APPROVAL OF**
    MILLENNIUM PRODUCTS, INC., and      **CLASS ACTION SETTLEMENT**
19  WHOLE FOODS MARKET, INC.,
                                        Date: January 30, 2017
20                      Defendants.     Time: 1:30 p.m.
                                        Courtroom 880
21
                                        Judge: Hon. Philip S. Gutierrez
22

23

24

25

26

27

28
    _____
    DECLARATION OF L. TIMOTHY FISHER
    CASE NO. 2:15-CV-01801-PSG-AJW

1

### DECLARATION OF L. TIMOTHY FISHER

2   I, L. Timothy Fisher, declare as follows:

3  1. I am an attorney at law licensed to practice in the State of California.  I

4   am a member of the bar of this Court, and I am a partner at Bursor & Fisher, P.A.,

5   counsel for Plaintiffs in this action.  I make this declaration in support of Plaintiffs'

6   Motion for Preliminary Approval of Class Action Settlement, Provisional

7   Certification of Nationwide Settlement Class, and Approval of Procedure for and

8   Form of Notice.  I have personal knowledge of the facts set forth in this declaration,

9   and, if called as a witness, could and would competently testify thereto under oath.

10  2. Bursor & Fisher, P.A. ("Class Counsel"), working in tandem with

11   attorneys at Lehrman Beverage Law, PLLC, conducted extensive research,

12   discovery, and investigation during the prosecution of this Action, including, without

13   limitation: (i) the review of Defendants' production, including more than a thousand

14   of Millennium's alcohol and antioxidant testing results throughout the Class Period,

15   sales information, distributor information, internal communications, communications

16   with potential customers, and information regarding current and former labeling of

17   the Subject Products; (ii) the review of testing results and other documents produced

18   by the American Herbal Products Association, Inc. and Kombucha Brewers

19   International in response to Plaintiffs' subpoenas; (iii) the review of product tests

20   initiated and paid for by Plaintiffs and Class Counsel; (iv) an in-person inspection of

21   the facilities and equipment of Brewing & Distilling Analytical Services, LLC, one

22   of the laboratories commissioned by Plaintiffs to conduct testing of the Subject

23   Products; (v) the review of other publicly available reports and tests concerning

24   Defendants' products; and (vi) the review of publicly available information

25   regarding Defendants, their business practices and prior litigation.

26  3. Class Counsel and counsel for Defendants have engaged in substantial

27   arm's length negotiations in an effort to resolve the Action over a period of roughly

28

---

eight months, including conducting numerous telephone conferences, and three mediations before Jill Sperber, Esq. of Judicate West with subsequent follow-up negotiations, during which the terms of an agreement were extensively discussed and debated.

4.      This Settlement constitutes an excellent recovery for Class members, and is within the reasonable range of probable recoveries.  Defendants have agreed to provide up to $8,250,000 to pay claims for those who purchased one or more flavors of the Subject Products on a claims-made basis.[1]  Class Members can receive a $3.50 cash payment for each bottle of every Subject Product purchased up to 10 bottles ($35) without Proof of Purchase.  Alternatively, Class Members can choose a product voucher redeemable for a free Millennium product for each bottle of every Subject Product purchased up to 10 bottles without Proof of Purchase.  For claims administration purposes, these vouchers will be assigned a value of $3.50, although their value may be higher or lower depending on the point of sale at issue.[2]  Product Vouchers will have no expiration date and will be redeemable for any Subject Product at no cost.  Class Members with Proof of Purchase can receive up to $60 in cash or $60 in product vouchers at the actual retail price they paid.

5.      The Parties propose that Angeion Group shall serve as the Settlement Administrator.  The Parties will work with the Settlement Administer to develop a notice program designed to achieve at least 80% reach.  As discussed in detail in the Weisbrot Declaration, the Parties expect that the notice program will in fact achieve at least an 85% reach.  The notice program will consist of a Summary Notice to be

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement.  *See* Fisher Decl. Ex. 1.

[2] According to information and belief, Millennium does not provide MSRP amounts for the Subject Products to its various distributors, and, accordingly, there is no uniform retail price.  Millennium estimates that the average retail price of the Subject Products is between $2.99 to $3.99.  *See* Decl. of GT Dave at ¶ 4-6.  Thus, $3.50 was chosen as the closest approximation of the average retail price.  This figure comports with Plaintiffs' personal experiences in purchasing the Subject Products.

DECLARATION OF L. TIMOTHY FISHER                                           2
CASE NO. 2:15-CV-01801-PSG-AJW

published on the Settlement Website and once a week, for four successive weeks, in the California edition of USA Today.  The notice program will also have an expansive internet advertising component, consisting of both digital banner ads and links to the Settlement Website on Millennium's website and on its Facebook, Instagram, and Twitter accounts.  The Settlement Administrator will also establish a Settlement Website where Class Members will be able to submit claims and receive notice regarding all applicable deadlines, the Agreement, Class Notice, all papers filed by the Parties in support of the settlement, orders pertaining to the settlement, and contact information for reaching the Settlement Administrator via a toll-free telephone number, e-mail, and U.S. mail.  Further, the Settlement Agreement mandates that Millennium provide direct notice to all Class Members that can be identified through reasonable effort.  The Parties and the Claims Administrator will also cause to be disseminated the notice to public officials required by the Class Action Fairness Act ("CAFA") in accordance with the provisions of that Act.

6.     Class Counsel have vigorously and competently pursued the Class Members' claims.  The arm's-length settlement negotiations that took place and the investigation they undertook demonstrate that Class Counsel adequately represent the Class.  Moreover, the named Plaintiffs and Class Counsel have no conflicts of interests with the Class.  Rather, the named Plaintiffs, like each absent Class Member, have a strong interest in proving Defendants' common course of conduct, and obtaining redress.  In pursing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Class.  Class Counsel have extensive experience and expertise in prosecuting complex class actions. Class Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation.

7.      Although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome was not assured.  They also recognize that they will face risks at class certification, summary judgment, and trial.  Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or damages.  In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks.  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.  The Settlement Agreement also abrogates the risks that might prevent them from obtaining relief.

8.      Attached hereto as **Exhibit 1** is a true and correct copy of the Stipulation of Class Action Settlement and exhibits thereto (the "Settlement Agreement").

9.      Attached hereto as **Exhibit 2** is a true and correct copy of the firm resume of Bursor & Fisher, P.A.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed on November 18, 2016 at Walnut Creek, California.


_*/s/ L. Timothy Fisher*_____
L. Timothy Fisher

**EXHIBIT 1**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN RETTA *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>MILLENNIUM PRODUCTS, Inc., *et al.*<br><br>          Defendants | Case No. 2:15-CV-01801-PSG-AJW<br><br>**STIPULATION OF CLASS ACTION SETTLEMENT**<br><br>Judge:  Hon. Philip S. Gutierrez<br><br>5AC Filed:  June 27, 2016 |

Subject to Court approval pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire ("Plaintiffs"), on behalf of themselves and each of the Class Members, and Defendants Millennium Products, Inc. ("Millennium") and Whole Foods Market, Inc. ("Whole Foods") ("Defendants") (collectively, the "Parties"), by and through their respective counsel, authorized to settle this Action on their behalf, in consideration for and subject to the promises, terms, and conditions contained in this Stipulation of Class Action Settlement ("Agreement"), hereby stipulate and agree, as follows:

## I.   <u>RECITALS</u>

A.    On March 11, 2015, Plaintiffs filed a proposed nationwide (or, in the alternative, California and New York) class action lawsuit against Millennium in the United States District Court for the Central District of California, Case No. 15-CV-1801-PSG-AJW, which asserted claims for violations of the California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*) ("CLRA"), California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) (the "UCL"), California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) (the "FAL"), New York's Deceptive and Unfair Trade Practices Act, and the New York General Business Law § 349 ("NYGBL"), that related to the advertising, labeling, and marketing of the antioxidant content of the Subject Products.

B.    On April 28, 2015, Millennium filed a motion to dismiss or strike the above-referenced complaint.  In response, on May 19, 2015 Plaintiffs filed a First Amended Complaint asserting additional facts regarding their claims for injunctive relief, standing, and clarifying the details regarding their purchases of Millennium's products.

C.    On June 19, 2015, Millennium filed a motion to dismiss or strike Plaintiffs' First Amended Complaint, which the Court granted in part (as to claims for injunctive relief) and denied in part (as to the remainder of the claims at issue).  In response, on October 2, 2015, Plaintiffs filed a Second Amended Complaint pleading

additional facts in support of their claims for injunctive relief.

D.     After commissioning two independent laboratories to test the alcohol content of Millennium products and several months of ongoing investigation, Plaintiffs filed a Third Amended Complaint adding claims regarding the purported alcohol content of Millennium products and Millennium's alleged failure to provide federal alcohol warnings regarding the same on October 8, 2015.  Millennium answered the Third Amended Complaint on November 3, 2015.

E.     On February 11, 2016, Plaintiffs filed a Fourth Amended Complaint adding Whole Foods as a Defendant.  Millennium answered the Fourth Amended Complaint on February 29, 2016 and Whole Foods moved to dismiss the Fourth Amended Complaint on April 7, 2016.

F.     After discovery of a recent study concerning the sugar content of Millennium products and further investigation, Plaintiffs filed a Fifth Amended Complaint on June 22, 2016 adding additional claims for damages and injunctive relief and pleading additional causes of action regarding Millennium's alleged failure to correctly state the sugar content of its products on the labels of the products.  The Fifth Amended Complaint asserted claims for violations of the CLRA, UCL, FAL, and NYGBL, and for breach of express warranty, breach of the implied warranty of merchantability, negligent misrepresentation, fraud, and unjust enrichment. Millennium answered the Fifth Amended Complaint on July 6, 2016 and Whole Foods moved to dismiss the Fifth Amended Complaint on July 11, 2016.[1]

G.     Before entering into this Agreement, the Parties exchanged and met and conferred concerning several sets of discovery requests, including interrogatories and requests for production.  In response, Millennium produced thousands of pages of

---

[1] Whole Foods Market, Inc. moved to dismiss, in part, on the grounds that as a Texas holding company with no business operations, employees or any other contact with the state of California, it is not subject to the jurisdiction of the courts in California. This stipulation shall in no way be interpreted to waive future challenges Whole Foods Market, Inc. has to jurisdiction in California.

documents to Plaintiffs, including Millennium's test results, sales information, distributor information, internal communications, communications with potential customers, and information regarding current and former labeling of its products. Plaintiffs also produced documents to Millennium, including their test results, consumer surveys, consumer research, and other materials.  Plaintiffs also served subpoenas pursuant to Fed. R. Civ. P. 45 on American Herbal Products Association, Inc. and Kombucha Brewers International.  After an extensive meet and confer process, the American Herbal Products, Inc. and Kombucha Brewers International produced testing results concerning Millennium's products and other information. Plaintiffs reviewed all of the documents produced by Millennium, American Herbal Products Association, Inc. and Kombucha Brewers International as well as documents and information obtained through their own research and investigation.

H.     Before entering into this Agreement, the Parties, by and through their respective counsel, conducted a thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the claims and potential claims to determine the strength of liability, potential remedies, and all defenses thereto, including an extensive investigation into the facts and law relating to (i) label design and product formulation; (ii) the marketing and advertising of the products; (iii) sales, pricing, and financial data; and (iv) the sufficiency of the claims and appropriateness of class certification.

I.     This Agreement was reached as a result of extensive arm's-length negotiations between the Parties and their counsel.  The Parties have engaged in extensive settlement discussions to determine if the Parties could reach a resolution short of protracted litigation.  This included a full day of mediation before Jill R. Sperber, Esq. of Judicate West on March 25, 2016, several weeks of follow-on settlement discussions amongst counsel, and a further half day of mediation with Ms. Sperber via telephone on May 20, 2016 before a settlement in principle was reached.

J.     On August 11, 2016, Plaintiffs filed a Motion for Preliminary Approval

4

of Class Action Settlement.  On September 21, 2016, the Court denied the motion for preliminary approval.

K.     After the Court's order, the Parties renewed their settlement negotiations to address the Court's concerns stated in the September 21, 2016 Order.  On October 7, 2016, Plaintiffs and Millennium participated in another mediation with Jill R. Sperber, Esq. of Judicate West, where the Plaintiffs and Millennium were able to reach another settlement agreement in principle.

L.     After the Parties reached another settlement in principle as to all claims for monetary relief set forth in Section IV(A) of this agreement, and all injunctive relief concerning Plaintiffs' antioxidant, alcohol, and sugar labeling claims set forth in Section IV(B)(a), (b), (c), (d), and (e) of this agreement, the Parties met and conferred with opposing counsel in *Pedro et al. v. Millennium Products, Inc.*, Case No. 16-cv-03780-PSG-AJW (C.D. Cal 2016).  During these negotiations, the Parties stated their position that the claims asserted in *Pedro* are subsumed within the *Retta* matter, and *Pedro* plaintiffs stated their position that the *Retta* action, although addressing the bulk of their claims, did not address a remaining claim for injunctive relief with respect to their allegations that the bottles of Millennium's products leak, fizz, or spill due to potential pressure buildup.  As a result of these negotiations, the Parties agreed that additional injunctive relief set out in Section IV(B)(f) of this agreement would be provided by the *Retta* settlement to address the *Pedro* plaintiffs' remaining claim.  Before and during these settlement negotiations, the Parties had an arm's-length exchange of sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

N.     Based upon their review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs, as settlement class representatives, believe that the claims settled herein have merit.  However, they and their counsel recognize and acknowledge the expense and length of continued

5

proceedings necessary to prosecute the claims through trial, appeal, and ancillary actions.  Plaintiffs and their counsel have also taken into account the uncertain outcome and risk of litigation, and the difficulties and delay inherent in such litigation, and they believe that the settlement set forth in this Agreement confers important benefits upon the Class Members (defined herein).  Accordingly, based upon their evaluation, after considering, among other things: (i) the benefits to the Class Members under the terms of this Agreement; (ii) the risks, costs, and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (iii) the desirability of consummating this Agreement promptly to provide effective relief to Class Members, Plaintiffs and their counsel have determined that the settlement set forth in this Agreement is in the best interests of the Class and, on behalf of Plaintiffs and the Class, have agreed to settle the Action pursuant to the provisions of this Agreement.

O.      Defendants deny and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action.  Defendants specifically deny all allegations that the Subject Products (i) did not contain antioxidants as labeled at any time; (ii) owing to their specific alcohol content, failed to bear alcohol warnings required by any applicable laws; (iii) failed to accurately state their sugar content; or (iv) caused spillage, leakage, spoilage, or other product loss owing to the secondary fermentation of the Subject Products.  Whole Foods further denies that Whole Foods' retail locations (which are wholly owned and operated by subsidiaries of Whole Foods Market, Inc.) can be held liable, in whole or in part, for the acts and omissions alleged in the Action, as these retail locations merely sell the Subject Products, and do not manufacture or label them.  As a result, Defendants believe they cannot be held liable for any of the alleged conduct, statements, acts, or omissions at issue in the Action.

P.      Defendants also denied and continue to deny, amongst other things,

6

STIPULATION OF CLASS ACTION SETTLEMENT

allegations that Plaintiffs, the Class, or any member of the Class have suffered damage or harm by reason of any alleged conduct, statement, act, or omission of Defendants, or that Plaintiffs could establish damages or entitlement to injunctive relief on a classwide basis.  Defendants further have denied and continue to deny that the Action meets the requisites for certification as a class action under federal, California, or New York law, except for purposes of settlement, or that the evidence is sufficient to support a finding of liability on an individual or classwide basis. Nonetheless, Defendants have concluded that further defense of the Action would be protracted and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Agreement. Defendants also have taken into account the uncertainty and risks inherent in any litigation.  Defendants, therefore, have determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement.

Q.     This Agreement, and the proposed certification, for settlement purposes only, of the Class, effectuates the resolution of disputed claims and is for settlement purposes only.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and between the Parties, through their respective counsel, that: (a) the Action and all Released Claims be fully and finally compromised, settled, and released upon final settlement approval by the Court after the hearings as provided for in this Agreement; and (b) upon such approval by the Court, a Final Order and Final Judgment, substantially in the form attached hereto as Exhibits A and B, respectively, be entered dismissing the Action with prejudice upon the following terms and conditions:

## II.     **DEFINITIONS**

As used in this Agreement and the attached exhibits, the following terms have the following meanings, unless this Agreement specifically provides otherwise. Other capitalized terms used in this Agreement but not defined below shall have the

7

meaning ascribed to them in this Agreement and the exhibits attached hereto:

1.      "Action" shall mean the proposed class action lawsuit entitled *Retta et al. v. Millennium Products, Inc.*, Case No. 15-CV-1801-PSG-AJW pending in the United States District Court for the Central District of California.

2.      "Agreement" means this Stipulation of Settlement and its exhibits, attached hereto and incorporated herein, including all subsequent amendments agreed to in writing by the Parties and any exhibits to such amendments.

3.      "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Plaintiffs' Counsel to compensate Plaintiffs' Counsel for their fees and expenses in connection with the Action and the Settlement, as described more particularly in Section VI of this Agreement.

4.      "Authorized Claimant" means a member of the Class who timely submits a valid Claim Form in accordance with the terms of this Agreement.

5.      "Claim Deadline," means the final time and date by which a valid Claim Form must be postmarked or received by the Settlement Administrator for a Class Member to be eligible for any of the settlement consideration contemplated in this Agreement.  The Claim Deadline shall be clearly set forth in the Court orders granting preliminary and final approval of the Settlement, the Long Form Notice and Summary Notice, on the Settlement Website, and on the front page of the Claim Form.

6.      "Claim Form" means the proof of claim and release form(s), substantially in the form attached hereto as Exhibit C, the format of which may be modified to meet the requirements of the Settlement Administrator, to be submitted by Class Members seeking to recover settlement consideration pursuant to this Agreement.

7.      "Class" means all persons in the United States and United States Territories who purchased at retail one or more of the Subject Products during the Class Period.  Specifically excluded from the Class are: (a) Defendants and their

8

employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of re-sale; and (d) all persons who have filed a timely Request for Exclusion from the Class.

8.    "Class Member(s)" means any member of the Class.

9.    "Class Notice" means, collectively, the Long Form Notice and Summary Notice provided to the Class as provided herein and directed by the Court, and the Internet advertising to be facilitated by the Settlement Administrator.

10.   "Class Period" means the period from March 11, 2011 up to and including the Notice Date.

11.   "Court" means the United States District Court for the Central District of California and all judges assigned to the Action.

12.   "Defense Counsel" means the law firms of O'Melveny & Myers LLP as to Millennium and LTL Attorneys LLP as to Whole Foods.

13.   "Effective Date" means the first date after which all of the following events and conditions have been met or have occurred:

(a)    The Court has entered the Preliminary Approval Order;

(b)    The Court has entered the Final Order and Final Judgment;

(c)    Unless the Parties otherwise agree in writing to waive all or any portions of the following provision, there has occurred: (i) in the event there is a properly and timely filed objection to entry of the Final Order and Final Judgment, the expiration (without the filing or noticing of an appeal) of the time to appeal from the Final Order and Final Judgment; (ii) if the Final Order and Final Judgment is appealed, the final dismissal of an appeal from the Final Order and Final Judgment or the affirmance on appeal of the Final Order and Final Judgment in its entirety; (iii) if a ruling or decision is entered by an appellate court affirming the Final Order and Final Judgment, the time to petition for a writ of certiorari with respect to such ruling

9

or decision has expired; or (iv) if a petition for a writ of certiorari with respect to the Final Order and Final Judgment is filed, the petition has been denied or dismissed or, if granted, has resulted in affirmance of the Final Order and Final Judgment in substantial form.

14.     "Fairness Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (a) determining the fairness, adequacy and reasonableness of the Agreement in accordance with applicable jurisprudence; (b) if the Court so decides, entering the Final Order and Final Judgment and dismissing the Action with prejudice; (c) ruling upon an application by Class Counsel for Attorneys' Fees and Expenses and Plaintiffs' incentive awards.  The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. § 1715(d).

15.     "Final Order and Final Judgment" means the Court's order and judgment fully and finally approving the Settlement and dismissing the Action with prejudice, substantially in the form attached hereto as Exhibits A and B.

16.     "Long Form Notice" means the long form notice of settlement, substantially in the form attached hereto as Exhibit E.

17.     "Millennium" means Millennium Products, Inc., and includes, without limitation all related entities, including but not limited to parents, subsidiaries, agents, employees and assigns, predecessors, successors and affiliates of Millennium Products, Inc., and their related entities and owners, including George Thomas Dave.

18.     "Net Cash Amount" means the value derived by subtracting the value of Attorneys' Fees and Expenses to be awarded to Plaintiffs' Counsel, any incentive awards to be awarded to any Plaintiffs or Related Plaintiffs, and any Settlement Administration Expenses from eight million two hundred and fifty thousand dollars ($8,250,000).

19.     "Notice Date" means the first date upon which the Class Notice is

10

disseminated.

20.    "Objection Deadline" means the date, to be set by the Court, by which Class Members must file objections, if any, to the Agreement in accordance with Section IX of this Agreement.  The Parties shall request that the Court set an Objection Deadline coinciding with the Opt Out Date.

21.    "Opt Out Date" means the date, to be set by the Court, by which a Request For Exclusion must be sent to Settlement Administrator for a Class Member to be excluded from the Settlement Class.  The Parties shall request that the Court set an Opt Out Date coinciding with the Objection Deadline.

22.    "Parties" means Plaintiffs, Millennium, and Whole Foods collectively, as each of those terms are defined in this Agreement.

23.    "Plaintiffs" means Jonathan Retta, Kirsten Schofield, and Jessica Manire.

24.    "Plaintiffs' Counsel" and/or "Class Counsel" means the law firm of Bursor & Fisher, P.A.

25.    "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit D, conditionally certifying, for settlement purposes only, the Class; appointing Plaintiffs' Counsel as counsel for the Class; setting the date of the Fairness Hearing; preliminarily approving this Agreement; approving the Class Notice program and Claim Form; and setting dates for the Claim Deadline, Opt Out Date, Objection Deadline, and Notice Date.

26.    "Proof of Purchase" means receipts, Millennium packaging, or other documentation from a third-party commercial source reasonably establishing the purchase during the Class Period of one or more of the Subject Products.  Packaging, including bar codes or UPCs, shall constitute Proof of Purchase only if the Subject Product(s) claimed to have been purchased by the Class Member can be identified from the packaging submitted.

27.    "Related Actions" means *Samet v. Millennium Products, Inc.*, No. 1-15-

11

CV-286908 (Santa Clara Sup. Ct. 2015), *Pedro et al. v. Millennium Products, Inc.*, Case No. 16-cv-03780-PSG-AJW (C.D. Cal 2016), and *Hood v. Millennium Products, Inc.*, No. 1-15-CV-286910 (Santa Clara Sup. Ct. 2015).

28.     "Related Plaintiffs" means Janet Hood, Rosalind Lewis, Nina Pedro, and Sarah Samet.

29.     (a)     "Released Claims" means and includes any and all claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action under common law or statutory law (federal, state, or local) of every nature and description whatsoever, monetary, injunctive, or equitable, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including Unknown Claims as of the Notice Date by Plaintiffs and all Class Members (and Plaintiffs' and Class Members' respective heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns) that:

(i)     were asserted or that could have been reasonably asserted in the Action against the Released Parties (as hereinafter defined), or any of them, and that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged or referred to in the Action (including, but not limited to, alleged violations of the CLRA, UCL, FAL, NYGBL or similar laws of any state or United States territory, and alleged claims for injunctive relief, breach of warranty, breach of the implied warranty of merchantability, negligent misrepresentation, fraud, and unjust enrichment); or

(ii)     were asserted or that could have been reasonably asserted by any Class Member against the Released Parties (as hereinafter defined), or any of them, and that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged or referred to, including all claims for monetary, injunctive, or equitable relief that relate in any way to

12

communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, and/or marketing of or concerning the Subject Products, in the Related Actions; or

(iii)    relate in any way to communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, and/or marketing of or concerning the Subject Products related to the nutritional value and/or content, including but not limited to the antioxidant content, of the Subject Products, including, but not limited to statements that the Subject Products contain "antioxidants," "powerful antioxidants," or "more antioxidants than blueberries," made through any medium; or

(iv)    relate in any way to communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, testing, and/or marketing of or concerning the Subject Products related to the alleged alcohol content of the products; or

(v)    relate in any way to communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, testing, and/or marketing of or concerning the Subject Products related to the consequences of continued fermentation of the products, including but not limited to the consequences of continued fermentation of the products, including but not limited to the consequences of excessive carbonation, bottle pressure, or product spillage, leakage, or spoilage; or

(vi)    relate in any way to communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, testing, and/or marketing of or concerning the Subject Products related to the alleged sugar content of the products.

(b)    Notwithstanding any other provision of this Agreement, "Released Claims" do not include claims for personal injuries.  Plaintiffs and Class Members are not releasing any claims, demands, rights, damages, obligations, suits, debts, liens,

13

and causes of action relating to personal injuries.

30.     "Released Parties" shall be defined and construed broadly to effectuate a complete and comprehensive release, and means Millennium and any entity that made, manufactured, tested, inspected, audited, certified, purchased, distributed, supplied, licensed, transported, donated, marketed, advertised, promoted, sold or offered for sale any Subject Product, including but not limited to Whole Foods, Target Corporation, Costco Wholesale Corporation, Wal-Mart Stores, Inc., the Kroger Company, Safeway, Inc., and Albertsons, Inc., other distributors or retailers, or any entity that contributed to any labeling, sale, distribution, supply, advertising, marketing, or packaging of any Product, including all of their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present and future officers, directors, employees, shareholders, partners, principals, agents, servants, successors, attorneys, insurers, representatives, licensees, licensors, customers, subrogees and assigns.  It is expressly understood that, to the extent a Released Party is not a Party to this Agreement, all such Released Parties are intended third party beneficiaries of this Agreement.

31.     "Releasing Parties" means Plaintiffs, Plaintiffs' Counsel, and all Class Members, and any person claiming by or through each Class Member, including but not limited to spouses, children, wards, heirs, devisees, legatees, invitees, employees, associates, co-owners, attorneys, agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or affiliates.

32.     "Request For Exclusion" means the written communication that must be sent to the Settlement Administrator and postmarked on or before the Opt Out Date by a Class Member who wishes to be excluded from the Class.

33.     "Settlement" means the settlement embodied in this Agreement, including all attached exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference).

34.   "Settlement Administrator" means Angeion Group.

35.   "Settlement Administration Expenses" means the expenses incurred by the Settlement Administrator assisting with the implementation of this Agreement, which shall primarily result from administering the notice program and processing all claims made by Class Members.

36.   "Subject Products" means all products sold by Defendants during the Class Period under Millennium's Enlightened Kombucha, Enlightened Synergy, Classic Kombucha, and Classic Synergy product lines: Classic Kombucha Original, Classic Kombucha Citrus, Classic Kombucha Gingerade, Classic Kombucha Multi-Green, Classic Kombucha Third Eye Chai, Classic Synergy Cosmic Cranberry, Classic Synergy Maqui Berry Mint, Classic Synergy Divine Grape, Classic Synergy Gingerberry, Classic Synergy Raspberry Rush, Classic Synergy Strawberry Serenity, Classic Synergy Superfruits, Classic Synergy Trilogy, Enlightened Kombucha Botanic No. 3, Enlightened Kombucha Botanic No. 7, Enlightened Kombucha Botanic No. 9, Enlightened Kombucha Citrus, Enlightened Kombucha Gingerade, Enlightened Kombucha Multi-Green, Enlightened Kombucha Original, Enlightened Synergy Black Chia, Enlightened Synergy Cosmic Cranberry, Enlightened Synergy Cherry Chia, Enlightened Synergy Gingerberry, Enlightened Synergy Grape Chia, Enlightened Synergy Green Chia, Enlightened Synergy Guava Goddess, Enlightened Synergy Mystic Mango, Enlightened Synergy Passionberry Bliss, Enlightened Synergy Raspberry Chia, Enlightened Synergy Strawberry Serenity, and Enlightened Synergy Trilogy.

37.   "Summary Notice" means the summary notice of the proposed Settlement, substantially in the form attached hereto as Exhibit F.

38.   "Unknown Claims" means any and all Released Claims that a Class Member, or anyone acting on behalf of or in the Class Member's interest, does not know or suspect to exist against any of the Released Parties relating to any Subject Product, which, if known, might have affected his or her decision to enter into or to

15

be bound by the terms of this Agreement.  The Plaintiffs and Class Members acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of this Agreement, but nevertheless fully, finally, and forever settle and release any and all Released Claims, monetary, injunctive, or equitable, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, may hereafter exist, or heretofore have existed which arise from, or in any way relate to, the labeling, packaging, sale, distribution, supply, marketing, testing, or advertising, regardless of medium, of any Subject Product, without regard to subsequent discovery or existence of such different or additional facts concerning each of the Released Parties. Notwithstanding this paragraph or any other paragraph herein, this Agreement shall not be deemed to release any individual, class, representative, group or collective claim, liability, right, demand, suit, matter, obligation, damage, loss, action or cause of action, of any kind or description that a Releasing Party has or may have for personal injuries.

39.    "Whole Foods" means Whole Foods Market, Inc., and includes, without limitation all related entities, including but not limited to parents, subsidiaries, agents, employees and assigns, predecessors, successors and affiliates of Whole Foods Market, Inc., and its related entities.

### III.    SUBMISSION OF THE SETTLEMENT TO THE COURT FOR REVIEW AND APPROVAL

40.    As soon as is practicable following the signing of this Agreement, Class Counsel shall apply to the Court for entry of the Preliminary Approval Order (substantially in the form attached as Exhibit D), for the purpose of, among other things:

(a)    Approving the Class Notice, including the Long Form Notice and Summary Notice, substantially in the form set forth at Exhibits E and F;

(b)     Finding that the requirements for preliminary certification of the Class have been satisfied, appointing Plaintiffs as the representatives of the Class and their counsel as Class Counsel, and preliminarily approving the Settlement as being within the range of reasonableness such that the Class Notice should be provided pursuant to this Agreement;

(c)     Scheduling the Fairness Hearing on a date ordered by the Court, provided in the Preliminary Approval Order, and in compliance with applicable law, to determine whether the Settlement should be approved as fair, reasonable, and adequate, and to determine whether a Final Order and Final Judgment should be entered dismissing the Action with prejudice.

(d)     Determining that the notice of the Settlement and of the Fairness Hearing, as set forth in this Agreement, complies with all legal requirements, including but not limited to the Due Process Clause of the United States Constitution;

(e)     Preliminarily approving the form of the Final Order and Final Judgment;

(f)     Appointing Angeion Group as the Settlement Administrator;

(g)     Directing that Class Notice shall be given to the Class as provided in Section V of this Agreement.

(h)     Providing that Class Members will have until the Claim Deadline to submit Claim Forms;

(i)     Providing that any objections by any Class Member to the certification of the Class and the proposed Settlement contained in this Agreement, and/or the entry of the Final Order and Final Judgment, shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Fairness Hearing only if, on or before the Objection Deadline set by the Court, such objector files with the Court a written objection and notice of the objector's intention to appear, and otherwise complies with the requirements in Section IX of this Agreement;

(j)     Establishing dates by which the Parties shall file and serve all papers in support of the application for final approval of the Settlement and/or in response to any valid and timely objections;

(k)     Providing that all Class Members will be bound by the Final Order and Final Judgment dismissing the Action with prejudice unless such members of the Class timely file valid written Requests for Exclusion in accordance with this Agreement and the Class Notice;

(l)     Providing that Class Members wishing to exclude themselves from the Settlement will have until the Opt Out Date to submit a valid written Request for Exclusion to the Settlement Administrator, in accordance with the procedures set forth in Section IX of this Agreement;

(m)     Directing the Parties, pursuant to the terms and conditions of this Agreement, to take all necessary and appropriate steps to establish the means necessary to implement the Settlement;

(n)     Pending the Fairness Hearing, staying all proceedings in the Action, other than proceedings necessary to carry out or enforce the terms and conditions of this Agreement and the Preliminary Approval Order; and

(o)     Pending the Fairness Hearing, enjoining Plaintiffs and Class Members, or any of them, from commencing or prosecuting, either directly or indirectly, any action in any forum (state or federal) asserting any Released Claims.

41.     Following the entry of the Preliminary Approval Order, the Class Notice shall be given and published in the manner directed and approved by the Court, as set forth in fuller detail in Section V of this Agreement.

42.     At the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Order and Final Judgment in the form substantially similar to Exhibits A and Exhibit B, respectively.  The Final Order and Final Judgment shall, among other things:

(a)     Find that the Court has personal jurisdiction over all Class

18

Members, the Court has subject matter jurisdiction over the claims asserted in the Action, and that venue is proper;

(b)     Finally approve the Agreement and the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(c)     Certify the Class for settlement purposes only;

(d)     Find that the notice to the Class complied with all laws and requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

(e)     Incorporate and effectuate the release set forth in the Agreement and make the Release effective as of the date of the Final Order and Final Judgment;

(f)     Authorize the Parties to implement the terms of the Settlement;

(g)     Dismiss the Action with prejudice; and

(h)     Notwithstanding the aforementioned dismissal with prejudice, retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Order and Final Judgment, any final order approving Attorneys' Fees and Expenses and incentive awards, and for any other necessary purpose.

43.     The Parties acknowledge that each intends to implement the terms of this Agreement.  The Parties shall, in good faith, cooperate and assist with and undertake all reasonable actions and steps to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.  In the event the Court does not preliminarily or finally approve this Agreement, the Parties further agree to continue to cooperate in good faith in an attempt to address any deficiencies raised by the Court in an expeditious manner.

## IV.   THE SETTLEMENT CONSIDERATION

The Net Cash Amount will be distributed in the form of cash payments and product vouchers as follows:

**A.     Settlement Fund and Awards to Class Members**

19

44.   <u>Total Financial Commitment:</u> Defendants' maximum financial commitment under the Settlement shall be eight million two hundred and fifty thousand dollars ($8,250,000.00).  This amount shall include any Court ordered Attorneys' Fees and Expenses, Plaintiffs' incentive awards, any and all Settlement Administration Expenses, and the monetary value of all cash awards and product vouchers paid to or issued to Class Members.  All Settlement Administration Expenses will be paid by Millennium to the Settlement Administrator as incurred and on terms to be negotiated between Millennium and the Settlement Administrator.

45.   <u>Cash or Voucher Option:</u> Class Members who (a) execute and submit a valid Claim Form on or before the Claim Deadline; (b) attest under the penalty of perjury that they purchased one or more of the Subject Products during the Class Period; and (c) provide all required Proof of Purchase or other required documentation (as necessary), and comply with all other conditions and requirements specified herein, may opt to receive either a cash award or a product award (but not both) as follows:

(a)   <u>Cash Award Option:</u>  The relief to be provided to each Authorized Claimant who (i) submits a valid Claim Form on or before the Claim Deadline pursuant to the terms and conditions of this Agreement, and (ii) and opts to receive a cash award, is a $3.50 cash award for each Subject Product the Authorized Claimant purchased during the Class Period, up to a maximum of ten (10) claims (or $35.00 in cash) if the Authorized Claimant does not provide Proof of Purchase.  Authorized Claimants who claim more than $35.00 in cash awards must submit Proof of Purchase establishing their purchase during the Class Period of each Subject Product claimed and may receive up to $60.00 in cash awards based on the retail value of the Subject Products shown in the Proof of Purchase.

(b)   <u>Product Voucher Option:</u> The relief to be provided to each Authorized Claimant who (i) submits a valid Claim Form on or before the Claim Deadline pursuant to the terms and conditions of this Agreement, and (ii) and opts to

20

receive a product voucher award in lieu of the cash award described in section (a) above, is a product voucher redeemable for a free Millennium product for each Subject Product the Authorized Claimant purchased during the Class Period, up to a maximum $35.00 in product vouchers if the Authorized Claimant does not provide Proof of Purchase.  For claims administration purposes, each voucher will be assigned a cash value of $3.50, although the actual value of the voucher will depend on the point-of-sale price of the product purchased when the voucher is redeemed. Authorized Claimants who claim more than $35.00 worth of product vouchers must submit Proof of Purchase establishing their purchase during the Class Period of each Subject Product claimed and may receive up to $60.00 in product vouchers based on the retail value of the Subject Products shown in the Proof of Purchase.  Millennium shall determine rules for voucher use, and voucher redemption by retailers will be administered in accordance with procedures prescribed by Millennium.  The product vouchers (a) shall have no expiration date; (b) shall be freely transferrable, subject to reasonable measures to prevent fraud, and duplicating or counterfeiting of vouchers (including but not limited to requirements concerning printing and authentication, use of serial numbers, UPC coding, specialized ink and/or paper, watermarks, and/or holograms, and/or physical delivery – all subject to specification by Millennium); (c) shall, subject to retailer policies, be redeemable at any retailer that sells the Subject Products; and (d) shall be redeemable in exchange for any variety or flavor of the Subject Products.

(c)     Timing of Awards:  All Class Members who submit Claim Forms shall be sent cash awards or product vouchers or, as applicable, a letter explaining the rejection of their Claim Forms, within forty-five (45) calendar days of the Effective Date (the "Award Issuance Date").  Millennium shall pay the Settlement Administrator the aggregate value of all cash awards to be distributed to Class Members no later than fifteen (15) calendar days before the Award Issuance Date. All cash awards to Class Members will be in the form of checks, and such checks will

state that they must be redeemed within 120 calendar days of the Award Issuance

Date (the "Expiration Date") or they will become void.  Millennium shall provide the

Settlement Administrator with all product vouchers no later than fifteen (15) calendar

days before the Award Issuance Date.  The product vouchers will have no expiration

date.

46.   <u>Insufficient Funds:</u>  If the aggregate value of the cash rewards and

product vouchers claimed by Authorized Claimants pursuant to valid and timely

Claim Forms exceeds the Net Cash Amount, then the monetary value of the awards to

be provided to each Authorized Claimant shall be reduced on a pro rata basis, such

that the aggregate value of the awards does not exceed the Net Cash Amount.  After

the Award Issuance Date, the Settlement Administrator, in consultation with the

Parties as necessary, shall determine each Authorized Claimant's pro rata share based

upon each Authorized Claimant's Claim Form and the aggregate value of the awards

claimed by Authorized Claimants.

**B.    Injunctive Relief**

47.   In consideration for the Release contained in this Agreement, and as a

result of the efforts of the Plaintiffs and their counsel:

(a)    No later than 120 days after the Effective Date, Millennium will

cease ordering and/or printing labels for the Subject Products bearing the term

"antioxidant."  This agreement will not prevent Millennium from implementing label

changes regarding the antioxidant content of Millennium's products that are (a)

reasonably necessary to comply with any statute, regulation, or other law of any kind;

(b) necessitated by product and/or ingredient changes; or (c) permitted by subsequent

statute, regulation, or case law concerning the use of the term "antioxidant" on food

and beverage labels.

(b)    No later than 120 days after the Effective Date, Millennium will

begin ordering and/or printing labels, for Subject Products within Millennium's

Enlightened Kombucha and Enlightened Synergy product lines, that state that the

22

products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitives, or religious beliefs.  This agreement will not prevent Millennium from implementing label changes regarding the alcohol content of Millennium's products that are (a) reasonably necessary to comply with any statute, regulation, or other law of any kind; (b) necessitated by product and/or ingredient changes; or (c) permitted by subsequent statute, regulation, or case law concerning alcohol disclosures and/or alcohol warnings on food and beverage labels.

(c)     To ensure that all such products continue to comply with federal and state labeling standards, Millennium will regularly test samples from every Subject Product line (at the time of bottling and the time of expiration) using a third-party laboratory.

(d)     Should the working group formed by the Association of Official Agricultural Chemists ("AOAC"), the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), and Kombucha Brewers International ("KBI"), develop an industry-wide standard testing methodology for ethanol in kombucha that differs from Millennium's methodology, Millennium will adopt that standard no later than 60 days after the standard is announced as an official AOAC testing methodology.

(e)     To ensure that all such products continue to comply with federal and state labeling standards, Millennium will, every three months, test the sugar content of multiple product samples, drawn from every Subject Product line, using a third-party laboratory.  If such testing reveals that the sugar content of a product sample varies from the declared sugar content on that product's label to a greater extent than allowed by federal or state labeling standards, Millennium will review the testing and sampling methodology employed by its third-party laboratory, including repeating the testing for the product line at issue, and, if the variability is repeated, make label adjustments regarding sugar content as necessary.

(f)     To ensure that all such products continue to comply with federal

23

and state labeling standards, no later than 120 days after the Effective Date, the labels of the Subject Products s will state that the products may be under pressure and that the failure to refrigerate the products may result in leaking or gushing.

## V.   NOTICE TO THE CLASS

48.   The Parties shall jointly recommend and retain Angeion Group as the Settlement Administrator.  Following the entry of the Preliminary Approval Order and the Court's appointment of the proposed Settlement Administrator, the Settlement Administrator shall disseminate the Class Notice as specified in the Preliminary Approval Order and in this Section, to comply with all applicable laws and requirements, including, but not limited to, the Due Process Clause of the United States Constitution.  The Settlement Administrator shall develop a notice and claims administration program, subject to the approval of the Parties and the Court, designed to achieve at least 80% reach.  Defendants shall pay all Settlement Administration Expenses up to $400,000.  Any reasonable Settlement Administration Expenses above $400,000 shall be deducted on a pro rata basis from the cash rewards and product vouchers claimed by Authorized Claimants, regardless of whether the entire $8,250,000 fund is fully exhausted.  Following the dissemination of the Class Notice, the Settlement Administrator shall submit a declaration under the penalty of perjury attesting that the Class Notice has achieved at least 80% reach.

49.   The Long Form Notice:  The Long Form Notice, which shall be made available on the Settlement Website, to Class Members requesting a hard copy from the Settlement Administrator and to Class Members that Millennium can identify in its records through reasonable effort, shall be in a form substantially similar to the document attached to this Agreement as Exhibit E and shall comport to the following terms and requirements:

(a)   General Terms:  The Long Form Notice shall contain a plain and concise description of the nature of the Action and the proposed Settlement, including information on the definition of the Class, the identity of eligible Class Members,

24

how the proposed Settlement would provide relief to Class Members, what claims are released under the proposed Settlement, and other relevant information.

(b)     Opt Out Rights:  The Long Form Notice shall inform Class Members that they have the right to opt out of the Settlement.  The Long Form Notice shall provide the deadlines and procedures for exercising this right.

(c)     Objection to Settlement:  The Long Form Notice shall inform Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing.  The Class Notice shall provide the deadlines and procedures for exercising these rights.

(d)     Fees and Expenses:  The Long Form Notice shall inform Class Members about the amounts being sought by Class Counsel as Attorneys' Fees and Expenses and Plaintiffs' incentive awards, and shall explain that the Attorneys' Fees and Expenses and Plaintiffs' incentive awards, in addition to amounts being made available for relief to Class Members, will be deducted from the Settlement Fund and be paid out of the Settlement Fund.

(e)     Claim Form:  The Long Form Notice and Settlement Website shall include the Claim Form, which shall inform Class Members that they must fully complete and timely return the Claim Form prior to the Claim Deadline to be eligible to obtain relief pursuant to this Agreement.

50.     The Summary Notice:  Upon the Notice Date, the Settlement Administrator shall cause the Summary Notice, in the form substantially similar to Exhibit F, to be published once a week, for four successive weeks, in the California edition of USA Today.

51.     Internet Advertising Program:  No later than the Notice Date, the Settlement Administrator shall cause notice of the settlement to be provided through digital advertising, pursuant to the Settlement Administrator's notice plan set forth in the declaration of the Settlement Administrator to be filed in support of preliminary approval of the Settlement.  Millennium shall also cause notice of the settlement to be

25

posted on Millennium's website and on Millennium's Facebook, Instagram, and Twitter accounts, in the form of a link to the Settlement Website.

52.   <u>Settlement Website</u>:  No later than the Notice Date, the Settlement Administrator shall establish and caused to be published an Internet website (the "Settlement Website"), www.millennium-settlement.com.  All Internet advertising that is part of the Class Notice program will direct Class Members to the Settlement Website.  The Settlement Website will allow Class Members to submit Claim Forms online and will contain information relevant to Class Members, including but not limited to all applicable deadlines, the Agreement, Class Notice, a downloadable Claim Form, all papers filed by the Parties in support of this Agreement (including Plaintiffs' anticipated motion for Attorneys' Fees and Expenses), orders of the Court pertaining to this Agreement, and contact information for reaching the Settlement Administrator via a toll-free telephone number, e-mail and U.S. mail.  The Parties shall use reasonable efforts to agree on all information and documents to be posted on this website and no information shall be posted or provided on the website without the Parties' express approval. The website shall be rendered inactive one hundred fifty (150) days after the Award Issuance Date.  Settlement Administration Expenses include the costs associated with maintenance of the Settlement Website.

53.   <u>Toll-Free Telephone Number</u>:  Prior to the dissemination of the Class Notice, the Settlement Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members, pursuant to the terms and conditions of this Agreement.  Settlement Administration Expenses include the costs associated with maintenance of this toll-free telephone number. The Parties shall also create a protocol for the Settlement Administrator to refer Class Member inquiries to Class Counsel.  The toll-free telephone number shall be rendered inactive one hundred fifty (150) calendar days after the Award Issuance Date.

54.   Nothing contained herein shall limit Class Counsel's ability to disseminate notice by publishing a link to the Settlement Website on their firm or

attorneys' websites, Facebook pages, or social media accounts, provided that any such dissemination must comply with Paragraph 109 of this Agreement.

## VI.   ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARD

55.    In recognition of the time and effort the representative Plaintiffs expended in pursuing this action and in fulfilling their obligations and responsibilities as class representatives, and of the benefits conferred on all Class Members by the Settlement, Class Counsel may ask the Court for the payment of incentive awards to the representative Plaintiffs and Related Plaintiffs.  Millennium will not oppose and Plaintiffs and Class Counsel will submit an application for an incentive award of two thousand dollars ($2,000.00) to each Plaintiff and Related Plaintiff.  Any court-ordered incentive award will be paid to Plaintiffs by Millennium no later than fifteen (15) calendar days after the Effective Date.

56.    Class Counsel will make an application to the Court for an award of Attorneys' Fees and Expenses in the Action.  Defendants will not have the right to challenge Class Counsel's entitlement to Attorneys' Fees and Expenses.  Defendants will have the right to challenge the amount of Attorneys' Fees and Expenses requested by Class Counsel.  The Parties have no agreement between themselves as to the amounts of Attorneys' Fees and Expenses that Class Counsel will request or that Defendants will oppose.  The Attorneys' Fees and Expenses ordered by the Court shall represent Class Counsel's sole compensation under the Settlement, will be in lieu of statutory fees Plaintiffs and/or their attorneys might otherwise have been entitled to recover from Millennium, and shall be inclusive of all fees and costs of Class Counsel to be paid by Millennium.  Plaintiffs and Class Counsel agree that Millennium shall not pay or be obligated to pay Class Counsel in excess of any award of Attorneys' Fees and Expenses ordered by the Court.  And in no event shall Millennium be obligated to pay Attorneys' Fees and Expenses (or any other payments) that would make Millennium's total payment towards the Settlement an

27

amount in excess of eight million two hundred and fifty thousand ($8,250,000.00).

57. Any Attorneys' Fees and Expenses ordered to be paid to Class Counsel shall be paid by Millennium to Class Counsel no later than thirty (30) calendar days after the Court's order awarding Attorneys' Fees and Expenses, provided that, pursuant to the terms of the undertaking attached as Exhibit G to this Agreement, any such Attorneys' Fees and Expenses will be repaid to Millennium by Class Counsel should the Court's order awarding Attorneys' Fees and Expenses or Final Approval Order be reversed on appeal and/or should the Settlement be terminated according to its terms.

58. In the event that any dispute between Class Counsel and any other counsel arises relating to the allocation of fees, Class Counsel agree to hold Millennium harmless from, and indemnify Millennium with respect to, any and all such liabilities, costs, and expenses, including attorneys' fees and dispute costs, of such dispute.

## VII.   RELEASES AND DISMISSAL OF ACTION

59. Upon the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Final Order and Final Judgment shall have, fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties.  In connection with the Released Claims, each Releasing Party shall be deemed as of the Effective Date to have expressly, knowingly, and voluntarily waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule, and legal doctrine similar, comparable, or equivalent to Section 1542, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

28

In connection with such waiver and relinquishment, the Releasing Parties hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, whether known or unknown, suspected or unsuspected, that they have against the Released Parties. In furtherance of such intention, the release herein given by the Releasing Parties shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Releasing Parties expressly acknowledges that he/she/it has been advised by its attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section. Plaintiffs and Class Members are not releasing any claims for personal injuries. Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this release is a part.

60. Upon the Effective Date, the Action shall be dismissed with prejudice. Plaintiffs and Class Counsel shall have the responsibility for ensuring that the Action is dismissed with prejudice in accordance with the terms of this Agreement.

61. The Court shall enter an order retaining jurisdiction over the Parties to this Agreement with respect to the future performance of the terms of this Agreement. In the event that any applications for relief are made, such applications shall be made to the Court.

62. Upon the Effective Date: (a) the Agreement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Class Members; and (b) Plaintiffs and the Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting against the Released

29

Parties in any federal or state court or tribunal any and all Released Claims.

## VIII.  **ADMINISTRATION OF THE SETTLEMENT**

63.     Millennium shall, subject to the approval of Class Counsel, retain Angeion Group as the Settlement Administrator to help implement the terms of the Agreement.  Subject to the terms and conditions of this Agreement, Millennium shall pay all costs associated with the Settlement Administrator, including costs of providing Class Notice and reviewing and processing claims.

64.     In fulfilling its responsibilities, the Settlement Administrator shall be responsible for, without limitation: (a) consulting on and designing the notice to be disseminated to Class Members; (b) arranging for the publication of the Summary Notice and dissemination of Class Notice; (c) responding to requests from Class Counsel and/or Defense Counsel; and (d) otherwise assisting with administration of the Settlement.

65.     The Settlement Administrator also shall be responsible for, without limitation, the dissemination of Class Notice and implementing the terms of the claim process and related administrative activities that include communications with Class Members concerning the Settlement, claim process, and their options thereunder.  In particular, the Settlement Administrator shall be responsible for:  (a) printing, e-mailing, mailing or otherwise arranging for the mailing of the Class Notice in response to Class Members' requests; (b) making any mailings required under the terms of this Agreement; (c) establishing the Settlement Website; (d) establishing a toll-free voice line to which Class Members may refer for information about the Action and the Settlement; (e) receiving and maintaining any Class Member correspondence regarding requests for exclusion and objections to the Settlement; (f) forwarding inquiries from Class Members to Class Counsel or their designee for a response, if warranted; (g) establishing a post office box for the receipt of Claim Forms, exclusion requests, and any correspondence; (h) reviewing Claim Forms according to the review protocols agreed to by the Parties and standards set forth in

this Agreement; and (i) otherwise implementing and/or assisting with the claim review process and payment of the claims.

66.     The Settlement Administrator shall administer the Settlement in accordance with the terms of this Agreement and, without limiting the foregoing, shall: (a) treat any and all documents, communications and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications or other information to any person or entity except as provided for in this Agreement or by court order; and (b) receive Requests for Exclusion and provide to Class Counsel and Defense Counsel a copy thereof within three (3) business days of receipt.  If the Settlement Administrator receives any Requests for Exclusion after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide Class Counsel and Defense Counsel with copies thereof and receive and maintain all correspondence from any Class Member regarding the Settlement.

67.     The Claim Form will be available for downloading and may be completed and submitted online at the Settlement Website, and, at Class Counsel's option, the Claim Form will be available for downloading on Class Counsel's websites. The Claim Form may also be requested by calling the toll-free number provided by the Settlement Administrator or by writing to the Settlement Administrator.

68.     To be eligible for a cash award or product voucher, each Class Member must submit or postmark a Claim Form, on or before the Claim Deadline, containing his or her name, mailing address, and e-mail address, and an attestation, under penalty of perjury, that the Class Member purchased one or more Subject Products during the Class Period.  The Claim Form will also direct Class Members to submit Proof of Purchase for any awards claimed in excess of $35.00 in cash or $35.00 in product vouchers.  The Claim Form will be deemed to have been submitted when the Claim Form, including any necessary Proof of Purchase, is posted, if received with a

postmark, or equivalent mark by a courier company indicated on the envelope or mailer and if mailed with pre-paid postage and addressed in accordance with the instructions set out in the Claim Form.  In the case of online claims, the Claim Form shall be deemed to have been submitted when it is fully uploaded, including any necessary Proof of Purchase, to the Settlement Website.

69.     Any Class Member who, in accordance with the terms and conditions of this Agreement, neither seeks exclusion from the Class nor submits a valid and timely Claim Form, will not be entitled to receive any relief pursuant to this Agreement, but will be bound together with all Class Members by all of the terms of this Agreement, including the terms of the Final Order and Final Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action in any forum (state or federal) against any of the Released Parties concerning the Released Claims.

70.     The Settlement Administrator shall use adequate and customary procedures and standards to determine whether a Claim Form meets the requirements set forth in this Agreement and to prevent the payment of fraudulent claims and/or pay only valid and eligible claims.  Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, who shall determine the extent, if any, to which each claim shall be allowed.  The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate and/or fraudulent claims, including, without limitation, indexing all awards provided to Class Members.

71.     Claim Forms that do not meet the terms and conditions of this Agreement shall be promptly rejected by the Settlement Administrator.  The Settlement Administrator shall have forty-five (45) calendar days from the Effective Date to exercise the right of rejection.  The Settlement Administrator shall notify the Class Member using the contact information provided in the Claim Form of the rejection, including via electronic mail.  Class Counsel and Defense Counsel shall be provided with copies of all such notifications to Class Members.  If any claimant

32

whose Claim Form has been rejected, in whole or in part, desires to contest such rejection, the claimant must, within fifteen (15) business days from receipt of the rejection, transmit to the Settlement Administrator by e-mail or U.S. mail a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting further review by the Settlement Administrator, in consultation with Class Counsel and Defense Counsel, of the denial of the claim.  If Class Counsel and Defense Counsel cannot agree on a resolution of claimant's notice contesting the rejection, the disputed claim shall be presented to the Court or a referee appointed by the Court for summary and non-appealable resolution.

72.     No person shall have any claim against Defendants, Defense Counsel, Plaintiffs, Plaintiffs' Counsel, the Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Agreement.  This provision does not affect or limit in any way the right of review by the Court or referee of any disputed Claim Forms as provided in this Agreement.

73.     Class Counsel and Defense Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

74.     Not later than seven (7) calendar days before the date of the Fairness Hearing, the Settlement Administrator shall file with the Court: (a) a list of those persons who have opted out or excluded themselves from the Settlement; and (b) the details regarding the number of valid Claim Forms received and processed by the Settlement Administrator.

75.     The Settlement Administrator may retain one or more persons to assist in the completion of its responsibilities.

76.     The Settlement Administrator shall distribute benefits to eligible Class Members only after the Effective Date and pursuant to the deadlines set forth in

Section 45(e) of this Agreement.

77.    If the Settlement is not approved or for any reason the Effective Date does not occur, no payments or distributions of any kind shall be made pursuant to this Agreement, except for the costs and expenses of the Settlement Administrator, for which Plaintiffs and/or Plaintiffs' Counsel are not responsible.

78.    In the event the Settlement Administrator fails to perform its duties, and/or makes a material or fraudulent misrepresentation to, or conceals requested material information from, Class Counsel, Defendants, and/or Defense Counsel, then the party to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Settlement Administrator immediately be replaced.  No party shall unreasonably withhold consent to remove the Settlement Administrator.  The Parties will attempt to resolve any disputes regarding the retention or dismissal of the Settlement Administrator in good faith, and, if they are unable to do so, will refer the matter to the Court for resolution.

79.    The Settlement Administrator shall coordinate with Defense Counsel to provide notice as required by 28 U.S.C. § 1715, and the costs of such notice shall be considered Settlement Administration Expenses.

80.    Defendants and the Released Parties are not obligated to (and will not be obligated to) compute, estimate, or pay any taxes on behalf of any Plaintiffs, any Class Member, Plaintiffs' Counsel, Class Counsel, and/or the Settlement Administrator.

## IX.   OBJECTIONS AND REQUESTS FOR EXCLUSION

81.    Members of the Class who fail to file, no later than the Objection Deadline, through the Court's Case Management/Electronic Case Files ("CM/ECF") system or through any other method in which the Court will accept objections, if any, and serve upon the Settlement Administrator, Class Counsel, and Defense Counsel, written objections in the manner specified in this Agreement and the Class Notice shall be deemed to have waived all objections and shall be foreclosed from making

34

1    any objection (whether by appeal or otherwise) to the Settlement.

2          82.   Any Class Member who intends to object to the fairness, reasonableness,

3    and/or adequacy of the Settlement must, in addition to filing the written objection

4    with the Court through the Court's CM/ECF system (or any other method in which

5    the Court will accept filings, if any) no later than the Objection Deadline, provide a

6    copy of the written objection by U.S. mail or e-mail to the Settlement Administrator

7    with a copy by U.S. Mail or e-mail to Class Counsel and Defense Counsel (at the

8    addresses set forth below) postmarked no later than the Objection Deadline.  Class

9    Members who object must set forth in their written objection: (a) their full name; (b)

10   current address; (c) a written statement of their objection(s) and the reasons for each

11   objection; (d) a statement of whether they intend to appear at the Fairness Hearing

12   (with or without counsel); (e) their signature; (f) a statement, sworn to under penalty

13   of perjury, attesting to the fact that he or she purchased one or more of the Subject

14   Products during the Class Period; (f) details of their purchase of the Subject Products,

15   including the Subject Products purchased, and the date and location of purchase; and

16   (g) the case name and number of the Action.  Objections must be served on Class

17   Counsel and Defense Counsel as follows:

*Upon Class Counsel at:*

L. Timothy Fisher
Yeremey Krivoshey
**BURSOR & FISHER P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, California 94596
ltfisher@bursor.com
ykrivoshey@bursor.com

*Upon Defense Counsel at:*

Scott M. Voelz
Daniel J. Faria
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California 90071-2899

35

svoelz@omm.com
dfaria@omm.com

James M. Lee
David Crane
**LTL ATTORNEYS LLP**
601 South Figueroa Street, Suite 3900
Los Angeles, California 90017
james.lee@ltlattorneys.com
david.crane@ltlattorneys.com

83.     The Parties shall request that the Court allow any interested party to file a reply to any objection no later than seven (7) calendar days before the Fairness Hearing, or as the Court may otherwise direct.

84.     Members of the Class may also elect to opt out of the Settlement, relinquishing their rights to benefits hereunder.  Members of the Class who opt out of the Settlement will not release their claims pursuant to this Agreement.  Proposed Class Members wishing to opt out of the Settlement must send to the Settlement Administrator by U.S. Mail a Request for Exclusion postmarked no later than the Opt Out Date.  The Request for Exclusion must be a personally signed letter from the Class Member including (a) their full name; (b) current address; (c) a clear statement communicating that they elect to be excluded from the Class, do not wish to be a Class Member, and elect to be excluded from any judgment entered pursuant to the Settlement; (d) their signature; and (e) the case name and case number of the Action. Members of the Class who fail to submit a valid Request for Exclusion on or before the Opt Out Date shall, in accordance with Paragraph 68 of this Agreement, be bound by all terms of this Agreement and the Final Order and Final Judgment, regardless of whether they have requested exclusion from the Settlement.

85.     Any member of the Class who submits a timely Request for Exclusion or opt out may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under this Agreement.  So-called "mass" or "class" opt

outs shall not be allowed.

86.     The Settlement Administrator shall promptly provide copies of all Requests for Exclusion, objections, and/or related correspondence from Class Members to Class Counsel and Defense Counsel.  Not later than three (3) business days after the deadline for submission of Requests for Exclusion, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a complete list of Class Members requesting exclusion from the Settlement together with copies of the Requests for Exclusion.  Notwithstanding any other provision of this Agreement, if more than one thousand (1,000) members of the Class opt out of the Settlement, Defendants, in their sole discretion, may rescind and revoke the entire Settlement and this Agreement, thereby rendering the Settlement null and void in its entirety, by sending written notice that Defendants revoke the settlement pursuant to this paragraph to Class Counsel within ten (10) business days following the date the Settlement Administrator informs Defendants of the number of Class members who have requested to opt out of the Settlement pursuant to the provisions set forth above. If Defendants rescind the Settlement pursuant to this paragraph, they shall have no further obligations to pay into the settlement and Millennium shall be responsible for only the fees and expenses actually incurred by the Settlement Administrator, for which Plaintiffs and his Counsel are not liable.

87.     On the date set forth in the Preliminary Approval Order, a Fairness Hearing shall be conducted to determine final approval of the Settlement.  A Motion in support of the Fairness Hearing shall be filed no later than fourteen (14) calendar days after the deadline to object or opt out of the Settlement.  Upon final approval of the Settlement by the Court at or after the Fairness Hearing, the Parties shall present the Final Order and Final Judgment, substantially in the form attached to this Agreement as Exhibits A and B, and a final order approving Attorneys' Fees and Expenses and incentive award, to the Court for approval and entry.  Class Members who wish to be heard at the Fairness Hearing (whether individually or through

separate counsel) and are objecting to the Settlement shall comply with the provisions of this Agreement.  Class Members who wish to be heard at the Fairness Hearing (whether individually or through separate counsel) and are not objecting to the Settlement shall file a notice of appearance with the Court's CM/ECF system or through any other method in which the Court will accept filings, if any, and serve upon Class Counsel and Defense Counsel at the addresses indicated above at least seven (7) calendar days before the Fairness Hearing.

## X.   SCOPE AND EFFECT OF CONDITIONAL CERTIFICATION OF THE CLASS SOLELY FOR PURPOSES OF SETTLEMENT

88.     For purposes of settlement only, the Parties agree to seek preliminary certification, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), of a damages and injunctive relief Class on a nationwide basis, including United States territories.  The Parties further agree that the Court should make preliminary findings and enter the Preliminary Approval Order (substantially in the form attached at Exhibit D) granting preliminary certification of the Class subject to final findings and ratification in the Final Order and Final Judgment, and appointing Plaintiffs as the representative of the Class and Class Counsel as counsel for the Class.

89.     Defendants do not consent to certification of the Class for any purpose other than to effectuate the Settlement of the Action or otherwise admit that the litigation of any claims that have or could have been asserted in the Action on a classwide basis is appropriate under applicable laws and standards.  Defendants' agreement to conditional certification does not constitute an admission of wrongdoing, fault, liability, or damage of any kind to Plaintiffs or any of the putative class members.

90.     If this Agreement is terminated pursuant to its terms, disapproved by any court (including any appellate court), and/or not consummated for any reason, or the Effective Date for any reason does not occur, the order certifying the Class for purposes of effectuating this Agreement, and all preliminary and/or final findings

38

regarding that class certification order, shall be automatically vacated upon notice of the same to the Court, the Action shall proceed as though the Class had never been certified pursuant to this Agreement and such findings had never been made, the Action shall return to the procedural status quo in accordance with this paragraph, and nothing in this Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Action may properly be maintained as a class action, whether the purported class is ascertainable, or whether Class Counsel or the Plaintiffs can adequately represent the Class Members under applicable law.

## XI.    MODIFICATION OR TERMINATION OF THE SETTLEMENT

91.    If the preconditions necessary to trigger the Effective Date (as set forth in Paragraph 13 of this Agreement) are not met, this Agreement shall be cancelled and terminated unless Defense Counsel and Class Counsel mutually agree in writing to proceed with and effectuate this Agreement.

92.    The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however that, after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Order and Final Judgment and do not materially alter, reduce or limit the rights of Class Members under this Agreement.

93.    Either Party may terminate this Agreement by providing written notice to the other Party and the Court within ten (10) days of the occurrence of the following: (a) The preliminary or final approval of this Agreement is not obtained without substantial modification, which modification the Parties did not agree to and which modification the terminating Party deems in good faith to be material (*e.g.*, because it significantly increases the costs of the settlement or deprives the

terminating party of an expressly stated benefit of the settlement); or (b) The Final Order and Final Judgment is reversed, vacated, or modified in any material respect by another court, except that it is expressly agreed by the Parties that any reduction of the Court's award of Attorneys' Fees and Expenses shall not be grounds to terminate this Agreement.

94.    In the event that this Agreement is not approved by the Court or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, the Parties shall be restored to their respective pre-settlement positions in the Action, including with regard to any agreements concerning tolling and similar agreements, and this entire Agreement shall be null and void, shall have no further force and effect with respect to any Party in the Action, and shall not be offered in evidence or used in any litigation for any purpose, including the existence, certification, or maintenance of any purported class or Defendants' liability with respect to the claims that are, were or could have been asserted in the Action.  In the event of such, this Agreement and all negotiations, proceedings, documents prepared, and statements made in connection with it shall be without prejudice to the Parties, and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law, and shall not be used in any manner for any purpose, and all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

95.    In the event of termination, the terminating Party shall cause the Settlement Administrator to post information regarding the termination on the Settlement Website.

96.    In the event of termination, all Parties shall be restored to their respective positions as of immediately prior to the date of execution of this Agreement.  Upon termination, Paragraphs 88-98 herein shall survive and be binding on the Parties, but this Agreement shall otherwise be null and void.

40

## XII.   SETTLEMENT NOT EVIDENCE AGAINST PARTIES

97.     The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent state law or rule.  In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement or the rights of the Parties or their counsel. Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, Defendants, the Released Parties, Plaintiffs, or the Class, or as a waiver by Defendants, the Released Parties, Plaintiffs, or the Class of any applicable privileges, claims or defenses.

98.     The provisions contained in this Agreement are not and shall not be deemed a presumption, concession, or admission by Defendants of any default, liability or wrongdoing as to any facts or claims alleged or asserted in the Action, or in any actions or proceedings, nor shall they be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in the Action, or in any other action or proceeding, whether civil, criminal or administrative. Defendants expressly deny the allegations in the Action.  Defendants do not admit that it or any of the Released Parties has engaged in any wrongful activity or that any person has sustained any damage by reason of any of the facts complained of in the Action.  And Defendants do not consent to certification of the Class for any purpose other than to effectuate the Settlement of the Action or otherwise admit that the

41

treatment of any claims that have been or could have been asserted in the Action on a classwide basis is appropriate.

## XIII.  BEST EFFORTS

99.    Class Counsel shall take all necessary actions to accomplish approval of the Settlement, the Class Notice, and dismissal of the Action.  The Parties (including their counsel, successors, and assigns) agree to cooperate fully and in good faith with one another and to use their best efforts to effectuate the Settlement, including without limitation in seeking preliminary and final Court approval of the Agreement and the Settlement embodied herein, carrying out the terms of this Agreement, and promptly agreeing upon and executing all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.  In the event that the Court fails to approve the Settlement or fails to issue the Final Order and Final Judgment, the Parties agree to use all reasonable efforts, consistent with this Agreement and subject to Section XI, to cure any defect identified by the Court.

100.   Each party will cooperate with the other party in connection with effectuating the Settlement or the administration of claims thereunder.  Any requests for cooperation shall be narrowly tailored and reasonably necessary for the requesting party to recommend the Settlement to the Court, and to carry out its terms.

## XIV.  MISCELLANEOUS PROVISIONS

101.   The Parties agree that the recitals are contractual in nature and form a material part of this Agreement.

102.   This Agreement and its accompanying exhibits set forth the entire understanding of the Parties.  No change or termination of this Agreement shall be effective unless in writing and signed by Plaintiffs' Counsel and Defense Counsel. No extrinsic evidence or parol evidence shall be used to interpret this Agreement.

103.   Any and all previous agreements and understandings between or among the Parties regarding the subject matter of this Agreement, whether written or oral, are superseded and hereby revoked by this Agreement.  The Parties expressly agree

42

that the terms or conditions of this Agreement will control over any other written or oral agreements.

104.   All of the Parties warrant and represent that they are agreeing to the terms of this Agreement based upon the legal advice of their respective attorneys, that they have been afforded the opportunity to discuss the contents of this Agreement with their attorneys and that the terms and conditions of this document are fully understood and voluntarily accepted.

105.   The waiver by any party of a breach of any term of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party.  The failure of a party to insist upon strict adherence to any provision of the Agreement shall not constitute a waiver or thereafter deprive such party of the right to insist upon strict adherence.

106.   The headings in this Agreement are inserted merely for the purpose of convenience and shall not affect the meaning or interpretation of this document.

107.   This Agreement may be executed by facsimile signature and in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.  The date of execution shall be the latest date on which any party signs the Agreement.

108.   This Agreement has been negotiated among and drafted by Class Counsel and Defense Counsel.  Plaintiffs, Plaintiffs' Counsel, Class Members, and Defendants shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the contra proferentem canon of construction.  Accordingly, this Agreement should not be construed in favor of or against one party as to the drafter, and the Parties agree that the provisions of California Civil Code § 1654 and common law principles of construing ambiguities against the drafter shall have no application.  All Parties agree that counsel for the Parties drafted this Agreement during extensive arm's-length negotiations.  No parol

43

or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

109.   Except in connection with any court filing or proceeding, or the dissemination of notice to the Class or as otherwise provided in this Agreement, Plaintiffs and Class Counsel will not issue any press releases regarding the Settlement or the Action without prior approval of Defendants.  Plaintiffs and Class Counsel agree not to disparage Defendants, Millennium Products, Defense Counsel, or the Settlement in the media, through any public statements, or otherwise.  Defendants agree not to disparage Plaintiffs, Class Counsel, or the Settlement.

110.   Each individual Defendant represents and warrants that the individual(s) executing this Agreement on behalf of that Defendant are authorized to enter into this Agreement on behalf of that Defendant.

111.   Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which this Action is pending.

112.   Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other to the addresses set forth in Section 81, such notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Legal Holidays) express delivery service.

113.   The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

114.   Plaintiffs expressly affirm that the allegations contained in the consolidated complaints filed in the Action were made in good faith and have a basis in fact, but consider it desirable for the Action to be settled and dismissed because of the substantial benefits that the proposed Settlement will provide to Class Members.

115.   In the event any one of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such

44

invalidity, illegality, or unenforceability shall not affect other provisions if Defense Counsel and Class Counsel, on behalf of the Parties, mutually elect to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.

**[SIGNATURES ON NEXT PAGE]**

STIPULATION OF CLASS ACTION SETTLEMENT

Dated: _____, 2016          _____
                                       Whole Foods Market, Inc.

                                       By: _____

                                       Its: _____


**AGREED AS TO FORM:**


                                       **PLAINTIFFS' COUNSEL**


Dated: _____, 2016          _____
                                       By:  L. Timothy Fisher
                                       Bursor & Fisher P.A.
                                       Attorneys for Plaintiffs and the Class


                                       **DEFENSE COUNSEL**


Dated:  November 14  , 2016           _____
                                       By: Scott M. Voelz
                                       O'Melveny & Myers LLP
                                       Attorneys for Millennium Products, Inc.


Dated: _____, 2016          _____
                                       By: James M. Lee
                                       LTL Attorneys LLP
                                       Attorneys for Whole Foods Market, Inc.


46

STIPULATION OF CLASS ACTION SETTLEMENT

1

Dated: _____, 2016                    _____

2                                                Whole Foods Market, Inc.

3                                                By: _____

4                                                Its: _____

5

6

7    **AGREED AS TO FORM:**

8

9                                                **PLAINTIFFS' COUNSEL**

10

11   Dated: _____, 2016                _____

12                                               By: L. Timothy Fisher
                                                 Bursor & Fisher P.A.
13                                               Attorneys for Plaintiffs and the Class

14                                               **DEFENSE COUNSEL**

15

16

17   Dated: _____, 2016                _____

18                                               By: Scott M. Voelz
                                                 O'Melveny & Myers LLP
19                                               Attorneys for Millennium Products, Inc.

20

21   Dated: ___November 17___, 2016              _____

22                                               By: James M. Lee
                                                 LTL Attorneys LLP
23                                               Attorneys for Whole Foods Market, Inc.

24

25

26

27

28

46

Dated: _____, 2016

                                      _____

                                        Whole Foods Market, Inc.

                                        By: _____

                                        Its: _____

**AGREED AS TO FORM:**

**PLAINTIFFS' COUNSEL**



Dated: November 15, 2016

_____
By:  L. Timothy Fisher
Bursor & Fisher P.A.
Attorneys for Plaintiffs and the Class

**DEFENSE COUNSEL**

Dated: _____, 2016

_____
By: Scott M. Voelz
O'Melveny & Myers LLP
Attorneys for Millennium Products, Inc.

Dated: _____, 2016

_____
By: James M. Lee
LTL Attorneys LLP
Attorneys for Whole Foods Market, Inc.

46

DocuSign Envelope ID: 7EC0D66B-49E6-4D65-8D24-A9BCEE4364FA

Dated:   November 17  , 2016

DocuSigned by:

*Roberta Lang*

Whole Foods Market, Inc.

By:  Roberta Lang

Its:  Global Vice President of Legal Affairs

**AGREED AS TO FORM:**

**PLAINTIFFS' COUNSEL**

Dated:              , 2016

By:  L. Timothy Fisher
Bursor & Fisher P.A.
Attorneys for Plaintiffs and the Class

**DEFENSE COUNSEL**

Dated:              , 2016

By: Scott M. Voelz
O'Melveny & Myers LLP
Attorneys for Millennium Products, Inc.

Dated:              , 2016

By: James M. Lee
LTL Attorneys LLP
Attorneys for Whole Foods Market, Inc.

47

1    IN WITNESS WHEREOF, the Parties hereto, by and through their respective

2  attorneys, and intending to be legally bound hereby, have duly executed this

3  Agreement as of the date set forth below.

4

5  **AGREED AND ACCEPTED:**

   **PLAINTIFFS**

6

7

8  Dated: _____, 2016    _____

   Jonathan Retta

9  Plaintiff

10

11  Dated: _____, 2016    _____

   Kirsten Schofield
12
   Plaintiff
13

14

15  Dated: _____, 2016    _____

   Jessica Manire
16  Plaintiff

17

   **DEFENDANTS**
18

19

20  Dated: NOVEMBER 14, 2016    _____

   Millennium Products, Inc.
21

22  By: GT DAVE

23  Its: CEO

24

25

26

27

28

45

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Agreement as of the date set forth below.

**AGREED AND ACCEPTED:**

**PLAINTIFFS**

Dated: _____, 2016    _____

Jonathan Retta
Plaintiff

Dated: _____, 2016    _____

Kirsten Schofield
Plaintiff

Dated: 11/10/16 _____, 2016    _____

Jessica Manire
Plaintiff

**DEFENDANTS**

Dated: _____, 2016    _____

Millennium Products, Inc.

By: _____

Its: _____

1    IN WITNESS WHEREOF, the Parties hereto, by and through their respective

2 attorneys, and intending to be legally bound hereby, have duly executed this

3 Agreement as of the date set forth below.

4

5 **AGREED AND ACCEPTED:**

                                      **PLAINTIFFS**

6

7 Dated: ___11/11/2016___, 2016    _____

8                                  Jonathan Retta

9                                  Plaintiff

10

11 Dated: _____, 2016    _____

12                            Kirsten Schofield

13                            Plaintiff

14

15 Dated: _____, 2016    _____

16                            Jessica Manire

17                            Plaintiff

18                            **DEFENDANTS**

19

20 Dated: _____, 2016    _____

21                            Millennium Products, Inc.

22                            By: _____

23                            Its: _____

24

25

26

27

28

45

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Agreement as of the date set forth below.

**AGREED AND ACCEPTED:**

**PLAINTIFFS**

Dated: _____, 2016    _____

Jonathan Retta
Plaintiff

Dated: _11 Nov._____, 2016    _____

Kirsten Schofield
Plaintiff

Dated: _____, 2016    _____

Jessica Manire
Plaintiff

**DEFENDANTS**

Dated: _____, 2016    _____

Millennium Products, Inc.

By: _____

Its: _____

45

**EXHIBIT A**

1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10

11

JONATHAN RETTA, *et al.*,

12                          Plaintiffs,

13              v.

14

15   MILLENNIUM PRODUCTS, INC.,
     *et al.*,

16                          Defendants.

17

Case No. 2:15-CV-01801-PSG-AJW

**[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT**

Judge:  Hon. Philip S. Gutierrez

5AC Filed:  June 27, 2016

18

19

20

21

22

23

24

25

26

27

28

WHEREAS, the Parties have entered into the Stipulation of Class Action Settlement, with its attached exhibits (collectively, the "Agreement"), signed and filed with this Court on _____, 2016, to settle *Retta, et al. v Millennium Products, Inc., et al.*, Case No. 15-CV-1801-PSG-AJW, pending in the United States District Court for the Central District of California (the "Action").

WHEREAS, by Order dated _____, 2016 (the "Preliminary Approval Order"), this Court granted preliminary approval of the proposed class action settlement between the parties in the Action, ordering the dissemination of Class Notice to potential Class Members, and providing potential Class Members with an opportunity either to exclude themselves from the Class or to object to the proposed settlement and issuing related Orders.

WHEREAS, the Court also preliminarily certified a Class, for settlement purposes only, approved the procedure for giving notice and forms of notice, and set a Fairness Hearing to take place on _____, 2016.  On that date, the Court held a duly noticed Fairness Hearing to consider: (1) whether the terms and conditions of the Agreement are fair, reasonable, and adequate; (2) whether a judgment should be entered dismissing Plaintiffs' complaint on the merits and with prejudice in favor of Defendants and the Released Parties and against all persons who are Class Members pursuant and subject to the terms of the Agreement; (3) whether and in what amount to award Incentive Awards to Plaintiffs and Related Plaintiffs; and (4) whether and in what amount to award Attorneys' Fees and Expenses to Plaintiffs' Counsel.

WHEREAS, the Court, having considered the papers submitted by the Parties and by all other persons who timely submitted papers in accordance with the Preliminary Approval Order, and having heard oral presentations by the Parties and all persons who complied with the Preliminary Approval Order, and based on all of the foregoing, together with this Court's familiarity with the Action, it is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1

1.    Use of Capitalized Terms.  Except where otherwise noted, all capitalized terms used in this Final Order Approving Class Action Settlement shall have the meanings attributed to them in the Agreement.

2.    Incorporation of Other Documents.  This Final Order Approving Class Action Settlement incorporates and makes a part hereof: (a) the Agreement, including all amendments and exhibits thereto, and definitions included therein, which was signed and filed with this Court on _____, 2016; (b) the briefs, affidavits, declarations, and other materials filed in support of the Settlement and Plaintiffs' Counsel's request for an award of Attorneys' Fees and Expenses; (c) the record at the Fairness Hearing; (d) the documents listed on the docket sheet or otherwise submitted to the Court; and (e) all prior proceedings in the Action.

3.    Jurisdiction.  The Court has personal jurisdiction over the Parties (Whole Foods Market, Inc. submitted to jurisdiction only for purposes of this settlement and prior to the Court's ruling on its motion to dismiss on jurisdictional grounds), and because due, adequate, and the best practicable notice has been disseminated and all potential Class Members have been given the opportunity to exclude themselves from or object to this Settlement, the Court has personal jurisdiction over all Class Members (as defined below and in the Agreement).  The Court has subject matter jurisdiction over the claims asserted in the Action pursuant to 28 U.S.C. §§ 1332 and 1367, including, without limitation, jurisdiction to approve the proposed Settlement and the Agreement and all exhibits attached thereto, grant final certification of the Class for settlement purposes, settle and release all claims arising out of the transactions alleged in this Action, and dismiss the Action on the merits and with prejudice and issue related orders.  The Court finds that venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.    Final Class Certification for Settlement Purposes Only.  The Class preliminarily certified by this Court is hereby finally certified, for settlement purposes only, under Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(2), the Court

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

finding that the Class fully satisfies all the applicable requirements of Fed. R. Civ. P. 23 and due process.  The Class shall consist of all persons in the United States and United States Territories who purchased at retail one or more of the Subject Products during the Class Period.  Specifically excluded from the Class are: (a) Defendants, their employees, principals, officers, directors, agents, affiliated entities legal representatives, successors, and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of resale; and (d) all consumers who have filed a timely Request for Exclusion from the Class.  The "Subject Products" at issue in the Settlement are all flavors of Millennium's "GT's Classic Kombucha," "GT's Classic Synergy," "GT's Enlightened Kombucha," and "GT's Enlightened Synergy": Classic Kombucha Original, Classic Kombucha Citrus, Classic Kombucha Gingerade, Classic Kombucha Multi-Green, Classic Kombucha Third Eye Chai, Classic Synergy Cosmic Cranberry, Classic Synergy Maqui Berry Mint, Classic Synergy Divine Grape, Classic Synergy Gingerberry, Classic Synergy Raspberry Rush, Classic Synergy Strawberry Serenity, Classic Synergy Superfruits, Classic Synergy Trilogy, Enlightened Kombucha Botanic No. 3, Enlightened Kombucha Botanic No. 7, Enlightened Kombucha Botanic No. 9, Enlightened Kombucha Citrus, Enlightened Kombucha Gingerade, Enlightened Kombucha Multi-Green, Enlightened Kombucha Original, Enlightened Synergy Black Chia, Enlightened Synergy Cosmic Cranberry, Enlightened Synergy Cherry Chia, Enlightened Synergy Gingerberry, Enlightened Synergy Grape Chia, Enlightened Synergy Green Chia, Enlightened Synergy Guava Goddess, Enlightened Synergy Mystic Mango, Enlightened Synergy Passionberry Bliss, Enlightened Synergy Raspberry Chia, Enlightened Synergy Strawberry Serenity, and Enlightened Synergy Trilogy.

 5. <u>Requests for Exclusion</u>.  The Court finds that only those persons listed in Exhibit A to this Order have submitted timely and valid Requests for Exclusion

[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT

1  from the Class and are therefore not bound by this Final Order and the

2  accompanying Final Judgment.  Plaintiffs' Counsel and Defense Counsel may

3  mutually agree to allow additional Class Members to exclude themselves or to

4  withdraw their exclusion requests by filing an appropriate notice with the Court.

5      6.    Adequacy of Representation.  The Court designates Plaintiffs as

6  representatives of the Class, and finds that these Plaintiffs have adequately

7  represented the Class for purposes of entering into and implementing the

8  Agreement.  The Court appoints the law firm of Bursor & Fisher, P.A. as counsel

9  for the Class ("Plaintiffs' Counsel").  For purposes of these settlement approval

10 proceedings only, the Court finds that Bursor & Fisher, P.A. are experienced and

11 adequate Plaintiffs' Counsel.  Plaintiff and Plaintiffs' Counsel have satisfied the

12 requirements of Fed. R. Civ. P. 23(a)(4) and 23(g).

13     7.    Class Notice.  The Court finds that the dissemination of the Class

14 Notice in accordance with the terms of the Agreement and this Court's Preliminary

15 Approval Order, as described in the Settlement Administrator's Declaration filed

16 before the Fairness Hearing, a copy of which is incorporated herein and made a part

17 hereof:

18     a.    constituted the best practicable notice to Class Members under

19 the circumstances of the Action;

20     b.    constituted notice that was reasonably calculated, under the

21 circumstances, to apprise Class Members of (i) the pendency of this class action;

22 (ii) the terms of the proposed Settlement; (iii) their rights under the proposed

23 Settlement; (iv) their right to exclude themselves from the Class and the proposed

24 Settlement; (v) their right to object to any aspect of the proposed Settlement

25 (including, but not limited to, final certification of the Class, the fairness,

26 reasonableness or adequacy of the proposed Settlement, the adequacy of the Class'

27 representation by Plaintiffs or Plaintiffs' Counsel, and/or the award of attorneys'

28 fees and expenses and representative awards); (vi) their right to appear at the

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

Fairness Hearing—either on their own or through counsel hired at their own expense—if they did not exclude themselves from the Class; and (vii) the binding effect of the Orders and Final Judgment in this Action, whether favorable or unfavorable, on all persons who did not request exclusion from the Class;

c.      constituted notice that was reasonable, due, adequate, and sufficient notice to all persons and entities entitled to be provided with notice; and

d.      constituted notice that fully satisfied all applicable requirements of the Federal Rules of Civil Procedure, including Rule 23(c)(2) and (e) of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.

8.      <u>CAFA Notice</u>.  The Court finds that Defendants provided notice of the proposed Settlement to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715. Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety (90) day time period (pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(d)) to comment or object to the proposed settlement before entering its Orders and Final Judgment and no such objections or comments were received.

9.      <u>Final Settlement Approval</u>.  The terms and provisions of the Agreement, including any and all amendments and exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, CAFA, the United States Constitution (including the Due Process Clause), and any other applicable law.  The Settlement is approved and all objections to the Settlement are overruled as without merit.  The Parties and Class Members are hereby directed to implement and consummate the Agreement in accordance with its terms and provisions.  Plaintiffs' Counsel shall take all steps

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

1   necessary and appropriate to provide Class Members with the benefits to which

2   they are entitled under the terms of the Agreement.

3        The Court finds that the Agreement is fair, adequate, and reasonable based on

4   the following factors, among other things:

5          a.    There was no fraud or collusion underlying this Settlement, and

6   it was reached as a result of extensive arm's-length negotiations, occurring over the

7   course of several months.  This included three mediations before Jill R. Sperber,

8   Esq. of Judicate West on March 25, 2016, May 20, 2016, and October 7, 2016.  *See,*

9   *e.g.*, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982);

10  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)

11  (presence of a neutral mediator is a factor weighing in favor of a finding of non-

12  collusiveness).

13         b.    The complexity, expense, and likely duration of the litigation

14  favor settlement—which provides meaningful benefits on a much shorter time

15  frame than otherwise possible—on behalf of the Settlement Class.  *See, e.g.*, *Lane*

16  *v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) (affirming the district court's

17  approval of a settlement where Plaintiffs' Counsel "reasonably concluded that the

18  immediate benefits represented by the Settlement outweighed the possibility—

19  perhaps remote—of obtaining a better result at trial"); *Class Plaintiffs v. Seattle*,

20  955 F.2d 1268, 1276 (9th Cir. 1992) (the Ninth Circuit has a "strong judicial policy

21  that favors settlements, particularly where complex class action litigation is

22  concerned").  Based on the stage of the proceedings and the amount of investigation

23  and discovery completed, the parties had developed a sufficient factual record to

24  evaluate their chances of success at trial and the proposed settlement.  In addition,

25  the parties negotiated the benefits to the class *before* discussing Plaintiffs' claim to

26  attorneys' fees.  *See In re Apple Deriv. Litig.*, No. 06-4128, 2008 U.S. Dist. LEXIS

27  108195, at *11-12 (N.D. Cal. Nov. 5, 2008) (parties' negotiations free of collusion

28  because, among other things, the parties negotiated the benefits to the class before

1    discussing attorneys' fees); *In re Midland Nat'l Life Ins. Co. Annuity Sales*

2    *Practices Litig.*, No. 07-1825, 2012 WL 5462665, at *2-3 (C.D. Cal. Nov. 7, 2012)

3    (same).

4         c.    The support of Plaintiffs' Counsel, who are highly skilled in

5    class action litigation such as this, and the Plaintiffs, who have participated in this

6    litigation and evaluated the proposed settlement, also favors final approval.  *See*

7    *Class Plaintiffs*, 955 F.2d at 1291; *Fernandez v. Victoria Secret Stores, LLC*, No.

8    06-04149, 2008 WL 8150856, at *7 (C.D. Cal. July 21, 2008); *Boyd v. Bechtel*

9    *Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

10        d.    The Settlement provides meaningful relief to the Class,

11   including cash relief, and injunctive relief, and certainly falls within the range of

12   possible recoveries by the Class.

13        The Settlement is approved and all objections to the Settlement are overruled

14   as without merit.  The Parties and Class Members are hereby directed to implement

15   and consummate the Agreement in accordance with its terms and provisions.

16   Plaintiffs' Counsel shall take all steps necessary and appropriate to provide Class

17   Members with the benefits to which they are entitled under the terms of the

18   Agreement.

19        10.   Settlement Consideration.

20        a.    As described in the Agreement, Millennium's maximum

21   financial commitment under the Settlement shall be eight million two hundred and

22   fifty thousand dollars ($8,250,000.00).  This amount shall include any Court-

23   ordered Attorneys' Fees and Expenses, Plaintiffs' and Related Plaintiffs' incentive

24   awards, any and all Settlement Administration Expenses, and the monetary value of

25   all cash awards and product vouchers paid to or issued to Class Members.  The

26   settlement fund shall be administered and implemented by Angeion Group and

27   under the terms set forth in the Agreement.

28

7

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

b.   In addition, Millennium will implement the following changes in connection with the Subject Products:

(i)   No later than 120 days after the Effective Date, Millennium will cease ordering and/or printing labels for the Subject Products bearing the term "antioxidant."  This will not prevent Millennium from implementing label changes regarding the antioxidant content of Millennium's products that are (a) reasonably necessary to comply with any statute, regulation, or other law of any kind; (b) necessitated by product and/or ingredient changes; or (c) permitted by subsequent statute, regulation, or case law concerning the use of the term "antioxidant" on food and beverage labels.

(ii)   No later than 120 days after the Effective Date, Millennium will begin ordering and/or printing labels, for Subject Products within Millennium's Enlightened Kombucha and Enlightened Synergy product lines, that state that the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitives, or religious beliefs.  This agreement will not prevent Millennium from implementing label changes regarding the alcohol content of Millennium's products that are (a) reasonably necessary to comply with any statute, regulation, or other law of any kind; (b) necessitated by product and/or ingredient changes; or (c) permitted by subsequent statute, regulation, or case law concerning alcohol disclosures and/or alcohol warnings on food and beverage labels.

(iii)   To ensure that all such products continue to comply with federal and state labeling standards, Millennium will regularly test samples from every Subject Product line (at the time of bottling and the time of expiration) using a third-party laboratory.

(iv)   Should the working group formed by the Association of Official Agricultural Chemists ("AOAC"), the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), and Kombucha Brewers International ("KBI") develop an

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

industry-wide standard testing methodology for ethanol in kombucha that differs from Millennium's methodology, Millennium will adopt that standard no later than 60 days after the standard is announced as an official AOAC testing methodology.

(v)     To ensure that all such products continue to comply with federal and state labeling standards, Millennium will, every three months, test the sugar content of multiple product samples, drawn from every Subject Product line, using a third-party laboratory.  If such testing reveals that the sugar content of a product sample varies from the declared sugar content on that product's label to a greater extent than allowed by federal or state labeling standards, Millennium will review the testing and sampling methodology employed by its third-party laboratory, including repeating the testing for the product line at issue, and, if the variability is repeated, make label adjustments regarding sugar content as necessary.

(vi)     To ensure that all such products continue to comply with federal and state labeling standards, no later than 120 days after the Effective Date, the labels of the Subject Products will state that the products may be under pressure and that the failure to refrigerate the products may result in leaking or gushing.

11.     <u>Binding Effect</u>.  The terms of the Agreement and of this Final Order and the accompanying Final Judgment shall be forever binding on the Parties and all Class Members, as well as their heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in interest, and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Release set forth in the Agreement.

12.     <u>Release</u>.  The following Release, which is also set forth in Section VII of the Settlement Agreement, is expressly incorporated herein in all respects,

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

1    including all defined terms used therein, is effective as of the date of this Final

2    Order and the accompanying Final Judgment, and forever discharges the Released

3    Parties from any claims or liabilities arising from or related to the Release:

4            a.      Upon the Effective Date, the Releasing Parties shall be deemed

5    to have, and by operation of the Final Order and Final Judgment shall have, fully,

6    finally and forever released, relinquished, and discharged all Released Claims

7    against the Released Parties.  In connection with the Released Claims, each

8    Releasing Party shall be deemed as of the Effective Date to have expressly,

9    knowingly, and voluntarily waived any and all provisions, rights, benefits conferred

10   by Section 1542 of the California Civil Code, and any statute, rule, and legal

11   doctrine similar, comparable, or equivalent to Section 1542, which provides as

12   follows:

**A GENERAL RELEASE DOES NOT EXTEND TO
CLAIMS WHICH THE CREDITOR DOES NOT
KNOW OR SUSPECT TO EXIST IN HIS OR HER
FAVOR AT THE TIME OF EXECUTING THE
RELEASE, WHICH IF KNOWN BY HIM OR HER
MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.**

17           b.      In connection with such waiver and relinquishment, the

18   Releasing Parties hereby acknowledge that they are aware that they or their

19   attorneys may hereafter discover claims or facts in addition to or different from

20   those that they now know or believe exist with respect to Released Claims, but that

21   it is their intention to hereby fully, finally, and forever settle and release all of the

22   Released Claims, whether known or unknown, suspected or unsuspected, that they

23   have against the Released Parties.  In furtherance of such intention, the Release

24   herein given by the Releasing Parties shall be and remain in effect as a full and

25   complete general release notwithstanding the discovery or existence of any such

26   additional different claims or facts.  Each of the Releasing Parties expressly

27   acknowledges that he/she/it has been advised by its attorney of the contents and

28   effect of Section 1542, and with knowledge, each of the Parties hereby expressly

10

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

1  waives whatever benefits he/she/it may have had pursuant to such section.

2  Plaintiffs and Class Members are not releasing any claims for personal injuries.

3  Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the

4  Final Judgment to have acknowledged, that the foregoing waiver was separately

5  bargained for and a material element of the Settlement of which this Release is a

6  part.

7       13.   Permanent Injunction.  All Class Members and/or their representatives

8  who have not been timely excluded from the Class are hereby permanently barred

9  and enjoined from bringing, filing, commencing, prosecuting, maintaining,

10  intervening in, participating in, continuing or receiving any benefits from, as class

11  members or otherwise, any lawsuit (including putative class actions), arbitration,

12  administrative, regulatory or other proceeding in any jurisdiction that is covered by

13  the Release.  All Class Members and all persons in active concert or participation

14  with Class Members are permanently barred and enjoined from organizing or

15  soliciting the participation of any Class Members who did not timely exclude

16  themselves from the Class into a separate class or group for purposes of pursuing a

17  putative class action, any claim or lawsuit in any jurisdiction that is covered by the

18  Release.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance

19  of this permanent injunction is necessary and appropriate in aid of the Court's

20  continuing jurisdiction and authority over the Action.  However, Class Members do

21  not waive their right to contact, in any way or for any purpose, any state or federal

22  agency regarding the activities of any Party, nor do they waive any right to enjoy

23  any benefits obtained by a state or federal agency.

24       14.   Enforcement of Settlement.  Nothing in this Final Order or in the

25  accompanying Final Judgment shall preclude any action to enforce the terms of the

26  Agreement; nor shall anything in this Final Order or in the accompanying Final

27  Judgment preclude Plaintiffs or other Class Members from participating in the

28

11

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

claims process described in the Agreement if they are entitled to do so under the terms of the Agreement.

15.  _Attorneys' Fees and Expenses and Plaintiffs' Incentive Awards_.  The Court is concurrently issuing a separate Order with respect to Attorneys' Fees and Expenses and the Incentive Awards to the representative Plaintiffs and Related Plaintiffs, entitled Final Order Approving Attorneys' Fees and Expenses and Incentive Awards.

16.  _Modification of Settlement Agreement_.  The Parties are hereby authorized, without needing further approval from the Court, to agree to written amendments, modifications, or expansions of the Agreement and its implementing documents (including all exhibits) without further notice to the Class or approval by the Court if such changes are consistent with this Final Order and the accompanying Final Judgment and do not materially alter, reduce, or limit the rights of Class Members under the Agreement.

17.  _Retention of Jurisdiction_.  The Court has jurisdiction to enter this Final Order, the Final Order Approving Attorneys' Fees and Expenses and Incentive Awards, and the accompanying Final Judgment.  Without in any way affecting the finality of these Final Orders and/or the accompanying Final Judgment, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement, and interpretation of the Agreement, and of these Final Orders and the accompanying Final Judgment, and for any other necessary purpose, including, without limitation (_see Kokkonen v. Guardian Life Ins. Co. of Am._, 511 U.S. 375, 381-82 (1994)):

a.  enforcing the terms and conditions of the Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Agreement, this Final Order, the Final Order Approving Attorneys' Fees and Expenses and Incentive Awards, or the accompanying Final Judgment (including, without limitation, whether a person or

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

1    entity is or is not a Class Member; and whether claims or causes of action allegedly

2    related to this case are or are not barred by this Final Order and the accompanying

3    Final Judgment; and whether persons or entities are enjoined from pursuing any

4    claims against Defendants);

5              b.        entering such additional Orders, if any, as may be necessary or

6    appropriate to protect or effectuate this Final Order, the Final Order Approving

7    Attorneys' Fees and Expenses and Incentive Awards, the accompanying Final

8    Judgment, and the Agreement (including, without limitation, orders enjoining

9    persons or entities from pursuing any claims against Defendants), or dismissing all

10   claims on the merits and with prejudice, and permanently enjoining Class Members

11   from initiating or pursuing related proceedings, or to ensure the fair and orderly

12   administration of this settlement; and

13             c.        entering any other necessary or appropriate Orders to protect

14   and effectuate this Court's retention of continuing jurisdiction; provided, however,

15   that nothing in this paragraph is intended to restrict the ability of the Parties to

16   exercise their rights as provided in the Agreement.

17        18.   No Admissions.  Neither this Final Order, the accompanying Final

18   Judgment nor the Agreement (nor any other document referred to herein, nor any

19   action taken to carry out this Final Order or the accompanying Final Judgment) is,

20   may be construed as, or may be used as an admission or concession by or against

21   Defendants or the Released Parties of the validity of any claim or defense or any

22   actual or potential fault, wrongdoing or liability whatsoever or the propriety of class

23   certification.  Defendants continue to deny that the Action meets the requisites for

24   class certification under Fed. R. Civ. P. 23 for any purpose other than settlement.

25   Entering into or carrying out the Agreement, and any negotiations or proceedings

26   related to it, shall not in any event be construed as, or deemed evidence of, an

27   admission or concession as to Defendants' denials or defenses and shall not be

28   offered or received in evidence in any action or proceeding against any Party hereto

13                        [PROPOSED] FINAL ORDER APPROVING
                          CLASS ACTION SETTLEMENT

1  in any court, administrative agency or other tribunal for any purpose whatsoever,

2  except as evidence of the Settlement or to enforce the provisions of this Final Order

3  and the accompanying Final Judgment and the Settlement Agreement; provided,

4  however, that this Final Order, the accompanying Final Judgment and the

5  Settlement Agreement may be filed in any action against or by Defendants or

6  Released Parties to support a defense of *res judicata*, collateral estoppel.

7       19.   <u>Dismissal of Action</u>.  The Action (including all individual and Class

8  claims presented therein) are hereby dismissed on the merits and with prejudice,

9  without fees or costs to any Party except as otherwise provided in this Final Order,

10  the Final Order Approving Attorneys' Fees and Expenses and Incentive Awards,

11  and the accompanying Final Judgment, and the Agreement.

12       20.   <u>Occurrence of Terminating Conditions</u>.  In the event that the Effective

13  Date does not occur, certification shall be automatically vacated and this Final

14  Order, the Final Order Approving Attorneys' Fees and Expenses and Incentive

15  Awards, and the accompanying Final Judgment, and all other orders entered and

16  releases delivered in connection herewith, shall be vacated and shall become null

17  and void.

18

19  DATED: _____      _____

20                                       The Honorable Philip S. Gutierrez

21                                     UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT

**EXHIBIT B**

1
2
3
4
5
6
7
8    **UNITED STATES DISTRICT COURT**
9    **CENTRAL DISTRICT OF CALIFORNIA**
10

11   JONATHAN RETTA, *et al.*,                  Case No. 2:15-CV-01801-PSG-AJW
12                Plaintiffs,                   **[PROPOSED] FINAL JUDGMENT**
13                                              Judge:  Hon. Philip S. Gutierrez
        v.
14                                              5AC Filed:  June 27, 2016
     MILLENNIUM PRODUCTS, INC.,
15   *et al.*
16                Defendants.
17

18
19
20
21
22
23
24
25
26
27
28

IT IS on this _____ day of _____, 2016, HEREBY ADJUDGED AND DECREED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 58 THAT:

1.      The Settlement of *Retta, et al. v. Millennium Products, Inc., et al.*, Case No. 15-CV-1801-PSG-AJW, pending in the United States District Court, Central District of California (the "Action"), on the terms set forth in the Parties' Stipulation of Class Action Settlement, with exhibits (collectively, the "Agreement"), and definitions included therein, signed and filed with this Court on _____, 2016, is finally approved.

2.      The following class is granted final certification, for settlement purposes only, under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3): all persons in the United States and United States Territories who purchased at retail one or more of the Subject Products during the Class Period.  Specifically excluded from the Class are: (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors, and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of resale; and (d) all persons who have filed a timely Request for Exclusion from the Class. The "Subject Products" are all products sold by Defendants during the Class Period under Millennium's Enlightened Kombucha, Enlightened Synergy, Classic Kombucha, and Classic Synergy product lines: Classic Kombucha Original, Classic Kombucha Citrus, Classic Kombucha Gingerade, Classic Kombucha Multi-Green, Classic Kombucha Third Eye Chai, Classic Synergy Cosmic Cranberry, Classic Synergy Maqui Berry Mint, Classic Synergy Divine Grape, Classic Synergy Gingerberry, Classic Synergy Raspberry Rush, Classic Synergy Strawberry Serenity, Classic Synergy Superfruits, Classic Synergy Trilogy, Enlightened Kombucha Botanic No. 3, Enlightened Kombucha Botanic No. 7, Enlightened Kombucha Botanic No. 9, Enlightened Kombucha Citrus, Enlightened Kombucha

[PROPOSED] FINAL JUDGMENT

1    Gingerade, Enlightened Kombucha Multi-Green, Enlightened Kombucha Original,

2    Enlightened Synergy Black Chia, Enlightened Synergy Cosmic Cranberry,

3    Enlightened Synergy Cherry Chia, Enlightened Synergy Gingerberry, Enlightened

4    Synergy Grape Chia, Enlightened Synergy Green Chia, Enlightened Synergy

5    Guava Goddess, Enlightened Synergy Mystic Mango, Enlightened Synergy

6    Passionberry Bliss, Enlightened Synergy Raspberry Chia, Enlightened Synergy

7    Strawberry Serenity, and Enlightened Synergy Trilogy.

8         3.     The dissemination of the Class Notice in accordance with the terms of

9    the Agreement and this Court's Preliminary Approval Order, as described in the

10   Settlement Administrator's Declaration filed before the Fairness Hearing:

11   (a) constituted the best practicable notice to Class Members under the

12   circumstances; (b) constituted notice that was reasonably calculated, under the

13   circumstances, to apprise Class Members of the pendency of the Action, the terms

14   of the Settlement, and their rights under the Settlement, including, but not limited

15   to, their right to object to any aspect of the proposed Settlement or exclude

16   themselves from the proposed Settlement and to appear at the Fairness Hearing, and

17   the binding effect of the Final Orders and this Final Judgment on all persons and

18   entities who did not request exclusion from the Class; (c) were reasonable and

19   constituted due, adequate, and sufficient notice to all persons entitled to be provided

20   with notice; and (d) met all applicable requirements of law, including, but not

21   limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, the United

22   States Constitution (including the Due Process Clause), and the Rules of this Court,

23   as well as complied with the Federal Judicial Center's illustrative class action

24   notices.

25        4.     Only those persons listed in Exhibit A to this Final Judgment have

26   submitted timely and valid requests for exclusion from the Class and are therefore

27   not bound by this Final Judgment and the accompanying Final Order Approving

28   Class Action Settlement.

[PROPOSED] FINAL JUDGMENT

5.    The claims in the Action are dismissed on the merits and with prejudice pursuant to the terms (including the Release) set forth in the Parties' Agreement and in the Court's Final Order Approving Class Action Settlement and Final Order Approving Attorneys' Fees and Expenses and Incentive Awards, without costs to any party except as provided in these Final Orders.

6.    Plaintiffs and Class Members and/or their representatives, and all persons acting on behalf of, or in concert or participation with, Plaintiff or Class Members (including but not limited to the Releasing Parties), who have not been timely excluded from the Class are hereby permanently barred and enjoined from: (a) filing, commencing, asserting, prosecuting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based upon or asserting any of the Released Claims; and (b) bringing an individual action or class action on behalf of Plaintiff or Class Members seeking to certify a class that includes Plaintiff or Class Members, or continuing to prosecute or participate in any previously filed and/or certified class action, in any lawsuit based upon or asserting any of the Released Claims.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over the Action.

7.    Plaintiffs' Counsel shall take all steps necessary and appropriate to provide Class Members with the benefits to which they are entitled under the terms of the Agreement and pursuant to the Orders of the Court.

8.    Plaintiffs' Counsel shall be awarded $_____ in attorneys' fees and $_____ in costs and expenses, which amount is approved as fair and reasonable, in accordance with the terms of the Agreement.

9.    Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire, and Related Plaintiffs Nina Pedro, Rosaline Lewis, and Sarah Samet, shall each be

[PROPOSED] FINAL JUDGMENT

1   awarded $_____ as an Incentive Award in their individual capacity as

2   representative Plaintiffs in the Action.

3        10.    The Court will retain continuing jurisdiction over the parties and the

4   Action for the reasons and purposes set forth in this Final Judgment, the Final

5   Order Approving Class Action Settlement, and the Final Order Approving

6   Attorneys' Fees and Expenses and Incentive Awards.  Without in any way affecting

7   the finality of these Final Orders and/or this Final Judgment, this Court expressly

8   retains jurisdiction as to all matters relating to the administration, consummation,

9   enforcement and interpretation of the Agreement and of these Final Orders and this

10  Final Judgment, and for any other necessary purpose.  *See Kokkonen v. Guardian*

11  *Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994).

12

13

14  DATED: _____          _____

15                                 The Honorable Philip S. Gutierrez
    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINAL JUDGMENT

1

**Exhibit A – List of Persons Who Requested Exclusion**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINAL JUDGMENT

**EXHIBIT C**

**Retta et al. v. Millennium Products et al.**

In the United States District Court for the Central District of California

Case No. 15-CV-1801-PSG-AJW

## <u>Settlement Claim Form</u>

---

**If you are a Class Member and wish to receive a payment, your completed Claim Form must be postmarked on or before [_____], or submitted online at www.millennium-settlement.com on or before [_____].**

---

Please read the full notice of this settlement (available at **www.millennium-settlement.com**) carefully before filling out this Claim Form.

To be eligible to receive any benefits from the settlement obtained in this class action lawsuit, you must submit your claim form online or by mail:

<u>ONLINE:</u>    Visit **www.millennium-settlement.com** and submit your claim online.

<u>MAIL</u>:    Millennium Settlement
Claims Administrator
1801 Market Street, Suite 660
Philadelphia, PA 19103

---

## PART ONE:   CLAIMANT INFORMATION

---

Provide your name and contact information below. It is your responsibility to notify the Claims Administrator of any changes to your contact information after the submission of your Claim Form.

| | |
|---|---|
| **FIRST NAME** | **LAST NAME** |

**STREET ADDRESS**

**CITY**    **STATE**    **ZIP CODE**

**EMAIL ADDRESS**

---

## PART TWO:   PURCHASE INFORMATION AND CASH OR VOUCHER SELECTION

---

To qualify for a cash award or product voucher, you must have purchased one or more of the following beverages ("**Subject Products**") from March 11, 2011 through [Notice Date]:

- **Classic Kombucha:** Original, Citrus, Gingerade, Multi-Green, Third Eye Chai;
- **Classic Synergy:** Cosmic Cranberry, Maqui Berry Mint, Divine Grape, Gingerberry Raspberry Rush, Strawberry Serenity, Superfruits, Trilogy;
- **Enlightened Kombucha:** Botanic No. 3, Botanic No. 7, Botanic No. 9, Citrus, Gingerade, Multi-Green, Original;
- **Enlightened Synergy:** Black Chia, Cosmic Cranberry, Cherry Chia, Gingerberry, Grape Chia, Green Chia, Guava Goddess, Mystic Mango, Passionberry Bliss, Raspberry Chia, Strawberry Serenity, Trilogy

QUESTIONS? VISIT www.millennium-settlement.com OR CALL [NUMBER] TOLL-FREE

## TOTAL NUMBER OF SUBJECT PRODUCTS

Write the **total number** of bottles of the Subject Products you purchased between March 11, 2011 and **[Notice Date]**:

Check here if you are enclosing proof of purchase documentation with this claim form:

## SETTLEMENT BENEFIT SELECTION

Choose **one** of the following settlement benefits (you cannot choose both options).
Please see below for more information about these benefits.

**CASH**          **OR**     **VOUCHER**

**CASH AWARD OPTION:** If you elect to receive cash, you are entitled to receive a **$3.50** cash award for every bottle of the Subject Products you purchased between March 11, 2011 and [DATE], up to a **maximum of $35.00 without Proof of Purchase**.  You may receive a cash award of up to **$60.00** based on the retail value of the Subject Products if you **submit Proofs of Purchase**, such as receipts, establishing each purchase during the Class Period.  Packaging, including bar codes or UPCs, shall constitute Proof of Purchase only if the Subject Product(s) claimed to have been purchased can be identified from the packaging submitted.*

**PRODUCT VOUCHER OPTION:** If you elect to receive a voucher, you are entitled to receive a voucher redeemable for a free Millennium product for every bottle of the Subject Product you purchased between March 11, 2011 and [DATE], up to a **maximum of $35.00 without Proof of Purchase**.  For administration purposes, each voucher will be assigned a cash value of $3.50, although the actual value of the voucher will depend on the price of Millennium products at your preferred retailer.  Only Class members who attach Proof of Purchase for each voucher claimed in excess of $35.00 may receive more than $35.00 in product vouchers, up to a **maximum of $60.00** in product vouchers based on the retail value of the Subject Products shown in the Proof of Purchase.  Packaging, including bar codes or UPCs, shall constitute Proof of Purchase only if the Subject Product(s) claimed to have been purchased can be identified from the packaging submitted.*

The cash will be sent in the form of a check.  The product voucher will be sent as a certificate redeemable for the Subject Products with no expiration date.

**\*Failure to include Proof of Purchase for cash or voucher claims in excess of $35.00 will result in the claim being reduced to $35.00 in cash or vouchers.  Submission of false or fraudulent information may result in the claim being rejected in its entirety.**

---

**PART THREE: ATTESTATION UNDER PENALTY OF PERJURY**

---

I declare under penalty of perjury under the laws of the United States of America that I purchased the products listed above between March 11, 2011 and **[Notice Date]** and that all of the information on this Claim Form is true and correct to the best of my knowledge.  I understand that my Claim Form may be subject to audit, verification, and Court review.

**SIGNATURE**                          **DATE**

QUESTIONS? VISIT www.millennium-settlement.com OR CALL [NUMBER] TOLL-FREE

<u>CLAIM FORM REMINDER CHECKLIST</u>

**Before submitting this Claim Form, please make sure you:**

1. Complete all fields in the Claimant Information section of this Claim Form.

2. Provide the **total number** of bottles of the Subject Products you purchased between March 11, 2011 and **[Notice Date].**

3. Indicate whether you have and are enclosing proof of purchase documentation.

4. Select only **one** of the settlement benefits (cash or voucher).

5. Sign the Attestation under penalty of perjury in Part Three. You must sign the Attestation in order to be eligible to receive settlement benefits.


**Please keep a copy of your Claim Form for your records.**

**EXHIBIT D**

1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**
9 **CENTRAL DISTRICT OF CALIFORNIA**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| JONATHAN RETTA, *et al.*, | Case No. 2:15-CV-01801-PSG-AJW |
| Plaintiffs, | **[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT** |
| v. | |
| MILLENNIUM PRODUCTS, INC., *et al.*, | Judge:  Hon. Philip S. Gutierrez |
| Defendants. | 5AC Filed:  June 27, 2016 |

1   WHEREAS, on March 11, 2015, Plaintiffs filed a proposed nationwide (or,

2   in the alternative, California and New York) class action lawsuit against

3   Millennium Products, Inc. ("Millennium") in the United States District Court for

4   the Central District of California, Case No. 15-CV-1801-PSG-AJW, which asserted

5   claims for violations of the California Consumers Legal Remedies Act (Cal. Civ.

6   Code § 1750, *et seq.*) ("CLRA"), California's Unfair Competition Law (Cal. Bus.

7   & Prof. Code § 17200, *et seq.*) (the "UCL"), California's False Advertising Law

8   (Cal. Bus. & Prof. Code § 17500, *et seq.*) (the "FAL"), New York's Deceptive and

9   Unfair Trade Practices Act, and New York General Business Law § 349

10  ("NYGBL"), that related to the advertising, labeling, and marketing of the

11  antioxidant content of the Subject Products.

12  WHEREAS, on April 28, 2015, Millennium filed a motion to dismiss or

13  strike the above-referenced complaint.  In response, on May 19, 2015, Plaintiffs

14  filed a First Amended Complaint asserting additional facts regarding their claims

15  for injunctive relief, standing, and clarifying the details regarding their purchases of

16  Millennium's products.

17  WHEREAS, on June 19, 2015, Millennium filed a motion to dismiss or strike

18  Plaintiffs' First Amended Complaint, which the Court granted in part (as to claims

19  for injunctive relief) and denied in part (as to the remainder of the claims at issue).

20  In response, on October 2, 2015, Plaintiffs filed a Second Amended Complaint

21  pleading additional facts in support of their claims for injunctive relief.

22  WHEREAS, on October 8, 2015, Plaintiffs filed a Third Amended Complaint

23  adding claims regarding the purported alcohol content of Millennium products and

24  Millennium's alleged failure to provide federal alcohol warnings regarding the

25  same.  Millennium answered the Third Amended Complaint on November 3, 2015.

26  WHEREAS, on February 11, 2016, Plaintiffs filed a Fourth Amended

27  Complaint adding Whole Foods Market, Inc. ("Whole Foods") as a Defendant.

28  Millennium answered the Fourth Amended Complaint on February 29, 2016, and

1

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT

1   Whole Foods moved to dismiss the Fourth Amended Complaint on April 7, 2016.

2   WHEREAS, on June 22, 2016, Plaintiffs filed a Fifth Amended Complaint

3   adding additional claims for damages and injunctive relief and pleading additional

4   causes of action regarding Millennium's alleged failure to correctly state the sugar

5   content of its products on the labels of the products.  The Fifth Amended Complaint

6   asserted claims for violations of the CLRA, UCL, FAL, and NYGBL, and for

7   breach of express warranty, breach of the implied warranty of merchantability,

8   negligent misrepresentation, fraud, and unjust enrichment.  Millennium answered

9   the Fifth Amended Complaint on July 6, 2016 and Whole Foods moved to dismiss

10  the Fifth Amended Complaint on July 11, 2016. [1]

11  WHEREAS, before entering into this Agreement, the Parties exchanged, and

12  met and conferred concerning, several sets of discovery requests, including

13  interrogatories and requests for production.  In response, Millennium produced

14  thousands of pages of documents to Plaintiffs, including Millennium's test results,

15  sales information, distributor information, internal communications,

16  communications with potential customers, and information regarding current and

17  former labeling of its products.  Plaintiffs also produced documents to Millennium,

18  including their test results, consumer surveys, consumer research, and other

19  materials.  Plaintiffs also served subpoenas pursuant to Fed. R. Civ. P. 45 on

20  American Herbal Products Association, Inc. and Kombucha Brewers International.

21  After a meet and confer process, American Herbal Products, Inc. and Kombucha

22  Brewers International produced testing results concerning Millennium's products

23  and other information.  Plaintiffs reviewed all of the documents produced by

24  Millennium, American Herbal Products Association, Inc. and Kombucha Brewers

25  _____

26  [1] Whole Foods Market, Inc. moved to dismiss, in part, on the grounds that as a

27  Texas holding company with no business operations, employees or any other
    contact with the state of California, it is not subject to the jurisdiction of the courts

28  in California.  This case settled prior to the ruling on that motion.

2   [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT

1   International as well as documents and information obtained through their own

2   research and investigation.

3       WHEREAS, before entering into this Agreement, the Parties, by and through

4   their respective counsel, conducted a thorough examination, investigation, and

5   evaluation of the relevant law, facts, and allegations to assess the merits of the

6   claims and potential claims to determine the strength of liability, potential remedies,

7   and all defenses thereto, including an extensive investigation into the facts and law

8   relating to (i) label design and product formulation; (ii) the marketing and

9   advertising of the products; (iii) sales, pricing, and financial data; and (iv) the

10  sufficiency of the claims and appropriateness of class certification.

11      WHEREAS, the Parties' Agreement was reached as a result of extensive

12  arm's-length negotiations between the Parties and their counsel.  The Parties have

13  engaged in extensive settlement discussions to determine if the Parties could reach

14  a resolution short of protracted litigation.  This included a full day of mediation

15  before Jill R. Sperber, Esq. of Judicate West on March 25, 2016, several weeks of

16  follow-on settlement discussions among counsel, and a further half day of

17  mediation with Ms. Sperber via telephone on May 20, 2016 before a settlement in

18  principle was reached.

19      WHEREAS, on August 11, 2016, Plaintiffs filed a Motion for Preliminary

20  Approval of Class Action Settlement.  On September 21, 2016, the Court denied the

21  motion for preliminary approval.

22      WHEREAS, after the Court's order, the Parties renewed their settlement

23  negotiations to address the Court's concerns stated in the September 21, 2016

24  Order.  On October 7, 2016, Plaintiffs and Millennium participated in another

25  mediation with Jill R. Sperber, Esq. of Judicate West, where the Plaintiffs and

26  Millennium were able to reach another settlement agreement in principle.

27      WHEREAS, after the Parties reached another settlement in principle as to all

28  claims for monetary relief set forth in Section IV(A) of the Settlement, and all

3
[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT

injunctive relief concerning Plaintiffs' antioxidant, alcohol, and sugar labeling claims set forth in Section IV(B)(a), (b), (c), (d), and (e) of the Settlement, the Parties met and conferred with opposing counsel in *Pedro et al. v. Millennium Products, Inc.*, Case No. 16-cv-03780-PSG-AJW (C.D. Cal 2016).  During these negotiations, the Parties stated their position that the claims asserted in *Pedro* are subsumed within the *Retta* matter, and the *Pedro* plaintiffs stated their position that the *Retta* action, although addressing the bulk of their claims, did not address a remaining claim for injunctive relief with respect to their allegations that the bottles of Millennium's products leak, fizz, or spill due to potential pressure buildup.  As a result of these negotiations, the Parties agreed that additional injunctive relief set out in Section IV(B)(f) of the Settlement would be provided by the *Retta* settlement to address the *Pedro* plaintiffs' remaining claim.

WHEREAS, before and during these settlement negotiations, the Parties had an arm's-length exchange of sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

WHEREAS, the Court has carefully reviewed the Agreement, including the exhibits attached thereto and all file, records and prior proceedings to date in this matter, and good cause appearing based on the record,

IT IS hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.   Defined Terms.  For purposes of this Order, except as otherwise indicated herein, the Court adopts and incorporates the definitions contained in the Stipulation of Settlement.

2.   Stay of the Action.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the terms and conditions of the Agreement and this Order, are hereby stayed.

3.   Preliminary Class Certification for Settlement Purposes Only.  The Action is preliminarily certified as a class action, for settlement purposes only,

[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT

1  pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).  The Court preliminarily finds

2  for settlement purposes that: (a) the Class certified herein numbers at least in the

3  tens of thousands of persons, and joinder of all such persons would be

4  impracticable; (b) there are questions of law and fact that are common to the Class,

5  and those questions of law and fact common to the Class predominate over any

6  questions affecting any individual Class Member; (c) the claims of the Plaintiffs are

7  typical of the claims of the Class they seek to represent for purposes of settlement;

8  (d) a class action on behalf of the Class is superior to other available means of

9  adjudicating this dispute; and (e) as set forth below, Plaintiffs and Plaintiffs'

10  Counsel are adequate representatives of the Class.  Defendants retain all rights to

11  assert that the Action may not be certified as a class action, other than for

12  settlement purposes.  The Court also concludes that, because the Action is being

13  settled rather than litigated, the Court need not consider manageability issues that

14  might be presented by the trial of a nationwide class action involving the issues in

15  this case.  *See Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

16       4.    <u>Class Definition</u>.  The Class shall consist of all persons in the United

17  States and United States Territories who purchased at retail one or more of the

18  Subject Products during the Class Period.  Specifically excluded from the Class are:

19  (a) Defendants and their employees, principals, officers, directors, agents, affiliated

20  entities, legal representatives, successors and assigns; (b) the judges to whom the

21  Action has been or is assigned and any members of their immediate families;

22  (c) those who purchased the Subject Products for the purpose of resale; and (d) all

23  persons who have filed a timely Request for Exclusion from the Class.  The

24  "Subject Products" are all products sold by Defendants during the Class Period

25  under Millennium's Enlightened Kombucha, Enlightened Synergy, Classic

26  Kombucha, and Classic Synergy product lines: Classic Kombucha Original, Classic

27  Kombucha Citrus, Classic Kombucha Gingerade, Classic Kombucha Multi-Green,

28  Classic Kombucha Third Eye Chai, Classic Synergy Cosmic Cranberry, Classic

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT

Synergy Maqui Berry Mint, Classic Synergy Divine Grape, Classic Synergy Gingerberry, Classic Synergy Raspberry Rush, Classic Synergy Strawberry Serenity, Classic Synergy Superfruits, Classic Synergy Trilogy, Enlightened Kombucha Botanic No. 3, Enlightened Kombucha Botanic No. 7, Enlightened Kombucha Botanic No. 9, Enlightened Kombucha Citrus, Enlightened Kombucha Gingerade, Enlightened Kombucha Multi-Green, Enlightened Kombucha Original, Enlightened Synergy Black Chia, Enlightened Synergy Cosmic Cranberry, Enlightened Synergy Cherry Chia, Enlightened Synergy Gingerberry, Enlightened Synergy Grape Chia, Enlightened Synergy Green Chia, Enlightened Synergy Guava Goddess, Enlightened Synergy Mystic Mango, Enlightened Synergy Passionberry Bliss, Enlightened Synergy Raspberry Chia, Enlightened Synergy Strawberry Serenity, and Enlightened Synergy Trilogy.

5.     Class Representative and Plaintiffs' Counsel.  Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire are designated as representatives of the conditionally certified Class.  The Court preliminarily finds that these individuals are similarly situated to absent Class Members and therefore typical of the Class, and that they will be adequate class representative.  Further, Bursor & Fisher, P.A., whom the Court finds are experienced and adequate counsel for purposes of these Settlement approval proceedings, are hereby designated as Plaintiffs' Counsel.

6.     Preliminary Settlement Approval.  Upon preliminary review, the Court finds that the Agreement, and the Settlement it incorporates, appears fair, reasonable, and adequate.  *See generally* Fed. R. Civ. P. 23; *Manual for Complex Litigation* (Fourth) § 21.632 (2004).  Accordingly, the Agreement is preliminarily approved and is sufficient to warrant sending notice to the Class.

7.     Jurisdiction.  The Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332 and 1367, and personal jurisdiction over the Parties before it.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391.

6

8.     <u>Fairness Hearing</u>.  A Fairness Hearing shall be held before this Court
on _____ at the United States District Court for the Central
District of California, Edward R. Roybal Federal Building and United States
Courthouse, 255 East Temple Street, Courtroom 880, Los Angeles, CA 90012-
3332, to determine, among other things, (a) whether the Action should be finally
certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a),
(b)(2), and (b)(3); (b) whether the settlement of the Action pursuant to the terms
and conditions of the Agreement should be approved as fair, reasonable and
adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) whether the
Action should be dismissed with prejudice pursuant to the terms of the Agreement;
(d) whether Class Members who do not timely request exclusion should be bound
by the Release set forth in the Agreement; (e) whether Class Members and related
persons should be subject to a permanent injunction; and (f) whether to grant
Plaintiffs' Counsel's application for an award of Attorneys' Fees and Expenses and
Incentive Awards for Plaintiffs and Related Plaintiffs (the "Fee Application").
Papers in support of final approval of the Agreement and the Fee Application shall
be filed with the Court according to the schedule set forth in Paragraph 14 below.
Objections to the Agreement or the Fee Application shall be filed with the Court on
or before the Objection Deadline set forth in Paragraph 14 below, and papers in
response to such objections must be filed on or before_____.
The Fairness Hearing may be postponed, adjourned, or continued by order of the
Court without further notice to the Class.  After the Fairness Hearing, the Court
may enter a Final Order and Final Judgment in accordance with the Agreement that
will fully and finally adjudicate the rights of the Class Members with respect to the
proposed Released Claims.

9.     <u>Administration</u>.  In consultation with and with the approval of
Defendants, Plaintiffs' Counsel is hereby authorized to establish the means

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT

1   necessary to administer the proposed Settlement and implement the claims process,

2   in accordance with the terms of the Agreement.

3          10.    <u>Class Notice</u>.  The form and content of the proposed Long Form

4   Notice and Summary Notice, attached as Exhibits E and F, respectively, to the

5   Agreement, and the notice methodology described in the Agreement and the

6   Declaration of the Settlement Administrator (attached as Exhibit G to the

7   Agreement), are hereby approved.  Pursuant to the Agreement, the Court appoints

8   Angeion Group as the Settlement Administrator to help implement the terms of the

9   Agreement.

10         (a)    <u>Notice Date</u>. No later than _____, the

11   Settlement Administrator shall provide notice to the Class pursuant to the terms of

12   the Agreement and the deadlines set forth in Paragraph 14 below, in accordance

13   with the notice program set forth in the Declaration of the Settlement Administrator

14   (attached as Exhibit G to the Agreement).  The Parties shall coordinate with the

15   Settlement Administrator to provide notice to the Class pursuant to terms therein.

16         (b)    <u>Findings Concerning Notice</u>.  The Court finds that the

17   Settlement is fair and reasonable such that the Long Form Notice and Summary

18   Notice should be provided pursuant to the Agreement and this Order.

19         (c)    The Court finds that the form, content, and method of

20   disseminating notice to the Class as described in Paragraphs 10 and 14 of this

21   Order: (i) comply with Rule 23(c)(2) of the Federal Rules of Civil Procedure as

22   they are the best practicable notice under the circumstances, and are reasonably

23   calculated, under all the circumstances, to apprise the members of the Class of the

24   pendency of the Action, the terms of the Settlement, and their right to object to the

25   Settlement or exclude themselves from the Settlement Class; (ii) comply with Rule

26   23(e) as they are reasonably calculated, under the circumstances, to apprise the

27   Class Members of the pendency of the Action, the terms of the proposed

28   Settlement, and their rights under the proposed settlement, including, but not

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT

1    limited to, their right to object to or exclude themselves from the proposed

2    Settlement and other rights under the terms of the Settlement Agreement;

3    (iii) constitute due, adequate, and sufficient notice to all Class Members and other

4    persons entitled to receive notice; and (iv) meet all applicable requirements of law,

5    including, but not limited to, 28 U.S.C. § 1715, Fed. R. Civ. P. 23(c) and (e), and

6    the Due Process Clause(s) of the United States Constitution.  The Court further

7    finds that all of the notices are written in simple terminology, are readily

8    understandable by Class Members, and comply with the Federal Judicial Center's

9    illustrative class action notices.

10        11.    Exclusion from Class.  Any Class Member who wishes to be excluded

11   from the Class must send to the Settlement Administrator by U.S. Mail a personally

12   signed letter, including their (a) full name, (b) current address, (c) a clear statement

13   communicating that they elect to be excluded from the Class, do not wish to be a

14   Class Member, and elect to be excluded from any judgment entered pursuant to the

15   Settlement, (d) their signature, and (e) the case name and case number of the

16   Action.  A Class Member can exclude only himself or herself from the Class, and

17   shall not be allowed to request that another individual or a group be excluded.

18   "Mass" or "class" opt-outs are not permitted.  Any such Request for Exclusion must

19   be postmarked and sent to the Settlement Administrator no later than

20   _____ (the "Opt-Out Date").  The Settlement

21   Administrator shall forward copies of any written requests for exclusion to

22   Plaintiffs' Counsel and Defense Counsel.  The Settlement Administrator shall file a

23   list reflecting all timely requests for exclusion with the Court no later than seven (7)

24   days before the Fairness Hearing.

25        If the proposed Settlement is finally approved, any potential Class Member

26   who has not submitted a timely written Request for Exclusion on or before the

27   Opt-Out Date shall be bound by all terms of the Agreement and the Final Order and

28   Final Judgment, regardless of whether they have requested exclusion from the

9

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT

1   Settlement, even if the potential Class Member previously initiated or subsequently

2   initiates any litigation against any or all of the Released Parties relating to Released

3   Claims.  All persons or entities who properly exclude themselves from the Class

4   shall not be Class Members and shall relinquish their rights or benefits under the

5   Agreement, should it be approved, and may not file an objection to the Settlement

6   or be entitled to any settlement benefits.

7       12.   <u>Objections and Appearances</u>.  Any Class Member who intends to

8   object to the fairness, reasonableness, and/or adequacy of the Settlement must, in

9   addition to filing the written objection with the Court through the Court's CM/ECF

10  system (or any other method in which the Court will accept filings, if any) no later

11  than the Objection Deadline, provide a copy of the written objection by U.S. mail or

12  e-mail to the Settlement Administrator with a copy by U.S. Mail or e-mail to

13  Plaintiffs' Counsel and Defense Counsel (at the addresses set forth below)

14  postmarked no later than the Objection Deadline.  Class Members who object must

15  set forth: (a) their full name; (b) current address; (c) a written statement of their

16  objection(s) and the reasons for each objection; (d) a statement of whether they

17  intend to appear at the Fairness Hearing (with or without counsel); (e) their

18  signature; (f) a statement, sworn to under penalty of perjury pursuant to 28 U.S.C.

19  § 1746, attesting to the fact that he or she purchased one or more of the Subject

20  Products during the Class Period; (g) details of their purchase of the Subject

21  Products, including the Subject Products purchased, and the date and location of

22  purchase; and (h) the case name and case number of the Action.  Objections must

23  be served on Plaintiffs' Counsel and Defense Counsel as follows:

24          *Upon Plaintiffs' Counsel at:*

25          L. Timothy Fisher
            Yeremey Krivoshey
26          **BURSOR & FISHER, P.A.**
            1990 North California Blvd., Suite 940
27          Walnut Creek, California 94596
            ltfisher@bursor.com
28          ykrivoshey@bursor.com

10                                    [PROPOSED] ORDER PRELIMINARILY
                                      APPROVING SETTLEMENT

*Upon Defense Counsel at:*

Scott M. Voelz
Daniel J. Faria
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California 90071-2899
svoelz@omm.com
dfaria@omm.com

James M. Lee
David Crane
**LTL ATTORNEYS LLP**
601 South Figueroa Street, Suite 3900
Los Angeles, California 90017
james.lee@ltlattorneys.com
david.crane@ltlattorneys.com

Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to Plaintiffs' Counsel identified and to Defense Counsel, and file said notice with the Court, no later than the date scheduled in paragraph 14 below, or as the Court may otherwise direct. Objections that are mailed to the Court (and not filed pursuant to the Court's CM/ECF system, or any other method in which the Court will accept filings, if any), or objections that are served on the Parties but not filed with the Court, shall not be received or considered by the Court at the Fairness Hearing.  And any Class Member who fails to comply with the provisions in this Paragraph shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of the Agreement, this Order, and by all proceedings, orders, and judgments, including, but not limited to, the release in the Agreement.  The Settlement Administrator, Defense Counsel, and Class Counsel shall promptly furnish each other copies of any and all objections that might come into their possession.

13.    <u>Preliminary Injunction</u>.  All Class Members and/or their representatives who do not timely and properly exclude themselves from the Class are barred and enjoined from directly, indirectly, derivatively, in a representative capacity, or in any other capacity filing, commencing, prosecuting, maintaining,

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT

1    intervening in, participating in, conducting, or continuing any action in any forum

2    (state or federal) as individual actions, class members, putative class members, or

3    otherwise against the Released Parties (as that term is defined in the Agreement) in

4    any court or tribunal asserting any of the Released Claims (as that term is defined in

5    the Agreement), and/or from receiving any benefits from any lawsuit,

6    administrative or regulatory proceeding, or order in any jurisdiction, based on or

7    relating to the Released Claims.  In addition, all such persons are hereby barred and

8    enjoined from filing, commencing, or prosecuting a lawsuit against Defendants (or

9    against any of their related parties, parents, subsidiaries, or affiliates) as a class

10   action, a separate class, or group for purposes of pursuing a putative class action

11   (including by seeking to amend a pending complaint to include class allegations or

12   by seeking class certification in a pending action in any jurisdiction) on behalf of

13   Class Members who do not timely exclude themselves from the Class, arising out

14   of, based on or relating to the Released Claims.  Pursuant to 28 U.S.C. §§ 1651(a)

15   and 2283, the Court finds that issuance of this preliminary injunction is necessary

16   and appropriate in aid of the Court's continuing jurisdiction and authority over the

17   Action.

18        14.    <u>Summary of Deadlines</u>.  In summary, the deadlines set by this Order

19   are as follows.  If any deadline set forth in this Order falls on a Saturday, Sunday,

20   or federal holiday, then such deadline shall extend to the next Court day.  These

21   deadlines may be extended by order of the Court, for good cause shown, without

22   further notice to the Class.  Class Members must check the Settlement Website

23   regularly for updates and further details regarding this settlement:

24        (a)    The Long Form Notice shall be published on the Settlement

25   Website and sent via mail or email to class members for whom Defendants have

26   contact information no later than _____ (the "Notice

27   Date");

28

12

(b)     The Internet advertising portion of the Class Notice program shall commence no later than _____.

(c)     Beginning no later than the Notice Date, the Summary Notice shall be published in the California edition of USA Today once a week for four successive weeks.

(d)     The Settlement Website and Toll-Free Telephone Number shall be established and become operational no later than _____.

(e)     All completed Claim Forms must be postmarked and mailed to the Settlement Administrator or uploaded to the Settlement Website no later than _____ ("the Claim Deadline").

(f)     All written objections to the Agreement and written notices of an objector's intention to appear at the Fairness Hearing shall be filed with the Court and served on Plaintiffs' Counsel and Defense Counsel no later than _____ ("the Objection Deadline").

(g)     All Requests for Exclusion shall be postmarked and sent to the Settlement Administrator no later than _____ ("the Opt-Out Date").

(h)     A Fairness Hearing shall be scheduled for _____.

(i)     Not later than seven (7) calendar days before the date of the Fairness Hearing, the Settlement Administrator shall file with the Court: (a) a list of those persons who have opted out or excluded themselves from the Settlement; and (b) the details regarding the number of valid Claim Forms received and processed by the Settlement Administrator.

(j)     Plaintiffs' motion in support of final approval of the Settlement and Plaintiffs' Counsel's Fee Application shall be filed no later than _____ and posted to the Settlement Website as soon as practicable thereafter, and may be supplemented no later than seven (7) days prior to the Fairness Hearing.

15.     Termination of Settlement.  In the event the Court does not grant final approval to the Settlement, or for any reason the parties fail to obtain a Final Order

[PROPOSED] ORDER PRELIMINARILY
APPROVING SETTLEMENT

1   and Final Judgment as contemplated in the Agreement, or the Agreement is

2   terminated pursuant to its terms for any reason or the Effective Date does not occur

3   for any reason, then the following shall apply:

4         (a)    All orders and findings entered in connection with the

5   Agreement shall become null and void and have no force and effect whatsoever,

6   shall not be used or referred to for any purposes whatsoever, and shall not be

7   admissible or discoverable in this or any other proceeding;

8         (b)    The conditional certification of the Class pursuant to this Order

9   shall be vacated automatically, and the Action shall proceed as though the Class

10   had never been certified pursuant to this Agreement and such findings had never

11   been made;

12         (c)    Nothing contained in this Order is, or may be construed as, a

13   presumption, concession, or admission by or against Defendants or Plaintiffs of any

14   default, liability, or wrongdoing as to any facts or claims alleged or asserted in the

15   Action, or in any actions or proceedings, whether civil, criminal, or administrative,

16   including, but not limited to, factual or legal matters relating to any effort to certify

17   the Action as a class action;

18         (d)    Nothing in this Order or pertaining to the Agreement, including

19   any of the documents or statements generated or received pursuant to the claims

20   administration process, shall be used as evidence in any further proceeding in this

21   case, including, but not limited to, motions or proceedings seeking treatment of the

22   Action as a class action;

23         (e)    Nothing in this Order or pertaining to the Agreement is, or may

24   be construed as, a presumption, concession, or admission by or against Defendants

25   that the Action meets the requisites for certification as a class action under federal

26   or California law; and

27         (f)    All of the Court's prior Orders having nothing whatsoever to do

28   with the Settlement shall, subject to this Order, remain in full force and effect.

14

16.   <u>Use of Order</u>.  This Order shall be of no force or effect if the Settlement does not become final and shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, or liability, or that any of the claims asserted in the Action meet the requisites for certification as a class action under federal or California law. Nor shall this Order be construed or used as an admission, concession, or declaration by or against Plaintiffs or the other Class Members that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she or it may have in the Action or in any other lawsuit.

17.   <u>Alteration of Exhibits</u>.  Plaintiffs' Counsel and Defense Counsel are hereby authorized to use all reasonable procedures to further the administration of the Settlement that are not materially inconsistent with this Order or the Agreement, including making, without further approval of the Court, minor changes to the form or content of the Long Form Notice, Summary Notice, and other exhibits that they jointly agree are reasonable or necessary.

18.   <u>Retaining Jurisdiction</u>.  This Court shall maintain continuing jurisdiction over these settlement proceedings to ensure the effectuation thereof for the benefit of the Class, and for any other necessary purpose.

19.   <u>Extension of Deadlines</u>.  Upon application of the Parties and good cause shown, the deadlines set forth in this Order may be extended by order of the Court, without further notice to the Class.  Class Members must check the Settlement website regularly for updates and further details regarding settlement deadlines.


DATED: _____          _____

The Honorable Philip S. Gutierrez
UNITED STATES DISTRICT JUDGE

15                    [PROPOSED] ORDER PRELIMINARILY
                      APPROVING SETTLEMENT

**EXHIBIT E**

<u>UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA</u>

# IF YOU BOUGHT GT'S KOMBUCHA PRODUCTS BETWEEN MARCH 11, 2011 AND [NOTICE DATE], YOU COULD RECEIVE A CASH PAYMENT OR PRODUCT VOUCHER FROM A CLASS ACTION SETTLEMENT.

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- This notice informs you of a proposed settlement in a class action lawsuit alleging that Defendants Millennium Products, Inc. and Whole Foods Market, Inc. ("Defendants") either mislabeled or misrepresented the antioxidant, alcohol, and sugar content of GT's kombucha products.

- The settlement will provide up to $8,250,000 to pay claims for those who purchased one or more flavors of GT's Classic Kombucha, GT's Classic Synergy, GT's Enlightened Kombucha, and GT's Enlightened Synergy beverages.  Class members can receive up to $35 in cash or product vouchers without Proof of Purchase.  Class members can receive up to $60 in cash or product vouchers with Proof of Purchase.  To qualify, you must have purchased one or more of the following beverages from March 11, 2011 through **[Notice Date]:**
    - **Classic Kombucha:** Original, Citrus, Gingerade, Multi-Green, Third Eye Chai;
    - **Classic Synergy:** Cosmic Cranberry, Maqui Berry Mint, Divine Grape, Gingerberry Raspberry Rush, Strawberry Serenity, Superfruits, Trilogy;
    - **Enlightened Kombucha:** Botanic No. 3, Botanic No. 7, Botanic No. 9, Citrus, Gingerade, Multi-Green, Original;
    - **Enlightened Synergy:** Black Chia, Cosmic Cranberry, Cherry Chia, Gingerberry, Grape Chia, Green Chia, Guava Goddess, Mystic Mango, Passionberry Bliss, Raspberry Chia, Strawberry Serenity, Trilogy

- Defendants deny that they did anything wrong or unlawful and assert that the product labels at issue were truthful, not misleading, and consistent with the law.  The Court has not decided who is right.  Both sides have agreed to settle the dispute and give benefits to Class Members.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY [DATE]** | This is the only way to receive a cash award or product voucher. |
| **EXCLUDE YOURSELF BY [DATE]** | Exclude yourself by **[DATE]** and get no award from the proposed settlement. This is the only choice that allows you to participate in another lawsuit against Defendants about the claims at issue in this case for the products and claims covered by the Class Period. |
| **OBJECT BY [DATE]** | You can write to the Court by **[DATE]** about why you don't like the settlement. |
| **GO TO A HEARING** | You can ask by **[DATE]** to speak in Court about the fairness of the proposed settlement. |
| **DO NOTHING** | Get no payment.  Give up your rights to sue Defendants regarding any of the claims at issue in this case. |

**QUESTIONS? VISIT <u>www.millennium-settlement.com</u>, OR CALL [NUMBER] TOLL FREE**
*Para una notificación en Español, por favor llame o visite nuestro website.*

- The Court in charge of this case still has to decide whether to approve the proposed settlement. Payments will be made if the Court approves the settlement and after appeals are resolved.

- Please be patient. Your legal rights are affected whether you act or not. **Read this notice carefully because it explains decisions you must make and actions you must take <u>now.</u>**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**……………………………………………………………………**4**
1.  Why was this notice issued?
2.  What is this lawsuit about?
3.  Why is this a class action?
4.  Why is there a settlement?

**WHO IS PART OF THE SETTLEMENT?**………………………………………………**5**
5.  Who is included in the proposed settlement?
6.  Are there exceptions to being included?
7.  Which products are included?
8.  What if I'm still not sure if I'm included?

**THE SETTLEMENT BENEFITS – WHAT YOU CAN GET**…..…..…………..……………**6**
9.  What does the settlement provide?
10. What can I get from the settlement?
11. What am I giving up if I stay in the Class?
12. When will I get my payment, if any?

**HOW TO RECEIVE A PAYMENT**……………………………………………….………**11**
13. How can I get a payment?
14. What is the claim process?
15. What if I do nothing?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**…………………………………**12**
16. How can I get out of the settlement?
17. If I exclude myself, can I still get a payment?
18. If I don't exclude myself, can I sue Defendants for the same thing later?

**THE LAWYERS REPRESENTING THE CLASS**……………………….…………………**13**
19. Do I have a lawyer in this case?
20. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**……………………………………….…………**14**
21. How can I tell the Court if I do not like the settlement?
22. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING**…………………………………………….....**16**
23. When and where will the Court decide whether to approve the settlement?
24. Do I have to come to the hearing?
25. May I speak at the fairness hearing?

2

**QUESTIONS? VISIT <u>www.millennium-settlement.com</u> OR CALL [NUMBER] TOLL FREE**
*Para una notificación en Español, por favor llame o visite nuestro website.*

**GETTING ADDITIONAL INFORMATION**…....-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.....**17**

26.      How can I get more information?

**QUESTIONS? VISIT <u>www.millennium-settlement.com</u> OR CALL [NUMBER] TOLL FREE**
*Para una notificación en Español, por favor llame o visite nuestro website.*

## BASIC INFORMATION

| 1.  Why was this notice issued? |
| --- |

This notice, given pursuant to an Order of the Court dated **[DATE]**, describes a proposed settlement of a class action against Defendants Millennium Products, Inc. and Whole Foods Market, Inc. ("Defendants"), *Retta, et al. v. Millennium Products, Inc., et al.*, Case No. 2:15-CV-1801-PSG-AJW.  The Court in charge of this lawsuit is the United States District Court for the Central District of California.  The people who sued are called the "Plaintiffs," and Millennium and Whole Foods are the "Defendants."

This notice is provided because you have the right to know about a proposed settlement of a class action lawsuit, and about your rights and options, before the Court decides whether to approve the proposed settlement.

Plaintiffs' Fifth Amended Class Action Complaint and the settlement agreement, called the "Stipulation of Class Action Settlement" or "Agreement," are available at **www.millennium-settlement.com** and provide greater detail concerning this lawsuit and the rights and duties of the parties and Class Members.

**If you are a Class Member, your legal rights are affected whether you act or do not act, so please read this notice carefully.**

| 2.  What is this lawsuit about? |
| --- |

The lawsuit claims that Millennium mislabeled the Subject Products by or caused product loss by:

(i)        using the term "antioxidant" on the labels of the Subject Products despite the fact that the Subject Products allegedly do not contain antioxidants.

(ii)       labeling and advertising GT's Enlightened Kombucha and Enlightened Synergy products as non-alcoholic when the fermentation of the products allegedly causes the products to contain more than the amount of alcohol permitted for non-alcoholic beverages.

(iii)      understating the sugar content of the Subject Products on the labels of the Subject Products or failing to include added sugar as a listed ingredient despite the fact that the Subject Products allegedly contain sugar as an added ingredient.

The lawsuit also alleges that Whole Foods violated the law by reselling the GT's kombucha products allegedly mislabeled by Millennium.  Defendants deny that they did anything wrong or unlawful and assert that the product labels at issue were truthful, not misleading, and consistent with the law.  Plaintiffs believe the alleged claims are strong.  The Court did not rule in favor of either party.  Plaintiffs entered into the settlement to avoid the delay, risks, and increased costs associated with continued litigation and believe the settlement is in the best interests of the Class.  Defendants entered into a settlement solely to avoid the further expense, inconvenience, and distraction of any burdensome and protracted litigation and to eliminate future controversy with respect to this lawsuit.  Accordingly, the parties have agreed to a proposed settlement, and Defendants agreed, under the terms of the settlement, to provide you with an opportunity to submit a valid and timely Claim Form through which you may be eligible to receive monetary compensation.

**QUESTIONS? VISIT www.millennium-settlement.com OR CALL [NUMBER] TOLL FREE**
*Para una notificación en Español, por favor llame o visite nuestro website.*

**3. Why is this a class action?**

In a class action, one or more people called "Class Representatives" (in this case Jonathan Retta, Kirsten Schofield, and Jessica Manire) sue on behalf of themselves and other people who have similar claims. Together, all of these people are "Class Members." One Court resolves the issues for all Class Members in a class action, except for those who exclude themselves from the Class. United States District Court Judge Philip S. Gutierrez presides over this action.

**4. Why is there a settlement?**

The Court has not decided in favor of the Plaintiffs or the Defendants. Instead, both sides have agreed to the proposed settlement. By agreeing to the proposed settlement, they avoid the costs and uncertainty of a trial, and Class Members receive the benefits described in this notice. The proposed settlement does not mean that any law was broken or that Defendants did anything wrong, or that the Plaintiffs and the Class would or would not win their case if it were to go to trial. The parties believe that the proposed settlement is fair, reasonable, and adequate, and will provide substantial benefits to the Class.

# WHO IS PART OF THE SETTLEMENT?

**5. Who is included in the proposed settlement?**

The Class includes all persons in the United States and United States Territories who bought at retail one or more of the Subject Products (defined further under Question 7) during the period March 11, 2011 through **[NOTICE DATE]** (the "Class Period").

**6. Are there exceptions to being included?**

Specifically excluded from the Class are:

(a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors, and assigns;
(b) The judges to whom the Action has been or is assigned and any members of their immediate families;
(c) those who purchased the Subject Products for the purpose of resale; and
(d) All persons who have filed a timely Request for Exclusion from the Class. (Explained further under Questions 17-19 below.)

The proposed settlement does not include a release of any claims for personal injury relating to the use of the Subject Products.

**7. Which products are included?**

The Subject Products in this settlement are the following products sold by Defendants during the Class Period under **GT's Classic Kombucha, GT's Classic Synergy, GT's Enlightened Kombucha, and GT's Enlightened Synergy** product lines:

- Classic Kombucha Original
- Classic Kombucha Citrus
- Classic Kombucha Gingerade
- Classic Kombucha Multi-Green

- Classic Kombucha Third Eye Chai

- Classic Synergy Cosmic Cranberry
- Classic Synergy Maqui Berry Mint
- Classic Synergy Divine Grape
- Classic Synergy Gingerberry
- Classic Synergy Raspberry Rush
- Classic Synergy Strawberry Serenity
- Classic Synergy Superfruits
- Classic Synergy Trilogy

- Enlightened Kombucha Botanic No. 3
- Enlightened Kombucha Botanic No. 7
- Enlightened Kombucha Botanic No. 9
- Enlightened Kombucha Citrus
- Enlightened Kombucha Gingerade
- Enlightened Kombucha Multi-Green
- Enlightened Kombucha Original

- Enlightened Synergy Black Chia
- Enlightened Synergy Cosmic Cranberry
- Enlightened Synergy Cherry Chia
- Enlightened Synergy Gingerberry
- Enlightened Synergy Grape Chia
- Enlightened Synergy Green Chia
- Enlightened Synergy Guava Goddess
- Enlightened Synergy Mystic Mango
- Enlightened Synergy Passionberry Bliss
- Enlightened Synergy Raspberry Chia
- Enlightened Synergy Strawberry Serenity
- Enlightened Synergy Trilogy

## 8.  What if I'm still not sure if I'm included?

If you are not sure whether you are a Class Member, or have any other questions about the settlement, visit the website, **www.millennium-settlement.com**, or call the toll free number, **[NUMBER]**.  You may also send questions to the Settlement Administrator at **[ADDRESSES].**

# THE SETTLEMENT BENEFITS – WHAT YOU CAN GET

## 9.  What does the Settlement provide?

If the settlement is approved and becomes final, the settlement provides a maximum fund of up to $8,250,000 to resolve the lawsuit.  This represents Defendants' total financial commitment under the settlement, and will be used to make payments to Class Members who file valid and timely claims by submitting a Claim Form (*see* Question 14), as well as to pay for costs associated with the notice and administration of the Settlement, Attorneys' Fees and Expenses (*see* Question 21), and a special service payment (or "Incentive Award") to the Class Representative (*see* Question 21).

While Defendants believe that the Subject Products' labels and packaging were truthful and not in violation of the law, the settlement also provides the following relief:

(i)       No later than 120 days after the Effective Date, Millennium will cease ordering and/or printing labels for the Subject Products bearing the term "antioxidant." This agreement will not prevent Millennium from implementing label changes regarding the antioxidant content of Millennium's products that are (a) reasonably necessary to comply with any statute, regulation, or other law of any kind; (b) necessitated by product and/or ingredient changes; or (c) permitted by subsequent statute, regulation, or case law concerning the use of the term "antioxidant" on food and beverage labels.

(ii)      No later than 120 days after the Effective Date, Millennium will begin ordering and/or printing labels, for Subject Products within Millennium's Enlightened Kombucha and Enlightened Synergy product lines, that state that the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitives, or religious beliefs. This agreement will not prevent Millennium from implementing label changes regarding the alcohol content of Millennium's products that are (a) reasonably necessary to comply with any statute, regulation, or other law of any kind; (b) necessitated by product and/or ingredient changes; or (c) permitted by subsequent statute, regulation, or case law concerning alcohol disclosures and/or alcohol warnings on food and beverage labels.

(iii)     To ensure that all such products continue to comply with federal and state labeling standards, Millennium will regularly test samples from every Subject Product line (at the time of bottling and the time of expiration) using a third-party laboratory.

(iv)     Should the working group formed by the Association of Official Agricultural Chemists ("AOAC"), the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), and Kombucha Brewers International ("KBI") develop an industry-wide standard testing methodology for ethanol in kombucha that differs from Millennium's methodology, Millennium will adopt that standard no later than 60 days after the standard is announced as an official AOAC testing methodology.

(v)      To ensure that all such products continue to comply with federal and state labeling standards, Millennium will, every three months, test the sugar content of multiple product samples, drawn from every Subject Product line, using a third-party laboratory. If such testing reveals that the sugar content of a product sample varies from the declared sugar content on that product's label to a greater extent than allowed by federal or state labeling standards, Millennium will review the testing and sampling methodology employed by its third-party laboratory, including repeating the testing for the product line at issue, and, if the variability is repeated, make label adjustments regarding sugar content as necessary.

(vi)     To ensure that all such products continue to comply with federal and state labeling standards, no later than 120 days after the Effective Date, the labels of the Subject Products will state that the products may be under pressure and that the failure to refrigerate the products may result in leaking or gushing.

The settlement agreement, called the "Stipulation of Settlement" or "Agreement," available at **www.millennium-settlement.com**, has more information regarding the settlement.

## 10.  What can I get from the Settlement?

You may be entitled to a $3.50 cash payment for each Subject Product you purchased during the Class Period, up to a maximum of $35.00 in cash if you do not have Proof of Purchase. Class Members who claim more than $35.00 in cash awards must submit Proof of Purchase establishing purchase(s) during the

Class Period for each Subject Product claimed in excess of $35.00 and may receive up to $60.00 in cash awards based on the retail value of the Subject Products shown in the Proofs of Purchase.

In the alternative, you may be entitled to receive a product voucher redeemable for a free Millennium product for each Subject Product you purchased during the Class Period, up to a total of $35.00 worth of product vouchers, without providing Proof of Purchase.  For claims administration purposes, each voucher will be assigned a cash value of $3.50, although the actual value of the voucher will depend on the price of Millennium products at your preferred retailer.  Class Members who claim more than $35.00 in vouchers must submit Proof of Purchase establishing purchase(s) during the Class Period for each Subject Product claimed in excess $35.00 and may receive up to $60.00 in product vouchers based on the retail value of the Subject Products shown in the Proofs of Purchase.

You may only elect to receive a cash award **or** a product voucher award.  **You cannot receive both.**

If the total value of all approved claims is greater than the amount of money available to pay claims (after costs and fees have been deducted), eligible Class Members' payments will be reduced proportionally.  Thus, the amount of your payment will depend on the total amount of money you spent on the Subject Products during the Class Period, whether you have Proof of Purchase for the products you bought, and on the number of Class Members who choose to make a claim.

The actual amount available for each eligible Class Member who submits a valid and timely Claim Form (or "Authorized Claimant"), whether or not proof of purchase is submitted with a Claim Form, will not be determined until after all Claims Forms have been received, and may not be determined until after the proposed settlement is final.  The maximum claim values above are the maximum amounts a Class Member could receive assuming there is no reduction in the value of the claims as explained above.

### 11.  What am I giving up if I stay in the Class?

**If you meet the definition of a Class Member, you are part of the Class, unless you exclude yourself.**

This means that you can't sue, continue to sue, or be part of any other lawsuit, arbitration, or other proceeding against Defendants or any other "Released Party" about the legal issues in this case.  It also means that all of the Court's orders will apply to you and legally bind you.  **You are a Class Member and bound by the settlement whether or not you file a Claim Form or receive a payment.**

When and if the settlement is approved, Plaintiffs and Class Members who do not validly exclude themselves from the Class pursuant to the settlement will be deemed to have released Defendants and other "Released Parties" (as defined in the Agreement) from any all any Released Claims (as defined in the Agreement).

**A word-for-word copy of the Release sections from the Agreement is copied below.  Please carefully read** the following excerpts from the Agreement regarding "Released Claims":

"**Released Claims**" means and includes any and all claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action under common law or statutory law (federal, state, or local) of every nature and description whatsoever, monetary, injunctive, or equitable, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including Unknown Claims as of the Notice Date by Plaintiffs and all Class Members (and Plaintiffs' and Class Members' respective heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns) that:

(i)      were asserted or that could have been reasonably asserted in the Action against the Released Parties (as hereinafter defined), or any of them, and that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged or referred to in the Action (including, but not limited to, alleged violations of the CLRA, UCL, FAL, NYGBL, or similar laws of any state or United States territory, and alleged claims for injunctive relief, breach of warranty, breach of the implied warranty of merchantability, negligent misrepresentation, fraud, and unjust enrichment); or

(ii)      were asserted or that could have been reasonably asserted by any Class Member against the Released Parties (as hereinafter defined), or any of them, and that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged or referred to, including all claims for monetary, injunctive, or equitable relief that relate in any way to communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, and/or marketing of or concerning the Subject Products, in the Related Actions; or

(iii)      relate in any way to communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, and/or marketing of or concerning the Subject Products related to the nutritional value and/or content, including but not limited to the antioxidant content, of the Subject Products, including, but not limited to statements that the Subject Products contain "antioxidants," "powerful antioxidants," or "more antioxidants than blueberries," made through any medium; or

(iv)      relate in any way to communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, testing, and/or marketing of or concerning the Subject Products related to the alleged alcohol content of the products; or

(v)      relate in any way to communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, testing, and/or marketing of or concerning the Subject Products related to the consequences of continued fermentation of the products, including but not limited to the consequences of excessive carbonation, bottle pressure, or product spillage, leakage, or spoilage; or

(vi)      relate in any way to communications, disclosures, representations, statements, claims, nondisclosures and/or omissions, packaging, advertising, labeling, testing, and/or marketing of or concerning the Subject Products related to the alleged sugar content of the products.

Notwithstanding any other provision of this Agreement, "Released Claims" do not include claims for personal injuries.  Plaintiffs and Class Members are not releasing any claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action relating to personal injuries.

"**Released Parties**" shall be defined and construed broadly to effectuate a complete and comprehensive release, and means Millennium and any entity that made, manufactured, tested, inspected, audited, certified, purchased, distributed, supplied, licensed, transported, donated, marketed, advertised, promoted, sold or offered for sale any Subject Product, including but not limited to Whole Foods, Target Corporation, Costco Wholesale Corporation, Wal-Mart Stores, Inc., the Kroger Company, and Safeway, Inc., other distributors or retailers, or any entity that contributed to any labeling, sale, distribution, supply, advertising, marketing, or packaging of any Product, including all of their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present and future officers, directors, employees, shareholders, partners, principals, agents, servants,

successors, attorneys, insurers, representatives, licensees, licensors, customers, subrogees, and assigns.  It is expressly understood that, to the extent a Released Party is not a Party to this Agreement, all such Released Parties are intended third-party beneficiaries of this Agreement.

**"Releasing Parties"** means Plaintiffs, Plaintiffs' Counsel, and all Class Members, and any person claiming by or through each Class Member, including but not limited to spouses, children, wards, heirs, devisees, legatees, invitees, employees, associates, co-owners, attorneys, agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or affiliates.

Upon the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Final Order and Final Judgment shall have, fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties.  In connection with the Released Claims, each Releasing Party shall be deemed as of the Effective Date to have expressly, knowingly, and voluntarily waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule, and legal doctrine similar, comparable, or equivalent to Section 1542, which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

In connection with such waiver and relinquishment, the Releasing Parties hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, whether known or unknown, suspected or unsuspected, that they have against the Released Parties.  In furtherance of such intention, the release herein given by the Releasing Parties shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different claims or facts.  Each of the Releasing Parties expressly acknowledges that he/she/it has been advised by its attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section.  Plaintiffs and Class Members are not releasing any claims for personal injuries.  Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this release is a part.

The Agreement is available at **www.millennium-settlement.com** and describes the claims that you give up if you remain in the settlement in further detail.

| 12.  When will I get my payment, if any? |
| --- |

The Court will hold a Fairness Hearing on **[DATE]** during which it will decide whether it will finally approve all terms of the settlement.  If the Court approves the settlement, there may be appeals or other challenges.  Payment is contingent upon the Court's final approval of the proposed settlement.  After the Court enters an order and judgment finally approving the settlement and all objections and appeals (if any) are resolved, the checks and product vouchers will be mailed within forty-five (45) calendar days.

Defendants have the right to challenge the requested amounts of attorneys' fees and expenses.

**QUESTIONS? VISIT www.millennium-settlement.com OR CALL [NUMBER] TOLL FREE**
*Para una notificación en Español, por favor llame o visite nuestro website.*

The progress of the approval process and expected dates of payment will be updated periodically on **www.millennium-settlement.com** and can also be obtained by calling **[NUMBER]** toll free.

If there are appeals, resolving them can take time (potentially more than a year).  Please be patient.

## HOW TO RECEIVE A PAYMENT

| 13.  How can I get a payment? |
| --- |

To get a payment under the settlement, you must mail in a Claim Form <u>or</u> submit a Claim Form electronically at **www.millennium-settlement.com**.  A Claim Form and directions are attached as **Appendix A** to this notice.  You may also obtain and print a Claim Form and other relevant documents by visiting **www.millennium-settlement.com**.

Please read the instructions carefully, and fill out the form completely and accurately.

Claim Forms can be submitted two ways: electronically or by mail.  Your Claim Form must be submitted electronically at **www.millennium-settlement.com** no later than **[DATE]** or by mail postmarked no later than **[DATE]** and mailed to: **[ADDRESS].**

| 14.  What is the claim process? |
| --- |

The Settlement Administrator will review each Claim Form.

Claim Forms that do not meet the terms and conditions of the Agreement shall be rejected by the Settlement Administrator.  The Settlement Administrator shall have forty-five (45) days from the date the settlement is final (if there have been no appeals, or if any appeals have been withdrawn or rejected) to exercise the right of rejection.  The Settlement Administrator shall notify the Class Member using the contact information provided in the Claim Form of the rejection, including via electronic mail.

Plaintiffs' Counsel and Defense Counsel shall be provided with copies of all such notifications to Class Members.  If any claimant whose Claim Form has been rejected, in whole or in part, desires to contest such rejection, the claimant must, **within fifteen (15) business days from receipt of the rejection**, transmit to the Settlement Administrator by e-mail or U.S. mail a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting further review by the Settlement Administrator, in consultation with Plaintiffs' Counsel and Defense Counsel, of the denial of the claim.  If Plaintiffs' Counsel and Defense Counsel cannot agree on a resolution of claimant's notice contesting the rejection, the disputed claim shall be presented to the Court or a referee appointed by the Court for summary and non-appealable resolution.  No person shall have any claim against Defendants, Defense Counsel, Plaintiffs, Plaintiffs' Counsel, the Class, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Agreement.

If a Claim is not contested, you will receive payment for that Claim in accordance with the terms of the Agreement.  All usual and customary steps to prevent fraud and abuse in the Claim Process will be taken.  This includes denying claims in whole or in part to prevent fraud or abuse.  Plaintiffs' Counsel and Defense Counsel will be provided a report on the denial of any claim due to insufficient documentation and may recommend additional action, including payment.

The Court will hold a Fairness Hearing on **[DATE, TIME]** to decide whether or not to approve the proposed settlement.  The Court must finally approve the proposed settlement before any payments can be

made.  The Court will grant its approval only if it finds that the proposed settlement is fair, reasonable, and adequate.  In addition, the Court's order may be subject to appeals.  It is always uncertain whether these appeals can be resolved, and resolving them takes time, sometimes more than a year.

## 15.  What if I do nothing?

If you are a Class Member and you do nothing, you will <u>not</u> get any awards from the settlement and you will be bound by the Court's decisions and the settlement's release.  (*See* Question 12.)

To receive an award, you must submit a Claim Form on or before **[DATE]**.  (*See* Question 14.)

Unless you exclude yourself from the Class, if the settlement is approved, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants or the "Released Parties" about the claims in this lawsuit, **ever again,** regardless of whether you submit a Claim Form.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Defendants on your own about the legal issues in this case, then you must take steps to get out of the Class.  This is called excluding yourself—or it is sometimes referred to as "opting out" of the Class.

## 16.  How can I get out of the settlement?

To exclude yourself from the Class (or "opt out"), you must send by U.S. mail a letter or written request to the Settlement Administrator.  Your request must include all of the following:

1.  Your full name and current address;
2.  A clear statement that you wish to be excluded from the Class;
3.  The case name and case number: *Retta, et al. v. Millennium Products, Inc., et al.*, Case No. 2:15-CV-1801-PSG-AJW; and
4.  Your signature (you must personally sign the letter).

Please write **"REQUEST FOR EXCLUSION"** on the lower left-hand corner of the front of the envelope.

Your exclusion request must be postmarked no later than **[DATE]**.  Send your request to: **[ADDRESS].**

## 17.  If I exclude myself, can I still get a payment?

No.  You will not get a payment if you exclude yourself from the settlement.

If you request exclusion from the Class, then:

- You will <u>not</u> be eligible for payment under the proposed settlement;
- You will <u>not</u> be allowed to object to the terms of the proposed settlement, and
- You will <u>not</u> be bound by any subsequent rulings entered in this case if the proposed settlement is finally approved.

However, if your request for exclusion is late or not complete, you will still be a part of the Class, you will be bound by the settlement and by all other orders and judgments in this lawsuit, and you will not be able to

participate in any other lawsuits based on the claims in this case.

| **18.  If I don't exclude myself, can I sue DEFENDANTS for the same thing later?** |
|---|

No.  If the Court approves the proposed settlement and you do not exclude yourself from the Class, you give up (or "fully, finally and forever release, relinquish, and discharge") all Released Claims against the Released Parties, as set forth above in response to Question 12.

As part of this settlement, the Court has preliminarily stopped all Class Members and/or their representatives (who do not timely exclude themselves from the Class) from filing, participating in, or continuing litigation against Defendants (or against any of their related parties or affiliates), and/or from receiving any benefits from any other lawsuit relating to the claims being resolved in this case.

If you have a pending lawsuit, arbitration, or other proceeding against Millennium, Whole Foods, or another retailer selling the Subject Products, speak to your lawyer in that lawsuit or proceeding.  You must exclude yourself from the Class to continue litigating the claims this settlement resolves.  Remember, the exclusion deadline (or "Opt-Out Date") is **[DATE].**

Upon final approval of the settlement, Plaintiffs and Defendants will ask the Court to enter a permanent ruling forbidding all Class Members and/or their representatives and/or personnel from suing, or continuing to sue, Defendants regarding any of the Released Claims.  All Class Members will be bound by this order.

The representative Plaintiffs and their lawyers will not represent you as to any claims you choose to pursue against Defendants.

## THE LAWYERS REPRESENTING THE CLASS

| **19.  Do I have a lawyer in this case?** |
|---|

The Court has appointed attorneys at the law firm of Bursor & Fisher, P.A. to represent you and the other Class Members in this lawsuit.  The lawyers representing you and the Class Members are called "Plaintiffs' Counsel."  You will not be charged for the services of these lawyers.

You may contact Plaintiffs' Counsel as follows:

| L. Timothy Fisher |
|---|
| Yeremey Krivoshey |
| BURSOR & FISHER P.A. |
| 1990 North California Blvd., Suite 940 |
| Walnut Creek, California 94596 |
| ltfisher@bursor.com |
| ykrivoshey@bursor.com |
| Tel: 925-300-4455 |

You have the right to retain your own lawyer to represent you in this case, but you are not obligated to do so.  If you do hire your own lawyer, you will have to pay his or her fees and expenses.  You also have the right to represent yourself before the Court without a lawyer.

Plaintiffs' Counsel, Defense Counsel, or the Settlement Administrator may **not** advise you on the tax

consequences of participating or not participating in the settlement.

## 20. How will the lawyers be paid?

Plaintiffs' Counsel have worked on this case since 2015 and have not been paid anything to date for their work on this case.  Plaintiffs' Counsel will request attorneys' fees and reimbursement of costs and expenses, which will be paid using a portion of the $8,250,000.00 settlement fund, prior to the distribution of settlement benefits to Class Members who submit valid and timely Claim Forms.  Defendants will have the right to challenge the amount of attorneys' fees and expenses requested.

Plaintiffs' Counsel will also ask the Court for a special service payment (or "Incentive Awards") of up to $2,000.00 for Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire, for their work on behalf of the Class, and additional payments of $2,000.00 to Nina Pedro, Rosaline Lewis, and Sarah Samet, individuals who brought their own lawsuits about the claims at issue in this lawsuit.  Any special service payments also must be approved by the Court, and any awarded amounts also will be paid using a portion of the $8,250,000.00 settlement fund, prior to the distribution of settlement benefits to Class Members who submit valid and timely Claim Forms.

The Court has to approve any Attorneys' Fees and Expenses and Incentive Award requested by Plaintiffs' Counsel and Plaintiffs in this case.  Plaintiffs' Counsel's motions for these Attorneys' Fees and Expenses or Incentive Awards will be filed on or before **[DATE]** and posted at **www.millennium-settlement.com.**

## OBJECTING TO THE SETTLEMENT

You have the right to tell the Court that you do not agree with the Settlement or any or all of its terms.

## 21. How can I tell the Court if I do not like the Settlement?

If you are a Class Member but do not like the proposed settlement and think the Court should not approve it, you may object. Objecting is simply telling the Court that you don't like something about the settlement. The Court will consider your views.

**You can object only if you stay in the Class (i.e., if you do not "opt out" or exclude yourself).**  As a Class Member, you will be bound to the Agreement and Court orders regardless of your objection and regardless of whether you believe the terms of the settlement are favorable to the Class.  You will be bound even if you have another claim, lawsuit, arbitration or other proceeding pending against Millennium, Whole Foods, or other retailers selling the Subject Products.

To object, you must **file** a timely, written, compliant objection with the Court, through the Court's Case Management/Electronic Case Files ("CM/ECF") system) or through any other method in which the Court will accept filings, if any, send the written objection by fax, U.S. mail, or e-mail to the Settlement Administrator, and send by U.S. mail or e-mail a copy to Plaintiffs' Counsel and Defense Counsel postmarked no later than **[DATE]**.  Members of the Class who fail to file and serve timely and fully compliant written objections as described here and in the Agreement shall be deemed to have waived all objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the settlement.

Your written objection **must** include:

    (1)  your full name;

**QUESTIONS? VISIT** www.millennium-settlement.com **OR CALL [NUMBER] TOLL FREE**
*Para una notificación en Español, por favor llame o visite nuestro website.*

(2)  your current address;

(3)  a written statement of your objection(s) and the reasons for each objection;

(4)  a statement of whether you intend to appear at the Fairness Hearing;

(5)  your signature;

(6)  a statement, sworn to under penalty of perjury attesting to the fact that you purchased one or more of the Subject Products during the Class Period;

(7)  details of your purchase of the Subject Products, including the Subject Products purchased, and the date and location of purchase; and

(8)  the case name and case number: *Retta, et al. v. Millennium Products, Inc., et al.*, No. 2:15-CV-1801-PSG-AJW.

Objections that are mailed to the Court (and not filed pursuant to the Court's CM/ECF system, or any other method in which the Court will accept filings, if any), or objections that are served on the Parties but not filed with the Court, shall not be received or considered by the Court at the Fairness Hearing.  Objections that do not contain all of the information itemized above shall not be considered by the Court at the Fairness Hearing.

Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a Notice of Intention to Appear to Plaintiffs' Counsel identified and to Defense Counsel, and file said notice with the Court, no later than **[DATE]**, or as the Court may otherwise direct.

Objections and notices of intention to appear must be served:

> *Upon Settlement Administrator at:*
>
> Millennium Settlement
> Claims Administrator
> 1801 Market Street, Suite 660
> Philadelphia, PA 19103
>
> *Upon Plaintiffs' Counsel at:*
>
> L. Timothy Fisher
> Yeremey Krivoshey
> **BURSOR & FISHER, P.A.**
> 1990 North California Blvd., Suite 940
> Walnut Creek, California 94596
> ltfisher@bursor.com
> ykrivoshey@bursor.com
>
> *Upon Defense Counsel at:*
>
> Scott M. Voelz
> Daniel J. Faria
> **O'MELVENY & MYERS LLP**
> 400 South Hope Street
> Los Angeles, California 90071-2899
> svoelz@omm.com
> dfaria@omm.com

**QUESTIONS? VISIT www.millennium-settlement.com OR CALL [NUMBER] TOLL FREE**
*Para una notificación en Español, por favor llame o visite nuestro website.*

James M. Lee
David Crane
**LTL ATTORNEYS LLP**
601 South Figueroa Street, Suite 3900
Los Angeles, California 90017
james.lee@ltlattorneys.com
david.crane@ltlattorneys.com

If you file objections, but the Court approves the settlement as proposed, you can still complete a Claim Form to be eligible for payment under the settlement, subject to the terms and conditions discussed in this Notice and in the settlement agreement called the "Stipulation of Settlement."

| 22. What is the difference between objecting and asking to be excluded? |
|---|

Objecting is simply a way of telling the Court that you don't like something about the settlement.  You can only object if you stay in the Class. You will also be bound by any subsequent rulings in this case, and you will not be able to file or participate in any other lawsuit based upon or relating to the claims of this lawsuit. If you object to the settlement, you still remain a Class Member and you will still be eligible to submit a Claim Form.  Excluding yourself is telling the Court that you don't want to be a part of the Class.  If you exclude yourself, you have no basis to object to the settlement and appear at the Fairness Hearing because it no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a final hearing (called a Fairness Hearing) to decide whether to finally approve the settlement.  You may attend and ask to speak, but you don't have to.

| 23. When and where will the Court decide whether to approve the settlement? |
|---|

The Court will hold a hearing in this case on **[DATE]** at **[TIME]** in Courtroom 880 of the Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple Street Los Angeles, California 90012.

The hearing may be moved to a different date or time without additional notice, so it is a good idea to check **www.millennium-settlement.com** for updates.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  The Court will also decide whether to award Attorneys' Fees and Expenses and Plaintiffs' Incentive Award.

If there are objections, the Court will consider them at that time.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.

| 24. Do I have to come to the hearing? |
|---|

No.  Plaintiffs' Counsel will answer questions the Court may have at the Fairness Hearing.  But you are welcome to come at your own expense.  Please note that the Court has the right to change the date and/or time of the Fairness Hearing without further notice, so it is a good idea to check the settlement website **www.millennium-settlement.com** for updates.  If you are planning to attend the hearing, you should confirm the date and time on this website before going to the Court.

| **25.  May I speak at the fairness hearing?** |
|---|

Yes, you may ask the Court for permission to speak at the hearing.  To do so, you must **file** a document called a "Notice of Intention to Appear" through the Court's Case Management/Electronic Case Files ("CM/ECF") system) or through any other method in which the Court will accept filings, if any.

If you or your attorney wants to appear and speak at the Fairness Hearing, you (or your attorney) must also mail a Notice of Intention to Appear at the Fairness Hearing to the addresses listed above in Question 21.

Your Notice of Intention to Appear at the Fairness Hearing must be filed and received by the Court, and mailed and/or e-mailed to the Settlement Administrator, Defense Counsel, and Plaintiffs' Counsel no later than **[DATE].**

## GETTING ADDITIONAL INFORMATION

| **26.  How can I get more information?** |
|---|

This notice summarizes the proposed settlement.  More details are in the settlement agreement which is called the "Stipulation of Class Action Settlement" or "Agreement."  For a complete, definitive statement of the settlement terms, refer to the Agreement at **www.millennium-settlement.com**.  You also may write with questions to the Settlement Administrator at **[ADDRESS]** or call **[NUMBER]** toll free.

**PLEASE DO NOT CALL THE COURT**

**QUESTIONS? VISIT www.millennium-settlement.com OR CALL [NUMBER] TOLL FREE**
*Para una notificación en Español, por favor llame o visite nuestro website.*

**EXHIBIT F**

## <u>LEGAL NOTICE</u>

**IF YOU BOUGHT GT'S KOMBUCHA PRODUCTS BETWEEN MARCH 11, 2011 AND [NOTICE DATE], YOU COULD RECEIVE A CASH PAYMENT OR PRODUCT VOUCHER FROM A CLASS ACTION SETTLEMENT.**

*Para una notificación en Español, por favor llame o visite nuestro website.*

A settlement has been proposed in a class action lawsuit alleging that Millennium Products mislabeled the antioxidant, alcohol, and sugar content or caused product loss owing to the secondary fermentation of GT's Kombucha Products.  The settlement will provide up to $8.25 million to pay claims of customers who bought GT's Kombucha Products at retail between March 11, 2011 and [notice date].

The United States District Court for the Central District of California authorized this notice.  Before any money is paid, the Court will have a hearing to decide whether to approve the settlement.

### WHO IS INCLUDED IN THE PROPOSED SETTLEMENT?

All persons in the United States and United States Territories who purchased at retail, between March 11, 2011 and [notice date] (the "Class Period"), products within GT's Classic Kombucha, GT's Classic Synergy, GT's Enlightened Kombucha, and GT's Enlightened Synergy lines of kombucha products.

A full list of the "Subject Products" at issue in the settlement is available at the website **www.millennium-settlement.com** or by calling **[NUMBER].**

### WHAT IS THIS CASE ABOUT?

The lawsuit claims that Millennium mislabeled the Subject Products by or caused product loss by:

(i) using the term "antioxidant" on the labels of the Subject Products despite the fact that the Subject Products allegedly do not contain antioxidants.

(ii) labeling and advertising GT's Enlightened Kombucha and Enlightened Synergy products as non-alcoholic when the fermentation of the products allegedly causes the products to contain more than the amount of alcohol permitted for non-alcoholic beverages.

(iii) understating the sugar content of the Subject Products on the labels of the Subject Products or failing to include added sugar as a listed ingredient despite the fact that the Subject Products allegedly contain sugar as an added ingredient.

The lawsuit also alleges that Whole Foods Market, Inc. violated the law by reselling kombucha products allegedly mislabeled.  Defendants deny that they did anything wrong or unlawful, and assert that the product labels at issue were truthful, not misleading, and consistent with the law.

### WHAT DOES THE PROPOSED SETTLEMENT PROVIDE?

The settlement provides up to a maximum fund of $8.25 million to resolve the lawsuit.  This fund will pay (i) money or product vouchers to Class Members who submit valid Claim Forms on or before **[DATE]**, (ii) Settlement Administration Expenses, (iii) an Incentive Award to the Class Representatives and Related Plaintiffs, and (iv) Attorneys' Fees and Expenses.

Class Members who submit valid Claim Forms, on or before **[DATE]** may be entitled to receive a **$3.50** cash payment for each Subject Product purchased within the Class Period, **up to a total of $35.00**, **without providing Proof of Purchase**. Class Members may receive **up to $60.00** based on the retail value of the Subject Products if they submit **Proofs of Purchase** for <u>each</u> Subject Product(s) purchased within the Class Period.

In the alternative, Class Members who submit valid Claim Forms, on or before **[DATE]**, may be entitled to receive a product voucher redeemable for a free Millennium product for each Subject Product within the Class Period, up to a total of **$35.00 worth of product vouchers, without providing Proof of Purchase**.  For claims administration purposes, each voucher will be assigned a cash value of $3.50, although the actual value of the voucher will depend

on the price of Millennium products at your preferred retailer.

Class Members who claim more than $35.00 in vouchers must submit Proofs of Purchase establishing purchase(s) during the Class Period for **each** Subject Product claimed in excess of $35.00 and may receive **up to $60.00** in product vouchers based on the retail value of the Subject Products **shown in the Proofs of Purchase**.

Millennium has also agreed (i) not to use the phrase "antioxidant" on the labels of the Subject Products; (ii) to include alcohol warnings on the labels of Subject Products within its Enlightened product lines; (iii) to regularly test the alcohol and sugar content of the Subject Products and make label adjustments as necessary; (iv) to update its alcohol testing methodology if a new industry-wide standard for testing alcohol in kombucha develops; and (v) to include warnings on the labels of the Subject Products that the products may leak or gush if not properly refrigerated.

For details about the proposed settlement, including Claim Forms and the settlement agreement, visit **www.millennium-settlement.com**.

## WHO REPRESENTS YOU?

The Court appointed the law firm Bursor & Fisher, P.A. to represent you as class counsel.

## WHAT ARE YOUR OPTIONS?

If you are a Class Member, you may (1) do nothing; (2) exclude yourself; (3) send in a Claim Form; (4) object to the settlement; and/or (5) go to a hearing about the fairness of the settlement.

**If you do not want to be legally bound by the settlement, you must exclude yourself by letter postmarked by [DATE].**

If you exclude yourself, you cannot receive a cash payment or product voucher from this settlement, but you can sue, or continue to sue, Millennium, Whole Foods, or other stores selling GT's kombucha products regarding the claims in this case.

If you do not exclude yourself from the Class, you may submit a Claim Form and/or object to the settlement by **[DATE]**.

The detailed or "Long Form" notice, available at **www.millennium-settlement.com**, explains how to exclude yourself or object. You may also call **[NUMBER]** for details.

The Court will hold a hearing in this case on **[DATE]** at **[TIME]** in Courtroom 880 of the Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, California 90012. At this hearing, the Court will consider whether to approve the settlement and whether to approve class counsel's application for attorneys' fees, expenses, and incentive awards. Defendants will have the right to challenge the amounts of attorneys' fees and expenses requested.

The motion(s) by class counsel for those fees and expenses and the incentive awards will be available on the Settlement Website after they are filed and before the hearing.

You may appear at the hearing, but you do not have to. You do not need to retain an attorney to appear at the hearing, but you have the right to do so.

## HOW CAN YOU GET MORE INFORMATION?

To receive more information about the settlement, you can get a detailed notice and other information, including details on how to object and/or exclude yourself from the settlement, by visiting **www.millennium-settlement.com**, calling **[NUMBER]**, and writing to **[ADDRESS]**.

Do not contact the Court, Millennium Products, or Whole Foods concerning this notice or the lawsuit.

**EXHIBIT G**

**WHEREAS**,  Bursor & Fisher, P.A. ("Plaintiffs' Counsel") along with its principals L. Timothy Fisher, Esq. and Scott A. Bursor, Esq. (collectively "Bursor and Fisher") desire to give an undertaking for repayment of their award of attorney fees and costs ("Undertaking"), as is required by the Settlement Agreement entered into by the Parties to *Retta et al. v. Millennium Products, Inc., et al.*, Case. No. 15-cv-1801-PSG-AJW (C.D. Cal. 2015);

**NOW, THEREFORE**, each of the undersigned Bursor and Fisher, on behalf of themselves as individuals and as agents for their law firm, Bursor & Fisher, P.A., by making this Undertaking, hereby submit themselves and their law firm to the jurisdiction of the Superior Court of California, for the County of Los Angeles, for the purpose of enforcing the provisions of this Undertaking.  Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.  The obligations of Bursor and Fisher and their law firm created herein are joint and several.

Plaintiffs' Counsel and Bursor and Fisher understand and agree that any amounts received by Plaintiffs' Counsel are subject to repayment to Millennium in the event that the Settlement Agreement is terminated pursuant to its terms and/or in the event that the Final Approval Order is reversed or modified on appeal, in whole or in part.  Plaintiffs' Counsel shall, within twenty (20) days after receiving written notice of termination of the Settlement Agreement from any counsel or Parties, and/or within twenty (20) days after the order reversing or modifying the Final Approval Order, in whole or in part, becomes final, repay the Millennium the full amount of the attorneys' fees and costs paid by the Millennium to Plaintiffs' Counsel.

In the event the Final Approval Order is not reversed on appeal but the attorneys' fees and costs awarded by the Court are vacated or reduced on appeal, Plaintiffs' Counsel shall, within twenty (20) days after the order vacating or modifying the award of attorney fees and costs becomes final, repay to the Millennium the amount of the vacated or reduced attorneys' fees and costs that the Millennium paid to Plaintiffs' Counsel.

In the event Plaintiffs' Counsel fail to repay the Millennium any of the attorneys' fees

1

and costs and/or stipends that are owed to it pursuant to this Stipulated Undertaking, the Court shall, upon application of Millennium or the Millennium and notice to Plaintiffs' Counsel  and Bursor and Fisher, summarily issue orders, including but not limited to judgments and attachment orders against Plaintiffs' Counsel and against each of Bursor and Fisher, and may make appropriate findings for sanctions for contempt of court.  Plaintiffs' Counsel and Bursor and Fisher further agree to indemnify, defend, and hold harmless Millennium and its attorneys from any and all claims and disputes of any kind relating to Millennium's payment of attorneys' fees and cost to Plaintiffs' Counsel and/or to other attorneys for the Plaintiffs pursuant to the Settlement Agreement.

The undersigned stipulate, warrant and represent that they have both actual and apparent authority to enter into this stipulation, agreement, and Undertaking on behalf of their law firm and themselves as individuals.  This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Signatures by facsimile shall be as effective as original signatures.  The undersigned declare under penalty of perjury under the laws of the State of California that they have read and understood the foregoing and that it is true and correct.

SCOTT A. BURSOR
BURSOR & FISHER, P.A.

DATED: October 10, 2016

Scott A. Bursor
on behalf of himself and Bursor & Fisher, P.A.

L. TIMOTHY FISHER
BURSOR & FISHER, P.A.

DATED: October 10, 2016

L. Timothy Fisher
on behalf of himself and Bursor & Fisher, P.A.

2

**EXHIBIT 2**

**BURSOR & FISHER**

P.A.

www.bursor.com

888 SEVENTH AVENUE                    1990 NORTH CALIFORNIA BLVD.
NEW YORK, NY 10019                    WALNUT CREEK, CA 94596

## FIRM RESUME

With offices in New York and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won five of five civil jury trials since 2008. Our most recent trial victory came in August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel and won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Verizon Wireless, AT&T Wireless, Cingular Wireless, Sprint, T-Mobile, General Electric, Haier America, and Michaels Stores as well as purchasers of Avacor™, Xenadrine™, and Sensa™ products. Since 2014, our lawyers have certified five consumer classes pursuant to contested class certification motions (*see Ebin*, *Forcellati*, *In re EZ Seed Litig.*, *Dei Rossi*, and *Melgar infra*). Since December 2010, Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

    i.    *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

    ii.    *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

    iii.    *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

    iv.    *Loreto v. Coast Cutlery Co.* (D.N.J. Sep. 8, 2011) to represent a certified nationwide class of purchasers of knives or tools made by Coast Cutlery,

    v.    *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

BURSOR&FISHER
P.A.

vi. *Avram v. Samsung Electronics America, Inc., et al.* (D.N.J. Jan. 3, 2012), to represent a proposed nationwide class of purchasers of mislabeled refrigerators from Samsung Electronics America, Inc. and Lowe's Companies, Inc.,

vii. *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012), to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

viii. *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012), to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

ix. *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012), to represent a certified nationwide class of purchasers of Sensa weight loss products,

x. *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers of Sinus Buster products,

xi. *Scott v. JPMorgan Chase & Co., et al.* (S.D.N.Y. May 30, 2013) to represent a proposed nationwide class of Chase customers who were allegedly unilaterally enrolled into Chase's Overdraft Protection service and charged unauthorized fees,

xii. *Podobedov v. Living Essentials, LLC* (C.D. Cal. Nov. 8, 2013) to represent a proposed nationwide class of purchasers of 5-hour Energy products,

xiii. *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

xiv. *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

xv. *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

xvi. *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015), to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

xvii. *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015), to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

xviii. *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

xix. *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015), to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards, and

xx. *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products.

BURSOR&FISHER
P.A.

### SCOTT A. BURSOR

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in five of five civil jury trials since 2008.  Mr. Bursor's most recent victory came in August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which he served as lead trial counsel and won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor.  The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict.  Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury.  Mr. Bursor's perfect record of five wins in five class action jury trials, with recoveries ranging from $21 million to $299 million, is unmatched by any other lawyer.  Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996.  He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif.  Prior to starting his own practice, Mr. Bursor was a litigation associate with Cravath, Swaine & Moore (1996-2000) and Chadbourne & Parke LLP (2001), where he represented large telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second Circuit, United States Court of Appeals for the Third Circuit, United States Court of Appeals for the Fourth Circuit, United States Court of Appeals for the Sixth Circuit, United States Court of Appeals for the Ninth Circuit, United States Court of Appeals for the Eleventh Circuit, United States District Courts for the Southern and Eastern Districts of New York, United States District Courts for the Northern, Central, Southern and Eastern Districts of California, and the United States District Courts for the Southern and Middle Districts of Florida.

### *Representative Cases*

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified.  Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans.  Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified).  These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications.  These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation. Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class. Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert. This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members, and ensured that the class would recover in excess of $275 million.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.* Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system. In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case. Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006. This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*. After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement. The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, provides for a $20 million cash payment to provide

refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and includes an injunction that will reduce late fee charges by $18.6 million over 28 months.

## L. TIMOTHY FISHER

Mr. Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.  Prior to founding Bursor & Fisher, P.A. in 2011, Mr. Fisher was an associate with Bramson, Plutzik, Mahler & Birkhaeuser, LLP in Walnut Creek, California for 13 years.  During his career, he has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors.  Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud.  With his partner Scott A. Bursor, Mr. Fisher has tried four class action jury trials, all of which produced successful results.  In the initial phase of *Thomas v. Global Vision Products*, the jury awarded the plaintiff class more than $36 million plus punitive damages, while the Court awarded a $40 million recovery on separate legal claims. In a subsequent phase of the trial against individual defendants, Mr. Fisher and Mr. Bursor obtained a jury award of $50,024,611 – the largest class action award in California in 2009 and the second-largest jury award of any kind.

Mr. Fisher was admitted to the State Bar of California in 1997.  He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern and Eastern Districts of California.  Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004.  Recently, Mr. Fisher contributed jury instructions, a verdict form, and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010).  In 2014, Mr. Fisher was appointed to a four-year term as a member of the Standing Committee on Professional Conduct for the United States District Court for the Northern District of California.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997.  While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States.  In 1994, Mr. Fisher received an award for Best Oral Argument in the first year moot court competition.  In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science.  Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council."  He is also a member of Phi Beta Kappa.

### *Representative Cases*

- *Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor.  The case lasted more than seven years and involved two trials.  The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000.  The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

- *In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court). Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems. Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions. The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

- *In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission). In separate cases that are a part of the same coordinated litigation as the Handset Locking Cases, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million. In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

- *Guyette v. Viacom, Inc.* (Alameda County Superior Court) - Mr. Fisher was co-counsel for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers. A settlement was negotiated shortly before trial under which defendants paid the class $13 million in cash.

- *In re Haier Freezer Consumer Litigation* (Northern District of California) - Mr. Fisher filed the case in June 2011 and alleged that Haier had misrepresented the energy consumption of its HNCM070E freezer on the ENERGYGUIDE labels attached to the freezers. After two years of litigation, District Judge Edward J. Davila approved a nationwide settlement valued at $4 million, which provides for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

### *Selected Published Decisions*

- *In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010)

- *In re Cellphone Termination Fee Cases*, 180 Cal.App.4th 1110 (2009)

- *Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007)

### JOSEPH I. MARCHESE

Mr. Marchese is a Partner with Bursor & Fisher, P.A. Mr. Marchese focuses his practice on complex business litigation, consumer class actions, and employment law disputes. Prior to joining Bursor & Fisher, Mr. Marchese was an associate with DLA Piper and Shearman & Sterling where he litigated complex commercial matters on behalf of investment banks, pharmaceutical companies, insurance carriers, food manufacturers, and tobacco companies.

BURSOR&FISHER
P.A.

Mr. Marchese is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York, as well as the United States Court of Appeals for the Second Circuit.

Mr. Marchese graduated from Boston University School of Law in 2002 where he was a Member of The Public Interest Law Journal.  In 1998, Mr. Marchese graduated with honors from Bucknell University where he earned a B.S.B.A.

### Representative Cases

- *Rossi v. The Procter & Gamble Co.* (District of New Jersey) – Mr. Marchese filed the first nationwide consumer class action lawsuit alleging Crest Sensitivity Treatment & Protection toothpaste ("CSTP") was not effective as advertised, and was essentially identical to an existing brand called Crest Pro-Health toothpaste, with only three differentiating features: (1) claims of rapid relief for tooth sensitivity on the product packaging; (2) a different coloring additive; and (3) a 75% price premium over Crest Pro-Health.  The plaintiff defeated defendant's motion to dismiss before negotiating a settlement with P&G.  District Judge Jose L. Linares granted final approval of the nationwide class settlement which provides class members with a monetary refund of at least $4.00 per tube of CSTP.

- *In Re Michaels Stores Pin Pad Litigation* (Northern District of Illinois) – Mr. Marchese filed the first nationwide consumer class action against Michaels Stores concerning a data breach that resulted in the unauthorized release of customers' financial data.  He actively litigated claims that Michaels failed to secure customer personal financial data appropriately, and failed to provide adequate notice to its customers whose information and funds were stolen as a result of the breach at 86 Michaels stores across the country.  After two years of litigation, District Judge Thomas M. Durkin approved a nationwide settlement that required Michaels to create a monetary fund from which class members could receive full reimbursement for monetary losses arising from the data breach.  Also, every settlement class member was entitled to credit monitoring services for early detection of identity theft and credit fraud.  As part of the settlement Michaels also verified that it had implemented strict new security measures to protect its customers from similar data breaches in the future.

- *Cox et al. v. Clarus Marketing Group, LLC et al.* (Southern District of California) – Mr. Marchese actively litigated claims for a nationwide class of online shoppers who made purchases on Provide-Commerce websites and who were deceptively enrolled in an online service, Freeshipping.com, for which they were charged unauthorized membership fees.  The plaintiffs alleged that they were secretly enrolled in a "Freeshipping" rewards program using the aggressive Internet marketing practice known as "data pass," where Provide-Commerce engaged in the unauthorized sharing and charging of customers' billing information with a third-party vendor.  After more than two years of litigation, District Judge Marilyn L. Huff approved a nationwide settlement valued at over $2.65 million, which included monetary reimbursement to settlement class members for their unauthorized membership charges.

- *Rodriguez v. Citimortgage, Inc.* (Southern District of New York) – Mr. Marchese filed a class action lawsuit on behalf of Sergeant Rodriguez and other active duty military servicemembers alleging the lender's foreclosure practices violated the Servicemembers Civil

Relief Act, a federal law that protects military servicemembers against foreclosures while they're serving on active duty.  After two years of litigation, Judge Paul G. Gardephe approved a nationwide $38 million settlement.  Under the settlement, each servicemember that suffered a foreclosure will recover $116,785, plus the amount of any lost equity in the foreclosed property, plus interest accrued on such lost equity calculated from the date of the foreclosure sale.

### *Selected Published Decisions*

- *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518 (N.D. Ill. 2011) (denying motion to dismiss in data breach consumer class action)

- *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) (certifying nationwide class of purchasers of purported "100% Pure Olive Oil" in false advertising consumer class action against edible oil distributor)

- *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (certifying New York and California classes in false advertising case against grass seed manufacturer)

- *Weisblum, et al. v. ProPhase Labs, Inc., et al.*, No. 14-cv-3587. --- F. Supp. 3d ---, 2015 WL 738112 (S.D.N.Y. Feb. 20, 2015) (denying motion to dismiss in false advertising consumer class action against manufacturer of homeopathic cold medicine)

### JOSHUA D. ARISOHN

Joshua D. Arisohn is a partner with Bursor & Fisher, P.A.  Mr. Arisohn focuses his practice on complex business litigation, consumer class actions, and terrorism-related matters. Prior to joining Bursor & Fisher, Mr. Arisohn was an associate at Dewey & LeBoeuf LLP and DLA Piper LLP where he litigated precedent-setting cases in the areas of mass torts, terrorism and commercial disputes.  He participated in the first ever trial to take place under the Anti-Terrorism Act, a statute that affords U.S. citizens the right to assert federal claims for injuries arising out of acts of international terrorism.

Mr. Arisohn is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York.

Mr. Arisohn received his Juris Doctor from Columbia University School of Law in 2006, where he was a Harlan Fiske Stone Scholar.  In 2002, Mr. Arisohn received his B.A. from Cornell University.

### SARAH N. WESTCOT

Sarah N. Westcot is an Associate with Bursor & Fisher, P.A.  Ms. Westcot focuses her practice on complex business litigation and consumer class actions.  Prior to joining Bursor & Fisher, Ms. Westcot litigated civil actions as an attorney with Bay Area Legal Aid in San Jose, CA.

BURSOR&FISHER
P.A.

Ms. Westcot served as trial counsel with Mr. Bursor in *Ayyad v. Sprint Spectrum L.P.*, and helped to win a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Ms. Westcot is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California.

Ms. Westcot received her Juris Doctor from the University of Notre Dame Law School in 2009.  During her third year of law school, Ms. Westcot worked as a law clerk with the local public defender's office representing juvenile clients in criminal hearings.  She graduated with honors from the University of Florida in 2005.

## NEAL J. DECKANT

Neal J. Deckant is an Associate with Bursor & Fisher, P.A.  Mr. Deckant focuses his practice on complex business litigation and consumer class actions.  Prior to joining Bursor & Fisher, Mr. Deckant counseled low-income homeowners facing foreclosure in East Boston.

Mr. Deckant is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York.

Mr. Deckant received his Juris Doctor from Boston University School of Law in 2011, graduating *cum laude* with two Dean's Awards.  During law school, Mr. Deckant served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms.  In 2007, Mr. Deckant graduated with Honors from Brown University with a B.A. in East Asian Studies and Philosophy.

## ANNICK M. PERSINGER

Annick M. Persinger is an Associate with Bursor & Fisher, P.A. Ms. Persinger focuses her practice on complex business litigation and consumer class actions. Prior to joining Bursor & Fisher, Ms. Persinger worked as a legal research attorney for Judge John E. Munter in Complex Litigation at the San Francisco Superior Court.

Ms. Persinger is admitted to the State Bar of California and the bars of the United States District Courts for the Northern District of California, Central District of California, Southern District of California, and Eastern District of California.

Ms. Persinger received her Juris Doctor from University of California, Hastings College of the Law in 2010, graduating *magna cum laude*.  During law school, Ms. Persinger served as a member of Hastings Women's Law Journal, and authored two published articles.  In 2008, Ms. Persinger received an award for Best Oral Argument in the first year moot court competition.  In 2007, Ms. Persinger graduated *cum laude* from University of California, San Diego with a B.A. in Sociology, and minors in Law & Society and Psychology.

BURSOR&FISHER
P.A.

## YITZCHAK KOPEL

Yitzchak Kopel is an Associate with Bursor & Fisher, P.A. Mr. Kopel focuses his practice on complex business litigation and consumer class actions.

Mr. Kopel is admitted to the State Bars of New York and New Jersey and is a member of the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, and District of New Jersey.

Mr. Kopel received his Juris Doctor from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Mr. Kopel served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Mr. Kopel graduated *cum laude* from Queens College with a B.A. in Accounting.

## YEREMEY O. KRIVOSHEY

Yeremey O. Krivoshey is an Associate with Bursor & Fisher, P.A. Mr. Krivoshey focuses his practice on complex business litigation and consumer class actions.

Mr. Krivoshey is admitted to the State Bar of California. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern and Eastern Districts of California.

Mr. Krivoshey received his Juris Doctor from New York University School of Law in 2013, where he was a Samuel A. Herzog Scholar. During law school, Mr. Krivoshey worked as a Law Clerk at Vladeck, Waldman, Elias & Engelhard, P.C. Mr. Krivoshey also interned at the United States Department of Justice and the American Civil Liberties Union. In 2010, Mr. Krivoshey graduated *cum laude* from Vanderbilt University.

## FREDERICK J. KLORCZYK III

Frederick J. Klorczyk III is an Associate with Bursor & Fisher, P.A. Mr. Klorczyk focuses his practice on complex business litigation and consumer class actions.

Mr. Klorczyk is admitted to the State Bars of New York and New Jersey and is a member of the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, and District of New Jersey, and the United States Court of Appeals for the Second Circuit.

Mr. Klorczyk received his Juris Doctor from Brooklyn Law School in 2013, graduating *magna cum laude* with two CALI Awards for the highest grade in his classes on criminal law and conflict of laws. During law school, Mr. Klorczyk served as an Associate Managing Editor for the Brooklyn Journal of Corporate, Financial and Commercial Law and as an intern to the Honorable Alison J. Nathan of the United States District Court for the Southern District of New York and the Honorable Janet Bond Arterton of the United States District Court for the District

of Connecticut.  In 2010, Mr. Klorczyk graduated from the University of Connecticut with a B.S. in Finance.

## PHILIP L. FRAIETTA

Philip L. Fraietta is an Associate with Bursor & Fisher, P.A.  Mr. Fraietta focuses his practice on complex business litigation, consumer class actions, and employment law disputes.

Mr. Fraietta is admitted to the State Bars of New York and New Jersey, the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, the District of New Jersey, and the United States Court of Appeals for the Second Circuit. Mr. Fraietta was a Summer Associate with Bursor & Fisher prior to joining the firm.

Mr. Fraietta received his Juris Doctor from Fordham University School of Law in 2014, graduating *cum laude*.  During law school, Mr. Fraietta served as an Articles & Notes Editor for the Fordham Law Review, and published two articles. In addition, Mr. Fraietta received the Addison M. Metcalf Labor Law Prize for the highest grade in his graduating class in the Labor Law course, and received the highest grade in his Anti-Discrimination Law & Policy course.  In 2011, Mr. Fraietta graduated *cum laude* from Fordham University with a B.A. in Economics.