UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN RETTA *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MILLENNIUM PRODUCTS, Inc., *et al.*<br><br>Defendants | Case No. 2:15-CV-01801-PSG-AJW<br><br>**DECLARATION OF STEVEN WEISBROT, ESQ. ON ADEQUACY OF NOTICE PLAN**<br><br>Judge: Hon. Philip S. Gutierrez |

# DECLARATION OF STEVEN WEISBROT, ESQ.

STEVEN WEISBROT, ESQ., of full age, hereby declares under penalty of perjury as follows:

1. I am Executive Vice President of Notice & Strategy at the class action notice and Settlement Administration firm, Angeion Group, LLC ("Angeion"). I am fully familiar with the facts contained herein based upon my personal knowledge.

2. I have been responsible in whole or in part for the design and implementation of more than one hundred class action administration plans and have taught numerous Accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Class Action Notice Programs, as well as Class Action Claims Administration, generally. Additionally, I am the author of frequent articles on Class Action Notice, Digital Media, Class Action Claims Administration and Notice Design in publications such as *Bloomberg, BNA Class Action Litigation Report*, Law360, the ABA Class Action and Derivative Section Newsletter and private law firm publications.

3. Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants ("KCC"), a nationally recognized class action notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice and I am currently an attorney in good standing in the State of New Jersey and the Commonwealth of Pennsylvania.

4. My work comprises a wide range of class actions that includes product defect, false advertising, employment, antitrust, tobacco, banking, insurance, and bankruptcy cases. Likewise, I have been instrumental in infusing digital and social media, as well as big data and advanced targeting into class action notice programs. For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in *In Re: Pool Products Distribution Market Antitrust Litigation MDL No. 2328*:

> To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web-based forms of communication in the plan….The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and

1     due process.

2     The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement. Moreover, the plan to combine notice for the Zodiac and Hayward settlements should streamline the process and avoid confusion that might otherwise be caused by a proliferation of notices for different settlements. Therefore, the Court approves the proposed notice forms and the plan of notice.

*In re: Pool Prods. Distrib. Market Antitrust Litig.*, MDL No. 2328 (E.D. La. Dec. 31, 2014) (ECF No. 551, at 43-44).

    5.    As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

    (a)    For example, on May 11, 2016 in his Order granting preliminary approval of the settlement in *In Re Whirlpool Corp. Front Loading Washer Products Liability Litigation* (MDL No. 2001), the Honorable Christopher A. Boyko stated:

    The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

*In re: Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 1:08-wp-65000, MDL No. 2001 (N.D. Ohio May 11, 2016) (ECF NO. 551, at 10).

    (b)  In *Sateriale, et al. v R.J. Reynolds Tobacco Co.,* Case No. CV 09 08394 CAS (C.D. Cal.), the Honorable Christina A. Snyder stated:

    The Court finds that the Notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order . . . has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.

*Sateriale, et al. v R.J. Reynolds Tobacco Co.,* Case No. CV 09 08394 CAS (C.D. Cal. May 3,

2016) (ECF NO. 233, ¶ 5).

(c) In *Barron et al. v. Snyder's-Lance, Inc.*, Case No. 0:13-cv-62496 (S.D. Fla.), the Honorable Joan A. Lenard stated:

> The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.

*Barron v. Snyder's-Lance, Inc.*, Case No. 0:13-cv-62496 (S.D. Fla. Feb. 12, 2016) (ECF No. 202, ¶ 7).

6.  By way of background, Angeion Group is a class action notice and claims administration company formed by an experienced team of executives with more than 60 combined years of experience implementing claims administration and notice solutions for class action settlements and judgments. With executives that have had extensive tenures at five other nationally recognized claims administration companies, collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $10 billion to class members.

7.  This declaration will describe the notice program that Angeion suggests using in this matter, including the considerations that informed the development of the plan and why it will meet the expressed requirements of Rule 23 and provide Due Process of Law to the class members.

## CAFA NOTICE

8.  Angeion will effectuate notice of this proposed class action settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act ("CAFA") of 2005, 28 U.S.C. § 1715.

## SUMMARY OF NOTICE PROGRAM

9.  The notice program is the best notice that is practicable under the circumstances,

combining state-of-the-art internet banner ad notice, social media notice and traditional print publication notice. Additionally, notice of the Settlement will be made available to users of Millennium's website, Facebook, Instagram, and Twitter pages. The notice program also includes an informational website and toll-free telephone line, both of which will further apprise potential settlement Class Members of their rights and options in the settlement.

10. The media notice program was designed to deliver an approximate 85% reach with an average frequency of 6.0 times each. The media notice program will serve approximately 10,400,000 display impressions, via the use of highly targeted internet banner ads. The social media portion of the plan will serve approximately 2,500,000 social impressions. Further, to satisfy the notice requirements of the California Consumers Legal Remedies Act ("CLRA"), the notice program will incorporate four 1/4 page ads in the California regional edition of *USA Today*, to run on four consecutive weeks. According to the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* ("The Checklist"): *"*The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." The checklist further cautions Judges to confirm that the reach calculations are based on accepted methodology.

## CLASS DEFINITION

11. The "Class" includes all persons in the United States and United States Territories who purchased at retail one or more of the "Subject Products" during the Class Period. Specifically excluded from the Class are: (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of re-sale; and (d) all persons who have filed a timely Request for Exclusion from the Class. "Subject Products" means all products sold by Defendants during the Class Period under Millennium's Enlightened Kombucha, Enlightened Synergy, Classic Kombucha, and Classic Synergy product lines.

## MEDIA NOTICE TARGET AUDIENCE

12. In order to develop the media plan for the notice program, the Class was profiled using GfK MRI 2015 Doublebase data[1]. GFK MRI data is used by advertising agencies and other communications professionals in order to understand the socio-economic characteristics, interests and practices of a target group and aids in the proper selection of media to reach that target. It is also instrumental in allowing the court to review the estimated net reach and average frequency of a particular program and is precisely the type of accepted methodology that the Checklist cautions should be used in class action notice programs. As "Kombucha Tea" is not measured specifically in this syndicated data source, a broad, MRI was used to profile an over inclusive target group definition, which allows Angeion to target an audience most similar to the class definition. The following target definition was used to ensure that the notice program reaches a consumer group most likely to include potential Class Members:

- Regular Tea Brands Total Users Last 6 Months (Principal Shopper) [Other]; and
- Organic Foods Used in the Last 6 months (Principal Shopper) [Tea]

In essence, this over-inclusive definition will allow us to serve notice to consumers who purchase product categories contained in the class definition, who have an affinity towards tea and organic foods —not just consumers who purchase the "Subject Products," specifically. Additionally, using this over inclusive target audience based on GFK MRI data, will allow the court to find that the reach calculations are based on accepted methodology and satisfy Due Process.

13. Understanding the socio-economic characteristics, interests and practices of a target group further aids in the proper selection of media to reach that target. Here, the target audience has the following characteristics:

- Adults ages 25-54 with a median age of 44
- A large percentage (59.4%) are married

---

[1] GfK MRI is a leading supplier of publication readership and product usage data for the communications industry. GfK MRI offers complete demographic, lifestyle, product usage and exposure to all forms of advertising media. As the leading U.S. source of multimedia audience research, GfK MRI provides information to magazines, television and radio networks and stations, internet sites, other media, leading national advertisers, and over 450 (cont.) advertising agencies – including 90 of the top 100 in the U.S. MRI's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S.

- 43.7% have a child/children under the age of 17 living in the household
- Higher educated as 58.6% have a college degree
- 58.7% live in households with total income above $75K
- 69.1% are employed, with most working full time (54.3%)

14. In order to identify the best vehicles to deliver messaging to the target audience, Angeion also reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population. Here, the data indicates that our target audience spends an above average 18 hours per week on the internet and reads about 8 newspaper issues a month. The data also indicated that this audience watched less TV and listened to less radio than the national average.

15. In light of this data, Angeion recommends using a combination of advanced digital tactics and social media to reach our audience, which will be the most cost effective means to generate the reach required to notify potential Class Members of their rights and options in this litigation. The digital media notice plan will be augmented with publication in the California regional edition of *USA Today*, which in addition to satisfying the notice requirements of the CLRA, will further serve to apprise potential Class Members of their rights and options in this litigation.

## **INTERNET BANNER NOTICE**

16. The notice program also utilizes a programmatic approach to purchasing internet media advertisements, which will enable the Notice Plan to target potential Class Members with tailored communications. Purchasing display and mobile inventory programmatically provides the highest reach for internet publication, allows for multiple targeting layers, and causes banner advertisements to be systematically shown to persons most likely to be Class Members.

17. The internet campaign will implement multiple targeting layers to ensure that notice is delivered to the persons most likely to be members of the class, inclusive of search targeting, demographic targeting, category contextual targeting, keyword contextual targeting, site retargeting, and purchase data targeting. This enables Angeion to utilize, for example, search terms that an individual has entered into web browsers (like Google), to deliver banner ads to individuals

most likely to be Class Members. Search terms, relevant to tea drinks and organic products, will be incorporated into the campaign parameters to drive relevant traffic. The digital media plan will also focus on Synergy Products, GT Kombucha branding, and competitor products, targeting users who are currently browsing or have recently browsed content in categories such as Organic Lifestyle, Health Foods, and Food/Drinks, which will also help qualify impressions to ensure messaging is served to the most relevant audience. A focus will be placed on purchase data targeting GT Kombucha and organic drinks specifically. The purpose of such targeting is to ensure that likely Class Members are exposed to the notice documents while simultaneously minimizing the chance that notice is misdirected to individuals who are unlikely to be members of the class.

18. The internet banner notice portion of the notice program will be implemented using an 8-week desktop and mobile campaign and utilizing standard IAB sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50). A 6x frequency cap will be imposed to maximize reach. The banner notice is designed to result in serving approximately 10,400,000 display impressions and 2,500,000 social impressions.

## PUBLICATION NOTICE

19. In order to satisfy the notice requirements of the CLRA, the notice program will utilize four 1/4 page ads in the California regional edition of *USA Today*. These ads will feature the Summary Notice and will run for four consecutive weeks.

## RESPONSE MECHANISMS

20. The notice plan will implement the creation of a case website, where Class Members will have the ability to file a claim online, view general information about the Settlement, review relevant Court documents and view important dates and deadlines pertinent to the Settlement. The settlement website will also have a "Contact Us" page whereby Class Members can send an email with any additional questions to a dedicated email address.

21. A toll-free hotline devoted to this case will be implemented to further apprise Class Members of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked

questions and provide important information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## REACH AND FREQUENCY

22. The notice program is designed to deliver an 85% reach with an average frequency of 6.0 times each. The 85% reach does not include the print Publication, which is a standalone effort. Therefore, the overall reach of the integrated notice program, including publication of four ads in the California regional edition of *USA Today* will surpass the 85% reach percentage achieved via the internet banner notice program alone. Similarly, the informational website and toll-free hotline are not calculable in the reach percentage but will nonetheless aid in the informing the Class Members of their rights and options under the settlement. Additionally, a link to the settlement website will be included on Millennium's company website and Facebook, Twitter, and Instagram pages. This manner of notice is not calculable in the reach percentage, but will certainly increase the chances that Class Members are informed of the settlement. For example, Millennium's Facebook, Twitter, and Instagram pages have 95,641 likes, 11,800 followers, and 39,400 followers, respectively. Moreover, it is reasonable to assume that majority of those who like or follow Millennium's social media pages are likely to be Class Members.

## CONCLUSION

23. The notice program outlined above includes an integrated media notice effort that incorporates state of the art internet banner notice, social media notice and traditional print publication notice. The media portion of the notice program is designed to reach 85% of the class on average 6.0 times each. This effort is supplemented with traditional print publication notice in the California regional edition of *USA Today*. These efforts combine to provide the class the best notice practicable under the circumstances.

24. Courts systematically rely upon reach and frequency evidence in reviewing class action notice programs for adequacy. The reach percentage and the number of exposure opportunities here, meet or exceed the guidelines as set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

25. It is my opinion that the Notice Program is fully compliant with Rule 23 of the Federal Rules of Civil Procedure, provides Due Process of Law and is the best notice that is practicable under the circumstances, including giving individual notice to all members who can be identified through reasonable effort.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____
STEVEN WEISBROT

Dated: November 14, 2016