UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):    Order GRANTING Preliminary Approval of the Proposed
Settlement, Preliminary Certification of a Settlement Class,
Approval of the Notice Plan, and a Schedule for the Fairness
Hearing**

Before the Court is Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire's
motion for preliminary approval of a class action settlement.  Dkt. #103.  The Court held a
hearing on this matter on January 30, 2016.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering
the arguments made at the hearing as well as those raised in the papers, the Court GRANTS the
motion but ORDERS adjustments to the proposed class notice and the preparation of additional
memoranda.

I.    Background

On March 11, 2015, Plaintiffs Jonathan Retta, Kirsten Schofield, and Jessica Manire
("Plaintiffs") filed a class action lawsuit against Millennium Products, Inc. ("Millennium") and
Defendant Whole Foods Market, Inc. (collectively, "Defendants") for false or misleading
representations on Millennium's kombucha beverages ("Subject Products").  Dkt. #103 ("Mot.")
at 4.  Following a series of amendments to the pleadings, Plaintiffs filed a Fifth Amended
Complaint, which is the operative pleading in this case.  Dkt. #68 ("FAC").  Plaintiffs allege that
Millennium mislabeled the Subject Products by (1) using the term "antioxidant" when products
allegedly contain none; (2) labeling the products as "non-alcoholic" when they allegedly contain
alcohol in excess of the amount permitted for non-alcoholic beverages, and (3) allegedly
understating the amount of sugar in the products.  *See Mot*. 1; *FAC* ¶ 15(b).

Accordingly, the FAC asserts the following causes of action: (1) violation of California's
Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.; (2) violation of
California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (3) violation of
California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (4) violation of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | | Date | January 31, 2017 |
|---|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | | |

New York's Deceptive and Unfair Trade Practices Act, New York General Business Law § 349, et seq.; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) negligent misrepresentation; (8) fraud; and (9) unjust enrichment.  *FAC* ¶ 5.

After litigating the case for over a year, the parties engaged in settlement discussions, and participated in two mediation sessions with Jill R. Sperber, Esq. of Judicate West.  *Mot.* 4–5.  On August 11, 2016, after reaching an agreement in principle, the parties moved for an order from the Court to preliminarily approve the settlement agreement.  *See* Dkt. #77.  On September 21, 2016, the Court denied the motion, expressing concern over (1) the relationship between the amount of the settlement fund and the harm suffered by the Class Members; (2) the value of the proposed voucher option as compared to the cash option, and (3) the purported benefit of the proposed product giveaway to Class Members.  *See* Dkt. #95 ("September 21 Order").

Following the denial, the parties participated in a third mediation and reached a new settlement agreement addressing the Court's concerns.  Plaintiffs now renew their motion seeking an order from the Court to (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the Class, designate Plaintiffs as Class Representatives, and appoint Burson & Fisher, P.A. as Class Counsel; (3) appoint Angeion Group as the Settlement Administrator and establish notice procedures; (4) approve the proposed forms of notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (6) set a final approval hearing.  *See Mot.* 3.  For settlement purposes, Plaintiffs seek to represent a class of all persons in the United States and United States Territories who purchased one or more of Millennium's Subject Products "from March 11, 2011 up to and including the Notice Date" ("Class Period").  Dkt. #103, Ex.1, *Stipulation of Class Action Settlement* ("Settlement Agreement") ¶ II.7.[1]

II.      Class Certification for Settlement Purposes Only

Plaintiffs seek to certify a class for settlement purposes only defined in the Settlement Agreement as:

> "[A]ll persons in the United States and United States Territories who purchased at retail one or more of the Subject Products [from March 11, 2011 up to and including the Notice Date.]"

---

[1] On November 28, 2016, upon joint stipulation of the parties, the Court granted a request to consolidate this case with a related case, *Nina Pedro v. Millennium Products, Inc., et al.*, Case No. CV–16–3780–PSG–(AJWx) (C.D. Cal. 2016).  Dkt. #109.  The cases have been consolidated for purposes of preliminary and final approval of the Settlement Agreement proposed in this case.  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

*Settlement Agreement* ¶ II.7.

A.    Legal Standard

Parties seeking certification of a settlement-only class must still satisfy the familiar Federal Rule of Civil Procedure 23 standards.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–24 (9th Cir. 1998).  To proceed as a class action under Rule 23, a plaintiff must satisfy four prerequisites of Rule 23(a) and demonstrate that the action is maintainable under Rule 23(b)(1), (2), or (3).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997).  The four prerequisites of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Plaintiffs seek certification under Rule 23(b)(3), *Mot.* 21, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

B.    Discussion

i.    *Numerosity*

The first requirement for maintaining a class action under Rule 23(a) is that the class is "so numerous that joinder of all members would be impracticable."  Fed. R. Civ. P. 23(a)(1).  Courts generally presume numerosity when there are at least forty members in the proposed class.  *See Charlebois v. Angels Baseball, LP*, No. SACV 10-0853 DOC (ANx), 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011); *Alba v. Papa John's USA, Inc.*, No. CV 05-7487 GAF (CTx), 2007 WL 953849, at *5–6 (C.D. Cal. Feb. 7, 2007); *see also Jordan v. Cnty. of Los Angeles*, 669 F. 2d 1311, 1319 (9th Cir. 1982) (finding that a class of thirty-nine satisfied numerosity), *vacated on other grounds*, 459 U.S. 810 (1982).  In this case, Plaintiffs estimate that "the proposed Class is comprised of millions of consumers." *Mot.* 18.  Numerosity is therefore easily satisfied here.  *See Monterrubio v. Best Buy Stores, LP*, 291 F.R.D. 443, 449 (E.D. Cal. 2013) ("In this case, there are approximately 3,559 members in the proposed class. This number clearly meets the numerosity requirement, as joinder of over three thousand plaintiffs would be impossible.").

ii.    *Commonality*

To fulfill the commonality requirement, Plaintiffs must establish questions of law or fact common to the class as a whole.  *See* Fed. R. Civ. P. 23(a)(2).  In construing Rule 23(a)(2), the Ninth Circuit has noted that the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

remedies within the class." *Hanlon*, 150 F.3d at 1019. "[E]ven a single common question" may satisfy Rule 23(a)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (alterations and internal quotation marks omitted).

Here, the parties point to questions of law and fact that are common to the Class and allege that all members suffered a common injury. *Mot.* 18–19. Specifically, the parties point to all of the class members' claims arising from the common question of whether Defendants mislabeled their kombucha beverages by (1) using the term "antioxidant" when products allegedly contain none; (2) labeling the products as "non-alcoholic" when they allegedly contain alcohol in excess of the amount permitted for non-alcoholic beverages, and (3) allegedly understating the amount of sugar in the products. *See id*; *see also FAC* ¶ 15(b). Further, Plaintiffs' claims are brought under legal theories that are common to the class. *Mot.* 19.

The common claims and questions demonstrate to the Court the existence of common issues of fact and theories of law as to whether Defendants engaged in unlawful false advertising or unfair competition by mislabeling the Subject Products. Commonality is therefore satisfied.

### iii.    *Typicality*

Typicality requires a showing that the named Plaintiffs are members of the class they seek to represent and that their claims are "reasonably coextensive with those of absent class members," but not necessarily "substantially identical." *Hanlon*, 150 F. 3d at 1020. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The typicality and commonality requirements somewhat overlap, but whereas commonality examines the characteristics of the entire proposed class, typicality compares the named plaintiff to the remainder of the class. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

In this case, Plaintiffs' claims arise out of their purchase of Subject Products based on allegedly false or misleading labeling. *Mot.* 19; *FAC* ¶ 4. Thus, these claims are same or similar to those of other Class Members, who are also consumers of the Subject Products and harmed by the alleged misleading labeling. *Mot.* 20. Because Plaintiffs' claims and those of the proposed class all arise from the same alleged misleading labeling, typicality is satisfied.

### iv.    *Adequacy*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit has indicated that "[t]he proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

In this case, there is no apparent conflict of interest between Plaintiffs and the putative class members.  Plaintiffs and the class members share the same complaint that Defendants misstated the alcohol, antioxidant and sugar content on the Subject Products.  *Mot.* 20.  Plaintiffs are members of the class they seek to represent and seek a remedy for the same alleged wrongdoing under identical facts and legal theories.  The Court therefore does not discern a potential for a conflict of interest.

Furthermore, Plaintiffs are represented by a law firm with extensive experience in class actions suits.  Specifically, Plaintiffs' attorneys have represented millions of consumers in complex class actions, product liability, and consumer fraud cases.  Dkt. #103–3, *Declaration of L. Timothy Fisher* ("Fisher Decl.") ¶ 6, Ex.2.  As such, the Court is satisfied that Plaintiffs' Counsel has adequate experience to represent the class.  Moreover, Plaintiffs and their counsel have been effectively prosecuting this action since March of 2015, engaging in extensive investigation, negotiation and mediation in order to bring the case to proposed settlement.  There is no indication that they will cease these efforts throughout the settlement process.  Accordingly, the adequacy requirement is satisfied.

### v.      *Predominance and Superiority*

Finally, Plaintiffs seek certification under Rule 23(b)(3), which provides that a class may be certified where common questions of law or fact predominate over individual questions and a class action is the superior method for adjudicating the controversy as a whole.  *See* Fed. R. Civ. P. 23(b)(3).  The predominance aspect specifically "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.  The Court notes, however, that Rule 23(b0(3) is more flexible in some respects when applied to a motion for settlement-only class certification.  *See Amchen*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the propose is that there be no trial.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

Here, the Court finds that Rule 23(b)(3)'s requirements have been met.  First, the material issue in this case – whether Defendants misstated the alcohol, antioxidant and sugar contents on the labels of the Subject Products – is common to the entire class, and predominates over any individual issues which might exist.  Furthermore, the Court finds that a class action is the superior method for adjudicating this controversy.  Requiring thousands of class members to litigate their claims separately would be inefficient and costly, resulting in duplicative and potentially conflicting proceedings.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.3d 507, 512 (9th Cir. 1978) ("Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated.").  Accordingly, the Court finds that the class action is the superior method for adjudicating the controversy.  The requirements of Rule 23(b)(3) are therefore satisfied.

C.      Conclusion

In sum, Plaintiffs have met the requirements for class certification under Rule 23(a), in addition to Rule 23(b)(3)'s requirements that the case present questions of law and fact common to all members of the class that predominate over individual questions, and that class treatment is the superior method of adjudication.

III.     Preliminary Approval of the Proposed Settlement Agreement

A.      Legal Standard

The approval of a class action settlement is a two-step process under Rule 23(e).  *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352 MMM CGx, 2014 WL 10212865, at *5 (C.D. Cal. July 28, 2014).  "At the preliminary approval stage, a court determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010).  Preliminary approval amounts to a finding that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *Manual for Complex Litigation* (Fourth) § 13.14 at 173.  Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, No. SACV 12-02161-DOC, 2014 WL 360196, at *4 (C.D. Cal. Jan. 31, 2014); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

After notice is given to the class, preliminary approval is followed by a review of the fairness of the settlement at a fairness hearing, and, if appropriate, a finding that it is "fair, reasonable and adequate."  Fed R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1027.  In making this determination, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

The district court must approve or reject the settlement as a whole.  *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").  The Court may not delete, modify, or rewrite particular provisions of the settlement.  *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026.  The district court is cognizant that the settlement "is the offspring of compromise; the question…is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  Because it is provisional, courts grant preliminary approval where the proposed settlement lacks "obvious deficiencies" raising doubts about the fairness of the settlement.  *In re Vitamins Antitrust Litig.*, No. MISC 99-197(TFH), MDL 1285, 2001 WL 856292, at *4 (D.D.C. 2001) (quoting *Manual for Complex Litigation* (Third) §30.41).

B.      Overview of the Settlement Agreement

The proposed Settlement Agreement provides for a maximum financial commitment of an amount up to $8.25 million.  *Settlement Agreement* ¶ 44.  In addition to paying claims to Class Members, this amount will be used to pay for administrative costs, attorneys' fees and expenses, and Plaintiffs' incentive awards of $2,000 each.  *Id*.

Class Member awards will be distributed in the form of either cash payments or product vouchers to all Class Members who submit a timely and valid claim form.  *Id*. ¶ 45.  Claimants who do not have proof of purchase may receive a $3.50 cash award for each Subject Product purchased during the Class Period, for a maximum of ten claims amounting to $35.00 in cash.  *Id*. ¶ 45(a).  Those who claim more than $35.00 in cash awards must submit proof of purchase during the Class Period, and may receive a cash award of up to $60.00 based on the retail value of the product as shown in the proof of purchase.  *Id*.  The Settlement Agreement defines "proof

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

of purchase" as "receipts, Millennium packaging, or other documentation from a third-party commercial source reasonably establishing the purchase." *Id.* ¶ 26. Alternatively, Class Members may opt to receive a product voucher, redeemable for a free Millennium product at retail stores. *Id.* ¶ 45(b). Those without proof of purchase may receive up to $35.00 in product vouchers. Each voucher is assigned a value of $3.50 though the value may be higher or lower based on the retail price at the point of sale. *Id.* With proof of purchase, Class Members may receive up to $60.00 in product vouchers based on the retail value of the product as shown in the proof of purchase. *Id.* The vouchers have no expiration date, are freely transferable, and may be redeemed at any retailer that sells the Subject Products. *Id.* In the event that the aggregate value of cash awards and vouchers exceeds the amount available to be distributed to claimants, then the monetary value of the awards will be reduced on a pro rata basis. *Id.* ¶ 46.

In addition to monetary relief, the Settlement Agreement provides for injunctive relief whereby Millennium agrees to the following:

- Cease ordering and printing labels with the term "antioxidant;"

- Add a warning label that "the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs;"

- Add a warning label that "Contents are under pressure. Failure to refrigerate may increase pressure, causing product to leak or gush;"

- Conduct regular sample testing using third-party laboratories to (1) ensure compliance with federal and state labeling standards and (2) ensure the accuracy of the sugar content representation on the label;

- Promise to adopt any new industry wide methodology for testing the alcohol content of kombucha, should one be developed.

*Settlement Agreement* ¶ 47.

Regarding attorneys' fees and costs, the Motion provides that Plaintiffs' Counsel will make an application to the Court for an award of fees, costs, and expenses, and that no agreement exists between the parties as to any amount. *Mot.* 9. Additionally, Counsel will apply for approval of incentive payments to Plaintiffs in the amount of $2,000 each. *Id.* Lastly, subject to the Court's approval, Angeion Group will serve as the Settlement Administrator with the task of developing a notice and claims administration program designed to achieve reach at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

least 80% of possible Class Members.  *Mot*. 9; *Settlement Agreement* ¶ 48.  Defendants agree to pay all settlement expenses up to $400,000.  *Mot*. 9.

C.      Analysis of the Settlement Agreement

i.      *Fair and Honest Negotiations*

Here, the evidence supports the conclusion that the settlement is fair. The parties indicate that the Agreement is the result of eight months of arms' length negotiations that included three sessions of formal in-person and telephonic mediation before Jill R. Sperber, Esq. of Judicate West.  *Settlement Agreement*  ¶ I.  After the first two mediation sessions in March and May of 2016, the parties reached their first settlement in principle and applied for preliminary approval of the settlement agreement.  *Id*.  After the Court denied the motion on September 21, 2016, the parties renewed their settlement negotiations to address the Court's concerns.  *Id*. ¶ K.  On October 7, 2016, the parties participated in a third mediation with Ms. Sperber, reaching a new settlement agreement in principle.  *Id*.

The parties indicate that, prior to entering into the Settlement Agreement, they engaged in extensive litigation, bringing several motions to dismiss and conducting thorough discovery and investigation into the merits of the case.  *See Settlement Agreement* ¶¶ A–H.  For example, the parties met and conferred frequently concerning various discovery requests, and in response, Millennium produced thousands of pages of documents, including test results and sales information.  *Id*. ¶ G; *Mot*. 16–17.  Plaintiffs also provided Millennium with their own test results, consumer surveys, and other materials obtained through their own research and investigation.  *Id*.  Plaintiffs served subpoenas on several third parties that produced testing results and internal communications concerning Millennium's products.  *Id*.  Each party, through respective counsel, conducted a thorough examination and evaluation of the relevant law, facts and allegations in order to assess the merits of Plaintiffs' case, including an investigation into the facts and law concerning (1) label design and product formulation; (2) marketing and advertising of products; (3) sales, pricing, and financial data, and (4) the sufficiency of the claims and suitability for class certification.  *Settlement Agreement* ¶ H.  The parties indicate that each of the three mediation sessions was followed by settlement discussions during which "the terms of the agreement were extensively debated and negotiated."  *Mot*. 17.

In general, evidence that a settlement agreement is arrived at through genuine arms' length bargaining after factual discovery supports a conclusion that the settlement is fair.  *See City P'ship Co. v. Atl. Acquisition Ltd.* P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms' length, there is a presumption in favor of the settlement."); *Ross v. Trex Co., Inc*., No. 09-cv-00670-JSW, 2013 WL 6622919, at *3 (N.D. Cal. 2013); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

04149 MMM (SHx), 2008 WL 8150856, at *4 (C.D. Cal. 2008); *see also Rodriguez v. West Publishing Corp.*, 563 F. 3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]). Therefore, the fact that the Settlement Agreement was reached through arms' length negotiations after three mediation sessions with Ms. Sperber and almost two years of discovery, investigation and negotiation weighs in favor of finding that the Settlement Agreement is a result of fair and honest negotiations. *Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.*, 10-CV-1777 AJB NLS, 2012 WL 3809123, at *1 (S.D. Cal. Sept. 4, 2012) (holding that a settlement should be granted preliminary approval after the parties engaged in extensive negotiations).

> ii.    *Settlement Amount*

Defendants have agreed to pay up to $8.25 million as a maximum settlement amount. *Settlement Agreement* ¶ 44. This amount will cover all claims filed by Class Members, as well as attorneys' fees and costs, administration costs and incentive awards. *Id.* Class Members may elect an award in the form of either cash or a voucher, both in the value of $3.50 for each bottle of the Subject Product. Class members are entitled to receive up to $35.00 without proof of purchase, and up to $60 with proof of purchase, in either cash of voucher form. *Id.* ¶ 45. In its previous order denying Plaintiffs' motion for preliminary approval, the Court expressed concern over the disparity in value between the cash and voucher options. *September 21 Order*, 7. To address this concern in the new Settlement Agreement, the cash award is increased to $3.50 for each purchased Subject Product, which is a 40 percent increase from the prior settlement, and the voucher is assigned the equivalent value of $3.50, the estimated average retail price of the Subject Products. *Settlement Agreement* ¶ 45(b); *see also Dave Decl.* ¶¶ 4–6. The value of the cash and voucher claims are therefore balanced, eliminating the Court's previous concern that claimants would be improperly incentivized to opt for the voucher award on account of its higher value.

The Court also expressed concern over the attenuated relationship between the amount of relief offered and Plaintiffs' harm. *September 21 Order*, at 6. In response, Plaintiffs argue that, should the case proceed to trial, they would be precluded from presenting a full-refund theory of damages, given that courts routinely reject such damages models in false advertising cases involving foods or beverages. *See, e.g.*, *In re POM Wonderful LLC*, No. ML 10–02199–DDP (RZx), 2014 WL 1225184, *2–3 (C.D. Cal. Mar.25, 2014) (explaining that a full-refund damages model is unavailable where the beverage in question nonetheless provided class members with benefits in the form of calories, hydration, vitamins, and minerals); *Red v. Kraft Foods, Inc.*, No. CV 10–1028–GW (AGRx), 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012) (declining to award class members with full refunds on their purchases because "Plaintiffs undeniably received some benefit from the Products."). Given that the Subject Products also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

contain benefits in the form of hydration, calories, probiotics, and other nutrients, Plaintiffs would not prevail in seeking full refunds for their purchases. *Mot*. 10–11. Instead, Plaintiffs would present a damages model based on the price premium consumers are willing to pay for products advertised as enriched with antioxidants, as is the case here. *Mot*. 11. Plaintiffs acknowledge that, in light of difficulty of establishing exact price premiums based on the varying alcohol, antioxidant and sugar content in the Subject Products, they would be unlikely to establish a price premium above four percent of the purchase price. *Mot*. 12. Based on that model, damages would therefore be set at 14 cents per Subject Product given the average retail price of $3.50. *Id*. Therefore, the settlement award of $3.50 per product purchased vastly exceeds the potential recovery at trial based on a price premium model.

To evaluate whether a settlement amount falls within the range of possible approval, "courts consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. Between March of 2011 and October 2016, Millennium sold approximately 274,715,000 bottles of the Subject Product to its distributors. Dkt. #103-2, *Declaration of GT Dave* ("Dave Decl.") ¶ 7. Even assuming all 274 million Subject Products were sold at retail locations during the Class period, and assuming Plaintiffs could prevail in showing damages at 14 cents per bottle, the maximum recovery at trial would amount to $38 million. *Id*. The maximum settlement amount of $8.25 million therefore represents approximately 21 percent of the estimated potential recovery, which falls well within the range of possible approval. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 456, 458 (9th Cir. 2000) (comparing a nearly $2 million gross settlement payment to a potential recovery figure of $12 million and finding that recovering "roughly one-sixth of the potential recovery" was fair and adequate under the circumstances of the case); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement amount that constituted approximately 25 percent of the amount plaintiffs might have proved at trial); *see also Rigo v. Kason Indus., Inc.*, No. 11-CV-64-MMA (DHB), 2013 WL 3761400, at *5 (S.D. Cal. July 16, 2013) ("[D]istrict courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with the litigation."). [2]

Moreover, the Settlement Agreement confers a substantial benefit on Class Members who would face a significant risk of no recovery and ongoing litigation expense if forced to proceed with litigation. Defendants vigorously deny Plaintiffs' allegations and maintain that neither

---

[2] In its September 21 Order, the Court also expressed concern over the proposed product giveaway, noting that Plaintiffs had failed to address how such a giveaway was related to the claims and how it would target and benefit the class of potentially millions of members nationwide. *See September 21 Order*, at 6. In response, the new Settlement Agreement eliminates the product giveaway provision entirely.

**CIVIL MINUTES - GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

Plaintiffs nor the class members suffered any harm. *See Mot.* 12. Plaintiffs concede that a favorable outcome is not assured and recognize that they face risks at class certification, summary judgment, and trial. *Fisher Decl.* ¶ 7; *Mot.* 15. Furthermore, in light of the different damage theories that could be presented at trial, even if Plaintiffs prevailed, there is no assurance they would be able to obtain damages significantly higher than those achieved in the Settlement Agreement. *Mot.* 15. Plaintiffs acknowledge that the Settlement Agreement avoids the uncertainty of prevailing on the merits and prevents the class from obtaining no recovery at all. *Id*. at 12, 15–16.

Based on the foregoing, and in particular considering the risks and expenses associated with continued litigation, the Court finds that the settlement amount falls within the range of approval. *See Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("[D]istrict judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value.").

### iv. Incentive Awards

"Incentive awards are fairly typical in class action cases. Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. In considering the fairness of incentive awards, the court focuses on "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).

The Settlement Agreement authorizes Class Counsel to apply to the Court for incentive awards to compensate the named Plaintiffs in this case, as well as the named Plaintiffs in the related action, *Nina Pedro, et al. v. Millennium Products, Inc., et al*. *Settlement Agreement* ¶ 55; *see also Mot.* 9. Class Counsel has indicated that they will seek final approval for an award of $2,000 per named Plaintiff ($12,000 in the aggregate). While the aggregate amount is less than 1 percent of the maximum settlement amount, the Court notes that the individual incentive awards are comparatively large in comparison to the estimated maximum award of $60.00 per class member. This raises concerns because incentive awards that are significantly disproportionate to the amount unnamed plaintiffs will receive "raise serious concerns as to [an agreement's] fairness adequacy, and reasonableness." *See Staton*, 327 F.3d at 975 ("Indeed, '[i]f class representatives routinely expect to receive special awards in addition to their share of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.").

Moreover, the parties have not provided the Court with sufficient information about the efforts Plaintiffs have made in pursuit of the litigation, nor have any of the Plaintiffs submitted a declaration detailing his or her efforts. The Settlement Agreement provides that the incentive awards are "[i]n recognition of the time and effort the representative Plaintiffs expended in pursuing this action and in fulfilling their obligations and responsibilities as class representatives." *Settlement Agreement* ¶ 55. However, Plaintiffs do not provide details regarding how much time has been dedicated to the action and how active their involvement has been. Further, these statements are not supported by a declaration by Plaintiffs or their attorneys.

Accordingly, before final approval, counsel will be ordered to submit a memorandum and declaration justifying Plaintiffs' incentive awards, including a description of efforts expended and the risks taken on behalf of the class. At this point, however, awards compensating the Plaintiffs appear to be appropriate in light of the nature of the claims and duration of this litigation. The Court therefore grants preliminary approval.

*v.* *Administration Costs*

The Settlement Agreement provides that Defendants will pay up to $400,000 for settlement administration costs. *Settlement Agreement* ¶ 48. It further provides that the Settlement Administrator will develop a notice and claims administration program aimed to reach at least 80% of possible Class Members. *Id.* In their motion, Plaintiffs indicate that the parties expect the notice program to in fact achieve an 85% reach. *See Mot.* 2; Dkt. #103–4, *Declaration of Steven Weisbrot* ("Weisbrot Decl.") ¶ 23. Any reasonable administration expenses above $400,000 will be deducted on a pro rata basis from the cash and voucher awards, even if the $8,250,000 is not fully exhausted. *Settlement Agreement* ¶ 48. In response to the Court's concerns over the amount of administration costs presented at the hearing, the parties explained that the current amount of $400,000 is meant to provide for an expanded mandatory reach of the notice program to 80% of Class Members. This represents a significant increase from the previous settlement agreement which allocated $275,000 for administration costs in order to achieve a 70% reach. *See* Dkt. #77–2, ¶ 5. Although the costs are high, the Court is satisfied that the allocated amount is intended to further the goal of maximizing the reach of the notice program to as many Class Members as possible. Accordingly, the Court grants approval.

D.      <u>Notice</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | | Date | January 31, 2017 |
|---|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | | |

Before the final approval hearing, the Court requires adequate notice of settlement be given to all class members.  Federal Rule of Civil Procedure 23(c)(2)(A) provides that the Court may direct "appropriate" notice to a class certified under Rule 23(b)(1).  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tuscon Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

  *i.  Proposed Notice to Class Members*

Plaintiffs have appended a proposed notice to the Settlement Agreement which sets forth in clear language: (1) the purpose of the notice; (2) the nature of the lawsuit, (3) the definition of the class; (4) the essential terms of the Settlement Agreement, including the total settlement amount of $8.25 million and awards available to participating class members; (5) how to participate in the settlement and receive payment; (6) information on how to exclude themselves from the settlement, if they choose not to be legally bound; (7) information on how to object to the settlement, if they choose to participate; (8) information about Class Counsel's application for attorney fees and the proposed incentive payment for Plaintiffs; (9) information concerning the release of claims; (10) the Court's procedure for final approval of the Settlement Agreement; and (11) a website – www.millennium-settlement.com –, a toll-free phone number, and address where Class Members may obtain additional information.  *See Settlement Agreement*, Ex. E ("Notice").  In addition, the Notice includes a claim form which informs the Class Members that they must fully complete and timely submit the form to be eligible for relief under the Settlement Agreement.  *See Settlement Agreement*, Ex. C.  The claim form will be made available directly through mailing of the notice or by download from the settlement website.  *Settlement Agreement* ¶¶ 65, 67.  To be eligible for an award, Class Members must either submit online or postmark a completed claim form on or before the claim deadline.

Notice will be disseminated to all potential Class Members utilizing the following methods of distribution:

1) E-mail and U.S. Mail Notice: Notice will be sent via e-mail or first class mail to the last known e-mail address or mailing address of any Class Member whose contact information is reasonably known.  Any unsuccessful e-mail notice will be followed by U.S. mail notice.

2) Settlement Website: The parties will post a copy of the Notice on a website created and maintained by the Settlement Administrator.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

3) Internet Banner Ad Campaign: The Settlement Administrator will implement an Internet banner ad campaign that contains an embedded link to the settlement website.  The banner ad campaign is estimated to result in over 12 million impressions, reaching at least 85% of the class members.

4) Publication Notice: A summary Notice will be published once a week for four consecutive weeks in the California edition of USA Today in accordance with the requirements of the California Consumers Legal Remedies Act.

5) Social Media: Millennium will post a link to the settlement website on its company website and on its Facebook, Instagram and Twitter pages.

6) CAFA Notice: Notice will also be disseminated to public officials as required by the Class Action Fairness Act.

*Mot*. 24–25; *see also Weisbrot Decl*. ¶¶ 10, 18–19; *Settlement Agreement* ¶¶ 51–53.

The Court finds that the Notice complies with the requirements of Fed. R. Civ. P. 23(c).  However, the Court notes two problems.

First, the Notice instructs class members to file objections with the Court, rather than just with Class Counsel.  *Settlement Agreement* ¶¶ 81–82.  These instructions must be eliminated from the notice materials.  Instead of filing objections with the Court and with Class Counsel, class members should send objections solely to Class Counsel, who will consolidate and present them to the Court when filing the final settlement approval.

Second, as it currently stands, the Notice instructs class members that the final approval hearing will take place at the Court's former courtroom in the Edward R. Roybal Federal Building and Courthouse.  Because the Court has recently moved, the Notice should refer class members to the Court's new chambers: U.S. Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Courtroom 6A, 6th Floor.  It should also refer class members to the court's website at http://www.cacd.uscourts.gov/judges-schedules-procedures for up-to-date locations for court hearings and chambers locations.

   *ii.     Proposed Schedule*

Finally, the Court approves the parties' proposed deadlines for the Notice schedule, presented at the hearing as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

- The Settlement Administrator will provide Notice to the Class pursuant to the terms of the Settlement Agreement no later than **February 27, 2017** ("Notice Date").

- Class Members who wish to participate in the settlement must postmark and mail to the Settlement Administrator or upload to the settlement website completed claim forms no later than **May 30, 2017** ("Claim Deadline").

- All objections to the Settlement Agreement and written notices of an objector's intent to appear at the final Fairness Hearing must be submitted pursuant to the terms of the Settlement Agreement no later than **July 3, 2017** ("Objection Deadline").

- All requests for exclusion must be postmarked and mailed to the Settlement Administrator no later than **July 3, 2017** ("Opt-Out Date").

- Plaintiffs' motion for final approval of the Settlement Agreement and Plaintiffs' Counsel's Fee Application will be filed no later than **June 19, 2017**.

- Papers filed in response to objections to the Settlement Agreement or the Fee Application must be filed no later than **July 17, 2017**.

- The final Fairness Hearing is set for **July 31, 2017**.

The proposed schedule is acceptable and allows potential Class Members sufficient time to act in their best interests.

IV.    Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for preliminary approval of class settlement. The Court CERTIFIES the proposed Class; APPOINTS Plaintiffs as Class Representatives; and APPOINTS Plaintiffs' counsel as Class Counsel for the Settlement Class. The Court PRELIMINARILY APPROVES the Settlement Agreement and APPROVES the Notice, but orders: (1) that the provision directing objections to be mailed to the Court be changed, so that objections are mailed only to Class Counsel; and (2) refer class members to the Court's new chambers and provide class members with the website where they can check on up-to-date locations for court hearings and chambers locations.

In addition to the motion for final approval of the Settlement Agreement, the Court ORDERS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-1801 PSG (AJWx) | Date | January 31, 2017 |
|---|---|---|---|
| Title | Jonathan Retta, *et al.* v. Millennium Products, Inc. *et al.* | | |

- A memorandum justifying incentive awards for Plaintiffs, including a detailed description of Plaintiffs' efforts in pursuit of this case, and supporting declarations;

- A motion for attorneys' fees and costs that includes declarations supporting the reasonableness of each attorney's requested hourly rate, itemized billing statements showing hours worked, hourly rates, expenses incurred thus far, and expenses to be incurred in the future;

- A copy of the amended Notice reflecting the changes requested above.

**IT IS SO ORDERED.**