John A. Yanchunis (Pro Hac Vice TBD)
*jyanchunis@forthepeople.com*
Marcio W. Valladares (Pro Hac Vice TBD)
*mvalladares@forthepeople.com*
Morgan & Morgan Complex Litigation Group
201 North Franklin Street, 7th Floor
Tampa, FL 33602-3644
Tel: 813-223-5505; Fax: 813-222-4733

Clayeo C. Arnold, State Bar No. 65070
*clay@justice4you.com*
Joshua H. Watson, State Bar No. 238058
*jwatson@justice4you.com*
Clayeo C. Arnold, A PLC
865 Howe Avenue, Suite 300
Sacramento, CA 95825
Tel: 916-924-1829; Fax: 916-924-1829

Shehnaz M. Bhujwala, State Bar No. 223484
*bhujwala@boucher.la*
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel: 818-340-5400; Fax: 818-340-5401

*Attorneys for Pedro Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JONATHAN RETTA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MILLENNIUM PRODUCTS, INC., *et al.*,<br><br>Defendants. | Lead Case No. 15-CV-1801-PSG-AJW<br>Complaint Filed: March 11, 2015<br><br>Pedro Case No. 16-CV-03780-PSG-AJW<br>Complaint Filed: November 17, 2015<br><br>**Class Action Consolidated for Settlement Purposes**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL AND MOTION FOR FEES, COSTS, AND SERVICE AWARDS; MEMORANDUM**<br><br>Date:    July 31, 2017<br>Time:    1:30 P.M.<br>Crtrm.:  6A<br>*The Hon. Philip S. Gutierrez*<br><br>Trial Date: None |
| NINA PEDRO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MILLENNIUM PRODUCTS, INC., *et al.*,<br><br>Defendants. | |

1

**TO THE COURT, PARTIES, AND ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE:**

On the date, time, and place above, Plaintiffs in the *Pedro* matter will and hereby do move for an order awarding attorney fees and costs in connection with the settlement of this matter.  This motion is based on these moving papers, declarations, opposing papers, reply papers, and any further evidence or argument as may be heard.

Plaintiffs seek $81,051 in fees, $18,951.36 in costs, and incentive awards to each *Pedro* plaintiff (2 total) in the amount of $2,000 each

Respectfully submitted,

Dated:  June 19, 2017                                     CLAYEO C. ARNOLD, APC

                                   By:        /s/ Joshua H. Watson
                                              Joshua H. Watson

# MEMORANDUM
## I.
## Introduction

This Motion comes before the Court pursuant to Rule 23(h) of the Federal Rule of Civil Procedure, and the Order Granting Preliminary Approval of the Proposed Settlement, Preliminary Certification of a Settlement Class, Approval of the Notice Plan, and a Schedule for the Fairness Hearing, entered on January 31, 2017, which set the Final Approval Hearing for July 31, 2017. ECF No. 115 ("P.A. Order") [*Retta* action].  Pursuant to the P.A. Order, fee applications and memoranda justifying Plaintiffs' incentive awards are to be filed with the Court by no later than June 19, 2017.  On November 28, 2016, upon joint stipulation of the parties, the case *Nina Pedro, et al. v. Millennium Products, Inc., et al.*, Case No. 3:15-cv-05253-JSC (the "*Pedro* action") was consolidated with the instant matter for purposes of settlement and the preliminary and final approval of the Settlement Agreement.  ECF No. 109 [*Retta* action].  Plaintiffs Nina Pedro and Rosalind Lewis (the "*Pedro* Plaintiffs"), on behalf of themselves, the Class, and the general public, by and through their undersigned counsel, respectfully move this Court for entry of an order granting the *Pedro* Plaintiffs an award of attorneys' fees to their counsel ("*Pedro* counsel") in the amount of $81,051, $18,951.36 in costs, and incentive awards to *Pedro* Class Representatives in the amount of $2,000 each for their time and effort in this litigation.  The following sections set forth the fact, law, and evidence in support of this Motion.

## II.
## PERTINENT FACTUAL BACKGROUND

### A.    The *Pedro* Class Action Case

In 2014, the Arnold Law Firm was a referred to a witness who reported certain alleged defects with the Synergy product line of kombucha beverage produced by Millennium Products, Inc.  Because of confidentiality concerns, this person and her allegations are not detailed here, but they can be recounted to the court in chambers if approval is given by Millennium Products, Inc. In any event, in inquiring into the circumstances of the witness, Arnold Law Firm came to learn of defects in the product line alleged in the Complaint and First Amended Complaint in the *Pedro*

MOTION FOR FEES, COSTS, AND SERVICE AWARDS

matter.  These include the presence of undisclosed amounts of alcohol and excess carbonation in the product line.  Investigation revealed that the beverage, which is a living biome of yeast and bacteria in a sugar solution, continues to undergo metabolic changes after shipping from the factory, and such changes can result in formation of alcohol and carbonation sufficient to cause leaks or burst bottles.  Declaration of Joshua H. Watson ("Watson Decl."); Declaration of Gary Spedding ("Spedding Decl.").

It is material to understand that the witness discussed above initially approached Arnold Law Firm as a potential class action claimant, and Arnold Law Firm proceeded on that basis. Ultimately, the named plaintiffs were different persons, but the matter was treated as a representative matter from the outset, and was investigated and litigated for this same pool of public beneficiaries.

In the course of investigating the above matter, the Arnold Law Firm was referred the plaintiffs in this matter, Ms. Pedro and Ms. Lewis.  These two plaintiffs filed the instant matter by and through Arnold Law Firm.

On December 21, 2015, *Nina Pedro, et al.  v. Millennium Products, Inc., et al.*, Case No. 3:15-cv-05253-JSC, was filed in United States District Court for the Northern District of California.  Therein, Plaintiffs Nina Pedro and Rosalind Lewis alleged on behalf of themselves, and on behalf of all others similarly situated, that Defendants were manufacturing, marketing, and distributing various types of kombucha beverages that were defective in that the beverages :

- exploded once the carbon dioxide levels in the bottle exceeds the pressure tolerance of the bottle and/or cap causing damage and/or loss of product;
- leaked from the cap once the carbon dioxide levels in the bottle exceeds the pressure tolerance of the cap causing damage and/or loss of product;
- were under so much pressure that when the bottle is opened a majority of the product uncontrollably sprays out causing damage and/or loss of product;
- had the caps on so tight that the bottle cannot be safely opened; and/or
- contained alcohol in excess of 0.05% and are therefore adulterated and/or not properly labeled pursuant to State and Federal law.

*Pedro* counsel learned that *Retta et al. v. Millenium Product Inc., et al.*, Case No. 15-cv-1801 (C.D. Cal.) had been filed on March 11, 2015. Watson Decl.  On or about March 11, 2016, the *Retta* Plaintiffs moved to stay (and transfer) the *Pedro* action out of the Northern District to the Central District, claiming that the *Retta* Plaintiffs were the first to file and that the cases were "substantially similar."  ECF No. 32 [*Pedro* action].  The *Pedro* Plaintiffs strongly opposed any such stay and pointed out to the Court that the *Pedro* matter was substantively distinguishable from the *Retta* matter in that the *Pedro* matter alleged unsafe bottling and beverage formulation giving rise to product waste and safety risks – whereas the *Retta* matter focused solely on alcohol labeling issues.  ECF No. 35 [*Pedro* action].   The Court denied the request for a stay, but articulated the substantive differences between the cases by granting the requested transfer and holding, among other things, that, "if transferred the leakage claim would proceed on a regular schedule rather than languish in [the Northern District], awaiting litigation after Retta has concluded."  Order Granting in Part and Denying in Part Defendant's Motion to Stay; Transferring Action to Central District of California, 11:13-14, ECF No. 43 [*Pedro* action].

Accordingly, on May 31, 2016, the *Pedro* action was transferred from the Northern District of California (San Francisco) to this district and assigned the civil case number 2:16-cv-03780.  ECF Nos. 44-46 [*Pedro* action].

In the course of investigating the matter, Plaintiffs engaged the services of Gary Spedding.  Interestingly, this same expert was retained by counsel in *Retta*.  Plaintiffs also engaged the services of a bottling and failure analysis expert.  Substantial attorney time and costs were incurred obtaining random samples of product from various locations, testing those samples, and using such data to conduct an appropriate random sample of product formulation.

Although both groups used the same expert, only the *Pedro* plaintiffs explored or obtained relief on the issues of excessive carbonation and pressure-related safety.  Defendants have agreed to place a warning on the bottles concerning the fact that failure to refrigerate can cause the

1   product to leak and gush, and this is due solely to efforts in the *Pedro* matter.

2   **B.**   ***Retta* Counsel Attempts To Include *Pedro* Class In The *Retta* Settlement**

3   In June of 2016, *Pedro* Counsel became aware that *Retta* Counsel and defendants had

4   reached a settlement that purported to include the claims involved in the *Pedro* action.  *Retta*

5   counsel reached out to *Pedro* counsel to explain that they were settling all related claims, and that

6   the *Pedro* matter would be resolved in the class, though without any relief for the carbonation,

7   pressure, spoilage, and waste issues unique to *Pedro*.

8   Retta counsel had already filed a Motion for Preliminary Approval of Class Action

9   Settlement and attempted to advance the hearing.   ECF Nos. 77-81 [*Retta* action].

10   On September 15, 2016, *Pedro* plaintiffs filed an *ex parte* application and motion to

11   intervene.  ECF Nos. 83-85 [*Retta* action]. The basis of the intervention was simply that *Retta*

12   purported to resolve all class related claims, but it did not actually do so.  Instead, it simply

13   dismissed the *Pedro* claims and presumed that all plaintiffs and subclasses would have their needs

14   met.  *Pedro* counsel also inquired about the settlement amount, which was eventually increased in

15   a subsequent settlement.

16   Note that *Pedro* plaintiffs did not obstruct resolution of the matter or object.  The current

17   settlement is not opposed or disparaged. To the contrary, now that *Pedro* has been consolidated for

18   settlement purposes, the additional injunctive relief regarding the warning/notice (and consumer

19   additional funds obtained after the *Pedro* intervention to the degree one caused the other) provide

20   for a better outcome for consumers.  The increased benefit from *Pedro* is not trivial.  Beverages

21   should not leak, gush, or explode, and consumers need to be told if that, vs going sour, is a

22   consequence of a failure to refrigerate.  (See Spedding Decl.)

23   On September 16, 2016, *Retta* plaintiffs and defendants filed an opposition to the *ex parte*

24   application and motion to intervene.  ECF ECF Nos. 87-88 [*Retta* action].  This move was resisted

25   by all other parties, and perhaps there are some ruffled feathers.  However, the consumers and

26   marketplace are better for it.

27

28

**C.**     **The _Retta_ and _Pedro_ Cases Are Consolidated For Purposes Of Settlement**

On November 28, 2016, upon joint stipulation of the parties, the Court granted a request to consolidate the _Retta_ action with the _Pedro_ action.  ECF No. 109 [_Retta_ action].  The cases were consolidated for purposes of settlement and the preliminary and final approval of the Settlement Agreement proposed in this case.  _Id._

**D.**     **Settlement Now Includes The Claims Involved In The _Pedro_ Case**

As reflected in the Docket, the _Pedro_ matter was consolidated with _Retta_ for settlement purposes only.  To settle the _Pedro_, Millennium Products, Inc. agreed to place a notice/warning label on its products.  (_Retta_ Dkt, 108-1.)  Defendant agreed: "the labels of Millennium's kombucha products will state that the products may be under pressure and that the failure to refrigerate the products may result in leaking or gushing."  (Ibid.)

# III.

## _PEDRO_ COUNSEL IS ENTITLED TO FEES

**A.**     **Legal Standard Applicable To Attorneys' Feed Awards In Class Action Cases**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The fee awarded must be "reasonable."  _In re Bluetooth Headset Prods. Liab. Litig._, 654 F.3d 935, 941 (9th Cir. 2011) ["_In re Bluetooth_"].  The decision to award attorneys' fees "is committed to the sound discretion" of the court, and should be based on "the unique contours of the case."  Fed. Judicial Ctr., Manual for Complex Litig. (Fourth) § 14.121 (2004).  In a class action, the court follows Rule 23(h), and the "fundamental focus is the result actually achieved for class members."  _Id._ at § 21.71 (citing Fed. R. Civ. P. 23(h) committee note).  The judgment on attorneys' fees and costs must describe the bases for the Court's order, including findings of fact and conclusions of law.  See _id._ § 14.232; Fed. R. Civ. P. 52(a), 54(d)(2)(C), 58(a)(3) (a separate judgment for fees is not required).  Notice to the class of an attorneys' fees motion is required, which is ordinarily accomplished in a settlement class by including information about the hearing and motion within the class notice itself.  See Fed. R. Civ. P. 23(e)(1)(C).  Counsel for the class may also move for

1    costs, if they are a prevailing party.  See Fed. R. Civ. P. 54(d)(1).

2    **B.**     **Pedro Counsel Is Entitled To Fees Per Business And Profession Code Section 17200,**

3    **The Consumer Legal Remedies Act And The Consumer Warranty Act**

4         There is an argument to be had that *Pedro*, while consolidated for settlement purposes, is

5    not a class case.  One might debate the nature of the consolidation, and treat *Pedro* as an

6    independent matter that is coordinated for procedural purposes.  In that context, fees can and

7    should be awarded to *Pedro* in its own right.

8         "An award of attorneys fees incurred in a suit based on state substantive law is generally

9    governed by state law."  *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th

10   Cir. 2003) (citation omitted). "The task of a federal court in a diversity action is to approximate

11   state law [regarding attorneys' fee awards] as closely as possible in order to make sure that the

12   vindication of the state right is without discrimination because of the federal forum."  *Farmers Ins.*

13   *Exch. v. Sayas*, 250 F.3d 1234, 1236 (9th Cir. 2001) (quoting *Gee v. Temeco, Inc.*, 615 F.2d 857,

14   861 (9th Cir. 1980)).  Accordingly, "California substantive law determines the availability and

15   amount of attorney's fees in this diversity case."  *Winterrowd v. Am. Gen. Annuity Ins.* Co., 556

16   F.3d 815, 829 (9th Cir. 2009) (citation omitted); see also *Parkinson v. Hyundai Motor Am.*, 796 F.

17   Supp. 2d 1160, 1169 (C.D. Cal. 2010) ["Parkinson"].

18        Here, Plaintiffs invoke the fee-shifting provisions of California's "Song-Berverly Consumer

19   Warranty Act" ("Consumer Warranty Act"), California Civil Code, section 1794(d), the Consumer

20   Legal Remedies Act ("CLRA"), and the Private Attorney General Statute, California Code of

21   Civil Procedure, section 1021.5.

22        1.     The Consumer Warranty Act  Requires Fees Be Awarded to a "Prevailing Buyer"

23        California's Song-Beverly Consumer Warranty Act, California Civil Code, section 1790 et

24   seq., provides that a prevailing buyer "shall be allowed by the court to recover as part of the

25   judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees

26   based on actual time expended, determined by the court to have been reasonably incurred by the

27   buyer in connection with the commencement and prosecution of such action."  Cal. Civ.Code §

28   1794(d).  The Song–Beverly Act "is manifestly a remedial measure, intended for the protection of

the consumer; it should be given a construction calculated to bring its benefits into action. [Citation.]" *Kwan v. Mercedes–Benz of North America, Inc.*, 23 Cal.App.4th 174, 184 (1994). The Song–Beverly Act is intended to protect consumers and should be construed in keeping with that goal. *Murillo v. Fleetwood Enterprises, Inc.* 17 Cal.4th 985 (1998).  The provision for recovery of costs and attorney fees in section 1794(d) is an important aspect of this consumer protection, and without it many would not be financially able to pursue a remedy.  As stated in *Murillo v. Fleetwood Enterprises, Inc.*, *supra*, at page 994, "By permitting prevailing buyers to recover their attorney fees in addition to costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible."   In such cases, the inquiry is "whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor Am.*, 31 Cal.App.4th 99 (1994); see also *Doppes v. Bentley Motors, Inc.*, 174 Cal.App.4th 967, 998 (2009).

> 2.   The CLRA Requires Fees Be Awarded to a "Prevailing Plaintiff"

The CLRA provides that the "court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Cal. Civ. Code § 1780(e) (emphasis added).  "The legislative policy to allow prevailing plaintiffs reasonable attorneys' fees is clear. Section 1780 provides remedies for consumers who have been victims of unfair or deceptive business practices.  The provision for recovery of attorney's fees allows consumers to pursue remedies in cases . . . where the compensatory damages are relatively modest." *Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003) (internal citation omitted) ["*Hayward*"].  This provision is "integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute," *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1086 (1999), and must "be liberally construed and applied to promote [the statute's] underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  See Cal. Civ. Code § 1760; accord *Hayward*, 108 Cal. App. 4th at 512-13 ("section

1760 expressly directs [courts] to liberally construe section 1780 to protect consumers"). A fee award to a prevailing plaintiff in a CLRA action is thus mandatory, even when resolved before trial. *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-79, 181 (2007).

       3.   <u>The Private Attorney General Statute Separately Entitles a "Successful Party" to Fees in Public Interest Cases</u>

California Code of Civil Procedure "section 1021.5 authorizes an award of attorney fees to a 'private attorney general,' that is, a party who secures a significant benefit for many people by enforcing an important right affecting the public interest." *Serrano v. Stefan Merli Plastering Co.*, 52 Cal. 4th 1018, 1020 (2011) ["*Stefan*"]. Consistent with the policies underlying the statute, the entitlement belongs to both the litigant and her counsel. *Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499, 1509 (2006); see also *Serrano v. Priest*, 20 Cal. 3d 25, 44 (1977) ["*Priest*"] (purpose of fee-shifting statutes is to "award . . . substantial attorney fees to those public-interest litigants and their attorneys . . . who are successful in such cases" and thereby incentivize "representation of interests of similar character in future litigation"); accord *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "Although the section 'is phrased in permissive terms . . . the discretion to deny fees to a party that meets its terms is quite limited,' and generally requires a full fee award unless special circumstances would render such an award unjust." *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803, at *9-10 (C.D. Cal. Apr. 7, 2009) (quoting *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1344 (2006)).

Fees are awarded when: (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuiary, has been conferred on the general public or a large class of persons . . .", and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate." Stefan, 52 Cal. 4th at 1026 (quoting Cal. Code Civ. Proc. § 1021.5, and citing *Woodland Hills Residents Ass'n, Inc. v. City Council*, 23 Cal. 3d 917, 935 (1979)). "The key question is 'whether the financial burden placed on the party [claiming fees] is out of proportion to its personal stake in

the lawsuit.' " *Heston v. Taser Int'l., Inc.*, 431 Fed. Appx. 586, 589 (9th Cir. 2011) (quoting Lyons, 136 Cal.App. 4th at 1352).

Here, Defendant's products are merely a beverage akin to an iced tea.  In a realistic sense, buyers could not possibly have a stake adequate to litigate.  Where, as here, plaintiffs confer benefits regarding marketing practices and "elimination of allegedly false representations...confer[] a benefit on both the class members and the public at large."  See *Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986, at *4 (N.D. Cal. Apr. 4, 2012). Thus, Plaintiffs have acted as true attorneys general and are the successful party by bringing about a change for the better in labeling such that the product is less likely to be wasted and safety risks are reduced.

> 4.    The *Pedro* Plaintiffs Are "Prevailing" And "Successful" Under The Consumer Warranty Act, The CLRA, And The Private Attorney General Statute

Courts treat the terms "prevailing plaintiff" in the CLRA, and "successful party" in section 1021.5, synonymously, because "[t]he language in the two provisions is not materially different." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001).  "In order to effectuate" the policy underlying section 1021.5, and consistent with the construction of comparable statutes, the California Supreme Court has "taken a broad, pragmatic view of what constitutes a 'successful party.' "  *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004).  "[A] party need not prevail on every claim to be considered a successful party within the meaning of the statute." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009) (citation omitted); see also *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006) (as with section 1021.5, "[i]t is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." (quotation omitted)).

Here, Plaintiffs are the prevailing and successful party because the lawsuit "achieved its main litigation objective," which was to render the product safer and give consumers a way to understand and address the actual risk of non-refrigeration of the product, as it relates to waste and explosive gushing.  Injunctive relief, such as this, that is " 'socially beneficial' . . . justif[ies] a fee award under."  *In re Bluetooth*, 654 F.3d at 944.

**IV.**

**THE LODESTAR METHOD IS APPROPRIATE IN**

**CLASS ACTIONS BROUGHT UNDER FEE-SHIFTING STATUTES**

Under California law, "a court assessing attorney fees begins with a touchstone or lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney ... involved in the presentation of the case." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001) (quoting *Priest*, 20 Cal. 3d at 48); see also *Hensley v. Eckerhart*, 461 U.S. 424 (1983) (stating "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Perdue v. Kenny A.*, 559 U.S. 542, 552-553 (2010) (holding the lodestar method usually preferable). "[T]he 'lodestar method' is appropriate in class actions brought under fee-shifting statutes ... where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *In re Bluetooth*, 654 F.3d at 941; see also Man. for Complex Litig. (4th) § 21.7 at 334-35 (2004) ("Statutory awards are generally calculated using the lodestar method.").

Under the lodestar method, the lodestar amount is calculated by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.  Hanlon, 150 F.3d 1011, 1029. The lodestar may include a risk multiplier to enhance the fees under certain circumstances, in which a court considers "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.*, 150 F.3d at 1026.  The customary range for multipliers is between 1.0 and 4.0. *See Vizcaino*, 290 F.3d at 1051 n. 6 (describing appendix to opinion, finding a range of multipliers in common fund cases "of 0.6–19.6, with most (20 of 24, or 83%) from 1.0–4.0 and a bare majority (13 of 24, or 54%) in the 1 .5–3.0 range").

As discussed above, the fees requested by *Pedro* Counsel are based on statute, and thus the lodestar method applies. *See id.*

**THE RATES AND HOURS EXPENDED BY**

***PEDRO* COUNSEL ARE FAIR AND REASONABLE**

*Pedro* Counsel's lodestar is based on a fair total hours of work and is supported by fair and reasonable rates and hours. An expert declaration is provided to corroborate this, and the amount is appropriately modest.  (See billing declarations.)

**A.**     **The Requested Rates Are Reasonable**

*Pedro* Counsel's rates are reasonable, because they are in line with hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation.  See *Ketchum*, 24 Cal. 4th at 1133; see also *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("*Blum*"); See expert Declaration.  Courts look to prevailing market rates in the community in which the court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995); see also *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); Manual for Complex Litig. (Fourth) § 14.122 ("The rate should reflect what the attorney would normally command in the relevant marketplace.").

To assist the court in calculating the lodestar, a plaintiff must submit "satisfactory evidence...that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation."  *Blum*, 465 U.S. at 896 n.11.  The Ninth Circuit has advised that courts are allowed to rely on their own familiarity with the legal market and subject matter of the lawsuit when awarding attorneys' fees. *Collado v. Toyota Motor Sales*, U.S.A., Inc., 2011 U.S. Dist. LEXIS 133572, at *14 (C.D. Cal. Oct. 17, 2011) (citing *Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011)).  Here, Pedro Counsel attaches their declarations as well as expert information.

*Pedro* Counsel also seeks compensation for its support staff, such as paralegals and law clerks, which is permitted in this legal community.  "The key . . . is the billing custom in the relevant market.  Thus, fees for work performed by non-attorneys such as paralegals may be billed separately, at market rates, if this is the prevailing practice in a given community . . . . Indeed, even purely clerical or secretarial work is compensable if it is customary to bill such work separately . . ." *Trs. of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006).  In California, it is customary and reasonable to bill for all non-attorney support staff, even word processors.  *Priest*, 20 Cal. 3d at 35; *Ketchum*, 24 Cal. 4th at

1122; *PLCM Group Inc. v. Drexler*, 22 Cal. 4th 1084 (2000).  In *Salton Bay Marina Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914 (1985), the Court of Appeals stated that "necessary support services for attorneys, e.g., secretarial and paralegal services, are includable within an award of attorney fees."  Indeed, even unpaid law clerk interns can be billed.  *Sundance v. Mun. Ct.*, 192 Cal. App. 3d 268 (1987) ("[I]t is now clear that the fact that services were volunteered is not a ground for diminishing an award of attorneys' fees . . . . [T]he amount of the award is to be made on the basis of the reasonable market value of the services rendered, and not on the salary paid.") (citing *Serrano v. Unruh*, 32 Cal. 3d 621 (1982)).  Thus, Pedro Counsel's staff hours are also compensable.  *See id.; See Decl. Atty, Exh.*  Class Counsel staffed this case so as to prevent duplicative work.  The number of timekeepers reflects how long this case was litigated, and also reflects staff turnover rather than duplication.

## B.     *Pedro* **Counsel's Hours are Reasonable**

*Pedro* Counsel is entitled to be compensated for reasonable time spent at all points in the litigation. Courts should avoid engaging in an "ex post facto determination of whether attorney hours were necessary to the relief obtained."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.*

Here, *Pedro* counsel's expert confirms that the time spent by *Pedro* counsel were reasonable.  A common sense look at the records produced supports this; *Pedro* counsel engaged in reasonable investigation, avoided undue motion practice while still filing critical motions in timely ways that resulted in moving their clients' agenda forward, and obtained unique relief in a complex multi-party environment; all without resorting to objections or obstructions with respect to the class members.

Although counsel often seek multipliers, *Pedro* counsel do not in this case.  The record reflects proper measured litigation, with a positive consumer result.  By not overreaching, whether

14

via a multiplier or otherwise, *Pedro* counsel demonstrate reasonable billing practices.   This supports awarding the fair amount requested.

## VI.

## THE REQUESTED COSTS ARE FAIR AND REASONABLE

Under California Code of Civil Procedure §§ 1033.5 (a)(1), (3), (4), and (7), the Court must award costs for court fees; deposition costs for transcribing, recording and travel; service of process fees; and witness fees.  In addition, § 1033.5(c) provides discretion to award reimbursement of other costs if they are "reasonably necessary to the conduct of the litigation, rather than merely convenient or beneficial to its preparation." *Parkinson*, 796 F. Supp. 2d at 1176 (*quoting Sci. App. Int'l Corp. v. Super. Ct.*, 39 Cal. App. 4th 1095, 1103 (1995)).  In addition, "[t]he reimbursement of taxable expenses in federal litigation is governed by 28 U.S.C. § 1920 and Fed. R. Civ. P. 54." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1365-66 (N.D. Cal. 1996).  Rule 54(d) "entitles prevailing parties to collect taxable costs." *Id.*; *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (noting that courts universally accept that "telephone charges, postage, transportation, working meals, photocopies, and electronic research, are reasonable and were incidental and necessary to the representation of the Class"); Fed. R. Civ. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party.").

*Pedro* Counsel has incurred costs as reflected in counsel's declarations and the proposed order. All of *Pedro* Counsel's expenses were reasonable and necessary for the successful prosecution of this case.   Accordingly, the Court should grant *Pedro* Counsel's request for reimbursement of costs. See Cal. Civ. Proc. Code § 1033.5; Fed. R. Civ. P. 54(d).

## VII.

## THE PROPOSED INCENTIVE AWARDS ARE FAIR AND REASONABLE

Finally, the *Pedro* Plaintiffs respectfully request that the Court approve the agreed incentive awards for the Class Representatives, in the amount of $2,000 each.  Incentive awards "are fairly typical in class action cases," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), and "serve an important function in promoting class action settlements." *Sheppard v.*

*Consol.  Edison Co. of N.Y., Inc.*, No. 94-CV-0403(JG), 2002 WL 2003206, at *5 (E.D. N.Y. Aug. 1, 2002).   Incentive awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities of representing the class and recognize the time and effort spent in the case.  See *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 369 (D.D.C. Feb. 1, 2002); Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 U.C.L.A. Rev. 1303 (2006) (30% of class actions include incentive awards to class representatives).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-959.  Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation.  *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995).

In this case, the *Pedro* Plaintiffs respectfully request service awards of $2,000 for Plaintiffs Nina Pedro and Rosalind Lewis, in recognition of their contributions over the past four years toward the successful prosecution of this case.  As reflected in *Pedro* Counsel's declarations, both Ms. Pedro and Ms. Lewis devoted time and energy to this case from its inception to settlement, including reviewing court filings, communications with *Pedro* Counsel throughout the litigation, and by being committed to secure substantive relief on behalf of the entire Class.  The *Pedro* Plaintiffs have demonstrated a keen interest in the enforcement of their rights and of those of the class they represent.  They have remained in communication with Counsel and have reviewed documents in the case.  The incentive award requested is  justified  in light  of  the Ms. Pedro's and Ms. Lewis' willingness to  devote  time  and  energy  to prosecuting  a  representative  action and is reasonable  in  consideration  of  the  overall  benefit conferred on the Settlement Class, and should be approved.  Although the case may not have resulted in class certification as such, the *Retta* settlement calls for such an award for these plaintiffs, reflecting their contribution.

The proposed award of $2,000 in this case is also in line with those approved in other injunctive-relief only cases. *Kim*, 2012 WL 5948951, at *10 (approving a $2,500 incentive award to each named Plaintiff in an injunctive relief only case); *Perez*, 2007 WL 2591180, at *8 (approving $1,500 incentive award for primarily injunctive relief settlement where the only monetary benefit to class were coupons); *Richardson*, 951 F. Supp. 2d at 106-108 (approving $1,000 incentive award to each lead plaintiff in an injunctive relief-only, labeling case).   The proposed award is also nominal compared to those approved by other Courts in this Circuit. See, e.g., *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 114597, at *18 (N.D. Cal. Aug. 8, 2012) ("In this District, a $5,000 incentive award is presumptively reasonable."); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG(BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ($25,000 award); *Van Vranken*, 901 F. Supp. at 300 ($50,000 award); *Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 WL 4473183, at *7 (S.D. Cal.Oct. 6, 2008) ($25,000 award); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844 (S.D. Cal. Mar.6, 2009) ($12,000 award); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *8 (D. Or. Nov. 13, 2006) (approving $10,000 incentive award for representative whose "only personal benefit...from a successful result in this litigation is the...entitlement of any class member...together with the likelihood that any further [statutory] violations...would cease"). Accordingly, the evidence and case law support that the proposed service award of $2,000 is justified in this case.

## VIII.

## CONCLUSION

For all of the foregoing reasons, *Pedro* Plaintiffs respectfully request the Court grant the relief requested.

Dated:  June 19, 2017                              CLAYEO C. ARNOLD, APC


By:   /s/ Joshua H. Watson
       Joshua H. Watson